# Case No. 2

Case 4:21-cv-02473   Document 29-29   Filed 03/08/22 in TXSD   Page 2 of 9
Grupo Verzatec S.A. de C.V. v. RFE Investment Partners, Not Reported in Fed. Supp....
2019 WL 1437617

2019 WL 1437617
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

GRUPO VERZATEC S.A. DE C.V., Plaintiff,
v.
RFE INVESTMENT PARTNERS et al., Defendants.

17-CV-9887 (ALC)
|
Signed 03/29/2019

**Attorneys and Law Firms**

Dolores P. Garcia Prignitz, Frances Floriano Goins, Ulmer &
Berne LLP, Cleveland, OH, for Plaintiff.

Evan I. Cohen, Michael Quinn English, Rebecca Morrow,
Finn Dixon & Herling LLP, Stamford, CT, for Defendants.

**OPINION AND ORDER**

HON. ANDREW L. CARTER, JR., United States District
Judge

 **\*1**  Plaintiff Grupo Verzatec S.A. de C.V. ("Verzatec") filed
this suit against Defendant RFE Investment Partners VII, L.P.
("RFE") alleging violations of Sections 10(b) and 20(a) of the
Securities Exchange Act (the "Exchange Act") and common
law fraud. Plaintiff also asserts breach of contract claims
against all Defendants based on alleged misrepresentations
and breached covenants. Defendants now Move to Dismiss
Plaintiff's Complaint in its entirety. For the following reasons,
Defendants' Motion is **GRANTED.**

**BACKGROUND**

**I. Factual Background** [1]

[1]     All facts derive from Plaintiff's Second Amended
        Complaint ("SAC") and are presumed true. ECF
        No. 41.

*A. The Parties*
Plaintiff Verzatec and its subsidiary Stabilit, Inc. ("Stabilit")
manufacture and sell building supplies. SAC ¶ 25. NPI was
a Delaware corporation and the sole shareholder of Nudo

Products, Inc., Marlite, Inc. and Marlite Export Sales, Inc.
(collectively, "Nudo"). SAC ¶ 2. Nudo prints, manufactures,
and laminates Glasteel products. *Id.* at ¶ 26. As will be
discussed in further detail below, NPI became a wholly
owned Stabilit, Inc. subsidiary, thus, Verzatec is NPI's and
Nudo's ultimate and sole stockholder. *Id.* at ¶ 26. Defendant
RFE is a limited partnership headquartered in New Canaan,
Connecticut. *Id.* at ¶ 12. Prior to the Merger, RFE held a
majority of NPI's common and preferred stock. As NPI's
controlling stockholder, RFE installed former Defendant
Darryl Rosser ("Rosser") as an NPI director and as Nudo's
Chief Executive Officer in December 2012. *Id.* at ¶ 10.
Simultaneously, Rosser served as an Operating Executive for
RFE. *Id.* at ¶ 10. Former Defendant Len Farrell ("Farrell")
served as NPI's Chief Financial Officer in May 2013. *Id.*
at ¶¶ 27, 30. (Rosser and Farrell, together, the "Officer
Defendants") [2]

[2]     The other corporate and individual Defendants
        include the following former NPI equity holders:
        BNY Mellon Alcentra Mezzanine Partners, L.P.;
        GarMark Partners II, L.P.; Charles Pineau; Timothy
        Nudo; Patrick Nudo; Sam Nudo; and Kevin
        McKenzie (collectively "Equityholders"). *Id.* at ¶¶
        13-19.

*B. Pending Litigation and the Agreements*
In September 2014, Nudo received notice of a claim for
breach of warranty from the Palmyra Macedon Central
School District ("PMCSD") alleging manufacturing defects
in a Nudo panel PMCSD used in one of its buildings. *Id.* at ¶
32. Rosser failed to have Nudo notify its insurer of PMCSD's
claim against it. *Id.* Nudo's insurance policy required notice
as a precondition for coverage. *Id.* at ¶ 33.

