United States District Court
Southern District of Texas
**ENTERED**
June 23, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION. | § § § § § § § § | CIVIL ACTION NO. 4:21-CV-02473 |

## ORDER

Before the Court is the Memorandum and Recommendation of the United States Magistrate Court regarding Defendants' Motion to Dismiss the Consolidated Complaint under Rule 12(b)(6). (Doc. No. 38). The lead Plaintiffs, the Utah Retirement System and the Construction Laborer's Pension Trust for Southern California, purchased common stock in Concho Resources Inc. between February 21, 2018, and July 31, 2019. At this time, Concho Resources Inc. ("Concho") was a publicly traded company. It was subsequently acquired by ConocoPhillips. The Defendants include Concho, ConocoPhillips (as Concho's successor-in-interest), Timothy A. Leach (Concho's former Chairman of the Board and Chief Executive Officer), Jack F. Harper (Concho's former President), C. William Giraud (Concho's former Executive Vice President), E. Joseph Wright (Concho's former Chief Operating Officer and Executive Vice President), and Brenda R. Schroer (Concho's former Treasurer and Senior Vice President).[1]

The Consolidated Complaint is 185 pages in length. (Doc. No. 25). It alleges securities fraud under §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Rule 10b-5 implementing § 10(b) of the Act. The Motion to Dismiss (Doc. No. 29) was filed by all

---

[1] Many of these individuals' job titles evolved as they moved from position to position over the years.

Defendants and questioned generally whether Plaintiffs had adequately pleaded an actionable false or misleading statement and "a strong inference" of scienter that is a basic requirement in § 10-b cases. Defendants also questioned whether the statements that Plaintiffs plead as actionable actually fall under the safe harbor protections for forward looking statements found in 15 U.S.C. § 78u-5.

This Court has reviewed the Memorandum and Recommendation *de novo* as it must, given Defendants' objections. The Court has also reviewed the objections, Plaintiffs' responses thereto, and the applicable law. The Court hereby adopts the Memorandum and Recommendation with the exception of its recommendation as to two Defendants: E. Joseph Wright and Brenda R. Schroer. The Court grants the Motion to Dismiss with regard to these two individual Defendants.

The Plaintiffs have described their own Complaint as one based upon a "Reckless Gamble Theory" (Doc. No. 42 at 30) and in support thereof have pleaded various public statements made by certain individual defendants and/or various facts gleaned from former employees that, if true, might support a verdict based upon such a theory. Generally, Plaintiffs' theory is that the Defendants oversold the probable success of the drilling program while underselling the risks involved and gambled on an unproven pattern of well-spacing. (Doc. No. 25 at 36) (It quotes a former employee as follows: "[T]he Dominator project [...] had been too optimistic and aggressive, and failed to adequately weigh the risks with the thought of failure unreasonably remote.") The pleadings concerning the liability of each individual must be pleaded separately. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Conclusory allegations against defendants as a group are insufficient—especially in the present context where the law mandates specific pleading requirements. *See e.g., Southland Sec. Corp. v. INSpire Ins. Sols, Inc.*, 365 F.3d

2

353 (5th Cir. 2004). This Court has reviewed the facts alleged in the Consolidated Complaint in detail and has not found sufficient fact-based claims or contentions as to Wright or Schroer that would amount to a scintilla of scienter. Their signatures on various SEC filings notwithstanding, no facts have been pleaded to support the contention that these two individuals: (1) knew anything about the risks inherent in well-spacing; (2) knew anything untoward was about to or even could occur; or (3) were trying to mislead or hide the true facts from investors.

Indeed, even the Memorandum and Recommendation opinion, which painstakingly analyzed the pleadings contention by contention, relied upon stacked assumptions that were not supported by any factual contentions. It noted that there were "no direct allegations about what Schroer or Wright knew when they signed the SEC filings...." (Doc. No. 38 at 46).

> Instead, Plaintiffs rely on factual allegations of surrounding circumstances to conclude Schroer and Wright knew or were severely reckless in not knowing of fraudulent statements about large-scale development and proved reserves in the Form 10-K. Given the importance of this technique's success across Concho's asset base, **it is reasonable to assume that Wright and Schroer would have familiarized themselves** with the financial condition of taking on the shift to manufacturing mode and the parallel risk associated. Considering the day-to-day activities that would reasonably take place when 90% of a company's budget is engaged in risky endeavors like the weekly executive meetings, the yearly budget meetings, the ratcheting up of resource allocation, and how publicly traded oil and gas companies build their financials that are released in the Form 10-K, the Complaint contains strong circumstantial evidence of conscious misbehavior or recklessness on the part of those who signed the report, namely Schroer and Wright.

