# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Case No.: 4:21-cv-02473 |

# EXPERT REPORT

# OF

# LUCY P. ALLEN

**March 15, 2024**

**TABLE OF CONTENTS**

I.      Scope of Assignment ..................................................................................................1

II.     Qualifications and Remuneration .............................................................................1

III.    Materials Considered ................................................................................................2

IV.     Background................................................................................................................3

V.      Content Analysis of Analyst Reports........................................................................4

        A.  Category A: "Generic" Misstatements.............................................................9

        B.  Category B: "Results and Observations from 2017 and 2018" Misstatements ..........12

        C.  Category C: "Pre-2019 Projections" Misstatements......................................14

VI.     Analysis of the Price Reaction at the Time the Category A Alleged Misstatements
        Were First Made .......................................................................................................17

VII.    Analysis of Plaintiffs' Proposed Common Damages Methodology...................................23

        A.  Mr. Coffman's proposed common damages methodology does not measure
            damages consistent with Plaintiffs' risk materialization theory of liability ...............25

        B.  Plaintiffs' proposed common damages methodology yields economically
            unreasonable results for proposed class members that were pre-merger Concho
            shareholders ..................................................................................................30

        C.  The proposed class members that were former RSP shareholders do not fit
            Plaintiffs' theory ...........................................................................................31

## I.    SCOPE OF ASSIGNMENT

1.    I was asked by counsel for Defendants to analyze three issues.

- First, I was asked to conduct a systematic content analysis of all analyst reports on Concho Resources Inc. ("Concho" or the "Company") following certain alleged misstatements and the alleged corrective disclosure with regard to specific questions.

- Second, I was asked to analyze whether there was a statistically significant price increase in Concho's stock due to the alleged misstatements.

- Third, I was asked to review and comment on Plaintiff's proposed common damages methodology outlined in the Expert Report of Chad Coffman, CFA, dated December 7, 2023 (the "Coffman Report").

## II.    QUALIFICATIONS AND REMUNERATION

2.    I am a Senior Managing Director of NERA Economic Consulting ("NERA") and a member of NERA's Securities and Finance Practice. NERA provides practical economic advice related to highly complex business and legal issues arising from competition, regulation, public policy, strategy, finance, and litigation. NERA was established in 1961 and now employs approximately 500 people in more than 20 offices worldwide. NERA's Securities and Finance Practice, which performs research in securities and financial markets, dates from the early 1970s and employs a research staff of more than 100 professionals holding degrees in economics, finance, and mathematics. The practice group counts among its clients major securities exchanges, risk managers, principals needing valuation services, and parties in litigation.

3.    I have an A.B. from Stanford University, an M.B.A. with a concentration in Finance and Accounting from Yale University, and M.A. and M. Phil. degrees in Economics, also from Yale University. Prior to joining NERA, I was an Economist for both President George H. W. Bush's and President Bill Clinton's Council of Economic Advisers, providing economic analysis on regulation and health care policy issues. In my over 25 years at NERA, I have been engaged as an economic consultant or expert witness in numerous projects involving securities and financial economics. In the course of this work, I have analyzed the effect of

1

information on stock prices of over 100 companies.  My resume with recent publications and testifying experience is included as Appendix A.

4.      NERA is being compensated for time spent by me and my team at standard billing rates and for out-of-pocket expenses at cost.  NERA currently bills for my time at $1,200 per hour.  NERA's fees are not in any way contingent upon the outcome of this matter.

## III.   MATERIALS CONSIDERED

5.      In preparing this report, I considered the following categories of materials (a complete list of materials considered is included as Appendix B):

a)  Consolidated Complaint for Violations of the Federal Securities Laws, filed January 7, 2022 (the "Complaint");

b)  Defendant's Motion to Dismiss Plaintiff's Consolidated Complaint, filed March 8, 2022;

c)  Memorandum And Recommendation, filed February 23, 2023;

d)  Order Adopting Memorandum And Recommendations, filed June 23, 2023;

e)  Lead Plaintiffs' Motion For Class Certification and Appointment of Class Representatives And Class Counsel and Supporting Memorandum Of Law filed December 7, 2023;

f)  Expert Report of Chad Coffman, CFA, dated December 7, 2023 (the "Coffman Report"), including materials considered and turned over;

g)  Analyst reports on Concho from Refinitiv Eikon and documents produced in discovery;

h)  Concho's filings with the Securities and Exchange Commission ("SEC filings") between 2017 and 2020;

i)  Concho's press releases, conference call transcripts and investor presentations from Factiva between 2017 and 2020;

j)  Analysts reports and SEC filings on other oil and gas exploration and production companies;

2

k)  Price, return, market capitalization and trading volume data for Concho and RSP Permian, Inc. ("RSP") from Bloomberg, L.P. and FactSet Research Systems, Inc.;

l)  Price data for market and industry indices from Bloomberg, L.P.;

m)  Institutional holdings data for Concho and RSP from FactSet Research Systems, Inc.;

n)  Legal decisions on class certification and market efficiency; and

o)  Academic literature and textbooks on finance, securities, valuation and statistics.

## IV.   BACKGROUND

6.      In 2018, Concho operated as an "independent oil and natural gas company engaged in the acquisition, development, exploration and production of oil and natural gas properties."[1] Concho's operations were "primarily focused in the Permian Basin" of New Mexico and Texas.[2] On March 28, 2018, Concho announced it would acquire RSP in an all-stock transaction (the "RSP Acquisition").[3] Under the terms of the deal, RSP shareholders received 0.320 Concho shares in exchange for each share of RSP, and Concho shareholders would own 74.5% of the combined company and RSP shareholders would own 25.5%.[4] On July 19, 2018, Concho completed the RSP Acquisition.[5]

---

[1]  Concho FY18 Form 10-K, dated February 20, 2019, p. 2.

[2]  Concho FY18 Form 10-K, dated February 20, 2019, p. 2.

[3]  "Concho Resources Inc. to Acquire RSP Permian, Inc. in All-Stock Transaction," *Concho Press Release,* March 28, 2018.

[4]  "Concho Resources Inc. to Acquire RSP Permian, Inc. in All-Stock Transaction," *Concho Press Release,* March 28, 2018.

[5]  Concho FY18 Form 10-K, dated February 20, 2019, p. 2.

7.      The chart below shows Concho's stock price and trading volume, along with the dates of the alleged misrepresentations, and the alleged corrective disclosure:



**Daily Stock Price and Trading Volume**

## V.    CONTENT ANALYSIS OF ANALYST REPORTS

8.      I was asked by counsel to conduct a systematic content analysis of all analyst reports following certain alleged misstatements and the alleged corrective disclosure with regard to specific questions. In particular, I was asked to code answers to the specific questions listed below based on a content analysis of the analyst reports on Concho following certain of the alleged misstatements and the alleged corrective disclosure.

9.      I was asked to conduct the content analysis with regard to three categories of alleged misstatements listed below.

o   Category A: "Generic" Misstatements,

o   Category B: "Results and Observations from 2017 and 2018" Misstatements and

o   Category C: "Pre-2019 Projections" Misstatements.

4

Counsel provided me a list of the alleged misstatements under each of these three categories -- this list is attached to this report as Appendix C. There are additional alleged misstatements pled in the Complaint that do not fall into any of these three categories – I was not asked to analyze those alleged misstatement.

10.    The specific questions for the content analysis for each of the three categories of alleged misstatements are detailed below.

**Category A: "Generic" Misstatements**

11.    For each analyst report issued <u>after each alleged misstatement</u>, the following was coded:

   a.    Is there any indication in the report that the alleged misstatement <u>caused the analyst to change its valuation</u> of Concho and/or its stock?

   b.    Is there any indication in the report that the alleged misstatement <u>caused the analyst to change its price target</u> for Concho?

   c.    Does the report <u>reference the alleged misstatement</u>?

   d.    For events other than earnings releases, does the report <u>reference the event</u> (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement?

12.    For each analyst report issued <u>after the July 31, 2019 alleged corrective disclosure</u>, the following was coded for each alleged misstatement:

   a.    Is there any indication in the report that the analyst learned the <u>prior misstatement was inaccurate or misleading</u>?

   b.    Is there any indication in the report that the analyst <u>made a connection</u> between the alleged misstatement and the alleged corrective disclosure?

   c.    Does the report <u>reference the alleged misstatement</u>?

   d.    Does the report <u>reference the event</u> (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results?

**Category B: "Results and Observations from 2017 and 2018" Misstatements**

13.    For each analyst report issued <u>after the July 31, 2019 alleged corrective disclosure</u>, the following was coded for each alleged misstatement:

5

a. Is there any indication in the report that the analyst learned the <u>prior misstatement was inaccurate or misleading</u>?

b. Is there any indication in the report that the analyst <u>made a connection</u> between the alleged misstatement and the alleged corrective disclosure?

c. Does the report <u>reference the alleged misstatement</u> other than in tables showing prior results?

d. Does the report <u>reference the event</u> (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results?

**Category C: "Pre-2019 Projections" Misstatements**

14. For each analyst report issued <u>after the July 31, 2019 alleged corrective disclosure</u>, the following was coded for each alleged misstatement:

a. Is there any indication in the report that the analyst learned the <u>prior misstatement was inaccurate or misleading</u>?

b. Is there any indication in the report that the analyst <u>made a connection</u> between the alleged misstatement and the alleged corrective disclosure?

c. Does the report <u>reference the alleged misstatement</u> other than in tables showing prior results?

d. Does the report <u>reference the forecasted item</u> (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results?

**<u>Methodology</u>**

15. A content analysis is a systematic, objective, and replicable method of analyzing text to assess the relative importance of information.[6] Content analyses are often used in fields such as finance, healthcare, and mass communication.[7] In finance, among its many uses, content

---

[6] *See*, for example, Krippendorff, Klaus, "Content Analysis: An Introduction to Its Methodology," (Sage Publications, Inc.: Thousand Oaks, CA, 2nd ed., 2004), Previts, John Gary et al., "A Content Analysis of Sell-Side Financial Analyst Company Reports," *Accounting Horizons* 8(2): 55-70, 1994, Breton, Gaetan and Richard J. Taffler, "Accounting Information and Analyst Stock Recommendation Decisions: A Content Analysis Approach," Accounting and Business Research 31(2): 91-101, 2001; and Tabak, David, "Making Assessments About Materiality Less Subjective Through the Use of Content Analysis," 2007.

[7] *See*, for example, Riffe, Daniel, Stephen Lacy, and Frederick Fico, "Analyzing Media Messages: Using Quantitative Content Analysis in Research," New York: Routledge, 2014.

analysis is used to analyze the information that analyst reports provide to investors beyond earnings forecasts and price targets.[8] Courts have recommended the use of content analyses for analyzing stock price movements.[9]

16.    I conducted a content analysis of the specific questions detailed above for all analyst reports following each Category A alleged misstatement, as well as for all analyst reports following the July 31, 2019 alleged corrective disclosure regarding the three categories of alleged misstatements. Two analysts in my team working independently determined and coded answers to the questions listed above regarding each alleged misstatement for each relevant analyst report. The analysts then compared results and resolved discrepancies.

17.    The content analysis focused on analyst reports issued by banks and investment management firms who participate in conference calls with management, and issue price targets and/or earnings estimates. There are at least 430 reports issued by 30 analysts covering Concho around the alleged Class Period.[10] The analysis excluded analyst reports that are computer generated and/or just summarize publicly available information, such as Watchdog Report, TheScreener, BuySellSignals, Probes Reporter, New Constructs, ValuEngine, Sadif Investment

---

[8]    *See*, for example, Asquith, Paul, Michael B. Mikhail, and Andrea S. Au, "Information content of equity analyst reports," *Journal of Financial Economics* 75, no. 2 (2005): 245-282, Previts, John Gary et al., "A Content Analysis of Sell-Side Financial Analyst Company Reports," *Accounting Horizons* 8(2): 55-70, 1994; and Breton, Gaetan and Richard J. Taffler, "Accounting Information and Analyst Stock Recommendation Decisions: A Content Analysis Approach," *Accounting and Business Research* 31(2): 91-101, 2001.

[9]    *See*, for example, *Bricklayers & Trowel Trades International Pension Fund v. Credit Suisse Securities (USA) LLC*, May 14, 2014, 752 F.3d 82, 92 (1st Cir. 2014), ("Dr. Hakala could also have used content analysis. See, e.g., David Tabak, Making Assessments About Materiality Less Subjective Through the Use of Content Analysis (2007), available at http://www.nera.com/67_5197.htm; Esther Bruegger & Frederick C. Dunbar, *Estimating Financial Fraud Damages with Response Coefficients*, 35 J. Corp. L. 11, 25 (2009) ('[C]ontent analysis' is now part of the tool kit for determining which among a number of simultaneous news events had effects on the stock price.').)"

       *See*, as another example, *Ark. Teacher Ret. Sys. v. Goldman Sachs Group, Inc.*, 77 F.4th 74, 104 (2d Cir. 2023), ("Goldman introduced Dr. Starks' analysis of 880 analyst reports published during the Class Period (both before and after the filing of the Abacus Complaint), none of which reference the conflicts disclosure.") and Brief for Financial Economists as Amici Curiae Supporting Respondents, *Goldman Sachs Group, Inc., et al., v. Arkansas Teacher Retirement System, et al.,* No. 20-222 (U.S., March 2021), ("Trained economists use hard economic data and accepted economic tools to determine the concrete effect of a statement or omission on share price. These tools include event studies, content analysis, valuation models, and an examination of "comparable" events, among others" and "An event study, for example, can still isolate the statement's effect on share price (Torchio, supra, at 163), experts can still conduct content analysis to test whether certain concepts were discussed by market observers (J.A. 605-606, 646-647, 652-659), and so on.").

[10]   The content analysis was based on all analyst reports on Concho available from Refinitiv Eikon and the Company, as well as the analyst reports produced as part of the Coffman Report's turnover materials.

7

Analytics, and Zacks Equity Research. As noted in the Coffman Report, there was "extensive coverage of Concho by securities analysts" during the alleged Class Period.[11]

18.    For the content analysis after the July 31, 2019 alleged corrective disclosure, my team and I reviewed all available analyst reports on Concho issued between July 31, 2019 and the following three trading days. In particular, we reviewed 38 analyst reports on Concho issued by 26 analysts between July 31, 2019 and August 5, 2019. For the content analysis after the Category A alleged misstatements, we reviewed all available analyst reports on Concho issued between the alleged misstatement date and the following three trading days. In particular, we reviewed 209 analyst reports on Concho issued by 29 analysts in the three trading days window following each of the Category A alleged misstatement dates.

19.    Analyst reports are periodic reports issued by professional financial analysts at brokerage firms who perform research and analysis on specific industries and companies.[12] Analysts analyze companies by studying publicly available information, such as SEC filings, as well as participating on conference calls and attending investor conferences where they can ask questions directly to management.  Analysts use this information to model and value companies and industries, using financial techniques such as discounted cash flow models and valuation multiples. Using these valuations, analysts typically issue price targets (*i.e.*, what price they expect the stock of a company to be in a certain time period), provide estimates reflecting their expectations of the company's future financial performance, and give recommendations to buy, hold or sell the stock. Analysts typically issue reports after new information about the company is released. These reports play an important role in disseminating information about a stock and can be a valuable source of information on market knowledge and sentiment at the time.

20.    Analyst reports provide contemporaneous, written documentation of what professional analysts valuing a stock considered to be important to the market, often including commentary on why it was important and what caused the stock price to move. The review of

---

[11]  Coffman Report, ¶33.

[12]  Analysts analyze companies by studying publicly available information, such as SEC filings, as well as participating on conference calls and attending investor conferences where they can ask questions directly to management. *See*, for example, Jonathan Berk and Peter DeMarzo, *Corporate Finance* (Pearson: Boston, MA, 3rd ed., 2014), p. 965 and "Analyzing Analyst Recommendations," *U.S. Securities and Exchange Commission*, accessed at: https://www.sec.gov/about/reports-publications/investor-publications/analyzing-analyst-recommendations.

8

analyst reports is a standard and generally accepted methodology for determining what information is important to the market in valuing a stock, and thus, for determining whether a piece of information is important to investors.[13]

### A. Category A: "Generic" Misstatements

21. The Category A "generic" misstatements include statements about the Company's business, operations and prospects that were generic in nature. For example:

- o "Our operational and financial performance demonstrated our ability to consistently execute, control costs and capitalize on opportunities that strengthen our competitive position."[14]

- o "Our results reflect our focus on large-scale project development, which enables us to maximize ultimate recovery, efficiencies and returns."[15]

22. My team and I performed a systematic and scientific content analysis of all analyst reports issued after the Category A alleged misstatements and after the alleged corrective disclosure.

23. The content analysis of analyst reports issued *after the Category A alleged misstatements* yielded the following results:

---

[13] Courts have relied on analyst reports in determining what information is important to the market in valuing a stock and in determining the cause of stock price movements. *See*, for example, *In Re TECO Energy Inc. Securities Litigation*, 2006 U.S. Dist. LEXIS 18101, at *19 (M.D. Fla. March 30, 2006) ("Specifically, the analyst reports on September 3, 2002, September 23, 2002, October 8, 2002, and January 23, 2003 address ratings cuts, opinions, and predictions regarding TECO's stock value but do not reference any misstatements, omissions, or accounting practices by Defendants as the reason for the bleak forecasts or changes in market conditions.") and *Barrie v. Intervoice-Brite, Inc.*, 2006 U.S. Dist. LEXIS 69299 (N.D. Tex. Sept. 25, 2006) ("Barry's review of analyst reports and the public press also shows that those information sources did not link the June 6 disclosure to any prior earnings or revenues that were supposedly overstated."). The First Circuit has also recommended analyzing contemporaneous content for explaining stock price movements, citing a paper that specifically describes performing content analysis of analyst reports and commentary. *Bricklayers & Trowel Trades International Pension Fund v. Credit Suisse Securities (USA) LLC*, 752 F.3d 82, 92 (1st Cir. 2014), citing David Tabak, "Making Assessments About Materiality Less Subjective Through the Use of Content Analysis," 2007.

Academics rely on analyst reports in analyzing what information is important to the market in valuing a stock. *See*, for example, Previts, John Gary et al., "A Content Analysis of Sell-Side Financial Analyst Company Reports," *Accounting Horizons* 8(2): 55-70, 1994.

[14] Complaint, ¶169, citing to Concho's February 20, 2018 earnings release for FY17.

[15] Complaint, ¶213, citing to Concho's May 1, 2018 earnings release for Q1 2018.

a. For each alleged misstatement, there was <u>no</u> indication in any of the analyst reports that the alleged misstatement <u>caused the analyst to change its valuation</u> of Concho and/or its stock;

b. For each alleged misstatement, there was <u>no</u> indication in any of the analyst reports that the alleged misstatement <u>caused the analyst to change its price targets</u> for Concho;

c. For 29 of the 33 Category A alleged misstatements, there was no reference to the alleged misstatement in any of the analyst reports. There were 4 analyst reports that mention 4 of the alleged misstatements. The analysts that do reference the alleged misstatements appear to be referencing the alleged misstatement in a different context than what is alleged to be misstated in the Complaint. For example, Plaintiffs claim that a slide from a presentation that accompanied Concho's 2Q18 earnings call on August 2, 2018 was a misstatement.[16] Plaintiffs include a copy of the slide in their Complaint and claim that the alleged misstatement in the slide was Concho's claim "that 'manufacturing mode' 'unlocks significant value' and 'optimizes well performance and increases resource recovery.'"[17] A Raymond James analyst report issued on August 2, 2018 included a copy of this slide in its report.[18] However, the Raymond James analysts included the slide, which includes a map of Concho's and RSP's projects, to highlight the geographic location of the Company's projects and did not mention or discuss the specific language Plaintiffs allege was a misstatement.

d. For the 14 alleged misstatements that were made in earnings call, 76% of analyst reports did not mention the earnings call at all. For the 2 alleged misstatements that were made in SEC Forms 10-K, none of the analysts mentioned the Forms 10-K. For the 9 alleged misstatements made in investor conferences, none of the analyst reports mentioned these conferences. (There was only one analyst report issued after the March 5, 2018 Raymond James Institutional Investors Conference – the analyst did not mention the conference. There were four analyst reports

---

[16] Complaint, ¶¶233-235.

[17] Complaint, ¶¶233-234.

[18] Raymond James, August 2, 2018.

10

issued after the May 15, 2018 Citi Global Energy and Utilities Conference – none of them mentioned the conference. There were two analyst reports issued after the September 5, 2018 Barclays CEO Energy Power Conference – none of them mentioned the conference. There were three analyst reports issued after the March 4, 2019 Raymond James Institutional Investors Conference – none of them mentioned the conference.) [19]

24. There are instances when analysts use words that are similar to the words in the generic alleged misstatement but are actually not referring to the alleged misstatement itself. For example, Plaintiffs claim that the following statement made by the Company on its May 1, 2018 earnings release was materially false and misleading:

> "***Our results reflect our focus on large-scale project development, which enables us to maximize ultimate recovery, efficiencies and returns.***" [Complaint, ¶¶213-214, emphasis in Complaint]

25. Although the Credit Suisse analysts mention some of the same words from the alleged misstatement in its May 1, 2018 report, they are noting that Concho has already transitioned a large percentage of their development program to large-scale projects, and not the alleged misstatement.

> "We'd note that CXO has already transitioned to such large-scale projects, which make up 65% of the 2018 program." [Credit Suisse, 5/1/18]

26. The content analysis of analyst reports issued *after the alleged corrective disclosure* with regard to the Category A alleged misstatements yielded the following results:

  a. For each alleged misstatement, there was <u>no</u> indication in any of the analyst reports that the analyst learned the <u>prior misstatement was inaccurate or misleading</u>;

  b. For each alleged misstatement, there was <u>no</u> indication in any of the analyst reports that the analyst <u>made a connection</u> between the alleged misstatement and the alleged corrective disclosure;

  c. For each alleged misstatement, there was <u>no</u> indication that any of the analyst reports <u>referenced the alleged misstatement</u>;

---

[19]   See Appendix D for the results of the content analysis.

11

d. Of the 17 events (earnings release, earnings/investor call, analyst conference or SEC filing) in which the alleged misstatements were made, 14 were not even mentioned by *any* analyst report after the alleged corrective disclosure. Of the 3 events that *were* mentioned by analyst reports, the majority of analyst reports did not mention the event and none mentioned the alleged misstatements.

27. In sum, the content analysis reveals there is no link between the alleged misstatements in Category A and the alleged corrective disclosure. *At the time that the alleged misstatements* in Category A were made, the market evidence shows that no analyst changed their valuation of Concho or its stock as a result of any of those alleged misstatements. Furthermore, there is no indication that any alleged misstatement in Category A caused any analyst to change its price target for Concho. Thus, the market evidence is consistent with analysts finding the alleged misstatements to be merely generic statements that did not affect the value of Concho's stock.

28. *At the time of the alleged corrective disclosure*, the content analysis demonstrates that there is no link between the alleged misstatements in Category A and the alleged corrective disclosure but instead a mismatch between them. Not one of the analyst reports issued after the alleged corrective disclosure indicated that the information in the alleged corrective disclosure corrected any of the alleged misstatements in Category A or made a connection between the alleged misstatement and the alleged corrective disclosure. Instead, analysts focused on Concho's specific financial results for the second quarter of 2019 and its financial guidance given these new results. Thus, the price decline following the alleged corrective disclosure cannot provide any evidence regarding the price impact of the alleged misstatements in Category A.

## B. Category B: "Results and Observations from 2017 and 2018" Misstatements

29. The Category B "results and observations from 2017 and 2018" misstatements include statements related to the Company's financial and operational results for quarters in 2017 and 2018, before the alleged corrective disclosure. For example:

12

o "Delivered **outstanding results from the Company's large-scale development projects in the Northern and Southern Delaware Basin** and in the Midland Basin," (emphasis in original).[20]

o "But certainly -- I think what **we're pleased by is that as we moved into this large- scale project development, we're seeing the results we expect**, and it's enabling us to do some pretty interesting things from testing and continuing to understand the best way to do it," (emphasis in original).[21]

30.     My team and I performed a systematic and scientific content analysis of all analyst reports issued after the alleged corrective disclosure. The content analysis of analyst reports issued *after the alleged corrective disclosure* with regard to the Category B alleged misstatements yielded the following results:

a.  For each alleged misstatement, there was <u>no</u> indication in any of the analyst reports that the analyst learned the <u>prior misstatement was inaccurate or misleading</u>;

b.  For each alleged misstatement, there was <u>no</u> indication in any of the analyst reports that the analyst <u>made a connection</u> between the alleged misstatement and the alleged corrective disclosure;

c.  For each alleged misstatement, there was <u>no</u> indication that any of the analyst reports <u>referenced the alleged misstatement,</u> other than in tables showing prior results;

d.  Of the 9 events (earnings release, earnings/investor call, analyst conference or SEC filing) in which alleged misstatements were made, 7 were not referenced by *any* analyst report. Of the 2 events that *were* mentioned in analyst reports, they were both mentioned in fewer than 10% of the reports and none mentioned the alleged misstatements.

31.     Plaintiffs do not appear to claim that the financial and operational results that Concho announced for these quarters in the alleged misstatements were corrected by the alleged

---

[20]   Complaint, ¶170, citing to Concho's February 20, 2018 earnings release for Q4 & FY 2017.

[21]   Complaint, ¶277, citing to Concho's February 20, 2019 earnings call discussing Q4 & FY 2018.

13

corrective disclosure or at any other point in time, or that the market learned that these previously announced results were incorrect.[22]

32.    In sum, there is no basis to conclude that the alleged corrective disclosure was tied to the alleged misstatements in Category B, and the content analysis indicates that the alleged corrective disclosure was not considered corrective of the alleged misstatements in Category B.  As a result, the price decline following the alleged corrective disclosure does not provide any evidence regarding the price impact of the alleged misstatements in Category B.

