# Case No. 1

**H** KeyCite history available

2022 WL 4544235
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston
Division.

IN RE: ANADARKO PETROLEUM
CORPORATION SECURITIES
LITIGATION

Civil Action No 4:20-cv-00576
|
Signed September 28, 2022,

**Order of Class Certification**

Charles Eskridge, United States District Judge

**\*1** The motion for class certification by Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund, Iron Workers Local #580 Joint Funds is granted. Dkt 86.

1. Background§

Defendant Anadarko Petroleum Corporation was a large oil and gas exploration company until it was purchased by Occidental Petroleum Corporation in August 2019. Dkt 55 at ¶ 2. Lead Plaintiff Norfolk County Council and Plaintiff Building Trades United Pension Fund (together *Norfolk County Group*), as well as other putative class members, purchased Anadarko common stock during the dates between February 20, 2015, and May 2, 2017. Dkt 55 at ¶ 15. Those are also dates within which Defendants R.A. Walker, Robert G. Gwin, Robert P. Daniels, and Ernest A. Leyendecker III served as senior Anadarko executives. Dkt 55 at ¶¶ 16–20.

Norfolk County Group alleges that Anadarko and its corporate representatives actively misled investors about the viability and profitability of a deepwater asset in the Gulf of Mexico—the Shenandoah oil field project, known as *Shen.* Dkt 55 at ¶¶ 4–5; Dkt 93 at 8. Norfolk County Group specifically contends that Defendants recklessly overstated the viability of the project and concealed negative information from investors. Dkt 55 at ¶ 5; see also *Frye v Anadarko Petroleum Corp*, 953 F3d 285, 288 (5th Cir 2019).

Anadarko eventually announced that it was suspending Shen appraisal activity, resulting in $435 million in expensed suspended exploratory well costs and a $467 million impairment. Dkt 86-1 at 26. That announcement came at 4:16 PM, after trading concluded on May 2, 2017. Dkt 86-1 at 25–26; Dkt 93-1 at 12. Within the hour, news also broke regarding Anadarko's involvement in a fatal explosion that occurred on April 17, 2017, in Firestone, Colorado. Dkt 93-1 at 12–13, 15–16. Anadarko stock dropped almost eight percent the next day. Dkt 55 at ¶¶ 152–54; see also Dkt 86-1 at 26.

Georgia Firefighters' Pension Fund filed this putative class action in February 2020 for violations of Sections 10(b) and 20(a) of the Exchange Act. Dkt 1; see 15 USC §§ 78j & 78t. Judge Nancy Atlas appointed Norfolk County Group as lead plaintiff and Robbins Geller Rudman & Dowd LLP as lead counsel. Dkt 41. The case was reassigned to Judge Vanessa D. Gilmore in March 2021 and then to this Court in December 2021. Dkts 66 & 91.

Pending is a motion by Norfolk County Group to certify the following class:

> All persons and entities that purchased or acquired the common stock of Anadarko Petroleum Corporation between February 20, 2015, and May 2, 2017, inclusive (the "Class Period"), and were damaged thereby. Excluded from the Class are Defendants and their families, legal representatives, heirs, successors, or assigns; officers, directors, subsidiaries, and affiliates of Anadarko during the Class Period; any entity in which Defendants have a controlling interest; and any judicial officer to which this litigation is assigned.

Dkt 86 at 9–10; see also Dkt 55 at ¶¶ 1, 165–171 (amended class action complaint).

2. Legal standard

**\*2** Class actions proceed under Rule 23 of the Federal Rules of Civil Procedure. "The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only." *Comcast*

*Corp v Behrend*, 569 US 27, 33 (2013) (quotation marks and citation omitted). "To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." Ibid; see also *Madison v Chalmette Refining LLC*, 637 F3d 551, 554 (5th Cir 2011).

Rule 23(a) begins by listing four prerequisites to class certification—*numerosity*, *commonality*, *typicality*, and *adequacy of representation*. Meeting these requirements isn't alone sufficient. Rule 23(b) instead specifies three class types and the requirements for each. The putative class here seeks to proceed under Rule 23(b)(3), which permits class certification where common questions of law or fact predominate over individual questions. See Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1772, 1775, 1777 (Westlaw 2022).

