2022 WL 17418522
Only the Westlaw citation is currently available.
United States District Court, W.D.
Texas, Midland-Odessa Division.

Mark A. BURKETT, Plaintiff,

v.

The AZTEC WELL FAMILY, et al., Defendants.

MO:20-CV-00052-DC-RCG
|
Signed November 1, 2022.

**Attorneys and Law Firms**

Randy Lee, Randy Lee, Attorney at Law, Lubbock, TX, for Plaintiff.

Carlos Ricardo Romo, Charles W. Weese, Janette L. Ferguson, Williams Weese Pepple & Ferguson PC, Denver, CO, David W. Lauritzen, Tyler J. Eyrich, Olivia G. Stedman, Cotton, Bledsoe, Tighe & Dawson, P.C., Midland, TX, Katherine A. Compton, Lewis Brisbois Bisgaard & Smith, Dallas, TX, for Aztec Well Family, Double M Sales & Filter Services, Triple S Trucking Co., Inc., Aztec Drilling.

David W. Lauritzen, Tyler J. Eyrich, Olivia G. Stedman, Cotton Bledsoe Tighe & Dawson, P.C., Midland, TX, William Scott Helfand, Lewis Brisbois Bisgaard & Smith LLP, Houston, TX, Katherine A. Compton, Lewis Brisbois Bisgaard & Smith, Dallas, TX, for Defendant Aztec Well Servicing Co., Totah Rental & Equipment Co.

**ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE REPORT AND MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT WITNESS SARAH DODD**

RONALD C. GRIFFIN, UNITED STATES MAGISTRATE JUDGE

**\*1** BEFORE THE COURT is Plaintiff Mark A. Burkett's ("Plaintiff") Motion to Strike Report and Motion to Exclude Testimony of Defendants' Expert Witness Sarah Dodd. (Doc. 64). This case is before the undersigned through an Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. (Doc. 55). After due consideration of the parties' briefing and the applicable case law, the Court

GRANTS Plaintiff's Motion to Strike Report and Motion to Exclude Testimony of Defendants' Expert Witness Sarah Dodd. (Doc. 64).

**I. BACKGROUND**

On February 28, 2020, Plaintiff filed both his Original Complaint and First Amended Complaint ("FAC"). (Docs. 1, 2). Plaintiff, a registered professional petroleum engineer, brings claims against Defendants The Aztec Well Family, Aztec Well Servicing Co., Aztec Drilling, Triple S Trucking Co., Inc., Totah Rental & Equipment Co., and Double M Sales & Filter Services (collectively, "Defendants") for defamation. (Doc. 2). He seeks actual and exemplary damages. *Id.* at 15.

The Aztec Well Family encompasses the other Defendants, who are members of the Aztec Well Family, and are all "generally in the business of oil and natural gas drilling, well servicing, trucking, rentals and equipment, supplies and support services." *Id.* at 7. Plaintiff "has performed professional services for various entities engaged in oil and gas well operations. An oil and gas well operator named Copper Ridge Resources, LLC ("Copper Ridge"), is one of the entities for which [Plaintiff] has done so." *Id.*

According to Plaintiff's FAC, Copper Ridge and Defendant Aztec Well Servicing Co. (individually, "Aztec Well") entered into a contractual agreement in January 2019. *Id.* at 8. The contract dictated that Aztec Well was to provide services on three of Copper Ridge's wells: 1) Maria 1X well in Gaines County, Texas; 2) Warren 1 well in Lea County, New Mexico; and 3) L.L. Butler 3 well in Gaines County, Texas. (Doc. 2 at 8). Following a dispute as to Aztec Well's performance, "Copper Ridge released Aztec Well from further activities on the L. L. Butler 3 well" and has yet to pay Aztec Well for work done on the Warren 1 and L.L. Butler 3 wells. *Id.*

Plaintiff alleges that, following this dispute, Defendants "started an intense defamation campaign directed against Copper Ridge" in May 2019. *Id.* Part of said campaign allegedly involved Defendants contacting Copper Ridge's customers to inform them of Copper Ridge's failure to pay Aztec Well, which negatively impacted several of Copper Ridge's business relationships. *Id.* at 8–10. Then, in the fall of 2019, Aztec Well and Triple S Trucking Co., Inc. brought multiple suits against Copper Ridge in the Eleventh Judicial District Court of San Juan County, New Mexico and the 106th

Case 4:21-cv-02473    Document 85-19    Filed 08/16/24 in TXSD    Page 2 of 4

Burkett v. Aztec Well Family, Not Reported in Fed. Supp. (2022)

District Court of Gaines County, Texas. *Id.* at 10–11. Plaintiff was not named in any of the suits.

Plaintiff contends that, on November 10, 2019, Defendants "published [1]/4-page color 'Wanted' pictures of [Plaintiff] and another man in the Sunday editions of both the Midland Reporter-Telegram and the Abilene Reporter-News newspapers, identifying both by name." (Doc. 2 at 12). The ad contained allegedly disparaging comments, including that Defendants were legally trying to serve the two men "in an effort to collect millions in outstanding debt" and that the men were "nowhere to be found." *Id.* According to Plaintiff, "the 'Wanted' picture strongly suggests that [Plaintiff] had personally committed some kind of financial crime that has damaged [Defendants], that [Plaintiff] owed millions of dollars to [Defendants] and that [Plaintiff] was on the run from his debts." *Id.* at 13.

