2023 WL 9312081
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Laredo Division.

Alejandro ESTEVIS, Plaintiff,

v.

CITY OF LAREDO, et al., Defendants.

Civil Action No. 5:22-CV-22
|
Signed December 28, 2023

**Attorneys and Law Firms**

Jeffrey S. Edwards, The Edwards Law Firm, Austin, TX, John Timblin Flood, John T. Flood, L.L.P., Luis Alberto Elizondo, Gowan Elizondo LLP, Corpus Christi, TX, for Plaintiff.

Charles S. Frigerio, Attorney at Law, San Antonio, TX, for Defendants.

**ORDER**

John A. Kazen, United States Magistrate Judge

**\*1** Before the Court is Plaintiff's Motion to Strike and Exclude Albert Rodriguez. (Dkt. No. 53). Defendants have responded. (Dkt. No. 63). For the reasons set forth below, Plaintiff's motion, (Dkt. No. 53), will be **GRANTED in part** and **DENIED in part.**

**I. BACKGROUND**

Plaintiff Alejandro Estevis ("Plaintiff") brings suit against Defendants City of Laredo ("Laredo"), Ignacio Cantu ("Officer Cantu") and Eduardo Guajardo ("Officer Guajardo") for alleged violations of his rights pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments arising from the use of excessive force. (Dkt. No. 29 at 1). In the early morning of April 9, 2020, officers from the Laredo Police Department ("LPD") were involved in an extended high-speed chase of Plaintiff. (Dkt. Nos. 29 at 2, 53 at 7). LPD officers used various tactics to apprehend Plaintiff including issuing verbal commands, causing contact with Plaintiff's vehicle, and using tire deflating spikes. (Dkt. No. 53 at 7). Eventually, Plaintiff's tires deflated, and he veered off-road; however, he continued to accelerate the vehicle forward and

backward. (*Id.* at 8). Although the vehicle was no longer operable, Officer Cantu and Officer Guajardo allege that they believed that Plaintiff continued to pose an immediate risk of harm. (*Id.* at 9). The officers fired several shots into the truck's cabin, striking Plaintiff. (*Ibid.*). Plaintiff was subsequently arrested. He pled guilty to aggravated assault on a public servant and evading arrest. (Dkt. No. 53-16 at 2).

Defendants designated Albert Rodriguez as a "police expert" to testify about the LPD investigation and Officers Guajardo and Cantu's conduct during the incident in question. (Dkt. No. 51 at 4). Plaintiff now moves the Court to strike Rodriguez's opinions and testimony and exclude him as an expert witness. (Dkt. No. 53).

**II. LEGAL STANDARDS**

The admissibility of expert witness opinions is governed by Federal Rule of Evidence 702, together with the standards established in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 596 (1993). Rule 702 provides that a witness qualified as an expert may testify in the form of an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the witness has applied the principles and methods reliably to the facts of the case." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting FED. R. EVID. 702).

*Daubert* identifies the factors a trial court should consider when deciding the admissibility of expert testimony. *See Daubert*, 509 U.S. at 590–93. The proponent of the expert testimony must show by a preponderance of the evidence that: (1) the expert witness is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *See id.* at 590–91; *see also Arkema, Inc.*, 685 F.3d at 459 (citation omitted). Additionally, the Supreme Court has outlined a five factor "non-exclusive, flexible test" for trial courts in determining whether an expert witness's opinion is reliable:

> **\*2** (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or

potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Daubert*, 509 U.S. at 593–95. After a court considers the *Daubert* factors, a court may then consider whether other factors, not mentioned in *Daubert*, are relevant to the case at hand. *Black v. Food Lion, Inc.*, 171 F.3d 308, 312 (5th Cir. 1999).

The expert's testimony must be both relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007); *see also* FED. R. EVID. 702. "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Rule 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (citing *Kumho Tire Co.*, 526 U.S. at 152). Trial courts are not intended "to serve as a replacement for the adversarial system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. "The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible." *Holcombe v. United States*, 516 F. Supp. 3d 660, 674 (W.D. Tex. 2021) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir. 1998)); *see also* FED. R. EVID. 104.

