2008 WL 656513
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Houston Division.

David SEITZ and Microtherm, Inc., Plaintiffs,

v.

ENVIROTECH SYSTEMS
WORLDWIDE INC., et al., Defendants.

Civil Action No. H-02-4782.
|
March 6, 2008.

**Attorneys and Law Firms**

Loren G. Helmreich, Browning Bushman PC, Steve A. Bryant, Steve A. Bryant & Associates, Houston, TX, for Plaintiffs.

D. Scott Hemingway, Hemingway & Hansen LLP, Dallas, TX, for Defendants.

**MEMORANDUM AND ORDER**

LEE H. ROSENTHAL, District Judge.

**\*1** In 2002, David Seitz and Microtherm, Inc. (together, "Seitz") sued Envirotech Systems Worldwide, Inc. and Envirotech of Texas (together, "Envirotech"). Seitz alleged that the Envirotech ESI-2000 tankless water heater infringed four patents: U.S. Patent No. 5,886,880 (the ′880 Patent), U.S. Patent No. 6,080,971 (the ′971 Patent), U.S. Patent No. 5,216,743 (the ′743 Patent), and U .S. Patent No. 6,246,831 (the ′831 Patent). Seitz also alleged that Envirotech engaged in unfair competition through false advertising, in violation of the Lanham Act, 15 U.S.C. § 1125. In a previous memorandum and order, this court granted Envirotech's motion for summary judgment on the Lanham Act claims. (Docket Entry No. 152). This memorandum and order addresses the following motions:

- Seitz has moved to strike reports by Envirotech's expert witness, Dr. Jerome Butler, on the ground that, or to the extent that, Envirotech's attorney prepared them. (Docket Entry No. 181).

- Envirotech has moved to strike Seitz's opinion on damages and has moved for summary judgment on the issue of lost profits. (Docket Entry No. 166).

- Envirotech has moved for summary judgment that the ESI-2000 product does not infringe the ′743 Patent and the ′831 Patent. (Docket Entry No. 157).

- Envirotech has moved for reconsideration of its motion to dissolve the preliminary injunction. (Docket Entry No. 168).

Based on a careful consideration of the pleadings, the motions, responses, and replies, the record, and the applicable law, this court denies Seitz's motion to strike Dr. Butler's testimony, denies Envirotech's motion to strike Seitz's damages opinion and motion for summary judgment on lost profits, denies Envirotech's motion for summary judgment for noninfringement as to Patent Nos. ′743 and ′831, and grants Envirotech's renewed motion to dissolve the preliminary injunction

The reasons for these rulings are explained below. A hearing is set on Envirotech's motions for summary judgment on invalidity and noninfringement and on Seitz's motion to disqualify Envirotech's counsel, for **April 15, 2008, at 2:00 p.m.**

**I. Seitz's Motion to Strike Dr. Butler's Testimony**
Seitz has moved to strike the testimony of Envirotech's expert, Dr. Jerome Butler, on the ground that Envirotech's attorney rather than Dr. Butler prepared the reports he signed under Rule 26(a)(2) (B). Alternatively, Seitz has moved to strike those portions of the reports apart from the opinions that were added to drafts provided by the office of Seitz's attorney. (Docket Entry No. 181). Envirotech responded, (Docket Entry No. 183), and Seitz replied, (Docket Entry No. 184).

Under Rule 26(a)(2)(B), as amended in 1993, a party's expert designation "must be accompanied by a written report" that is "prepared and signed by the witness." The report must contain a complete statement of the opinions the witness will express and the basis and reasons for them, the data or other information considered by the witness, the witness's qualifications, a list of the cases in which the witness has testified as an expert, and the compensation paid to the expert for the work in the case. FED. R. CIV. P. 26(a)(2) (B). The 1993 Committee Note states that "Rule 26(a)(2)

(B) does not preclude counsel from providing assistance to experts in preparing the reports, and indeed, with experts such as automobile mechanics, this assistance may be needed. Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness." FED. R. CIV. P. 26 Committee Note (1993).

