Smith v. City of Bastrop, Not Reported in Fed. Supp. (2021)

Case 4:21-cv-02473    Document 85-29    Filed 08/16/24 in TXSD    Page 1 of 8

2021 WL 148061
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Austin Division.

Carolyn SMITH, et al., Plaintiffs

v.

The CITY OF BASTROP, et al., Defendants

Case No. 1:19-CV-1054-RP
|
Signed 01/15/2021

**Attorneys and Law Firms**

Raymond E. White, Ethan Jacob Ranis, Richard D. Milvenan, McGinnis Lochridge and Kilgore, L.L.P., Austin, TX, for Plaintiffs.

Bradford Eugene Bullock, George Edward Hyde, Russell Rodriguez Hyde Bullock, LLP, Georgetown, TX, for Defendants The City of Bastrop, Connie Schroeder, Willie "Bill" Lewis Peterson, Drusilla Rogers, Lyle Nelson, Bill Ennis, Dock Jackson, Lynda Humble, Rick Womble, Michelle Dodson, Tabitha Pucek.

Carl R. Dawson, Ryan & Dawson, Houston, TX, for Defendant Forestar (USA) Real Estate Group, Inc.

Jeffrey Jackson Hobbs, Michael J. Whellan, Armbrust & Brown PLLC, Austin, TX, for Defendant TF Hunters Crossing, L.P.

**ORDER**

SUSAN HIGHTOWER, UNITED STATES MAGISTRATE JUDGE

**\*1** Before the Court are Plaintiffs' Motions to Exclude Defendants' Experts Julie Y. Fort (Dkt. 61) and Patrick R. Bourne (Dkt. 62), filed on October 5, 2020, and the associated response and reply briefs. The District Court referred the Motions and related filings to the undersigned Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

**I. Background**

This case arises out of allegedly illegal assessments that the City of Bastrop levied against property owners in a public improvement district. On October 28, 2019, Plaintiffs Carolyn Smith, The Village at Hunters Crossing, LLC, and Lirtex Properties, LLC filed suit against the "City Defendants," which are the City of Bastrop, Texas, the City Council members for the City of Bastrop, [1] and the Directors of Hunters Crossing Local Government Corporation, [2] and the "Developer Defendants," Forestar (USA) Real Estate Group, Inc. ("Forestar") and its successor-in-interest, TF Hunters Crossing, L.P. ("TFHC"). [3]

On September 11, 2001, the City of Bastrop passed a resolution creating the Hunters Crossing Public Improvement District ("PID"), pursuant to the Texas Public Improvement District Assessment Act, TEX. LOC. GOV'T CODE §§ 372.001-372.030 ("PIDA Act"). Dkt. 64-4. According to a Service and Assessment Plan ("SAP") adopted by a 2003 Ordinance, the PID levies assessments based on the assumed value of the property benefited by construction of the proposed public improvement, subject to adjustments for benefits received, as authorized by TEX. LOC. GOV'T CODE § 372.015. Dkts. 64-5, 64-6. In 2004, the City passed an ordinance amending the 2003 SAP due to "scrivener's and mathematical errors." Dkt. 64-7 at 2. The Defendants assert that, after the 2004 Ordinance, the City adopted other ordinances, resolutions, and budgets affecting the PID. Dkt. 71 at 43 n.153. Plaintiffs dispute that Defendants amended the PID assessments or allocations between 2004 and 2019. Dkts. 64 at 8, 71 at 18-25.

On September 24, 2019, the City adopted Resolution No. R-2019-86 and Ordinance No. 2019-40 (the "2019 Ordinance"), which allocated $14,151,436 in costs to the Developer Defendants as of 2020. Dkt. 64-16 at 21. The City also ratified an agreement between the City Defendants and the Developer Defendants in which the Developer Defendants would accept a reduced total payment of $11,961,260. *Id.* at 8. Plaintiffs assert that the 2019 Ordinance increased the SAP by nearly $2 million for cost overruns that had accrued in previous years and illegally included capitalized interest in the principal balance. Dkt. 64 at 2. Defendants assert that the 2019 Ordinance did not increase the 2003 assessment, but apportioned it on a parcel-by-parcel basis. Dkt. 71 at 2.

