2008 WL 7136869
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
W.D. Texas,
San Antonio Division.

UNITED STATES of America ex rel Toni
R. BARRON and Vicky Scheel, Plaintiffs,
v.
DELOITTE & TOUCHE, LLP, Deloitte & Touche
Consulting Group, LLC., Deloitte & Touche Consulting
Group Holding, LLC., Medicaid Solutions of Texas,
and National Heritage Insurance Company, Defendants.

Civil No. SA–99–CA–1093–FB.
|
Sept. 26, 2008.

Named Expert: Dr. Arnold A. Levine, M.S., Ph.D.

**Attorneys and Law Firms**

Barry A. Weprin, Jean Lee, Ross B. Brooks, Barry A. Weprin, Milberg, LLP, Deborah Clark-Weintraub, Whatley Drake & Kallas, LLC, Kirk E. Chapman, Milberg, Weiss, Bershad & Schulman, New York, NY, Joyce R. Branda, Jullia Callahan, Michael E. Granston, Michael F. Hertz, Department of Justice Ben Franklin Station, Reuben Guttman, Milberg Weiss Bershad & Schulman, Washington, DC, Winstanley F. Luke, Assistant U.S. Attorney, Katherine Martinez-Vitela, Martinez-Vitela Law Firm, San Antonio, TX, Ann Lugbill, Cincinnati, OH, W. Thomas Jacks, Fish & Richardson P.C., Austin, TX, for Plaintiffs.

*ORDER*

JOHN W. PRIMOMO, United States Magistrate Judge.

**\*1** Before the Court is Deloitte Consulting LLP's ("Deloitte") and National Heritage Insurance Company's ("NHIC") joint motion to exclude the report and testimony of Relators' designated statistical expert, Arnold Levine. (Docket no. 367, 439). Relators have responded. (Docket no. 414, 467).

## I. BACKGROUND

Relators initiated this *qui tam* action under the False Claims Act (FCA) on September 30, 1999, and filed their first amended complaint on September 9, 2002, alleging Deloitte and Medicaid Claims Solutions of Texas ("MCST") caused the school districts to bill Medicaid for services that were not medically necessary or otherwise valid claims under the School Health and Related Services ("SHARS")program; NHIC failed to adequately monitor submitted SHARS claims for accuracy and validity before submitting them for final payment to the United States; and Defendants knowingly submitted false claims for Medicaid reimbursement and knowingly made or used or caused to be made or used false records or statements to get false claims paid through Medicaid reimbursement.

Relators designated William Parrish to "perform agreed upon procedures in consultation with Dr. Arnold Levine." Parrish was expected to "offer testimony regarding his firm's review of SHARS and MAC claims filed; practices and/or procedures employed in billing the federal government for SHARS and MAC claims; and audits of such claims, if any, by NHIC." **See Docket no. 165.** Relators also designated Arnold Levine to "provide his expert opinion on SHARS and MAC Medicaid claims, statistical procedures and data related to Medicaid claims at issue in this case, and damages, as well as inflated rate settings for services." ***See id.*** Additionally, Levine was expected to "offer his expert opinion relating to claims denied or approved by NHIC for non-school-based Medicaid providers versus school-based Medicaid providers." ***See id.*** Defendants, Deloitte and NHIC, seek to exclude Levine's report and testimony because it is unreliable.

## II. STANDARDS GOVERNING ADMISSIBILITY OF EXPERT TESTIMONY

Pursuant to Federal Rule of Evidence 702, expert testimony is admissible when it will assist the trier of fact. ***Daubert v. Merrell Dow Pharms., Inc.,*** 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469(1993). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the

Case 4:21-cv-02473 Document 85-31 Filed 08/16/24 in TXSD Page 2 of 5

U.S. ex rel. Barron v. Deloitte & Touche, LLP, Not Reported in F.Supp.2d (2008)

form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

**FED.R.EVID. 702.**

The party offering the expert testimony bears the burden of establishing that it is admissible by a preponderance of the evidence; however, the proponent need not prove that the expert's testimony is correct but only that the testimony is reliable. *Moore v. Ashland Chem. Co.,* 151 F.3d 269, 276 (5th Cir.1998); *see also Bocanegra v. Vicmar Servs., Inc.,* 320 F.3d 581, 584 (5th Cir.2003) (expert testimony is admissible if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the case; and (3) the evidence is reliable).

