Case 4:21-cv-02473   Document 85-32   Filed 08/16/24 in TXSD   Page 1 of 11

Vazquez v. Aguilera, Not Reported in Fed. Supp. (2022)

2022 WL 2292888
Only the Westlaw citation is currently available.
United States District Court, S.D. Texas, Laredo Division.

Maricruz VAZQUEZ, Plaintiff,
v.
Benjamin AGUILERA, et al., Defendants.

Civil Action No. 5:19-CV-117
|
Signed 03/25/2022

**Attorneys and Law Firms**

Daniel Alberto Torres, Law Office of Javier Villarreal, Javier Villarreal, Attorney at Law, Brownsville, TX, David Eugenio Garcia, Law Office David E. Garcia P.C., Laredo, TX, for Plaintiff.

Glenn D. Romero, Vidaurri, Lyde, Rodriguez & Haynes, LLP, Edinburg, TX, for Defendants.

## MEMORANDUM AND ORDER

John A. Kazen, United States Magistrate Judge

**\*1** This lawsuit concerns a motor vehicle accident that occurred on September 11, 2018 in Laredo, Texas. (Dkt. No. 1-4 at 3). Plaintiff Maricruz Vazquez ("Plaintiff") alleges state law causes of action against Benjamin Aguilera ("Aguilera"), Claudia Saucedo ("Saucedo"), and David Ernesto Acevedo Guardiola d/b/a Autotransportes Guardiola ("Autotransportes Guardiola" or collectively "Defendants") for vicarious liability based on the negligence of Aguilera, Autotransportes Guardiola's employee. (*Id.* at 5–7). Plaintiff also alleges direct negligence claims and violations of Federal Motor Carrier Safety Administration [1] ("FMCSA") regulations [2] against Autotransportes Guardiola. (*See id.* at 7–9).

Before the Court are several motions to exclude or limit expert testimony, specifically Defendants' Opposed *Daubert* Motion to Strike and/or Limit the Expert Testimony of Whitney G. Morgan, (Dkt. No. 49); Defendants' Opposed *Daubert* Challenge to John J. Smith, (Dkt. No. 50); Plaintiff's Motion to Exclude and/or Limit the Testimony of Defendants' Designated Expert Witness, Rodney D. Ellis, II, (Dkt. No. 51); Plaintiff's Motion to Exclude and/or Limit the Testimony of Defendants' Designated Expert Witness, Michael Graham, MD, (Dkt. No. 52); Plaintiff's Motion to Exclude and/or Limit the Testimony of Defendants' Designated Expert Witness, Rawson L. Wood, (Dkt. No. 53); Plaintiff's Motion to Exclude and/or Limit the Testimony of Defendants' Designated Expert Witness, Irmo Marini, (Dkt. No. 54); and Plaintiff's Motion to Exclude and/or Limit the Testimony of Defendants' Designated Expert Witness, Gilbert Martinez. (Dkt. No. 55).

These motions are fully briefed. [3]

## I. LEGAL STANDARD

The admissibility of expert witness opinions is governed by Federal Rule of Evidence 702, together with the standards established in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 596 (1993). Rule 702 provides that a witness "qualified as an expert ... may testify ... in the form of an opinion ... if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702). *Daubert* identifies the factors a trial court should consider when deciding the admissibility of expert testimony. *Daubert*, 509 U.S. at 590–93. The proponent of the expert testimony must show by a preponderance of the evidence that: (1) the expert witness is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Id.* at 590–91; *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citation omitted).

**\*2** Although an expert need not be highly qualified to testify on a given topic, his testimony on subjects in which he is not minimally qualified must be excluded. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Typically, "differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.* Similarly, "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility[.]" *United States v. 14.38 Acres of Land, more or less Situated in Leflore Cty.*, 80 F.3d 1074, 1077 (5th Cir. 1996). However, "[e]xpert opinions that are unsupported, self-contradicted, or assumptive are to be excluded." *Loy v. Rehab Synergies*, LLC, No. 7:18-CV-00004, 2021 WL 3929398, at \*3 (S.D. Tex. Sept. 2, 2021) (citing *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005)).

Case 4:21-cv-02473 Document 85-32 Filed 08/16/24 in TXSD Page 2 of 11

Vazquez v. Aguilera, Not Reported in Fed. Supp. (2022)

The expert's testimony must be both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007); Fed. R. Evid. 702. "To be reliable, expert testimony must 'be grounded in the methods and procedures of science and ... be more than unsupported speculation or subjective belief.' " *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019) (citation and footnote omitted). An opinion is relevant if the expert's "reasoning or methodology [is] ... properly applied to the facts in issue." *Id.* (citation omitted).

The Supreme Court has outlined a five factor "non-exclusive, flexible test" for trial courts in determining whether an expert witness has reliable testimony:

> (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Daubert*, 509 U.S. at 593–95. After a court considers the *Daubert* factors, a court may then consider whether other factors not mentioned in *Daubert* are relevant to the case at hand. *Black v. Food Lion, Inc.*, 171 F.3d 308, 312 (5th Cir. 1999). Of course, depending on the nature of the issues and subject of the testimony, "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability[.]" *Kuhmo*, 526 U.S. at 150 (internal quotation marks omitted).

"The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion[.]" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). "Under *Daubert*, '*any* step that renders the analysis unreliable ... renders the expert's testimony inadmissible.' " *United States v. 4.620 Acres of Land, more or less, in Hidalgo Cty.*, No. 7:20-CV-00154, 2021 WL 5999388, at *3 (S.D. Tex. Dec. 20, 2021) (quoting *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 279 n.10 (5th Cir. 1998)). Ultimately, "an expert bears the burden of furnishing some

objective, independent validation of [his] methodology." *Brown v. Illinois Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (internal quotations and footnote omitted).

"Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000). "[W]hile no party has raised any *Daubert* challenges, the court has authority to raise its concerns *sua sponte* to fulfill its unique gatekeeping function and ensure the integrity of the judicial process." *See, e.g.*, *Graham v. Dallas Area Rapid Transit*, 288 F. Supp. 3d 711, 729 n.9 (N.D. Tex. 2017) (citing cases). However, trial courts are not intended "to serve as a replacement for the adversarial system." *14.38 Acres of Land*, 80 F.3d at 1078. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## II. DISCUSSION

### a) Whitney Morgan

**\*3** Defendants move to exclude the opinions of Plaintiff's retained expert Whitney G. Morgan ("Morgan"). (Dkt. No. 49). Plaintiff's expert designation of Morgan states, in relevant part:

> Mr. Morgan is a specialist in the operation of commercial motor vehicles. He will testify as his education, experience, and credentials as a specialist. Mr. Morgan will also testify to the applicable safety standards established for safe operation and protection of the public from operators of commercial motor vehicles. Mr. Morgan will also testify as to the field of commercial motor vehicle compliance, enforcement[,] and safety conditions.

(Dkt. No. 26 at 7). In his expert report, Morgan offers several opinions related to Aguilera's actions on the day of the accident, Autotransportes Guardiola's compliance with federal regulations, and the cause of the accident. (Dkt. No.

Case 4:21-cv-02473    Document 85-32    Filed 08/16/24 in TXSD    Page 3 of 11

Vazquez v. Aguilera, Not Reported in Fed. Supp. (2022)

49-2 at 3–9). Defendant moves to exclude these opinions primarily on qualifications and reliability grounds. [4] The Court considers each challenge in turn.

**1. Morgan is not qualified to opine on the cause of the accident.**

Defendants' sole challenge to Morgan's qualifications is that he is not qualified to opine on the cause of the accident because he is not an accident reconstruction expert. (Dkt. No. 49 at 3, 6). Plaintiff has not designated Morgan as an accident reconstruction expert. (*See* Dkt. No. 26 at 7). Moreover, Plaintiff concedes that Morgan is not an accident reconstructionist, and that he will not testify as an accident reconstructionist. [5] (*See* Dkt. No. 63 at 8). This Court has previously excluded Morgan's opinions on the cause of an accident where his qualifications as an accident reconstructionist were similarly disclaimed. *See Rodriguez v. Transportes de Carga FEMA, S.A. de C.V.*, No. 5:18-CV-114, 2020 WL 6938329, at \*5 (S.D. Tex. July 28, 2020). Therefore, the Court finds Plaintiff has failed to carry her burden of demonstrating Morgan is qualified to opine on the cause of the accident. *See Daubert*, 509 U.S. at 590–91; *Johnson*, 685 F.3d at 459 (citation omitted). Morgan may not offer opinions about the cause or contributing factors of the accident in this case.

**2. Morgan's opinion regarding Defendants' safety management controls is unreliable.**

**\*4** Next, Defendants challenge the reliability of Morgan's opinion that Defendants "failed to have proper safety management controls in place and functioning to meet the safety standards" with regard to Defendants' operation of the vehicle. (Dkt. No. 49 at 6). Defendants argue this opinion is unreliable because there is no evidence that Defendant Aguilera was unqualified to drive a CMV. (*See id.*). Plaintiff does not respond to this argument. (*See* Dkt. No. 63 at 1–14).

The Court agrees with Defendants that this opinion is unreliable. Morgan's report consists of (1) a recitation of the FMCSRs he states Defendants were required to comply with, and (2) a summary of the facts of the accident. (Dkt. No. 49-2 at 3–9). Based on this, he concludes that Aguilera's actions on the day of the accident fell below the standard of care. (*Id.* at 3–9). However, Morgan fails to explain how the fact that Aguilera's conduct fell below the applicable standard of care equates with Autotransportes Guardiola's failure to "have the necessary safety management controls in

place and functioning[.]" Stated differently, "there is simply too great an analytical gap between the data and the opinion proffered" by Morgan. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Plaintiff has failed to demonstrate by a preponderance of the evidence that this opinion is reliable. Defendants motion to exclude Whitney G. Morgan, (Dkt. No. 49), is **GRANTED**.

**b) John J. Smith**

Plaintiff designated retained expert John J. Smith ("Smith") to testify on the following subjects:

> Mr. Smith is as an expert witness in accident investigation and reconstruction, occupant kinematics/ injury mechanisms and biomechanics. Mr. Smith will testify as to his education, experience, and credentials as a specialist. Mr. Smith will also testify as to how the collision occurred and the injuries of the Plaintiff.

(Dkt. No. 26 at 6–7). Defendants move to exclude Smith's opinions regarding the relationship between the accident and Plaintiff's injuries. (Dkt. No. 50 at 3, 5–7). Defendants' primary argument for exclusion is that Smith is unqualified to offer his proposed opinions. [6] (*See id.* at 3, 5–7).

As the proponents of his testimony, it is Plaintiff's burden to demonstrate Smith is "minimally qualified" to offer his opinions. *See Daubert*, 509 U.S. at 590–91. Defendants assert that, by opining on the cause of Plaintiff's injuries, Smith is offering "medical causation" testimony. (Dkt. No. 50 at 5–6). Defendants argue that, because he is not a doctor and did not study medicine, Smith is not qualified to offer these opinions. (*Id.* at 5–6). Plaintiff responds by arguing that Smith is sufficiently qualified to offer his opinions based on his education, training, and experience in biomechanics. (Dkt. No. 62 at 5–7).

