# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Civil Action No. 4:21-cv-02473 <br><br> <u>CLASS ACTION</u> |

## <u>DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY</u>

Defendants respectfully bring to the Court's attention two September 30, 2024 rulings in *Shupe et al. v. Rocket Co.'s et al.*, No. 1:21-cv-11528 (E.D. Mich.) as supplemental authority in support of Defendants' Opposition to Plaintiffs' Motion for Class Certification (ECF No. 68) and Response to Lead Plaintiffs' Motion to Exclude Opinions of Expert Lucy P. Allen (ECF No. 89).

*Shupe* is a putative securities class action involving the same lead plaintiff—Construction Laborers Pension Trust for Southern California—and lead plaintiffs' counsel—Labaton Keller Sucharow LLP—as in this case. As they did here, the *Shupe* plaintiffs moved for class certification and, after defendants opposed, filed a motion to exclude defendants' expert. In both motions, the arguments made by the *Shupe* plaintiffs are strikingly similar to those made by Lead Plaintiffs here. On September 30, 2024, the *Shupe* court denied both motions in orders that apply with equal force here, confirming that this Court should deny Lead Plaintiffs' Motion for Class Certification and Motion to Exclude Opinions of Lucy P. Allen.[1]

### A. The *Shupe* Class Certification Ruling.

The *Shupe* court denied plaintiffs' motion for class certification, finding that the defendants had "rebutted" the "*Basic* presumption of class-wide investor reliance" by "proving [the] alleged misrepresentations had no impact on the price of Rocket stock." Ex. A at 3. Specifically, the court

---

[1] The *Shupe* Class Certification ruling and Motion to Exclude ruling are attached as Exhibits A and B respectively.

found that, "like in *Goldman*, a considerable mismatch exists between the *generic* nature of the alleged misrepresentations and the *specific* revelation" contained in the alleged corrective disclosure. *Id*. at 51.

The *Shupe* plaintiffs had alleged the following statements were misleading:

- "Rocket saw 'strong consumer demand' and an 'opportunity' to invest as interest rates rose." *Id*.

- "Rocket's direct-to-consumer and partner networks were generally 'growing.'" *Id*.

- "Rocket 'take[s]' rising interest rates as an 'opportunity to grow market share' and that he thought the upcoming 'cycles' would be good for Rocket's business." *Id*.

The court compared these statements with the "alleged corrective disclosure," which "disclos[ed] that Defendants projected (1) '[c]losed loan volume of between $82.5 billion and 87.5 billion'; (2) '[n]et rate lock volume between $81.5 billion and $88.5 billion'; and (3) '[g]ain on sale margins of 2.65% to 2.95%.'" *Id*. at 52. The court noted that this "alleged corrective disclosure" was "markedly more specific" than the alleged "misrepresentations," which, after *Goldman*, "presents 'important evidence' that [defendant's] alleged misrepresentations had no price impact." *Id*.

Moreover, the court relied on the findings of Dr. Laura Starks—defendants' price impact expert—as "fatal[] for Plaintiffs." *Id*. Similar to the content analysis done by Lucy Allen here, "Dr. Starks reviewed 'sell-side' analyst reports about Rocket stock, authored before, during, and after the Class Period," which reports, Dr. Starks explained, "would discuss or reference any statements made by Rocket executives which the analyst would interpret as important or indicative of a potential price impact." *Id*. at 48. Thus, if the "alleged misrepresentations had the price impact Plaintiffs allege, Dr. Starks opined that these statements would have been at least referenced in relevant sell-side analyst reports." *Id*. The court noted that "Dr. Starks found 'no such evidence' within her review of 'at least 50' sell-side analyst reports issued by 17 different analysts about

Rocket stock during the Class Period." *Id.* The court found that such evidence "'sever[s] the link between' Plaintiffs' alleged 'back-end price drop' and their alleged 'front-end misrepresentation[s].'" *Id.* at 52 (citing *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74, 104 (2d Cir. 2023)).

Accordingly, the court held that the defendants carried their burden to show "by a preponderance of the evidence—that [the] alleged, generic misrepresentations had no impact on the price of Rocket stock." *Id.* "Without price impact, Plaintiffs' ability to invoke the *Basic* presumption of classwide investor reliance 'completely collapse[d], rendering class certification inappropriate.'" *Id.* at 52–53 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283 (2014)).