In December 2014, Plaintiff began negotiations to acquire
NPI. *Id.* at ¶¶ 2, 34. Officer Defendants participated in the
negotiations. *Id.* at ¶¶ 34, 38, 40. The SAC alleges that in
December 2014, Rosser and Farrell modified the method
Nudo used to calculate its inventory reserve to account for
slow-moving and obsolete inventory. *Id.* at ¶ 36.

On December 2, 2015, NPI, Verzatec, Formet, Inc. (a Verzatec
subsidiary) and Impact Stockholder Rep, LLC ("Stockholder
Rep") on behalf of the Equity Holders and Responsible
Bonus Recipients (as defined in the Agreement), agreed
to an acquisition and entered into a Merger Agreement
("Agreement"). *See* ECF. Nos. 41-1, 41-2. The Agreement set
forth all of the parties' obligations, including representations

and warranties made by NPI as of the closing date (the "Closing") and indemnification procedures for any breaches of those representations and warranties. *See Id.* §§ 3, 9, 11.10.[3]

[3]   NPI also provided Verzatec with a Company Disclosure Letter, dated December 2, 2015 (the "Company Disclosure Letter"), that disclosed detailed information about Nudo and was incorporated into and formed a part of the Agreement. *Id.* at ¶¶ 34, 38, 40; Cohen Decl. Ex. A.

**\*2**  The Agreement also established a post-closing purchase price adjustment process that involved a comparison of NPI's Closing Net Working Capital ("Closing NWC"), as prepared by Plaintiff after the Closing, to NPI's calculations prepared prior to Closing. *Id.* § 2.3(c). The parties agreed that the working capital adjustment procedure would be "the sole and exclusive remedy of the Purchaser [ ] with respect to ... any other claims relating to any of the components of the Company's Net Working Capital (in lieu of claims under Section 9.2 or Section 9.3 hereof)." *Id.* § 2.3(e).

As part of the agreement, NPI represented to Verzatec that, "[t]here ha[d] been no change in inventory valuation standards or methods with respect to the inventory in the three years prior to the Closing Date." SAC ¶ 54, Ex. A; ECF 41-1 § 3.20. NPI also represented that, as of the December 18, 2015 Closing Date, "there [was] no ongoing demand, claim, suit, action, arbitration or legal, administrative or other proceeding pending or ... threatened against any Nudo Company ... that would reasonably be expected to result in liability in excess of $ 100,000." SAC ¶ 56, Ex. A § 3.10. Rosser and Farrell repeated this misrepresentation to Verzatec in the Company Disclosure Letter. *Id.* at ¶ 38.[4]

[4]   Specifically, Rosser, represented that there were no demands, claims, suits, actions, arbitrations, legal, administrative, or other proceedings pending or threatened against Nudo. *Id.* at ¶ 56.

In the Merger Agreement, NPI also represented that its financial statements fairly presented "in all material respects, the condition of [Nudo, Marlite, Inc., and Marlite Export Sales, Inc.] as of the referenced dates ..." and that "[t]he inventory of [Nudo, Marlite, Inc., and Marlite Export Sales, Inc.], whether reflected on the Financial Statements or not, consists of raw materials and supplies, manufactured and processed parts, goods in process, and finished goods that are

of a quality and quantity that are useable and saleable in the ordinary course of business, consistent with past practice." *Id.* at ¶ 54, Ex. A § 3.7,3.20.

### *C. Plaintiffs Allegations*

Plaintiff alleges that Officer Defendants provided false financial schedules and reports to Verzatec from February 2016 through June 2016. SAC ¶ 80. For example, the financial schedules failed to disclose Nudo's obsolete and slow-moving inventory. *Id.* at ¶ 82. Plaintiff also alleges the financial schedules affirmatively concealed PMCSD's claim and subsequent lawsuit on February 16, 2016. *Id.* at ¶¶ 83, 75. Officer Defendants also concealed the fact that NPI's exposure on the PMCSD claim was made worse by management's failure to timely notify the insurer of the claim, causing NPI's insurer to deny coverage. *Id.* at ¶¶ 76-77, 81. Officer Defendants also omitted the fact that Nudo owed $ 113,665 to the insurance company that provides coverage to Nudo for workers compensation claims. *Id.* at ¶ 83.