(Doc. No. 38 at 46–47) (emphasis added).

The Memorandum and Recommendation's reference to certain factual allegations, while accurate, is unconvincing given that few, if any, of those facts actually concern Wright or Schroer. First, there are no allegations of facts to support the contention that they knew of any false statements about the large-scale development or proven reserves—only speculation. Second, the Memorandum and Recommendation by its very wording makes the assumptions that

3

these two individuals: (1) would have "familiarized themselves"; (2) attended weekly executive meetings; and (3) would have known how publicly traded oil and gas companies build their financials, especially considering the resource allegations. In a vacuum these assumptions might be plausible, but there are no pleaded facts to support this speculation. The Supreme Court has counseled lower courts that these decisions should not be made in a vacuum. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). A court must consider plausible non-culpable explanations as well as inferences favoring the plaintiff. *Id.* at 324. For example, the Consolidated Complaint does discuss Weekly Status Meetings. (Doc. No. 25 at 167–169). These contentions include many factual allegations that purport to originate from former employees. Most of these allegations contain specific facts until the Consolidated Complaint addresses the one category of meetings that Schroer allegedly attended: "According to FE-1 there were weekly Tuesday meetings amongst the executives, including Defendants Giraud, Leach, and Schroer and that Dominator **was likely discussed** during these meetings."[2] (*Id.* at 34) (emphasis added). The only actual facts pleaded were the existence of weekly Tuesday meetings and who attended. The conclusion that Dominator was discussed is only speculation, and, in fact, even that speculation contains two different inherent assumptions—no facts: (1) that Dominator was discussed at all; and (2) that the true nature and status of the project (at least as pleaded by Plaintiffs) was discussed. Given its alleged prominence, the former might be a reasonable assumption. Considering the remainder of the allegations in the Consolidated Complaint concerning the non-disclosure of risks and the fact that the other individual Defendants were not disclosing the extreme risks because they drank "a little too much of their own Kool-Aid" (*Id.* at 36, 158), the latter assumption has no basis at all. *See R2 Investments LDC v. Phillips*, 401 F.3d 638, 644 (5th Cir. 2005). The inference of scienter need not be irrefutable, but it must be cogent and

---

[2] Defendant Wright was not even alleged to have attended the executive or technical group meetings.

4

compelling and at least as compelling as any opposing inference. *Tellabs* at 324. While the Court finds that the facts concerning scienter actually alleged concerning the other individuals suffice, with respect to Wright and Schroer they are practically non-existent.

Plaintiffs have clearly complied with their burden of pleading facts and circumstances with regard to Defendants Harper, Leach, and Giraud, but with regard to Wright and Schroer they have not succeeded. Scienter is an intent to deceive or defraud of a danger known to the defendant or one so obvious it had to have been known. The pleadings do not support that result as to Wright or Schroer. The Memorandum and Recommendation alludes to the concept of severe recklessness, yet reckless conduct is not just negligence or neglect; rather, it is an extreme departure from ordinary care concerning a present danger of misleading buyers that was either known or so obvious it had to be known to a defendant. *Neiman v. Bulmahn*, 854 F.3d 741, 747 (5th Cir. 2017). The alleged facts do not reach this level as to Wright and Schroer.

The objections to the Memorandum and Recommendation are hereby overruled as to Concho/ConocoPhillips, Timothy A. Leach, Jack F. Harper, and C. William Giraud. That being the case, with respect to those Defendants, the Memorandum and Recommendation is adopted and their Motion to Dismiss is hereby denied. The objections with regard to E. Joseph Wright and Brenda R. Schroer are sustained, and, with respect to those two individuals, the Memorandum and Recommendation is not adopted. The Motion to Dismiss filed by Defendants E. Joseph Wright and Brenda R. Schroer is hereby granted, and they are dismissed.

SIGNED at Houston, Texas this 23rd day of June, 2023.

Andrew S. Hanen
United States District Judge