### C.    Category C: "Pre-2019 Projections" Misstatements

33.    The Category C "pre-2019 projections" misstatements include statements related to the Company's financial and operational projections for periods pre-2019, prior to the alleged corrective disclosure. For example:

- o  "***As we look to 2018, our total capital investment is expected to be $2 billion, with 93% allocated for drilling and completion activity. This level of investment is expected to grow oil approximately 20%. Importantly, approximately two-thirds of our development capital will be directed to large-scale, multi-zone projects,***" (emphasis in original).[23]

- o  "At December 31, 2017, substantially all of our 840 MMBoe total estimated proved reserves were located in our core operating areas and consisted of approximately 60 percent oil and 40 percent natural gas. We have assembled a multi-year inventory of horizontal development and exploration projects across our four core operating areas."[24]

34.    My team and I performed a systematic and scientific content analysis of all analyst reports issued after the alleged corrective disclosure. The content analysis of analyst reports issued *after the alleged corrective disclosure* with regard to the Category C alleged misstatements yielded the following results:

- a.  For each alleged misstatement, there was <u>no</u> indication in any of the analyst reports that the analyst learned the <u>prior misstatement was inaccurate or misleading</u>;

---

[22]  Complaint, ¶¶298-300, 302-305.

[23]  Complaint, ¶185, citing to Concho's February 21, 2018 earnings call for Q4 & FY 2017.

[24]  Complaint, ¶182, citing to Concho's Form 10-K for 2017 filed on February 21, 2018.

b. For each alleged misstatement, there was <u>no</u> indication in any of the analyst reports that the analyst <u>made a connection</u> between the alleged misstatement and the alleged corrective disclosure;

c. For each alleged misstatement, there was <u>no</u> indication that any of the analyst reports <u>referenced the alleged misstatement,</u> other than in tables showing prior results;

d. Of the 5 events (earnings release, earnings/investor call, analyst conference or SEC filing) in which alleged misstatements were made, <u>none</u> were referenced in any of the analyst reports.

35.   Plaintiffs do not appear to claim that these pre-2019 projections were corrected by the alleged corrective disclosure or at any other point in time, or that the market learned from the alleged corrective disclosure that these previously announced projections were incorrect. [25]

36.   Thus, as with the Category B statements, the content analysis indicates that the alleged corrective disclosure was not considered corrective of the alleged misstatements in Category C, and there is no basis to infer that these alleged misstatements had a price impact on Concho's stock based on the price drop following the alleged corrective disclosure.

37.   Regarding Alleged Misstatement C-4, Concho's statement that the Company expected "to grow total production at a compound annual growth rate of 20% from 2017 to 2020" on February 21, 2018, this alleged misstatement was made before the RSP Acquisition, which essentially made the statement moot.[26] Alleged Misstatement C-4 was made on February 21, 2018, five months before the RSP Acquisition was completed, and thus would not account for the change in the Company's growth expectations after the acquisition.[27] The RSP Acquisition, announced on March 28, 2018, was valued at approximately $9.5 billion, representing over 25% of the market capitalization of the combined entity.[28] The RSP assets acquired by Concho included 92,000 net acres in the Permian Basin, as well as 55.5 thousand

---

[25]  Complaint, ¶¶298-300, 302-305.

[26]  Complaint, ¶174.

[27]  Complaint, ¶174, and Concho 4Q17 Earnings Call, February 21, 2018.

[28]  "Concho Resources Inc. to Acquire RSP Permian, Inc. in All-Stock Transaction," *Concho Press Release,* March 28, 2018. According to FactSet Research Systems, Inc., the market capitalization of Concho and RSP was $30B. on March 27, 2018, the day before the announcement of the RSP acquisition.

15

Boe per day of production as of 4Q17.[29] The RSP Acquisition was completed on July 19, 2018.[30] After the acquisition, Concho updated its total production guidance to reflect the RSP assets and did not separate guidance for the RSP assets from pre-acquisition Concho assets.[31] Thus, the RSP Acquisition essentially made Alleged Misstatement C-4 moot, and the price decline following the alleged corrective disclosure does not provide any evidence regarding the price impact of this alleged misstatement.[32] Moreover, the content analysis indicates that according to the market, there is no link between the alleged corrective disclosure and Alleged Misstatement C-4.[33] Following the alleged corrective disclosure, not a single analyst report indicated that the alleged corrective disclosure was corrective of this alleged misstatement – in fact, no analyst report even referenced Alleged Misstatement C-4.

38.    Regarding Alleged Misstatements C-5 and C-6, Concho's statements that "estimated proved reserves totaled 840 MMBoe" in February 2018,[34] the content analysis indicates that no analyst report issued following the alleged corrective disclosure referenced either of these alleged misstatements.[35] Nor is there any evidence that the corrective disclosures actually corrected this statement. No analyst mentioned after the alleged corrective disclosure anything to suggest that proved reserves were not 840 MMBoe as of the time of the alleged misstatements. Concho's proved reserves as of December 31, 2019, after the alleged corrective disclosure, were noted by the Company and analysts to be "1,002 MMBoe," higher than the

---

[29]   "Concho Resources Inc. to Acquire RSP Permian, Inc. in All-Stock Transaction," *Concho Press Release,* March 28, 2018.

[30]   "Concho Resources Inc. Completes Acquisition of RSP Permian, Inc.," *Concho Press Release,* July 19, 2018.

[31]   *See*, for example, "Concho Resources Inc. Reports Second-Quarter 2018 Results," *Concho Press Release,* August 1, 2018, which states that "Concho updated its 2018 production and capital program outlook to reflect the RSP transaction. The Company's guidance for third-quarter and full-year 2018 includes production (on a two-stream basis) and capital from RSP beginning on the acquisition closing date of July 19, 2018."

[32]   Even if this alleged misstatement had not become moot by the time of the alleged corrective disclosure, it still would not have been "corrected" by the alleged corrective disclosure because Concho's total production growth between the alleged misstatement and alleged corrective disclosure, July 31, 2019, had exceeded the 20% growth estimate in the alleged misstatement. In fact, Concho's total production was 193Mboepd in 2017 vs 263Mboepd in 2018, a 36% growth rate from FY17 to FY18, and 193Mboepd in 2017 vs. 331Mboepd in 2019, a 31% compound annual growth rate from FY17 to FY19. *See* Concho FY17 Earnings Release, dated February 20, 2018, Concho FY18 Earnings Release, dated February 19, 2019 and Concho FY19 Earnings Release, dated February 18, 2020.

[33]   See Appendix C for a full list of the alleged misstatements.

[34]   Complaint, ¶¶178, 182.

[35]   See Appendix D for the results of the content analysis.

16

reserves at the alleged misstatements.[36] Thus, the price drop following the alleged corrective disclosure cannot serve as any basis to infer that either of these alleged misstatements impacted Concho's stock price when made.

39.     Regarding Alleged Misstatements C-7 and C-8, Concho's statements regarding the projected $2 billion of synergies from the RSP Acquisition,[37] the alleged corrective disclosure makes no mention of the RSP Acquisition or its synergies.[38] Moreover, the content analysis indicates that not one analyst report issued after the alleged corrective disclosure mentioned these alleged misstatements.[39] Thus, there is no basis to infer that these alleged misstatements had a price impact on Concho's stock based on the price drop following the alleged corrective disclosures.

## VI.     ANALYSIS OF THE PRICE REACTION AT THE TIME THE CATEGORY A ALLEGED MISSTATEMENTS WERE FIRST MADE

40.     From my review of the Complaint, I do not understand Plaintiffs to be claiming that the alleged misstatements in Category A increased the alleged inflation in the stock price when made. [40] However, I was asked to analyze whether there was a statistically significant price increase due to the alleged misstatements in Category A.

41.     An event study can be used to test whether a stock's price reacts on the date of a particular announcement. An event study is a commonly accepted statistical analysis that measures the movement in a stock's price after an event or public announcement, typically adjusting for the movement in the overall market and/or industry.[41] Academics often use an

---

[36]   Complaint, ¶314, citing to Concho's FY19 Form 10-K, dated February 19, 2019, p. 2.

[37]   Complaint, ¶¶ 206, 209-210.

[38]   Concho's earnings release for Q2 2019, dated July 31, 2019, Concho's 2Q19 Earnings Call, dated August 1, 2019.

[39]   See Appendix D for the results of the content analysis.

[40]   Complaint, ¶¶298-300, 302-305.

[41]   *See*, for example, Alexander, Janet C., "The Value of Bad News in Securities Class Actions," *UCLA Law Review*, 41: 1994, Fischel, Daniel R., "Use of Modern Finance Theory in Securities Fraud Cases Involving Actively Traded Securities," *The Business Lawyer* 38: 1982, and Dunbar, Frederick C., and David I. Tabak, "Materiality and Magnitude: Event Studies in the Courtroom," *Litigation Services Handbook: The Role of the Financial Expert* (John Wiley & Sons, Inc.: New York, NY, 3rd ed., 2001), ch. 19.

17

event study to determine how stock prices respond to new information.[42] An event study typically uses a statistical analysis called a regression to estimate the relationship between the company's daily stock returns and the daily returns of market and/or industry indices, often over a control period.[43] Using the regression results and the returns of the indices, the predicted stock price movement and excess stock price movement (or the amount the stock price moves in excess of the predicted amount) can be calculated for the day or period being tested. Then, the statistical significance of the excess stock price movement can be tested.[44] If a price reaction is not statistically significant, it is within the range of normal expected daily variation in stock prices.

42.    In an efficient market, publicly available information is rapidly impounded into the stock price.[45] Accordingly, if information material to investors is disclosed in an efficient market, one would expect a significant reaction in the stock price to the first public announcement of such material news, while confirmatory or repeated news (*i.e.* news that has

---

[42]    *See*, for example, MacKinlay, A. Craig, "Event Studies in Economics and Finance," *Journal of Economic Literature*, 35: 1997, and Bowman, Robert G., "Understanding and Conducting Event Studies," *Journal of Business Finance & Accounting* 10(4): 1983.

[43]    Regression analysis is used to estimate the relationship between two or more variables. *See*, for example, Hogg, Robert V. and Elliot A. Tanis, *Probability and Statistical Inference* (Prentice Hall: Upper Saddle River, NJ, 5th ed., 1997).

[44]    The results of the event study are based on the 5% significance level, the standard typically used. *See*, for example, Freedman, David A., and David H. Kaye, "Reference Guide on Statistics," *Reference Manual on Scientific Evidence* (Washington, D.C.: The National Academies Press, 3rd ed., 2011), pp. 211-302, and Fisher, Franklin M., "Multiple Regression in Legal Proceedings," *Columbia Law Review*, 80: 1980.

[45]    *See*, for example, Shleifer, Andrei, Inefficient Markets (Oxford University Press: New York, NY, 2000), p. 5 ("The principal hypothesis following from quick and accurate reaction of prices to new information is that stale information is of no value in making money, as Fama (1970) points out. […] The quick and accurate reaction of security prices to information, as well as the non-reaction to non-information, are the two broad predictions of the efficient markets hypothesis."). See, as another example, Shiller, Robert J., "From Efficient Markets Theory to Behavior Finance," *Journal of Economic Perspective*, 17.1 (2003), 83-104 ("Different forms of the efficient markets model differ in the choice of the discount rate in the present value, but the general efficient markets model […] asserts that any surprising movements in the stock market must have at their origin some new information about the fundamental value [of a share]").

*See*, also, Cornell, Bradford, *Corporate Valuation* (McGraw-Hill: New York, NY, 1993), pp. 38, 41-42, Brealey, Richard A., Stewart C. Myers and Franklin Allen, *Principles of Corporate Finance* (McGraw-Hill: New York, NY, 10th ed., 2011), p. 330, Bodie, Zvi, Alex Kane, and Alan J. Marcus, *Investments* (McGraw-Hill: New York, NY, 10th ed., 2014), p. 351, and Berk, Jonathan and Peter DeMarzo, *Corporate Finance* (Pearson: Boston, MA, 3rd ed., 2014), pp. 295-296.

18

already been publicly disclosed) should not impact the market or cause a statistically significant price reaction.[46]

43.    I tested Concho's stock price reactions using both the event study methodology put forward by Mr. Coffman as well as an alternative event study methodology. Mr. Coffman's event study model uses the S&P 500 Total Return Index, an index of 500 large companies listed on the NYSE and the NASDAQ, to control for market movements, and an equal weighted index Mr. Coffman constructed using constituents of the S&P 500 Oil & Gas Exploration and Production Index to control for industry movements.[47] Mr. Coffman uses a rolling control period of 120 trading days prior to each event he tests, except during the 120 trading day period after the announcement of the RSP Acquisition.[48] The Coffman Report notes that the RSP Acquisition "altered the makeup of the Company, as well as what information would be considered relevant by market participants, and therefore also potentially impacted the return-generating process (*i.e.*, the relationship between Concho Common Stock and market factors)."[49] For events in the 120 trading day period following the announcement of the RSP Acquisition, March 28, 2018

---

[46]    *See*, for example, Bodie, Zvi, Alex Kane, and Alan J. Marcus, *Investments* (McGraw-Hill: New York, NY, 8th ed., 2009), p. 345 and Stephen A. Ross, Randolph Westerfield, and Jeffrey F. Jaffe, *Corporate Finance* (McGraw-Hill/Irwin: Boston, MA, 6th ed., 2002), p. 351 ("According to the efficient-market hypothesis, a stock's abnormal return […] should reflect the release of information at the same time[.] Any information released before then, though, should have no effect on abnormal returns in this period, because all of its influence should have been felt before. In other words, an efficient market would already have incorporated previous information into prices.").

*See* also, for example, Expert Rebuttal Report of Chad Coffman, *In Re. Banco Bradesco S.A. Securities Litigation* (1:16-cv-04155), dated December 14, 2018 ("I agree that statements that repeat information already disclosed to investors are not expected to impact the price of a security trading in an efficient market.") and Coffman Deposition, 35:7-36:3 ("Q. Okay. But if a company states a particular fact and then states that same fact again without any significant new context, then that wouldn't generally be considered new news? A. […] [I]f a company is just stating a fact and they had previously stated that fact, and there's absolutely no reason to believe that fact had changed or that the fact that they can still report that fact has no further economic meaning, then I think you're right.").

Courts have similarly noted that confirmatory news should not cause a statistically significant price reaction. See, for example, Greenberg v. Crossroads Sys., Inc., 364 F.3d 657 (5th Cir. 2004). ("[C]onfirmatory information has already been digested by the market and will not cause a change in stock price.").

[47]    Coffman Report, ¶49. Mr. Coffman's industry index excludes Concho, and its returns are net of Mr. Coffman's market index.

[48]    Coffman Report, ¶50. Mr. Coffman excludes earnings announcements and the alleged corrective disclosure date from his control period. Coffman Report, Exhibits 5-7.

[49]    Coffman Report, ¶50.

19

through September 17, 2018, Mr. Coffman uses that 120 trading day period as a fixed control period.[50]

44.    The alternative event study controls for industry movements with the S&P Oil & Gas Exploration & Production Select Industry Index (the "S&P E&P Index"), an off-the-shelf index of publicly traded oil and gas exploration and production companies, after removing the effects of the returns of Concho's stock price.[51] The alternative event study uses a rolling control period of 252 trading days, or approximately one calendar year, prior to each event.[52]

45.    According to both my own event study and the Coffman Report's event study, there was no statistically significant increase on 12 of the 13 trading days following the Category A alleged misstatements. These results are shown in the table below:

| | | | | Coffman Event Study | | Alternative Event Study | |
|---|---|---|---|---|---|---|---|
| | Event Date | Reaction Date[2] | Event | % Price Reaction | Stat. Sig. Increase? | % Price Reaction[1] | Stat. Sig. Increase?[3] |
| 1. | 2/20/18 - 2/21/18 | 2/21/18 | 4Q17 and FY17 Earnings Release and Earnings Call | 3.7% | Yes | 3.0% | Yes |
| 2. | 2/21/18 | 2/22/18 | FY17 10-K | -1.6% | No | -1.7% | No |
| 3. | 3/5/18 | 3/5/18 | Raymond James Institutional Investors Conference | 0.0% | No | 0.2% | No |
| 4. | 3/28/18 | 3/28/18 | RSP Acquisition Announcement and Call | -6.9% | No | -8.3% | No |
| 5. | 5/1/18 - 5/2/18 | 5/2/18 | 1Q18 Earnings Release and Earnings Call | 1.0% | No | -0.5% | No |
| 6. | 5/15/18 | 5/15/18 | Citi Global Energy Utilities Conference | -1.2% | No | -0.9% | No |
| 7. | 8/1/18 - 8/2/18 | 8/2/18 | 2Q18 Earnings Release and Earnings Call | -0.9% | No | -1.2% | No |
| 8. | 9/5/18 | 9/5/18 | Barclays CEO Energy Power Conference | -0.1% | No | 0.8% | No |
| 9. | 10/30/18 - 10/31/18 | 10/31/18 | 3Q18 Earnings Release and Earnings Call | 2.1% | No | 0.7% | No |
| 10. | 2/19/19 - 2/20/19 | 2/20/19 | 4Q18 and FY18 Earnings Release and Earnings Call | -8.2% | No | -8.3% | No |
| 11. | 2/20/19 | 2/21/19 | FY18 10-K | -5.4% | No | -5.1% | No |
| 12. | 3/4/19 | 3/4/19 | Raymond James Institutional Investors Conference | -0.7% | No | -0.6% | No |
| 13. | 4/30/19 - 5/1/19 | 5/1/19 | 1Q19 Earnings Release and Earnings Call | -2.7% | No | -2.8% | No |

**Concho Stock Price Reactions Following Alleged Misrepresentations**

Notes and Sources:

Data from Bloomberg L.P. and "CONCHO_COFFMAN_0007729.xlsx." Events from the Complaint.

[1] Returns are predicted using the daily percent returns of Concho as a function of the daily percent returns of the S&P E&P Index after removing the effects of the returns of Concho's stock price, regressed over 252 trading days (approximately one calendar year) before the event days, except from March 28, 2018 through March 29, 2019, where that trading period is used as a fixed control period. The control periods exclude all trading days with earnings announcements.

[2] If the event occurs after market close on the event date, the reaction date is the following trading day.

[3] Significance is based on the price reaction's t-statistic, calculated as the price reaction divided by the standard error of the regression over the control period. "Yes" indicates that the price increase is statistically significant at the 5% level.

---

[50]    Coffman Report, ¶50.

[51]    Data obtained from Bloomberg, L.P. using the ticker SPSIOP. To remove the effect of the returns of Concho's stock price on the industry index, I used the weight of Concho's stock in the S&P E&P Index on each day. The S&P E&P Index includes "[s]tocks […] classified in the GICS Integrated Oil & Gas, Oil & Gas Exploration & Production and Oil & Gas Refining & Marketing sub-industries." *See*, "S&P Oil & Gas Exploration & Production Select Industry Index," *S&P Dow Jones Indices*, as of February 29, 2024.

[52]    Consistent with Mr. Coffman's event study, the alternative event study uses a fixed control period for events in the 252 trading day period following the announcement of the RSP Acquisition, March 28, 2018 through March 28, 2019. The fixed control period is the 252 trading day period following the announcement of the RSP Acquisition.

20

46.    Regarding the one alleged misstatement date that did have a statistically significant increase, February 21, 2018, I reviewed analyst commentary following the earnings release and earning call made on February 20-21, 2018 to determine whether there was any evidence that the Category A alleged misstatements caused the statistically significant price increase on February 21, 2018. I found no evidence that the price increase on this date was due to the Category A alleged misstatements, but instead found that the price increase was due to positive news unrelated to the Category A alleged misstatements.[53]

47.    In particular, rather than attributing the price increase on this date to the Category A alleged misstatements, analyst commentary indicates that the price increase on this date was due to Concho's 4Q17 financial and production results beating consensus estimates and the Company's guidance, as well as better than expected production guidance for 1Q18. For example, analysts stated:

> "JPM View: **Stock Reaction-Positive**. We think the magnitude of **the 4Q17 beat** (3% oil beat and 8% cash flow beat), **favorable 1Ql8 volume guide**, and in-line 2018 capex guide relative to the Street should carry the day..." [J.P. Morgan, 2/20/18, emphasis in original]

> "Another strong operating quarter from CXO with oil-levered **production ~3% above the high end of guidance, SCI, and Street expectations** [...] **EBITDA exceeded SCI/Street expectations** by 9% and 10%, respectively." [Piper Sandler, 2/20/18, emphasis added]

> "Concho reported a **strong 4Q17 with total/oil production well above expectations**, while realizations/operating costs also beat, partially offset by higher capex. **Guidance for 1Q18 also beat expectations** and positions Concho well versus 2018 guidance, which was in line on volumes and capex." [BMO, 2/20/18, emphasis added]

---

[53]    The Category A alleged misstatements were made in Concho's 4Q17 earnings release on February 20, 2018 and earnings call on February 21, 2018. In the earnings release, which was released after market hours on February 20, Plaintiffs claim that Defendants misstated, for example, that Concho was "**collecting valuable data that helps the Company optimize lateral placement, completion design and facilitates planning**" and "**utilizing leading-edge technologies, including fiber optic monitoring, to collect valuable proprietary data with real-time and long-term implications for full-field optimization**" (Complaint, ¶176, emphasis in Complaint). In the earnings call, which occurred before market hours on February 21, Plaintiffs claim that Defendants falsely stated, for example, that Concho's "**transition to large-scale, multi-well projects has been an important development that will continue to drive growth, innovation and efficiencies**" and "[w]hile our strategy is the same, the development of our inventory is more sophisticated and creates an opportunity to extend our competitive edge" (Complaint, ¶¶189-190, emphasis in Complaint). *See* Appendix C for a full list of the Category A alleged misstatements on February 20, 2018 and February 21, 2018.

21

48.     Moreover, the alleged misstatements regarding Concho's transition to large-scale development made on February 20-21, 2018 were nearly identical to earlier statements made by the Company. As discussed above, in an efficient market, confirmatory or repeated news (*i.e.*, news that had already been publicly disclosed) should not impact the market or cause a statistically significant price reaction.[54]

49.     For example, Plaintiffs claim as a misstatement the following Concho statement from its February 20, 2018 earnings release for 4Q17:

> "From these projects, Concho is collecting *valuable data that helps the Company optimize lateral placement, completion design and facilitates planning*." [Complaint, ¶176, emphasis in Complaint]

The Company made essentially the exact same statement in its prior quarter earnings release on October 31, 2017:

> "Concho is collecting *valuable data that will further optimize lateral placement, completion design and facilities planning.*"[Concho 3Q17 Earnings Release, October 31, 2017, emphasis added.]

50.     As another example, Plaintiffs claim as a misstatement the following Concho statement from its February 20, 2018 earnings release for 4Q17:

> "Concho is **utilizing leading-edge technologies, including fiber optic monitoring, to collect valuable proprietary data with real-time and long-term implications for full-field optimization**." [Complaint, ¶176, emphasis in Complaint]

---

[54]  *See*, for example, Bodie, Zvi, Alex Kane, and Alan J. Marcus, *Investments* (McGraw-Hill: New York, NY, 8th ed., 2009), p. 345 and Stephen A. Ross, Randolph Westerfield, and Jeffrey F. Jaffe, *Corporate Finance* (McGraw-Hill/Irwin: Boston, MA, 6th ed., 2002), p. 351 ("According to the efficient-market hypothesis, a stock's abnormal return […] should reflect the release of information at the same time[.] Any information released before then, though, should have no effect on abnormal returns in this period, because all of its influence should have been felt before. In other words, an efficient market would already have incorporated previous information into prices.").

*See also*, for example, Expert Rebuttal Report of Chad Coffman, *In Re. Banco Bradesco S.A. Securities Litigation* (1:16-cv-04155), dated December 14, 2018 ("I agree that statements that repeat information already disclosed to investors are not expected to impact the price of a security trading in an efficient market.") and Coffman Deposition, 35:7-36:3 ("Q. Okay. But if a company states a particular fact and then states that same fact again without any significant new context, then that wouldn't generally be considered new news? A. […] [I]f a company is just stating a fact and they had previously stated that fact, and there's absolutely no reason to believe that fact had changed or that the fact that they can still report that fact has no further economic meaning, then I think you're right.").

Courts have similarly noted that confirmatory news should not cause a statistically significant price reaction. See, for example, Greenberg v. Crossroads Sys., Inc., 364 F.3d 657 (5th Cir. 2004). ("[C]onfirmatory information has already been digested by the market and will not cause a change in stock price.").

22

The company made the following statements in its prior quarter earnings release:

> "Leveraging **real-time fiber optic data** to monitor completion effectiveness […] **Optimize** well spacing and development pattern;" [BofA Global Energy Conference Presentation, November 16, 2017, emphasis added]

51.     In sum, according to both my own event study and the Coffman Report's event study, there was no statistically significant increase on 12 of the 13 trading days following the Category A alleged misstatements. Regarding the one alleged misstatement date that did have a statistically significant increase, February 21, 2018, I found no evidence that the price increase on this date was due to the Category A alleged misstatements, but instead found that the price increase was due to positive news unrelated to the Category A alleged misstatements. Moreover, the Category A alleged misstatements made on February 20-21, 2018 were nearly identical to earlier statements made by the Company and did not provide new information about Concho's value. Thus, given Plaintiffs' claim that Concho traded in an efficient market during the alleged Class Period, the increase in Concho's stock price on February 21, 2018 cannot be attributed to the Category A alleged misstatements.

## VII.   ANALYSIS OF PLAINTIFFS' PROPOSED COMMON DAMAGES METHODOLOGY

### Mr. Coffman's proposed common damages methodology

52.     The Coffman Report claims that "damages in this action are subject to a well-settled, common methodology that can be applied to the Class as a whole."[55] According to Mr. Coffman, the well-settled, common damages methodology is the "out-of-pocket" method.[56] The "out-of-pocket" method, however, does not itself specify a methodology for how damages should be calculated. The term "out-of-pocket" is a general term that has been used by courts to differentiate general types of damages, not how to actually calculate them. In particular, courts have used the term "out-of-pocket" to differentiate out-of-pocket losses from benefit-of-the-bargain losses.[57] Courts generally define out-of-pocket losses as the difference between the value

---

[55]   Coffman Report, ¶84.

[56]   Coffman Report, ¶84.