The reviewing court must "rigorously consider" the Rule 23(a) prerequisites and the requirements specific to the class type under Rule 23(b). *Chavez v Plan Benefit Services Inc*, 957 F3d 542, 546 (5th Cir 2020). This requires a court to look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law." *Flecha v Medicredit Inc*, 946 F3d 762, 766 (5th Cir 2020). A court must also consider how any trial on the merits would be conducted if the class was certified. *Prantil v Arkema Inc*, 986 F3d 570, 574 (5th Cir 2021).

3. Analysis

Norfolk County Group asserts that this action satisfies all prerequisites of Rule 23. Dkt 86 at 13. The only aspect challenged by Defendants pertains to *predominance* under Rule 23(b)(3). Even with such concessions, the Fifth Circuit holds that Rule 23 nonetheless "requires the court to 'find,' not merely assume, the facts favoring class certification." *Unger v Amedisys Inc*, 401 F3d 316, 321 (5th Cir 2005). Each requirement is thus addressed in turn.

a. Motion to exclude Steinholt rebuttal report

One evidentiary issue precedes the Rule 23 analysis. Norfolk County Group in support of its motion to certify the class proffers a report and rebuttal report from its expert Bjorn Steinholt. Dkts 86-1 (Steinholt report) &

96-1 at 2– 34 (Steinholt rebuttal report). Defendants move to exclude the rebuttal report on *Daubert* grounds. Dkt 111 at 5.

The motion will be denied. As Norfolk Country Group notes, the motion itself is little more than an attempt to re-urge Defendants' recently denied motion for leave to file a surreply. Dkts 113 at 2 (motion to strike) & 118 (response); see also Dkts 97 & 110. It has already been determined that class certification will rise or fall with what is fairly briefed in the papers under the Local Rules of the Southern District. Dkt 110.

Beyond this, Steinholt easily clears the *Daubert* hurdle. He's a chartered financial analyst and has presented evidence regarding market efficiencies and reliance in over twenty federal securities class actions. See Dkt 86-1 at 4–5.

Defendants don't dispute Steinholt's credentials. They instead assert that his rebuttal report—but not his original report—is "rife with methodological errors," particularly as it relates to a new event study that purportedly controls for news regarding the Firestone explosion. Dkt 111 at 5. The new event study certainly won't be immune from criticism. But it's of sufficient reliability and relevance for *Daubert* purposes. See *Ludlow v BP PLC*, 800 F3d 674, 683 n 37 (5th Cir 2015); *SEC v Cuban*, 2013 WL 3809654, *3 (ND Tex). Most important, it reliably highlights the flaws in the report by Allen Ferrell, the expert for Defendants. Dkt 96-1 at 11–30. And it does so even without the new event study.

**\*3** The Steinholt rebuttal report is thus appropriately considered where pertinent below.

b. Rule 23(a) requirements

All prerequisites of Rule 23(a) are satisfied.

*As to numerosity*, a plaintiff must show that "the class is so numerous that joinder of all members is impracticable." FRCP 23(a)(1). In addition to the sheer number of purported class members, a court may consider "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Ibe v Jones*, 836 F3d 516, 528 (5th Cir 2016).

Numerosity " 'is generally assumed to have been met' in a class action suit involving nationally traded securities, since the putative class is likely sufficiently numerous,

geographically dispersed, and difficult to identify." *Prause v TechnipFMC PLC*, 2020 WL 3549686, *2 (SD Tex), quoting *Zeidman v J. Ray McDermott & Co*, 651 F2d 1030, 1039 (5th Cir 1981). This action falls squarely within that general rule. Anadarko was listed on the New York Stock Exchange for the entire class period with a trading volume of 2.9 billion shares and over 1,800 institutional investors. Dkt 86-1 at 15 & 20. Joinder of all members is plainly impracticable.

*As to commonality*, a plaintiff must show that "there are questions of law or fact common to the class." FRCP 23(a)(2). As the Supreme Court stated in *Wal-Mart Stores Inc v Dukes*, the class members must have a common contention that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 US 338, 350 (2011); see also *Ahmad v Old Republic National Title Insurance Co*, 690 F3d 698, 702 (5th Cir 2012). A common instance of the defendant's injurious conduct can establish commonality "even if the amount of damages differs for each injured class member." *Prause*, 2020 WL 3549686 at *3, citing *In re Deepwater Horizon*, 739 F3d 790, 810 (5th Cir 2014).