**\*2** On November 15, 2019, following Plaintiff's request to retract the advertisement, Defendants allegedly began "forwarding the 'Wanted' pictures to numerous persons and entities and calling others to further publish its content and other slanderous, derogatory statements about [Plaintiff]." *Id.* Plaintiff claims that, as a result of the advertisement, he "has been subjected to ridicule, embarrassment, defamatory comments by others based on the content of the 'Wanted' pictures and their accompanying text, personal and professional hardship, loss of business opportunities and a host of other problems." *Id.* at 14.

On August 30, 2022, Plaintiff filed the instant motion requesting that the Court exclude Defendants' expert witness, Sarah Dodd, on the basis that her testimony is unreliable and irrelevant. (Doc. 64). After receiving an extension, Defendants filed their Response on September 16, 2022, as an exhibit to their Motion for Leave to Exceed Page Limit. (Doc. 68-2). Plaintiff filed his Reply on September 23, 2022. (Doc. 72). On October 6, 2022, once the Court granted Defendants leave to exceed the page limitation, Defendants refiled their Response. (Doc. 77). Accordingly, this matter is fully briefed and ripe for disposition.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admission of testimony by an expert witness and provides that an expert witness may testify if it "will help the trier of fact to understand the evidence or determine a fact in issue." Fed.

R. Evid. 702. Additionally, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods." *Id.* at 702(b)–(c). Finally, the expert must have "reliably applied the principles and methods to the facts of the case." *Id.* at 702(d).

First, when presented with expert testimony, the Court must be "assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.' " *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). Once the Court has determined that "some reasonable indication of qualifications [exist], the court may admit the evidence without abdicating its gate-keeping function. After that, qualifications become an issue for the trier of fact rather than for the court in its gate-keeping capacity." *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded by statute on other grounds*.

Once the Court concludes that an expert is qualified, it must determine the admissibility of the expert testimony. *Herrera v. Werner Enters., Inc.*, No. SA-14-CV-385-XR, 2015 WL 126794443, at \*1 (W.D. Tex. Sept. 28, 2015). In *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court set out a list of non-exclusive factors the Court may consider when exercising its gatekeeping function. 509 U.S. 579, 593–94 (1993); *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004). These factors include: 1) "whether [a theory or technique] can be (and has been) tested"; 2) "whether the theory or technique has been subjected to peer review and publication"; 3) "the known or potential rate of error"; 4) "the existence and maintenance of standards controlling the technique's operation"; and 5) whether the theory or technique has received general acceptance from the scientific community. *Daubert*, 509 U.S. at 593–94. This gatekeeping function is meant "to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

Reliability requires an "assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592. The *Daubert* factors are employed when "they are a reasonable measure of the reliability of expert testimony." *Kumho Tire Co.*, 526 U.S. at 152. When the factors are inapplicable, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* at 150.

Case 4:21-cv-02473    Document 85-19    Filed 08/16/24 in TXSD    Page 3 of 4

Burkett v. Aztec Well Family, Not Reported in Fed. Supp. (2022)

**\*3** The party seeking admission of an expert witness's testimony bears the burden of proving, by a preponderance of the evidence, that the testimony is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987). While the party does not need to prove that the expert's testimony is correct, they must prove by a preponderance of the evidence that the testimony is reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The Court possesses considerable leeway in deciding how to determine the reliability of an expert's testimony. *Kumho Tire Co.*, 526 U.S. at 152. Ultimately, the determination is one of "scientific validity and thus the evidentiary relevance and reliability —of the principles that underlie a proposed submission." *Daubert*, 509 U.S. at 594–95. Focus should be placed on the methods and principles, as opposed to the conclusions, of the testimony. *Id.* at 595. Lastly, the testimony must be relevant and "assist 'the trier of fact to understand the evidence or to determine a fact in issue.' " *Id.* at 591 (quoting Fed. R. Evid. 702(a)).

### III. DISCUSSION

#### A. Qualification of Expert Witness

Plaintiff argues that "there are [no opinions] reliably supported by evidence meeting any *Daubert* requirements" in Ms. Dodd's report. (Doc. 64 at 10). Further, Plaintiff asserts that Ms. Dodd is not qualified as a crisis management expert. *Id.* at 12. Finally, Plaintiff claims Ms. Dodd's proposed testimony is irrelevant, "because newsworthiness of the advertisement—the only topic addressed by Dodd's Report —is not an element of [Plaintiff's] defamation claim." *Id.* at 4. Defendants respond that Ms. Dodd is "an award-winning journalist with more than 15 years of experience in in [sic] media strategy, crisis communications, litigation support and reputation management" and that her proposed testimony is reliable and relevant. (Doc. 77 at 9).