## III. DISCUSSION

Defendants have designated Albert Rodriguez ("Rodriguez") as a police expert to provide expert testimony and opinions regarding the following:

- The conduct of Defendants Cantu and Guajardo as law enforcement officers during the April 9, 2020 incident;

- LPD policies and procedures in general and as they pertain to the incident;

- The appropriate and accepted use of force policies applicable to the incident;

- Whether Officers Cantu and Guajardo used reasonable force and whether their actions fell within the acceptable standard of care for law enforcement; and,

- Plaintiff's alleged use of his motor vehicle as a weapon.

(Dkt. No. 51 at 5).

Rodriguez's opinions are set forth in his report dated July 17, 2023, (Dkt. No. 53-2), and in his deposition testimony given on August 14, 2023. (Dkt. No. 53-3). Plaintiff does not generally challenge Rodriguez's qualifications as an expert on the law enforcement issues in this case, and the Court therefore will not address that issue. Instead, Plaintiff attacks the reliability of Rodriguez's opinions. Specifically, Plaintiff asks the Court to strike the following categories of opinions:

- Rodriguez's legal conclusions about constitutionality, "objective reasonableness," and probable cause;

- Rodriguez's speculation about Plaintiff's and the officers' state of mind;

- Rodriguez's testimony about mind-altering substances; and,

- Rodriguez's opinions about science, including tunnel vision and audio exclusion.

(Dkt. No. 53 at 5, 13, 17, and 19).

As an initial matter, it is noted that a vast majority of Rodriguez's challenged opinions are set out in his written expert report. Defendants point to an order from a sister court where the plaintiff sought to exclude Rodriguez's testimony. *See Rogers v. City of Hutto, Tex.*, No. 1:19-CV-166, 2020 WL 5099953 (W.D. Tex. June 29, 2020). In that case, the magistrate judge declined to rule on the admissibility of each of the challenged opinions set forth in Rodriguez's written expert report. *Id.* at *3. The court deferred resolution of those issues to the time of trial. *Id.* at *4. Certainly, an expert witness's pretrial written report is generally not admissible at trial because it is hearsay pursuant to Federal Rule of Evidence 801(c). *See Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014). Yet, the Court is not ruling on whether Rodriguez's opinions should be stricken from his written report, but rather on whether Rodriguez may testify at trial as to the opinions stated in his report and deposition

testimony. Although the Court has the option of deferring ruling on the pending motion to exclude until the time of trial, it serves the interest of judicial efficiency to resolve this pretrial dispute at this time, as doing so will streamline the potential future trial of this case.

### A. Rodriguez's Testimony Regarding Case Law and Statutes are not Admissible.

**\*3** "When a plaintiff alleges excessive force during an investigation or arrest, the ... right at issue is the Fourth Amendment right against unreasonable seizures." *Pratt v. Harris Cnty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (citing *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)). In *Pratt*, the Fifth Circuit Court of Appeals identified the issues a court must address in a Fourth Amendment excessive force claim:

> When a plaintiff alleges a violation of his Fourth Amendment rights due to excessive force, we are presented with a legal question concerning the reasonableness of the officer's conduct, which is embodied in the claim itself. Specifically, to establish a claim of excessive force under the Fourth Amendment, Pratt must demonstrate: (1) [an] injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. Excessive force claims are necessarily fact-intensive. Therefore, whether the force used is 'excessive' or 'unreasonable' depends on the facts and circumstances of each particular case, and we must consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Pratt*, 822 F.3d at 181 (cleaned up). Accordingly, the reasonableness of an officer's use of deadly force is a legal conclusion. *See United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003); *see also McBroom v. Payne*, 478 F. App'x 196, 200 (5th Cir. 2012).