 **\*2** Several courts have addressed the permissible amount of attorney involvement in drafting an expert report. These courts conclude that as long as the substance of the opinions is from the expert, the attorney's involvement in the written expression of those opinions does not make them inadmissible. In *Manning v. Crockett,* No. 95 C 3117, 1999 WL 342715, at \*3 (N.D.Ill. May 18, 1999), the court denied a motion to strike an expert based on the argument that he did not prepare the majority of his report himself. The court's approach recognized that "some attorney involvement in the preparation of an expert report is permissible" as long as the expert "substantially participate[s] in the preparation of his report." The court summarized its approach by stating that "the assistance of counsel contemplated by Rule 26(a)(2)(B) is not synonymous with ghost-writing." *Id., quoted in Trigon Ins. Co. v. United States,* 204 F.R.D. 277, 293 (E.D.Va.2001). "Preparing the expert's opinion from whole cloth and then asking the expert to sign it if he or she wishes to adopt it conflicts with Rule 26(a) (2)(B)'s requirement that the expert 'prepare' the report. Preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement." *Id.* "Allowing an expert to sign a report drafted entirely by counsel without prior substantive input from an expert would read the word 'prepared' completely out of the rule." *Id.* The party seeking to strike an expert's testimony has the burden of proving that the report was "ghost-written." *Long Term Capital Holdings v. United States,* No. 01-CV1290(JBA), 2003 WL 21269586, at \*4 (D.Conn. May 6, 2003); *Trigon,* 204 F.R.D. at 295.

Seitz contends that Envirotech's counsel prepared the substance of Dr. Butler's expert reports and declarations. Envirotech acknowledges that the first drafts of Dr. Butler's expert reports and declarations were typed in counsel's office but asserts that the substantive content was based on what Dr. Butler communicated to Envirotech's counsel. "[T]he initial drafts of his reports were typed by office personnel at counsel's office *after* Dr. Butler reviewed the relevant materials, had numerous meetings with counsel, formed his own opinions in this matter, and articulated those opinions to counsel's office personnel." Dr. Butler then revised the drafts

of the reports by adding, deleting, and modifying content. (Docket Entry No. 183 at 2-3, 9-10).

In his October 19, 2007 deposition, Dr. Butler testified about how his August 2006, September 2006, and August 2007 expert reports were prepared. Dr. Butler stated that he reviewed relevant materials, developed opinions, and discussed those opinions with counsel in face-to-face and telephone meetings before any initial written drafts were created. (Docket Entry No. 183, Ex. A at 222-25). Dr. Butler stated that he "wrote some of the material in the original report.... But not all of the material." (*Id.* at 7). When asked who wrote the remainder of the first draft of the expert reports, Dr. Butler explained that "Mr. Hemingway's office prepared the-the documents." (*Id.* at 8). He stated that the expert reports reflected the opinions he had previously expressed to counsel. (*Id.* at 222-25). Dr. Butler asserted that he altered the initial draft reports that had been prepared by Envirotech's counsel's office. He stated that he "had a template to work with, and I modified it to reflect my opinions." (*Id.* at 9). He stated that "I actually added material, and I think-I crossed out some material." (*Id.* at 223).

 **\*3** Envirotech produced fifteen of Dr. Butler's drafts of his reports. (*Id.* at 25). Envirotech did not produce a copy of the original August 2006 draft report. (*Id.* at 8-9). Dr. Butler stated that the original draft report was about ten pages long and grew by one or two pages after his additions, deletions, and other changes. (*Id.* at 11). Dr. Butler stated that there were "probably a couple" drafts of the August 2006 report. (*Id.* at 53-54). Dr. Butler identified two of the draft reports as being the "templates" for the September 2006 and August 2007 reports. (*Id* . at 54-55).

The drafts show that material was added, deleted, and reorganized, but the fundamental substance of the initial drafts was not altered. The record shows that Dr. Butler first communicated his opinions, the draft was prepared in counsel's office based on those communications, and Dr. Butler revised the drafts.

Envirotech has not met its burden of showing that Dr. Butler had so little involvement in preparing the reports of his opinions as to warrant striking his opinions. This is not a case in which an expert signed "a report drafted entirely by counsel without prior substantive input from an expert." *See Manning,* 1999 WL 342715, at \*3. The motion to strike Dr. Butler's expert testimony is denied.

## II. The Motion to Strike Seitz's Damages Opinion and Motion for Summary Judgment on Lost Profits

Envirotech has moved to strike Seitz's opinion on damages and has moved for summary judgment on the issue of lost profits. (Docket Entry Nos. 166, 167). Seitz responded, (Docket Entry No. 173), and Envirotech has replied, (Docket Entry No. 176).