Case 4:21-cv-02473    Document 85-29    Filed 08/16/24 in TXSD    Page 2 of 8

Smith v. City of Bastrop, Not Reported in Fed. Supp. (2021)

**\*2** Plaintiffs seek declarations that the 2019 Ordinance is invalid and violates procedural and substantive due process under the United States and Texas Constitutions, and that the City Defendants have acted *ultra vires* in seeking to enforce it. Dkt. 55 at 16-17. Plaintiffs also ask the Court to enter a permanent injunction against enforcement of the 2019 Ordinance. *Id.* at 17-18. Finally, Plaintiffs assert that TFHC engaged in a civil conspiracy with the Bastrop City Council and Directors of the Hunters Crossing Local Government Corporation to cover up the City Defendants' statutory violations, and negligently misrepresented or omitted information related to the PID assessments. *Id.* at 18-20.

On September 22, 2020, the City Defendants and TFHC filed their Designations of Expert Witnesses, each identifying Julie Y. Fort and Patrick R. Bourne as testifying experts. Dkts. 56, 57. Plaintiffs seek to exclude the expert testimony and reports of Fort and Bourne in their entirety.

## II. Legal Standard

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993), the Supreme Court held that trial judges must ensure that scientific testimony or evidence is not only relevant, but also reliable. Subsequently, Rule 702 of the Federal Rules of Evidence was amended to provide that a witness

> qualified as an expert ... may testify ... in the form of an opinion ... if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting FED. R. EVID. 702). The Rule 702 and *Daubert* analysis applies to all proposed expert testimony, including nonscientific "technical analysis" and other "specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that (1) the expert is qualified; (2) the evidence is relevant; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997). The overarching focus of a *Daubert* inquiry is the "validity and thus evidentiary relevance and reliability of the principles that underlie a proposed submission." *Watkins*, 121 F.3d at 989 (quoting *Daubert*, 509 U.S. at 594-96). The proponent of expert testimony bears the burden of establishing the reliability of the expert's testimony. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016). Because the *Daubert* test focuses on the underlying theory on which the opinion is based, the proponent of expert testimony need not prove that the expert's testimony is correct, but rather that the testimony is reliable. *Moore*, 151 F.3d at 276. This determination of reliability includes a preliminary determination "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

Trial courts ordinarily apply four factors when considering the reliability of scientific evidence: (1) whether the technique can be or has been tested; (2) whether it has been subjected to peer review or publication; (3) whether there is a known or potential rate of error; and (4) whether the relevant scientific community generally accepts the technique. *Id.* This test of reliability is "flexible," and these factors "neither necessarily nor exclusively apply to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. "Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142.

 **\*3** Notwithstanding the testing of an expert's qualification, reliability, and admissibility, "the rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee's note to 2000 amendment. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. In addition, *Daubert*'s "gatekeeping" aspects do not fully translate to bench trials like the case at bar. *Palm Valley Health Care Inc. v. Azar*, 947 F.3d 321, 330 (5th Cir. 2020); *see also Air Evac EMS, Inc. v. Sullivan*, 331 F. Supp. 3d 650, 657 (W.D. Tex. 2018) ("Safeguards such as those provided for in Rules 701

Case 4:21-cv-02473    Document 85-29    Filed 08/16/24 in TXSD    Page 3 of 8

Smith v. City of Bastrop, Not Reported in Fed. Supp. (2021)

and 702 and discussed in *Daubert* are largely irrelevant in the context of a bench trial.").

### III. Analysis

The Court addresses in turn the each of Plaintiffs' Motions to Exclude.

### A. Julie Y. Fort

Defendants have designated Julie Y. Fort as an expert on the creation, operation, and use of PIDs under Chapter 372 of the Texas Local Government Code. Dkts. 56 at 2, 57 at 2. Fort is designated to testify as to (1) the desirability and practicability of the creation of PIDs under Chapter 372; (2) the framework for establishing PIDs and levying assessments; (3) matters related to Plaintiffs' alleged incorrect legal assumptions under the Act; and (4) application of the Act to the properly levied assessments under the ordinance adopted by the City of Bastrop. *Id.*

Fort is an attorney and partner in the law firm Messer, Fort & McDonald PLLC. Dkt. 61-1 at 3. As part of her law practice, she provides legal services and advice to municipalities throughout Texas. *Id.* Fort has served as a City Attorney, Land Use Counsel, and Special Counsel. *Id.* She routinely provides legal advice relating to PIDs and works on behalf of cities. *Id.*

Plaintiffs argue that Fort's expert report and testimony should be excluded in their entirety because (1) Fort has no specialized qualifications; (2) Fort's opinions are not supported by any specific facts or methodology and are irrelevant; and (3) Fort's testimony consists entirely of legal conclusions. Dkt. 61 at 2.