**\*2** The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd., v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equip. Corp.,* 394 F.3d 320, 325 (5th Cir.2004).

Although reliability does not require certainty, it must be demonstrated by evidence that the knowledge is more than speculation. *Daubert,* 509 U.S. at 590. Therefore, to demonstrate reliability, the proponent of the expert testimony must present "some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore,* 151 F.3d at 276. The following five non-exclusive factors are considered when assessing the validity or reliability of expert testimony: 1) whether the theory or technique has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error of the method used; 4) the existence and maintenance of standards and controls in the methodology; and 5) whether the theory or method has been generally accepted by the scientific community. *Daubert,* 509 U.S. at 592–93.

## III. NHIC's AND DELOITTE'S MOTION TO EXCLUDE LEVINE

Deloitte and NHIC do not challenge Levine's qualifications as a statistician, but maintain that the data upon which Levine relied and the methodology he employed in reaching his opinions were unreliable; therefore, his resulting opinions are inadmissible.[1] Specifically, Defendants argue that Levine's report and testimony should be excluded for the following reasons: (1) Levine's estimate of damages is premised upon bad data and his sample was unreliably executed and riddled with serious mistakes; (2)Levine's analysis of Deloitte and non-Deloitte schools improperly used hypothesis testing to show a causal relationship, relied on a mistaken understanding of legal presumptions, and failed to disclose contrary analysis and perform additional analysis, as well as consider other sources of variability between the two groups; and (3) Levine's report regarding calculating related to the entire data set and to default damages is unreliable and inadmissible under rule 702.[2]

*A. Use of Statistical Sampling and Extrapolation*
Although the Fifth Circuit has not addressed the use of statistical sampling and extrapolation to determine damages in a False Claims Act case, it has recognized the relevance of statistical evidence in cases primarily involving discrimination. *See Runnels v. Texas Children's Hosp. Select Plan,* 167 Fed. Appx. 377, 381 (5th Cir.2006) (expert's statistical evidence was relevant in proving and disproving employment discrimination); *Munoz v. Orr,* 200 F.3d 291, 300 (5th Cir.2000) (claims of disparate impact under Title VII necessarily relied heavily on statistical proof); *Williams v. New Orleans S.S. Ass'n,* 673 F.2d 742, 747 (5th Cir.1982) (statistical evidence established a prima facie case of discrimination). Only a few circuits, however, have specifically addressed the use of statistics and statistical sampling as an acceptable method for determining damages in False Claims Act cases. *See generally U.S. ex rel. El–Amin v. George Washington Univ.,* 533 F.Supp.2d 12, 50 (D.D.C.2008) (denying motion to set trial by representative sample where relators in FCA case filed suit in 1995 and eight years later had still failed to lay proper foundation to try case by statistical sample); *U.S. ex rel Doe v. DeGregorio,* 510 F.Supp.2d 877, 890 (M.D.Fla.2007); *U.S. ex rel. Harris v. Bernad,* 275 F.Supp.2d 1, 8 (D.D.C.2003) (allowing use

Case 4:21-cv-02473    Document 85-31    Filed 08/16/24 in TXSD    Page 3 of 5

U.S. ex rel. Barron v. Deloitte & Touche, LLP, Not Reported in F.Supp.2d (2008)

of statistical sampling to determine damages caused by the overpayment of Medicare reimbursements in FCA case); *U.S. v. Cabrera–Diaz,* 106 F.Supp.2d 234, 240 (D.P.R.2000) (permitting use of statistics and statistical sampling to support proof of damages in a FCA case). The underlying focus continues to be the Supreme Court's ruling in *Daubert* which permits the use of statistical methods of scientific research and proof pursuant to Rule 702 of the Federal Rules of Evidence provided the evidence is based upon sufficient facts or data, the product of reliable principles and methods, and the expert applied the principles and methods reliably to the facts of the case. *See Daubert,* 509 U.S. at 589.