**\*5** Defendants are generally correct that experts offering "medical testimony" must be qualified in medicine or an "ancillary field." *See Carlson v. Bioremedi Therapeutic Sys.,*

Case 4:21-cv-02473    Document 85-32    Filed 08/16/24 in TXSD    Page 4 of 11

Vazquez v. Aguilera, Not Reported in Fed. Supp. (2022)

*Inc.*, 822 F.3d 194, 200 (5th Cir. 2016) (citations omitted). However, it does not follow that any opinion related to the human body is "medical testimony." As many federal courts have recognized, "biomechanical engineers and mechanical engineers are qualified to testify about the forces generated by accidents and the probable effects of such forces on the human body[.]" *Herrera v. Werner Enterprises, Inc.*, No. SA-14-CV-385-XR, 2015 WL 12670443, at *3 (W.D. Tex. Sept. 28, 2015) (collecting cases); *e.g., Ramirez v. Escajeda*, No. EP-17-CV-00193-DCG, 2021 WL 1131721, at *10 (W.D. Tex. Mar. 24, 2021) (collecting cases). Similarly, federal courts have held such experts may testify regarding whether those forces are likely to generate the types of injuries alleged by a person involved in an accident. *See, e.g.*, *Roth v. Sentry Ins.*, No. CV 20-1298, 2021 WL 3809090, at *3 (E.D. La. Aug. 26, 2021); *Escajeda*, 2021 WL 1131721, at *11. Of course, such experts may not offer opinions about "the precise cause of a specific injury." *Escajeda*, 2021 WL 1131721, at *10 (citing cases).

Considered in this light, Plaintiff has carried her burden of showing Smith is minimally qualified to offer his opinions. Smith has a Master of Science degree in biomechanical trauma. (Dkt. No. 50-3 at 2). Smith has taken numerous courses pertaining to biomechanics and injury causation in motor vehicle accident. (*Id.* at 3–5). He has written over a dozen articles related to biomechanics and injuries in the context of motor vehicle accidents. (*Id.* at 7–8). He has also given numerous presentations pertaining to those same subjects. (*Id.* at 9–11). Additionally, this Court has previously found Smith generally qualified to give opinions in the field of biomechanics. *Rodriguez*, 2020 WL 6938329, at *7.

In his report, Smith offers several opinions regarding the relationship between the accident and the injuries Plaintiff suffered. For example, Smith opines that "the injuries reported are consistent with the locations of applied forces in this collision and the types of injuries known to occur in frontal impacts." (Dkt. No. 62-2 at 7). In his report, he also states that "The injuries can be correlated to the applied forces. (*Id.*). These opinions are within the proper scope of a biomechanical engineer's testimony, although they come close to the line of what opinions such an engineer with Smith's qualifications may offer. Smith may testify about the forces that the accident would create and whether, generally, those forces are likely to result in the injuries alleged by Plaintiff. However, he may not opine whether or not specific injuries can be attributed to a specific cause. Defendants motion to exclude John J. Smith, (Dkt. No. 50), is **DENIED**.

**c) Rodney D. Ellis, II**

Plaintiff moves to strike the opinions of Defendants' retained expert Rodney D. Ellis, II ("Ellis"). (Dkt. No. 51 at 2–3). Defendants' designation of Ellis states, in relevant part:

> As [a] Safety Expert/Consultant, [Ellis] offers his expertise in areas involving the operation, training, and qualifications of drivers of commercial motor vehicles, commercial motor vehicle inspections, maintenance and repair.... [Ellis] also provides consulting and compliance services to motor carriers/shippers throughout the United States[.] ... Mr. Ellis is expected to give opinions regarding the cause of the accident and that Auto Transportes Guardiola met industry standards.

(Dkt. No. 34 at 2). In his expert report, Ellis offers six opinions related to the subject auto accident. (Dkt. No. 51-1 at 13–14). Plaintiff moves to strike Ellis's opinions in their entirety. (Dkt. No. 51 at 4).

**\*6** Plaintiff primarily challenges Ellis's opinions on the grounds that, as a truck driver and "safety consultant," he is not qualified to opine on "the authority of a commercial trucking company doing business in Mexico and its compliance with FMCSRs."[7] (*See id.* at 6–9). Plaintiff's remaining challenges to Ellis's opinions are not clear, so the Court therefore construes her arguments according to their substance. *See Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir. 2003) ("[A] court is not bound by how a party labels its motion."). In substance, Plaintiff also challenges these opinions as unhelpful to the jury and as impermissible legal opinions. (*See* Dkt. No. 51 at 8–11).

In response, Defendants argue Ellis is qualified to opine on matters related to FMCSRs. (Dkt. No. 57 at 2–3). Defendants maintain that his qualifications as a truck driver and with "motor safety compliance" generally qualify him to opine on whether Defendants complied with their regulatory obligations. (*See id.* at 2–3). Defendants also assert that his opinions are reliable because they are "based on his

professional studies in federal regulations and in his personal experience in the field." (*Id.* at 3). The Court first evaluates Ellis's qualifications before ruling on the admissibility of his individual opinions.

### 1. Ellis is qualified to opine on compliance with FMCSRs.

Ellis holds himself out as a trucking safety and compliance expert. (*See* Dkt. No. 51-1 at 2). According to his curriculum vitae ("CV"), Ellis has approximately 15 years as a truck driver, machine operator, and mechanic. (Dkt. No. 57-1 at 2–3). He has taken numerous trainings regarding trucking safety, maintenance, and mechanics. (*Id.* at 3–4). He has also given several presentations pertaining to issues associated with motor-vehicle accident litigation. (*Id.* at 5). Finally, he is a member of several trucking associations. (*Id.*).

At several points in his expert report and CV, Ellis recites his experience pertaining to motor vehicle safety compliance and consulting. Ellis states that he has "performed dozens of audits of commercial motor carriers/shippers[.]" (Dkt. No. 51-1 at 2). His report also states that he completed 40 hours of training from the Transportation Safety Institute. (*Id.* at 3). Part of this training, Ellis states, involved subjects pertaining to driver qualifications and "federal motor carrier safety regulations." (*Id.* at 3). Ellis has also completed training which included instruction on "regulatory compliance." (*Id.* at 4). In his CV, Ellis states that he has been a safety or compliance consultant of some form since 2005. (Dkt. No. 57-1 at 1–2). His duties have included reviewing driver qualification files, conducting "mock DOT audits," and compliance reviews. (*Id.* at 1–2).