### B. The *Shupe* Motion to Exclude Ruling.

As Lead Plaintiffs do here, the *Shupe* plaintiffs sought to avert the force of the defendants' expert's content analysis by moving to exclude it. Specifically, the *Shupe* plaintiffs argued that Dr. Starks's analysis "should be excluded because . . . her expert opinion is not relevant; and [] her expert opinion is unreliable." Ex. B at 52. The court rejected this argument and denied the motion.

As to relevance, the *Shupe* plaintiffs "argue[d] that Dr. Starks's conclusion is not relevant or helpful—and thus not proper subject matter for expert testimony—because her conclusion is based 'solely upon her subjective reading of sell-side reports[.]'" *Id.* at 53. The court found that this argument could "be easily disposed of." *Id.* It noted that "Rule 702's relevancy—or 'helpfulness'—requirement has been interpreted to mean that the scientific testimony must 'fit' the facts of the case, that is, there must be a connection between the scientific research . . . being offered and the disputed . . . issue[] in the case." *Id.* at 54. "Evidence that relevant analyst reports issued during a proposed class period did *not* reflect alleged fraudulent misrepresentations about a

security is considered squarely relevant—if not dispositive—to the price impact analysis." *Id*. (citation omitted).  Accordingly, "Dr. Starks's price-impact conclusions [we]re helpful and relevant to this Court's class certification determination." *Id*.

As to reliability, the *Shupe* plaintiffs argued that "Dr. Starks's opinion is 'based exclusively on her subjective analysis of analyst reports' rather than any 'scientific principles.'" *Id*. at 55.  The court rejected this contention as well, stating "Dr. Starks employed qualitative content analysis when she synthesized all relevant Rocket analyst reports, and drew conclusions from these reports based on her education and experience in financial economics and investor influence," and "this Court recognizes that content analysis is 'not junk science' and is 'generally reliable' despite some subjectivity." *Id*.  The *Shupe*-plaintiffs also argued that "Dr. Starks unreliably and impermissibly 'cherry-picked' relevant data by reviewing only analyst reports and excluding other, potentially contradictory, information." *Id*. at 56.  The court similarly rejected this argument, stating "experts are not expected to review '*all* the facts and data' that may hypothetically relate to their opinions." *Id*.  Finally, the *Shupe* plaintiffs "argue[d] [that] Dr. Starks's opinion [wa]s unreliable because her technique is not testable, has not been peer-reviewed, has no known error rate, and is not generally accepted in the economic community." *Id*. at 57.  The court also rejected this argument, finding that "peer-review, error rate, testability, and scientific acceptance are inapposite to assess the reliability of Dr. Starks's review of sell-side analyst reports," and that "qualitative content analysis is generally considered reliable." *Id*.

Respectfully submitted,


BAKER BOTTS L.L.P.

By: */s/ David D. Sterling w/p*
    David D. Sterling
       Attorney-In-Charge
    State Bar No. 19170000
    Federal I.D. No. 07079
    Amy Pharr Hefley
    State Bar No. 24046046
    Anthony J. Lucisano
    State Bar No. 24102118
    Federal I.D. No. 3369146
    C. Frank Mace
    State Bar No. 24110609
    Federal I.D. No. 3385915
    910 Louisiana Street
    Houston, Texas 77002
    (713) 229-1946
    (713) 229-7946 (Fax)
    david.sterling@bakerbotts.com
    amy.hefley@bakerbotts.com
    anthony.lucisano@bakerbotts.com
    frank.mace@bakerbotts.com

    ATTORNEYS FOR DEFENDANTS CONCHO
    RESOURCES INC., CONOCOPHILLIPS, AS
    SUCCESSOR IN INTEREST TO CONCHO
    RESOURCES INC., TIMOTHY LEACH, JACK F.
    HARPER, AND C. WILLIAM GIRAUD

By: */s/ Robert Ritchie*
Michael C. Holmes
Texas Bar No. 24002307
Southern District Bar No. 23716
Robert Ritchie
Texas Bar No. 24079213
Southern District Bar No. 3089959
K. Virginia Burke DeBeer
Texas Bar No. 24097437
Southern District Bar No. 3472047
VINSON & ELKINS LLP
2001 Ross Ave., Suite 3900
Dallas, TX 75201
Tel: (214) 220-7700
Fax: (214) 999-7923
mholmes@velaw.com
rritchie@velaw.com
vdebeer@velaw.com

CO-COUNSEL FOR DEFENDANTS TIMOTHY
LEACH, AND C. WILLIAM GIRAUD

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 8, 2024, a true and correct copy of the foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Robert Ritchie*