The Closing occurred on December 18, 2015. *Id.* at ¶ 41. Following the Closing, Verzatec prepared and provided its Closing NWC to the Stockholder Rep, as required by the Agreement. *Id.* ¶¶ 80, 84. On June 30, 2016, NPI, Verzatec, Verzatec's subsidiary, and Stockholder Rep entered into a "Final Agreement regarding Working Capital, Accounts Receivable and Tax Refunds." (the "Final Agreement"). *See Id.* ¶¶ 80; Cohen Decl. Ex. B. Pursuant to the Final Agreement, Verzatec agreed "to forever release [the Equityholders] and their respective successors, assigns and affiliates from any and all further liability with respect to the provisions of Section 2.3 of the Agreement or the matters covered thereby" as consideration for payment of an additional $ 227,000 to Verzatec. *Id.*

**\*3**  Later, Verzatec discovered RFE concealed the inventory accounting problems, Nudo's reserve for such inventory was $ 1.5 million short, and that Nudo owed $ 113,665 on its 2016 workers compensation insurance policy. *Id.* at ¶¶ 91-92. Additionally, Verzatec learned of PMCSD's breach of warranty claim against Nudo, the ensuing litigation, the denial of insurance coverage and Nudo's resulting $ 1 million-plus prospective exposure. *Id.* at ¶¶ 93-94.

On November 10, 2016, Plaintiff provided notice of a claim related to, among other things, the "slow-moving and obsolete inventory situation." *Id.* at ¶ 95. On November 16, 2017, Plaintiff served another Demand Notice pursuant to Section 11.10(a) of the Agreement on the Stockholder Rep (the "2017

Notice"). *Id.* at ¶ 100; Cohen Decl. Ex. D. In the 2017 Notice, Verzatec provided notice of (i) the same inventory claim that Verzatec had previously identified in November 2016; and (ii) a claim related to an alleged breach of representation related to litigation involving the PMSD. *Id.*

## II. **Procedural Background**

On December 18, 2017, Plaintiff filed its initial complaint, asserting claims for fraud and fraudulent inducement against the Equityholders and Officer Defendants and indemnification against the "Indemnifying Seller Parties." ECF. No. 1.

On February 27, 2018, Plaintiff filed its First Amended Complaint and removed the fraud and fraudulent inducement claims against all Equityholders except Defendant RFE and added claims under Sections 10(b) and 20(b) of the Exchange Act and against RFE. ECF. No. 17. After the parties submitted pre-motion conference letters to the Court, Plaintiff filed the SAC, amending its Section 20(b) claim against RFE to a Section 20(a) claim. ECF. No. 41. On July 18, 2018, Plaintiff voluntarily dismissed Officer Defendants after reaching a settlement. ECF No. 50.

On July 27, 2018, Defendants moved to dismiss the SAC in its entirety. ECF No. 51. Defendants argue, *inter alia,* that Plaintiff's securities law and fraud claims rely on a fallacy that the Officer Defendants acted as agents for RFE. ECF No. 52.

## STANDARD OF REVIEW

### I. Motion to Dismiss

When deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Ail. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ).

Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly,* 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are " 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly,* 550U.S. at 557).

## II. **Federal Rules of Civil Procedure 8(a) and 9(b)**

 **\*4** Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain only "a short and plain statement" of the basis for the court's jurisdiction and of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ P. 8(a). Rule 9(b) of the Federal Rules of Civil Procedure, however, requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstance constituting fraud or mistake." Thus, fraud allegations are sufficient under Rule 9(b) where the complaint "(1) detail[s] the statements (or omissions) that the plaintiff contends are fraudulent, (2) identif[ies] the speaker, (3) state[s] where and when the statements (or omissions) were made, and (4) explain[s] why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC,* 783 F.3d 395, 403 (2d Cir. 2015).