[57]   *See*, for example, *In re Daimlerchrysler AG Securities Litigation*, 294 F. Supp. 2d 616 (D. Del. 2003), *In re Real Estate Associates Ltd. Partnership Litigation*, 223 F.Supp.2d 1142 (C.D. Cal. 2002), and *Goldkrantz v. Griffin*, 1999 WL 191540 (S.D.N.Y. Apr. 6, 1999).

that would have been received had there been no fraud and the value actually received, while benefit-of the bargain losses are defined as the difference between the value that was bargained or expected to have been received absent the fraud and the value actually received. As explained by the court in *In re Daimlerchrysler AG Securities Litigation*:[58]

> "Out-of-pocket losses are measured by 'the difference between the fair value of all that the seller received and the fair value of what he would have received had there been no fraudulent conduct.' […] 'Benefit of the bargain damages' are measured by the difference between what the plaintiff expected he would have received absent the defendant's fraud, and the amount the plaintiff actually received." [*In re Daimlerchrysler AG Securities Litigation*, 294 F. Supp. 2d 616, 626 (D. Del. 2003)]

53.    Other than using the general term "out-of-pocket" method, Mr. Coffman has some more specific language about his alleged common damages methodology. In particular, Mr. Coffman claims "damages are equal to the artificial inflation in the share price at the time of purchase minus the artificial inflation per share at the time of sale"[59] According to Mr. Coffman, the artificial inflation would be quantified using "an event study that measures price reactions to disclosures that revealed the relevant truth, such as the price reaction to the revelation that Concho had reduced current and forecasted production due to its wells being spaced too tightly, which was concealed by the alleged material omissions and/or misrepresentations (*i.e.* a 'corrective disclosure')."[60]

54.    Mr. Coffman's proposed common damages methodology is not well-specified and, given the specific issues in this case, does not measure damages consistent with Plaintiffs' risk materialization theory of liability. Moreover, Plaintiffs' proposed common damages methodology yields economically unreasonable results for proposed class members that were Concho shareholders before the RSP Acquisition, while proposed class members that were former RSP shareholders do not fit Plaintiffs' theory.

---

[58]    *In re Daimlerchrysler AG Securities Litigation*, 294 F. Supp. 2d 616 (D. Del. 2003)

[59]    Coffman Report, ¶79.

[60]    Coffman Report, ¶82.

### A.　Mr. Coffman's proposed common damages methodology does not measure damages consistent with Plaintiffs' risk materialization theory of liability

55.　Plaintiffs' theory of liability in this case is based on their claims that Concho's stock was inflated during the alleged Class Period because Defendants concealed from investors that the Company engaged in "undisclosed, highly risky activities," which included "aggressively tight well spacing."[61] Plaintiffs claim that the "price of Concho common stock fell precipitously when … the risks concealed by the Individual Defendants' misconduct materialized."[62] In other words, the information that was allegedly revealed in the alleged corrective disclosure is the *materialization* of the allegedly concealed or understated risks.

56.　In general, when an alleged corrective disclosure represents a materialization of an understated risk, the price decline at the alleged corrective disclosure (*i.e.*, the "back end" price decline) would not be expected to equate to the price decline that would have occurred had the true degree of the understated risk been disclosed earlier (*i.e.*, at the "front end"). In general, the "back-end" price decline upon the materialization of the risk would be bigger than the decline at the "front end" if the true risk had been disclosed. The "back-end" price decline is a measure of the price reaction to a 100% change of the risk materializing, while the inflation at the time of the alleged misrepresentations should be based on the undisclosed risk, which would be less than 100%.

57.　To illustrate this principle, Judge Ellison in a prior securities class action referenced a "simplified example:"

> "Imagine that a company announced that it was going to draw a marble from an urn of 100 marbles, of which 99 were black and one was red. If the company drew a red marble, it would have to pay $1 million. Prior to finding out the outcome, the company's market value would reflect the expected loss from this lottery of 1% of $1 million, or $10,000. If the company subsequently drew a red marble, the market value would have fallen $990,000 to reflect the new information-the certainty of a $1 million loss. If, however, contrary to the company's statement, there were two red marbles (increasing the probability of drawing a red marble), the share price would still have fallen when the company drew a red marble. In order to understand the value implication of the company's misstatement that

---

[61]　Complaint, ¶¶12-13.

[62]　Complaint, ¶¶407.

[there] were was only one red marble, the relevant issue is what the market value would have been, prior to the drawing, had the company told the truth. In this case, the market value would have reflected an expected loss of $20,000, only $10,000 lower than the actual market value, not the $990,000 less that would be implied by looking at the reaction to the drawing of a red marble." (*In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at *10 n.10 (S.D. Tex. May 20, 2014).)

58.    Thus, in such an alleged concealed risk scenario, measuring inflation by using the "back end" once a risk materializes would *overstate* any alleged inflation. To address damages from a claim about concealed risks, a damages methodology needs to be able to separate the impact of the allegedly understated risk (if any) from the impact of the materialization of that risk.

59.    In other words, since Plaintiffs' theory of liability in this case is based on an alleged understatement of risks, an observed "back-end" loss cannot equate or be the measurement of inflation or damage to shareholders stemming from the alleged misrepresentations of concealment of a risk.[63] Instead, given that Plaintiffs' theory of liability is based on allegedly understating risks, calculating the inflation would require measuring the difference in price at all times during the alleged Class Period of 1) what the price would have been if the actual risk was known at every point in time and 2) what risk did the market actually think existed at every point in time.[64]

60.    As described by Mr. Coffman, his methodology is merely that "damages are equal to the artificial inflation in the share price at the time of purchase minus the artificial inflation per share at the time of sale."[65] But this leaves open the critical question: how will Plaintiffs measure the "artificial inflation in the share price at the time of purchase?" To do that consistent with Plaintiffs' theory of liability based on alleged understatements of risks, Plaintiffs must show that

---

[63]    As Judge Ellison noted in the *BP* case, "when [a] corrective event is the materialization of an understated risk, the stock price movement on the date of correction (i.e., on the date that the risk materialized) will not equate to inflation on the date of purchase unless the probability of the risk materializing was 100 percent. If the probability is less than 100 percent, the stock price correction after the risk materializes will be larger than the pre-materialization inflation." (*In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at *10 n.10 (S.D. Tex. May 20, 2014).)

[64]    Plaintiffs would then need to discount the full value of the "back-end" event by the difference between the "true" risk and the risk as known to market participants. For example, in Judge Ellison's example, once the true risk (2%) and the disclosed risk were calculated (1%), the difference between them (1%) was used to discount the full value of the back-end loss ($1,000,000) to generate the $10,000 damages figure. (*In re BP p.l.c. Sec. Litig.*, 2014 WL 2112823, at *10 n.10 (S.D. Tex. May 20, 2014).)

[65]    Coffman Report, ¶79.

26

they have a model capable of measuring the actual likelihood that the risk would materialize on each date of the alleged class period and the likelihood of the risk materializing implied by the alleged misstatements disclosed to market participants on each date of the alleged class period.

61.    Neither Plaintiffs nor Mr. Coffman have shown a method capable of doing this. While Mr. Coffman makes a vague reference to using "valuation techniques" as part of his method of measuring inflation, he has not specified how he would use any of these tools to measure the "true" risk (if it was concealed), or the degree to which the risk was underestimated by the market over time, or how it would be capable of converting these estimates into a measure of inflation in Concho's stock price. [66] Instead, Mr. Coffman appears to be implicitly saying that he will figure it out sometime later. There is, however, no evidence that he will be able to do so. It is my understanding that at this stage of the case Plaintiffs need to show an actual common damages methodology that would work with the specifics of the case and not just make a general claim that damages can be estimated on a class-wide basis.

62.    Moreover, measuring the alleged inflation is particularly problematic in this case because even before the alleged corrective disclosure, market evidence indicates there was a changing understanding of the risks associated with large-scale development, tightening well spacing and Concho's Dominator project.

63.    For example, new information about the Dominator project was coming out throughout the alleged Class Period and updating the market's expectation about the risk of the Dominator project. On May 1, 2019, three months before the alleged corrective disclosure, the Company disclosed that the Dominator project was the "most extreme version of activity in a single square mile and also some of the more dense spacing we've tested." [67] The Company indicated that they were still "tinkering" with the design of the Dominator and that there was "still a lot to learn." [68]

> "As you think about the different phases of the shale cycle, the discovery, the delineation, and now development, I think there's maybe a misconception that you've reached development stage and so you know the answer, and that's definitely not the case. We continue to learn from all of these projects, and so

---

[66]    Coffman Report, ¶82.

[67]    Complaint, ¶294, Concho 1Q19 Earnings Call, May 1, 2019.

[68]    Concho 1Q19 Earnings Call, May 1, 2019.

using the Dominator, one, just because it's a good example, that is our most extreme version of activity in a single square mile and also some of the more dense spacing we've tested. And so, the teams did a fantastic job on that bringing that project and a couple of these other large ones this quarter and putting them on production actually ahead of schedule. So we're continuing to figure out how to concentrate that much activity in one spot in the most efficient manner possible. We're continuing to play with spacing and also landing zones and we're still continuing to tinker with combinations of different landing zones and our whole completion design in them. So there's still a lot to learn," [Concho 1Q19 Earnings Call, 5/1/19]

64.    After the Company's May 1, 2019 announcements, analysts indicated that they expected the spacing of the wells to be less tight in the longer term but that it was "important to test" well spacing. For example:

"Investors will closely watch data come in on the Dominator Project, which we think occurs during the 2Q19 earnings season. This is CXO's largest project with 23 wells testing five formations and several spacing schemes. **The wells are spaced a bit tighter than the likely longer-term development plan but it is important to test**" [RBC, 5/1/19, emphasis added]

"Recent Dominator pad seems to have pushed the upper limits of development scale. This pad included 23 wells, which tested several benches in the play; however, **the company admitted that the pad size is likely to be much smaller going forward** (8-12 well range)." [TD Securities, 5/2/19, emphasis added]

According to both my own event study and the Coffman Report's event study, there was no statistically significant price decline on May 1, 2019.

65.    On June 18, 2019, six weeks before the alleged corrective disclosure, the Susquehanna analyst indicated that oil production rates for the Dominator project were "coming in weaker than the company's standard spacing design."[69] Susquehanna, in its report titled "Recent Spacing Pilots Provide Critical Learnings for 2020," indicated that projects such as the Dominator "could be a near-term headwind for capital efficiency" and that "investors should see such projects as focused on data/information aggregation and not true development projects."[70]

"For example, **the recently completed 23-well Dominator project tested multiple spacing designs across a 1-mile section with up to 5 different landing targets** within the Wolfcamp XY and Wolfcamp A horizons (see Exhibit 1 ). **As suspected, early oil production rates across the development seems to be coming in weaker than the company's standard spacing design.** Similarly,

---

[69]    Susquehanna, June 18, 2019.

[70]    Susquehanna, June 18, 2019.

some of the laterals at the 8-well Littlefield development will test Lower Wolfcamp horizons. **While projects such as these could be a near-term headwind for capital efficiency, we think investors should see such projects as focused on data/information aggregation and not true development projects**." [Susquehanna, 6/18/19, emphasis added]

66.     On the same date, June 18, 2019, J.P. Morgan indicated that the Company had acknowledged that the Dominator project was an "aggressive spacing test" and that "optimal package size from a capital efficiency and planning standpoint" would be in the 8-10 well range rather than the 23 well development zone being tested.[71] According to both my own event study and the Coffman Report's event study, there was no statistically significant price decline on June 18, 2019.

67.     In addition to Concho-specific updates, new information on other E&P companies and their setbacks with large-scale manufacturing was coming out during the alleged Class Period. For example, on March 3, 2019, five months before the alleged corrective disclosure, The Wall Street Journal published an article indicating that aggressive well spacing was "turning out to be a bust," "hurting the performance of older existing wells" and threatening the future of the U.S. oil industry.[72]

> "Shale companies' strategy to supercharge oil and gas production by drilling thousands of new wells more closely together is turning out to be a bust. What's more, the approach is hurting the performance of older existing wells, threatening the U.S. oil boom and forcing the maturing industry to rethink its future." [WSJ, 3/3/19]

According to The Wall Street Journal article, Concho was among the largest shale producers to disclose "they are facing…problem[s]" due to the tighter spacing of wells.[73] According to both my own event study and the Coffman Report's event study, there was no statistically significant price decline on March 4, 2019, the first trading day following the Wall Street Journal article.

68.     In sum, neither Plaintiffs nor Mr. Coffman have shown a method capable of measuring damages in a way consistent with Plaintiffs' risk materialization theory of liability. Plaintiffs have not shown that they have a model capable of measuring the actual likelihood that

---

[71]  J.P. Morgan, June 18, 2019.

[72]  "Shale Companies, Adding Ever More Wells, Threaten Future of U.S. Oil Boom," *The Wall Street Journal*, March 3, 2019.

[73]  "Shale Companies, Adding Ever More Wells, Threaten Future of U.S. Oil Boom," *The Wall Street Journal*, March 3, 2019.

29

the risk would materialize on each date of the alleged class period and the likelihood of the risk materializing implied by the alleged misstatements disclosed to market participants on each date of the alleged class period. There is no evidence that Mr. Coffman's proposed damages method will be able to do so. Moreover, measuring the alleged inflation is particularly problematic in this case because new information regarding large-scale development, tightening well spacing and Concho's Dominator project was coming out throughout the alleged Class Period and updating the market's expectation about its risks.

### B. Plaintiffs' proposed common damages methodology yields economically unreasonable results for proposed class members that were pre-merger Concho shareholders

69.     Mr. Coffman's proposed damages method yields economically unreasonable results for proposed class members that were Concho shareholders before the RSP Acquisition. According to Mr. Coffman's proposed damages methodology, damage per share is based on the formula: purchase inflation minus sale inflation.[74] Since there is only one alleged corrective disclosure, any proposed class member who sells after the alleged corrective disclosure would have zero sale inflation.[75] Hence, according to Mr. Coffman's formula, damage per share is equal to the purchase inflation.

70.     Mr. Coffman's damages formula, however, does not make sense when accounting for the RSP Acquisition. Plaintiffs claim that Concho shares were inflated prior to the acquisition but do not claim that the RSP shares were inflated prior to the acquisition.[76] Therefore, according to Plaintiffs, pre-merger Concho shareholders used inflated shares to buy RSP, an uninflated company. Thus, according to Plaintiffs' theory, the RSP Acquisition would have diluted or shared the total inflation that existed in Concho before the acquisition across many more shareholders and the economic effect of this combining of shares at the merger would be to reduce the alleged inflation per Concho shareholder – and this would be an economic benefit.[77]

---

[74]   Coffman Report, ¶79. Mr. Coffman notes that "if the share is not sold before full revelation of the fraud," damages would be "the artificial inflation at the time of purchase, subject to the Private Securities Litigation Reform Act of 1995's ('PSLRA') '90-day lookback' provision, a formulaic limit on damages that also can be applied class-wide."

[75]   Complaint, ¶305 and Coffman Report, ¶82.

[76]   Complaint, ¶¶1, 123, 152, 203-209 and 406.

[77]   The RSP Acquisition was completed on July 19, 2018. Pursuant to the terms of the acquisition, RSP shareholders received 0.320 shares of "new" Concho for every share of RSP they held while Concho

30

According to Mr. Coffman's damages formula, the pre-merger Concho shareholders, who have a higher purchase inflation than post-merger Concho shareholders, would receive more in damage per share than those who purchased after the merger, a result that is economically unreasonable.

### C.    The proposed class members that were former RSP shareholders do not fit Plaintiffs' theory

71.    Mr. Coffman's common damages methodology does not fit Plaintiffs' theory for proposed class members that were former RSP shareholders. According to Mr. Coffman's damages method, these shareholders would receive damages equivalent to the difference in the inflation at purchase and inflation at sale. However, according to Plaintiffs, Concho "paid 'way too much' for the acquisition of RSP Permian," which means that RSP shareholders received more for their shares than they should have and thus benefited from the acquisition.[78] According to Plaintiffs' theory, these proposed class members would not be similarly situated to other proposed class members and would have a different relationship to the alleged misrepresentations and damages than other proposed class members who did not obtain Concho shares through the RSP Acquisition.

72.    Moreover, according to Plaintiffs and their expert, the premium received by the RSP shareholders in the acquisition is more than the price decline at the alleged corrective disclosure. Plaintiffs claim Concho acquired RSP by paying RSP shareholders what "represented an approximately 29% premium."[79] The 29% premium represented a gain of $11.32 per RSP share.[80] According to Mr. Coffman's event study, Concho price decline on the alleged corrective disclosure was $17.43 per Concho share.[81] However, since the RSP shares were converted to

---

shareholders received the same number of "new" Concho shares as their "old" Concho shares. Immediately after the RSP Acquisition, Concho shareholders owned approximately 74.5 percent of "new" Concho and RSP shareholders owned approximately 25.5 percent. ("Concho Resources Inc. to Acquire RSP Permian, Inc. in All-Stock Transaction," C*oncho Press Release*, March 28, 2018 and "Concho Resources Inc. Completes Acquisition of RSP Permian, Inc.," *Concho Press Release*, July 19, 2018.)

[78]    Complaint, ¶152.

[79]    Complaint, ¶204.

[80]    RSP's stock price prior to the announcement of the acquisition was $38.92, so a 29% premium represented $11.32 per RSP share. See, "Concho Resources Inc. to Acquire RSP Permian, Inc. in All-Stock Transaction," *Concho Press Release,* March 28, 2018.

[81]    See "CONCHO_COFFMAN_0007575.xlsx" According to Mr. Coffman's proposed methodology, damages and inflation can be calculated using "an event study that measures price reactions to disclosures that revealed the relevant truth such as the price reaction to the revelation that Concho had reduced current and forecasted production due to its wells being spaced too tightly." According to Mr. Coffman, the event study would also

31

Concho shares at a 0.32 rate, the corresponding price decline per RSP share would be $5.58 ($17.43 multiplied by 0.32). Thus, for proposed class members that were RSP shareholders, the gain of $11.32 per RSP share from the premium is more than twice as much as the price decline on the alleged corrective disclosure of $5.58 per RSP share.

_____

Lucy P. Allen

---

need to "disaggregate[e] the price impact of corrective disclosures from confounding information." Thus, according to Mr. Coffman's event study and damages method, the damage per Concho share would be at most $17.43, the entire price reaction to the alleged corrective disclosure.

32

# Appendix A to Allen Report



**Lucy P. Allen**
Senior Managing Director

NERA Economic Consulting
1166 Avenue of the Americas
New York, New York 10036
Tel: +1 212 345 5913  Fax: +1 212 345 4650
lucy.allen@nera.com
www.nera.com

# Appendix A

## LUCY P. ALLEN
## SENIOR MANAGING DIRECTOR

## Education

**YALE UNIVERSITY**
M.Phil., Economics, 1990
M.A., Economics, 1989
M.B.A., 1986

**STANFORD UNIVERSITY**
A.B., Human Biology, 1981

## Professional Experience

1994-Present  **National Economic Research Associates, Inc.**
Senior Managing Director. Responsible for economic analysis in the areas of securities, finance and environmental and tort economics.
Managing Director (2016-2023).
Senior Vice President (2003-2016).
Vice President (1999-2003).
Senior Consultant (1994-1999).

1992-1993  **Council of Economic Advisers, Executive Office of the President**
Staff Economist. Provided economic analysis on regulatory and health care issues to Council Members and interagency groups. Shared responsibility for regulation and health care chapters of the *Economic Report of the President, 1993*. Working Group member of the President's National Health Care Reform Task Force.

1986-1988  **Ayers, Whitmore & Company (General Management Consultants)**
1983-1984  Senior Associate. Formulated marketing, organization, and overall business strategies including:
Plan to improve profitability of chemical process equipment manufacturer.
Merger analysis and integration plan of two equipment manufacturers.
Evaluation of Korean competition to a U.S. manufacturer.

1

Lucy P. Allen

Diagnostic survey for auto parts manufacturer on growth obstacles. Marketing plan to increase international market share for major accounting firm.

Summer 1985 **WNET/Channel Thirteen, Strategic Planning Department**
<u>Associate</u>. Assisted in development of company's first long-term strategic plan. Analyzed relationship between programming and viewer support.

1981-1983 **Arthur Andersen & Company**
<u>Consultant</u>. Designed, programmed and installed management information systems. Participated in redesign/conversion of New York State's accounting system. Developed municipal bond fund management system, successfully marketed to brokers. Participated in President's Private Sector Survey on Cost Control (Grace Commission). Designed customized tracking and accounting system for shipping company.

## Teaching

1989- 1992 <u>**Teaching Fellow**</u>**, Yale University**
Honors Econometrics
Intermediate Microeconomics
Competitive Strategies
Probability and Game Theory
Marketing Strategy
Economic Analysis

## Publications

"Snapshot of Recent Trends in Asbestos Litigation: 2022 Update," (co-author), NERA Report, 2022.

"Snapshot of Recent Trends in Asbestos Litigation: 2021 Update," (co-author), NERA Report, 2021.

"The Short-Term Effect of Goodwill Impairment Announcements on Companies' Stock Prices" (co-author), *International Journal of Business, Accounting and Finance,* Volume 14, Number 2, Fall 2020.

"Snapshot of Recent Trends in Asbestos Litigation: 2020 Update," (co-author), NERA Report, 2020.

"Snapshot of Recent Trends in Asbestos Litigation: 2019 Update," (co-author), NERA Report, 2019.

"Snapshot of Recent Trends in Asbestos Litigation: 2018 Update," (co-author), NERA Report, 2018.

Lucy P. Allen

"Trends and the Economic Effect of Asbestos Bans and Decline in Asbestos Consumption and Production Worldwide," (co-author), *International Journal of Environmental Research and Public Health*, 15(3), 531, 2018.

"Snapshot of Recent Trends in Asbestos Litigation: 2017 Update," (co-author), NERA Report, 2017.

"Asbestos: Economic Assessment of Bans and Declining Production and Consumption," World Health Organization, 2017.

"Snapshot of Recent Trends in Asbestos Litigation: 2016 Update," (co-author), NERA Report, 2016.

"Snapshot of Recent Trends in Asbestos Litigation: 2015 Update," (co-author), NERA Report, 2015.

"Snapshot of Recent Trends in Asbestos Litigation: 2014 Update," (co-author), NERA Report, 2014.

"Snapshot of Recent Trends in Asbestos Litigation: 2013 Update," (co-author), NERA Report, 2013.

"Asbestos Payments per Resolved Claim Increased 75% in the Past Year – Is This Increase as Dramatic as it Sounds?  Snapshot of Recent Trends in Asbestos Litigation: 2012 Update," (co-author), NERA Report, 2012.

"Snapshot of Recent Trends in Asbestos Litigation: 2011 Update," (co-author), NERA White Paper, 2011.

"Snapshot of Recent Trends in Asbestos Litigation: 2010 Update," (co-author), NERA White Paper, 2010.

"Settlement Trends and Tactics" presented at Securities Litigation During the Financial Crisis: Current Development & Strategies, hosted by the New York City Bar, New York, New York, 2009.

"Snapshot of Recent Trends in Asbestos Litigation," (co-author), NERA White Paper, 2009.

"China Product Recalls: What's at Stake and What's Next," (co-author), NERA Working Paper, 2008.

"Forecasting Product Liability by Understanding the Driving Forces," (co-author), The International Comparative Legal Guide to Product Liability, 2006.

"Securities Litigation Reform: Problems and Progress," Viewpoint, November 1999, Issue No. 2 (co-authored).

3

"Trends in Securities Litigation and the Impact of the PSLRA," Class Actions & Derivative Suits, American Bar Association Litigation Section, Vol. 9, No. 3, Summer 1999 (co-authored).

"Random Taxes, Random Claims," Regulation, Winter 1997, pp. 6-7 (co-authored).

## Testimony (4 years)

Deposition Testimony before the 139th Judicial District Court of Hidalgo County, Texas in *Doctors Hospital at Renaissance, Ltd. v. Employers Insurance Company of Wausau et al.,* 2024.

Deposition Testimony before the Superior Court of Fulton County, Georgia in *Corvex Master Fund LP et al. v. Mohawk Industries, Inc., et al., Value Recapture Partners LLC v. Mohawk Industries, Inc., et al., Incline Global Master LP et al. v. Mohawk Industries, Inc., et al., and Soroban Opportunities Master Fund LP v. Mohawk Industries, Inc., et al.,* 2024.

Deposition Testimony before the United States District Court for the Eastern District of Tennessee at Chattanooga in *City of Taylor General Employees Retirement System v. Astec Industries, Inc. and Benjamin G. Brock,* 2024.

Deposition Testimony before the United States District Court, Eastern District of Arkansas, in *Robert Murray v. EarthLink Holdings Corp., et al.,* 2023.

Deposition Testimony before the District Court of Harris County, Texas in *Houston Livestock Show and Rodeo, Inc. v. Hallmark Financial Services, Inc. D/B/A Hallmark Specialty Insurance Company, et al.,* 2023.

Testimony and Deposition before the United States District Court for the Southern District of Texas in *In re Apache Corp. Securities Litigation,* 2023.

Deposition Testimony before the United States District Court for the Central District of California in *In re Prime Healthcare ERISA Litigation,* 2023.

Deposition Testimony before the United States District Court for the Southern District of Texas in *Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation, et al.,* 2023.

Testimony and Deposition before the United States District Court for the District of Oregon in *Oregon Firearms Federation, Inc. et al. v. Tina Kotek et al.*, 2023.

Testimony and Depositions before the United States District Court for the Southern District of Texas, Houston Division in *Miriam Edwards, et al. v. McDermott International, Inc., et al.,* 2023.

Lucy P. Allen

Deposition Testimony before the District Court of Harris County, Texas in *Boxer Property Management Corp. et al. v. Illinois Union Ins. Co. et al.*, 2022.

Testimony before the Supreme Court of the State of New York, County of New York, in *MUFG Union Bank, N.A. (f/k/a Union Bank, N.A.) v. Axos Bank (f/k/a Bank of Internet USA), et al.*, 2022.

Deposition Testimony before the United States District Court for the Eastern District of Virginia, in *Plymouth County Retirement System, et al. v. Evolent Health, Inc., et al.,* 2022.

Deposition Testimony before the United States District Court for the Northern District of Georgia, in *Public Employees' Retirement System of Mississippi v. Mohawk Industries, Inc., et al.,* 2022.

Deposition Testimony before the United States District Court for the Southern District of New York, in *SEC v. AT&T, Inc. et al.*, 2022.

Deposition Testimony before the Superior Court of New Jersey, Hudson County, in *Oklahoma Firefighters Pension and Retirement System vs. Newell Brands Inc., et al.,* 2022.

Deposition Testimony before the United States District Court for the District of Pennsylvania, in *Allegheny County Employees, et al. v. Energy Transfer LP., et al.,* 2022.

Deposition Testimony before the United States District Court, District of Tennessee, in *St. Clair County Employees' Retirement System v. Smith & Acadia Healthcare Company, Inc., et al.*, 2022.

Deposition Testimony before the United States District Court, District of Colorado, in *Cipriano Correa, et al. v. Liberty Oilfield Services Inc., et al.*, 2022.