Whether Defendants made false and misleading statements, what effect those statements had on its stock price, what damages (if any) were sustained by class members—these and others are all common questions capable of classwide resolution within the meaning of *Dukes*. Common evidence will likewise answer these common legal questions. For example, see *Rooney v EZCORP Inc*, 330 FRD 439, 445 (WD Tex) (finding commonality satisfied in securities litigation where multiple questions common to class existed).

*As to typicality*, a plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FRCP 23(a)(3). This inquiry "focuses on the similarity between the named plaintiffs legal and remedial theories and the theories of those they purport to represent." *Mullen v Treasure Chest Casino LLC*, 186 F3d 620, 625 (5th Cir 1999) (quotation marks and citation omitted). Plaintiffs can satisfy typicality "by showing that class representatives' claims arise from a similar course of conduct and share the same legal theory." *In re Cobalt International Energy Inc Securities Litigation*, 2017 WL 2608243, *2 (SD Tex).

**\*4** Norfolk County Group purchased Anadarko stock during the class period. Its allegations of fraudulent conduct and its damages theories are shared by the entire class. See Dkts 26-2, 26-3, 55 & 86-2.

*As to adequacy of representation*, a plaintiff must show that "the representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). Adequacy explores "the zeal and competence" of lead counsel, the "willingness and ability" of the class representative to "take an active role in and control the litigation and to protect the interests of absentees," and the "risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v Progressive Securities Insurance Co*, 856 F3d 408, 412 (5th Cir 2017) (quotation marks and citation omitted).

Here, lead counsel Robbins Geller has served as lead counsel in multiple securities class actions. And it has demonstrated a willingness to take securities fraud actions to trial and has been active in this litigation. See Dkt 86-4 (firm resume), listing matters including *In re Enron Corp Securities Derivative & ERISA Litigation*, 586 F Supp 2d 732 (SD Tex 2008). Norfolk County Group is similarly well situated for class representation, being composed of large and sophisticated funds. Dkt 86-2 at 3. Such large institutional investors are the preferred named plaintiffs in securities fraud litigation because they generally have the same interests as the plaintiff class. *In re BP PLC Securities Litigation*, 758 F Supp 2d 428, 439 (SD Tex 2010). The interests of the group are also aligned with other class members, as all seek to maximize recovery stemming from the alleged misconduct by Anadarko and its executives. See Dkt 86-2. And the group has demonstrated "a sufficient level of knowledge and understanding" in this litigation to date. *Prause*, 2020 WL 3549686, at *4, quoting *Ibe*, 836 F3d at 529.

c. Rule 23(b)(3) predominance

Certification under Rule 23(b)(3) requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members." This is known as the *predominance* requirement.

The same analytical principles that govern Rule 23(a) pertain, but "Rule 23(b)(3)'s predominance criterion is even more demanding." *Comcast*, 569 US at 34. A court must identify "the substantive issues that will control the outcome" of the case and assess "which issues will predominate." *Madison v Chalmette Refining LLC*, 637 F3d 551, 555 (5th Cir 2011) (quotation marks and citation omitted). It must therefore consider "how a trial on the merits would be conducted if a class were certified." Ibid (quotation marks and citation omitted). The inquiry "tests

whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Torres v SGE Management LLC*, 838 F3d 629, 636 (5th Cir 2016, *en banc*) (quotation marks and citation omitted). But of note, this showing doesn't require that the court find that the common questions "will be answered, on the merits, in favor of the class." *Amgen Inc v Connecticut Retirement Plans & Trust Funds*, 568 US 455, 459 (2013).

Defendants make two contentions in this regard. The first is that Norfolk County Group fails to establish a critical requirement in securities class actions prosecuted under Rule 23(b)(3)—that being reliance on the alleged misstatements. Dkt 93 at 5. The other is that the posited damages theory is too vague to adequately connect to the liability theory. Id at 7 & 26.

**\*5** Neither point has merit. Plaintiff thus satisfies the predominance requirement of Rule 23(b)(3).

### i. Showing as to reliance

"In securities law cases, predominance often hinges upon whether or not class members will need to individually demonstrate they relied upon a misrepresentation or omission made by the defendant." *Rooney*, 330 FRD at 448, citing *Amgen*, 568 US at 461. Norfolk County Group proposes to satisfy reliance by pointing to the *Affiliated Ute* and *Basic* presumptions. Dkt 86 at 18. While the former isn't applicable, the latter quite clearly is.