Defendants demonstrate that Ms. Dodd "possesses a higher degree of knowledge, skill, experience, training and education ... than an ordinary person." *Hill v. Universal Am-Can, Ltd.*, No. 9:04-CV-209-TH, 2007 WL 4355041, at \*3 (E.D. Tex. Sept. 4, 2007) (finding that the expert witness was qualified based on training and personal experience alone). Ms. Dodd is a public affairs strategist and award-winning former journalist who started her own company, Dodd Communications, in 2007. (Doc. 64-1 at 42). Dodd Communications specializes in "media strategy, crisis communications, litigation support and reputation

management." *Id.* According to Defendants, Ms. Dodd has approximately fifteen years of experience "in media strategy, crisis communications, litigation support and reputation management." (Doc. 77 at 9). She earned a Bachelor of Arts in Communication Specialist from Baylor University, spent a decade working as a television news reporter and anchor, and now serves on the Advisory Board for the Baylor School of Journalism. (Doc. 64-1 at 42). The Court therefore finds that Ms. Dodd is qualified as an expert witness.

#### B. Reliability of Sarah Dodd's Opinions

Next, Plaintiff asserts that Ms. Dodd's opinions are not reliable, as she "has no qualifications or factual basis to opine about whether [Plaintiff's] public reputation was damaged." (Doc. 64 at 14). Further, according to Plaintiff, "there is no proof that her opinions are based on sufficient facts or data, or that they are the product of reliable principles and methods, or that she reliably applied any principles or methods to the facts." *Id.* Defendants argue that Ms. Dodd's report is reliable, as she reviewed various sources of information and identified the methodology used to reach her conclusions. (Doc. 77 at 12–13).

Ms. Dodd's report does include a list of documents and data she considered, which mostly consists of depositions taken during the course of this litigation. (*See* Doc. 64-1 at 41). According to the report, Ms. Dodd's approach consisted of "studying publicly available information based on web searches for Mark Burkett." *Id.* at 39. She claims that her opinion is "consistent with and supported by journalism textbooks on writing & reporting." *Id.* at 40. Ms. Dodd's report concludes that, because the ad did not appear in any of her search results, it did not generate any news and therefore "[Plaintiff's] public reputation was not harmed as a result of the information-seeking ads placed in two West Texas newspapers." *Id.* at 39. However, there are no specifics as to the methodology Ms. Dodd employed, such as which terms she researched and why or which search engines she used. (*See* Doc. 64-1 at 18–19). During her deposition, Ms. Dodd admitted she did not make an actual record of the search terms she used, nor did she search any social media sites, such as LinkedIn. *Id.* at 21. Additionally, Ms. Dodd stated that she did not review the actual newspapers in which the advertisements were run or their circulations. *Id.* at 18.

**\*4** Although Ms. Dodd may be qualified to testify as an expert witness, the Court does not believe that the technique/ methodology used to draw the conclusions in her report are reliable. "The reliability inquiry is flexible, and the judge has

Case 4:21-cv-02473 Document 85-19 Filed 08/16/24 in TXSD Page 4 of 4

discretion in determining which factors are most germane in light of the nature of the issue, the particular expertise, and the subject of the expert's testimony." *Daubert*, 509 U.S. at 594–95. Further, it is the Court's responsibility to ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Because Ms. Dodd did not make a record of the search terms she employed, nor the search engines she used and how thoroughly she searched their results, the Court would be remiss to open the door to expert witnesses utilizing such lax methodologies. *See J.S. v. Am. Inst. for Foreign Study, Inc.*, Civil Action No. SA-12-CA-1036-XR, 2013 WL 5372531, at *14 (W.D. Tex. Sept. 24, 2013) (The expert witness explained his methodology in detail by including in his report: the search terms and search engine used; how he narrowed his search using the "search tool" feature on Google; and specified the length and contents of the search results.). The Court would be relying upon the "*ipse dixit* of the expert," which it is not required to do. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Further, "[e]xperts cannot 'render conclusions of law' or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (quoting *Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009)). To recover on a defamation claim, there must be proof "(1) of the publication of a false statement of fact to a third party, (2) that defamed the plaintiff; (3) with the requisite degree of fault, and (4) that proximately caused damages." *Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 423 (Tex. 2022) (citing *Anderson v. Durant*, 550 S.W.3d 605, 617–18 (Tex. 2018)). The first paragraph of Ms. Dodd's report states: "[Plaintiff's] public reputation was not harmed as a result of the information-seeking ads placed in two West Texas newspapers." (Doc. 64-1 at 39). Such a legal conclusion, whether Plaintiff was defamed, is inappropriate.

Therefore, because the Court finds Ms. Dodd's report to be unreliable, it will not proceed with the analysis of the report's relevancy. Further, Plaintiff's argument that Defendants failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B) is **MOOT** and will not be addressed at this time.

### IV. CONCLUSION

As discussed in detail above, the Court **GRANTS** Plaintiff's Motion to Strike Report and Motion to Exclude Testimony of Defendants' Expert Witness Sarah Dodd. (Doc. 64).

It is so **ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17418522

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.