In the context of the alleged Fourth Amendment excessive force claims, Plaintiff asserts that Rodriguez repeatedly opines improperly on what the law is, what the law requires of officers, and whether the parties violated the law. (*See* Dkt. No. 53 at 11). Plaintiff argues Rodriguez's opinions reach legal conclusions beyond the scope of expert testimony. (*Id.* at 19). First, Plaintiff argues that Rodriguez improperly relies on case law to assert that the officers' use of force was "objectively reasonable." (*Id.* at 12). He argues that Rodriguez misapplied case law to conclude that "the officers' actions were 'consistent with the dictates of *Graham v. Connor...* and *...Plumhoff v. Rickard [ ].*' " (*Id.* at 14). Second, Plaintiff argues that Rodriguez improperly interpreted a statute when he opined that " 'the deployment of deadly force by law enforcement officers is within the scope of their authority, and not a violation of an individual's civil rights, when said force deployed is in accordance with' TEX. PENAL CODE §§ 9.32, 9.33, 9.51." (Dkt. No. 53 at 15 (citing Dkt. No. 53-2 at 16)). Third, Plaintiff argues that Rodriguez improperly opines that Plaintiff created an unlawful and deadly situation which the officers had to use their best judgment to respond to and stop. (Dkt. No. 53 at 16 (citing Dkt. No. 53-2 at 18)). Lastly, Plaintiff argues that Rodriguez's discussion and application of the probable cause standard is an inadmissible legal conclusion. (Dkt. No. 53 at 17).

In response, Defendants contend that Rodriguez's opinions are integral to the qualified immunity defense because they will assist the jury in understanding the acceptable standard of care for law enforcement officers. (Dkt. No. 63 at 12). Defendants also argue that sister district courts have allowed expert testimony in the field of police practices, including opinions on the reasonableness of an officer's actions. (*See* Dkt. No. 63 at 12–13).

**\*4** Generally, "[a]n opinion is not objectionable just because it embraces an ultimate issue" in a case. FED. R. EVID. 704(a). But expert witnesses are not allowed to "tell the jury what result to reach...." *Matthews v. Ashland Chem., Inc.*, 770 F.2d 1303, 1311 (5th Cir. 1985), and "an expert may never render conclusions of law," *Goodman v. Harris Cnty.*, 5571 F.3d 388, 399 (5th Cir. 2009), or opinions on legal issues. *Estate of Sowell v. United States*, 198 F.3d 169, 171–72 (5th Cir. 1999). "Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades

the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). However, an expert may properly testify as to mixed questions of law and fact. *Waco Int'l, Inc. v. KHK Scaffolding Hous. Inc.*, 278 F.3d 523, 532–33 (5th Cir. 2002). It is the role of the court to evaluate whether an expert's opinion relating to a legal issue in the case purports to inform the jury what the law is, and thus invades the role of the court. *See United States v. Fogg*, 562 F.2d 551, 556–57 (5th Cir. 1981); *see also Wooten v. Collin Cnty., Texas*, No. 4:18-CV-380, 2021 WL 5834437, at *4 (E.D. Tex. Dec. 9, 2021).

Experts may, on the other hand, testify to norms or standards applicable to a particular profession. Experts may apply the relevant standard of care to a party's conduct. *Pierson v. United States*, 605 F. App'x. 293, 294 (5th Cir. 2015) (citing *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003)). Thus, an expert's testimony regarding whether a party's behavior meets particular professional standards is relevant and admissible. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591); *see also Wooten*, 2021 WL 5834437, at *3.

In *Garcia v. Harris Cnty.*, No. H-16-2134, 2016 WL 6068157 (S.D. Tex. Nov. 20, 2018), a sister court was presented with a similar issue. There, the plaintiff also brought a suit under § 1983 for violations of her First, Fourth, and Fourteenth Amendment rights. *Id.* at *1. The plaintiff retained police expert Roger Clark to testify "on matters of police duties and investigations." *Ibid.* Clark's opinion addressed the legality of the defendant-officers' actions. *Id.* at *4. The defendants sought to exclude Clark's opinions as improper legal conclusions. *Ibid.* The court allowed Clark to opine as to how the officer-defendants' actions related to law enforcement policies but not as to the ultimate legality of their actions. *Ibid.* The court reasoned that Clark could not instruct the jury as to the legality of the officer-defendants' conduct; rather, that question was for the jury to decide. *Ibid.* Further, the court held that while Clark could testify that the officer-defendants violated set standards, he could not offer legal conclusions. *Ibid.* The case before the Court presents similar distinctions.