### A. Seitz's Expert Opinion

Seitz provided an "Expert Opinion" dated August 14, 2006. He asserted $762,750 in damages for patent infringement and for violations of the Lanham Act. [1] (Docket Entry No. 167, Ex. A at 1). This amount was based on $175,500 in lost-profit damages due to infringement, $263,250 in reasonable royalties from sales of the infringing product, and $324,000 in damages for violations of the Lanham Act. (*Id.*). The infringement damages were based on Seitz's conclusion that his company, Microtherm, would have enjoyed at least 25% of Envirotech's sales from 2000 to 2005. Seitz based this conclusion on the assumption that Microtherm had a 25% market share of the electric whole-house tankless water heater business. [2] Although other companies also sold whole-house tankless water heaters, only Microtherm and Envirotech offered comparable products. Seitz also assumed that both Envirotech and Microtherm charged an average selling price of $450 per unit and made gross profits of 40%. Seitz used Envirotech's statement that it sold between 3,800 and 4,000 units to estimate Envirotech's sales at 3,900 units. Seitz calculated lost profits by multiplying the average profit per unit sold by the number of Envirotech's sales that Seitz predicts Microtherm would have made in the absence of the infringement (.40 x 450 x .25 x 3,900). (Docket Entry No. 167, Ex. A at 1, 3; Docket Entry No. 173, Ex. D at 1, 3; *Id.,* Ex. E at 1).

**\*4** Seitz calculated a royalty rate by using a figure of 50% of the profits. [3] Seitz noted the fifteen factors for determining a reasonable royalty rate outlined in *Georgia Pacific* and emphasized that "[i]t was not my intention to license to others but to maintain a ownership relationship in a company with whom I granted an 'exclusive license.'" Seitz calculated the royalty rate damage figure by multiplying this percentage by the average profit per unit sold, and applied this to Envirotech's sales from 2000-2005, excluding the 25% of Envirotech sales that Seitz predicts Microtherm would have made in the absence of infringement, which Seitz already included in his lost profits calculation (.50 x .40 x 450 x 3,900

x .75). (Docket Entry No. 167, Ex. A at 1, 3; Docket Entry No. 173, Ex. D at 1, 3; *Id.,* Ex. E at 1).

Seitz asserts that he is qualified to render expert opinions on lost profits and reasonable royalty rates because of his experience in financial underwriting and his years of work in the electric tankless water heater business. Seitz has over twenty years of experience in corporate finance and mortgage banking for residential and commercial businesses. His principal function during this time was to prepare financial underwriting and secure financing based on his underwriting analysis, and most of this work was related to financing buildings. (Docket Entry No. 167, Ex. A at 3). Seitz has been involved in the electric water heater business for close to twenty years, including as president and CEO of Microtherm and its predecessor company. Seitz designed and marketed water heaters and solicited investors. His work involved preparing market research, market projections, and market share information. Part of his job as CEO of Microtherm is to stay abreast of market trends and competitors' products, which requires him to study market share reports and market research performed by companies such as DuPont. (Docket Entry No. 173, Ex. A at 3). Envirotech contends that Seitz is not qualified to offer an opinion on damages under Federal Rule of Civil Procedure 702, that he has not provided any reliable or supported opinions regarding damages, and that his analysis is incorrect as a matter of law. (Docket Entry No. 167 at 2).

Rule 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The trial judge must determine whether a designated witness is qualified to give the expert opinion he seeks to express. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 156, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The burden is on the party offering the expert testimony to establish by a preponderance of the evidence that it is admissible. *Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir.1998) (en banc). The party offering the challenged expert opinions need not, however, prove "that the expert's testimony is correct." *Id.* The district court must

also make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid [the reliability criterion] and of whether the reasoning or methodology can be applied to the facts at issue [the relevance analysis]." *Skidmore v. Precision Printing & Packaging, Inc.,* 188 F.3d 606, 617 (5th Cir.1999) (quoting *Daubert,* 509 U.S. at 592-93). The district court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152. The court "must ensure that the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equip. Corp.,* 394 F.3d 320, 325 (5th Cir.2004).