### 1. Common Practices for PIDs

Fort's opinions include her observations regarding common practices for implementing PIDs and their application to the Hunters Crossing PID. These are found in Fort's report as follows:

- Section IV, titled "Why use PIDs?" Dkt. 61-1 ¶¶ 8-10;

- "In my experience, the determination of special benefit is individualized for each PID." *Id.* ¶ 26.

- "In my practice, I regularly see costs for Authorized Improvements include soft costs in additions to items

that are not hard costs, such as materials and labor." *Id.* ¶ 33.

- "In my practice, deferring assessments is common and cities commonly do not require the developer to pay the PID assessments, particularly when no PID bonds are sold and the developer funds the cost of construction." *Id.* ¶ 38.

Plaintiffs challenge both Fort's qualifications to render these opinions and their relevancy.

#### a. Qualifications

Defendants argue that Fort is an attorney with significant experience in the "byzantine area of public improvement districts under the PID Act" and that she may opine as to generally accepted industry practices. Dkt. 66 at 2, 10.

To establish that an expert is qualified, the proponent must demonstrate that the expert possesses a higher degree of knowledge, skill, experience, training, or education than an ordinary person. FED. R. EVID. 702. Fort is a practicing attorney who has provided legal services to municipalities in Texas for more than 20 years. Dkt. 61-1 at 3. On a weekly basis, she advises clients on matters relating to public improvement districts; she also has experience in creating PIDs and levying assessments. *Id.*

**\*4** "As long as some reasonable indication of qualification is adduced, the court may admit the evidence without abdicating its gate-keeping function." *Rushing v. Kan. City S. Ry. Co.,* 185 F.3d 496, 507 (5th Cir. 1999), *superseded by statute on other grounds,* Pub. L. No. 93-595, 88 Stat. 1926, *as recognized in* *Mathis v. Exxon Corp.,* 302 F.3d 448, 459 n.16 (5th Cir. 2002). Although Plaintiffs argue that Fort has not shown any specialization in the issues presented in this case, an expert's lack of specialization goes to the weight of the testimony, not its admissibility. *See* *Huss v. Gayden,* 571 F.3d 442, 452 (5th Cir. 2009) ("Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."); *Hill v. Universal Am-Can, Ltd.,* 2007 WL 4530866, at \*3 (E.D. Tex. Sept. 4, 2007) (noting that "a lack of specialization does not affect the admissibility of testimony, but rather, the weight given to that testimony"). Accordingly, Fort is qualified to provide reliable testimony regarding the common practices in the creation of PIDs and levying of assessments.

### b. Relevancy

Plaintiffs argue that Fort's testimony on whether certain practices are standard for municipalities running PIDs is irrelevant to the City Defendants' violations of the PIDA Act. Dkt. 61 at 8. Defendants respond that Fort's testimony is relevant because this case involves complicated challenges to ordinances and assessments under a statute that has been litigated only rarely and her testimony will assist the Court. Dkt. 66 at 7.

Testimony from an expert witness must be relevant and "assist the trier of fact to understand the evidence or to determine a fact in issue." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244-45 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591). Defendants rely on *Saldana v. Tex. Dept. of Transp.*, Civil No. A-14-cv-282-LY, 2015 WL 3952328, at *5 (W.D. Tex. June 29, 2015), in which the Court declined to exclude expert testimony on generally accepted human resource practices. Plaintiffs reply that industry standards and typical practices are not relevant to the facts of this case: "In short, even if every other PID that Fort worked upon is also being operated in contravention of state law, that does not make the Defendants' illegal actions any less of a constitutional violation—it merely indicates a widespread issue." Dkt. 68 at 5 n.2.