*B. Part I: Levine's Estimate of Damages*

 **\*3**  Relators designated Levine to "provide his expert opinion on SHARS and MAC Medicaid claims, statistical procedures and data related to Medicaid claims at issue in this case, and damages." *See* **Docket nos. 112, 165.** Levine was asked to develop a *valid random sample* from data bases provided by NHIC, MSFW and Deloitte for the purpose of enabling a review of those claims submitted by Deloitte for payment under its administration of the SHARS billing. *See* **Docket no. 367, exh. 2.** Levine did, in fact, develop a *valid random sample* consisting of 1600 claims or bundles which he then provided to Parrish, whom Relators designated as an expert who would "perform agreed upon procedures in consultation with Dr. Arnold Levine," as well as offer testimony regarding his firm's review of SHARS claims filed; practices and/or procedures employed in billing the federal government for SHARS claims; and audits of such claims, if any, by NHIC. *See* **Docket no. 165.**

Relators' counsel then subpoenaed the school districts to obtain the records relating to students within the sample developed by Levine. *See* **Docket no. 414, exh. A, Pt.1, pg. 9.** Parrish reviewed these records and found that only 991 of the 1600 total claims submitted by Levine in the *random valid sample* could be tested and of these, 911 were "invalid." *See* **Docket no. 362, exh. 1A, pg. 18.** Parrish defined an "invalid" claim as basically one lacking sufficient documentation; however, the term clearly implied that the sampled paid claims were not made in accordance with Federal and State requirements and were false. *See* **Docket no. 355, exh. A, pg. 125.** Parrish based his findings on his firm's review of the submitted documents and the state and federal Medicaid requirements as set forth by Anderson and Gilbert. *See* **Docket no. 362, exh. 1A, pg. 12.** Additionally, Parrish based his findings on "an assumption that all documents that were available to support the sample items should have been retained by the districts and produced to Relators' Counsel." *See* **Docket no. 362, exh. 1A, pg. 13.**

Parrish made no attempt to account for obvious alternative explanations for the missing documents but merely concluded that the claims were "invalid." *See United States v. Eff,* 461 F.Supp.2d 529, 534 (E.D.Tex.2006) (court should consider "whether expert has adequately accounted for obvious alternative explanations") (citing *Michaels v. Avitech, Inc.,* 202 F.2d 746, 753 (5th Cir.2000) (had the expert's opinions undergone a *Daubert* analysis, they likely would not have been admissible since plaintiff's expert failed to address and rule out the numerous other potential causes for the accident). In fact, during his deposition, Parrish admitted that there could be a number of reasons why the files did not contain complete documentation of the submitted claims, including the possibility that some potentially relevant documents were not produced by the school districts because they were no longer under their care, custody, or control, and that documents that once existed no longer did so. *See* **Docket no. 355, Parrish depo., exh. A, pgs. 116–19.** This last explanation was of particular significance as at least one school district maintained that it only retained documents for five years. *See* **Docket no. 362, exh. 2, Affidavit of Mearlyn Cornett.** Additionally, Parrish conceded that he made no effort to determine where missing documents were located or if they existed and further, made no effort to determine whether certain documents had been maintained by individual health practitioners instead of by school districts. *See* **Docket no. 355, Parrish depo., exh. A, pgs. 116–19.** Finally, Parrish admitted that his findings did not suggest that services were not provided, were medically unnecessary, or were not reimbursable. *See* **Docket no. 355, Parrish depo., exh. A, pp. 148–49.**