Plaintiff's argument that Ellis is not qualified to testify in this case is unpersuasive. As explained above, Ellis is more than *just* a truck driver and mechanic. Ellis has at least some experience working with FMCSRs and in motor vehicle safety compliance. As the Fifth Circuit has stated, "an expert need not be highly qualified to testify on a given topic[.]" *Huss*, 571 F.3d at 452. Plaintiff contests his qualifications as "limited at best." (Dkt. No. 51 at 8). However, that is a question of weight, not admissibility. *See Huss*, 571 F.3d at 452. The Court finds that Ellis is minimally qualified to opine on the subject of FMCSR compliance and the standard of care applicable to CMV drivers. However, this finding does not end the Court's *Daubert* inquiry.

### 2. Admissibility of Ellis's Opinions

### A. Opinion One

**\*7** Ellis opines that Autotransportes Guardiola "was properly registered with the DOT" at the time of the accident. (Dkt. No. 51-1 at 13). As discussed *supra*, Ellis is qualified to opine on Defendants' compliance with FMCSRs, including regarding whether Defendants properly registered with the DOT. However, Ellis arrives at this conclusion by simply viewing a screenshot of a website showing Autotransportes Guardiola has a DOT registration number. (*Id.* at 8). In essence, he is "performing the same factual review that the jury will conduct." *Rodriguez*, 2020 WL 6938329, at \*6. This does not help the trier of fact. *See id.* (citing cases). However, it is not clear to the Court whether Plaintiff is, in fact, challenging that Defendants were properly registered with the DOT. If this is a contested issue at trial, and the Court determines that Ellis's testimony could clarify that issue, the Court may allow this opinion into evidence. With that caveat, Plaintiff's motion to exclude this opinion is granted.

### B. Opinion Two

Here, Ellis opines that Plaintiff was "not legally operating the subject vehicle" at the time of the accident. (Dkt. No. 51-1 at 13). Ellis bases this opinion solely on the fact that Plaintiff was cited for being unlicensed at the time of the accident. (*Id.* at 9). As discussed *supra*, this opinion is unhelpful because Ellis is merely performing the same factual analysis the jury will perform. Plaintiff's motion to exclude this opinion is granted.

### C. Opinion Three

In this opinion, Ellis states that, because Aguilera was "in possession of a valid [Mexican] commercial driver's license and was, therefore, "properly licensed" at the time of the accident. (Dkt. No. 51-1 at 13). Ellis is qualified to opine on whether Defendants have complied with federal motor carrier safety regulations. To the extent it requires an interpretation of the FMCSRs to determine if possessing a valid Mexican license constitutes "proper licensing," this opinion is helpful to the jury. Plaintiff's motion to exclude is denied as to this opinion.

Case 4:21-cv-02473 Document 85-32 Filed 08/16/24 in TXSD Page 6 of 11

Vazquez v. Aguilera, Not Reported in Fed. Supp. (2022)

#### D. Opinion Four

Here, Ellis states that Aguilera was "in compliance with FMCSRs 382.301" because he submitted a drug test on May 21, 2018. Ellis arrives at this conclusion by reviewing the applicable federal regulation and a screenshot of Aguilera's last drug test. (Dkt. No. 51-1 at 12). Once again, it is not clear to the Court whether Plaintiff alleges that Defendants were not in compliance with this regulation and therefore whether or not this opinion is relevant to a disputed issue of fact. Regardless, simply saying that a regulation requires a pre-employment drug test and referencing the document showing that the drug test was performed does not require an expert opinion. Accordingly, this opinion is unhelpful to the jury. Plaintiff's motion to exclude this opinion is granted.

#### E. Opinion Five

Ellis opines that Plaintiff "should have been aware" that "stopping too close" behind a commercial motor vehicle might lead to an accident "due to the possibility the vehicle could roll back." (Dkt. No. 51-1 at 13). The only basis for this opinion is a citation to the Texas Driver's License Handbook. (*See id.*). Expert testimony may be excluded as unhelpful if it is "well within the common sense understanding of jurors and requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003); *see also* Fed. R. Evid. 701 advisory comm. note to 2000 amendment ("[L]ay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'"). Therefore, this opinion is unhelpful to the jury. Plaintiff's motion to exclude is granted as to this opinion.

#### F. Opinion Six

In his final opinion, Ellis states Aguilera "had a duty to scan the area around his vehicle prior to moving." Ellis may state this opinion based on his years of experience and qualifications as a truck driver. Plaintiff's motion to exclude this opinion is denied. Ellis further opines that "[t]here has been *no evidence* reviewed that" Aguilera "placed his vehicle in reverse and backed up purposely." ((Dkt. No. 51-1 at 14) (emphasis added)). This opinion is inadmissible on several grounds. First, his opinion on the weight of the evidence tends to mislead the jury and supplant its fact finding role.

*See* Fed. R. Evid. 403; *Rodriguez*, 2020 WL 6938329, at *6 (citing cases). Similarly, his opinion on whether Aguilera acted with intent is an impermissible opinion on a party's state of mind. and must be excluded. *See, e.g.*, *Hanan v. Crete Carrier Corp.*, No. 3:19-CV-0149-B, 2020 WL 584370, at *3 (N.D. Tex. Feb. 6, 2020) ("[A] trial court may strike expert testimony that evaluates a party's state of mind, as that evaluation is within the province of the jury."); *Farris v. Jefferson*, 2021 WL 1140099, at *3 (W.D. La. Mar. 24, 2021) (excluding Ellis's opinion as to a party's state of mind). Plaintiff's motion to exclude this opinion is granted.

**\*8** Finally, Ellis opines that "more likely than not" Aguilera "was not applying the appropriate amount of pressure to the brake pedal, which allowed the vehicle to roll backwards." (Dkt. No. 51-1 at 14). This opinion is unreliable because, based on the bare statement of this opinion in Ellis' report, it is not supported by any explanation or otherwise connected to any underlying facts. Therefore, Plaintiff's motion to exclude this opinion is granted. In summary, Plaintiff's motion to exclude Ellis, (Dkt. No. 51), is **GRANTED in part** and **DENIED in part** as set forth above.