"By its terms, Rule 9(b) applies to 'all averments of fraud.' This wording is cast in terms of the conduct alleged and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Rombach v. Chang,* 355 F.3d 164, 171 (2d Cir. 2004) (quoting Fed. R. Civ. P. 9(b) ) "Determining whether a non-fraud claim sounds in fraud 'necessarily requires a case-by-case analysis.' " *Levy v. Young Adult Inst, Inc.*, 103 F. Supp. 3d 426, 442 (S.D.N.Y. 2015) (quoting *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007) ).

## DISCUSSION

### I. Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5

Plaintiff claims that NPI's misrepresentations in the Agreements violated Section 10(b) of the Securities Exchange Act, and Defendant RFE is liable for these false statements as NPI's controlling shareholder. Defendants argue this claim must be dismissed because it is: (1) based on

Grupo Verzatec S.A. de C.V. v. RFE Investment Partners, Not Reported in Fed. Supp....
2019 WL 1437617

insufficient, vague and conclusory allegations that fail to meet the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"); (2) barred by law because RFE did not make the alleged misrepresentations; and (3) the SAC does not adequately plead that Rosser and Farrell were RFE's agents. ECF No. 53.

### A. Section 10(b) and Rule 10b–5

To state a claim under both Section 10(b) of the Exchange Act and Rule 10b-5, Plaintiff must show: "(i) a material misrepresentation or omission; (ii) scienter; (iii) a connection with the purchase or sale of security; (iv) reliance by the plaintiff(s); (v) economic loss; and (vi) loss causation." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010). *See also* 15 U.S.C. § 78u–4(b). Additionally, the PSLRA requires that a fraud complaint (i) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" and (ii) when an allegation is made upon information and belief, state with particularity all facts on which that belief is formed. *Schwab v. E*Trade Fin. Corp.*, 285 F. Supp. 3d 745, 750 (S.D.N.Y. 2018).[5]

[5]   To satisfy Rule 9(b) and PSLR pleading requirements, the complaint must specify the false or misleading statement about which it complains and must allege how the statement is false or misleading. *Schwab,* 285 F. Supp. 3d at 750; *see also Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 170 (S.D.N.Y. 2015), aff'd, 649 F. App'x 7 (2d Cir. 2016).

#### 1. Material Misrepresentation

"[a]t the pleading stage, a plaintiff satisfies the material requirement of Rule 10b-5 by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." *In re Cannavest Corp. Sec. Litig.*, 307 F.Supp.3d 222, 237 (S.D.N.Y. 2018) (plaintiff adequately alleged material misrepresentation overstating the value of purchased assets related to defendant corporation's accounting practices) (quoting *Ganino v. Citizens Utils.* Co., 228 F.3d 154, 161 (2d Cir. 2000) ).

**\*5**   Here, Plaintiff claims Defendants made material misrepresentations of fact regarding the PMCSD litigation and the Inventory Accounting. The SAC explains how RFE's

statements between December 2015 and June 2016 were false.

#### *PMCSD Litigation*

Plaintiff claims that as of the merger closing date, NPI falsely represented that there was no threatened or ongoing lawsuit against Nudo that could reasonably be expected to result in liability more than $ 100,000. ECF No. 14. Plaintiff alleged that Defendants' misrepresented their litigation involvement by showing that as early as September 22, 2014, PMCSD served a claim for breach of warranty on Nudo. SAC ¶ 32. Plaintiff further alleged that NPI was aware of PMCSD's claim against Nudo because Rosser directed Nudo to investigate and inspect the products that gave rise to the claim and, furthermore, Defendants could not have "reasonably expected" Nudo's potential exposure to PMCSD's claim for a manufacturing defect in a product used throughout a public-school building – which, as of this date, exceeds $ 1 million (see SAC ¶ 94) – to be less than $ 100,000. *Id.* at ¶ 54; Merger Agreement § 3.10. Furthermore, a reasonable investor would want to know if its target company was potentially liable for damages exceeding $ 100,000. Therefore, liberally construing the SAC and "accept[ing] all factual allegations as true and draw[ing] all reasonable inferences in [Verzatec's] favor" suggests Rosser and Farrell's concealment of the law suit constitutes a material misrepresentation. *McCarthy,* 482 F.3d at 191.