Deposition Testimony before the Superior Court of New Jersey, Hudson County, in *Oklahoma Firefighters Pension and Retirement System vs. Newell Brands Inc., et al.,* 2021.

Deposition Testimony before the Superior Court of New Jersey, Middlesex County, in *Dana Transport, Inc. et al., vs. PNC Bank et al.,* 2021.

Deposition Testimony before the United States District Court, Western District of North Carolina, in *Cheyenne Jones and Sara J. Gast v. Coca-Cola Consolidated Inc., et al.,* 2021.

Testimony and Deposition Testimony before the Court of Chancery of the State of Delaware in *Bardy Diagnostics Inc. v. Hill-Rom, Inc. et al.,* 2021.

5

Lucy P. Allen

Deposition Testimony before the United States Bankruptcy Court, Southern District of Texas, Houston Division, in *Natixis Funding Corporation v. Genon Mid-Atlantic, LLC,* 2021.

Testimony and Deposition Testimony before the United States District Court, Southern District of California, in *Miller et al. v. Becerra et al.*, 2021.

Deposition Testimony before the Court of Chancery of the State of Delaware in *Arkansas Teacher Retirement System v. Alon USA Energy, Inc., et al.*, 2021.

Deposition Testimony before the United States District Court, Western District of Oklahoma, in *Kathleen J. Myers v. Administrative Committee, Seventy Seven Energy, Inc. Retirement & Savings Plan, et al.*, 2020.

Deposition Testimony before the United States District Court, Middle District of Tennessee, in *Nikki Bollinger Grae v. Corrections Corporation of America, et al.*, 2020.

Deposition Testimony before the Supreme Court of the State of New York, County of New York, in *MUFG Union Bank, N.A. (f/k/a Union Bank, N.A.) v. Axos Bank (f/k/a Bank of Internet USA), et al.*, 2020.

Deposition Testimony before the United States District Court, Western District of Washington at Seattle, in *In re Zillow Group, Inc. Securities Litigation*, 2020.

6

# Appendix B to Allen Report

# Appendix B
# Materials Considered

**Case documents and filings in this matter**

1. Consolidated Complaint for Violations of the Federal Securities Laws, filed January 7, 2022

2. Notice of Motion and Motion of Utah Retirement Systems and Construction Laborers Pension Trust For Southern California for (1) Appointment as Lead Plaintiff, and (2) Approval of Lead Plaintiff's Selection of Counsel; Memorandum of Points and Authorities in Support Thereof, filed September 28, 2021

3. Defendant's Motion to Dismiss Plaintiff's Consolidated Complaint, filed March 8, 2022

4. Memorandum And Recommendation, filed February 23, 2023

5. Order Adopting Memorandum And Recommendations, filed June 23, 2023

6. Lead Plaintiffs' Motion For Class Certification and Appointment of Class Representatives And Class Counsel and Supporting Memorandum Of Law filed December 7, 2023

7. Notice of Filing Amended Certification on Behalf of Construction Laborers Pension Trust for Southern California

8. Amended Certification, filed January 9, 2024

9. Expert Report of Chad Coffman, CFA, dated December 7, 2023, including materials considered and turned over

**Concho's filings with the SEC between 2017 and 2020**

10. 2017.02.22 - 2016 10-K
11. 2017.05.04 - 1Q17 10-Q
12. 2017.08.03 - 2Q17 10-Q
13. 2017.11.01 - 3Q17 10-Q
14. 2018.02.21 - 2017 10-K
15. 2018.05.02 - 1Q18 10-Q
16. 2018.08.02 - 2Q18 10-Q
17. 2018.10.31 - 3Q18 10-Q
18. 2019.02.20 - 2018 10-K
19. 2019.05.01 - 1Q19 10-Q
20. 2019.08.01 - 2Q19 10-Q
21. 2019.10.30 - 3Q19 10-Q
22. 2020.02.19 - 2019 10-K
23. 2020.05.01 - 1Q20 10-Q
24. 2020.07.31 - 2Q20 10-Q
25. 2020.10.27 - 3Q20 10-Q

**Concho's press releases and conference call transcripts between 2017 and 2020**

26. 2017.02.21 - 4Q16 Earnings Release
27. 2017.02.22 - 4Q16 Earnings Call

1

# Appendix B
# Materials Considered

28.  2017.02.22 - 4Q16 Earnings Call Slides
29.  2017.05.03 - 1Q17 Earnings Release
30.  2017.05.04 - 1Q17 Earnings Call
31.  2017.05.04 - 1Q17 Earnings Call Slides
32.  2017.08.02 - 2Q17 Earnings Release
33.  2017.08.02 - 2Q17 Earnings Call Slides
34.  2017.08.02 - 2Q17 Earnings Call
35.  2017.10.31 - 3Q17 Earnings Release
36.  2017.11.01 - 3Q17 Earnings Call Slides
37.  2017.11.01 - 3Q17 Earnings Call
38.  2017.11.16 - BofA Global Energy Conference Slides
39.  2017.11.16 - BofA Global Energy Conference
40.  2018.02.20 - 4Q17 Earnings Release
41.  2018.02.21 - 4Q17 Earnings Call Slides
42.  2018.02.21 - 4Q17 Earnings Call
43.  2018.03.05 - Raymond James Institutional Investors Conference Slides
44.  2018.03.05 - Raymond James Institutional Investors Conference
45.  2018.03.28 - Investor Call Slides
46.  2018.03.28 - Investor Call
47.  2018.04.30 - 1Q18 Earnings Release
48.  2018.05.01 - 1Q18 Earnings Call Slides
49.  2018.05.02 - 1Q18 Earnings Call
50.  2018.05.15 - Citi Global Energy Utilities Conference Slides
51.  2018.05.15 - Citi Global Energy Utilities Conference
52.  2018.08.01 - 2Q18 Earnings Release
53.  2018.08.02 - 2Q18 Earnings Call Slides
54.  2018.08.02 - 2Q18 Earnings Call
55.  2018.09.05 - Barclays CEO Energy Power Conference Slides
56.  2018.09.05 - Barclays CEO Energy Power Conference
57.  2018.10.30 - 3Q18 Earnings Release
58.  2018.10.31 - 3Q18 Earnings Call Slides
59.  2018.10.31 - 3Q18 Earnings Call
60.  2019.02.29 - 4Q18 Earnings Release
61.  2019.02.20 - 4Q18 Earnings Call Slides
62.  2019.02.20 - 4Q18 Earnings Call
63.  2019.03.04 - Raymond James Institutional Investors Conference Slides
64.  2019.03.04 - Raymond James Institutional Investors Conference
65.  2019.04.30 - 1Q19 Earnings Call Release
66.  2019.05.01 - 1Q19 Earnings Call Slides
67.  2019.05.01 - 1Q19 Earnings Call
68.  2019.06.18 - JPMorgan Energy Conference Slides
69.  2019.06.18 - JPMorgan Energy Conference
70.  2019.07.30 - 2Q19 Earnings Release
71.  2019.08.01 - 2Q19 Earnings Call Slides
72.  2019.08.01 - 2Q19 Earnings Call
73.  2019.10.29 - 3Q19 Earnings Release

# Appendix B
# Materials Considered

74. 2019.10.29 - 3Q19 Earnings Call Slides
75. 2019.10.30 - 3Q19 Earnings Call
76. 2020.02.18 - 4Q19 Earnings Release
77. 2020.02.18 - 3Q19 Earnings Call Slides
78. 2020.02.19 - 4Q19 Earnings Call

**Data from Bloomberg, L.P., and FactSet Research Systems, Inc.**

79. Price, return, market capitalization and trading volume data for Concho and RSP from Bloomberg, L.P.
80. Price, return and constituent data for market and industry indices from Bloomberg, L.P.
81. Institutional holdings data for Concho and RSP from FactSet Research Systems, Inc.

**Academic literature and textbooks on finance, securities, valuation and statistics**

82. Rosenberg, B., & Rudd, A. (1982). Factor-related and specific returns of common stocks: Serial correlation and market inefficiency. *The Journal of Finance*, *37*(2), 543-554
83. Cornell, Bradford, *Corporate Valuation* (New York: McGraw-Hill, 1993)
84. Brealey, Richard A., Stewart C. Myers and Franklin Allen, *Principles of Corporate Finance* (McGraw-Hill: New York, NY, 7th ed., 2003)
85. Ferrillo, Paul A., et al., "The 'Less Than' Efficient Capital Markets Hypothesis: Requiring More Proof from Plaintiffs in Fraud-on-the-Market Cases," St. John's Law Review 78(1): 2004
86. Krippendorff, Klaus, "Content Analysis: An Introduction to Its Methodology," (Sage Publications, Inc.: Thousand Oaks, CA, 2nd ed., 2004)
87. Previts, John Gary et al., "A Content Analysis of Sell-Side Financial Analyst Company Reports," *Accounting Horizons* 8(2): 55-70, 1994
88. Breton, Gaetan and Richard J. Taffler, "Accounting Information and Analyst Stock Recommendation Decisions: A Content Analysis Approach," Accounting and Business Research 31(2): 91-101, 2001
89. Tabak, David, "Making Assessments About Materiality Less Subjective Through the Use of Content Analysis," 2007
90. Riffe, Daniel, Stephen Lacy, and Frederick Fico, "Analyzing Media Messages: Using Quantitative Content Analysis in Research," New York: Routledge, 2014
91. Shleifer, Andrei, *Inefficient Markets* (Oxford University Press: New York, NY, 2000)
92. Asquith, Paul, Michael B. Mikhail, and Andrea S. Au, "Information content of equity analyst reports," Journal of Financial Economics 75, no. 2 (2005): 245-282

# Appendix B
# Materials Considered

93.   Shiller, Robert J., "From Efficient Markets Theory to Behavior Finance," *Journal of Economic Perspective*, 17.1 (2003), 83-104

94.   Bodie, Zvi, Alex Kane, and Alan J. Marcus, *Investments* (McGraw-Hill: New York, NY, 10th ed., 2014)

95.   Berk, Jonathan and Peter DeMarzo, *Corporate Finance* (Pearson: Boston, MA, 3rd ed., 2014)

96.   Esther Bruegger & Frederick C. Dunbar, *Estimating Financial Fraud Damages with Response Coefficients*, 35 J. Corp. L. 11, 25 (2009)

97.   Alexander, Janet C., "The Value of Bad News in Securities Class Actions," *UCLA Law Review*, 41: 1994

98.   Fischel, Daniel R., "Use of Modern Finance Theory in Securities Fraud Cases Involving Actively Traded Securities," *The Business Lawyer* 38: 1982

99.   Dunbar, Frederick C., and David I. Tabak, "Materiality and Magnitude: Event Studies in the Courtroom," *Litigation Services Handbook: The Role of the Financial Expert* (John Wiley & Sons, Inc.: New York, NY, 3rd ed., 2001), ch. 19

100.  MacKinlay, A. Craig, "Event Studies in Economics and Finance," *Journal of Economic Literature*, 35: 1997

101.  Bowman, Robert G., "Understanding and Conducting Event Studies," *Journal of Business Finance & Accounting* 10(4): 1983

102.  Hogg, Robert V. and Elliot A. Tanis, *Probability and Statistical Inference* (Prentice Hall: Upper Saddle River, NJ, 5th ed., 1997)

103.  Freedman, David A., and David H. Kaye, "Reference Guide on Statistics," *Reference Manual on Scientific Evidence* (Washington, D.C.: The National Academies Press, 3rd ed., 2011)

104.  Fisher, Franklin M., "Multiple Regression in Legal Proceedings," *Columbia Law Review*, 80: 1980

105.  Stephen A. Ross, Randolph Westerfield, and Jeffrey F. Jaffe, *Corporate Finance* (McGraw-Hill/Irwin: Boston, MA, 6th ed., 2002)

**Analyst reports on Concho**

106.  2017.02.21 - CXO - Barclays
107.  2017.02.21 - CXO - Canaccord
108.  2017.02.21 - CXO - Deutsche Bank
109.  2017.02.21 - CXO - J.P. Morgan
110.  2017.02.21 - CXO - Jefferies
111.  2017.02.21 - CXO - RBC
112.  2017.02.21 - CXO - UBS

# Appendix B
# Materials Considered

113.   2017.02.21 - CXO - Wolfe
114.   2017.02.22 - CXO - Evercore
115.   2017.02.22 - CXO - RBC
116.   2017.02.22 - CXO - Scotiabank
117.   2017.02.23 - CXO - Barclays
118.   2017.02.23 - CXO - Morningstar
119.   2017.02.26 - CXO - Canaccord
120.   2017.03.06 - CXO - J.P. Morgan
121.   2017.03.13 - CXO - Morningstar
122.   2017.04.06 - CXO - Morningstar
123.   2017.04.17 - CXO - J.P. Morgan
124.   2017.05.02 - CXO - RBC
125.   2017.05.03 - CXO - Barclays
126.   2017.05.03 - CXO - Deutsche Bank
127.   2017.05.03 - CXO - J.P. Morgan
128.   2017.05.03 - CXO - Jefferies
129.   2017.05.03 - CXO - RBC
130.   2017.05.03 - CXO - UBS
131.   2017.05.04 - CXO - Evercore
132.   2017.05.04 - CXO - Scotiabank
133.   2017.05.10 - CXO - J.P. Morgan
134.   2017.05.11 - CXO - Barclays
135.   2017.06.07 - CXO - RBC
136.   2017.06.14 - CXO - Wolfe
137.   2017.06.26 - CXO - J.P. Morgan
138.   2017.07.17 - CXO - J.P. Morgan
139.   2017.07.31 - CXO - RBC
140.   2017.08.01 - CXO - Barclays
141.   2017.08.02 - CXO - J.P. Morgan
142.   2017.08.02 - CXO - Jefferies
143.   2017.08.02 - CXO - RBC (1)
144.   2017.08.02 - CXO - RBC (2)
145.   2017.08.02 - CXO - Scotiabank
146.   2017.08.02 - CXO - Wolfe
147.   2017.08.03 - CXO - Deutsche Bank
148.   2017.08.03 - CXO - Evercore
149.   2017.08.03 - CXO - Raymond James

# Appendix B
# Materials Considered

150. 2017.08.03 - CXO - Scotiabank
151. 2017.08.04 - CXO - Raymond James
152. 2017.08.10 - CXO - J.P. Morgan
153. 2017.09.18 - CXO - Morningstar
154. 2017.09.21 - CXO - Raymond James
155. 2017.09.26 - CXO - J.P. Morgan
156. 2017.10.02 - CXO - J.P. Morgan
157. 2017.10.03 - CXO - J.P. Morgan
158. 2017.10.29 - CXO - RBC
159. 2017.10.31 - CXO - Barclays
160. 2017.10.31 - CXO - Deutsche Bank
161. 2017.10.31 - CXO - J.P. Morgan
162. 2017.10.31 - CXO - Jefferies
163. 2017.10.31 - CXO - Raymond James
164. 2017.10.31 - CXO - RBC
165. 2017.10.31 - CXO - Wolfe
166. 2017.11.01 - CXO - Evercore
167. 2017.11.01 - CXO - RBC
168. 2017.11.01 - CXO - Scotiabank
169. 2017.11.02 - CXO - Jefferies
170. 2017.11.02 - CXO - Raymond James
171. 2017.11.06 - CXO - J.P. Morgan
172. 2017.12.07 - CXO - RBC (1)
173. 2017.12.07 - CXO - RBC (2)
174. 2017.12.13 - CXO - J.P. Morgan
175. 2018.01.22 - CXO - J.P. Morgan
176. 2018.02.01 - CXO - Deutsche Bank
177. 2018.02.20 - CXO - BMO
178. 2018.02.20 - CXO - Cowen
179. 2018.02.20 - CXO - J.P. Morgan
180. 2018.02.20 - CXO - Jefferies
181. 2018.02.20 - CXO - Piper Sandler
182. 2018.02.20 - CXO - RBC (1)
183. 2018.02.20 - CXO - RBC (2)
184. 2018.02.20 - CXO - Stephens
185. 2018.02.20 - CXO - SunTrust
186. 2018.02.20 - CXO - Wolfe

# Appendix B
# Materials Considered

187. 2018.02.21 - CXO - Bank of America
188. 2018.02.21 - CXO - Credit Suisse
189. 2018.02.21 - CXO - Deutsche Bank
190. 2018.02.21 - CXO - Evercore (1)
191. 2018.02.21 - CXO - Evercore (2)
192. 2018.02.21 - CXO - Ladenburg
193. 2018.02.21 - CXO - Morgan Stanley
194. 2018.02.21 - CXO - MUFG
195. 2018.02.21 - CXO - Raymond James
196. 2018.02.21 - CXO - RBC
197. 2018.02.21 - CXO - Scotiabank (1)
198. 2018.02.21 - CXO - Scotiabank (2)
199. 2018.02.21 - CXO - Seaport (1)
200. 2018.02.21 - CXO - Seaport (2)
201. 2018.02.21 - CXO - SunTrust
202. 2018.02.22 - CXO - Seaport
203. 2018.02.27 - CXO - Jefferies
204. 2018.03.01 - CXO - Raymond James
205. 2018.03.06 - CXO - UBS
206. 2018.03.11 - CXO - Piper Sandler
207. 2018.03.14 - CXO - J.P. Morgan
208. 2018.03.16 - CXO - Seaport (1)
209. 2018.03.16 - CXO - Seaport (2)
210. 2018.03.28 - CXO - Bank of America
211. 2018.03.28 - CXO - BMO
212. 2018.03.28 - CXO - Cowen
213. 2018.03.28 - CXO - Credit Suisse (1)
214. 2018.03.28 - CXO - Credit Suisse (2)
215. 2018.03.28 - CXO - Deutsche Bank
216. 2018.03.28 - CXO - Evercore
217. 2018.03.28 - CXO - J.P. Morgan
218. 2018.03.28 - CXO - Jefferies
219. 2018.03.28 - CXO - Ladenburg
220. 2018.03.28 - CXO - Piper Sandler (1)
221. 2018.03.28 - CXO - Piper Sandler (2)
222. 2018.03.28 - CXO - Raymond James
223. 2018.03.28 - CXO - RBC (1)

# Appendix B
# Materials Considered

224.    2018.03.28 - CXO - RBC (2)
225.    2018.03.28 - CXO - Seaport
226.    2018.03.28 - CXO - Stephens
227.    2018.03.28 - CXO - SunTrust
228.    2018.03.28 - CXO - UBS
229.    2018.03.28 - CXO - Wolfe
230.    2018.03.29 - CXO - Bank of America
231.    2018.03.29 - CXO - Jefferies
232.    2018.03.29 - CXO - KLR
233.    2018.03.29 - CXO - Ladenburg
234.    2018.03.29 - CXO - Macquarie
235.    2018.03.29 - CXO - Seaport
236.    2018.03.29 - CXO - Stephens
237.    2018.03.29 - CXO - SunTrust
238.    2018.04.01 - CXO - Evercore
239.    2018.04.01 - CXO - UBS
240.    2018.04.02 - CXO - J.P. Morgan
241.    2018.04.02 - CXO - KLR
242.    2018.04.02 - CXO - MUFG
243.    2018.04.03 - CXO - Seaport
244.    2018.04.03 - CXO - Wolfe
245.    2018.04.04 - CXO - Scotiabank
246.    2018.04.05 - CXO - Macquarie
247.    2018.04.11 - CXO - Evercore
248.    2018.04.11 - CXO - Morningstar (1)
249.    2018.04.11 - CXO - Morningstar (2)
250.    2018.04.16 - CXO - Morningstar
251.    2018.04.17 - CXO - Raymond James
252.    2018.04.20 - CXO - Evercore
253.    2018.04.20 - CXO - RBC
254.    2018.04.23 - CXO - Morningstar
255.    2018.04.25 - CXO - Seaport
256.    2018.04.26 - CXO - Scotiabank
257.    2018.04.27 - CXO - J.P. Morgan
258.    2018.04.27 - CXO - RBC
259.    2018.04.30 - CXO - Morningstar
260.    2018.05.01 - CXO - BMO

8

# Appendix B
# Materials Considered

261. 2018.05.01 - CXO - Cowen
262. 2018.05.01 - CXO - Credit Suisse
263. 2018.05.01 - CXO - Evercore
264. 2018.05.01 - CXO - J.P. Morgan
265. 2018.05.01 - CXO - Jefferies
266. 2018.05.01 - CXO - Macquarie
267. 2018.05.01 - CXO - Piper Sandler
268. 2018.05.01 - CXO - Raymond James
269. 2018.05.01 - CXO - RBC
270. 2018.05.01 - CXO - Stephens
271. 2018.05.01 - CXO - SunTrust
272. 2018.05.01 - CXO - UBS
273. 2018.05.01 - CXO - Wolfe
274. 2018.05.02 - CXO - Bank of America
275. 2018.05.02 - CXO - KLR
276. 2018.05.02 - CXO - Ladenburg
277. 2018.05.02 - CXO - Morgan Stanley
278. 2018.05.02 - CXO - Morningstar (1)
279. 2018.05.02 - CXO - Morningstar (2)
280. 2018.05.02 - CXO - RBC
281. 2018.05.02 - CXO - Scotiabank (1)
282. 2018.05.02 - CXO - Scotiabank (2)
283. 2018.05.02 - CXO - Seaport (1)
284. 2018.05.02 - CXO - Seaport (2)
285. 2018.05.02 - CXO - SunTrust
286. 2018.05.03 - CXO - Raymond James
287. 2018.05.03 - CXO - Seaport
288. 2018.05.04 - CXO - MUFG
289. 2018.05.07 - CXO - J.P. Morgan
290. 2018.05.08 - CXO - Jefferies
291. 2018.05.15 - CXO - J.P. Morgan
292. 2018.05.16 - CXO - J.P. Morgan
293. 2018.05.17 - CXO - J.P. Morgan (1)
294. 2018.05.17 - CXO - J.P. Morgan (2)
295. 2018.05.17 - CXO - Wolfe
296. 2018.05.21 - CXO - J.P. Morgan
297. 2018.05.23 - CXO - Seaport

# Appendix B
# Materials Considered

298.  2018.05.29 - CXO - J.P. Morgan
299.  2018.06.06 - CXO - RBC
300.  2018.06.11 - CXO - Morningstar
301.  2018.06.18 - CXO - Evercore
302.  2018.06.18 - CXO - Morningstar
303.  2018.06.19 - CXO - Evercore (1)
304.  2018.06.19 - CXO - Evercore (2)
305.  2018.06.26 - CXO - Morningstar
306.  2018.07.02 - CXO - J.P. Morgan
307.  2018.07.05 - CXO - SunTrust
308.  2018.07.05 - CXO - TD Securities
309.  2018.07.10 - CXO - Susquehanna
310.  2018.07.11 - CXO - Jefferies
311.  2018.07.11 - CXO - Susquehanna
312.  2018.07.12 - CXO - J.P. Morgan
313.  2018.07.13 - CXO - Seaport (1)
314.  2018.07.13 - CXO - Seaport (2)
315.  2018.07.17 - CXO - RBC
316.  2018.07.18 - CXO - Piper Sandler
317.  2018.07.19 - CXO - Ladenburg
318.  2018.07.19 - CXO - Piper Sandler
319.  2018.07.20 - CXO - Credit Suisse
320.  2018.07.20 - CXO - Stephens
321.  2018.07.24 - CXO - Cowen
322.  2018.07.25 - CXO - Seaport
323.  2018.07.26 - CXO - UBS
324.  2018.07.30 - CXO - RBC
325.  2018.08.01 - CXO - BMO
326.  2018.08.01 - CXO - Cowen
327.  2018.08.01 - CXO - Evercore
328.  2018.08.01 - CXO - J.P. Morgan
329.  2018.08.01 - CXO - Jefferies
330.  2018.08.01 - CXO - Macquarie
331.  2018.08.01 - CXO - Piper Sandler
332.  2018.08.01 - CXO - Raymond James
333.  2018.08.01 - CXO - RBC (1)
334.  2018.08.01 - CXO - RBC (2)

# Appendix B
# Materials Considered

335.    2018.08.01 - CXO - Stephens
336.    2018.08.01 - CXO - SunTrust
337.    2018.08.01 - CXO - UBS
338.    2018.08.01 - CXO - Wolfe
339.    2018.08.02 - CXO - Bank of America
340.    2018.08.02 - CXO - Credit Suisse
341.    2018.08.02 - CXO - Ladenburg
342.    2018.08.02 - CXO - Morgan Stanley
343.    2018.08.02 - CXO - Morningstar (1)
344.    2018.08.02 - CXO - Morningstar (2)
345.    2018.08.02 - CXO - Raymond James
346.    2018.08.02 - CXO - Scotiabank (1)
347.    2018.08.02 - CXO - Scotiabank (2)
348.    2018.08.02 - CXO - Seaport
349.    2018.08.02 - CXO - SunTrust
350.    2018.08.02 - CXO - Susquehanna
351.    2018.08.03 - CXO - MUFG
352.    2018.08.03 - CXO - Seaport
353.    2018.08.03 - CXO - TD Securities
354.    2018.08.05 - CXO - Evercore
355.    2018.08.06 - CXO - KLR
356.    2018.08.07 - CXO - Jefferies
357.    2018.08.14 - CXO - J.P. Morgan
358.    2018.08.16 - CXO - Morgan Stanley
359.    2018.08.17 - CXO - NatAlliance
360.    2018.08.27 - CXO - J.P. Morgan
361.    2018.08.27 - CXO - Seaport
362.    2018.09.06 - CXO - SunTrust
363.    2018.09.07 - CXO - Seaport
364.    2018.09.24 - CXO - SunTrust
365.    2018.09.25 - CXO - SunTrust
366.    2018.09.27 - CXO - J.P. Morgan
367.    2018.10.05 - CXO - Jefferies
368.    2018.10.12 - CXO - MUFG
369.    2018.10.15 - CXO - Susquehanna
370.    2018.10.23 - CXO - Seaport
371.    2018.10.23 - CXO - Wells Fargo