To invoke the *Affiliated Ute* presumption, a plaintiff must "allege a case primarily based on omissions or nondisclosure" and "demonstrate that the defendant owed him a duty of disclosure." *In re Enron Corp Securities, Derivative & ERISA Litigation*, 610 F Supp 2d 600, 610 (SD Tex), quoting *Regents of University of California v Credit Suisse First Boston Inc*, 482 F3d 372, 384 (5th Cir 2007). A defendant omits information when it says "absolutely nothing about matters whose very existence plaintiffs have no reason to consider." *In re Enron*, 610 F Supp 2d at 631 n 33.

This action is primarily based upon certain, affirmative representations by Defendants regarding Shen upon which Norfolk County Group and other putative class members purport to have relied. By contrast, the alleged omissions are those that putatively would have served primarily to *clarify* those representations. In other words, the subject representations are said to be misleading in part *because of* the omissions. And the Fifth Circuit has held that the *Affiliated Ute* presumption doesn't apply to such "true

statements that are nonetheless so incomplete as to be misleading." *In re Enron*, 610 F Supp 2d at 631 n 33. As a result, the *Affiliated Ute* presumption isn't applicable.

The *Basic* presumption holds that "a public, material misrepresentation will distort the price of stock traded in an efficient market." *Halliburton Co v Erica P. John Fund Inc (Halliburton II)*, 573 US 258, 283–84 (2014); see also *Basic Inc v Levinson*, 458 US 224, 241–42, 247 (1988). An investor thus relies on the misrepresentation "so long as it was reflected in the market price at the time of his transaction." *Goldman Sachs v Arkansas Teacher Retirement System*, 141 S Ct 1951, 1958 (2021) (quotation marks and citation omitted). As the Supreme Court summarized, "The presumption allows class-action plaintiffs to prove reliance through evidence common to the class," which "in turn makes it easier for plaintiffs to establish the predominance requirement" of Rule 23(b)(3). Id at 1958–59.

To invoke this presumption, a plaintiff must prove that (i) "the alleged misrepresentation was publicly known," (ii) "it was material," (iii) "the stock traded in an efficient market," and (iv) "the plaintiff traded the stock between the time the misrepresentation was made and when the truth was revealed." Id at 1958. Defendants can then rebut this presumption by demonstrating that the misstatements *did not* affect the market price of the stock—a point upon which they bear the burden of persuasion. Id at 1959, 1963. "The district court's task is simply to assess all the evidence of price impact—direct and indirect—and determine whether it is more likely than not that the alleged misrepresentations had a price impact." Id at 1963.

**\*6** Defendants made the alleged misstatements in public SEC filings, and the misstatements concerned a significant asset. See Dkt 55 at ¶¶ 94–141. The statements were thus both public and material. Additionally, Anadarko stock was traded on the New York Stock Exchange, which alone is indicia of market efficiency. See *Strougo v Barclays PLC*, 312 FRD 307, 318 (SDNY 2016). And Anadarko stock meets three further indicia of market efficiency—large market capitalization, narrow bid-ask spread, and large stock float. See Dkt 86-1 at 26–29; *Krogman v Sterritt*, 202 FRD 467, 478 (ND Tex 2001).

Defendants don't actually dispute that Norfolk County Group properly invokes the *Basic* presumption in the first instance. They instead seek to rebut it on the ground that the Shen disclosures didn't impact the Anadarko stock price. Dkt 93 at 9–11.

*First*, they note that ConocoPhillips—the development partner of Anadarko—disclosed similar information about Shen before markets opened on May 2, 2017. And the stock price of neither ConocoPhillips nor Anadarko dropped during that trading day. Dkt 93 at 14–15. But the disclosure by ConocoPhillips on May 2nd was quite limited, being a single sentence noting, "First-quarter earnings were negatively impacted by $101 million of pre-tax dry hole expense, which includes the Shenandoah-6 well in the Gulf of Mexico." Dkt 96-1 at 15. ConocoPhillips didn't disclose the suspension of Shen appraisal activity, it didn't write-down Shen, and it didn't disclose Shen sidetrack well results. Id at 15–18.