The Court now considers Rodriguez's opinions which Plaintiff challenges as improper legal conclusions. First, Plaintiff asserts that "Rodriguez expressly relies upon and purports to apply decisional caselaw to assert the inadmissible opinion that the officers' use of force was 'objectively reasonable.'" (Dkt. No. 53 at 13). The Court agrees that

Rodriguez's references to, and discussion of, case law should be excluded. It is not the role of an expert to inform the jury what law applies to the conduct of the officers. Rodriguez may opine about the standard of care applicable to the Defendant officers, but he must do so without reference to case law. For example, his opinion that Officers Cantu and Guajardo's actions were "consistent with the dictates of *Graham vs. Connor*" and "*Plumhoff v. Richard* [sic]", (Dkt. 53-2 at 29, 31), are inadmissible. He may opine about the training provided to officers, but he must do so without discussing case law or quoting verbiage from case law.

**\*5** Next, Plaintiff objects to Rodriguez's opinions that "the deployment of deadly force by law enforcement officers is within the scope of their authority, and not a violation of an individual's civil rights, when said force deployed is in accordance with TEX. PENAL CODE §§ 9.32, 9.33, 9.51; *Graham*; and *Garner*," and his related opinion that "Guajardo and Cantu were performing legitimate discretionary law enforcement functions in connection with [Plaintiff's] unlawful and threatening actions." (Dkt. No. 53 at 15). The Court concludes that Rodriguez's opinion that "the deployment of deadly force by law enforcement officers is within the scope of their authority" is an appropriate opinion, while the remaining portion, "and not a violation of an individual's civil rights, when said force deployed is in accordance with TEX. PENAL CODE §§ 9.32, 9.33, 9.51; *Graham*; and *Garner*," is an improper attempt to inform the jury of the applicable law of the case. Rodriguez's opinion that Officers Guajardo and Cantu "were performing legitimate discretionary law enforcement functions" is likewise an improper attempt to testify as to the applicable law. Additionally, whether the officers were performing discretionary law enforcement functions is not a fact issue for the jury to decide, and therefore this opinion is not helpful to the jury.

Next, Plaintiff objects to Rodriguez's opinion that "Officers Guajardo and Cantu were responsible, as law enforcement officers, to attempt to stop, and subsequently respond to the unlawful and deadly situation that Plaintiff created. Officers Guajardo and Cantu were required to use their judgment and discretion in determining how to respond, stop, and neutralize [Plaintiff's] life-threatening actions," and his statement that "[o]bjective and well-trained law enforcement trainers would undoubtedly concur that Officers Guajardo and Cantu's actions were performed within the scope of their law enforcement authority." (Dkt. No. 53 at 16). Plaintiff objects to these opinions on the ground that Rodriguez bases

these opinions on Article 2.13 of the Texas Code of Criminal Procedure, which he quotes in support. (Dkt. No. 53-2 at 15). In many of his opinions, Rodriguez has a tendency to quote statutes and case law. Rodriguez has worked in law enforcement since 1977, and he has performed law enforcement training responsibilities for over twenty years. (Dkt. No. 53-2 at 2–3). Rodriguez is qualified to testify about the standards of conduct for law enforcement officers, including opining on how an objectively reasonable officer would be expected to act in the circumstances faced by Officers Guajardo and Cantu. However, he may not quote statutes or case law to support his opinions. This distinction was reflected in an exchange during Rodriguez's testimony in which he was asked about the basis of his understanding of the term "objectively reasonable." (Dkt. No. 52-3 at 8–9). Although he acknowledged that the definition is set forth in case law, he clarified, "I make that conclusion based on my training, law enforcement training, and not necessarily a legal conclusion." (*Id.* at 9). To the extent Rodriguez testifies at trial, he should be cognizant to only rely on his training and experience and not cite the law. He will not be allowed to invade the province of the Court.

Finally, Plaintiff argues that Rodriguez's opinion that the officers had probable cause to believe Plaintiff committed crimes is an inadmissible legal conclusion. (Dkt. No. 53 at 17). He asserts that "Rodriguez accuses [Plaintiff] of multiple crimes," and "that the officers had probable cause to believe [Plaintiff] had committed these crimes." (*Ibid.*). Defendants do not respond to Plaintiff's argument or proffer any evidence as to how Rodriguez's opinions are reliable or admissible. The Court agrees that Rodriguez's references to, and discussion of, probable cause are not proper and will be excluded.