**\*5** Seitz's experience as a financial underwriter does not qualify him to give testimony on lost profits from patent infringement of, or reasonable royalty rates for patent rights to, the water-heater technology at issue. An expert's qualifications must be relevant to the issues in a case. *See Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir.2007) (finding that a polymer scientist was not qualified to give an expert opinion in a tire malfunction case because the scientist had no experience in applying polymer science to tires); *Wilson v. Woods,* 163 F.3d 935, 938 (5th Cir.1999) (finding that a witness with a general mechanical engineering background was not qualified to offer expert testimony on a car accident); *Houston-Hines v. Houston Indep. Sch. Dist.,* No. Civ.A. H-04-3539, 2006 WL 897209, at \*3 (S.D.Tex. Apr.4, 2006) ("Although Mr. Simmons could conceivably be found qualified in a different case involving routine law enforcement activities, his lack of training and experience in a school situation leaves him unqualified to serve as an expert in this particular case.") Seitz's financial underwriting work did not involve calculating lost profits from patent infringement or reasonable royalty rates. Beyond simply reciting that he reviewed the *Georgia Pacific* factors, Seitz does not explain how they support the 50% royalty rate figure. *See Minebea Co. v. Papst,* No. Civ.A. 97-0590(PLF), 2005 WL 1459704, at \*3 (D.D.C. June 21, 2005) (refusing to allow an expert "to testify as to the calculation of a reasonable royalty because it is unclear what facts or data he has relied upon and his methodology is unreliable."). The record does not disclose sufficient facts or analysis to qualify Seitz's testimony for admission under Rule 702.

Even if Seitz's opinion on lost profits and reasonable royalties is inadmissible as an expert opinion under Rule 702, he may provide a lay opinion on lost profits and reasonable royalty rates. "[A] layman can under certain circumstances express an opinion even on matters appropriate for expert testimony." *Miss. Chem. Corp. v. Dresser-Rand Co.,* 287 F.3d 359, 373 (5th Cir.2002) (quoting *Soden v. Freightliner Corp.,* 714 F.2d 498, 511 (5th Cir.1983)) (quotations omitted). Seitz's experience in and personal knowledge of the water-heater market qualifies him to give a lay opinion on lost profits or reasonable royalty rates based on his personal knowledge and experience.

Under Federal Rule of Evidence 701, "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The third element of Rule 701, which requires that lay opinion not be based upon scientific, technical, or other specialized knowledge within the scope of Rule 702, was added in 2000 "to prevent litigants from skirting the *Daubert* standard or the expert disclosure guidelines by introducing expert opinion testimony as lay opinion testimony." *Hynix Semiconductor Inc. v. Rambus Inc.,* Nos. CV-00-20905 RMW, C-05-00334 RMW, C-06-00244 RMW, 2008 WL 504098, at \*3 (N.D.Cal. Feb.19, 2008) (citing FED.R.EVID. 701 Committee Note (2000)). However, "[w]hile the text of Rule 701 appears unflinching in separating lay opinions from expert opinions, the advisory committee note regarding the amendment blinks ." *Id.* The Committee Note "suggest[s] that the amended rule preserves certain prior practices, for example, permitting business owners to opine on expected profits or the value of property." *Id .* The Committee Note approvingly refers to cases in which "courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert," reasoning that "[s]uch opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." FED.R.EVID. 701 Committee Note (2000). The Committee Note explicitly states that "[t]he amendment does not purport to change this analysis." *Id.* After reviewing the 2000 amendment to Rule 701 and the preexisting case law, one court concluded that despite the revised Rule's "unflinching" separation of lay and expert opinion, "the rules of evidence have long permitted a

person to testify to opinions about their own businesses based on their personal knowledge of their business ... and the court does not believe that the revised Rule 701 was meant to work a sea change with respect to that form of personal testimony." *Hynix Semiconductor Inc.,* 2008 WL 504098, at \*4.

**\*6** Courts have allowed lost-profit or lost-sales testimony by a lay witness if the witness has direct knowledge of the business accounts underlying the profit calculation. *See Miss. Chem. Corp.,* 287 F.3d at 373-74 (allowing Rule 701 testimony by director of risk management and property taxation concerning the amount of lost profits caused by a defective compressor train); *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1175 (3d Cir.1993) (allowing Rule 701 testimony by the owner of a corporation as to the amount of lost profits); *In re Merritt Logan, Inc.,* 901 F.2d 349, 359 (3d Cir.1990) (allowing Rule 701 testimony by the principal shareholder of the plaintiff concerning that company's lost profits); *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 265 (2d Cir.1995) ("[A] president of a company, such as Cook, has 'personal knowledge of his business ... sufficient to make ... him eligible under Rule 701 to testify as to how lost profits could be calculated.' ") (internal citations and quotations omitted).