Here, the Court must decide whether Defendants' actions and omissions relating to the PID deprived Plaintiffs of constitutionally protected property interests. Dkt. 55 at 16-18. Fort's testimony regarding the common practices of municipalities relating to PIDs and their application to the Hunters Crossing PID may assist the Court in understanding Plaintiffs' claims. Because Fort is qualified to opine on common practices that may put Defendants' activities relating to the PID into context, her testimony will assist the trier of fact and is relevant. *See LULAC v. Edwards Aquifer Auth.*, Civil Action No. SA-12-CA-620-OG, 2014 WL 10762935, at *2 (W.D. Tex. Sept. 30, 2014) (denying motion to exclude). Fort's opinions regarding the common practices of municipalities relating to PIDs and their application to the Hunters Crossing PID are admissible.

### 2. Legal Conclusions

Plaintiffs contend that the remainder of Fort's report and testimony should be excluded because it consists of inadmissible and irrelevant legal conclusions based on her interpretation of the PIDA Act. Dkt. 61 at 3-5. Defendants

respond that, as an attorney with more than 20 years' experience in municipal law and finance, including PIDs, Fort is "qualified to opine on the interpretation and application of the PID Act and the operative documents for The Hunters Crossing PID." Dkt. 66 at 2.

**\*5**  An expert may give opinion testimony that embraces an ultimate issue if it is otherwise admissible and supplies information that is helpful to the factfinder. FED. R. EVID. 704(a); *see also Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (stating that Rule 704 abolishes the per se rule against testimony regarding ultimate issues). An expert witness is not allowed to opine on legal conclusions that should be drawn from the evidence, which "both invades the court's province and is irrelevant." *Id.*; *see also Tex. Peace Officers v. City of Dallas*, 58 F.3d 635, 635 (5th Cir. 1995) (affirming exclusion of expert testimony because an expert may not provide an unhelpful opinion to the trier of fact or state a legal conclusion). Even in bench trials where a court will not be acting as a "gatekeeper" for the jury, testimony will be excluded before trial if an expert merely provides legal opinions. *LULAC*, 2014 WL 10762935, at *1-2. Experts may not advise the Court how the law should be interpreted or applied to the facts in the case. *Id.* at *2.

Other than her admissible opinions regarding common practices for PIDs, listed at page 6 of this Order, Fort devotes her report to reciting the statutory provisions governing PIDs and their implementation. She opines as to the proper statutory interpretation and what actions are permitted or prohibited by the PIDA Act based on her reading of the Act. [4] She also offers opinions on how the law should be applied to the facts of this case and conclusions as to the Plaintiffs' allegations of illegal actions by the City Defendants. [5]

**\*6**  Fort's report and testimony offer her legal opinion on how the law should be interpreted and applied in this case, which are questions for the Court. *See Primerica v. Life Ins. Co. v. Gross*, Civil Action No. A-15-CV-759-DAE, 2017 WL 9325510, at *3 (W.D. Tex. Oct. 12, 2017) (stating that while attorneys may testify as to legal matters when those matters involve questions of fact, interpretation of statutes is a question of law) (citing *Waco Int'l Inc. v. KHK Scaffolding Houston, Inc.*, 278 F.3d 523, 533 (5th Cir. 2002)). While Plaintiffs' counsel can make legal arguments and urge the Court to reach certain legal conclusions, Fort cannot do so as an expert witness. *See Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (noting that a proffered expert should bring to the trier of fact "more than the lawyers can

offer in argument"). Accordingly, the remainder of Fort's report and her associated testimony, which consist entirely of inadmissible legal opinions and conclusions, are **HEREBY EXCLUDED**.

Based on the foregoing, Plaintiffs' Motion to Exclude Fort (Dkt. 61) is **DENIED IN PART** as to her opinions regarding common practices listed at page 6 of this Order and **GRANTED IN PART** as to the remainder of her report and associated testimony.