 **\*4**  Despite the fact that Parrish admitted his findings did not in any way purport to establish that some or all of the claims reviewed by his firm were false, in Part I of his report, Levine relies on Parrish's findings to extrapolate damages in this case, concluding that approximately 94.7% of the SHARS items submitted by school districts advised by Deloitte were "invalid" and that these "invalid" submissions totaled $53,129,038 in reimbursement from the federal government. *See* **Docket no. 414, exh. A1.** Levine testified that he played no part in determining whether SHARS claims submitted under the Deloitte billing administration were submitted in accordance with federal and state requirements and that his extrapolation of the results to the frame depended entirely on Parrish's data. *See* **Docket no. 414, exh. B, Pt. 2, pg. 107, 109,**

Case 4:21-cv-02473    Document 85-31    Filed 08/16/24 in TXSD    Page 4 of 5

U.S. ex rel. Barron v. Deloitte & Touche, LLP, Not Reported in F.Supp.2d (2008)

**133, 135–36, 156 (Levine's depo.).** Levine also testified that his calculation of approximately $53 million dollars in claims was not an estimate of claims that were invalid when paid but were based on data available in 2007. *See id.* **at 150–2.**

Relators argue that Levine's reliance on Parrish's findings goes to the weight of his testimony rather than its admissibility. *See* **Docket no. 467.** The Court disagrees. Rule 703 seeks to ensure that the "facts and data" not otherwise admissible in evidence that form the basis of an expert's opinion are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." **FED.R.EVID. 703.** Although this rule is primarily directed toward allowing an expert to base his opinion on hearsay or otherwise inadmissible sources, nothing in Rule 703 requires a court to admit an opinion based on facts that are indisputably wrong. *See* *Christophersen v. Allied–Signal Corp.,* 939 F.2d 1106, 1114–1115 (5th Cir.1991); *see also U.S. v. Rockwell Space Operations Co.,* 2002 WL 864246, at *9 (S.D.Tex.2002) (not designated for publication) (rejecting testimony of damage expert in FCA case as unreliable where it was based on faulty foundation). Although reliability does not require certainty, it must be demonstrated by evidence that the knowledge is more than mere speculation. *Daubert,* 509 U.S. at 590.

Here, Levine's testimony regarding damages based on Parrish's data, which by Parrish's own admission does not purport to show that the sample claims tested were false, simply can not be the type of information upon which experts reasonably rely when forming opinions on damages. Instead, Levine's opinions as to the estimate of damages in this case is mere speculation "connected to existing data only by the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 151, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (neither **Daubert** nor the Federal Rules of Evidence require a court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert). Accordingly, this Court finds that the data upon which Levine relied in forming an opinion as to damages is so unreliable and lacking in probative force that no reasonable expert could base an opinion upon them. *See* *Viterbo v. Dow Chem. Co.,* 646 F.Supp. 1420, 1424 (E.D.Tex.,1986). Defendants' motion to exclude Part I of Levine's report and testimony is, therefore, **GRANTED.**

### C. Part II: Levine's Analysis of Deloitte and Non–Deloitte Schools

**\*5** Defendants further argue that Levine's analysis of Deloitte and non-Deloitte schools, found in Part II of Levine's report, is misleading and flawed because 1) hypothesis testing is not an accepted method for showing a causal relationship; 2) Levine's failure to disclose contrary analysis and to perform additional analysis is not the product of reliable professional analysis; and 3) Levine's failure to consider other sources of variability between the two groups renders his analysis unreliable.

In hypothesis testing, the statistician sets a null hypothesis, which he then seeks to disprove by applying various objective mathematical formulae. If the hypothesis is, in fact, disproven, the statistician can state, to a given precision, that the two statistics are in fact different. Here, Levine purports to test the following null hypothesis: "that there are no statistically significant differences between the effects produced by the administration of billing by the two groups." *See* **Docket no. 414, exh. IA.** Levine goes on to state that "[t]o determine the 'effects' in billing differences between the two groups, it is necessary to develop quantitative measures of the effects. The condition imposed on these measures or indices is that they should produce the same results (in a statistical sense) if the two groups are following the same Medicaid billing rules and procedures." *See* **Docket no. 414, exh. IA, pg. 14.** Levine then determines that for each of the comparisons made, the differences are not random "but [have] been produced by a systematic difference in principles and procedures employed by the two groups." *See id.*