#### d) Dr. Michael Graham

Plaintiff moves to exclude testimony of Defendants' retained expert J. Michael Graham, M.D., ("Dr. Graham"). (Dkt. No. 52). Defendants' expert designation states, in relevant part, the following:

> [Dr. Graham] is a board-certified, fellowship-trained orthopedic surgeon specializing in the evaluation and treatment of all types of spinal disorders in adults, including neck pain, back pain, dis problems, and pinched nerves.... Dr. Graham is expected to give opinions on medical conditions before and after the subject motor vehicle accident regarding Maricruz Vazquez. He will opine on causation of medical injuries claimed by Ms. Vazquez

(Dkt. No. 34 at 3). Plaintiff challenges several of Dr. Graham's opinions regarding Plaintiff's medical treatment following the accident. (Dkt. No. 52 at 4–6).

In his report, Dr. Graham opines that Plaintiff did not sustain "any significant musculoskeletal, orthopedic, or spinal injury" as a result of the accident, and that any pain resulting from the accident was "minor." (Dkt. No. 58-2 at 3). He also opines that "none of the evaluations, testing, and treatment" following the accident "were needed or medically justified" and that Plaintiff "will need no treatment in the future" as a result of the accident. (*Id.* at 3–4). Therefore, Graham opines, "the charges for the evaluations, testing and treatment" Plaintiff received following the accident were "unnecessary and *unreasonable.*" ((*Id.* at 4) (emphasis added)).

Graham lists three factors which underlie his opinions. (*Id.*). Graham states that his opinions are based, in part, on his assertion that Plaintiff "was not injured" in the accident. (*Id.*). Graham concludes Plaintiff was not injured because, in his view, if she had been injured, the Texas Peace Officer's Crash Report "would have indicated that she was injured" and that she "most likely" was asked if she was injured and "most likely said 'no.' " (*Id.*). He also bases his opinions on the fact that Plaintiff did not seek medical care immediately following the accident. (*Id.*). According to him, "[i]f she had been injured, or if she thought she had been acutely injured, then most likely she would have" sought medical treatment immediately rather than waiting six days. (*Id.*). Finally, Dr. Graham states his opinions on based on his review of Plaintiff's medical records which, according to him, did not demonstrate "incontrovertible evidence of acute traumatic injuries." (*See id.* at 1–4). He also states that the "degenerative intervertebral discs in the cervical spine" pre-dated the injury. (*Id* at 4).

Plaintiff primarily challenges the reliability of Dr. Graham's opinions. [8] (*See* Dkt. No. 52 at 4–6). Plaintiff submits that Dr. Graham's opinions are unreliable because he never performed a face-to-face evaluation and, instead, relied on a review of her medical records. (*Id.* at 5). She also objects to his failure to conduct any "measurements or calculations of the forces involved in the accident." (*Id.*). Finally, Plaintiff takes issue with Dr. Graham's assumption that she was not injured because she did not immediately seek medical attention on the day of the accident. (*Id.*).

**\*9** Plaintiff's arguments are unpersuasive. In arriving at his conclusions regarding Plaintiff's injuries, Dr. Graham —a licensed and experienced surgeon—reviewed Plaintiff's medical records and radiological imaging studies. (*See* Dkt.

No. 58-2 at 1–4). It is well settled that a medical provider may provide reliable opinions "regarding the causation of a person's injuries and the necessary treatment for such injuries" by simply reviewing a patient's medical records. *See, e.g.*, *Grant*, 2021 WL 1151560, at \*10 (collecting cases); *Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994) (holding opinions based on cardiologist's experience and review of medical records were not "unsupported speculation"). On this ground alone, the Court finds that Dr. Graham's opinions are reliable. *See Grant*, 2021 WL 1151560, at \*10 (finding Dr. Graham's opinions reliable based, in part, on his review of medical records).

Plaintiff's concerns regarding the assumptions underlying Dr. Graham's opinions are warranted. There are, of course, a number of reasons why an individual might not immediately seek medical attention. As a general matter, an expert's opinion is unreliable if supported solely by "speculation or conjecture[.]" *Graves ex rel. W.A.G. v. Toyota Motor Corp.*, No. 2:09CV169KS-MTP, 2011 WL 4625403, at \*6 (S.D. Miss. Oct. 3, 2011) (citations omitted). But, as discussed above, Dr. Graham's opinions do not rely *solely* on speculation. They are otherwise supported by a reliable methodology. Therefore, Plaintiff's concerns go to the weight of Dr. Graham's testimony and are best left for cross-examination. *See 14.38 Acres of Land*, 80 F.3d at 1077; *Graves*, 2011 WL 4625403, at \*5–7 (admitting expert testimony, even though partially based on unreliable opinions, where expert opinions were supported by independent, reliable methodology). Dr. Graham may opine as to Plaintiff's injuries and the treatment she would likely need as a result of those injuries.

However, Dr. Graham's opinion regarding the reasonableness of the *charges* for Plaintiff's medical treatment following the accident is unreliable. Graham may, of course, conclude that certain procedures were unnecessary based on the nature of Plaintiff's injuries. However, it does not follow that the amount charged for a particular treatment is unreasonable just because the treatment was itself unnecessary. Perhaps in Dr. Graham's mind the two terms—unnecessary and unreasonable—are synonymous or interchangeable, but in the Court's estimation they are not. It does not appear that Dr. Graham engaged in an actual analysis of the amounts charged for the medical services provided to Plaintiff. Determining the reasonableness of charges for specific medical procedures typically requires a comparison of costs for similar procedures within a certain geographic region, *see, e.g., Perez*, 2020 WL 3074420, at \*11, and Dr. Graham's

Case 4:21-cv-02473 Document 85-32 Filed 08/16/24 in TXSD Page 8 of 11

Vazquez v. Aguilera, Not Reported in Fed. Supp. (2022)

report does not reflect that he performed any such comparison of costs. (*See* Dkt. No. 58-2 at 1–4). Therefore, "there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146. Dr. Graham may not offer an opinion as to whether the amounts charged for the medical services received by Plaintiff are reasonable. Accordingly, Plaintiff's motion to exclude Dr. Graham's opinions, (Dkt. No. 52), is **GRANTED in part** and **DENIED in part**.