#### *Inventory Valuation Standards*

The SAC also adequately described the circumstances surrounding the inventory misrepresentation. The SAC specifies that, despite representing in the 2015 Agreement that Nudo did not change its inventory valuation standards or methods in the past three years, Nudo changed its method for reserving for slow-moving and obsolete inventory in or around December 2014. SAC ¶¶ 35-36. The SAC also alleges that prior to December 2014, Nudo "regularly reserved for slow-moving and obsolete inventory." However, in December 2014, Nudo ceased this practice and caused its "obsolete" and "slow-moving" inventory reserve to have a $ 1.5 million shortfall by autumn 2016. *Id.* at ¶¶ 35, 91. Therefore, Plaintiff provided sufficient information detailing which statements in the SAC were false and misleading, especially considering each allegation is not "scrutinize[d] ... in isolation", but, instead, "assessed ... holistically". *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326, 127 S. Ct. 2499, 2511, 168 L.Ed. 2d 179 (2007) (discussing federal securities fraud pleading standards). Thus, the Court

finds that Plaintiff properly alleged the Rosser and Farrell materially misrepresented the inventory valuation. Finally, similar to potential adverse claims, a reasonable investor would consider the value of a target company's inventory significant to a potential acquisition. The Court must now determine if RFE is liable for Rosser and Ferrell's alleged misrepresentations under the Securities Exchange Act.

### A. RFE Cannot Be Held Liable for NPI's Statements

Defendants correctly point out that *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), bars Plaintiff's 10(b) claims against RFE. *Janus* holds that only the "entity with authority over the content of the statement" can be liable under Section 10(b). *Id.* at 144. Under *Janus,* "[f]or purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 142. "In the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed." *Id.* at 142-143.

**\*6** Under this backdrop, courts regularly dismiss Section 10(b) claims where a plaintiff failed to show the defendant made any of the alleged misrepresentations. For example, in *McIntire v. China MediaExpress Holdings,* 927 F. Supp. 2d 105 (S.D.N.Y. 2013), the plaintiffs based their 10(b) claims on an allegedly false audit report. The *McIntire* court dismissed the 10(b) claims against an auditor because the plaintiffs failed to allege that he had ultimate authority over an audit report or the alleged misstatements contained therein. *Id.* at 137-138. Similarly, in *Gavin/Solmonese LLC v. D'Arnaud-Taylor,* 68 F. Supp. 3d 530, 533 (S.D.N.Y. 2014) (Preska, J.), aff'd, 639 F. App'x 664 (2d Cir. 2016), the plaintiff alleged that employees of a broker-dealer hired by a company were primarily liable for misstatements made in an offering memorandum. The Court dismissed the plaintiff's 10(b) claims against the broker-dealer defendants, reasoning that the plaintiff "has plead[ed] no facts to support an inference that [the broker-dealer] was the 'entity with ultimate authority over the statement, including its content and whether and how to communicate it.' " *Id.* at 539 (quoting *Janus,* 564 U.S. at 142)

Similarly, the SAC only attributes the misrepresentations Plaintiff bases its fraud claims on to *NPI,* and there are no factual allegations that RFE caused NPI to make

these representations or had ultimate authority over the representations. Indeed, the SAC repeatedly acknowledges that NPI made the false statements. *See,* e.g., SAC ¶ 59 ("NPI affirmatively represented and warranted...."). [6] Because the SAC acknowledges that NPI, and not RFE, made the allegedly false representations, the 10(b) and 10b-5 claims against RFE fail. Therefore, Defendants Motion to Dismiss Count I in the SAC is **GRANTED.**

[6]      *See also Athale v. SinoTech Energy Ltd.*, 2014 WL 687218, at \*12 (S.D.N.Y. Feb. 21, 2014) (dismissing 10(b) claims against defendant because complaint was "utterly devoid of any allegations that [defendant] possessed such ultimate authority over the forward-looking statements at issue"); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Sup 2d 547.