11

# Appendix B
# Materials Considered

372.  2018.10.26 - CXO - Barclays
373.  2018.10.29 - CXO - J.P. Morgan
374.  2018.10.30 - CXO - Bank of America
375.  2018.10.30 - CXO - BMO
376.  2018.10.30 - CXO - Evercore
377.  2018.10.30 - CXO - J.P. Morgan
378.  2018.10.30 - CXO - Jefferies
379.  2018.10.30 - CXO - Macquarie
380.  2018.10.30 - CXO - Piper Sandler
381.  2018.10.30 - CXO - Raymond James
382.  2018.10.30 - CXO - RBC
383.  2018.10.30 - CXO - Seaport
384.  2018.10.30 - CXO - SunTrust
385.  2018.10.30 - CXO - UBS
386.  2018.10.30 - CXO - Wells Fargo
387.  2018.10.31 - CXO - Barclays
388.  2018.10.31 - CXO - Credit Suisse
389.  2018.10.31 - CXO - Ladenburg
390.  2018.10.31 - CXO - Morgan Stanley
391.  2018.10.31 - CXO - Morningstar (1)
392.  2018.10.31 - CXO - Morningstar (2)
393.  2018.10.31 - CXO - MUFG
394.  2018.10.31 - CXO - NatAlliance
395.  2018.10.31 - CXO - RBC
396.  2018.10.31 - CXO - Scotiabank (1)
397.  2018.10.31 - CXO - Scotiabank (2)
398.  2018.10.31 - CXO - Seaport
399.  2018.10.31 - CXO - SunTrust
400.  2018.10.31 - CXO - TD Securities
401.  2018.10.31 - CXO - Wolfe
402.  2018.11.01 - CXO - Raymond James
403.  2018.11.01 - CXO - Seaport
404.  2018.11.02 - CXO - Jefferies
405.  2018.11.05 - CXO - TD Securities
406.  2018.11.15 - CXO - Barclays
407.  2018.11.15 - CXO - MUFG
408.  2018.11.20 - CXO - J.P. Morgan

12

# Appendix B
# Materials Considered

409. 2018.11.29 - CXO - Cowen
410. 2018.12.04 - CXO - MKM
411. 2018.12.06 - CXO - Morningstar
412. 2018.12.06 - CXO - Seaport (1)
413. 2018.12.06 - CXO - Seaport (2)
414. 2018.12.06 - CXO - Seaport (3)
415. 2018.12.10 - CXO - Seaport
416. 2018.12.17 - CXO - Susquehanna
417. 2018.12.19 - CXO - Morningstar
418. 2019.01.03 - CXO - RBC
419. 2019.01.09 - CXO - Morgan Stanley
420. 2019.01.11 - CXO - Seaport (1)
421. 2019.01.11 - CXO - Seaport (2)
422. 2019.01.16 - CXO - Barclays
423. 2019.01.16 - CXO - Evercore
424. 2019.01.18 - CXO - J.P. Morgan
425. 2019.01.18 - CXO - RBC
426. 2019.01.23 - CXO - Morningstar
427. 2019.02.07 - CXO - Barclays
428. 2019.02.07 - CXO - Morningstar (1)
429. 2019.02.07 - CXO - Morningstar (2)
430. 2019.02.07 - CXO - Morningstar
431. 2019.02.11 - CXO - Macquarie
432. 2019.02.13 - CXO - Morningstar
433. 2019.02.19 - CXO - BMO
434. 2019.02.19 - CXO - Cowen
435. 2019.02.19 - CXO - J.P. Morgan
436. 2019.02.19 - CXO - Jefferies
437. 2019.02.19 - CXO - Macquarie
438. 2019.02.19 - CXO - Morningstar (1)
439. 2019.02.19 - CXO - Morningstar (2)
440. 2019.02.19 - CXO - Piper Sandler
441. 2019.02.19 - CXO - Raymond James
442. 2019.02.19 - CXO - RBC
443. 2019.02.19 - CXO - Seaport
444. 2019.02.19 - CXO - SunTrust
445. 2019.02.19 - CXO - Wells Fargo

13

# Appendix B
# Materials Considered

446.  2019.02.19 - CXO - Wolfe
447.  2019.02.20 - CXO - Bank of America
448.  2019.02.20 - CXO - Barclays
449.  2019.02.20 - CXO - Credit Suisse
450.  2019.02.20 - CXO - Evercore
451.  2019.02.20 - CXO - J.P. Morgan
452.  2019.02.20 - CXO - Ladenburg
453.  2019.02.20 - CXO - MKM
454.  2019.02.20 - CXO - Raymond James
455.  2019.02.20 - CXO - RBC
456.  2019.02.20 - CXO - Scotiabank (1)
457.  2019.02.20 - CXO - Scotiabank (2)
458.  2019.02.20 - CXO - Seaport
459.  2019.02.20 - CXO - Stephens
460.  2019.02.20 - CXO - SunTrust
461.  2019.02.20 - CXO - Susquehanna
462.  2019.02.20 - CXO - UBS
463.  2019.02.21 - CXO - MKM
464.  2019.02.21 - CXO - Morgan Stanley
465.  2019.02.21 - CXO - Morningstar
466.  2019.02.21 - CXO - MUFG
467.  2019.02.21 - CXO - Seaport
468.  2019.02.21 - CXO - TD Securities
469.  2019.02.27 - CXO - Jefferies
470.  2019.02.28 - CXO - Morningstar (1)
471.  2019.02.28 - CXO - Morningstar (2)
472.  2019.02.28 - CXO - Morningstar (3)
473.  2019.03.04 - CXO - UBS
474.  2019.03.05 - CXO - Stephens
475.  2019.03.06 - CXO - Barclays
476.  2019.03.07 - CXO - J.P. Morgan
477.  2019.03.12 - CXO - Wells Fargo
478.  2019.03.26 - CXO - Susquehanna
479.  2019.04.01 - CXO - Macquarie
480.  2019.04.01 - CXO - Morningstar
481.  2019.04.02 - CXO - Bank of America
482.  2019.04.02 - CXO - Cowen

14

# Appendix B
# Materials Considered

483. 2019.04.02 - CXO - Evercore
484. 2019.04.02 - CXO - Ladenburg
485. 2019.04.02 - CXO - Morningstar (1)
486. 2019.04.02 - CXO - Morningstar (2)
487. 2019.04.02 - CXO - Piper Sandler
488. 2019.04.02 - CXO - RBC
489. 2019.04.02 - CXO - Scotiabank (1)
490. 2019.04.02 - CXO - Scotiabank (2)
491. 2019.04.02 - CXO - SunTrust
492. 2019.04.02 - CXO - TD Securities
493. 2019.04.03 - CXO - Seaport
494. 2019.04.03 - CXO - UBS
495. 2019.04.04 - CXO - J.P. Morgan
496. 2019.04.11 - CXO - Barclays
497. 2019.04.11 - CXO - MUFG
498. 2019.04.15 - CXO - RBC
499. 2019.04.15 - CXO - SunTrust
500. 2019.04.17 - CXO - Susquehanna
501. 2019.04.18 - CXO - Raymond James
502. 2019.04.22 - CXO - Barclays
503. 2019.04.24 - CXO - Seaport
504. 2019.04.30 - CXO - Barclays
505. 2019.04.30 - CXO - BMO
506. 2019.04.30 - CXO - Cowen
507. 2019.04.30 - CXO - Evercore
508. 2019.04.30 - CXO - J.P. Morgan
509. 2019.04.30 - CXO - Jefferies
510. 2019.04.30 - CXO - Macquarie
511. 2019.04.30 - CXO - Raymond James
512. 2019.04.30 - CXO - RBC
513. 2019.04.30 - CXO - Scotiabank
514. 2019.04.30 - CXO - Seaport
515. 2019.04.30 - CXO - SunTrust
516. 2019.04.30 - CXO - Susquehanna
517. 2019.04.30 - CXO - Wells Fargo
518. 2019.04.30 - CXO - Wolfe
519. 2019.05.01 - CXO - Bank of America

15

# Appendix B
# Materials Considered

520.  2019.05.01 - CXO - Credit Suisse
521.  2019.05.01 - CXO - J.P. Morgan
522.  2019.05.01 - CXO - Ladenburg
523.  2019.05.01 - CXO - Macquarie
524.  2019.05.01 - CXO - MKM
525.  2019.05.01 - CXO - Morningstar (1)
526.  2019.05.01 - CXO - Morningstar (2)
527.  2019.05.01 - CXO - MUFG
528.  2019.05.01 - CXO - Piper Sandler
529.  2019.05.01 - CXO - RBC
530.  2019.05.01 - CXO - Seaport
531.  2019.05.01 - CXO - Stephens
532.  2019.05.01 - CXO - SunTrust
533.  2019.05.01 - CXO - UBS
534.  2019.05.02 - CXO - Jefferies
535.  2019.05.02 - CXO - Raymond James
536.  2019.05.02 - CXO - Seaport (1)
537.  2019.05.02 - CXO - Seaport (2)
538.  2019.05.02 - CXO - TD Securities
539.  2019.05.13 - CXO - Wells Fargo
540.  2019.05.14 - CXO - Barclays
541.  2019.05.14 - CXO - Stephens
542.  2019.05.23 - CXO - Seaport (1)
543.  2019.05.23 - CXO - Seaport (2)
544.  2019.05.28 - CXO - J.P. Morgan
545.  2019.05.28 - CXO - Seaport
546.  2019.05.30 - CXO - Wolfe
547.  2019.06.05 - CXO - RBC
548.  2019.06.07 - CXO - Morningstar (1)
549.  2019.06.07 - CXO - Morningstar (2)
550.  2019.06.07 - CXO - Susquehanna
551.  2019.06.11 - CXO - SunTrust
552.  2019.06.18 - CXO - J.P. Morgan
553.  2019.06.18 - CXO - Susquehanna
554.  2019.07.01 - CXO - Seaport (1)
555.  2019.07.01 - CXO - Seaport (2)
556.  2019.07.09 - CXO - J.P. Morgan

16

# Appendix B
# Materials Considered

557.  2019.07.18 - CXO - Cowen
558.  2019.07.18 - CXO - J.P. Morgan
559.  2019.07.18 - CXO - RBC
560.  2019.07.19 - CXO - Bank of America
561.  2019.07.19 - CXO - Morgan Stanley
562.  2019.07.19 - CXO - MUFG
563.  2019.07.21 - CXO - UBS
564.  2019.07.22 - CXO - Seaport
565.  2019.07.24 - CXO - Ladenburg
566.  2019.07.25 - CXO - Wells Fargo
567.  2019.07.26 - CXO - Jefferies
568.  2019.07.31 - CXO - Barclays (1)
569.  2019.07.31 - CXO - Barclays (2)
570.  2019.07.31 - CXO - Barclays (3)
571.  2019.07.31 - CXO - BMO
572.  2019.07.31 - CXO - Cowen
573.  2019.07.31 - CXO - Heikkinen
574.  2019.07.31 - CXO - J.P. Morgan
575.  2019.07.31 - CXO - Jefferies
576.  2019.07.31 - CXO - Macquarie
577.  2019.07.31 - CXO - Piper Sandler
578.  2019.07.31 - CXO - Raymond James
579.  2019.07.31 - CXO - RBC
580.  2019.07.31 - CXO - Seaport
581.  2019.07.31 - CXO - SunTrust
582.  2019.07.31 - CXO - Wolfe
583.  2019.08.01 - CXO - Bank of America
584.  2019.08.01 - CXO - Credit Suisse
585.  2019.08.01 - CXO - Evercore
586.  2019.08.01 - CXO - J.P. Morgan
587.  2019.08.01 - CXO - Ladenburg
588.  2019.08.01 - CXO - MKM
589.  2019.08.01 - CXO - Morgan Stanley
590.  2019.08.01 - CXO - Morningstar (1)
591.  2019.08.01 - CXO - Morningstar (2)
592.  2019.08.01 - CXO - MUFG
593.  2019.08.01 - CXO - Raymond James

17

# Appendix B
# Materials Considered

594.  2019.08.01 - CXO - RBC
595.  2019.08.01 - CXO - Seaport
596.  2019.08.01 - CXO - Stephens
597.  2019.08.01 - CXO - SunTrust
598.  2019.08.01 - CXO - Susquehanna
599.  2019.08.01 - CXO - TD Securities
600.  2019.08.01 - CXO - UBS
601.  2019.08.01 - CXO - Wells Fargo
602.  2019.08.01 - CXO - Wolfe
603.  2019.08.02 - CXO - Macquarie
604.  2019.08.05 - CXO - J.P. Morgan
605.  2019.08.05 - CXO - Jefferies
606.  2019.08.06 - CXO - Morgan Stanley
607.  2019.08.14 - CXO - Piper Sandler
608.  2019.08.15 - CXO - Wolfe
609.  2019.08.19 - CXO - Stephens (1)
610.  2019.08.19 - CXO - Stephens (2)
611.  2019.08.21 - CXO - SunTrust
612.  2019.08.28 - CXO - Evercore
613.  2019.08.30 - CXO - MKM
614.  2019.09.03 - CXO - Barclays
615.  2019.09.03 - CXO - Evercore
616.  2019.09.03 - CXO - J.P. Morgan
617.  2019.09.03 - CXO - Jefferies
618.  2019.09.03 - CXO - MKM
619.  2019.09.03 - CXO - Raymond James
620.  2019.09.03 - CXO - RBC
621.  2019.09.16 - CXO - Morningstar
622.  2019.09.17 - CXO - Jefferies
623.  2019.09.23 - CXO - J.P. Morgan
624.  2019.09.30 - CXO - Barclays
625.  2019.10.09 - CXO - J.P. Morgan
626.  2019.10.29 - CXO - Evercore
627.  2019.10.29 - CXO - J.P. Morgan
628.  2019.10.29 - CXO - Raymond James
629.  2019.10.29 - CXO - RBC
630.  2019.10.29 - CXO - Susquehanna

# Appendix B
## Materials Considered

631.  2019.10.29 - CXO - UBS
632.  2019.10.29 - CXO - Wolfe
633.  2019.10.30 - CXO - Barclays
634.  2019.10.30 - CXO - MKM
635.  2019.10.30 - CXO - Raymond James
636.  2019.10.31 - CXO - J.P. Morgan
637.  2019.10.31 - CXO - Morningstar
638.  2019.10.31 - CXO - RBC
639.  2019.11.04 - CXO - Morningstar (1)
640.  2019.11.04 - CXO - Morningstar (2)
641.  2019.11.12 - CXO - Scotiabank
642.  2019.12.23 - CXO - Morningstar (1)
643.  2019.12.23 - CXO - Morningstar (2)
644.  2020.01.06 - CXO - Guggenheim
645.  2020.01.06 - CXO - Morningstar
646.  2020.01.13 - CXO - J.P. Morgan
647.  2020.01.20 - CXO - Scotiabank
648.  2020.01.21 - CXO - RBC
649.  2020.01.27 - CXO - Evercore
650.  2020.02.18 - CXO - Evercore
651.  2020.02.18 - CXO - J.P. Morgan
652.  2020.02.18 - CXO - Morningstar
653.  2020.02.18 - CXO - Raymond James
654.  2020.02.18 - CXO - RBC (1)
655.  2020.02.18 - CXO - RBC (2)
656.  2020.02.18 - CXO - Scotiabank (1)
657.  2020.02.18 - CXO - Scotiabank (2)
658.  2020.02.18 - CXO - Wolfe
659.  2020.02.19 - CXO - Barclays
660.  2020.02.19 - CXO - J.P. Morgan
661.  2020.02.19 - CXO - MKM
662.  2020.02.19 - CXO - Raymond James
663.  2020.02.19 - CXO - Susquehanna
664.  2020.02.19 - CXO - UBS
665.  2020.02.20 - CXO - Scotiabank
666.  2020.02.28 - CXO - Morningstar

19

# Appendix B
# Materials Considered

## Court decisions in other matters

667. *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989)

668. Bricklayers & Trowel Trades International Pension Fund v. Credit Suisse Securities (USA) LLC, May 14, 2014, 752 F.3d 82, 92 (1st Cir. 2014)

669. *Ark. Teacher Ret. Sys. v. Goldman Sachs Group, Inc.*, 77 F.4th 74, 104 (2d Cir. 2023)

670. Brief for Financial Economists as Amici Curiae Supporting Respondents, *Goldman Sachs Group, Inc., et al., v. Arkansas Teacher Retirement System, et al.,* No. 20-222 (U.S., March 2021)

671. *In Re TECO Energy Inc. Securities Litigation*, 2006 U.S. Dist. LEXIS 18101, at *19 (M.D. Fla. March 30, 2006)

672. *Barrie v. Intervoice-Brite, Inc.*, 2006 U.S. Dist. LEXIS 69299 (N.D. Tex. Sept. 25, 2006)

673. *In re Daimlerchrysler AG Securities Litigation*, 294 F. Supp. 2d 616 (D. Del. 2003)

674. *In re Real Estate Associates Ltd. Partnership Litigation*, 223 F.Supp.2d 1142 (C.D. Cal. 2002)

675. *Goldkrantz v. Griffin*, 1999 WL 191540 (S.D.N.Y. Apr. 6, 1999)

676. *Greenberg v. Crossroads Sys., Inc*., 364 F.3d 657 (5th Cir. 2004)

677. *In re BP p.l.c. Sec. Litig*., 2014 WL 2112823, at *10 n.10 (S.D. Tex. May 20, 2014)

## Miscellaneous

678. "Analyzing Analyst Recommendations," *U.S. Securities and Exchange Commission*, accessed at: https://www.sec.gov/about/reports-publications/investor-publications/analyzing-analyst-recommendations

679. "S&P Oil & Gas Exploration & Production Select Industry Index," *S&P Dow Jones Indices*, as of February 29, 2024

680. "Shale Companies, Adding Ever More Wells, Threaten Future of U.S. Oil Boom," *The Wall Street Journal*, March 3, 2019

681. Expert Rebuttal Report and deposition of Chad Coffman, *In Re. Banco Bradesco S.A. Securities Litigation* (1:16-cv-04155), dated December 14, 2018

# Appendix C to Allen Report

# Appendix C

**_In re Concho Resources Inc., Securities Litigation_**
**Statements Challenged by the Consolidated Complaint**

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| | | | **<u>Category A</u>: Generic Statements** | |
| A-1 | 169 | Feb. 20, 2018 | The fourth quarter was an excellent end to a great year for Concho. _**Our operational and financial performance demonstrated our ability to consistently execute, control costs and capitalize on opportunities that strengthen our competitive position.**_ | Q4 & FY 2017 Earnings Release |
| A-2 | 171*[2] | Feb. 20, 2018 | _**High-quality acreage and scale within the Permian Basin enables Concho to efficiently allocate capital while continuing to advance manufacturing-style development with leading-edge drilling and completion techniques.**_ | Q4 & FY 2017 Earnings Release |
| A-3 | 176* | Feb. 20, 2018 | [From the Source]:<br><br>From these projects, Concho is collecting _**valuable data that helps the Company optimize lateral placement, completion design and facilitates planning**_. | Q4 & FY 2017 Earnings Release |
| A-4 | 176* | Feb. 20, 2018 | [From the Source]:<br><br>Concho is _**utilizing leading-edge technologies, including fiber optic monitoring, to collect valuable proprietary data with real-time and long-term implications for full-field optimization**_. | Q4 & FY 2017 Earnings Release |
| A-5 | 180 | Feb. 21, 2018 | **Multi-well pad drilling and project development may result in volatility in our operating results.** | 2017 Form 10-K |

[1] Unless otherwise noted as "From the Source," the content in this column of the chart is copied from the Consolidated Complaint.  For certain quotations, Defendants have added the context of the statements, indicating such change using brackets [ ], based on the source material.  For ease of reference, where the Defendants have added context, the Defendants have bolded the quotations that are emphasized in the Consolidated Complaint. Otherwise, statements reflect the emphasis provided in the Consolidated Complaint.

[2] Certain paragraphs of the Complaint, including Paragraph 171, contain multiple alleged misrepresentations.  Where appropriate, those paragraphs have been split into multiple statements and organized into different sections of this chart.  Paragraphs that have been split are designated with an asterisk (*).

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| | | | *We utilize multi-well pad drilling and project development where practical*. Project development may involve more than one multi-well pad being drilled and completed at one time in a relatively confined area. Wells drilled on a pad or in a project may not be brought into production until all wells on the pad or project are drilled and completed. Problems affecting one pad or a single well could adversely affect production from all of the wells on the pad or in the entire project. As a result, multi well pad drilling and project development can cause delays in the scheduled commencement of production, or interruptions in ongoing production. These delays or interruptions may cause declines or volatility in our operating results due to timing as well as declines in oil and natural gas prices. Further, any delay, reduction or curtailment of our development and producing operations, due to operational delays caused by multi-well pad drilling or project development, or otherwise, could result in the loss of acreage through lease expirations.<br><br>Additionally, infrastructure expansion, including more complex facilities and takeaway capacity, could become challenging in project development areas. Managing capital expenditures for infrastructure expansion could cause economic constraints when considering design capacity. | |
| A-6 | 188-189 | Feb. 21, 2018 | [¶ 188] This industry is exciting: commodity prices change, new plays emerge, technology advance. *Our strategy allows us to adapt quickly. And our history in the Permian, which is the best value-creating engine in our industry, enables us to be a leader in the development here*.<br><br>*Developing large-scale projects, manufacturing mode, whatever you call it, is one way that we're doing that*.<br><br>[¶ 189] *While our strategy is the same, the development of our inventory is more sophisticated and creates an opportunity to extend our competitive edge*. | Q4 2017 Earnings Call |
| A-7 | 190 | Feb. 21, 2018 | **[From the Source]:** | Q4 2017 Earnings Call |

2

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| | | | Over the last few years, our *transition to large-scale, multi-well projects has been an important development that will continue to drive growth, innovation and efficiencies*. | |
| A-8 | 191 | Feb. 21, 2018 | *Our accomplishments last year paved the way for continued operational and financial performance for the next decade. Our development activities validated well spacing, lateral placement and completion design*, and our strategic acquisitions and asset exchanges added complementary leasehold for long lateral development. *The result is more high-quality reinvestment opportunities to fuel our growth*. | Q4 2017 Earnings Call |
| A-9 | 193 | Feb. 21, 2018 | **Analyst**: Jack, most of your development to date, the tremendous growth over the last several years has, I guess, been single well pads as you've locked up your acreage and moved to an efficient mode of operation. How should we think about moving to field development as it relates to child wells versus parent, and how do you factor that into your thoughts in terms of guidance and so on? Harper: Sure. And *that is one of the reasons to move to the large-scale development as we have*. And I think *we've successfully made that transition. And so you will see more of that in the future to attempt to avoid creating child wells. Where there are child wells, which is a smaller percentage of our opportunities, we will continue to test that and make sure that we try not to leave any behind*. | Q4 2017 Earnings Call |
| A-10 | 199 | Mar. 5, 2018 | *So manufacturing mode is a term we use. Other people call it cube development and there's other names as well*. What we're trying to do is maximize the rate of return and the resource at the same time. And it's a work in progress, as you might guess. But some of the things that we're using as part of that is, clearly, technology. I said before, *taking this empirical data, combining it with modern technology helps us get to, we think, a better answer faster*. | Raymond James Institutional Investors Conference |

3

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| | | | I think *the drilling synergies are well documented*. Walking rigs and drilling in nearby proximity. *Certainly on the completion side, not only are our zipper-style completions efficient and may be a more effective way to complete the wells, they're increasingly being priced in a preferential manner as well*.<br><br>And then production optimization is speaking to this sizing out facilities not for maximum – not necessarily for maximum production, but for a maximum return over a long period of time. | |
| A-11 | 208 | Mar. 28, 2018 | **Analyst**: Sure, understood. And then, I guess, second, the synergies you talked about and the advantages to quote-unquote manufacturing, can you just give a little bit of additional color detailing around what exactly it is that allows manufacturing mode on these assets to drive those synergies?<br><br>Leach: Yes. As Steve mentioned, I mean, the balance sheet to be able to do this *intense development*, instead of 1 or 2 well pads, to go to *8 well multi-well pads is one of the drivers*. But it's also long laterals and all the infrastructure that we're going to be able to use together. Infrastructure, such as salt water disposal systems, water handling system that we built over time. *All those things will be very additive*. | Investor Call |
| A-12 | 213 | May 1, 2018 | Our team achieved another outstanding quarter of operational and financial results, driving significant production growth while maintaining a disciplined capital program. *Our results reflect our focus on large-scale project development, which enables us to maximize ultimate recovery, efficiencies and returns*. Looking ahead, we intend to build on our strong momentum and capitalize on our execution strength, cost control and strong balance sheet to extend our track record of delivering growth and returns. | Q1 2018 Earnings Release |
| A-13 | 216 | May 2, 2018 | I want to focus on *the value-creating opportunities driven by large-scale development. We believe this type of development is important to maximize recoveries, drive economies of scale and deliver attractive economic returns predictably and consistently over the long term*. | Q1 2018 Earnings Call |

4

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| A-14 | 218 | May 2, 2018 | **[From the Source]:**<br><br>Analyst: You kind of talked about moving from the 2 to 4 well pads to 8 to 10, but you guys are testing upwards of 20 wells at 1 of these pads. Can you talk about maybe what the sweet spot may be? Is it 8 to 10? Does 20 *make sense* just for cash sources and uses?<br><br>Leach: Well, I mean, when you talk about pads, it's a little bit more complicated than that. I think it's better to think about it as a project, a drilling project. Sometimes, we'll have 4 actual pads on the same project just so we can have rigs working at the same time. So we've been talking in terms mainly of half-section development, and we will have up to 5 landing zones in some of these areas. And if you're going 8 across on a section, so that's 4 wells in each landing times 5. So in a drilling project, you may have 20 wells in a half section. But then when we go to full-section development, it's twice that. So I think the answer to your question is these *kind* of drilling projects are *going to grow in wells in the project over time* and grow dramatically. And that's -- it *drives a lot of value creation*, as you can see on that Slide 16. | Q1 2018 Earnings Call |
| A-15 | 223* | May 15, 2018 | The big thing that's going on in the business is this transition to development mode, and we've talked a lot about that. There's a lot of industry conversation around what that means, what that looks like. There's different terms, tanks, cubes, everybody has a little bit different definition. ***But for us, it means getting to what we think is the optimal development plan, recognizing that you're learning all the time, but trying to decide what the right spacing is, which is generally 8 across in the different zones, and really getting in, and both big multi-well pads and stringing together multiple multi-well pads into even larger projects, simultaneously developing a square mile***. Simultaneously both from a - in the same horizontal zone, but also vertically. And so we've talked a lot about these big multi-well pad projects. We've highlighted how we're doing them, both in the Midland Basin and in the Southern Delaware and also in the Northern Delaware. The projects that we've talked the most about, that have the most kind of age on them are the Mabee | Citi Global Energy and Utilities Conference |