*Second*, Defendants observe that ConocoPhillips stock didn't drop after the Shen disclosures by Anadarko, despite ConocoPhillips' $101 million stake in the project. Dkt 93 at 15–16, 10. But ConocoPhillips isn't a proper comparator, given that the Shen project was a minor expenditure relative to its massive market cap. What's more, its $101 million stake paled in comparison to the $902 million stake held by Anadarko. Dkt 96-1 at 15–16. And notably, other Shen development partners with high Shen-stake-to-market-cap ratios suffered major price drops on May 3rd. Id at 22–24.

*Third*, Defendants highlight a potential $140 million in new regulatory costs as a result of the Firestone news. Dkt 93 at 16–18. Be that as it may, the Anadarko stock price dropped 4.1 percent during after-hours trading between the time Anadarko made its Shen disclosures and the time the Firestone news broke. 96-1 at 27. And the Steinholt event study concluded that the price drop on May 3rd remained statistically significant even when controlling for the Firestone news. Id at 30–32.

The Supreme Court admonishes, "In assessing price impact at class certification, courts should be open to *all* probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense." *Goldman Sachs*, 141 S Ct at 1960 (quotation marks omitted). Common sense suggests here that, when news broke on the same day of both an *actual* $900 million write-off as well as a *potential* $140 million in new regulatory costs, an eight percent decline in the company's stock price the following day isn't *solely* attributable to the latter, lesser regulatory costs.

Norfolk Group has adequately invoked the *Basic* presumption, and Defendants haven't met their burden of persuasion to rebut it. Norfolk County Group has established reliance sufficient to satisfy the predominance requirement of Rule 23(b)(3).

ii. Showing as to damages

Norfolk County Group bears the burden of demonstrating that damages may be measured using a common methodology that's consistent with the theory of liability. *Comcast Corp*, 569 US at 35. But damages at the class-certification stage needn't be exact. *Ludlow v BP PLC*, 800 F3d 674, 683 (5th Cir 2015); see also *Story Parchment Co v Paterson Parchment Paper Co*, 282 US 555, 563. Nor must plaintiff prove loss causation as a condition of obtaining class certification. *Ludlow*, 800 F3d at 687, citing *Erica P. John Fund Inc v Halliburton Co (Halliburton I)*, 563 US 804, 813 (2011).

**\*7** Steinholt in his expert report presents a *stock price inflation* theory (also known as the *out-of-pocket measure*). See Dkt 86-1 at 29–31. "That is, the theory alleges that the stock price was higher than it would have been, and the damage is the difference between the 'true' price and the 'paid' price." *Ludlow*, 800 F3d at 689. Here, the underlying theory is that the alleged misrepresentations inflated the Anadarko stock price. Steinholt proposes calculating the "true" price—the price the stock would have been absent the alleged misrepresentations—by conducting an event study supplemented by fundamental valuation tools that help control for other influencing factors. The individual damages of each class member can then be calculated based on the difference between the price they paid and the "true" price at the time of their respective purchases and sales. See Dkt 86-1 at 29–31.

Defendants contend that this theory is "so vague and imprecise that it is impossible to assess whether Plaintiffs have presented a damages methodology consistent with their theory of liability." Dkt 93 at 26. But the Fifth Circuit approved a nearly identical theory of damages in *Ludlow v BP PLC*, noting that the damages theory remained "tied to a theory of liability common to all" putative class members. See id at 687. The same is true here. Norfolk County Group contends that Defendants are liable to all putative class members for misstatements regarding the viability of Shen. And the loss forming the basis for its damages model "comes from the inflated stock price caused by those misstatements." See id at 687.

Defendants also attempt to brand the damages theory proposed by Norfolk County Group as a *materialization of the risk* model. Dkt 93 at 27. Under such a theory, "investors are harmed by [ ] corrective events that represent materializations of the risk that was improperly disclosed." *Ludlow*, 800 F3d at 690 (quotation marks and

citation omitted, omission in original). The Fifth Circuit has explained that such a model is insufficient because it can't "be applied uniformly across the class, as *Comcast* requires, because it lumps together those who would have bought the stock at the heightened risk with those who would not have. It also presumes substantial reliance on factors other than price, a theory not supported by *Basic* and the rationale for fraud-on-the-market theory." Id at 691.