Opinions about whether a statute has been violated are legal conclusions and thus inadmissible. *Tavernini v. Bank of America, N.A.*, No. 4:12-CV-420, 2013 WL 12045198, at *1 (E.D. Tex. June 18, 2013). The Court has already concluded, *supra*, that Rodriguez is not allowed to quote criminal statutes. The Court therefore turns to Rodriguez's opinions about probable cause. Whether an officer has probable cause is a mixed question of law and fact, but the ultimate determination is a question of law. *See Porter v. Lear*, 751 F. App'x 422, 433 (5th Cir. 2018). The existence of probable cause is a question of law that is not properly the subject of expert testimony. *Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993).

**\*6** Plaintiff cites to *Shelton v. Wise*, No. A-07-CA-063, 2009 WL 10699994 (W.D. Tex. Apr. 7, 2009) as support for his argument. There, the plaintiff sought to exclude Rodriguez's testimony regarding the existence of probable cause to support a warrant. (*Id.* at *3). First, *Shelton* has little persuasive value because there, the parties agreed that Rodriguez would not testify about the arrest warrant procedures or adequacy of probable cause. (*Ibid.*). Second, the issues are dissimilar because here, the fact issue to be decided is not whether probable cause existed to support a warrant. The issue in this case is whether an objectively reasonable officer believed that the use of deadly force was justified under the circumstances faced by Officer Guajardo and Officer Cantu.

In his written report, Rodriguez states "[o]fficers are trained that deadly force is reasonable when violent felons flee and 'the officer has probable cause to believe the suspect poses a significant threat of death or serious physical injury....' " He then defines probable cause pursuant to his law enforcement training as "exist[ing] when a fleeing suspect has committed a violent felony ... is in possession of a deadly weapon, and it objectively appears that the fleeing suspect is going to continue acts of violence." (Dkt. No. 53-2 at 24). These statements constitute Rodriguez's definition of probable cause and are not statements of whether probable cause existed under the facts of this case. Although Rodriguez does not explicitly state that the officers had probable cause, he opines "not only did it appear that [Plaintiff] was going to continue the acts of violence, but he did continue to place lives at risk," and "any reasonable law enforcement officer could have believed that [Plaintiff] was a violent fleeing felon." (Dkt. No. 53-2 at 24). Further, Rodriguez opines that "any well-trained law enforcement officer could have believed [Plaintiff] attempted to use deadly force against the officers therefore committing numerous counts of Aggravated assault or attempted Capital Murder when he drove the pickup toward law enforcement officers." (*Id.* at 23). Defendants fail to show why Rodriguez's references to statutory violations are necessary or relevant. The relevant issue is whether the officers reasonably perceived Plaintiff to be an imminent threat of serious bodily harm or death. Defendants have failed to meet their burden to show that Rodriguez's opinions as to which criminal statutes Plaintiff violated and whether the officers had probable cause to believe Plaintiff committed a crime are relevant or helpful to the jury. The Court determines that such opinions are not helpful to the jury, so these opinions will be excluded.

In summary, Rodriguez may opine about officer training, the standards of conduct for law enforcement officers, and how an objectively reasonable officer would be expected to respond in a similar situation. However, Rodriguez may not testify about specific case law or statutes, or whether probable cause existed. Thus, any discussion of, or reference to case law, statutes, or the existence of probable cause in his testimony will be excluded.

### B. Rodriguez's Conclusory Opinions about the Parties' State of Mind are not Admissible.

Plaintiff next moves to exclude Rodriguez's opinions regarding the state of mind of Plaintiff and the law enforcement officers, including Officers Guajardo and Cantu. "An expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible." *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007). "An expert's credentials do not place him in a better position than the jury to draw conclusions about a defendant's state of mind." *Ibid.*; *see also Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (holding that an expert witness's testimony regarding whether defendant's lack of concern constituted deliberate indifference or conscious disregard were inadmissible and did not aid the jury). As the proponent of Rodriguez's expert testimony, Defendants carry the burden to show by a preponderance of the evidence that, *inter alia*, the testimony is relevant to an issue in the case and the testimony is reliable. *See Daubert*, 509 U.S. at 590–91; *see also Arkema, Inc.*, 685 F.3d at 459 (citation omitted). Yet, Defendants' response fails to address Plaintiff's argument that Rodriguez's state-of-mind opinions are inadmissible. The Court will therefore rely solely on the evidence of Rodriguez's opinions and testimony as identified by Plaintiff.