Seitz's opinion on damages, based on his personal knowledge of his company's sales and the market for tankless electric water heaters, is admissible as a lay opinion. The motion to strike Seitz's damages opinion is denied.

### B. Envirotech's Motion for Summary Judgment on Lost Profits

The award of damages for patent infringement is governed by 35 U.S.C. § 284 (2000), which provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." Under the statute, there are two different possible measures of damages in a patent infringement case. "If the record permits the determination of actual damages, namely, the profits the patentee lost from the infringement, that determination accurately measures the patentee's loss. If actual damages cannot be ascertained, then a reasonable royalty must be determined." *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078 (Fed.Cir.1983). The amount of damages resulting from patent infringement is a question of fact on which the patent holder bears the burden of proof.

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214, 1217 (Fed.Cir.1993).

"To recover lost profits as opposed to royalties, a patent owner must prove a causal relation between the infringement and its loss of profits. The patent owner must show that 'but for' the infringement, it would have made the infringer's sales." *Id.* at 1218; *accord Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964); *Riles v. Shell Exploration and Prod. Co.,* 298 F.3d 1302, 1311 (Fed.Cir.2002). "An award of lost profits may not be speculative .... the patent owner must show a reasonable probability that, absent the infringement, it would have made the infringer's sales." *BIC Leisure Products,* 1 F.3d at 1218. "This formulation requires the patentee to reconstruct the market, by definition a hypothetical enterprise, to project economic results that did not occur." *Riles,* 298 F.3d at 1311. "To prevent the hypothetical from lapsing into pure speculation, this court requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Grain Processing Corp. v. Am. Maize-Products Co.,* 185 F.3d 1341, 1350 (Fed.Cir.1999).

**\*7** A "reasonable royalty may be based upon an established royalty, if there is one, or if not upon a hypothetical royalty resulting from arm's length negotiations between a willing licensor and a willing licensee." *Hanson,* 718 F.2d at 1078. "Where an established royalty rate for the patented inventions is shown to exist, the rate will usually be adopted as the best measure of reasonable and entire compensation." *Id.* (quoting *Tektronix, Inc. v. United States,* 213 Ct.Cl. 257, 552 F.2d 343, 347 (1977)) (quotations omitted). If there is no established royalty rate, the reasonable royalty rate must be based on "a hypothetical negotiation between the patentee and the infringer at a time before the infringement began." *Riles,* 298 F.3d at 1311. "[T]his analysis necessarily involves some approximation of the market as it would have hypothetically developed absent infringement" and "requires sound economic and factual predicates." *Riles,* 298 F.3d at 1311; *see also Crystal Semiconductor,* 246 F.3d 1336 (Fed.Cir.2001); *Shockley v. Arcan, Inc.,* 248 F.3d 1349 (Fed.Cir.2001). "A reasonable royalty determination for purposes of making a damages evaluation must relate to the time infringement occurred, and not be an after-the-fact assessment." *Riles,* 298 F.3d at 1313.

Seitz has submitted competent summary judgment evidence on the issue of lost profits. Seitz's opinion explains the causal

relationship between the infringement and the loss of profits. *See BIC Leisure Prods., Inc.,* 1 F.3d at 1218. This opinion is not speculative but is based on Seitz's personal knowledge of, and experience with, the market and the competing products. The flaws Envirotech asserts are present in the calculation are appropriate subjects for cross-examination.

The motion for summary judgment on lost profits is denied.