### B. Patrick R. Bourne

Defendants have designated Patrick R. Bourne as an expert on PIDs in Texas and the allocation and calculation of capital assessments. Dkts. 56 at 2, 57 at 2. Bourne is designated to testify as to: (1) PIDs in Texas; (2) his observations on the 2003 Ordinance and SAP; (3) the determination, allocation, and term of the 2003 Capital Assessment; (4) his observations on the 2019 SAP; (5) the capital assessment allocated to subdivided parcels; (6) the calculation and allocation methodology of the unpaid capital assessment; (7) the impact of the 2019 SAP allocation to property owners; and (8) the alleged incorrect factual statements and unsupported conclusions set forth in Plaintiffs' Expert Designation and Report. *Id.*

Plaintiffs argue that Bourne's expert report and testimony should be excluded because (1) the first portion of Bourne's report consists entirely of legal conclusions; (2) the second portion of Bourne's report contains opinions that are unreliable and not support by facts or methodology; and (3) Bourne's opinions on changes to and standard practices for PIDs are irrelevant. Dkt. 62 at 2. Plaintiffs also assert that Bourne's designation and report do not satisfy the disclosure requirements of Rule 26(a)(2) and should be barred. *Id.*

#### 1. Legal Conclusions

Plaintiffs argue that Section II of Bourne's report, "Introduction to Public Improvement Districts," consists solely of "non-lawyer legal conclusions about the meaning of the PIDA Act" and that his opinions should be excluded. Dkt. 62 at 4. Defendants respond that Bourne may reference statutory provisions and ordinances that affect his calculations regarding the overall PID assessment and apportionments. Dkt. 65 at 5-6.

As discussed above, an expert may not opine on what legal conclusions should be drawn from evidence. In Section II

of his report, Bourne recites various provisions of the PIDA Act and opines as to what is allowed or prohibited under the Act. [6] Dkt. 62-1 at 4-5. In contrast, in Sections III and IV of his report, Bourne discusses the PIDA Act along with provisions of the 2003 and 2019 SAPs to explain his calculations and opinions regarding the amounts paid and owing under the assessment. Dkt. 62-1 at 5-15. Because statutory interpretation is a question of law for the Court, Section II of Bourne's report and his associated testimony are inadmissible. *See Primerica*, 2017 WL 9325510, at *3. Bourne may reference statutory provisions for the purpose of explaining his calculations, so Sections III and IV of his report and associated testimony are admissible. *See Benavides v. City of Austin*, Cause No. A-11-CV-438-LY, 2012 WL 12883179, at *3 (W.D. Tex. July 2, 2012) (stating that an expert report is not rendered inadmissible because it uses legal terms that appear in a statute). Plaintiffs' Motion to Exclude Bourne's report on the basis that it contains inadmissible legal conclusions is **GRANTED** as to Section II.

#### 2. Reliability

**\*7** Plaintiffs argue that Bourne's opinions are unreliable because "he performed drastically simplified calculations regarding interest that do not align with the actual terms of the documents" and the underlying data used to formulate his opinions is inaccurate. Dkt. 62 at 6-7. Plaintiffs also question Bourne's qualifications to render reliable opinions. *Id.* at 5-6. Defendants argue that Bourne's qualifications exceed what an ordinary person would possess, which allows him to opine on PIDs and calculate assessments. Dkt. 65 at 6. Defendants also argue that Plaintiffs' complaints about Bourne's methodology go to weight and not admissibility. *Id.* at 7.

As discussed above, to establish that an expert is qualified, the proponent must demonstrate that the expert possesses a higher degree of knowledge, skill, experience, training or education than an ordinary person. FED. R. EVID. 702. Bourne is a partner with Sundance Analytics, LLC. Dkt. 62-1 at 3. Since 2005, he has worked as a financial consultant structuring a variety of financing districts, including PIDs. *Id.* Services he provides include identifying and outlining financing plans for the creation of PIDs, drafting SAPs and the proposed allocations of assessments, assisting with bond issuance, preparing and monitoring reimbursement requests, and assisting with the restructuring of installments. *Id.* Bourne's experience with PIDs and SAPs provides a "reasonable indication of qualification" to opine on the matters for which he was designated and the Court "may

admit the evidence without abdicating its gate-keeping function." *See Rushing*, 185 F.3d at 507. Accordingly, Bourne is qualified to testify.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The issues with Bourne's calculations identified by Plaintiffs are the proper subject of cross-examination and not a basis for disqualification. *Id.* Similarly, the fact that there are discrepancies in the calculations and the underlying documents is not grounds for excluding his opinion. *Pipitone*, 288 F.3d at 250 ("The fact-finder is entitled to hear [the expert's] testimony and decide whether it should accept or reject that testimony after considering all the facts that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate."). Bourne's opinions are reliable. Plaintiffs' Motion to Exclude on that basis is **DENIED**.