Defendants argue that causation can not be demonstrated by hypothesis testing and Levine's attempts to do so render his opinions unreliable. However, the mere presence of systematic differences between the two groups is not, in and of itself, evidence that Deloitte's improper practices caused those difference. Although this is likely the impression Relators would like to present, Defendants' challenge in this regard is best addressed by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" which are "the traditional and appropriate means of attacking shaky but admissible evidence." *See* *Daubert,* 509 U.S. at 596. Based on the record presently before the Court, it appears that Levine's use of hypothesis testing has been adequately tested and subjected to peer review. It is well known within the relevant discipline, and the potential for error in Levine's particular application of the principles is an appropriate subject for cross-examination, not a basis for the exclusion of his testimony. *See id.* The Court finds this evidence, offered to prove the differences between the two groups, sufficiently reliable to satisfy *Daubert.*

Case 4:21-cv-02473   Document 85-31   Filed 08/16/24 in TXSD   Page 5 of 5

U.S. ex rel. Barron v. Deloitte & Touche, LLP, Not Reported in F.Supp.2d (2008)

Defendants further argue that Levine failed to consider all others sources of variability; however, the only variable Defendants address is the size of the schools. While control for this factor would be desirable, the Court is not persuaded that it was a critical, methodological flaw, particularly since both sides have now addressed this variable and are at odds regarding its significance. While Levine's conclusions may have been more reliable had he controlled for this variable, his failure to do so goes to the weight of his testimony. *Rendon v. AT & T Tech.,* 883 F.2d 388, 396 (5th Cir.1989).

 **\*6**  Finally, Defendants argue that Levine hid contrary results and relied on a mistaken understanding of legal presumptions. Relators dispute these contentions and we see no need to address them as Defendants' arguments in this regard are also best addressed through cross examination, presentment of contrary evidence and careful instruction on the burden of proof. ***See id.***

Accordingly, Defendants' motion to exclude Part II of Levine's report and testimony is **DENIED.**

*D. Part III: Calculations Relating to the Entire Data Set*
Finally, Defendants argue that Part III of Levine's report should be excluded because it involves the application of simple arithmetic and therefore, cannot assist the trier of fact. Part III of Levine's report describes "default damages," which are the sum of each of several practices by Deloitte alleged by Relators' to be improper. ***See* Docket no. 414, exh. A, Pt. 1.** Levine based these damages on Matthew Petrich's calculations as to the total dollar amount paid in each of the categories. ***See id.*** Levine, admittedly, did not use any of his

expertise in calculating these damages but rather, checked Petrich's figures using his own program. ***See id.,* exh. B, Pt. 3, pg. 269.** Petrich's thirteen page "declaration" was attached to Levine's report and broke down the number of claims, the billing provider, the procedure code, the amount billed, and the amount paid. ***See* Docket no. 414, exh. A, Pt. 1.**

Although Rule 702 provides that a witness with scientific, technical, or other specialized knowledge may testify if this knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, there is no bright line separating issues that are within the comprehension of jurors from those that are not. ***See* FED.R.EVID. 702**; *see also* **1– 13 Weinstein's Evidence Manual § 13.02[2].** Here Levine's testimony regarding Petrich's computations may very well assist the trier of fact.

Accordingly, Defendant's motion to exclude Part III of Levine's report and testimony is **DENIED.**

**IV. CONCLUSION**
Having carefully reviewed the arguments of both sides, the Court is of the opinion that the issues presented by Defendants' motions have some merit; therefore Defendants' motion to exclude the report and testimony of Levine are **GRANTED** with respect to Part I of Levine's report and **DENIED** with respect of Parts II and III of Levine's report.

It is so **ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 7136869

---

**Footnotes**

1   This Court finds Levine qualified to render an opinion in the area in which he was designated as an expert.

2   Levine's report consists of three parts: Part I addresses the statistical sample and its development; Part II addresses Levine's statistical analysis with respect to billing of Deloitte vs. Non–Deloitte school districts; and Part III addresses Levine's calculations related to the entire data set and to default damages.

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.