#### e) Dr. Rawson L. Wood

Plaintiff moves to strike Defendants retained expert Dr. Rawson L. Wood ("Dr. Wood"). (Dkt. No. 53). Defendants' designation of Dr. Wood states that he has a degree in medicine and is board certified in both aerospace and occupational medicine and that "[h]e is expected to give opinions to date of the injuries in this event." (Dkt. No. 34 at 1–2). In other words, Dr. Wood has been retained to opine on the causal relationship between the accident and Plaintiff's alleged injuries. Plaintiff argues that Dr. Wood is not qualified to give his opinions and that his opinions are unreliable.[9] (Dkt. No. 53 at 2–3, 5–8). The Court considers each argument in turn.

#### 1. Dr. Wood's Qualifications

**\*10** As to qualifications, Plaintiff argues Dr. Wood is unqualified because he is not a board-certified neurologist, lacks degrees in either biomechanical engineering or occupant kinematics, and has never been a licensed biomechanical mechanical engineer. (*Id.* at 6–7).

As a general matter, experts are not limited to offering opinions only within their specific area of expertise. *See Huss*, 571 F.3d at 456 (citations omitted). "Differences in credentials and expertise bear chiefly on the weight, not the admissibility of an expert's testimony." *Nagle v. Gusman*, No. CV 12-1910, 2016 WL 9411376, at \*8 (E.D. La. Feb. 29, 2016) (citing *Huss*, 571 F.3d at 452). Dr. Wood is board-certified in aerospace and occupational medicine. (Dkt. No. 59-1 at 4). Dr. Wood also has advanced degrees in aeronautical engineering. (*Id.* at 1). Dr. Wood has a medical degree and has completed a medical residency at the U.S. Air Force School of Aerospace Medicine. (*Id.* at 1). He explains that, during his medical studies, he "learned human physiological functioning and the diagnosis and treatment of human medical disease and injury." (Dkt. No. 59-2 at 1). Furthermore, as part of his medical residency training, Wood

studied "vehicle mishap investigation" and other forms of injury treatment. (*Id.*).

Based on the record before the Court in this matter, the Court finds that Dr. Wood is qualified to testify as to the motions, forces, and accelerations experienced in the accident and to offer opinions regarding whether they were sufficient to have caused the injuries Plaintiff alleges.

#### 2. Reliability of Dr. Wood's Opinions

Plaintiff also argues that Dr. Wood's opinions are unreliable. (Dkt. No. 53 at 3, 5). Specifically, Plaintiff asserts that, in his causation analysis, Wood failed to (1) personally examine plaintiff, (2) conduct a "full accident reconstruction," (3) personally inspect the accident site, or (4) conduct a coefficient of friction test. (*Id.* at 5). Plaintiff takes issue with the face that Wood used "default information" and that he failed to "account for or include individualized, case-specific facts, circumstances, and evidence." (*Id.* at 3, 5). Plaintiff does not, however, explain why these alleged deficiencies would render his opinions unreliable.

Contrary to Plaintiff's assertion, Dr. Wood's report is meticulous and incorporates individual, case-specific facts. (*See* Dkt. No. 53-2 at 1–20). The alleged deficiencies in Wood's report go to the weight of his testimony, not its admissibility. *See, e.g.*, *14.38 Acres of Land*, 80 F.3d at 1077; *Grant*, 2021 WL 1151560, at \*10. Based on the record before the Court in this case, the Court finds Dr. Wood's opinions sufficiently reliable. Plaintiff's motion to exclude Dr. Wood, (Dkt. No. 53), is **DENIED**.

#### f) Dr. Irmo Marini

Plaintiff moves to exclude opinions of Defendants' retained expert Irmo Marini, Ph.D., ("Dr. Marini"). (Dkt. No.54). Defendants' designation states that "Dr. Marini is a certified life care planner, rehabilitation counselor, and vocational expert." (Dkt. No. 34 at 4). Dr. Marini offers several opinions pertaining to Plaintiff's future potential medical expenses. (Dkt. No. 60-2 at 8–12).

At the outset, the Court observes that Plaintiff's motion is difficult to understand and at times misleading.[10] As best the Court can construe, Plaintiff principally objects to the basis upon which Dr. Marini formed his opinions. (*See* Dkt. No. 54 at 3, 8–9). Specifically, Plaintiff argues that Marini's relies on Dr. Graham's opinions, but knows nothing about the facts or data underlying Dr. Graham's opinion. (*Id.* at 8–9). Thus,

Case 4:21-cv-02473    Document 85-32    Filed 08/16/24 in TXSD    Page 9 of 11

Vazquez v. Aguilera, Not Reported in Fed. Supp. (2022)

Plaintiff argues, Dr. Marini's opinions are unreliable. (*Id.* at 8–9).

**\*11** Plaintiff's argument might potentially have merit if Marini had, in fact, solely relied on Dr. Graham's opinion. *See, e.g.*, *Graves*, 2011 WL 4625403, at \*5 ("[E]xpert opinions ordinarily cannot be based upon the opinions of others.") (citation omitted). However, his opinions are not solely based on Dr. Graham's opinions. Dr. Marini is a certified life-care planner. (Dkt. No. 60-1 at 1). In arriving at his opinions, Marini reviewed Plaintiff's medical and vocational history. (Dkt. No. 60-2 at 1–7). He reviewed the medical records of Plaintiff's treatment following the accident. (*Id.* at 1–7). Marini also reviewed reports from other experts, including Dr. Graham and Plaintiff's own expert, Dr. Jaramillo. (*Id.* at 7–8). Moreover, as discussed *supra*, Dr. Graham's opinion are generally reliable. Therefore, Plaintiff's contention that Marini is unfamiliar with the data underlying Graham's report goes to the weight of his testimony, not its admissibility. *See 14.38 Acres of Land*, 80 F.3d at 1077. Plaintiff's motion to exclude Dr. Marini's opinions, (Dkt. No. 54), is **DENIED**.