### II. Count II: Section 20(a) of the Securities Exchange Act

To plead a prima facie case of control person liability, Plaintiff must allege: "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Schwab*, 285 F. Supp. 3d at 758. (internal citations omitted). Separately, "in order for [a defendant] to incur Section 20(a) liability, he must not only have control over the primary violator, but have control over the transaction in question." *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 2018 WL 1449206, at \*7 (S.D.N.Y. Mar. 23, 2018) (citations and internal quotation marks omitted).

Moreover, courts within the Second Circuit broadly construe the control person provisions " 'as they were meant to expand the scope of liability under the securities laws.' " *In re Tronox, Inc. Securities Litigation,* 769 F. Supp. 2d 202, 208 (S.D.N.Y. 2011) (quoting *CompuDyne Corp.*, 453 F. Supp. 2d 807, 829) (quoting *Dietrich v. Bauer,* 126 F. Supp. 2d 759, 765 (S.D.N.Y. 2001) ). "Allegations of control are not averments of fraud and therefore need not be pleaded with particularity." *In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 208 (S.D.N.Y. 2011) (quoting *In re Parmalat Sec. Litig.*, 414 F.Supp.2d 428, 440 (S.D.N.Y. 2006) ) Thus, " '[a]t the pleading stage, the extent to which the control must be alleged will be governed by Rule 8's pleading standard.' " *In re Tronox, Inc.*, 769 F. Supp. 2d at 765 (quoting *In re Scottish Re Group Sec. Litig.*, 524 F.Supp.2d 370, 385 (S.D.N.Y. 2007) ).

Grupo Verzatec S.A. de C.V. v. RFE Investment Partners, Not Reported in Fed. Supp....

2019 WL 1437617

## A. Control Over Primary Violator and Violation

To survive a motion to dismiss, the "complaint must allege facts from which it can be inferred that the defendant had actual power or influence over the controlled person." *Cohen v. Stevanovich,* 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010) (internal citations omitted). "Control over a primary violator may be established by showing that a defendant, directly or indirectly, possessed 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.' " *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996) (quoting 17 C.F.R. § 240.12b-2). "Whether a person is a 'controlling person' is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss." *CompuDyne Corp.*, 453 F.Supp.2d at 829.

**\*7** Here, Plaintiff adequately alleged a primary violation by Officer Defendants. Defendants argue that Plaintiff's bare status allegations against RFE are not sufficient to allege control person liability and survive a motion to dismiss. ECF No. 52 at 23. *See also Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 524-525 (S.D.N.Y. 2016) (finding allegations insufficient to establish control person status that alleged a parent company and a trust's advisors were controlling persons of the trust "by virtue of their status" and because they "caused" the trust to adopt certain fraudulent strategies). The Court agrees. The Court cannot "reasonably infer" that RFE could exert day-to-day control of NPI and Nudo simply due to their status as controlling shareholders.

Furthermore, "in order for [a defendant] to incur Section 20(a) liability, he must not only have control over the primary violator, but have control over the transaction in question." *In re Inv. Tech. Grp.*, 2018 WL 1449206, at \*7. As discussed above, the primary violation was made solely on behalf of NPI. The SAC does not allege facts that a draw a reasonable inference that RFE had control over the misrepresentations in the Agreements and, thus, Plaintiff's allegations fail to meet this standard.