5

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| | | | project up in the Northern Delaware - sorry, the Northern Midland, where we drilled 13 wells on a single half-mile section to 5 different zones, and we've talked a lot about the challenges of that. I think industry generally agrees that's a better way to do it, but you have to have a very sizable balance sheet and technical team, a big enough productive base to work through those challenges. The challenges of - that's the best way to do it, but it can be challenging getting up the learning curve. | |
| A-16 | 224 | May 15, 2018 | But ***I don't really view it as a dramatic change to development mode. Like I said, it's kind of an evolution going from 2-well pads to 3-well pads to 6-well projects to 8-well. So I think there's been an evolutionary - I don't think you can kind of see a switch get flipped. It's been a long time coming. We give quarterly guidance because of the - trying to give visibility into our business. And so I think that, plus the annual guidance, is a good way. We try to be very thoughtful in kind of showing you how we get there on an annual basis. But I don't expect there to be some big step change and all that***. | Citi Global Energy and Utilities Conference |
| A-17 | 225 | May 15, 2018 | **[From the Source]:**<br><br>**Giraud**: I think, we're -- from the areas that we're focused on, I'll turn to this slide where we've kind of highlighted the different major pad projects that we're doing in '18 and '19. And the takeaway, I hope, from that map is, we're doing that everywhere. We're doing it in the Midland Basin, the Southern Delaware and the ***Northern Delaware***. And what's nice about the RSP assets and what really attracted us to them is, they are already assembled and ready for this style of development. I think you can look at this map and see that while we have big blocks in Northern Delaware, there's work to be done still up there consolidating the overall position. But ***we're in a relative light stage in terms of under - we've kind of come through discovery, we've gone through delineation and now we're into development mode. And so in those different 3 main assets, we're there***. But what I don't want to leave you with the impression is that we're not still learning. We did that fiber-optics project up on the Mabee Ranch, 13 well pad. And from that, we've learned some | Citi Global Energy and Utilities Conference |

| # | CC | Date | Statement[1] | Source |
|---|----|----|--------------|--------|
| | | | things that have caused us to tweak our completion design, actually make a little bit lower costs. So we continue to learn and then can move those learnings around to the other basins quickly. And so there's still work being done, but I think what we're seeing is, *we think we know*. And so we think we know in the Midland Basin how you need to match up the optimal spacing development of the Middle Spraberry, the Lower Spraberry, the Wolfcamp A and the Wolfcamp B. *And we think we know what the spacing needs to be in all those and how you ought to develop it. But - so that specific example, I think, we're farther down the line. We're in a later stage of innings*. But I think it's worth noting that there's still discovery and delineation work happening on our assets and around the Permian. I mean, just this last quarter, you saw RSP talk about the Jo Mill on their assets, and that's not a zone we've historically targeted, that's not part of that stack that I just talked about. So there's still discovery and delineation work happening. I think there's still opportunity. We've tried to kind of highlight a little bit how we're thinking about that. This last quarter we talked about multiple landings in the Bone Spring over in Eddy County. We've talked about multiple landings in the Bone Spring and Lea County before. So there's still discovery and delineation of additional resource and still at figuring out what the optimal kind of development stack is. I've never been very good at predicting the innings. I think *we've historically been more conservative*, and we're not very good at predicting additional operational efficiencies that we can gain out into the future. So...<br><br>**Analyst:** But there's more innings, that's good.<br><br>**Giraud:** There's definitely more innings, there's no doubt about that. | |
| A-18 | 230 | Aug. 2, 2018 | **[From the Source]:**<br><br>We talked about reaching inflection points in the past. The shift to horizontal development in 2011 is one example. Establishing a position in the Northern | Q2 2018 Earnings Call |

7

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| | | | Delaware is another. And it was about a year ago that we described another inflection point, our progression to large-scale development. Horizontal drilling in the Northern Delaware turned out to be huge value drivers for the company. And we believe manufacturing mode will do the same thing. This transition has been one of our most important operational and strategic priorities. | |
| A-19 | 233-234 | Aug 2, 2018 | Concho provided investors with a presentation to accompany the 2Q 2018 Earnings Call . . . [that] claimed that "manufacturing mode" "*unlocks significant value*" and "*optimizes well performance and increases resource recovery*." | Q2 2018 Earnings Call Deck |
| A-20 | 240 | Sept. 5, 2018 | And those things I talked about that we are focused on that have created strategic advantages for us, I want to touch on those. The execution of my team, that's what allows us to run this large capital program and run these rigs. The asset base that we have built over the last decade provides balance both in the Midland Basin and in the Delaware Basin and it also gives us an | Barclays CEO Energy Power Conference |

8

| # | CC | Date | Statement[1] | Source |
|---|----|------|--------------|--------|
| | | | inventory of premium locations that we have multiple decades of this type of drilling to do. Capital efficiency, we have focused on both sides of the efficiency equation. ***Our wells are continuing to get better and the costs continue to become more efficient, and we manage the cost side of the equation as well***. That's what allows us to generate growth and free cash flow. And growth and free cash flow are going to be the name of the game for the next decade. We'll spend some time talking about that. | |
| A-21 | 242 | Sept. 5, 2018 | So what I really want to focus on today in my remarks are the execution, strength and scale that our company has and that our team has built. And I want to talk about it in the terms of what it means to us and why does it matter. And the - it really falls into three different buckets. ***There's the operational bucket, there's also the building for the future and how do you manage risk.*** And so the ***allocation of capital is probably the most important thing that our team does and the most important thing that we do that creates success for the company. That's what drives our production growth and free cash flow. Also, we run a very large and stable ship. This allows us to balance risk and kind of plow through the volatility of our business***. As we're drilling these wells, we try to create a virtuous learning cycle, where we are continuing to learn as we drill. And, yes, I know that you probably heard it in this conference that maybe that we are at the end of gains and efficiency and improvements. And I would tell you, I think, we're at an inflection point. And the inflection point is probably just as important as when I stood up here and described an inflection point of going from vertical drilling to horizontal drilling in Permian several years ago, there's also an inflection point in our business, where we went from -- into the Delaware Basin and our team described why we thought the rock in the Delaware Basin were some of the best rock we've seen anywhere and why we were accumulating assets in the Delaware. Well, that type of efficiency and technology comes out of the wells that we're drilling and I'm telling you, I think, we are at a new inflection point. We also in execution and scale, focus on building for the future, and the assets that we've accumulated and the size and scale of those assets, and finally, the | Barclays CEO Energy Power Conference |

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| | | | *management of risk is, basically goes into the category, it's always something. We've had periods in the past, where whether it's weather or sand or frac spreads, this is a volatile business. The size and scale helps us manage the risk of those business. I'll spend some time talking about that.* | |
| A-22 | 243 | Sept. 5, 2018 | **[From the Source]:**<br><br>So it's just a matter of commodity price. And we've aggressively hedged our Mid-Cush differential to provide a bridge to this, what we believe will the excess capacity is coming to the Permian. We also believe that the Permian will be a preferential place to price a barrel in the future. And so we're managing to that end. At the same time, I will tell you, as the company has grown, our ***philosophy of having a portfolio approach to mitigate risk*** is going to apply to this as well. You'll see Concho crude going in three different directions basically to Cushing, to Houston, to Corpus Christi, there are four directions, and to refineries that are within the Permian itself. And our oil being priced at a number of different pricing points in a portfolio kind of basket without necessarily having to take space or buy space on a pipe. | Barclays CEO Energy Power Conference |
| A-23 | 245 | Sept. 5, 2018 | So this ***inflection point that I was talking about is driven by manufacturing mode.*** And we increasingly are approaching developing our properties, not only from four different dimensions basically, there's a horizontal dimension, the vertical dimension, the sequencing between zones and the timing of what some in the industry call mowing the grass. ***So you do this to minimize the pressure syncs that create parent/child relationships between wells. This is the future of our business.*** And this transition to this style of development is just as important, I believe, as the transition we went through for horizontal drilling.<br><br>***This is going to be a value creator and it optimizes recoveries, optimizes economics and reduces stranded wells.*** | Barclays CEO Energy Power Conference |
| A-24 | 255 | Oct. 30, 2018 | *We have been disciplined over the last several years - generating free cash flow, prudently growing oil production, reducing our cost structure and* | Q3 2018 Earnings Release |

| # | CC | Date | Statement[1] | Source |
|---|----|------|--------------|--------|
| | | | *building for the future with accretive acquisitions and strategic portfolio management. These efforts position us well for the next stage of our company, which includes delivering high-margin oil growth and initiating a return-of- capital strategy to our shareholders. We are a growth company, and our platform for delivering growth, demonstrating the benefits of scale and enhancing shareholder value, has never been better."* | |
| A-25 | 258 | Oct. 31, 2018 | **[From the Source]:**<br><br>Analyst: That makes a lot of sense. Then lastly, Tim, on your prepared remarks, and certainly in some of your comments earlier, doesn't sound like you're too concerned about upcoming service cost. Kind of sounds like maybe perhaps it'll stay in line. I know I've asked you about this in the past, would you think about -- I know I've talked to some others that are locking in some rigs on a bit longer- term contracts. People seem to be a little more concerned may be on rig inflation than they are on fracs here and then, let's call it, for 2019, could you all maybe just address the drilling or it's completion side. Any concerns you might have there?<br><br>Leach: No, I think *the drilling side of our business is one of the best parts of our business*. And I think *the way we have approached that in the past will continue*. I mean, you can see that it doesn't require that much of a growth in rigs to accomplish all the future, not just for '19 and '20, but beyond. So, by *drilling longer laterals and the spacing we're using, the efficiency and all that, you can get a whole lot more done*. And we do have rigs that now are on 6-months contracts or 1-year contracts but *we do have kind of a portfolio approach on that. But I don't think you should expect us to - any change in strategy based on what we're seeing today*. | Q3 2018 Earnings Call |
| A-26 | 260 | Oct. 31, 2018 | **Analyst**: I want to kind of take another run at that theme that Derrick had on his last question. So, as you guys are transitioning to these larger-scale pads, are there - the efficiencies, I think you guys have done a good job explaining, and I think the market's on top of that. But are there any challenges that are emerging, either ones that you anticipated or ones that you didn't anticipate | Q3 2018 Earnings Call |

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| | | | that could lead to some nonobvious outcomes either in your CapEx profile quarter-to-quarter or your production ramp?<br><br>**Harper**: Sure. ***Yes, these large- scale projects, they really emphasize planning and planning ahead. And our team has done a good job of that***. I think we're out in front, out here in the industry on this. So, yeah, there are midstream considerations, there's water delivery, there's water disposal, there's a lot of considerations, but - which typically can require up to a year of planning. And again, ***our team's doing a great job in managing that. And so, while there are challenges, we're up to it. And that is why we're increasing the percentage of capital towards this kind of projects***. | |
| A-27 | 262* | Oct. 31, 2018 | **Analyst:** There continues to be a lot of discussion about impacts of bounded versus unbounded well productivity on these pads in the Permian. What are you guys seeing on that front? And I guess how are you contemplating kind of parent-child relationships in the plan you've laid out? And how might that evolve as you think about moving more and more to these larger-scale projects?<br><br>**Giraud:** ***Sure. Big drivers on going to these large-scale projects are: one, we think maximizing the resource by minimizing the impact of the parent-child effect; and then also getting the benefits on the capital side from efficiency***. So those are kind of the two big drivers behind going to project development....<br><br>**Analyst:** Is that something you'd be willing to share?<br><br>**Leach:** It's different by zone and different by area. And it's extremely complicated. And we're developing a program to minimize it. I'm not sure that any company in any location can completely eliminate that because you always have edges of your leases and things like that. But I think ***with our asset base and the big blocky nature of our assets and the way we're prosecuting our development program, we're in the best position to kind of minimize that effect. And we think we have it estimated very well***. | Q3 2018 Earnings Call |

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| A-28 | 270 | Feb. 20, 2019 | **Multi-well pad drilling and project development may result in volatility in our operating results.**<br><br>*We utilize multi-well pad drilling and project development where practical.* Project development may involve more than one multi-well pad being drilled and completed at one time in a relatively confined area. Wells drilled on a pad or in a project may not be brought into production until all wells on the pad or project are drilled and completed. Problems affecting one pad or a single well could adversely affect production from all of the wells on the pad or in the entire project. As a result, multi-well pad drilling and project development can cause delays in the scheduled commencement of production, or interruptions in ongoing production. These delays or interruptions may cause declines or volatility in our operating results due to timing as well as declines in oil and natural gas prices. Further, any delay, reduction or curtailment of our development and producing operations, due to operational delays caused by multi-well pad drilling or project development, or otherwise, could result in the loss of acreage through lease expirations. | 2018 Form 10-K |
| A-29 | 275* | Feb. 20, 2019 | *Our project results continued to demonstrate the prudence of this approach, which mitigates parent-child impacts, drives operational efficiencies and maximizes the long-term value of our investments*. | Q4 & FY 2018 Earnings Call |
| A-30 | 278* | Feb. 20, 2019 | **[From the Source]:**<br>Sure, I mean, while it's still early, it's been a *slow evolution for us into these larger and larger project sizes*. . . .*I think we also doubled down on the necessity of doing it this way and that this is the better way to do it*. I'm modestly optimistic with over measured in periods and years, we will continue to find more efficiencies out of doing it that way, *in addition to just the base reasons to do it around mitigating parent-child impacts, things like that*. | Q4 & FY 2018 Earnings Call |

13

| # | CC | Date | Statement[1] | Source |
|---|----|----|-----------|--------|
| A-31 | 280 | Feb. 20, 2019 | **Analyst**: Okay. And - but I guess what I'm asking is what is it about 2020 that's going to make that performance even if the commodity assumption is lower? Is it just this continued push towards bigger and bigger projects and longer laterals, sort of what are some of the variables there?<br><br>**Harper**: Sure, I mean, our focus will be on the most efficient deployment of our capital under any circumstance, and that is further highlighted the lower the commodity prices, and I think it's actually an opportunity for us to differentiate ourselves. *But you're right, it's making our investment better through large project development, lateral placement within the zones, well spacing, all of the small knobs that can now be turned to increase efficiency*. | Q4 & FY 2018 Earnings Call |
| A-32 | 283 | Mar. 4, 2019 | Sure. So the question was, what do we not know about well spacing and sand loading, and there's always a lot to learn. *I think we're at an advantage because we've drilled more wells than anybody else and have empirical data to look at*. And also, we study what our peers do. I'll tell you what we do know about sand loading is we have reached diminishing returns in some of our areas and even seen sand loading come down. So economically, when you can spend less and get a similar result, it increases the rate of return, so that's positive. *Our well spacing, it's an extremely complicated multivariable equation that does take a lot of time to fully understand. I would remind people that we have historically been pretty conservative on the way we've accounted for inventory and well spacing, and I'm thankful that, that's been our view up till now*. | Raymond James Institutional Investors Conference |
| A-33 | 294* | May 1, 2019 | **[From the Source]:**<br><br>*And so I think that's the exciting thing about what we've been able to do and are going to continue to do is deliver really compelling returns while continuing to learn.* | Q1 2019 Earnings Call |

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| | | | **Category B: Results and Observations from 2017 & 2018** | |
| B-1 | 170 | Feb. 20, 2018 | **[From the Source]:**<br><br>Delivered ***outstanding results from the Company's large-scale development projects in the Northern and Southern Delaware Basin*** and in the Midland Basin. | Q4 & FY 2017 Earnings Release |
| B-2 | 194 | Feb. 21, 2018 | **[From the Source]:**<br><br>Analyst: So in terms of -- I guess you don't give a type curve as such, but as we look at the sort of productivity per lateral foot, I guess the best to think about your business, you don't see any degradation there at all.<br><br>Harper: Well, ***we've modeled the outcome as we see it based on the spacing that has either already happened or will happen in the future***. | Q4 2017 Earnings Call |
| B-3 | 201 | Mar. 5, 2018 | We've highlighted here on the left side of the page a couple of the upcoming large-scale projects and really just to show you that where some of them are. ***They're very dispersed amongst our asset base.*** And they are, in some cases, getting larger. We have a 20- plus well pad or project on here that we'll begin this year, but don't plan to see production until next year on that. | Raymond James Institutional Investors Conference |
| B-4 | 220 | May 2, 2018 | The accompanying presentation to the May 2, 2018 earnings call incorporated an infographic map depicting Concho's "Key Projects" for 2018 and 2019, all of which were multi-well and multi-zone projects, including the Dominator, a "20+ well multi-zone project" in the Northern Delaware Basin: | Q1 2018 Earnings Call Deck |

| # | CC | Date | Statement[1] | Source |
|---|----|----|-----|--------|
| | | | | |
| B-5 | 223* | May 15, 2018 | *And I think we're fortunate to have kind of learned along the way and evolved from first drilling a 2-well pad and then a 3-well pad and then 2 2-well pads together. So we've been building up to this kind of larger-scale development mode, and we're very excited about what we're seeing.* And I think that's the power of what are causing things like the first quarter and the results we had there. | Citi Global Energy and Utilities Conference |
| B-6 | 231 | Aug. 2, 2018 | I think we've been one of the leaders in moving to these larger-scale development projects. *And that's been a steady evolution over the last couple of years as we've tested different spacing between -- within a zone and between zones. And so these bigger and bigger projects, I think, are just the further evolution of that trend.* Where you see some of the smaller projects, that's us continuing to test tighter spacing or different spacing within a zone or between zones, again. And so I think you're right. *Longer term, you'll see an evolution to the bigger and bigger projects.* However, we're still learning as we go. And so I think you'll see a blend of different sizes. | Q2 2018 Earnings Call |

16

| # | CC | Date | Statement[1] | Source |
|---|----|------|-----------|--------|
| B-7 | 247 | Sept. 5, 2018 | *So as we drill these wells, we don't - we're not stamping out wells. Every one of these areas is - the rock is different and what we're going for is precision. And we are collecting a lot of information. . . . You can see what the predrill well plan was. And then as we had this information, and we were using real-time information to steer the well, how it helped us guide the well into the best rock, it allowed us to drill a 13,000-foot well with 1 drill bit. And so this kind of geo model is what we're using in every one of our areas to continue to increase the productivity and efficiency of the wells. . . . .* | Barclays CEO Energy Power Conference |
| B-8 | 249 | Sept. 5, 2018 | And I can tell you more and more those projects are going to be multi-well pads. We started out a few years ago that it was 2, 3, 4 wells a pad. *We're right now - this is probably the extreme example, but the Dominator project in Lea County, New Mexico, is 23 wells being drilled by 7 rigs all at the same time on 1 section of land. That's probably going to be the most aggressive multi-well pad that we drill.* Probably going forward, a normal development will be 8 to 12 wells per pad. So that kind of capital efficiency would generate free cash flow for us. | Barclays CEO Energy Power Conference |
| B-9 | 259 | Oct. 31, 2018 | **Analyst**: Got it. And perhaps for Will, with the understanding that you guys are still in the relatively early stages of large-scale development, are there any generalizations you can make regarding efficiencies, gain or challenges experienced? I know that you guys recently talked about sequencing and timing in your Barclays presentation.<br><br>*Giraud*: Sure. I mean, we continue to experiment with different completion designs, timings, spacing. There's still a lot of learning to be done there. But I mean, *early benefits, I think you see it in 2019 and 2020 program and you see it in the confidence of making these average projects sizes bigger over time. We like what we're seeing. We like the benefits we get of efficiency with our vendors of concentrating that much activity in one spot. And we like the results we're getting out of them. So more to come.* | Q3 2018 Earnings Call |

17

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| B-10 | 275* | Feb. 20, 2019 | ***Operationally, things are proceeding as planned***. During the fourth quarter, we ran 34 rigs, one of the largest programs in the basin. ***We continued to advance our style of returns-centric development, which focuses on large-scale and multi-well projects across our asset base.*** | Q4 & FY 2018 Earnings Call |
| B-11 | 277 | Feb. 20, 2019 | **[From the Source]:**<br><br>But certainly, I think what ***we're pleased by is that as we moved into this large- scale project development, we're seeing the results we expect***, and it's enabling us to do some pretty interesting things from testing and continuing to understand the best way to do it. | Q4 & FY 2018 Earnings Call |
| B-12 | 278* | Feb. 20, 2019 | I'll just say we're obviously ***very pleased with what we're seeing and in terms of what we're expecting to see***. | Q4 & FY 2018 Earnings Call |
| **Category C: Pre-2019 Projections** | | | | |
| C-1 | 197 | Mar. 5, 2018 | **[From the Source]:**<br><br>Here, let's talk about the 2018 budget for just a moment. And I'd like to start with the donut-looking charts on the left side. Well, first of all, before we go there, ***let me say you should expect more of the same in '18 as you saw in previous years from Concho. It's going to be a budget focused on reinvesting our cash flow and an increased percentage of capital going towards these larger-scale projects that we've been describing to you***. | Raymond James Institutional Investors Conference |
| C-2 | 171* | Feb. 20, 2018 | Concho expects 2018 capital spending to be at the midpoint of its capital guidance range of $1.9 billion to $2.1 billion, which reflects the Company's current outlook for service cost inflation. ***The 2018 capital program is expected to be funded with cash flows from operations and generate 20% crude oil growth and 16% to 20% total production growth year-over-year***. Approximately 93% of the capital program is allocated to drilling and completion activities, with approximately 65% of that capital directed towards large-scale manufacturing projects. The Company's 2018 capital program is allocated among the following areas: Northern Delaware Basin (40%), | Q4 & FY 2017 Earnings Release |

| # | CC | Date | Statement[1] | Source |
|---|---|---|---|---|
| | | | Southern Delaware Basin (25%), Midland Basin (30%) and the New Mexico Shelf (5%). | |
| C-3 | 185-186 | Feb. 21, 2018 | [¶ 185] *As we look to 2018, our total capital investment is expected to be $2 billion, with 93% allocated for drilling and completion activity. This level of investment is expected to grow oil approximately 20%. Importantly, approximately two-thirds of our development capital will be directed to large-scale, multi-zone projects. . . .* <br><br> **[From the Source]:** <br><br> [¶ 186] In general, *when we give guidance, we try to forecast the things that we're aware of at the time we give the guidance.* | Q4 2017 Earnings Call |
| C-4 | 174 | Feb. 20, 2018 | **[From the Source]:** <br><br> The Company provided a new three-year production growth outlook. *Concho expects to grow total production at a compound annual growth rate of 20% from 2017 to 2020. The outlook reflects the Company's high-quality production base and strong operating momentum*. Additionally, the Company expects to deliver this growth within cash flows from operations at an average crude oil price (WTI) in the low-to-mid $50 per barrel range over the duration of the outlook. <br><br> *As with the Company's 2018 outlook, growth over the three-year period from 2017 to 2020 is the output of reinvesting high-margin cash flow into its drilling program*. | Q4 & FY 2017 Earnings Release |
| C-5 | 178 | Feb. 20, 2018 | At December 31, 2017, Concho's estimated proved reserves totaled 840 MMBoe, an increase of 17% from year-end 2016. The Company's proved reserves are approximately 60% crude oil and 40% natural gas. Proved developed reserves totaled 588 MMBoe, an increase of 26% from year-end 2016. The Company's proved developed reserves represent approximately 70% of total proved reserves. | Q4 & FY 2017 Earnings Release |

19

| # | CC | Date | Statement[1] | Source |
|---|----|------|--------------|--------|
| | | | During 2017, Concho added 194 MMBoe of proved reserves primarily from drilling and completion operations, resulting in a reserve replacement ratio of 275%. The Company's proved developed finding and development cost was $8.68 per Boe for 2017 | |
| C-6 | 182 | Feb. 21, 2018 | At December 31, 2017, substantially all of our 840 MMBoe total estimated proved reserves were located in our core operating areas and consisted of approximately 60 percent oil and 40 percent natural gas. We have assembled a multi-year inventory of horizontal development and exploration projects across our four core operating areas.<br><br>***<br><br>Northern Delaware Basin. At December 31, 2017, we had estimated proved reserves in this area of 295 MMBoe, representing 35 percent of our total proved reserves.<br><br>***<br><br>Southern Delaware Basin. At December 31, 2017, we had estimated proved reserves in this area of 128 MMBoe, representing 15 percent of our total proved reserves. | 2017 Form 10-K |
| C-7 | 206 | Mar. 28, 2018 | **[From the Source]:**<br><br>We will run the largest development program in the Permian and our combined position will be more than 640,000 net acres...<br><br>I expect Concho to capture both operational synergies and corporate level savings. These synergies, which are estimated to have a present value exceeding $2 billion derive from the highly complementary and blocky nature of these assets.... In addition to operational synergies, there are financial benefits we expect from corporate level savings. And those come from the areas you would expect, including the overlapping public company cost and | Investor Call |

20

| # | CC | Date | Statement[1] | Source |
|---|----|----|----|----|
| | | | financing cost. In all, we estimate annual corporate cost savings of $60 million. | |
| C-8 | 207 | Mar. 28, 2018 | In addition *to our size, scale and execution strength provided us with the unique ability to capitalize on these new complementary assets. This ability includes moving these assets into manufacturing mode, which generates cost savings and minimizes parent-child locations*. | Investor Call |
| C-9 | 209 | Mar. 28, 2018 | Yes. We've said in total. Scott, that [the synergies with RSP are] in excess of $2 billion, and Tim really hit on the keys. It's long lateral, *it's large-scale development, it's preventing the parent-child relationship with large-scale development*, it's a shared infrastructure. *So those are the key drivers. And there's good value in each one of those*. | Investor Call |

# Appendix D to Allen Report

**Content Analysis of Analyst Reports For Alleged Misstatement A-1**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"The fourth quarter was an excellent end to a great year for Concho. Our operational and financial performance demonstrated our ability to consistently execute, control costs and capitalize on opportunities that strengthen our competitive position."

| | BMO | Cowen | J.P. Morgan | Jefferies | Piper Sandler | RBC (2) | Stephens | SunTrust | Wolfe | Bank of America | Credit Suisse | Deutsche Bank | Evercore (1) | Evercore (2) | Ladenburg | Morgan Stanley | MUFG | Raymond James | RBC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| **Date of analyst report:** | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 |

| | Scotiabank (1) | Scotiabank (2) | Seaport (1) | Seaport (2) | SunTrust | Seaport |
|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A |
| **Date of analyst report:** | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/22 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-2**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"High-quality acreage and scale within the Permian Basin enables Concho to efficiently allocate capital while continuing to advance manufacturing-style development with leading-edge drilling and completion techniques."