But such problems aren't present here. Norfolk County Group doesn't assert that Defendants underrepresented an *unrealized* risk. It instead asserts that certain risks had *in fact* materialized, yet Defendants actively misled investors to the contrary. For example, see Dkt 55 at ¶¶ 6, 98, 116; see also Dkts 63 at 15. These misrepresentations (they say) artificially inflated the Anadarko stock price, and it is *that* artificial inflation that was subsequently removed via a corrective disclosure. The theory thus bears the "hallmarks of the fraud on the market theory of liability." *Rougier v Applied Optoelectronics Inc*, 2019 WL 6111303, *17 (SD Tex). And it stands in stark contrast to the theory rejected in *Ludlow*, where individual investors relied on their own risk assessment as opposed to the integrity of the market price. *In re BP PLC Securities Litigation*, 2014 WL 2112823, *11 (SD Tex), affirmed by *Ludlow*, 800 F3d at 691.

In sum, the intended damages model measures "only the difference between the price paid and the true value of the security at the time of the initial purchase by the defrauded buyer" without the need to inquire into other factors such as individual risk tolerance. *Ludlow*, 800 F3d at 682, 691 (cleaned up). Norfolk County Group has thus satisfied its burden under *Comcast* to demonstrate that its methodology is "sound" and produces a "commonality of damages." *Comcast Corp*, 569 US at 37.

d. Rule 23(b)(3) superiority

**\*8** Certification under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This is known as the *superiority* requirement.

The inquiry is fact specific on factors of (i) "the interests of members of the class in individually controlling the prosecution or defense of separate actions," (ii) "the extent and nature of any litigation concerning the controversy already begun by or against class members," (iii) "the desirability or undesirability of concentrating the

litigation of the claims in the particular forum", and (iv) "the likely difficulties encountered in managing a class action." *Ibe*, 836 F3d at 529–30, citing *Amgen Products v Windsor*, 521 US 591, 615–16. Courts have routinely found that plaintiffs in securities litigation meet the superiority requirement. For example, see *In re BP PLC Securities Litigation*, 2013 WL 6388408, *18 (SD Tex); *Prause*, 2020 WL 3549686 at *7; *Rooney*, 330 FRD at 451.

Superiority is easily met here. *First*, as is often the case in securities litigation, "the costs and expenses of individual litigation would prove prohibitive for potential class members, who would have little incentive to litigate their claims outside the context of a class action." *Prause*, 2020 WL 3549686 at *7. *Second*, there's no other pending litigation concerning the alleged misconduct of Anadarko and its officials. Dkt 86 at 26. *Third*, concentrating this litigation will promote judicial efficiency, economy, and uniformity by avoiding "the time and expense of requiring all class members to litigate individually." *Rougier*, 2019 WL 6111303 at *19, quoting *In re BP p.l.c. Securities Litigation*, 2013 WL 6388408. *Fourth*, the potential for individualized issues has been adequately addressed above, with no further manageability issues either noted by the parties or readily ascertainable.

The superiority requirement of Rule 23(b)(3) is met.

4. Conclusion

The motion by Defendants to exclude the expert rebuttal report of Bjorn I. Steinholt is DENIED. Dkt 111.

The motion by lead Plaintiff Norfolk County Group to strike the Defendants' motion to exclude is DENIED AS MOOT. Dkt 113.

The Court FINDS that Norfolk County Group has established each of the necessary requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

The motion by Norfolk County Group for class certification is GRANTED. Dkt 86.

The following class is CERTIFIED pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons and entities that purchased or acquired the common stock of Anadarko Petroleum Corporation between February 20, 2015, and May 2, 2017, inclusive, and were damaged thereby. Excluded from

**In re Anadarko Petroleum Corporation Securities Litigation, Not Reported in Fed. Supp....**

the Class are Defendants and their families, legal representatives, heirs, successors, or assigns; officers, directors, subsidiaries, and affiliates of Anadarko during the Class Period; any entity in which Defendants have a controlling interest; and any judicial officer to which this litigation is assigned.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4544235

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

In re Anadarko Petroleum Corporation Securities Litigation, Slip Copy (2023)

H KeyCite history available

2023 WL 4307650
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Houston Division.

IN RE: ANADARKO PETROLEUM CORPORATION SECURITIES LITIGATION

Civil Action No 4:20-cv-00576
|
Signed June 30, 2023

### Order Denying Motion for Reconsideration

Charles Eskridge, United States District Judge

**\*1** Anadarko seeks reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure of the order granting class certification, largely for reasons "put forward in Defendants' Class Certification Opposition or *Daubert* briefing, and Dr Ferrell's accompanying reports." Dkt 143 at 7. The motion is denied. Dkt 143.