**\*7** Although Rodriguez may not make conclusory assertions regarding a person's state of mind, he may properly testify as to information in the record which reflects a witnesses or party's state of mind. For example, Rodriguez phrases some of those assertions as "[Plaintiff] reportedly was driving recklessly", (Dkt. No. 53-2 at 7), or "Agent Solis emphasized that he believed ...", (*Id.* at 8; Dkt. No. 53-3 at 19), or "[i]t was reported that ...", (*Ibid.*). These statements appear to be based on information in the record reviewed by Rodriguez, and as such, they are admissible. Relatedly, Plaintiff objects to Rodriguez's statement that "Officers Cantu and Guajardo did know that [Plaintiff] had attempted to kill and/or seriously injure Border Patrol Agents and a Texas Department of

Public Safety Trooper, therefore, they could have reasonably believed that [Plaintiff] intended to continue to use the pickup truck as a deadly weapon." (Dkt. Nos. 53 at 20–21, 53-2 at 28). Plaintiff complains that there is insufficient evidence to support Rodriguez's statement that both officers were aware of this information. Plaintiff's argument that Rodriguez is simply wrong about his assessment of the evidence is best saved for cross-examination.

On the other hand, many of Rodriguez's statements about the officers' state of mind do appear to be conclusory. Rodriguez repeatedly makes statements about what Officer Guajardo, Officer Cantu, and other officers "believed," "observed," "perceived," or "knew." (*See* Dkt. No. 53-2 at 10, 22, 24, 25, 27). To the extent these statements are conclusory opinions about the state of mind of the parties and other witnesses that are not supported by facts in the record, they are inadmissible.

In summary, to the extent Rodriguez's opinions regarding a witness or party's state of mind are based on information or evidence contained in the record, those opinions are admissible. His conclusory opinions about the state of mind of the parties and witnesses are inadmissible. The admissibility of Rodriguez's specific testimony will depend on the wording he uses at trial. As such, it will be incumbent on Plaintiff to preserve such objections in a motion in limine and to object to any improper testimony during the course of the trial.

### C. Rodriguez's Testimony about Mind-Altering Substances is Inadmissible.

Plaintiff also objects to Rodriguez's testimony that Plaintiff showed signs of being affected by mind altering drugs such as cocaine or opioids. Plaintiff argues that the Court should exclude this testimony, and specifically the following statements:

- Plaintiff showed a "disregard for human life... [c]onsistent with going through a mental episode or under the influence of mind-altering drugs." (Dkt. No. 53-3 at 28).

- Plaintiff "consumed mind-altering drugs on the roadway, cocaine." (*Id.* at 31).

Plaintiff argues that Rodriguez's testimony that Plaintiff showed signs of possibly being intoxicated by cocaine or opioids should be excluded because they are unsupported, unreliable, and unhelpful. (Dkt. No. 53 at 23). Additionally, he argues that Rodriguez's opinions are not an "appropriate

vehicle to admit this otherwise inadmissible information," and the testing information would generally be excluded from evidence at trial, as it is more prejudicial than probative. (*Id.* at 24). Defendants respond by asserting "Plaintiff's objections" are better made in motions in limine and/or cross-examination than this motion to strike. (Dkt. No. 63 at 15). Defendants argue that Rodriguez's testimony concerning Plaintiff being under the influence is supported by Plaintiff's wife's testimony to LPD and Plaintiff's toxicology report. (*Ibid.*). Defendants do not provide additional arguments or authority to support Rodriguez's assertions.

Expert evidence is admissible and permitted where such "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue ...," such testimony must be "based on sufficient facts or data," be the "product of reliable principles and methods, and reveal that ... the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. In this endeavor, the trial judge becomes the "gatekeeper" to determine whether any such evidence is reliable or trustworthy. *Daubert*, 509 U.S. at 597 (1993). The qualified immunity analysis is limited to "the facts that were knowable to the defendant officers' at the time they engaged in the conduct in question." *White v. Pauly*, 580 U.S. 73, 77 (2017). "Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it —are not relevant." *Hernandez v. Mesa*, 582 U.S. 548, 554 (2003); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)) ("An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight.")