### III. Envirotech's Motion for Summary Judgment for Noninfringement on Patent Nos. ′743 and ′831

In the first amended complaint, Seitz deleted infringement claims as to the ′743 Patent and the ′831 Patent that had been asserted in the original complaint. (Docket Entry Nos. 1, 136). Before Seitz filed the amended complaint, Envirotech counterclaimed for a declaratory judgment as to noninfringement and moved for summary judgement that the ′743 and ′831 Patents were not infringed. On June 19, 2007, this court denied Envirotech's motion for summary judgment as to noninfringement of the ′743 and ′831 Patents because Envirotech did not counterclaim for a declaratory judgment in its answer to the amended complaint, which superseded the earlier answer containing the counterclaim. (Docket Entry No. 152). In doing so, this court noted that the record showed no evidence supporting a claim of infringement of the ′743 and ′831 Patents and recognized that Seitz's expert witness acknowledged in two reports that the materials he had reviewed provided no basis to find that Envirotech's ESI-2000 infringed the ′743 and ′831 Patents. This court granted Envirotech leave to amend its answer to add a counterclaim for declaratory judgment and to reassert the motion for summary judgment.

 **\*8** On August 3, 2007, Envirotech filed an amended answer containing a counterclaim for declaratory judgment as to noninfringement of the ′743 and ′ 831 patents, (Docket Entry No. 159 at 16-17), and again filed for summary judgment as to noninfringement of the ′743 and ′831 patents, (Docket Entry Nos. 157, 158). Seitz has responded, (Docket Entry No. 160), and Envirotech has replied, (Docket Entry No. 161).

Seitz has "conceded to this Court that [he] is unable to prove by a preponderance of the evidence that the software code provided to the Plaintiffs infringed all the features of any independent claims of the ′743 and ′831 patents." (Docket Entry No. 160 at 2). It is undisputed that Seitz has not identified or presented evidence to support a finding of infringement for these patents. Seitz argues that this court should not grant summary judgment because there is no

"justiciable controversy." (*Id.* at 2). A declaratory-judgment counterclaim may be brought only to resolve an "actual controversy" between "interested" parties. 28 U.S.C. § 2201(a). Seitz states that the ESI-2000 is no longer being manufactured and that he has "stipulated that [he] will not sue the ESI for infringement of these two patents by the ESI 2000." (Docket Entry No. 160 at 3). Seitz recognizes that "dropping these two patents act[s] as an estoppel to prevent Plaintiffs from later contending that the ESI-2000 does infringe either the ′743 or ′831 patent." *Id.* at 2.

Justiciability requires "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1058 (Fed.Cir.1995). The "purpose of the two-part test is to determine whether the need for judicial attention is real and immediate" so that a federal court has jurisdiction, or whether it is "prospective and uncertain of occurrence" and no jurisdiction is present. *Id.* " '[P]resent activity' might imply that pre-complaint conduct is not relevant, when it is: Just as a patent-holder can sue based on past acts that no longer continue, a declaratory-judgment plaintiff can sue using past acts as the jurisdictional predicate for the suit, provided the plaintiff has the requisite reasonable apprehension as to these past acts." *Sierra Applied Sciences, Inc. v. Advanced Energy Indus., Inc.,* 363 F.3d 1361, 1376 (Fed.Cir.2004) (citing *Super Sack,* 57 F.3d at 1058).

Seitz cites *Augustine Medical, Inc. v. Gaymar Industries, Inc.,* 181 F.3d 1291 (Fed.Cir.1999), as support for the argument that summary judgment is not appropriate with respect to the ′743 and ′831 patents because there is no longer an "actual controversy" between the parties with respect to these claims. In *Augustine Medical,* the court stated that a "stipulation and dismissal of claims with prejudice eliminated any potential case or controversy and thereby mooted [the opposing party's] claim of invalidity." *Id.* at 1304. Seitz has not dismissed the infringement claim as to the ′743 and ′831 Patents with prejudice, but he has deleted those claims from the amended complaint and stipulated that he "will not sue the ESI for infringement of these two patents by the ESI 2000." In *Super Sack Manufacturing Corp. v. Chase Packaging Corp.,* 57 F.3d 1054 (Fed.Cir.1995), the court found no justiciable controversy when a patentee unconditionally agreed that he would not claim that a line of the defendants' products infringed a patent. *Super Sack* supports a finding that there is

no justiciable controversy in the present case with respect to the ′743 and ′831 Patents.

**\*9** The fact that Seitz continues to blame Envirotech for not producing the information that might have enabled him to show infringement does not detract from Seitz's stipulation that he will not press any claim that the ESI-2000 infringes the ′743 and ′831 Patents. Envirotech has no reasonable apprehension that it will be sued for infringing the ′743 and ′831 Patents based on its production and sale of the ESI-2000. There is no case or controversy as to that claim.