### 3. Relevancy

Plaintiffs argue that Bourne's opinions are not relevant because they are based on flawed calculations and generalized assertions about what other PIDs and developers have done. Dkt. 62 at 8-9. Defendants respond that Bourne's opinions regarding the assessments and their proper calculation are relevant to Plaintiffs' due process and statutory compliance claims. Dkt. 65 at 10.

Bourne's opinions address how the PID assessments were allocated and calculated at various times, and specifically whether the 2019 Ordinance resulted in an overall increase in assessments and debt obligations. Dkt. 62-1 at 8-15. Bourne's testimony may assist the trier of fact in resolving several issues in the case, including whether Plaintiffs suffered economic injury, whether TFHC negligently misrepresented the costs that Defendants allegedly included in the 2019 Ordinance, and whether Plaintiffs are entitled to a permanent injunction against the 2019 Ordinance because it increases the debt and payoff figure. Dkt. 55 at 17-18. Bourne's testimony therefore is relevant and admissible. *Daubert*, 509 U.S. at 591.

### 4. Satisfaction of Disclosure Requirements

**\*8** Finally, Plaintiffs argue that Bourne's report and testimony should be barred for failure to comply with the disclosure requirements of Rule 26(a)(2). Dkt. 62 at 9-10. Specifically, Plaintiffs contend that (1) Defendants failed to disclose Bourne's prior publications and testimony, and (2) Bourne's report includes no reference to Plaintiffs' expert report despite that topic's inclusion in Defendants' Designations of Expert Witnesses. *Id.* Defendants state that Bourne has no prior publications or testimony to disclose, and they have supplemented Bourne's CV to reflect those facts. Dkt. 65 at 10, 14-15. Defendants also assert that Bourne's report concludes that the 2019 Ordinance did not change the 2003 assessment, which contradicts Plaintiffs' expert's report, and he should be allowed to refer to Plaintiffs' expert's opinions in his testimony. *Id.* at 11.

The purpose of expert reports is not to replicate all of an expert's testimony, but rather to convey the substance of the expert's opinion so that attorneys may prepare for trial intelligently. *See Bro-Tech Corp. v. Purity Water Co.*, Civil No. SA-08-CV-0594-XR, 2009 WL 1748539, at \*7 (W.D. Tex. June 19, 2009) ("The requirement that the party provide a complete report of the opinions that the expert will offer at trial is to allow the opposing party to effectively cross-examine the expert, designate a rebuttal expert, and prepare for trial."); *see also Helene Ltd. v. GE Oil & Gas, Inc.*, Civil Action No. H-08-2931, 2011 WL 798204, at \*6 (S.D. Tex. Mar. 1, 2011) (same). Here, Plaintiffs have demonstrated that the substance of Bourne's opinions regarding the calculation of assessments and their contrast with Plaintiffs' expert calculations has been identified sufficiently to allow counsel to prepare for trial. Accordingly, Plaintiffs' Motion to Exclude Bourne as an expert witness based on failure to comply with Rule 26 disclosures is **DENIED**.

### IV. Conclusion

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Exclude Defendants' Expert Julie Y. Fort (Dkt. 61). The Court **DENIES** Plaintiffs' Motion as to Fort's opinions regarding common practices listed at page 6 of this Order and **GRANTS** Plaintiffs' Motion and **EXCLUDES** the remainder of Fort's report and proposed testimony.

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Exclude Defendants' Expert Patrick R. Bourne (Dkt. 62). The Court **GRANTS** Plaintiffs' Motion

Case 4:21-cv-02473   Document 85-29   Filed 08/16/24 in TXSD   Page 7 of 8

Smith v. City of Bastrop, Not Reported in Fed. Supp. (2021)

and **EXCLUDES** Section II of Bourne's report and proposed testimony and **DENIES** the Motion as to the remainder.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 148061

## Footnotes

1    Connie Schroeder, Willie Lewis "Bill" Peterson, Drusilla Rogers, Lyle Nelson, Bill Ennis, and Dock Jackson, each in his or her official capacity as a member of the City Council of the City of Bastrop.