### g) Dr. Gilbert Martinez

Finally, Plaintiff has filed a motion to exclude the opinions of Defendants retained expert Gilbert Martinez, Ph.D., ("Dr. Martinez"). (Dkt. No. 55). Defendants' designation of Dr. Martinez states, in relevant part, the following:

> Dr. Martinez is board certified in clinical neuropsychology by the American Board of Professional Psychology and is a licenses psychologist in the state of Texas, and a licensed clinical neuropsychologist in Louisiana. He will opine on the causation of medical injuries claimed by [Plaintiff].

(Dkt. No. 34 at 3). Dr. Martinez offers opinions regarding the extent and nature of psychological or neurological injuries Plaintiff may or may not have sustained from the accident. (Dkt. No. 61-2).

At the outset, the Court agrees with Defendants: Plaintiff's motion is vague and difficult to understand. (Dkt. No. 61 at 1–2). Her motion consists solely of a summary Martinez's report,

and a recitation of the applicable legal standard. (Dkt. No. 55 at 2–8). The motion refers to the fact that Dr. Martinez did not conduct a face-to-face interview of Plaintiff and also asserts a distinction between a forensic psychological, neuropsychological, and traditional therapeutic assessments, without providing support for this distinction or explaining its significance. (*Id.* at 2). The remainder of Plaintiff's motion consists of a recitation of the legal standards under Fed. R. Evid. 702 and *Daubert* and its progeny. (*Id.* at 2–9).

Plaintiff's motion does not assert whether she is even challenging Dr. Martinez's qualifications, the basis of his opinions, or their reliability, and it *certainly* fails to articulate any specific grounds for excluding Dr. Martinez's opinions. Notably, Plaintiff did not file a reply to Defendants' response either contesting their characterization of her motion or clarifying her original motion. Therefore, the Court declines to form arguments on Plaintiff's behalf by considering such a plainly undeveloped motion. *See JMCB*, 336 F. Supp. 3d at 634; *cf. Reagan*, 596 F.3d at 254. Alternatively, the Court finds that Defendants have met their burden of showing that Dr. Martinez's opinions are reliable, based on the information contained in his report, (Dkt. No. 61-2). Plaintiff's motion to exclude Dr. Martinez, (Dkt. No. 55), is **DENIED**.

### III. CONCLUSIONS

In summary, and as set forth in detail above, the Court **ORDERS** as follows:

1. Defendants' Opposed Daubert Motion to Strike and/or Limit the Expert Testimony of Whitney G. Morgan, (Dkt. No. 49), is **GRANTED**;

2. Defendants' Opposed Daubert Challenge to John J. Smith, (Dkt. No. 50), is **DENIED**;

3. Plaintiff's Motion to Exclude and/or Limit the Testimony of Defendants' Designated Expert Witness, Rodney D. Ellis, II, (Dkt. No. 51), is **GRANTED in part** and **DENIED in part**;

4. Plaintiff's Motion to Exclude and/or Limit the Testimony of Defendants' Designated Expert Witness, Michael Graham, MD, (Dkt. No. 52), is **GRANTED in part** and **DENIED in part**;

**Vazquez v. Aguilera, Not Reported in Fed. Supp. (2022)**

Case 4:21-cv-02473    Document 85-32    Filed 08/16/24 in TXSD    Page 10 of 11

**\*12**  5. Plaintiff's Motion to Exclude and/or Limit the Testimony of Defendants' Designated Expert Witness, Rawson L. Wood, (Dkt. No. 53), is **DENIED**;

6. Plaintiff's Motion to Exclude and/or Limit the Testimony of Defendants' Designated Expert Witness, Irmo Marini, (Dkt. No. 54), is **DENIED**; and

7. Plaintiff's Motion to Exclude and/or Limit the Testimony of Defendants' Designated Expert Witness, Gilbert Martinez, (Dkt. No. 55), is **DENIED**

8. Defendants' Opposed Motion for Leave to Supplement Defendants' Response to Plaintiff's Motion to Exclude

and/or Limit the Testimony of Defendants' Designated Expert, Rawson L. Wood, (Dkt. No. 101), is **DENIED**; and,

9. Defendants' Opposed Motion for Leave to Supplement Defendants' Response to Plaintiff's Motion to Exclude and/or Limit the Testimony of Defendants' Designated Expert, Rodney Ellis, II, (Dkt. No. 103), is **DENIED**.

It is so **ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2292888

## Footnotes

1    The FMCSA is a federal agency within the U.S Department of Transportation ("DOT") that is "responsible for regulating and providing safety oversight of commercial motor vehicles (CMVs)." *Who We Are*, U.S. Dep't of Transp., https://www.fmcsa.dot.gov/mission/who (last visited Mar. 25, 2022).

2    The Court refers to regulations promulgated by the FMCSA—and located in the Chapter 49 of the Code of Federal Regulations—as Federal Motor Carrier Safety Regulations ("FMCSRs").

3    Defendants recently filed two motions for leave to supplement their responses to Plaintiff's *Daubert* motions to exclude Rawson Wood and Rodney Ellis. (Dkt. Nos. 101, 103). Plaintiff's motions to exclude those experts were filed on March 15, 2021. (Dkt. Nos. 51, 53). Defendants' responses to these motions were, therefore, due nearly one year ago. S.D. Tex. L.R. 7.3–7.4. As good cause for their late submissions, Defendants merely state they were overwhelmed by a "back log of pending cases and motions created by COVID-19." (Dkt. Nos. 101 at 1–2, 103 at 1–2). Defendants offer no explanation for why they waited almost one year—and until the eve of trial—to move to supplement their responses. Accordingly, the Court finds Defendants have not shown good cause and both motions for leave to supplement, (Dkt. Nos. 101, 103), are denied.