Plaintiff maintains that in the Second Circuit, "where a primary violator is an agent of the alleged control person, Section 20 liability stems from the actions and knowledge of its agent." *Id.* (citing *Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 100 (2d Cir. 2001) ). "A plaintiff, therefore, need only plead an agency relationship with the primary violator acting in the normal course of

his or her duties in connection with the alleged fraud to adequately plead control person liability." *Id.* The Officer Defendants' alleged misrepresentations form the basis for Plaintiff's claim. Therefore, these claims will only survive if Plaintiff sufficiently pleaded that Rosser and Ferrell were RFE's agents.

## B. The SAC Fails to Establish an Agency Relationship Between RFE and NPI

Plaintiff repeatedly refers to Rosser and Farrall as agents of RFE throughout the SAC. Though the Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiff's favor, the Court is not required to accept mere "legal conclusions" when deciding a motion to dismiss. *In re Eletrobras Sec. Litig.*, 245 F.Supp.3d 450, 456 (S.D.N.Y. 2017).

To establish an agency relationship, a complaint must plead only "facts sufficient to show (1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent. In addition, the principal must maintain control over key aspects of the undertaking." *Elbit Sys., Ltd. v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 225 (S.D.N.Y. 2013) (citing *Commercial Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003) ). Where agency is alleged, the agents' state of mind can be imputed to the principal. *See*, e.g., *Cathay Pacific Airways, Ltd. v. Fly And See Travel, Inc.*, 3 F.Supp.2d 443, 445 (S.D.N.Y. 1998) ("the principal may not accept the fruits of the agent's fraud and then attempt to divorce himself from the agent by repudiating the agent and his knowledge").

Here, Plaintiff makes the following allegations to support their agency theory:

- Rosser has, at all relevant times, served as an Operating Executive for RFE. SAC ¶ 10;

- Rosser served on NPI's Board of Directors and as Nudo's Chief Executive Officer at RFE's direction when RFE held the majority of NPI's common and preferred stock (*see Id.* at ¶¶ 10, 12, 29;

- Rosser and Farrell were both installed by RFE as officers of Nudo at a time when RFE, as NPI's majority stockholder, controlled NPI and Nudo. *Id.* at ¶¶ 29, 30, 103;

Case 4:21-cv-02473   Document 29-29   Filed 03/08/22 in TXSD   Page 8 of 9

Grupo Verzatec S.A. de C.V. v. RFE Investment Partners, Not Reported in Fed. Supp....

2019 WL 1437617

**\*8** • Through its agents Rosser and Farrell, RFE exerted day-to-day control over NPI and Nudo. *Id.* at ¶¶ 28-29;

• Rosser and Farrell personally conducted the merger negotiations on behalf of RFE which culminated in Defendants' sale of their NPI stock to Verzatec. *see,* e.g., *Id.* at at ¶¶ 34, 103;

• During the merger negotiations, RFE-controlled NPI, through Rosser and Farrell, was to give Verzatec access to NPI's and Nudo's financial information, but intentionally withheld or materially misrepresented that information. *Id.* at ¶ 37;

• NPI's officers Rosser and Farrell acting as RFE's agents determined the Preliminary Working Capital amount and provided that information to Verzatec *Id.* at ¶ 52.

Essentially, Plaintiff alleges that RFE "installed" the NPI executives responsible for the alleged misrepresentations and, thus, are liable as well. The Court accepts the fact that RFE, as NPI's majority shareholder, voted Rosser onto NPI's Board of Directors. However, it would be a legal conclusion to assume this vote gives a majority shareholder (RFE) control over specific representations made by the executives of a subsidiary (Nudo). Plaintiff had the burden of alleging facts to prove RFE "maintained control" over Rosser and Farrell in their roles as Nudo executive officers. Plaintiff's SAC simply identifies the standard relationship between a company and a large shareholder.