| | BMO | Cowen | J.P. Morgan | Jefferies | Piper Sandler | RBC (2) | Stephens | SunTrust | Wolfe | Bank of America | Credit Suisse | Deutsche Bank | Evercore (1) | Evercore (2) | Ladenburg | Morgan Stanley | MUFG | Raymond James | RBC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Date of analyst report: | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 |

| | Scotiabank (1) | Scotiabank (2) | Seaport (1) | Seaport (2) | SunTrust | Seaport |
|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A |
| Date of analyst report: | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/22 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-3**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"From these projects, Concho is collecting valuable data that helps the Company optimize lateral placement, completion design and facilitates planning."

| | BMO | Cowen | J.P. Morgan | Jefferies | Piper Sandler | RBC (2) | Stephens | SunTrust | Wolfe | Bank of America | Credit Suisse | Deutsche Bank | Evercore (1) | Evercore (2) | Ladenburg | Morgan Stanley | MUFG | Raymond James | RBC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Date of analyst report: | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 |

| | Scotiabank (1) | Scotiabank (2) | Seaport (1) | Seaport (2) | SunTrust | Seaport |
|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A |
| Date of analyst report: | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/22 |

Page 3 of 87

**Content Analysis of Analyst Reports For Alleged Misstatement A-4**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"Concho is utilizing leading-edge technologies, including fiber optic monitoring, to collect valuable proprietary data with real-time and long-term implications for full-field optimization."

| | BMO | Cowen | J.P. Morgan | Jefferies | Piper Sandler | RBC (2) | Stephens | SunTrust | Wolfe | Bank of America | Credit Suisse | Deutsche Bank | Evercore (1) | Evercore (2) | Ladenburg | Morgan Stanley | MUFG | Raymond James | RBC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Date of analyst report: | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 |

| | Scotiabank (1) | Scotiabank (2) | Seaport (1) | Seaport (2) | SunTrust | Seaport |
|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A |
| Date of analyst report: | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/22 |

Page 4 of 87

**Content Analysis of Analyst Reports For Alleged Misstatement A-5**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on February 21, 2018 in the 2017 Form 10-K were materially false and misleading:

"Multi-well pad drilling and project development may result in volatility in our operating results.[…] We utilize multi-well pad drilling and project development where practical."

| | Credit Suisse | MUFG | RBC | Seaport (1) | Seaport (2) | SunTrust | Seaport |
|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No | No | No | No |
| Date of analyst report: | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/22 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-6
## Analysts Issuing Reports after Alleged Misstatement

Plaintiffs claim that the following statements made on February 21, 2018 in the Q4 2017 Earnings Call were materially false and misleading:

"[¶ 188] This industry is exciting: commodity prices change, new plays emerge, technology advance. Our strategy allows us to adapt quickly. And our history in the Permian, which is the best value-creating engine in our industry, enables us to be a leader in the development here. [...] Developing large-scale projects, manufacturing mode, whatever you call it, is one way that we're doing that. [¶ 189] While our strategy is the same, the development of our inventory is more sophisticated and creates an opportunity to extend our competitive edge."

|  | Credit Suisse | Morgan Stanley | MUFG | RBC | Seaport (1) | Seaport (2) | SunTrust | Seaport |
|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | Yes | No | No | No | Yes |
| Date of analyst report: | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/22 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-7**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on February 21, 2018 in the Q4 2017 Earnings Call were materially false and misleading:

"Over the last few years, our transition to large-scale, multi-well projects has been an important development that will continue to drive growth, innovation and efficiencies."

|  | Credit Suisse | Morgan Stanley | MUFG | RBC | Seaport (1) | Seaport (2) | SunTrust | Seaport |
|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | Yes | No | No | No | Yes |
| Date of analyst report: | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/22 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-8**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on February 21, 2018 in the Q4 2017 Earnings Call were materially false and misleading:

"Our accomplishments last year paved the way for continued operational and financial performance for the next decade. Our development activities validated well spacing, lateral placement and completion design, and our strategic acquisitions and asset exchanges added complementary leasehold for long lateral development. The result is more high-quality reinvestment opportunities to fuel our growth."

| | Credit Suisse | Morgan Stanley | MUFG | RBC | Seaport (1) | Seaport (2) | SunTrust | Seaport |
|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | Yes | No | No | No | Yes |
| Date of analyst report: | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/22 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-9**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on February 21, 2018 in the Q4 2017 Earnings Call were materially false and misleading:

"Harper: Sure. And that is one of the reasons to move to the large-scale development as we have. And I think we've successfully made that transition. And so you will see more of that in the future to attempt to avoid creating child wells. Where there are child wells, which is a smaller percentage of our opportunities, we will continue to test that and make sure that we try not to leave any behind."

| | Credit Suisse | Morgan Stanley | MUFG | RBC | Seaport (1) | Seaport (2) | SunTrust | Seaport |
|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | Yes | No | No | No | Yes |
| **Date of analyst report:** | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/22 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-10
## Analysts Issuing Reports after Alleged Misstatement

Plaintiffs claim that the following statements made on March 5, 2018 in the Raymond James Institutional Investors Conference (2018) were materially false and misleading:

"So manufacturing mode is a term we use. Other people call it cube development and there's other names as well. […] I said before, taking this empirical data, combining it with modern technology helps us get to, we think, a better answer faster. […] I think the drilling synergies are well documented. Walking rigs and drilling in nearby proximity. Certainly on the completion side, not only are our zipper-style completions efficient and may be a more effective way to complete the wells, they're increasingly being priced in a preferential manner as well."

| | UBS |
|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No |
| 3. Does the report reference the alleged misstatement? | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No |
| **Date of analyst report:** | **3/6** |

**Content Analysis of Analyst Reports For Alleged Misstatement A-11**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on March 28, 2018 in the Investor Call were materially false and misleading:

"Leach: Yes. As Steve mentioned, I mean, the balance sheet to be able to do this intense development, instead of 1 or 2 well pads, to go to 8 well multi-well pads is one of the drivers. But it's also long laterals and all the infrastructure that we're going to be able to use together. Infrastructure, such as salt water disposal systems, water handling system that we built over time. All those things will be very additive."

| | Bank of America | BMO | Credit Suisse (1) | Credit Suisse (2) | Deutsche Bank | Evercore | J.P. Morgan | Piper Sandler (1) | Piper Sandler (2) | Raymond James | RBC (2) | Seaport | SunTrust | UBS | Bank of America | Jefferies | KLR | Ladenburg | Macquarie |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No | No | Yes | No | No | No | No | No | No | No | Yes | No | No | No | No | No |
| Date of analyst report: | 3/28 | 3/28 | 3/28 | 3/28 | 3/28 | 3/28 | 3/28 | 3/28 | 3/28 | 3/28 | 3/28 | 3/28 | 3/28 | 3/28 | 3/29 | 3/29 | 3/29 | 3/29 | 3/29 |

| | Seaport | Stephens | SunTrust | Evercore | UBS | J.P. Morgan | KLR | MUFG | Seaport | Wolfe |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | [1] No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | Yes | No | No | Yes | Yes | No | No | Yes | No | Yes |
| Date of analyst report: | 3/29 | 3/29 | 3/29 | 4/1 | 4/1 | 4/2 | 4/2 | 4/2 | 4/3 | 4/3 |

**Notes:**

[1] Except for mentions regarding the number of well pads.

**Content Analysis of Analyst Reports For Alleged Misstatement A-12**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on May 1, 2018 in the Q1 2018 Earnings Release were materially false and misleading:

"Our team achieved another outstanding quarter of operational and financial results, driving significant production growth while maintaining a disciplined capital program. Our results reflect our focus on large-scale project development, which enables us to maximize ultimate recovery, efficiencies and returns. Looking ahead, we intend to build on our strong momentum and capitalize on our execution strength, cost control and strong balance sheet to extend our track record of delivering growth and returns."

| | BMO | Cowen | Credit Suisse | Evercore | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Stephens | SunTrust | UBS | Wolfe | Bank of America | KLR | Ladenburg | Morgan Stanley | Morningstar (1) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Date of analyst report: | 5/1 | 5/1 | 5/1 | 5/1 | 5/1 | 5/1 | 5/1 | 5/1 | 5/1 | 5/1 | 5/1 | 5/1 | 5/1 | 5/1 | 5/2 | 5/2 | 5/2 | 5/2 | 5/2 |

| | Morningstar (2) | RBC | Scotiabank (1) | Scotiabank (2) | Seaport (1) | Seaport (2) | SunTrust | Raymond James | Seaport | MUFG |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | Yes | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Date of analyst report: | 5/2 | 5/2 | 5/2 | 5/2 | 5/2 | 5/2 | 5/2 | 5/3 | 5/3 | 5/4 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-13**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on May 2, 2018 in the Q1 2018 Earnings Call were materially false and misleading:
"I want to focus on the value-creating opportunities driven by large-scale development. We believe this type of development is important to maximize recoveries, drive economies of scale and deliver attractive economic returns predictably and consistently over the long term."

| | KLR | Morningstar (1) | Seaport (2) | SunTrust | Raymond James | Seaport | MUFG | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | Yes | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No | No | Yes | No | No |
| **Date of analyst report:** | 5/2 | 5/2 | 5/2 | 5/2 | 5/3 | 5/3 | 5/4 | 5/7 |

Page 13 of 87

**Content Analysis of Analyst Reports For Alleged Misstatement A-14**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on May 2, 2018 in the Q1 2018 Earnings Call were materially false and misleading:

"Leach: Well, I mean, when you talk about pads, it's a little bit more complicated than that. [...] So I think the answer to your question is these kind of drilling projects are going to grow in wells in the project over time and grow dramatically. And that's -- it drives a lot of value creation, as you can see on that Slide 16."

| | KLR | Morningstar (1) | Seaport (2) | SunTrust | Raymond James | Seaport | MUFG | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No | No | Yes | No | No |
| **Date of analyst report:** | 5/2 | 5/2 | 5/2 | 5/2 | 5/3 | 5/3 | 5/4 | 5/7 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-15**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on May 15, 2018 in the Citi Global Energy and Utilities Conference were materially false and misleading:

"[...] But for us, it means getting to what we think is the optimal development plan, recognizing that you're learning all the time, but trying to decide what the right spacing is, which is generally 8 across in the different zones, and really getting in, and both big multi-well pads and stringing together multiple multi-well pads into even larger projects, simultaneously developing a square mile."

|  | J.P. Morgan | J.P. Morgan (1) | J.P. Morgan (2) | Wolfe |
|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No |
| **Date of analyst report:** | **5/16** | **5/17** | **5/17** | **5/17** |

**Content Analysis of Analyst Reports For Alleged Misstatement A-16**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on May 15, 2018 in the Citi Global Energy and Utilities Conference were materially false and misleading:

"But I don't really view it as a dramatic change to development mode. Like I said, it's kind of an evolution going from 2-well pads to 3-well pads to 6-well projects to 8-well. So I think there's been an evolutionary - I don't think you can kind of see a switch get flipped. It's been a long time coming. We give quarterly guidance because of the - trying to give visibility into our business. And so I think that, plus the annual guidance, is a good way. We try to be very thoughtful in kind of showing you how we get there on an annual basis. But I don't expect there to be some big step change and all that."

| | J.P. Morgan | J.P. Morgan (1) | J.P. Morgan (2) | Wolfe |
|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No |
| **Date of analyst report:** | **5/16** | **5/17** | **5/17** | **5/17** |

**Content Analysis of Analyst Reports For Alleged Misstatement A-17**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on May 15, 2018 in the Citi Global Energy and Utilities Conference were materially false and misleading:

"Giraud: I think, we're -- from the areas that we're focused on, I'll turn to this slide where we've kind of highlighted the different major pad projects that we're doing in '18 and '19. [...] We're doing it in the Midland Basin, the Southern Delaware and the Northern Delaware. [...] But we're in a relative light stage in terms of under - we've kind of come through discovery, we've gone through delineation and now we're into development mode. And so in those different 3 main assets, we're there. [...] And so there's still work being done, but I think what we're seeing is, we think we know. [...] And we think we know what the spacing needs to be in all those and how you ought to develop it. But - so that specific example, I think, we're farther down the line. We're in a later stage of innings."

|  | J.P. Morgan | J.P. Morgan (1) | J.P. Morgan (2) | Wolfe |
|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No |
| Date of analyst report: | 5/16 | 5/17 | 5/17 | 5/17 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-18**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on August 2, 2018 in the Q2 2018 Earnings Call were materially false and misleading:

"We talked about reaching inflection points in the past. The shift to horizontal development in 2011 is one example. Establishing a position in the Northern Delaware is another. And it was about a year ago that we described another inflection point, our progression to large-scale development. [...] Horizontal drilling in the Northern Delaware turned out to be huge value drivers for the company. And we believe manufacturing mode will do the same thing.  This transition has been one of our most important operational and strategic priorities."

| | Credit Suisse | Morningstar (1) | Morningstar (2) | Raymond James | Seaport | SunTrust | Susquehanna | MUFG | Seaport | TD Securities | Evercore | KLR | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | Yes | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No | No | No | Yes | No | Yes | No | Yes | No | No |
| **Date of analyst report:** | 8/2 | 8/2 | 8/2 | 8/2 | 8/2 | 8/2 | 8/2 | 8/3 | 8/3 | 8/3 | 8/5 | 8/6 | 8/7 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-19**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on August 2, 2018 in the Q2 2018 Earnings Call Deck were materially false and misleading:

"Concho provided investors with a presentation to accompany the 2Q 2018 Earnings Call . . . [that] claimed that "manufacturing mode" "unlocks significant value" and "optimizes well performance and increases resource recovery.""

| | BMO | Cowen | Evercore | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC (1) | RBC (2) | Stephens | SunTrust | UBS | Wolfe | Bank of America | Credit Suisse | Ladenburg | Morgan Stanley | Morningstar (1) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/2 | 8/2 | 8/2 | 8/2 |

| | Morningstar (2) | Raymond James | Scotiabank (1) | Scotiabank (2) | Seaport | SunTrust | Susquehanna | MUFG | Seaport | TD Securities | Evercore | KLR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | Yes | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | Yes | No | No | No | No | No | No | Yes | No | No | No |
| Date of analyst report: | 8/2 | 8/2 | 8/2 | 8/2 | 8/2 | 8/2 | 8/2 | 8/3 | 8/3 | 8/3 | 8/5 | 8/6 |

Page 19 of 87

**Content Analysis of Analyst Reports For Alleged Misstatement A-20**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on September 5, 2018 in the Barclays CEO Energy Power Conference were materially false and misleading:

"Capital efficiency, we have focused on both sides of the efficiency equation. Our wells are continuing to get better and the costs continue to become more efficient, and we manage the cost side of the equation as well. That's what allows us to generate growth and free cash flow. And growth and free cash flow are going to be the name of the game for the next decade. "

|  | SunTrust | Seaport |
|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No |
| 3. Does the report reference the alleged misstatement? | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No |
| **Date of analyst report:** | **9/6** | **9/7** |

Page 20 of 87

**Content Analysis of Analyst Reports For Alleged Misstatement A-21**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on September 5, 2018 in the Barclays CEO Energy Power Conference were materially false and misleading:

"There's the operational bucket, there's also the building for the future and how do you manage risk. And so the allocation of capital is probably the most important thing that our team does and the most important thing that we do that creates success for the company. That's what drives our production growth and free cash flow. Also, we run a very large and stable ship. This allows us to balance risk and kind of plow through the volatility of our business. [...] and finally, the management of risk is, basically goes into the category, it's always something. We've had periods in the past, where whether it's weather or sand or frac spreads, this is a volatile business. The size and scale helps us manage the risk of those business."

|  | SunTrust | Seaport |
|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No |
| 3. Does the report reference the alleged misstatement? | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No |
| **Date of analyst report:** | **9/6** | **9/7** |

**Content Analysis of Analyst Reports For Alleged Misstatement A-22**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on September 5, 2018 in the Barclays CEO Energy Power Conference were materially false and misleading:

"So it's just a matter of commodity price. And we've aggressively hedged our Mid-Cush differential to provide a bridge to this, what we believe will the excess capacity is coming to the Permian. We also believe that the Permian will be a preferential place to price a barrel in the future. And so we're managing to that end. At the same time, I will tell you, as the company has grown, our philosophy of having a portfolio approach to mitigate risk is going to apply to this as well. You'll see Concho crude going in three different directions basically to Cushing, to Houston, to Corpus Christi, there are four directions, and to refineries that are within the Permian itself. And our oil being priced at a number of different pricing points in a portfolio kind of basket without necessarily having to take space or buy space on a pipe."

|  | SunTrust | Seaport |
|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No |
| 3. Does the report reference the alleged misstatement? | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No |
| **Date of analyst report:** | **9/6** | **9/7** |

Page 22 of 87

**Content Analysis of Analyst Reports For Alleged Misstatement A-23**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on September 5, 2018 in the Barclays CEO Energy Power Conference were materially false and misleading:

"So this inflection point that I was talking about is driven by manufacturing mode. And we increasingly are approaching developing our properties, not only from four different dimensions basically, there's a horizontal dimension, the vertical dimension, the sequencing between zones and the timing of what some in the industry call mowing the grass. So you do this to minimize the pressure syncs that create parent/child relationships between wells. This is the future of our business. And this transition to this style of development is just as important, I believe, as the transition we went through for horizontal drilling. [...] This is going to be a value creator and it optimizes recoveries, optimizes economics and reduces stranded wells."

|  | SunTrust | Seaport |
|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No |
| 3. Does the report reference the alleged misstatement? | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No |
| **Date of analyst report:** | **9/6** | **9/7** |

Page 23 of 87

**Content Analysis of Analyst Reports For Alleged Misstatement A-24**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on October 30, 2018 in the Q3 2018 Earnings Release were materially false and misleading:

"We have been disciplined over the last several years - generating free cash flow, prudently growing oil production, reducing our cost structure and building for the future with accretive acquisitions and strategic portfolio management. These efforts position us well for the next stage of our company, which includes delivering high-margin oil growth and initiating a return-of- capital strategy to our shareholders. We are a growth company, and our platform for delivering growth, demonstrating the benefits of scale and enhancing shareholder value, has never been better."

| | BMO | Evercore | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | UBS | Wells Fargo | Bank of America | Barclays | Credit Suisse | Ladenburg | Morgan Stanley | Morningstar (1) | Morningstar (2) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | [1] No | No | No | No | No | [1] No | No |
| For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Date of analyst report: | 10/30 | 10/30 | 10/30 | 10/30 | 10/30 | 10/30 | 10/30 | 10/30 | 10/30 | 10/30 | 10/30 | 10/30 | 10/30 | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 |

| | MUFG | NatAlliance | RBC | Scotiabank (1) | Scotiabank (2) | Seaport | SunTrust | TD Securities | Wolfe | Raymond James | Seaport | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No |
| Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No |
| Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | [1] No |
| For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |
| Date of analyst report: | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 11/1 | 11/1 | 11/2 |

**Notes:**

[1] Except for mentions regarding having more large scale projects.

**Content Analysis of Analyst Reports For Alleged Misstatement A-25**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on October 31, 2018 in the Q3 2018 Earnings Call were materially false and misleading:

"Leach: No, I think the drilling side of our business is one of the best parts of our business. And I think the way we have approached that in the past will continue. I mean, you can see that it doesn't require that much of a growth in rigs to accomplish all the future, not just for 2019 and 2020, but beyond. So, by drilling longer laterals and the spacing we're using, the efficiency and all that, you can get a whole lot more done. And we do have rigs that now are on six-month contracts or one-year contracts, but we do have kind of a portfolio approach on that, but I don't think you should expect us to - any change in strategy based on what we're seeing today."

| | Credit Suisse | Morningstar (1) | Morningstar (2) | MUFG | NatAlliance | SunTrust | Wolfe | Raymond James | Seaport | Jefferies | TD Securities |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | Yes | No | No | No | No | Yes | No | Yes |
| Date of analyst report: | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 11/1 | 11/1 | 11/2 | 11/5 |

Page 25 of 87

**Content Analysis of Analyst Reports For Alleged Misstatement A-26**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on October 31, 2018 in the Q3 2018 Earnings Call were materially false and misleading:

"Harper: Sure. Yes, these large- scale projects, they really emphasize planning and planning ahead. And our team has done a good job of that. I think we're out in front, out here in the industry on this. So, yeah, there are midstream considerations, there's water delivery, there's water disposal, there's a lot of considerations, but - which typically can require up to a year of planning. And again, our team's doing a great job in managing that. And so, while there are challenges, we're up to it. And that is why we're increasing the percentage of capital towards this kind of projects."

| | Credit Suisse | Morningstar (1) | Morningstar (2) | MUFG | NatAlliance | SunTrust | Wolfe | Raymond James | Seaport | Jefferies | TD Securities |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No [1] | No [1] | No [1] |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | Yes | No | No | No | No | Yes | No | Yes |
| Date of analyst report: | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 10/31 | 11/1 | 11/1 | 11/2 | 11/5 |

**Notes:**
[1] Except for mentions regarding plan to issue dividend.

**Content Analysis of Analyst Reports For Alleged Misstatement A-27**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on October 31, 2018 in the Q3 2018 Earnings Call were materially false and misleading:

"Giraud: Sure. Big drivers on going to these large-scale projects are: one, we think maximizing the resource by minimizing the impact of the parent-child effect; and then also getting the benefits on the capital side from efficiency. [...] Leach: It's different by zone and different by area. And it's extremely complicated. And we're developing a program to minimize it. I'm not sure that any company in any location can completely eliminate that because you always have edges of your leases and things like that. But I think with our asset base and the big blocky nature of our assets and the way we're prosecuting our development program, we're in the best position to kind of minimize that effect. And we think we have it estimated very well."

| | Credit Suisse | Morningstar (1) | Morningstar (2) | MUFG | NatAlliance | SunTrust | Wolfe | Raymond James | Seaport | Jefferies | TD Securities |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | Yes | No | No | No | No | Yes | No | Yes |
| **Date of analyst report:** | **10/31** | **10/31** | **10/31** | **10/31** | **10/31** | **10/31** | **10/31** | **11/1** | **11/1** | **11/2** | **11/5** |

**Content Analysis of Analyst Reports For Alleged Misstatement A-28**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on February 20, 2019 in the 2018 Form 10-K were materially false and misleading:

"Multi-well pad drilling and project development may result in volatility in our operating results. […] We utilize multi-well pad drilling and project development where practical."

|  | Credit Suisse | J.P. Morgan | MKM | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | MKM | Morgan Stanley | Morningstar | MUFG | Seaport | TD Securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | u | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-29**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on February 20, 2019 in the Q4 & FY 2018 Earnings Call were materially false and misleading:

"Our project results continued to demonstrate the prudence of this approach, which mitigates parent-child impacts, drives operational efficiencies and maximizes the long-term value of our investments."

|  | MKM | Raymond James | RBC | MKM | Morgan Stanley | MUFG | Seaport | TD Securities | Credit Suisse | J.P. Morgan | Stephens | SunTrust | Susquehanna |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No | Yes | Yes | Yes | No | No | No | No | No | No |
| Date of analyst report: | 2/20 | 2/20 | 2/20 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-30**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on February 20, 2019 in the Q4 & FY 2018 Earnings Call were materially false and misleading:

"Sure, I mean, while it's still early, it's been a slow evolution for us into these larger and larger project sizes. . . . And we also doubled down on the necessity of doing it this way and that this is the better way to do it. I'm modestly optimistic with over measured in periods and years, we will continue to find more efficiencies out of doing it that way, in addition to just the base reasons to do it around mitigating parent-child impacts, things like that."

| | MKM | Raymond James | RBC | MKM | Morgan Stanley | MUFG | Seaport | TD Securities | Credit Suisse | J.P. Morgan | Stephens | SunTrust | Susquehanna |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No | Yes | Yes | Yes | No | No | No | No | No | No |
| **Date of analyst report:** | 2/20 | 2/20 | 2/20 | 2/21 | 2/21 | 2/21 | 2/21 | 2/21 | 2/20 | 2/20 | 2/20 | 2/20 | 2/20 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-31
## Analysts Issuing Reports after Alleged Misstatement

Plaintiffs claim that the following statements made on February 20, 2019 in the Q4 & FY 2018 Earnings Call were materially false and misleading:

"Harper: Sure, I mean, our focus will be on the most efficient deployment of our capital under any circumstance, and that is further highlighted the lower the commodity prices, and I think it's actually an opportunity for us to differentiate ourselves. But you're right, it's making our investment better through large project development, lateral placement within the zones, well spacing, all of the small knobs that can now be turned to increase efficiency."

| | MKM | Raymond James | RBC | MKM | Morgan Stanley | MUFG | Seaport | TD Securities | Credit Suisse | J.P. Morgan | Stephens | SunTrust | Susquehanna |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No | Yes | Yes | Yes | No | No | No | No | No | No |
| **Date of analyst report:** | **2/20** | **2/20** | **2/20** | **2/21** | **2/21** | **2/21** | **2/21** | **2/21** | **2/20** | **2/20** | **2/20** | **2/20** | **2/20** |

**Content Analysis of Analyst Reports For Alleged Misstatement A-32**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on March 4, 2019 in the Raymond James Institutional Investors Conference (2019) were materially false and misleading:

"Sure. So the question was, what do we not know about well spacing and sand loading, and there's always a lot to learn. I think we're at an advantage because we've drilled more wells than anybody else and have empirical data to look at. And also, we study what our peers do. [...] Our well spacing, it's an extremely complicated multivariable equation that does take a lot of time to fully understand. I would remind people that we have historically been pretty conservative on the way we've accounted for inventory and well spacing, and I'm thankful that, that's been our view up till now."

| | Stephens | Barclays | J.P. Morgan |
|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No |
| **Date of analyst report:** | **3/5** | **3/6** | **3/7** |

Page 32 of 87

**Content Analysis of Analyst Reports For Alleged Misstatement A-33**
**Analysts Issuing Reports after Alleged Misstatement**

Plaintiffs claim that the following statements made on May 1, 2019 in the Q1 2019 Earnings Call were materially false and misleading:

"And so I think that's the exciting thing about what we've been able to do and are going to continue to do is deliver really compelling returns while continuing to learn."