Under Rule 54(b), the district court may reconsider and revise its decision for any reason deemed sufficient, and this is so even in the absence of new evidence or an intervening change in or clarification of the substantive law. *Austin v Kroger Texas, LP*, 864 F3d 326, 336 (5th Cir 2017) (citations omitted). Such approach reflects the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id* at 337, quoting *Cobell v Jewell*, 802 F3d 12, 25–26 (DC Cir 2015). But there are limits. The Fifth Circuit admonishes, "A motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments." *LeClerc v Webb*, 419 F3d 405, 412 n 13 (5th Cir 2005); see also *Contango Operators, Inc v United States*, 965 F Supp 2d 791, 800 (SD Tex 2013): "Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."

Lead Plaintiff Norfolk County Council as Administering Authority of the Norfolk Pension Fund, Iron Workers

Local #580 Joint Funds moved for class certification in October 2021. Dkt 86. In February 2022, Defendant Anadarko Petroleum Corporation moved to file a surreply, which was denied. Dkt 110. Anadarko also later filed a motion to exclude the report and rebuttal report of Bjorn Steinholt on *Daubert* grounds. Dkt 111 at 5; see also Dkts 86-1 (Steinholt report) & 96-1 (Steinholt rebuttal report). That motion was also denied, with statement that the motion to exclude was "little more than an attempt to reurge Defendants' recently denied motion for leave to file a surreply," and that "class certification will rise or fall with what is fairly briefed in the papers under the Local Rules of the Southern District." Dkt 141 at 4. Based on the briefing, the class was certified. Id at 14–15.

Most of the arguments raised on motion for reconsideration were addressed in the order and present nothing new for consideration. This includes arguments that the Court (i) wrongly rejected an argument that the Shen news had no impact on ConocoPhillips share price because the news was only partially disclosed, (ii) wrongly concluded that ConocoPhillips was not a proper comparator to Anadarko, (iii) relied upon an incorrect timeline of events, and (iv) incorrectly relied on Bjorn Steinholt's event study as to the statistical significance of the price drop on May 3rd. Dkt 143 at 8–12. Many of these arguments derive from information presented in the *Daubert* briefing, with express determination that such would *not* be properly considered. And as such, they will not be considered here.

To the extent Anadarko now argues that Cobalt isn't a proper comparator to Anadarko, this was disregarded as being raised only in a footnote. Dkt 143 at 10; cf Dkt 93 at n3; see Section 18(d) of this Court's Procedures. To the extent it also argues that after-market trading wasn't efficient, this wasn't raised in its prior response and won't be considered now. Dkt 143 at 10–12; cf Dkts 93 (not raised in response) & 111 (raised as to *Daubert* challenge).

**\*2** One factual contention does warrant clarification. The class certification order concluded that ConocoPhillips wasn't a proper comparator because "the Shen project was a minor expenditure relative to its massive market cap," and its "$101 million stake paled in comparison to the $902 million stake held by Anadarko." Dkt 141 at 10. Anadarko argues this as error because "Anadarko and ConocoPhillips had nearly identical stakes in Shen: 30% for ConocoPhillips and 33% for Anadarko," and their "sunk costs—i.e., costs that are already committed and cannot be recovered—do not reflect their ownership

stakes in the project." It further asserts that "it was wrong for the Court to consider ConocoPhillips' $101 million dry hole expense to represent ConocoPhillips' entire expenditure on the project" because it only represents the write-off expenses related to Shen-6. Dkt 143 at 9–10.

To be more precise on the point at issue, ConocoPhillips and Anadarko were differently situated given their respective market capitalizations. ConocoPhillips experienced a $101 million dry-hole expense, which represented 0.2% of its market capitalization, while Anadarko experienced a $902 million write-off, which represented 2.9% of its market capitalization. Dkt 96-1 at 15–16. The fact that the two companies had similar stakes in Shen doesn't alter the conclusion that the Shen project was a minor expenditure for ConocoPhillips due to its massive market cap. This means that it was properly concluded that ConocoPhillips isn't a proper comparator to Anadarko.

The motion to reconsider the order granting class certification is DENIED. Dkt 143.

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 4307650

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.