**\*8** The Court agrees with Plaintiff. Rodriguez's testimony regarding mind-altering substances should be excluded because it was information that became known to the officers after the fact. In his expert report, Rodriguez states: "Officers Guajardo and Cantu did not know who [Plaintiff] was at the time and/or why he was evading. Officers Guajardo and Cantu were aware that Officer Pruneda observed [Plaintiff] slumped over ... therefore, they did not know whether [Plaintiff] was under the influence of mind-altering drugs." (Dkt. No. 53-2 at 15). Although Rodriguez highlights Plaintiff's blood analysis report from the hospital, which allegedly confirms that Plaintiff was under the influence of mind-altering drugs, this was information not known to Officer Cantu or Officer Guajardo at the time of the incident. (*Id.* at 31). Additionally, during his deposition, when asked if

anyone knew whether Plaintiff had consumed mind-altering drugs, Rodriguez answered no, but stated that he assumed so based on Plaintiff's erratic driving. (Dkt. No. 53-3 at 31). There is no evidence that Officer Guajardo or Officer Cantu knew whether Plaintiff was under the influence of drugs when they were actively pursuing him or during the shooting. The evidence offered of Plaintiff's subjective state of mind is simply not relevant.

Additionally, Rodriguez bases his testimony on a medical test that detected drug metabolites in Plaintiff's system after the shooting. (*See* Dkt. No. 53 at 23). However, there is no evidence explaining how levels of the metabolites found in Plaintiff's blood affect a person's behavior—whether they act as a sedative, a stimulant, or whether they affect a person's ability to understand and respond to commands. *See Cuellar v. Hernandez*, No. 5:17-CV-76, 2019 WL 3321930, at \*4 (S.D. Tex. Feb. 8, 2019). Rodriguez is essentially making the general statement that Plaintiff was acting like a person on drugs, with no further basis or explanation for how the drugs found in his system would contribute to his behavior. Rodriguez's opinion on Plaintiff's intoxication exists alongside the possibility that Plaintiff was suicidal, or simply had the bad intention to cause the officers harm. Rodriguez's opinion is in the nature of speculation rather than a reliability.

Ultimately there is a lack of evidence explaining the findings of the toxicology report which might otherwise support its probative value. The Court finds that even if the information in Rodriguez's expert report was determined to be relevant, its probative value is substantially outweighed by a danger of unfair prejudice. *See* FED. R. EVID. 403. Thus, the portion of Plaintiff's motion requesting exclusion of Rodriguez's testimony about the presence of mind-altering substances in Plaintiff's system will be granted in its entirety.

### D. Rodriguez's Opinions about Science are Unreliable and Inadmissible.

Lastly, Plaintiff moves to exclude Rodriguez's testimony about science-related subjects, such as tunnel vision, "fight or flight syndrome," and audio exclusion. According to Plaintiff, Rodriguez testified that these opinions were supported by "the Force Science website and information from" that website.[1] (Dkt. No. 53 at 25). Rodriguez opined, based on the website, that "under high-stress situations ... you[r] peripheral visual [sic] goes from 180, roughly, to about three

to four degrees." (*Ibid.*). Rodriguez also testified that officers "normally" suffer from "auditory exclusion" and "tunnel vision" in situations like this. (*Ibid.*). Rodriguez testified that his opinions are based on research, but failed to identify the sources he relied upon. Plaintiff objects to these opinions on three grounds: 1) Rodriguez's quasi-scientific opinions are not reliable; 2) Rodriguez is not qualified to opine on psychology, neurology, or human factors; and 3) Rodriguez's opinions about officer response time, perception, and memory are untimely because they were not disclosed prior to his deposition. (*See* Dkt. No. 53 at 26–29).