Envirotech's motion for summary judgment for noninfringement on the ′743 and ′ 831 patents is denied as moot.

### IV. Envirotech's Renewed Motion to Dissolve the Preliminary Injunction

On December 5, 2005, after an evidentiary hearing, this court entered a preliminary injunction order. (Docket Entry No. 47). That order enjoined Envirotech from marketing or selling the ESI-2000 heater or other heater using technologies that infringed Seitz's patents. After Envirotech moved to dissolve or modify the preliminary injunction, (Docket Entry No. 123), this court denied the motion to dissolve but granted the motion to modify, conditioned on Seitz filing: (1) a proposed amended order that described, with specificity, the technologies used in, or the parts of, the accused ESI-2000 and related devices that allegedly infringe the ′880 and ′971 Patents; and (2) a memorandum in support of the proposed amended preliminary injunction order, explaining the specific description and citing to and analyzing the evidence in the record supporting the infringement. (Docket Entry No. 153).

On June 29, 2007, Seitz filed a memorandum in support of an amended preliminary injunction. On September 20, 2007, Envirotech responded to Seitz's proposed modified injunction memorandum and moved for reconsideration of the motion to dissolve the preliminary injunction. (Docket Entry No. 168). Seitz responded to Envirotech's motion for reconsideration of the motion to dissolve the preliminary injunction and replied to

Envirotech's response to Seitz's proposed modified injunction memorandum. (Docket Entry No. 172). Envirotech replied. (Docket Entry No. 177).

The preliminary injunction issued in December 2005 states in part that Envirotech may not market or sell its ESI-2000 water heater, including any configurations, any other heater utilizing parts of the ESI-2000, and any other heater "utilizing in whole any part any technology embodied in the Model ESI 2000 heater." The quoted portion of the injunction order contains a typographical error, pointed out in Envirotech's original motion to dissolve the injunction. In that motion, Envirotech argued that, in addition to the need to correct the typographical error and clarify the ambiguity it created, the injunction should be dissolved because there had been no showing of infringement, the patents were invalid, the injunction was ambiguous for other reasons, Seitz had received a large damage award for lost sales of the same water heaters that were allegedly infringed, and Envirotech had suffered financially. (Docket Entry No. 123). Seitz responded by arguing that the injunction was clear and was properly entered. Seitz pointed to Envirotech's use of the bankruptcy process to avoid disclosing evidence of its infringing activities in this lawsuit and argued that the patents were valid. Seitz also argued that modifying the injunction could not help Envirotech because the accused technologies were assigned to another company, and that the award of damages in an unrelated lawsuit was irrelevant. (Docket Entry No. 126).

**\*10** The injunction was based on an evidentiary hearing held in December 2005. (Docket Entry No. 51). At the conclusion of that hearing, this court found that Envirotech had abused the bankruptcy process to obstruct discovery in this case and to continue selling the ESI-2000. Documents admitted in the December 2005 hearing showed that Envirotech recognized the need for design changes in the ESI-2000 to avoid infringing Seitz's patents. When that injunction was entered, because of Envirotech's bankruptcy and the related stay, little discovery had taken place in this case. In the order denying the motion to dissolve and granting the order to modify, this court noted that discovery had proceeded and that Seitz and Envirotech both had more information about the accused devices and the alleged infringement.

This court found that the order should be modified to clarify that the injunction properly prohibits only the use of technologies in the accused devices that infringe the ′971 and ′880 Patents. Such modification is necessary to comply with Rule 65(d) of the Federal Rules of Civil Procedure, which requires that an injunction order be "specific in terms" and "describe in reasonable detail" the acts restrained. In patent cases, an injunction should "limit its prohibition to the manufacture, use, or sale of the specific infringing device, or to infringing devices no more than colorably

different from the infringing device." *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.,* 986 F.2d 476, 479-80 (Fed.Cir.1993). This court directed Seitz to:

> provide a specific description of the technologies and aspects of the accused devices that infringe the ′971 and ′880 Patents. No later than June 29, 2007, Seitz must submit a proposed modified injunction order that states with specificity the technologies used in, or the parts of, the accused ESI-2000 and related devices that infringe U.S. Patents Nos. 5,886,880 and 6,080,971. Seitz must also file a memorandum in support of the proposed order that explains the specific description and that cites to and analyzes the evidence in the record that supports the infringement he describes. Envirotech may respond no later than July 20, 2007. If appropriate, this court will enter a modified injunction order based on the parties' submissions.