2    Lynda Humble (replaced by Trey Job) (Dkt. 71 at 1), Drusilla Rogers, Rick Womble, Michelle Dodson, Lyle Nelson, and Tabitha Pucek, each in his or her official capacity as a Director of Hunters Crossing Local Government Corporation.

3    On September 2, 2020, the District Court granted Defendant Forestar's motion to dismiss. Dkt. 54. The Court then entered partial final judgment under FED. R. CIV. P. 54(b), severing and resolving all claims against Forestar. Dkt. 79. TFHC is the remaining Developer Defendant. Dkt. 55 ¶ 18.

4    *See, e.g.*, Dkt. 61-1 ¶ 18 ("The Act expressly allows a city council to delegate responsibility for a service plan to another entity...."); *id.* ("The Act does not provide that the assessment lien ... is released or altered by the failure to do an annual update."); *id.* ("[T]he Act does not contain a consequence for failing to complete an annual update to the service plan."); *id.* ¶ 22 ("[Plaintiffs' statement] that assessments not imposed only in 'equal shares' ... are 'fatally flawed' is a misinterpretation of the Act."); *id.* ¶ 27 ("The Act expressly allows for assessments to be increased or decreased following the initial assessment."); *id.* ("The Act does not require newspaper notices, mailed notices or a public hearing for annual updates to the SAP."); *id.* ¶ 28 ("The Act allows interest to be paid in a number of different ways for a number of different things."); *id.* ¶ 33 ("The Act does not contain a definition for the word 'cost'."); *id.* ("There is no express authority in the Act to support [Plaintiffs' assertion] that the cost to a city ... must exclude interest as a cost."); *id.* ¶ 34 ("The Act provides for and expressly acknowledges that the costs in an initial SAP are merely 'projected' or estimates."); *id.* ¶ 35 ("The Act gives the City of Bastrop the authority to exercise all power in the Act."); *id.* ¶ 37 ("The Act authorizes interest to be added to deferred installment payments...."); *id.* ¶ 40 ("The Act also expressly allows for assessment to be increased or decreased following the initial assessment...."); *id.* ¶ 42 ("The Act does not contain a consequence for failing to complete an annual update to the service plan.").

5    *See, e.g.*, Dkt. 61-1 ¶ 36 ("The total amount of the assessment lien attributable to 'costs' for the HCPID has not been increased, EVER."); *id.* ("The content of the 2003 Assessment Ordinance, the 2004 Assessment Ordinance, and Ordinance No. 2019-40, adopting, the Current SAP, are not 'illegal' as asserted by Plaintiffs."); *id.* ¶ 38 ("A deferral of the payment of an assessment allowed by the Act does not mean any property owner was 'unlawfully exempted from paying the assessments' as asserted by Plaintiffs."); *id.* ¶ 39 ("It is not illegal or unlawful for the actual costs to be exceed, or be less than, the original estimated costs, as asserted by Plaintiffs."); *id.* ("[S]uch decisions are within the discretionary legislative authority of the City Council of the City."); *id.* ¶ 43 ("Plaintiffs' assertions that the Current SAP adopted by Ordinance No. 2019-40 requires property owners to pay the entire remaining balance still owed ... is a misinterpretation of the current SAP."); *id.* ¶ 46 ("I ... find that some legal assumptions relied upon by [Plaintiffs' expert] in order to calculate the alleged damages are not supported by the Act.").

6    Dkt. 62-1 at 4 ("The PID Act allows the cost of improvements to include interest, which may be included in the assessment against the property within the PID."); *id.* at 5 ("[A] PID will remain in perpetuity until the assessment has been completely paid and the PID is dissolved."); *id.* ("PID installments may be deferred

Case 4:21-cv-02473    Document 85-29    Filed 08/16/24 in TXSD    Page 8 of 8

**Smith v. City of Bastrop, Not Reported in Fed. Supp. (2021)**

and may include interest."); *id.* ("The payment period, interest rate, and amount of the PID installments are approved by the governing body.").

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.