4    In their motion, Defendants also object to Morgan's reliance on "hearsay statements in an incident report" which they argue are "unsubstantiated and unreliable." (Dkt. No. 49 at 6). Although Defendants do not identify this "incident report," it appears they are challenging Morgan's reliance on the Texas Peace Officer's Crash Report prepared by the responding officer on the day of the accident. (*See* Dkt. No. 49-2 at 3). To the extent they are, this argument is unpersuasive. It is well settled that an expert may rely on hearsay when forming their opinions. *See* Fed. R. Evid. 703; *Soden v. Freightliner Corp.*, 714 F.2d 498, 503 (5th Cir. 1983) (explaining that, when examining the basis for an opinion, a court "should focus on the reliability of the opinion and its foundation rather than merely on the fact that it was based, technically speaking, upon hearsay."). Moreover, as a public record, this crash report is presumptively reliable. *See Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991); *Koenig v. Beekmans*, No. 515CV00822RCLRBF, 2018 WL 358307, at \*6 (W.D. Tex. Jan. 9, 2018) (excluding crash report where opponent rebutted presumption of trustworthiness by demonstrating report's unreliability under *Daubert*); *see also* Fed. R. Evid. 803(8) advisory comm. note to 2014 amend. ("Public records have justifiably carried a presumption of reliability[.]"). Defendants make no attempt to rebut this presumption. Therefore, this objection is overruled.

Vazquez v. Aguilera, Not Reported in Fed. Supp. (2022)

Case 4:21-cv-02473   Document 85-32   Filed 08/16/24 in TXSD   Page 11 of 11

In her response, Plaintiff correctly asserts that an accident reconstructionist is not the only kind of expert that can opine on the cause of an accident. (Dkt. No. 63 at 8). Federal courts have permitted experts who are not accident reconstructionists to opine on the cause of an accident. *See, e.g.*, *Stevens Transp., Inc. v. Glob. Transp., LLC*, No. 6:15-CV-552-MHS-JDL, 2016 WL 9244669, at \*4 (E.D. Tex. May 24, 2016). However, those cases involved "experienced accident investigators at the scene of an accident" who were testifying as to the conclusions they derived from their own investigations. *Id.* at \*3–4 (collecting cases). Those cases are, therefore, inapposite.

Defendants state that Smith's opinions are unreliable and would be misleading to the jury. (Dkt. No. 50 at 3, 6). But they offer no explanation for why they believe Smith's opinions are unreliable or why they would be misleading. (*See id.* at 3, 6). The Court declines to consider a plainly undeveloped and unsupported argument. *See, e.g.*, *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("[F]ailure to brief an argument in the district court waives that argument in that court.") (citing cases); *cf. United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (stating that simply listing objections without "further argument[ ] or explanation ... is a failure to brief and constitutes waiver"). However, the Court notes that it has previously rejected a similar challenge to Smith's opinions in a motor vehicle accident case and found his opinions reliable. *Rodriguez*, 2020 WL 6938329, at \*8–9.

Plaintiff also argues that Ellis's opinions are unreliable because he did not visit the accident site or perform a "full accident reconstruction." (Dkt. No. 51 at 10). This argument is irrelevant since Ellis is not opining on the cause of the accident. (*See* Dkt. No. 51-1 at 13–14).

Plaintiff raises two additional challenges. First, Plaintiff objects to Dr. Graham's testimony on the ground that it violates Texas's collateral source rule. (*See* Dkt. No. 52 at 5–6). Under Texas law, the collateral source rule "precludes any reduction in a tortfeasor's liability because of benefits received by the plaintiff from someone else." *Haygood v. De Escabedo*, 356 S.W.3d 390, 394 (Tex. 2011). Graham offers no evidence of "benefits received by [Plaintiff] from someone else." *Perez v. Boecken*, No. SA-19-CV-00375-XR, 2020 WL 3074420, at \*13 (W.D. Tex. June 10, 2020). Therefore, this principle is inapplicable to Dr. Graham's testimony. *See id.*; *Grant v. CRST Expedited, Inc.*, No. 1:18-CV-433, 2021 WL 1151560, at \*10 (E.D. Tex. Jan. 28, 2021) (rejecting identical challenge to Dr. Graham's testimony). Plaintiff also argues for exclusion under Rule 403. (Dkt. No. 52 at 6). However, as discussed *infra*, Graham's opinions are reliable. Moreover, Graham's testimony is relevant to the issue of damages. Therefore, this objection is overruled.

Plaintiff again raises a Rule 403 challenge to Dr. Wood's opinions. (Dkt. No. 8–9). As discussed below, Dr. Wood's opinions are reliable and, therefore, would not confuse or mislead the jury. Similarly, this is a motor vehicle accident case. Plaintiff alleges several damages resulting from this accident. (Dkt. No. 1-4 at 9–10). Wood's testimony speaks directly to issue of whether the forces in that accident would have been able to cause those injuries. Therefore, his opinions are relevant, and Plaintiff's Rule 403 objections are overruled.

For example, Plaintiff states that, in arriving at his opinions, Dr. Marini "simply refers to Dr. Graham's report." (Dkt. No. 54 at 8). However, Marini expressly states he relied on, among other things, his own review of Plaintiff's medical records and personal history, as well as reports from other experts, including Dr. Graham's. (Dkt. No. 60-2 at 1–8). Similarly, Plaintiff states Marini "did not create his own life care plan." (Dkt. No. 54 at 3). But Marini did, in fact, create his own life care plan and devotes four pages of his expert report to laying out this plan. (Dkt. No. 60-2 at 9–12).

---

**End of Document**     © 2024 Thomson Reuters. No claim to original U.S. Government Works.