Plaintiff relies on *CompuDyne Corp. v. Shane,* 453 F. Supp.2d 807, 824-25 (S.D.N.Y. 2006) to support its agency argument. However, the critical difference in *CompuDyne Corp* is the purported agent executed agreements on behalf of the purported principal and the complaint included allegations that the principal "delegated to [the agent] the right to act for it." Here, despite Plaintiff's claims that RFE controlled NPI, Rosser executed the Agreement exclusively on NPI's behalf. Indeed, Plaintiff asserts that Rosser simultaneously served as an executive for NPI and RFE, and thus, Rosser was an agent of both NPI and RFE. However, Rosser entered the Agreement at issue exclusively in his capacity as an agent for NPI, not RFE. Proof that the parties intended to bifurcate these roles is found in the Agreement. Defendants made no representations or promises in the Agreement to create an agency relationship between RFE and NPI. In fact, the Agreement expressly provides that only NPI, and no other person, made any of the representations contained therein.

ECF. No. 41-1 § 3.23. As such, Plaintiff agreed that it could not hold RFE generally accountable for NPI's representations. Thus, Plaintiff failed to prove RFE's "manifestation of intent to grant authority" to Rosser to bind it to the representations in the Agreement. *See,* e.g., *Cromer Fin. Ltd. v. Berger,* 137 F. Supp.2d 452, 487 (S.D.N.Y. 2001) (conclusory assertions of "control" insufficient to establish agency relationship); *Cannon v. Douglas Elliman, LLC,* 2007 WL 4358456, at \*5 (S.D.N.Y. Dec. 10, 2007) (dismissing complaint that offered "no facts from which inferences of actual or apparent authority in this context [could] be drawn"); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.,* 14 F. Supp. 3d 191, 215 (S.D.N.Y. 2014) ("a simple conclusory allegation to the effect that 'defendant A acted as defendant B's agent,' without more, would not plausibly state an agency relationship"). Therefore, Plaintiff failed to adequately plead the existence of an agency relationship.

**\*9** Furthermore, even if the Court were to determine that Rosser and Farrell were RFE's agents, the SAC's allegations implicate conduct outside the scope of their agency and, therefore, Officer Defendants' alleged fraud cannot be imputed to RFE. The SAC does not contain adequate facts to show that the Officer Defendants executed the Agreements "in the normal course of [their] duties" owed to RFE. In fact, the Agreements state the representations therein were solely attributable to NPI. [7] Therefore, because Plaintiff's primary violation is based on misrepresentations that cannot be attributed to RFE, Defendants' Motion to Dismiss Plaintiff's claim pursuant to Section 20(A) is **GRANTED.**

[7]     *See Vichi v. Koninklijke Philips Electronics, N. V.,* 85 A.3d 725, 778 (Del. Ch. 2014) ("For a principal to be held vicariously liable for the acts of an agent ... law requires that a tort be committed by the [agent] within the scope of his [agency] and not unexpectable in view of the duties of the [agent].")

**III. Plaintiff's Remaining State Law Claims**

Under 28 U.S.C. § 1367(c)(3), the Court may exercise supplemental jurisdiction over Verzatec's remaining state law claims after dismissing "all claims over which it has original jurisdiction." However, the Second Circuit encourages courts to avoid exercising supplemental jurisdiction here. "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 183 (2d Cir. 2004) (quoting

Case 4:21-cv-02473    Document 29-29    Filed 03/08/22 in TXSD    Page 9 of 9

Grupo Verzatec S.A. de C.V. v. RFE Investment Partners, Not Reported in Fed. Supp....

2019 WL 1437617

*Castellano v. Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir. 1991) ).

Having dismissed all of Plaintiff's claims pursuant to the Securities Exchange Act, and there being no other basis for federal jurisdiction over this case, the Court elects to not exercise its supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Boustany v. Xylem Inc.,* 235 F. Supp. 3d 486, 496–97 (S.D.N.Y. 2017). Accordingly, those claims are dismissed without prejudice.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** in its entirety.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No.51 and to close this action.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1437617

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.