| | Credit Suisse | J.P. Morgan | Macquarie | MKM | Morningstar (2) | MUFG | Seaport | Stephens | SunTrust | Jefferies | Raymond James | Seaport (1) | Seaport (2) | TD Securities |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the alleged misstatement caused the analyst to change its valuation of Concho and/or its stock? | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the alleged misstatement caused the analyst to change its price target for Concho? | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. For events other than earnings releases, does the report reference the event (earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement? | No | No | No | No | No | Yes | No | No | No | No | No | Yes | Yes | Yes |
| **Date of analyst report:** | **5/1** | **5/1** | **5/1** | **5/1** | **5/1** | **5/1** | **5/1** | **5/1** | **5/1** | **5/2** | **5/2** | **5/2** | **5/2** | **5/2** |

## Content Analysis of Analyst Reports For Alleged Misstatement A-1
### Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"The fourth quarter was an excellent end to a great year for Concho. Our operational and financial performance demonstrated our ability to consistently execute, control costs and capitalize on opportunities that strengthen our competitive position."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

Page 34 of 87

## Content Analysis of Analyst Reports For Alleged Misstatement A-2
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"High-quality acreage and scale within the Permian Basin enables Concho to efficiently allocate capital while continuing to advance manufacturing-style development with leading-edge drilling and completion techniques."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-3
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"From these projects, Concho is collecting valuable data that helps the Company optimize lateral placement, completion design and facilitates planning."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-4
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"Concho is utilizing leading-edge technologies, including fiber optic monitoring, to collect valuable proprietary data with real-time and long-term implications for full-field optimization."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-5
### Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 21, 2018 in the 2017 Form 10-K were materially false and misleading:

"Multi-well pad drilling and project development may result in volatility in our operating results.[…] We utilize multi-well pad drilling and project development where practical."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-6**
**Analysts Issuing Reports after Alleged Corrective Disclosure**

Plaintiffs claim that the following statements made on February 21, 2018 in the Q4 2017 Earnings Call were materially false and misleading:

"[¶ 188] This industry is exciting: commodity prices change, new plays emerge, technology advance. Our strategy allows us to adapt quickly. And our history in the Permian, which is the best value-creating engine in our industry, enables us to be a leader in the development here. [...] Developing large-scale projects, manufacturing mode, whatever you call it, is one way that we're doing that. [¶ 189] While our strategy is the same, the development of our inventory is more sophisticated and creates an opportunity to extend our competitive edge."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

Page 39 of 87

## Content Analysis of Analyst Reports For Alleged Misstatement A-7
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 21, 2018 in the Q4 2017 Earnings Call were materially false and misleading:

"Over the last few years, our transition to large-scale, multi-well projects has been an important development that will continue to drive growth, innovation and efficiencies."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

# Content Analysis of Analyst Reports For Alleged Misstatement A-8
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 21, 2018 in the Q4 2017 Earnings Call were materially false and misleading:

"Our accomplishments last year paved the way for continued operational and financial performance for the next decade. Our development activities validated well spacing, lateral placement and completion design, and our strategic acquisitions and asset exchanges added complementary leasehold for long lateral development. The result is more high-quality reinvestment opportunities to fuel our growth."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

# Content Analysis of Analyst Reports For Alleged Misstatement A-9
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 21, 2018 in the Q4 2017 Earnings Call were materially false and misleading:

"Harper: Sure. And that is one of the reasons to move to the large-scale development as we have. And I think we've successfully made that transition. And so you will see more of that in the future to attempt to avoid creating child wells. Where there are child wells, which is a smaller percentage of our opportunities, we will continue to test that and make sure that we try not to leave any behind."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

Page 42 of 87

## Content Analysis of Analyst Reports For Alleged Misstatement A-10
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on March 5, 2018 in the Raymond James Institutional Investors Conference (2018) were materially false and misleading:

"So manufacturing mode is a term we use. Other people call it cube development and there's other names as well. […] I said before, taking this empirical data, combining it with modern technology helps us get to, we think, a better answer faster. […] I think the drilling synergies are well documented. Walking rigs and drilling in nearby proximity. Certainly on the completion side, not only are our zipper-style completions efficient and may be a more effective way to complete the wells, they're increasingly being priced in a preferential manner as well."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-11**
**Analysts Issuing Reports after Alleged Corrective Disclosure**

Plaintiffs claim that the following statements made on March 28, 2018 in the Investor Call were materially false and misleading:

"Leach: Yes. As Steve mentioned, I mean, the balance sheet to be able to do this intense development, instead of 1 or 2 well pads, to go to 8 well multi-well pads is one of the drivers. But it's also long laterals and all the infrastructure that we're going to be able to use together. Infrastructure, such as salt water disposal systems, water handling system that we built over time. All those things will be very additive."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

Page 44 of 87

## Content Analysis of Analyst Reports For Alleged Misstatement A-12
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on May 1, 2018 in the Q1 2018 Earnings Release were materially false and misleading:

"Our team achieved another outstanding quarter of operational and financial results, driving significant production growth while maintaining a disciplined capital program. Our results reflect our focus on large-scale project development, which enables us to maximize ultimate recovery, efficiencies and returns. Looking ahead, we intend to build on our strong momentum and capitalize on our execution strength, cost control and strong balance sheet to extend our track record of delivering growth and returns."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-13
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on May 2, 2018 in the Q1 2018 Earnings Call were materially false and misleading:

"I want to focus on the value-creating opportunities driven by large-scale development. We believe this type of development is important to maximize recoveries, drive economies of scale and deliver attractive economic returns predictably and consistently over the long term."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

# Content Analysis of Analyst Reports For Alleged Misstatement A-14
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on May 2, 2018 in the Q1 2018 Earnings Call were materially false and misleading:

"Leach: Well, I mean, when you talk about pads, it's a little bit more complicated than that. [...] So I think the answer to your question is these kind of drilling projects are going to grow in wells in the project over time and grow dramatically. And that's -- it drives a lot of value creation, as you can see on that Slide 16."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 | |

## Content Analysis of Analyst Reports For Alleged Misstatement A-15
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on May 15, 2018 in the Citi Global Energy and Utilities Conference were materially false and misleading:

"[...] But for us, it means getting to what we think is the optimal development plan, recognizing that you're learning all the time, but trying to decide what the right spacing is, which is generally 8 across in the different zones, and really getting in, and both big multi-well pads and stringing together multiple multi-well pads into even larger projects, simultaneously developing a square mile."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-16
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on May 15, 2018 in the Citi Global Energy and Utilities Conference were materially false and misleading:

"But I don't really view it as a dramatic change to development mode. Like I said, it's kind of an evolution going from 2-well pads to 3-well pads to 6-well projects to 8-well. So I think there's been an evolutionary - I don't think you can kind of see a switch get flipped. It's been a long time coming. We give quarterly guidance because of the - trying to give visibility into our business. And so I think that, plus the annual guidance, is a good way. We try to be very thoughtful in kind of showing you how we get there on an annual basis. But I don't expect there to be some big step change and all that."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-17
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on May 15, 2018 in the Citi Global Energy and Utilities Conference were materially false and misleading:

"Giraud: I think, we're -- from the areas that we're focused on, I'll turn to this slide where we've kind of highlighted the different major pad projects that we're doing in '18 and '19. [...] We're doing it in the Midland Basin, the Southern Delaware and the Northern Delaware. [...] But we're in a relative light stage in terms of under - we've kind of come through discovery, we've gone through delineation and now we're into development mode. And so in those different 3 main assets, we're there. [...] And so there's still work being done, but I think what we're seeing is, we think we know. [...] And we think we know what the spacing needs to be in all those and how you ought to develop it. But - so that specific example, I think, we're farther down the line. We're in a later stage of innings."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-18
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on August 2, 2018 in the Q2 2018 Earnings Call were materially false and misleading:

"We talked about reaching inflection points in the past. The shift to horizontal development in 2011 is one example. Establishing a position in the Northern Delaware is another. And it was about a year ago that we described another inflection point, our progression to large-scale development. [...] Horizontal drilling in the Northern Delaware turned out to be huge value drivers for the company. And we believe manufacturing mode will do the same thing. This transition has been one of our most important operational and strategic priorities."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-19
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on August 2, 2018 in the Q2 2018 Earnings Call Deck were materially false and misleading:

"Concho provided investors with a presentation to accompany the 2Q 2018 Earnings Call . . . [that] claimed that "manufacturing mode" "unlocks significant value" and "optimizes well performance and increases resource recovery.""

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-20
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on September 5, 2018 in the Barclays CEO Energy Power Conference were materially false and misleading:

"Capital efficiency, we have focused on both sides of the efficiency equation. Our wells are continuing to get better and the costs continue to become more efficient, and we manage the cost side of the equation as well. That's what allows us to generate growth and free cash flow. And growth and free cash flow are going to be the name of the game for the next decade. "

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-21
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on September 5, 2018 in the Barclays CEO Energy Power Conference were materially false and misleading:

"There's the operational bucket, there's also the building for the future and how do you manage risk. And so the allocation of capital is probably the most important thing that our team does and the most important thing that we do that creates success for the company. That's what drives our production growth and free cash flow. Also, we run a very large and stable ship. This allows us to balance risk and kind of plow through the volatility of our business. [...] and finally, the management of risk is, basically goes into the category, it's always something. We've had periods in the past, where whether it's weather or sand or frac spreads, this is a volatile business. The size and scale helps us manage the risk of those business."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-22
### Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on September 5, 2018 in the Barclays CEO Energy Power Conference were materially false and misleading:

"So it's just a matter of commodity price. And we've aggressively hedged our Mid-Cush differential to provide a bridge to this, what we believe will the excess capacity is coming to the Permian. We also believe that the Permian will be a preferential place to price a barrel in the future. And so we're managing to that end. At the same time, I will tell you, as the company has grown, our philosophy of having a portfolio approach to mitigate risk is going to apply to this as well. You'll see Concho crude going in three different directions basically to Cushing, to Houston, to Corpus Christi, there are four directions, and to refineries that are within the Permian itself. And our oil being priced at a number of different pricing points in a portfolio kind of basket without necessarily having to take space or buy space on a pipe."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-23**
**Analysts Issuing Reports after Alleged Corrective Disclosure**

Plaintiffs claim that the following statements made on September 5, 2018 in the Barclays CEO Energy Power Conference were materially false and misleading:

"So this inflection point that I was talking about is driven by manufacturing mode. And we increasingly are approaching developing our properties, not only from four different dimensions basically, there's a horizontal dimension, the vertical dimension, the sequencing between zones and the timing of what some in the industry call mowing the grass. So you do this to minimize the pressure syncs that create parent/child relationships between wells. This is the future of our business. And this transition to this style of development is just as important, I believe, as the transition we went through for horizontal drilling. [...] This is going to be a value creator and it optimizes recoveries, optimizes economics and reduces stranded wells."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-24
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on October 30, 2018 in the Q3 2018 Earnings Release were materially false and misleading:

"We have been disciplined over the last several years - generating free cash flow, prudently growing oil production, reducing our cost structure and building for the future with accretive acquisitions and strategic portfolio management. These efforts position us well for the next stage of our company, which includes delivering high-margin oil growth and initiating a return-of- capital strategy to our shareholders. We are a growth company, and our platform for delivering growth, demonstrating the benefits of scale and enhancing shareholder value, has never been better."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

# Content Analysis of Analyst Reports For Alleged Misstatement A-25
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on October 31, 2018 in the Q3 2018 Earnings Call were materially false and misleading:

"Leach: No, I think the drilling side of our business is one of the best parts of our business. And I think the way we have approached that in the past will continue. I mean, you can see that it doesn't require that much of a growth in rigs to accomplish all the future, not just for 2019 and 2020, but beyond. So, by drilling longer laterals and the spacing we're using, the efficiency and all that, you can get a whole lot more done. And we do have rigs that now are on six-month contracts or one-year contracts, but we do have kind of a portfolio approach on that, but I don't think you should expect us to - any change in strategy based on what we're seeing today."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | Yes | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-26
### Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on October 31, 2018 in the Q3 2018 Earnings Call were materially false and misleading:

"Harper: Sure. Yes, these large- scale projects, they really emphasize planning and planning ahead. And our team has done a good job of that. I think we're out in front, out here in the industry on this. So, yeah, there are midstream considerations, there's water delivery, there's water disposal, there's a lot of considerations, but - which typically can require up to a year of planning. And again, our team's doing a great job in managing that. And so, while there are challenges, we're up to it. And that is why we're increasing the percentage of capital towards this kind of projects."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | Yes | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-27
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on October 31, 2018 in the Q3 2018 Earnings Call were materially false and misleading:

"Giraud: Sure. Big drivers on going to these large-scale projects are: one, we think maximizing the resource by minimizing the impact of the parent-child effect; and then also getting the benefits on the capital side from efficiency. [...] Leach: It's different by zone and different by area. And it's extremely complicated. And we're developing a program to minimize it. I'm not sure that any company in any location can completely eliminate that because you always have edges of your leases and things like that. But I think with our asset base and the big blocky nature of our assets and the way we're prosecuting our development program, we're in the best position to kind of minimize that effect. And we think we have it estimated very well."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | Yes | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

Page 60 of 87

## Content Analysis of Analyst Reports For Alleged Misstatement A-28
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2019 in the 2018 Form 10-K were materially false and misleading:

"Multi-well pad drilling and project development may result in volatility in our operating results. […] We utilize multi-well pad drilling and project development where practical."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-29
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2019 in the Q4 & FY 2018 Earnings Call were materially false and misleading:

"Our project results continued to demonstrate the prudence of this approach, which mitigates parent-child impacts, drives operational efficiencies and maximizes the long-term value of our investments."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | Yes | No | No | No | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-30
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2019 in the Q4 & FY 2018 Earnings Call were materially false and misleading:

"Sure, I mean, while it's still early, it's been a slow evolution for us into these larger and larger project sizes. . . . And we also doubled down on the necessity of doing it this way and that this is the better way to do it. I'm modestly optimistic with over measured in periods and years, we will continue to find more efficiencies out of doing it that way, in addition to just the base reasons to do it around mitigating parent-child impacts, things like that."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | Yes | No | No | No | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

**Content Analysis of Analyst Reports For Alleged Misstatement A-31**
**Analysts Issuing Reports after Alleged Corrective Disclosure**

Plaintiffs claim that the following statements made on February 20, 2019 in the Q4 & FY 2018 Earnings Call were materially false and misleading:

"Harper: Sure, I mean, our focus will be on the most efficient deployment of our capital under any circumstance, and that is further highlighted the lower the commodity prices, and I think it's actually an opportunity for us to differentiate ourselves. But you're right, it's making our investment better through large project development, lateral placement within the zones, well spacing, all of the small knobs that can now be turned to increase efficiency."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | Yes | No | No | No | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-32
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on March 4, 2019 in the Raymond James Institutional Investors Conference (2019) were materially false and misleading:

"Sure. So the question was, what do we not know about well spacing and sand loading, and there's always a lot to learn. I think we're at an advantage because we've drilled more wells than anybody else and have empirical data to look at. And also, we study what our peers do. [...] Our well spacing, it's an extremely complicated multivariable equation that does take a lot of time to fully understand. I would remind people that we have historically been pretty conservative on the way we've accounted for inventory and well spacing, and I'm thankful that, that's been our view up till now."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement A-33
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on May 1, 2019 in the Q1 2019 Earnings Call were materially false and misleading:

"And so I think that's the exciting thing about what we've been able to do and are going to continue to do is deliver really compelling returns while continuing to learn."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | Yes | Yes | No | Yes | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | Yes | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement B-1
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"Delivered outstanding results from the Company's large-scale development projects in the Northern and Southern Delaware Basin and in the Midland Basin."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement B-2
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 21, 2018 in the Q4 2017 Earnings Call were materially false and misleading:

"Harper: Well, we've modeled the outcome as we see it based on the spacing that has either already happened or will happen in the future."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

**Content Analysis of Analyst Reports For Alleged Misstatement B-3**
**Analysts Issuing Reports after Alleged Corrective Disclosure**

Plaintiffs claim that the following statements made on March 5, 2018 in the Raymond James Institutional Investors Conference (2018) were materially false and misleading:

"We've highlighted here on the left side of the page a couple of the upcoming large-scale projects and really just to show you that where some of them are. They're very dispersed amongst our asset base. And they are, in some cases, getting larger. We have a 20- plus well pad or project on here that we'll begin this year, but don't plan to see production until next year on that."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | **7/31** | **7/31** | **7/31** | **7/31** | **7/31** | **7/31** | **7/31** | **7/31** | **7/31** | **7/31** | **7/31** | **7/31** | **7/31** | **7/31** | **7/31** | **8/1** | **8/1** | **8/1** | **8/1** |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/1** | **8/2** | **8/5** | **8/5** |

Page 69 of 87

## Content Analysis of Analyst Reports For Alleged Misstatement B-4
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on May 2, 2018 in the Q1 2018 Earnings Call Deck were materially false and misleading:

"The accompanying presentation to the May 2, 2018 earnings call incorporated an infographic map depicting Concho's "Key Projects" for 2018 and 2019, all of which were multi-well and multi-zone projects, including the Dominator, a "20+ well multi-zone project" in the Northern Delaware Basin."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement B-5
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on May 15, 2018 in the Citi Global Energy and Utilities Conference were materially false and misleading:

"And I think we're fortunate to have kind of learned along the way and evolved from first drilling a 2-well pad and then a 3-well pad and then 2 2-well pads together. So we've been building up to this kind of larger-scale development mode, and we're very excited about what we're seeing. And I think that's the power of what are causing things like the first quarter and the results we had there."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement B-6
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on August 2, 2018 in the Q2 2018 Earnings Call were materially false and misleading:

"I think we've been one of the leaders in moving to these larger-scale development projects. And that's been a steady evolution over the last couple of years as we've tested different spacing between -- within a zone and between zones. And so these bigger and bigger projects, I think, are just the further evolution of that trend. Where you see some of the smaller projects, that's us continuing to test tighter spacing or different spacing within a zone or between zones, again. And so I think you're right. Longer term, you'll see an evolution to the bigger and bigger projects. However, we're still learning as we go. And so I think you'll see a blend of different sizes."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement B-7
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on September 5, 2018 in the Barclays CEO Energy Power Conference were materially false and misleading:

"So as we drill these wells, we don't - we're not stamping out wells. Every one of these areas is - the rock is different and what we're going for is precision. And we are collecting a lot of information. . . . You can see what the predrill well plan was. And then as we had this information, and we were using real-time information to steer the well, how it helped us guide the well into the best rock, it allowed us to drill a 13,000-foot well with 1 drill bit. And so this kind of geo model is what we're using in every one of our areas to continue to increase the productivity and efficiency of the wells. . . . ."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement B-8
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on September 5, 2018 in the Barclays CEO Energy Power Conference were materially false and misleading:

"And I can tell you more and more those projects are going to be multi-well pads. We started out a few years ago that it was 2, 3, 4 wells a pad. We're right now - this is probably the extreme example, but the Dominator project in Lea County, New Mexico, is 23 wells being drilled by 7 rigs all at the same time on 1 section of land. That's probably going to be the most aggressive multi-well pad that we drill. Probably going forward, a normal development will be 8 to 12 wells per pad. So that kind of capital efficiency would generate free cash flow for us."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement B-9
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on October 31, 2018 in the Q3 2018 Earnings Call were materially false and misleading:

"Giraud: Sure. I mean, we continue to experiment with different completion designs, timings, spacing. There's still a lot of learning to be done there. But I mean, early benefits, I think you see it in '19 and '20 program and you see it in the confidence of making these average projects sizes bigger over time. We like what we're seeing. We like the benefits we get of efficiency with our vendors of concentrating that much activity in one spot. And we like the results we're getting out of them. So more to come."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | Yes | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement B-10
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2019 in the Q4 & FY 2018 Earnings Call were materially false and misleading:

"Operationally, things are proceeding as planned. During the fourth quarter, we ran 34 rigs, one of the largest programs in the basin. We continued to advance our style of returns-centric development, which focuses on large- scale and multi-well projects across our asset base. "

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | Yes | No | No | No | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement B-11
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2019 in the Q4 & FY 2018 Earnings Call were materially false and misleading:

"But certainly, I think what we're pleased by is that as we moved into this large- scale project development, we're seeing the results we expect, and it's enabling us to do some pretty interesting things from testing and continuing to understand the best way to do it."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | Yes | No | No | No | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

**Content Analysis of Analyst Reports For Alleged Misstatement B-12**
**Analysts Issuing Reports after Alleged Corrective Disclosure**

Plaintiffs claim that the following statements made on February 20, 2019 in the Q4 & FY 2018 Earnings Call were materially false and misleading:

"I'll just say we're obviously very pleased with what we're seeing and in terms of what we're expecting to see."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | Yes | No | No | No | No | Yes | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the event (earnings release, earnings/investor call, analyst conference or SEC filing) that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement C-1
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on March 5, 2018 in the Raymond James Institutional Investors Conference (2018) were materially false and misleading:

"Here, let's talk about the 2018 budget for just a moment. And I'd like to start with the donut-looking charts on the left side. Well, first of all, before we go there, let me say you should expect more of the same in '18 as you saw in previous years from Concho. It's going to be a budget focused on reinvesting our cash flow and an increased percentage of capital going towards these larger-scale projects that we've been describing to you."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement C-2
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"Concho expects 2018 capital spending to be at the midpoint of its capital guidance range of $1.9 billion to $2.1 billion, which reflects the Company's current outlook for service cost inflation. The 2018 capital program is expected to be funded with cash flows from operations and generate 20% crude oil growth and 16% to 20% total production growth year-over-year. Approximately 93% of the capital program is allocated to drilling and completion activities, with approximately 65% of that capital directed towards large-scale manufacturing projects. "

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement C-3
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 21, 2018 in the Q4 2017 Earnings Call were materially false and misleading:

"[¶ 185] As we look to 2018, our total capital investment is expected to be $2 billion, with 93% allocated for drilling and completion activity. This level of investment is expected to grow oil approximately 20%. Importantly, approximately two-thirds of our development capital will be directed to large-scale, multi-zone projects. [...] [¶ 186] In general, when we give guidance, we try to forecast the things that we're aware of at the time we give the guidance."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

# Content Analysis of Analyst Reports For Alleged Misstatement C-4
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"The Company provided a new three-year production growth outlook. Concho expects to grow total production at a compound annual growth rate of 20% from 2017 to 2020. The outlook reflects the Company's high-quality production base and strong operating momentum. Additionally, the Company expects to deliver this growth within cash flows from operations at an average crude oil price (WTI) in the low-to-mid $50 per barrel range over the duration of the outlook. [...] As with the Company's 2018 outlook, growth over the three-year period from 2017 to 2020 is the output of reinvesting high-margin cash flow into its drilling program."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement C-5
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 20, 2018 in the Q4 & FY 2017 Earnings Release were materially false and misleading:

"At December 31, 2017, Concho's estimated proved reserves totaled 840 MMBoe, an increase of 17% from year-end 2016. The Company's proved reserves are approximately 60% crude oil and 40% natural gas. Proved developed reserves totaled 588 MMBoe, an increase of 26% from year-end 2016. The Company's proved developed reserves represent approximately 70% of total proved reserves. [...] During 2017, Concho added 194 MMBoe of proved reserves primarily from drilling and completion operations, resulting in a reserve replacement ratio of 275%. The Company's proved developed finding and development cost was $8.68 per Boe for 2017"

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement C-6
### Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on February 21, 2018 in the 2017 Form 10-K were materially false and misleading:

"At December 31, 2017, substantially all of our 840 MMBoe total estimated proved reserves were located in our core operating areas and consisted of approximately 60 percent oil and 40 percent natural gas. We have assembled a multi-year inventory of horizontal development and exploration projects across our four core operating areas. [...] Northern Delaware Basin. At December 31, 2017, we had estimated proved reserves in this area of 295 MMBoe, representing 35 percent of our total proved reserves. [...] Southern Delaware Basin. At December 31, 2017, we had estimated proved reserves in this area of 128 MMBoe, representing 15 percent of our total proved reserves."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| **Date of analyst report:** | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

# Content Analysis of Analyst Reports For Alleged Misstatement C-7
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on March 28, 2018 in the Investor Call were materially false and misleading:

"We will run the largest development program in the Permian and our combined position will be more than 640,000 net acres. I expect Concho to capture both operational synergies and corporate level savings. These synergies, which are estimated to have a present value exceeding $2 billion derive from the highly complementary and blocky nature of these assets.... In addition to operational synergies, there are financial benefits we expect from corporate level savings. And those come from the areas you would expect, including the overlapping public company cost and financing cost. In all, we estimate annual corporate cost savings of $60 million."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

## Content Analysis of Analyst Reports For Alleged Misstatement C-8
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on March 28, 2018 in the Investor Call were materially false and misleading:

"In addition to our size, scale and execution strength provided us with the unique ability to capitalize on these new complementary assets. This ability includes moving these assets into manufacturing mode, which generates cost savings and minimizes parent-child locations."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inacurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |

# Content Analysis of Analyst Reports For Alleged Misstatement C-9
## Analysts Issuing Reports after Alleged Corrective Disclosure

Plaintiffs claim that the following statements made on March 28, 2018 in the Investor Call were materially false and misleading:

"Yes. We've said in total. Scott, that [the synergies with RSP are] in excess of $2 billion, and Tim really hit on the keys. It's long lateral, it's large-scale development, it's preventing the parent-child relationship with large-scale development, it's a shared infrastructure. So those are the key drivers. And there's good value in each one of those."

| | Barclays (1) | Barclays (2) | Barclays (3) | BMO | Cowen | Heikkinen | J.P. Morgan | Jefferies | Macquarie | Piper Sandler | Raymond James | RBC | Seaport | SunTrust | Wolfe | Bank of America | Credit Suisse | Evercore | J.P. Morgan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 7/31 | 8/1 | 8/1 | 8/1 | 8/1 |

| | Ladenburg | MKM | Morgan Stanley | Morningstar (1) | Morningstar (2) | MUFG | Raymond James | RBC | Seaport | Stephens | SunTrust | Susquehanna | TD Securities | UBS | Wells Fargo | Wolfe | Macquarie | J.P. Morgan | Jefferies |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. Is there any indication in the report that the analyst learned the prior misstatement was inaccurate or misleading? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 2. Is there any indication in the report that the analyst made a connection between the alleged misstatment and the alleged corrective disclosure? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 3. Does the report reference the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| 4. Does the report reference the forecasted item (e.g. "2018 budget," "2018 crude oil growth," "2018 capital investment") that contains the alleged misstatement other than in tables showing prior results? | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No | No |
| Date of analyst report: | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/1 | 8/2 | 8/5 | 8/5 |