It is Defendants' burden to demonstrate by a preponderance of the evidence that the testimony is relevant to an issue in the case and the testimony is reliable. *Daubert*, 509 U.S. at 590–91; FED. R. EVID. 702. Defendants have failed to respond or address Plaintiff's argument to exclude Rodriguez's testimony as to these subjects, and thus Defendants have failed to meet their burden that Rodriguez's testimony as to these topics is admissible. In fact, Defendants' wholesale failure to brief this argument in the district court results in a waiver of the argument. *JMCB, LLC v. Bd. of Commerce & Industry*, 336 F. Supp. 3d 620, 634 (M.D La. 2018). Thus, Defendants have waived this argument before the Court. Plaintiff's motion to exclude these opinions will be granted for the reasons discussed below.

**\*9** Defendants have failed to carry their burden to demonstrate these opinions are more reliable than not. *See Daubert*, 509 U.S. at 590–91. Once the movant properly challenges an expert's testimony, the party offering the expert then has the burden to prove by a preponderance of the evidence that the expert's testimony is reliable. A party should support its response with an affidavit of the challenged expert, clarifying any confusion stemming from his deposition, and otherwise explaining why his opinions are reliable. *Ambrosino v. Labarraque*, 101 F.3d 129, 131–32 (D.C. Cir. 1996). Rodriguez has not supported his opinions with any research or evidence. Rodriguez has merely made general references to the existence of research and websites, without providing authors, citations, or sources. (*See* Dkt. No. 53-3 at 41–42). These sweeping references deprive the Court of the ability to determine whether the research or sources are peer-reviewed, authoritative, or reliable.

Further, Defendants have not disputed their failure to timely disclose these challenged opinions under Federal Rule of Civil Procedure 26(a)(2). The pretrial expert disclosures provided by Rule 26 require a party to disclose the identity

of any expert witness it may use at trial. *See* FED. R. CIV. P. 26(a)(2)(A). The disclosure must be accompanied by a written report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." FED. R. CIV. P. 26(a)(2)(B). The report must contain,

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B)(i). The failure to comply with Rule 26(a) is the disallowance of that information or witness to supply evidence for the case "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c). In determining whether the failure was justified or harmless, the Fifth Circuit has considered four factors: 1) the explanation for noncompliance; 2) the prejudice to the other party of allowing the witness; 3) the possibility of curing the prejudice with a continuance; and 4) the importance of the witness's testimony. *See Paz. v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 390 (5th Cir. 2009). Here, Defendants have wholly failed to disclose any of the evidence or research used by Rodriguez in his testimony by the expert designation deadline, which was June 15, 2023, (*See* Dkt. No. 15 at 1). The challenged opinions were not included in the expert report. Rodriguez briefly discussed them in his deposition on August 14, 2023, after the deadline. This is an untimely disclosure of the facts or data considered by Rodriguez in forming his opinions on these topics.

Lastly, Rodriguez's designation as an expert witness is deficient under Federal Rule of Civil Procedure 26(a)(2)(C). Defendants failed to timely produce the underlying materials

and sources used to support Rodriguez's opinions. Rule 26(a)(2)(C) requires a party to provide in its disclosure of expert testimony a statement of "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C). Where a party fails to provide information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Rodriguez did not detail any literature used to support his testimony in his expert report. Instead, he disclosed the testimony for the first time in his deposition but was still unable to provide sources or studies which he relied upon to make his findings. Defendants have not met their burden to show that their failure to timely and properly disclose these expert opinions and the basis for the opinions was substantially justified or harmless.

 **\*10**  In conclusion, the Court finds that Defendants have failed to meet their burden to prove that the challenged "scientific" opinions of Rodriguez are reliable. The Court further finds that Defendants' failure to timely and properly disclose the facts and opinions for Rodriguez was harmful and not substantially justified. As a result, Plaintiff's motion to exclude Rodriguez's scientific opinions and testimony will be granted.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Strike and Exclude Albert Rodriguez, (Dkt. No. 53), is **GRANTED in part** and **DENIED in part**. The Court excludes Rodriguez's opinions as discussed in this Order. The Court **DENIES** Plaintiff's request to exclude Rodriguez from testifying in his entirety.

It is so **ORDERED**.

**All Citations**

Slip Copy, 2023 WL 9312081

### Footnotes

1    Rodriguez references the "Force Science" website during his deposition for the first time but does not provide the website's URL or any other identifying feature. (*See* Dkt. No. 53-3 at 11, 12, 20, 24, 42).

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.