(Docket Entry No. 153 at 5-6).

Seitz did not submit a proposed modified injunction order. Although Seitz's June 29, 2007 memorandum in support of an amended preliminary injunction cites evidence that allegedly supports a finding that the ESI-2000 and related products infringe the ′880 and ′971 Patents, the memorandum does not present a sufficiently specific and tailored preliminary injunction order. To the contrary, the memorandum incorrectly identifies one of the patents that was infringed. And the memorandum sets out the four components that are asserted to constitute the alleged infringement at an unacceptable level of generality and by referring to another document, a copy of the ′971 Patent itself. This does not provide sufficient notice of the prohibited

activity and does not meet the requirements of Rule 65. *See Seattle-First Nat'l. Bank v. Manges,* 900 F.2d 795, 799-800 (5th Cir.1990) (strictly construing the "no-reference" requirement of Rule 65(d) to require that the injunction order be capable of interpretation from the four corners of the order); *see also Dupuy v. Samuels,* 465 F.3d 757, 758 (7th Cir.2006) ("[Rule 65] requires that an injunction be a self-contained document rather than incorporate by reference materials in other documents."); *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.,* 84 F.3d 367, 371 (10th Cir.1996) (strictly construing the "no-reference" requirement of Rule 65(d)); *Thomas v. Brock,* 810 F.2d 448, 450 (4th Cir.1987) (same).

**\*11** The existing order cannot remain in place because it does not comport with Rule 65 of the Federal Rules of Civil Procedure for injunction orders or with the Federal Circuit standards for injunction orders specifically relating to patents. *See* FED. R. CIV. P. 65(d); *Additive Controls,* 986 F.2d at 479-80; *Manges,* 900 F.2d at 799-800. Seitz has not presented the court with an acceptable proposed modified injunction order.

The motion to dissolve the preliminary injunction is granted.

## V. Conclusion

This court denies Seitz's motion to strike Dr. Butler's testimony, denies Envirotech's motion to strike Seitz's damages opinion and motion for summary judgment on lost profits, denies as moot Envirotech's motion for summary judgment for noninfringement on Patent Nos. ′743 and ′831, and grants Envirotech's renewed motion to dissolve the preliminary injunction. Envirotech has also filed motions for summary judgment on patent invalidity and noninfringement as to the ′880 and ′971 patents, and Seitz has filed a motion to disqualify Envirotech's attorney, D. Scott Hemingway. This court will hold a hearing on these motions on **April 15, 2008, at 2:00 p.m.**

## All Citations

Not Reported in F.Supp.2d, 2008 WL 656513

---

**Footnotes**

---

1       This court has already granted summary judgment in favor of Envirotech on Seitz's Lanham Act claims. (Docket Entry No. 152).

2       In the section of the August 14, 2006 "Expert Opinion" in which he performed his damages calculations, Seitz stated that Microtherm would have enjoyed at least 25% of the sales made by Envirotech during the 2000-2005 period, but in another part of the opinion he stated that Microtherm would have had at least a 50% chance of making the sales made by Envirotech. (Docket Entry No. 167, Ex. A at 1, 4). Seitz used the 25% figure in the calculations. He also used this figure in an October 5, 2008 affidavit submitted with his response to the motion for summary judgment on damages and motion to strike. (Docket Entry No. 167, Ex. A at 1; Docket Entry No. 173, Ex. A at 4).

3       In his August 14, 2006 "Expert Opinion," Seitz stated that "Microtherm, Inc. should have enjoyed at least 25% of the sales made by Envirotech" and that "[r]easonable royalties based on same 25% profit participation is 20% of $90 x 2,925 = $263,250." (Docket Entry No. 173, Ex. D at 1). In a "Supplement to 'Expert Opinion Dates 8/15/06' " dated August 17, 2006, Seitz made the following correction: "Opinion of Damages: Line 8 reading 'Reasonable royalties based on same 25% profit participation is 20%' should read 'Reasonable royalties based on a 50% profit participation is 20%.' " (*Id.,* Ex. E at 1

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.