# EXHIBIT 5

Case 4:21-cv-02473 Document 103-8 Filed 01/16/25 in TXSD Page 2 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)
134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

KeyCite Yellow Flag - Negative Treatment

Declined to Extend by   In re Loestrin 24 FE Antitrust Litigation,   D.R.I., October 17, 2019

134 S.Ct. 2398
Supreme Court of the United States

HALLIBURTON CO., et al., Petitioners
v.
ERICA P. JOHN FUND, INC., fka Archdiocese
of Milwaukee Supporting Fund, Inc.

No. 13–317
|
Argued March 5, 2014.
|
Decided June 23, 2014.

**Synopsis**

**Background:** Investor, on behalf of itself and others similarly situated, filed putative class action against corporation and its chief executive officer (CEO) alleging violations of § 10(b) and Rule 10b–5. The United States District Court for the Northern District of Texas, Barbara M.G. Lynn, J., 2008 WL 4791492, denied class certification, and investor appealed. The United States Court of Appeals for the Fifth Circuit, Reavley, Circuit Judge, 597 F.3d 330, affirmed. Certiorari was granted. The Supreme Court, Chief Justice Roberts, ─── U.S. ───, 131 S.Ct. 2179, 180 L.Ed.2d 24, vacated and remanded. The Court of Appeals, 647 F.3d 533, then reversed and remanded the district court's judgment. On remand, the District Court, Lynn, J., 2012 WL 565997, certified the class and defendants appealed. The Court of Appeals, W. Eugene Davis, Circuit Judge, 718 F.3d 423, affirmed. Certiorari was again granted.

**[Holding:]** The Supreme Court, Chief Justice Roberts, held that defendants were entitled to opportunity before class certification to defeat presumption that stock price reflected material misrepresentations.

Vacated and remanded.

Justice Ginsburg filed a concurring opinion in which Justice Breyer and Justice Sotomayor joined.

Justice Thomas filed an opinion concurring in judgment in which Justice Scalia and Justice Alito joined.

**Procedural Posture(s):** On Appeal.

West Headnotes (18)

**[1]** **Courts** ◄► Previous Decisions as Controlling or as Precedents

Before overturning a long-settled precedent, the Supreme Court requires special justification, not just an argument that the precedent was wrongly decided.

33 Cases that cite this headnote

**[2]** **Action** ◄► Statutory rights of action

**Securities Regulation** ◄► Existence of private cause of action

Although § 10(b) does not create an express private cause of action, courts recognize an implied private cause of action to enforce the provision and its implementing regulation. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

24 Cases that cite this headnote

**[3]** **Securities Regulation** ◄► Manipulative, Deceptive or Fraudulent Conduct

To recover damages for violations of § 10(b) and Rule 10b–5, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

299 Cases that cite this headnote

**[4]** **Securities Regulation** ◄► Reliance

The reliance element of section 10(b) or Rule 10b–5 cause of action ensures that

Case 4:21-cv-02473 Document 103-8 Filed 01/16/25 in TXSD Page 3 of 24

**Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)**

134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

there is a proper connection between a defendant's misrepresentation and a plaintiff's injury. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

109 Cases that cite this headnote

**[5]**  **Securities Regulation** 🔑 Reliance

The traditional and most direct way a plaintiff can demonstrate reliance on section 10(b) or Rule 10b–5 cause of action is by showing that he was aware of a company's statement and engaged in a relevant transaction, e.g., purchasing common stock, based on that specific misrepresentation. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

12 Cases that cite this headnote

**[6]**  **Securities Regulation** 🔑 Fraud on the market

In Rule 10b–5 action, plaintiff may invoke rebuttable presumption of reliance, rather than proving direct reliance on a misrepresentation, by demonstrating: (1) that alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in efficient market, and (4) that plaintiff traded the stock between time the misrepresentations were made and when the truth was revealed. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

177 Cases that cite this headnote

**[7]**  **Courts** 🔑 Previous Decisions as Controlling or as Precedents

The principle of stare decisis has special force in respect to statutory interpretation because Congress remains free to alter what courts have done.

22 Cases that cite this headnote

**[8]**  **Securities Regulation** 🔑 Fraud on the market

The presumption created in *Basic Inc. v. Levinson* that a public, material

misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation, does not eliminate the requirement in a Rule 10b–5 cause of action that a plaintiff prove that he relied on a misrepresentation made by the defendant; rather, the presumption provides an alternative means of satisfying that requirement, and while the presumption makes it easier for plaintiffs to prove reliance, it does not alter the elements of the Rule 10b–5 cause of action and thus maintains the action's original legal scope. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

5 Cases that cite this headnote

**[9]**  **Federal Civil Procedure** 🔑 Evidence; pleadings and supplementary material

Plaintiffs wishing to proceed through a class action must actually prove, not simply plead, that their proposed class satisfies each requirement of the class action rule, including, if applicable, the predominance requirement. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

92 Cases that cite this headnote

**[10]**  **Federal Civil Procedure** 🔑 Stockholders, investors, and depositors

In securities class action cases, the crucial requirement for class certification will usually be the predominance requirement. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

72 Cases that cite this headnote

**[11]**  **Federal Civil Procedure** 🔑 Stockholders, investors, and depositors

**Securities Regulation** 🔑 Fraud on the market

The presumption created in *Basic Inc. v. Levinson* that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the

Case 4:21-cv-02473 Document 103-8 Filed 01/16/25 in TXSD Page 4 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)

134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

misrepresentation, does not relieve plaintiffs in a Rule 10b–5 action of the burden of proving, before class certification, that the class action rule's predominance requirement is met; instead, a plaintiff satisfies that burden by proving the prerequisites for invoking the presumption, namely, publicity, materiality, market efficiency, and market timing, and the burden of proving those prerequisites still rests with plaintiffs and, with the exception of materiality, must be satisfied before class certification. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.; 17 C.F.R. § 240.10b–5.

64 Cases that cite this headnote

[12]    **Federal Civil Procedure**  Stockholders, investors, and depositors

**Securities Regulation**  Fraud on the market

Defendants in a Rule 10b–5 action can rebut presumption that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation, with respect to an individual plaintiff in a class action by showing that he did not rely on the integrity of the market price in trading stock. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5; Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

100 Cases that cite this headnote

[13]    **Securities Regulation**  Fraud on the market

The fundamental premise underlying the presumption in a Rule 10b–5 suit that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation, is that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction; if it was not, then there is no grounding for

any contention that the investor indirectly relied on that misrepresentation through his reliance on the integrity of the market price. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

50 Cases that cite this headnote

[14]    **Securities Regulation**  Fraud on the market

Defendants in a Rule 10b–5 suit can rebut presumption that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation, by showing, among other things, that the particular misrepresentation at issue did not affect the stock's market price. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

112 Cases that cite this headnote

[15]    **Securities Regulation**  Fraud on the market

Any showing that severs the link between the alleged misrepresentation and the price received or paid by the plaintiff in a Rule 10b–5 action will be sufficient to rebut presumption that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation, because the basis for finding that the fraud had been transmitted through market price would be gone. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

92 Cases that cite this headnote

[16]    **Federal Civil Procedure**  Stockholders, investors, and depositors

**Securities Regulation**  Fraud on the market

Without the presumption that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on

Case 4:21-cv-02473   Document 103-8   Filed 01/16/25 in TXSD   Page 5 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)

134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

the misrepresentation, a Rule 10b–5 suit cannot proceed as a class action, as each plaintiff would have to prove reliance individually, so common issues would not predominate over individual ones, as required by the class action rule; price impact is thus an essential precondition for any Rule 10b–5 class action. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5; Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A.

99 Cases that cite this headnote

[17]    **Federal Civil Procedure** 🗝 Stockholders, investors, and depositors

**Securities Regulation** 🗝 Fraud on the market

In a Rule 10b–5 class action, if reliance is to be shown through the presumption that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation, the publicity and market efficiency prerequisites must be proved before class certification; without proof of those prerequisites, the fraud-on-the-market theory underlying the presumption completely collapses, rendering class certification inappropriate. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

50 Cases that cite this headnote

[18]    **Federal Civil Procedure** 🗝 Stockholders, investors, and depositors

**Securities Regulation** 🗝 Fraud on the market

Defendants in a Rule 10b–5 class action may seek to defeat the presumption that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation, at the class certification stage through direct as well as indirect price impact evidence. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

79 Cases that cite this headnote

**\*\*2401** *Syllabus* [*]

Investors can recover damages in a private securities fraud action only if they prove that they relied on the defendant's misrepresentation in deciding to buy or sell a company's stock. In *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194, this Court held that investors could satisfy this reliance requirement by **\*\*2402** invoking a presumption that the price of stock traded in an efficient market reflects all public, material information—including material misrepresentations. The Court also held, however, that a defendant could rebut this presumption by showing that the alleged misrepresentation did not actually affect the stock price—that is, that it had no "price impact."

Respondent Erica P. John Fund, Inc. (EPJ Fund), filed a putative class action against Halliburton and one of its executives (collectively Halliburton), alleging that they made misrepresentations designed to inflate Halliburton's stock price, in violation of section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b–5. The District Court initially denied EPJ Fund's class certification motion, and the Fifth Circuit affirmed. But this Court vacated that judgment, concluding that securities fraud plaintiffs need not prove loss causation—a causal connection between the defendants' alleged misrepresentations and the plaintiffs' economic losses—at the class certification stage in order to invoke *Basic* 's presumption of reliance. On remand, Halliburton argued that class certification was nonetheless inappropriate because the evidence it had earlier introduced to disprove loss causation also showed that its alleged misrepresentations had not affected its stock price. By demonstrating the absence of any "price impact," Halliburton contended, it had rebutted the *Basic* presumption. And without the benefit of that presumption, investors would have to prove reliance on an individual basis, meaning that individual issues would predominate over common ones and class certification would be inappropriate under Federal Rule of Civil Procedure 23(b)(3). The District Court rejected Halliburton's argument and certified the class. The Fifth Circuit affirmed, concluding that Halliburton could use its price impact evidence to rebut the *Basic* presumption only at trial, not at the class certification stage.

Case 4:21-cv-02473 Document 103-8 Filed 01/16/25 in TXSD Page 6 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)
134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

*Held* :

1. Halliburton has not shown a "special justification," *Dickerson v. United States,* 530 U.S. 428, 443, 120 S.Ct. 2326, 147 L.Ed.2d 405, for overruling *Basic* 's presumption of reliance. Pp. 2407 – 2413.

(a) To recover damages under section 10(b) and Rule 10b–5, a plaintiff must prove, as relevant here, " 'reliance upon the misrepresentation or omission.' " *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,* 568 U.S. ——, ——, 133 S.Ct. 1184. The Court recognized in *Basic,* however, that requiring direct proof of reliance from every individual plaintiff "would place an unnecessarily unrealistic evidentiary burden on the ... plaintiff who has traded on an impersonal market," 485 U.S., at 245, 108 S.Ct. 978, and "effectively would" prevent plaintiffs "from proceeding with a class action" in Rule 10b–5 suits, *id.,* at 242, 108 S.Ct. 978. To address these concerns, the Court held that plaintiffs could satisfy the reliance element of a Rule 10b–5 action by invoking a rebuttable presumption of reliance. The Court based that presumption on what is known as the "fraud-on-the-market" theory, which holds that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Id.,* at 246, 108 S.Ct. 978. The Court also noted that the typical "investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *Id.,* at 247, 108 S.Ct. 978. As a result, whenever an investor buys or sells stock at the market price, his "reliance on any public material misrepresentations ... may be presumed for purposes of a Rule 10b–5 action." *Id.* at 247, 108 S.Ct. 978. *Basic* also emphasized that the presumption of **\*\*2403** reliance was rebuttable rather than conclusive. Pp. 2407 – 2408.

(b) None of Halliburton's arguments for overruling *Basic* so discredit the decision as to constitute a "special justification." Pp. 2408 – 2411.

(1) Halliburton first argues that the *Basic* presumption is inconsistent with Congress's intent in passing the 1934 Exchange Act—the same argument made by the dissenting Justices in *Basic.* The *Basic* majority did not find that argument persuasive then, and Halliburton has given no new reason to endorse it now. Pp. 2408 – 2409.

(2) Halliburton also contends that *Basic* rested on two premises that have been undermined by developments in economic theory. First, it argues that the *Basic* Court espoused "a robust view of market efficiency" that is no longer tenable in light of empirical evidence ostensibly showing that material, public information often is not quickly incorporated into stock prices. The Court in *Basic* acknowledged, however, the debate among economists about the efficiency of capital markets and refused to endorse "any particular theory of how quickly and completely publicly available information is reflected in market price." 485 U.S., at 248, n. 28, 108 S.Ct. 978. The Court instead based the presumption of reliance on the fairly modest premise that "market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices." *Id.,* at 247, n. 24, 108 S.Ct. 978. Moreover, in making the presumption rebuttable, *Basic* recognized that market efficiency is a matter of degree and accordingly made it a matter of proof. Halliburton has not identified the kind of fundamental shift in economic theory that could justify overruling a precedent on the ground that it misunderstood, or has since been overtaken by, economic realities.

Halliburton also contests the premise that investors "invest 'in reliance on the integrity of [the market] price,' " *id.,* at 247, 108 S.Ct. 978, identifying a number of classes of investors for whom "price integrity" is supposedly "marginal or irrelevant." But *Basic* never denied the existence of such investors, who in any event rely at least on the facts that market prices will incorporate public information within a reasonable period and that market prices, however inaccurate, are not distorted by fraud. Pp. 2409 – 2411.

(c) The principle of *stare decisis* has " 'special force' " "in respect to statutory interpretation" because " 'Congress remains free to alter what [the Court has] done.' " *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 139, 128 S.Ct. 750, 169 L.Ed.2d 591. So too with *Basic* 's presumption of reliance. The presumption is not inconsistent with this Court's more recent decisions construing the Rule 10b–5 cause of action. In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119, and *Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 128 S.Ct. 761, 169 L.Ed.2d 627, the Court declined to effectively eliminate the reliance element by extending liability to entirely new categories of defendants who themselves had not made any material, public misrepresentation. The *Basic* presumption, by contrast, merely provides an alternative means of satisfying the reliance element. Nor is the *Basic* presumption inconsistent with the Court's recent decisions governing

Case 4:21-cv-02473    Document 103-8    Filed 01/16/25 in TXSD    Page 7 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)
134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

class action certification, which require plaintiffs to *prove*— not simply plead—that their proposed class satisfies each requirement of Federal Rule of Civil Procedure 23, including, if applicable, the predominance requirement of Rule 23(b)(3). See, *e.g.,* **2404 *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. ——, ——, 131 S.Ct. 2541. The *Basic* presumption does not relieve plaintiffs of that burden but rather sets forth what plaintiffs must prove to demonstrate predominance. Finally, Halliburton emphasizes the possible harmful consequences of the securities class actions facilitated by the *Basic* presumption, but such concerns are more appropriately addressed to Congress, which has in fact responded, to some extent, to many of them. Pp. 2411 – 2413.

2. For the same reasons the Court declines to overrule *Basic* 's presumption of reliance, it also declines to modify the prerequisites for invoking the presumption by requiring plaintiffs to prove "price impact" directly at the class certification stage. The *Basic* presumption incorporates two constituent presumptions: First, if a plaintiff shows that the defendant's misrepresentation was public and material and that the stock traded in a generally efficient market, he is entitled to a presumption that the misrepresentation affected the stock price. Second, if the plaintiff also shows that he purchased the stock at the market price during the relevant period, he is entitled to a further presumption that he purchased the stock in reliance on the defendant's misrepresentation. Requiring plaintiffs to prove price impact directly would take away the first constituent presumption. Halliburton's argument for doing so is the same as its argument for overruling the *Basic* presumption altogether, and it meets the same fate. Pp. 2413 – 2414.

3. The Court agrees with Halliburton, however, that defendants must be afforded an opportunity to rebut the presumption of reliance before class certification with evidence of a *lack* of price impact. Defendants may already introduce such evidence at the merits stage to rebut the *Basic* presumption, as well as at the class certification stage to counter a plaintiff's showing of market efficiency. Forbidding defendants to rely on the same evidence prior to class certification for the particular purpose of rebutting the presumption altogether makes no sense, and can readily lead to results that are inconsistent with *Basic* 's own logic. *Basic* allows plaintiffs to establish price impact indirectly, by showing that a stock traded in an efficient market and that a defendant's misrepresentations were public and material. But an indirect proxy should not preclude consideration of a defendant's direct, more salient evidence showing that an

alleged misrepresentation did not actually affect the stock's price and, consequently, that the *Basic* presumption does not apply. *Amgen* does not require a different result. There, the Court held that materiality, though a prerequisite for invoking the *Basic* presumption, should be left to the merits stage because it does not bear on the predominance requirement of Rule 23(b)(3). In contrast, the fact that a misrepresentation has price impact is "*Basic* 's fundamental premise." *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. ——, ——, 131 S.Ct. 2179, 180 L.Ed.2d 24. It thus has everything to do with the issue of predominance at the class certification stage. That is why, if reliance is to be shown through the *Basic* presumption, the publicity and market efficiency prerequisites must be proved before class certification. Given that such indirect evidence of price impact will be before the court at the class certification stage in any event, there is no reason to artificially limit the inquiry at that stage by excluding direct evidence of price impact. Pp. 2414 – 2417.

718 F.3d 423, vacated and remanded.

ROBERTS, C.J., delivered the opinion of the Court, in which KENNEDY, **2405 GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. GINSBURG, J., filed a concurring opinion, in which BREYER and SOTOMAYOR, JJ., joined. THOMAS, J., filed an opinion concurring in the judgment, in which SCALIA and ALITO, JJ., joined.

**Attorneys and Law Firms**

Aaron M. Streett, Austin, TX, for Petitioners.

David Boies, Armonk, NY, for Respondent.

Malcolm L. Stewart, for the United States as amicus curiae, by special leave of the Court, supporting the Respondent.

Evan A. Young, Baker Botts L.L.P., Austin, TX, Wm. Bradford Reynolds, Baker Botts L.L.P., Washington, D.C., David D. Sterling, Aaron M. Streett, Counsel of Record, Benjamin A. Geslison, Shane Pennington, Edmund G. LaCour, Jr., Baker Botts L.L.P., Houston, TX, for Petitioners.

Lewis Kahn, Neil Rothstein, Kahn Swick & Foti, LLC, Madisonville, LA, Kim E. Miller, Esq., Kahn Swick & Foti, LLC, New York, NY, Special Counsel to Lead Plaintiff and the Class, E. Lawrence Vincent, Law Office of Joe H. Staley, Jr., P.C., Dallas, TX, David Boies, Counsel of Record, Boies, Schiller & Flexner LLP, Armonk, NY, Carl E.

Case 4:21-cv-02473 Document 103-8 Filed 01/16/25 in TXSD Page 8 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)

134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

Goldfarb, Andrew L. Adler, Boies, Schiller & Flexner LLP, Ft. Lauderdale, FL, for Respondent.

**Opinion**

Chief Justice ROBERTS delivered the opinion of the Court.

 **\*263** Investors can recover damages in a private securities fraud action only if they prove that they relied on the defendant's misrepresentation in deciding to buy or sell a company's stock. In *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), we held that investors could satisfy this reliance requirement by invoking a presumption that the price of stock traded in an efficient market reflects all public, material information—including material misstatements. In such a case, we concluded, anyone who buys or sells the stock at the market price may be considered to have relied on those misstatements.

We also held, however, that a defendant could rebut this presumption in a number of ways, including by showing that the alleged misrepresentation did not actually affect the **\*264** stock's price—that is, that the misrepresentation had no "price impact." The questions presented are whether we should overrule or modify *Basic* 's presumption of reliance and, if not, whether defendants should nonetheless be afforded an opportunity in securities class action cases to rebut the presumption at the class certification stage, by showing a lack of price impact.


I


Respondent Erica P. John Fund, Inc. (EPJ Fund), is the lead plaintiff in a putative class action against Halliburton and one of its executives (collectively Halliburton) alleging violations of section 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, 17 CFR § 240.10b–5 (2013). According to EPJ Fund, between June 3, 1999, and December 7, 2001, Halliburton made a series of misrepresentations regarding its potential liability in asbestos litigation, its expected revenue from certain construction contracts, and the anticipated benefits of its merger with another company—all in an attempt to inflate the price of its stock. Halliburton subsequently made a number **\*\*2406** of corrective disclosures, which, EPJ Fund contends, caused the company's stock price to drop and investors to lose money.

EPJ Fund moved to certify a class comprising all investors who purchased Halliburton common stock during the class period. The District Court found that the proposed class satisfied all the threshold requirements of Federal Rule of Civil Procedure 23(a): It was sufficiently numerous, there were common questions of law or fact, the representative parties' claims were typical of the class claims, and the representatives could fairly and adequately protect the interests of the class. App. to Pet. for Cert. 54a. And except for one difficulty, the court would have also concluded that the class satisfied the requirement of Rule 23(b)(3) that "the questions of law or fact common to class members predominate over any questions affecting only individual members." See **\*265** *id.,* at 55a, 98a. The difficulty was that Circuit precedent required securities fraud plaintiffs to prove "loss causation"—a causal connection between the defendants' alleged misrepresentations and the plaintiffs' economic losses—in order to invoke *Basic* 's presumption of reliance and obtain class certification. App. to Pet. for Cert. 55a, and n. 2. Because EPJ Fund had not demonstrated such a connection for any of Halliburton's alleged misrepresentations, the District Court refused to certify the proposed class. *Id.,* at 55a, 98a. The United States Court of Appeals for the Fifth Circuit affirmed the denial of class certification on the same ground. *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.,* 597 F.3d 330 (2010).

We granted certiorari and vacated the judgment, finding nothing in "*Basic* or its logic" to justify the Fifth Circuit's requirement that securities fraud plaintiffs prove loss causation at the class certification stage in order to invoke *Basic* 's presumption of reliance. *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. ——, ——, 131 S.Ct. 2179, 2185–2186, 180 L.Ed.2d 24 (2011) (*Halliburton I* ). "Loss causation," we explained, "addresses a matter different from whether an investor relied on a misrepresentation, presumptively or otherwise, when buying or selling a stock." *Ibid.* We remanded the case for the lower courts to consider "any further arguments against class certification" that Halliburton had preserved. *Id.,* at ——, 131 S.Ct., at 2187.

On remand, Halliburton argued that class certification was inappropriate because the evidence it had earlier introduced to disprove loss causation also showed that none of its alleged misrepresentations had actually affected its stock price. By demonstrating the absence of any "price impact," Halliburton contended, it had rebutted *Basic* 's presumption that the members of the proposed class had relied on its

Case 4:21-cv-02473   Document 103-8   Filed 01/16/25 in TXSD   Page 9 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)
134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

alleged misrepresentations simply by buying or selling its stock at the market price. And without the benefit of the *Basic* presumption, investors would have to prove reliance on an individual basis, meaning that individual **\*266** issues would predominate over common ones. The District Court declined to consider Halliburton's argument, holding that the *Basic* presumption applied and certifying the class under Rule 23(b)(3). App. to Pet. for Cert. 30a.

The Fifth Circuit affirmed. 718 F.3d 423 (2013). The court found that Halliburton had preserved its price impact argument, but to no avail. *Id.,* at 435–436. While acknowledging that "Halliburton's price impact evidence could be used at the trial on the merits to refute the presumption of reliance," *id.,* at 433, the court held that Halliburton could not use such evidence for that purpose at the class certification **\*\*2407** stage, *id.,* at 435. "[P]rice impact evidence," the court explained, "does not bear on the question of common question predominance [under Rule 23(b)(3) ], and is thus appropriately considered only on the merits after the class has been certified." *Ibid.*

We once again granted certiorari, 571 U.S. ——, 134 S.Ct. 636, 187 L.Ed.2d 415 (2013), this time to resolve a conflict among the Circuits over whether securities fraud defendants may attempt to rebut the *Basic* presumption at the class certification stage with evidence of a lack of price impact. We also accepted Halliburton's invitation to reconsider the presumption of reliance for securities fraud claims that we adopted in *Basic*.

## II

**[1]**   Halliburton urges us to overrule *Basic* 's presumption of reliance and to instead require every securities fraud plaintiff to prove that he actually relied on the defendant's misrepresentation in deciding to buy or sell a company's stock. Before overturning a long-settled precedent, however, we require "special justification," not just an argument that the precedent was wrongly decided. *Dickerson v. United States,* 530 U.S. 428, 443, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (internal quotation marks omitted). Halliburton has failed to make that showing.

## A

**[2]**   **[3]**   **\*267** Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b–5 prohibit making any material misstatement or omission in connection with the purchase or sale of any security. Although section 10(b) does not create an express private cause of action, we have long recognized an implied private cause of action to enforce the provision and its implementing regulation. See *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 730, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). To recover damages for violations of section 10(b) and Rule 10b–5, a plaintiff must prove " '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.' " *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,* 568 U.S. ——, ——, 133 S.Ct. 1184, 1192, 185 L.Ed.2d 308 (2013) (quoting *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. ——, ——, 131 S.Ct. 1309, 1317–1318, 179 L.Ed.2d 398 (2011)).

**[4]**   **[5]**   The reliance element " 'ensures that there is a proper connection between a defendant's misrepresentation and a plaintiff's injury.' " 568 U.S., at ——, 133 S.Ct., at 1192 (quoting *Halliburton I,* 563 U.S., at ——, 131 S.Ct., at 2184–2185). "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction —*e.g.,* purchasing common stock—based on that specific misrepresentation." *Id.,* at ——, 133 S.Ct., at 1192.

In *Basic,* however, we recognized that requiring such direct proof of reliance "would place an unnecessarily unrealistic evidentiary burden on the Rule 10b–5 plaintiff who has traded on an impersonal market." 485 U.S., at 245, 108 S.Ct. 978. That is because, even assuming an investor could prove that he was aware of the misrepresentation, he would still have to "show a speculative state of facts, *i.e.,* how he would have acted ... if the misrepresentation had not been made." *Ibid.*

**\*268** We also noted that "[r]equiring proof of individualized reliance" from every securities fraud plaintiff "effectively would ... **\*\*2408** prevent [ ] [plaintiffs] from proceeding with a class action" in Rule 10b–5 suits. *Id.,* at 242, 108 S.Ct. 978. If every plaintiff had to prove direct reliance on the defendant's misrepresentation, "individual issues then would ... overwhelm[ ] the common ones," making certification under Rule 23(b)(3) inappropriate. *Ibid.*

[6] To address these concerns, *Basic* held that securities fraud plaintiffs can in certain circumstances satisfy the reliance element of a Rule 10b–5 action by invoking a rebuttable presumption of reliance, rather than proving direct reliance on a misrepresentation. The Court based that presumption on what is known as the "fraud-on-the-market" theory, which holds that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Id.,* at 246, 108 S.Ct. 978. The Court also noted that, rather than scrutinize every piece of public information about a company for himself, the typical "investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price"—the belief that it reflects all public, material information. *Id.,* at 247, 108 S.Ct. 978. As a result, whenever the investor buys or sells stock at the market price, his "reliance on any public material misrepresentations ... may be presumed for purposes of a Rule 10b–5 action." *Ibid.*

Based on this theory, a plaintiff must make the following showings to demonstrate that the presumption of reliance applies in a given case: (1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed. See *id.,* at 248, n. 27, 108 S.Ct. 978; *Halliburton I, supra,* at ——, 131 S.Ct., at 2185–2186.

At the same time, *Basic* emphasized that the presumption of reliance was rebuttable rather than conclusive. Specifically, *269 "[a]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." 485 U.S., at 248, 108 S.Ct. 978. So for example, if a defendant could show that the alleged misrepresentation did not, for whatever reason, actually affect the market price, or that a plaintiff would have bought or sold the stock even had he been aware that the stock's price was tainted by fraud, then the presumption of reliance would not apply. *Id.,* at 248–249, 108 S.Ct. 978. In either of those cases, a plaintiff would have to prove that he directly relied on the defendant's misrepresentation in buying or selling the stock.

B

Halliburton contends that securities fraud plaintiffs should *always* have to prove direct reliance and that the *Basic* Court erred in allowing them to invoke a presumption of reliance instead. According to Halliburton, the *Basic* presumption contravenes congressional intent and has been undermined by subsequent developments in economic theory. Neither argument, however, so discredits *Basic* as to constitute "special justification" for overruling the decision.

1

Halliburton first argues that the *Basic* presumption is inconsistent with Congress's intent in passing the 1934 Exchange Act. Because "[t]he Section 10(b) action is a 'judicial construct that Congress did not enact,' " this Court, Halliburton insists, "must identify—and borrow from—the **2409 express provision that is 'most analogous to the private 10b–5 right of action.' " Brief for Petitioners 12 (quoting *Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 164, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008); *Musick, Peeler & Garrett v. Employers Ins. of Wausau,* 508 U.S. 286, 294, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993)). According to Halliburton, the closest analogue to section 10(b) is section 18(a) of the Act, which creates an express private *270 cause of action allowing investors to recover damages based on misrepresentations made in certain regulatory filings. 15 U.S.C. § 78r(a). That provision requires an investor to prove that he bought or sold stock "in reliance upon" the defendant's misrepresentation. *Ibid.* In ignoring this direct reliance requirement, the argument goes, the *Basic* Court relieved Rule 10b–5 plaintiffs of a burden that Congress would have imposed had it created the cause of action.

EPJ Fund contests both premises of Halliburton's argument, arguing that Congress has affirmed *Basic* 's construction of section 10(b) and that, in any event, the closest analogue to section 10(b) is not section 18(a) but section 9, 15 U.S.C. § 78i—a provision that does not require actual reliance.

We need not settle this dispute. In *Basic,* the dissenting Justices made the same argument based on section 18(a) that Halliburton presses here. See 485 U.S., at 257–258, 108 S.Ct. 978 (White, J., concurring in part and dissenting in part). The *Basic* majority did not find that argument persuasive then, and Halliburton has given us no new reason to endorse it now.

Case 4:21-cv-02473 Document 103-8 Filed 01/16/25 in TXSD Page 11 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)
134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

2

Halliburton's primary argument for overruling *Basic* is that the decision rested on two premises that can no longer withstand scrutiny. The first premise concerns what is known as the "efficient capital markets hypothesis." *Basic* stated that "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." *Id.,* at 246, 108 S.Ct. 978. From that statement, Halliburton concludes that the *Basic* Court espoused "a robust view of market efficiency" that is no longer tenable, for " 'overwhelming empirical evidence' now 'suggests that capital markets are not fundamentally efficient.' " Brief for Petitioners 14–16 (quoting Lev & de Villiers, Stock Price Crashes and 10b–5 Damages: A Legal, Economic, and Policy Analysis, 47 Stan. L. Rev 7, 20 (1994)). **\*271** To support this contention, Halliburton cites studies purporting to show that "public information is often not incorporated immediately (much less rationally) into market prices." Brief for Petitioners 17; see *id.,* at 16–20. See also Brief for Law Professors as *Amici Curiae* 15–18.

Halliburton does not, of course, maintain that capital markets are *always* inefficient. Rather, in its view, *Basic* 's fundamental error was to ignore the fact that " 'efficiency is not a binary, yes or no question.' " Brief for Petitioners 20 (quoting Langevoort, *Basic* at Twenty: Rethinking Fraud on the Market, 2009 Wis. L.Rev. 151, 167). The markets for some securities are more efficient than the markets for others, and even a single market can process different kinds of information more or less efficiently, depending on how widely the information is disseminated and how easily it is understood. Brief for Petitioners at 20–21. Yet *Basic,* Halliburton asserts, glossed over these nuances, assuming a false dichotomy that renders the presumption of reliance both underinclusive and overinclusive: A misrepresentation can distort a stock's market price even in a generally inefficient market, and a misrepresentation can leave a stock's market **\*\*2410** price unaffected even in a generally efficient one. Brief for Petitioners at 21.

Halliburton's criticisms fail to take *Basic* on its own terms. Halliburton focuses on the debate among economists about the degree to which the market price of a company's stock reflects public information about the company—and thus the degree to which an investor can earn an abnormal, above-market return by trading on such information. See Brief for Financial Economists as *Amici Curiae* 4–10 (describing

the debate). That debate is not new. Indeed, the *Basic* Court acknowledged it and declined to enter the fray, declaring that "[w]e need not determine by adjudication what economists and social scientists have debated through the use of sophisticated statistical analysis and the application of economic theory." 485 U.S., at 246–247, n. 24, 108 S.Ct. 978. To recognize **\*272** the presumption of reliance, the Court explained, was not "conclusively to adopt any particular theory of how quickly and completely publicly available information is reflected in market price." *Id.,* at 248, n. 28, 108 S.Ct. 978. The Court instead based the presumption on the fairly modest premise that "market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices." *Id.,* at 247, n. 24, 108 S.Ct. 978. *Basic* 's presumption of reliance thus does not rest on a "binary" view of market efficiency. Indeed, in making the presumption rebuttable, *Basic* recognized that market efficiency is a matter of degree and accordingly made it a matter of proof.

The academic debates discussed by Halliburton have not refuted the modest premise underlying the presumption of reliance. Even the foremost critics of the efficient-capital-markets hypothesis acknowledge that public information generally affects stock prices. See, *e.g.,* Shiller, We'll Share the Honors, and Agree to Disagree, N.Y. Times, Oct. 27, 2013, p. BU6 ("Of course, prices reflect available information"). Halliburton also conceded as much in its reply brief and at oral argument. See Reply Brief 13 ("market prices generally respond to new, material information"); Tr. of Oral Arg. 7. Debates about the precise *degree* to which stock prices accurately reflect public information are thus largely beside the point. "That the ... price [of a stock] may be inaccurate does not detract from the fact that false statements affect it, and cause loss," which is "all that *Basic* requires." *Schleicher v. Wendt,* 618 F.3d 679, 685 (C.A.7 2010) (Easterbrook, C.J.). Even though the efficient capital markets hypothesis may have "garnered substantial criticism since *Basic,*" *post,* at 2420 (THOMAS, J., concurring in judgment), Halliburton has not identified the kind of fundamental shift in economic theory that could justify overruling a precedent on the ground that it misunderstood, or has since been overtaken by, economic realities. Contrast **\*273** *State Oil Co. v. Khan,* 522 U.S. 3, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997), unanimously overruling *Albrecht v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968).

Halliburton also contests a second premise underlying the *Basic* presumption: the notion that investors "invest 'in

Case 4:21-cv-02473 Document 103-8 Filed 01/16/25 in TXSD Page 12 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)

134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

reliance on the integrity of [the market] price.' " *Reply Brief* 14 (quoting 485 U.S., at 247, 108 S.Ct. 978; alteration in original). Halliburton identifies a number of classes of investors for whom "price integrity" is supposedly "marginal or irrelevant." Reply Brief 14. The primary example is the value investor, who believes that certain stocks are undervalued or overvalued and attempts to "beat the market" by buying the undervalued stocks and selling the overvalued ones. Brief for Petitioners 15–16 (internal quotation marks omitted). **2411 See also Brief for Vivendi S.A. as *Amicus Curiae* 3–10 (describing the investment strategies of day traders, volatility arbitragers, and value investors). If many investors "are indifferent to prices," Halliburton contends, then courts should not presume that investors rely on the integrity of those prices and any misrepresentations incorporated into them. Reply Brief 14.

But *Basic* never denied the existence of such investors. As we recently explained, *Basic* concluded only that "it is reasonable to presume that *most* investors—knowing that they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information—will rely on the security's market price as an unbiased assessment of the security's value in light of all public information." *Amgen,* 568 U.S., at ——, 133 S.Ct., at 1192 (emphasis added).

In any event, there is no reason to suppose that even Halliburton's main counterexample—the value investor—is as indifferent to the integrity of market prices as Halliburton suggests. Such an investor implicitly relies on the fact that a stock's market price will eventually reflect material information—how else could the market correction on which his profit depends occur? To be sure, the value investor "does not believe that the market price accurately reflects public *274 information *at the time he transacts*." *Post,* at 2423. But to indirectly rely on a misstatement in the sense relevant for the *Basic* presumption, he need only trade stock based on the belief that the market price will incorporate public information within a reasonable period. The value investor also presumably tries to estimate *how* undervalued or overvalued a particular stock is, and such estimates can be skewed by a market price tainted by fraud.

C

 [7] The principle of *stare decisis* has " 'special force' " "in respect to statutory interpretation" because " 'Congress remains free to alter what we have done.' " *John R. Sand &*

*Gravel Co. v. United States,* 552 U.S. 130, 139, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (quoting *Patterson v. McLean Credit Union,* 491 U.S. 164, 172–173, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)). So too with *Basic* 's presumption of reliance. Although the presumption is a judicially created doctrine designed to implement a judicially created cause of action, we have described the presumption as "a substantive doctrine of federal securities-fraud law." *Amgen, supra,* at ——, 133 S.Ct., at 1193. That is because it provides a way of satisfying the reliance element of the Rule 10b–5 cause of action. See, *e.g., Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 341–342, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005). As with any other element of that cause of action, Congress may overturn or modify any aspect of our interpretations of the reliance requirement, including the *Basic* presumption itself. Given that possibility, we see no reason to exempt the *Basic* presumption from ordinary principles of *stare decisis*.

To buttress its case for overruling *Basic,* Halliburton contends that, in addition to being wrongly decided, the decision is inconsistent with our more recent decisions construing the Rule 10b–5 cause of action. As Halliburton notes, we have held that "we must give 'narrow dimensions ... to a right of action Congress did not authorize when it first enacted the statute and did not expand when it revisited the law.' " *275 *Janus Capital Group, Inc. v. First Derivative Traders,* 564 U.S. ——, ——, 131 S.Ct. 2296, 2302, 180 L.Ed.2d 166 (2011) (quoting *Stoneridge,* 552 U.S., at 167, 128 S.Ct. 761); see, *e.g.,* **2412 *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (refusing to recognize aiding-and-abetting liability under the Rule 10b–5 cause of action); *Stoneridge, supra* (refusing to extend Rule 10b–5 liability to certain secondary actors who did not themselves make material misstatements). Yet the *Basic* presumption, Halliburton asserts, does just the opposite, *expanding* the Rule 10b–5 cause of action. Brief for Petitioners 27–29.

 [8] Not so. In *Central Bank* and *Stoneridge,* we declined to extend Rule 10b–5 liability to entirely new categories of defendants who themselves had not made any material, public misrepresentation. Such an extension, we explained, would have eviscerated the requirement that a plaintiff prove that he relied on a misrepresentation made *by the defendant*. See *Central Bank, supra,* at 180, 114 S.Ct. 1439; *Stoneridge, supra,* at 157, 159, 128 S.Ct. 761. The *Basic* presumption does not eliminate that requirement but rather provides an alternative means of satisfying it. While the presumption makes it easier for plaintiffs to prove reliance, it does not

Case 4:21-cv-02473    Document 103-8    Filed 01/16/25 in TXSD    Page 13 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)

134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

alter the elements of the Rule 10b–5 cause of action and thus maintains the action's original legal scope.

 [9]    Halliburton also argues that the *Basic* presumption cannot be reconciled with our recent decisions governing class action certification under Federal Rule of Civil Procedure 23. Those decisions have made clear that plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3). See *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. ——, ——, 131 S.Ct. 2541, 2551–2552, 180 L.Ed.2d 374 (2011); *Comcast Corp. v. Behrend,* 569 U.S. ——, ——, 133 S.Ct. 1426, 1431–1432, 185 L.Ed.2d 515 (2013). According to Halliburton, *Basic* relieves Rule 10b–5 plaintiffs of that burden, allowing courts to presume that common issues of reliance predominate over individual ones.

 ***276**   [10]     [11]    That is not the effect of the *Basic* presumption. In securities class action cases, the crucial requirement for class certification will usually be the predominance requirement of Rule 23(b)(3). The *Basic* presumption does not relieve plaintiffs of the burden of proving—before class certification—that this requirement is met. *Basic* instead establishes that a plaintiff satisfies that burden by proving the prerequisites for invoking the presumption—namely, publicity, materiality, market efficiency, and market timing. The burden of proving those prerequisites still rests with plaintiffs and (with the exception of materiality) must be satisfied before class certification. *Basic* does not, in other words, allow plaintiffs simply to plead that common questions of reliance predominate over individual ones, but rather sets forth what they must prove to demonstrate such predominance.

 [12]    *Basic* does afford defendants an opportunity to rebut the presumption of reliance with respect to an individual plaintiff by showing that he did not rely on the integrity of the market price in trading stock. While this has the effect of "leav[ing] individualized questions of reliance in the case," *post,* at 2424, there is no reason to think that these questions will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3). That the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal does not cause individual questions to predominate.

 ****2413**  Finally, Halliburton and its *amici* contend that, by facilitating securities class actions, the *Basic* presumption produces a number of serious and harmful consequences. Such class actions, they say, allow plaintiffs to extort large settlements from defendants for meritless claims; punish innocent shareholders, who end up having to pay settlements and judgments; impose excessive costs on businesses; and consume a disproportionately large share of judicial resources. Brief for Petitioners 39–45.

 ***277**  These concerns are more appropriately addressed to Congress, which has in fact responded, to some extent, to many of the issues raised by Halliburton and its *amici*. Congress has, for example, enacted the Private Securities Litigation Reform Act of 1995 (PSLRA), 109 Stat. 737, which sought to combat perceived abuses in securities litigation with heightened pleading requirements, limits on damages and attorney's fees, a "safe harbor" for certain kinds of statements, restrictions on the selection of lead plaintiffs in securities class actions, sanctions for frivolous litigation, and stays of discovery pending motions to dismiss. See *Amgen,* 568 U.S., at ——, 133 S.Ct., at 1200–1201. And to prevent plaintiffs from circumventing these restrictions by bringing securities class actions under state law in state court, Congress also enacted the Securities Litigation Uniform Standards Act of 1998, 112 Stat. 3227, which precludes many state law class actions alleging securities fraud. See *Amgen, supra,* at ——, 133 S.Ct., at 1200–1201. Such legislation demonstrates Congress's willingness to consider policy concerns of the sort that Halliburton says should lead us to overrule *Basic*.

III

Halliburton proposes two alternatives to overruling *Basic* that would alleviate what it regards as the decision's most serious flaws. The first alternative would require plaintiffs to prove that a defendant's misrepresentation actually affected the stock price—so-called "price impact"—in order to invoke the *Basic* presumption. It should not be enough, Halliburton contends, for plaintiffs to demonstrate the general efficiency of the market in which the stock traded. Halliburton's second proposed alternative would allow defendants to rebut the presumption of reliance with evidence of a *lack* of price impact, not only at the merits stage—which all agree defendants may already do—but also before class certification.

Case 4:21-cv-02473 Document 103-8 Filed 01/16/25 in TXSD Page 14 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)
134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

A

As noted, to invoke the *Basic* presumption, a plaintiff must prove that: (1) the alleged misrepresentations were publicly **\*278** known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed. See *Basic,* 485 U.S., at 248, n. 27, 108 S.Ct. 978; *Amgen, supra,* at ——, 133 S.Ct., at 1198. Each of these requirements follows from the fraud-on-the-market theory underlying the presumption. If the misrepresentation was not publicly known, then it could not have distorted the stock's market price. So too if the misrepresentation was immaterial—that is, if it would not have " 'been viewed by the reasonable investor as having significantly altered the "total mix" of information made available,' " *Basic, supra,* at 231–232, 108 S.Ct. 978 (quoting *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976))—or if the market in which the stock traded was inefficient. And if the plaintiff did not buy or sell the stock after the misrepresentation was made but before the truth was revealed, **\*\*2414** then he could not be said to have acted in reliance on a fraud-tainted price.

 [13]    The first three prerequisites are directed at price impact—"whether the alleged misrepresentations affected the market price in the first place." *Halliburton I,* 563 U.S., at ——, 131 S.Ct., at 2182. In the absence of price impact, *Basic* 's fraud-on-the-market theory and presumption of reliance collapse. The "fundamental premise" underlying the presumption is "that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction." 563 U.S., at ——, 131 S.Ct., at 2186. If it was not, then there is "no grounding for any contention that [the] investor[ ] indirectly relied on th[at] misrepresentation[ ] through [his] reliance on the integrity of the market price." *Amgen, supra,* at ——, 133 S.Ct., at 1199.

Halliburton argues that since the *Basic* presumption hinges on price impact, plaintiffs should be required to prove it directly in order to invoke the presumption. Proving the presumption's prerequisites, which are at best an imperfect proxy for price impact, should not suffice.

Far from a modest refinement of the *Basic* presumption, this proposal would radically alter the required showing for **\*279** the reliance element of the Rule 10b–5 cause of action. What is called the *Basic* presumption actually incorporates

two constituent presumptions: First, if a plaintiff shows that the defendant's misrepresentation was public and material and that the stock traded in a generally efficient market, he is entitled to a presumption that the misrepresentation affected the stock price. Second, if the plaintiff also shows that he purchased the stock at the market price during the relevant period, he is entitled to a further presumption that he purchased the stock in reliance on the defendant's misrepresentation.

 [14]    By requiring plaintiffs to prove price impact directly, Halliburton's proposal would take away the first constituent presumption. Halliburton's argument for doing so is the same as its primary argument for overruling the *Basic* presumption altogether: Because market efficiency is not a yes-or-no proposition, a public, material misrepresentation might not affect a stock's price even in a generally efficient market. But as explained, *Basic* never suggested otherwise; that is why it affords defendants an opportunity to rebut the presumption by showing, among other things, that the particular misrepresentation at issue did not affect the stock's market price. For the same reasons we declined to completely jettison the *Basic* presumption, we decline to effectively jettison half of it by revising the prerequisites for invoking it.

B

Even if plaintiffs need not directly prove price impact to invoke the *Basic* presumption, Halliburton contends that defendants should at least be allowed to defeat the presumption at the class certification stage through evidence that the misrepresentation did not in fact affect the stock price. We agree.

1

There is no dispute that defendants may introduce such evidence at the merits stage to rebut the *Basic* presumption. *Basic* itself "made clear that the presumption was just that, and could be rebutted by appropriate evidence," including **\*280** evidence that the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock. *Halliburton I, supra,* at ——, 131 S.Ct., at 2185; see *Basic, supra,* at 248, 108 S.Ct. 978.

Nor is there any dispute that defendants may introduce price impact evidence at the **\*\*2415** class certification stage,

so long as it is for the purpose of countering a plaintiff's showing of market efficiency, rather than directly rebutting the presumption. As EPJ Fund acknowledges, "[o]f course ... defendants can introduce evidence at class certification of lack of price impact as some evidence that the market is not efficient." Brief for Respondent 53. See also Brief for United States as *Amicus Curiae* 26.

After all, plaintiffs themselves can and do introduce evidence of the *existence* of price impact in connection with "event studies"—regression analyses that seek to show that the market price of the defendant's stock tends to respond to pertinent publicly reported events. See Brief for Law Professors as *Amici Curiae* 25–28. In this case, for example, EPJ Fund submitted an event study of various episodes that might have been expected to affect the price of Halliburton's stock, in order to demonstrate that the market for that stock takes account of material, public information about the company. See App. 217–230 (describing the results of the study). The episodes examined by EPJ Fund's event study included one of the alleged misrepresentations that form the basis of the Fund's suit. See *id.,* at 230, 343–344. See also *In re Xcelera.com Securities Litigation,* 430 F.3d 503, 513 (C.A.1 2005) (event study included effect of misrepresentation challenged in the case).

Defendants—like plaintiffs—may accordingly submit price impact evidence prior to class certification. What defendants may not do, EPJ Fund insists and the Court of Appeals held, is rely on that same evidence prior to class certification for the particular purpose of rebutting the presumption altogether.

This restriction makes no sense, and can readily lead to bizarre results. Suppose a defendant at the certification **\*281** stage submits an event study looking at the impact on the price of its stock from six discrete events, in an effort to refute the plaintiffs' claim of general market efficiency. All agree the defendant may do this. Suppose one of the six events is the specific misrepresentation asserted by the plaintiffs. All agree that this too is perfectly acceptable. Now suppose the district court determines that, despite the defendant's study, the plaintiff has carried its burden to prove market efficiency, but that the evidence shows no price impact with respect to the specific misrepresentation challenged in the suit. The evidence at the certification stage thus shows an efficient market, on which the alleged misrepresentation had no price impact. And yet under EPJ Fund's view, the plaintiffs' action should be certified and proceed as a class action (with all that

entails), even though the fraud-on-the-market theory does not apply and common reliance thus cannot be presumed.

Such a result is inconsistent with *Basic* 's own logic. Under *Basic* 's fraud-on-the-market theory, market efficiency and the other prerequisites for invoking the presumption constitute an indirect way of showing price impact. As explained, it is appropriate to allow plaintiffs to rely on this indirect proxy for price impact, rather than requiring them to prove price impact directly, given *Basic* 's rationales for recognizing a presumption of reliance in the first place. See *supra,* at 2408, 2413 – 2414.

[15] [16] But an indirect proxy should not preclude direct evidence when such evidence is available. As we explained in *Basic,* "[a]ny showing that severs the link between the alleged misrepresentation and ... the price received (or paid) by the plaintiff ... will be sufficient to rebut the presumption of reliance" because "the basis for finding that the fraud had been **\*\*2416** transmitted through market price would be gone." 485 U.S., at 248, 108 S.Ct. 978. And without the presumption of reliance, a Rule 10b–5 suit cannot proceed as a class action: Each plaintiff would have to prove reliance individually, so common **\*282** issues would not "predominate" over individual ones, as required by Rule 23(b)(3). *Id.,* at 242, 108 S.Ct. 978. Price impact is thus an essential precondition for any Rule 10b–5 class action. While *Basic* allows plaintiffs to establish that precondition indirectly, it does not require courts to ignore a defendant's direct, more salient evidence showing that the alleged misrepresentation did not actually affect the stock's market price and, consequently, that the *Basic* presumption does not apply.

2

The Court of Appeals relied on our decision in *Amgen* in holding that Halliburton could not introduce evidence of lack of price impact at the class certification stage. The question in *Amgen* was whether plaintiffs could be required to prove (or defendants be permitted to disprove) materiality before class certification. Even though materiality is a prerequisite for invoking the *Basic* presumption, we held that it should be left to the merits stage, because it does not bear on the predominance requirement of Rule 23(b)(3). We reasoned that materiality is an objective issue susceptible to common, classwide proof. 568 U.S., at ——, 133 S.Ct., at 1195–1196. We also noted that a failure to prove materiality would necessarily defeat every plaintiff's claim on the merits; it

Case 4:21-cv-02473 Document 103-8 Filed 01/16/25 in TXSD Page 16 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)

134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

would not simply preclude invocation of the presumption and thereby cause individual questions of reliance to predominate over common ones. *Ibid.* See also *id.,* at ——, 133 S.Ct., at 1199–1200. In this latter respect, we explained, materiality differs from the publicity and market efficiency prerequisites, neither of which is necessary to prove a Rule 10b–5 claim on the merits. *Id.,* at —— – ——, 133 S.Ct., at 1198–1200.

EPJ Fund argues that much of the foregoing could be said of price impact as well. Fair enough. But price impact differs from materiality in a crucial respect. Given that the other *Basic* prerequisites must still be proved at the class certification stage, the common issue of materiality can be left to the merits stage without risking the certification of classes in which individual issues will end up overwhelming common ones. And because materiality is a discrete issue **\*283** that can be resolved in isolation from the other prerequisites, it can be wholly confined to the merits stage.

 **[17]** Price impact is different. The fact that a misrepresentation "was reflected in the market price at the time of [the] transaction"—that it had price impact—is "*Basic* 's fundamental premise." *Halliburton I,* 563 U.S., at ——, 131 S.Ct., at 2186. It thus has everything to do with the issue of predominance at the class certification stage. That is why, if reliance is to be shown through the *Basic* presumption, the publicity and market efficiency prerequisites must be proved before class certification. Without proof of those prerequisites, the fraud-on-the-market theory underlying the presumption completely collapses, rendering class certification inappropriate.

But as explained, publicity and market efficiency are nothing more than prerequisites for an indirect showing of price impact. There is no dispute that at least such indirect proof of price impact "is needed to ensure that the questions of law or fact common to the class will 'predominate.' " *Amgen,* 568 U.S., at ——, 133 S.Ct., at 1195 (emphasis deleted); see *id.,* at ——, 133 S.Ct., at 1198–1199. That is **\*\*2417** so even though such proof is also highly relevant at the merits stage.

 **[18]** Our choice in this case, then, is not between allowing price impact evidence at the class certification stage or relegating it to the merits. Evidence of price impact will be before the court at the certification stage in any event. The choice, rather, is between limiting the price impact inquiry before class certification to indirect evidence, or allowing consideration of direct evidence as well. As explained, we see no reason to artificially limit the inquiry at the certification

stage to indirect evidence of price impact. Defendants may seek to defeat the *Basic* presumption at that stage through direct as well as indirect price impact evidence.

\* \* \*

More than 25 years ago, we held that plaintiffs could satisfy the reliance element of the Rule 10b–5 cause of action by invoking a presumption that a public, material misrepresentation **\*284** will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation. We adhere to that decision and decline to modify the prerequisites for invoking the presumption of reliance. But to maintain the consistency of the presumption with the class certification requirements of Federal Rule of Civil Procedure 23, defendants must be afforded an opportunity before class certification to defeat the presumption through evidence that an alleged misrepresentation did not actually affect the market price of the stock.

Because the courts below denied Halliburton that opportunity, we vacate the judgment of the Court of Appeals for the Fifth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

Justice GINSBURG, with whom Justice BREYER and Justice SOTOMAYOR join, concurring.

Advancing price impact consideration from the merits stage to the certification stage may broaden the scope of discovery available at certification. See Tr. of Oral Arg. 36–37. But the Court recognizes that it is incumbent upon the defendant to show the absence of price impact. See *ante,* at 2413 – 2414. The Court's judgment, therefore, should impose no heavy toll on securities-fraud plaintiffs with tenable claims. On that understanding, I join the Court's opinion.

Justice THOMAS, with whom Justice SCALIA and Justice ALITO join, concurring in the judgment.

The implied Rule 10b–5 private cause of action is "a relic of the heady days in which this Court assumed common-law powers to create causes of action," *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 75, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (SCALIA, J., concurring); see, *e.g., J.I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555,

12 L.Ed.2d 423 (1964). We have since ended that practice because the authority **\*285** to fashion private remedies to enforce federal law belongs to Congress alone. *Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 164, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008). Absent statutory authorization for a cause of action, "courts may not create one, no matter how desirable that might be as a policy matter." *Alexander v. Sandoval,* 532 U.S. 275, 286–287, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).

*Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988), demonstrates **\*\*2418** the wisdom of this rule. *Basic* presented the question how investors must prove the reliance element of the implied Rule 10b–5 cause of action—the requirement that the plaintiff buy or sell stock in reliance on the defendant's misstatement—when they transact on modern, impersonal securities exchanges. Were the Rule 10b–5 action statutory, the Court could have resolved this question by interpreting the statutory language. Without a statute to interpret for guidance, however, the Court began instead with a particular policy "problem": for investors in impersonal markets, the traditional reliance requirement was hard to prove and impossible to prove as common among plaintiffs bringing 10b–5 class-action suits. *Id.,* at 242, 245, 108 S.Ct. 978. With the task thus framed as "resol[ving]" that " 'problem' " rather than interpreting statutory text, *id.,* at 242, 108 S.Ct. 978, the Court turned to nascent economic theory and naked intuitions about investment behavior in its efforts to fashion a new, easier way to meet the reliance requirement. The result was an evidentiary presumption, based on a "fraud on the market" theory, that paved the way for class actions under Rule 10b–5.

Today we are asked to determine whether *Basic* was correctly decided. The Court suggests that it was, and that *stare decisis* demands that we preserve it. I disagree. Logic, economic realities, and our subsequent jurisprudence have undermined the foundations of the *Basic* presumption, and *stare decisis* cannot prop up the façade that remains. *Basic* should be overruled.

I

**\*286** Understanding where *Basic* went wrong requires an explanation of the "reliance" requirement as traditionally understood.

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element" of the implied 10b–5 private cause of action.[1] *Stoneridge, supra,* at 159, 128 S.Ct. 761. To prove reliance, the plaintiff must show " 'transaction causation,' " *i.e.,* that the specific misstatement induced "the investor's decision to engage in the transaction." *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. ——, —— – ——, 131 S.Ct. 2179, 2186, 180 L.Ed.2d 24 (2011). Such proof "ensures that there is a proper 'connection between a defendant's misrepresentation and a plaintiff's injury' "—namely, that the plaintiff has not just lost money as a result of the misstatement, but that he was actually *defrauded* by it. *Id.,* at ——, 131 S.Ct., at 2184; see also *Dirks v. SEC,* 463 U.S. 646, 666–667, n. 27, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983) ("[T]o constitute a violation of Rule 10b–5, there must be fraud.... [T]here always are winners and losers; but those who have 'lost' have not necessarily been defrauded"). Without that connection, Rule 10b–5 is reduced to a " 'scheme of investor's insurance,' " because a plaintiff could recover whenever the defendant's misstatement distorted the stock price—regardless of whether the misstatement had actually tricked the plaintiff into buying (or selling) the stock in the first place. *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 345, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (quoting **\*\*2419** *Basic, supra,* at 252, 108 S.Ct. 978 (White, J., concurring in part and dissenting in part)).

The "traditional" reliance element requires a plaintiff to "sho[w] that he was aware of a company's statement and engaged **\*287** in a relevant transaction ... based on that specific misrepresentation." *Erica P. John Fund, supra,* at ——, 131 S.Ct., at 2185. But investors who purchase stock from third parties on impersonal exchanges (*e.g.,* the New York Stock Exchange) often will not be aware of any particular statement made by the issuer of the security, and therefore cannot establish that they transacted based on a specific misrepresentation. Nor is the traditional reliance requirement amenable to class treatment; the inherently individualized nature of the reliance inquiry renders it impossible for a 10b–5 plaintiff to prove that common questions predominate over individual ones, making class certification improper. See *Basic, supra,* at 242, 108 S.Ct. 978; Fed. Rule Civ. Proc. 23(b)(3).

Citing these difficulties of proof and class certification, 485 U.S., at 242, 245, 108 S.Ct. 978, the *Basic* Court dispensed with the traditional reliance requirement in favor of a new one based on the fraud-on-the-market theory.[2] The new version of reliance had two related parts.

First, *Basic* suggested that plaintiffs could meet the reliance requirement " 'indirectly,' " *id.,* at 245, 108 S.Ct. 978. The Court reasoned that " 'ideally, [the market] transmits information to the investor in the processed form of a market price.' " *Id.,* at 244, 108 S.Ct. 978. An investor could thus be said to have "relied" on a specific misstatement if (1) the market had incorporated that statement into the market price of the security, and (2) the investor then bought or sold that security "in reliance on the integrity of the [market] price," *id.,* at 247, 108 S.Ct. 978, *i.e.,* based on his **\*288** belief that the market price " 'reflect[ed]' " the stock's underlying " 'value,' " *id.,* at 244, 108 S.Ct. 978.

Second, *Basic* created a presumption that this "indirect" form of "reliance" had been proved. Based primarily on certain assumptions about economic theory and investor behavior, *Basic* afforded plaintiffs who traded in efficient markets an evidentiary presumption that both steps of the novel reliance requirement had been satisfied—that (1) the market *had* incorporated the specific misstatement into the market price of the security, and (2) the plaintiff *did* transact in reliance on the integrity of that price.[3] *Id.,* at 247, 108 S.Ct. 978. A defendant was ostensibly entitled to rebut the presumption by putting forth evidence that either of those steps was absent. *Id.,* at 248, 108 S.Ct. 978.

## II

*Basic* 's reimagined reliance requirement was a mistake, and the passage of **\*\*2420** time has compounded its failings. First, the Court based both parts of the presumption of reliance on a questionable understanding of disputed economic theory and flawed intuitions about investor behavior. Second, *Basic* 's rebuttable presumption is at odds with our subsequent Rule 23 cases, which require plaintiffs seeking class certification to " 'affirmatively demonstrate' " certification requirements like the predominance of common questions. *Comcast Corp. v. Behrend,* 569 U.S. ——, ——, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. ——, ——, 131 S.Ct. 2541, 2551–2552, 180 L.Ed.2d 374 (2011)). Finally, *Basic* 's presumption that investors rely on the integrity of the market price is virtually irrebuttable in practice, which means that the "essential" reliance element effectively exists in name only.

## A

**\*289** *Basic* based the presumption of reliance on two factual assumptions. The first assumption was that, in a "well-developed market," public statements are generally "reflected" in the market price of securities. 485 U.S., at 247, 108 S.Ct. 978. The second was that investors in such markets transact "in reliance on the integrity of that price." *Ibid.* In other words, the Court created a presumption that a plaintiff had met the two-part, fraud-on-the-market version of the reliance requirement because, in the Court's view, "common sense and probability" suggested that each of those parts *would* be met. *Id.,* at 246, 108 S.Ct. 978.

In reality, both of the Court's key assumptions are highly contestable and do not provide the necessary support for *Basic* 's presumption of reliance. The first assumption—that public statements are "reflected" in the market price—was grounded in an economic theory that has garnered substantial criticism since *Basic.* The second assumption—that investors categorically rely on the integrity of the market price—is simply wrong.

### 1

The Court's first assumption was that "most publicly available information"—including public misstatements—"is reflected in [the] market price" of a security. *Id.,* at 247, 108 S.Ct. 978. The Court grounded that assumption in "empirical studies" testing a then-nascent economic theory known as the efficient capital markets hypothesis. *Id.,* at 246–247, 108 S.Ct. 978. Specifically, the Court relied upon the "semi-strong" version of that theory, which posits that the average investor cannot earn above-market returns (*i.e.,* "beat the market") in an efficient market by trading on the basis of publicly available information. See, *e.g.,* Stout, The Mechanisms of Market Inefficiency: An Introduction to the New Finance, 28 J. Corp. L. 635, 640, and n. 24 (2003) (citing Fama, Efficient Capital Markets: A Review of Theory and Empirical Work, 25 J. Finance **\*290** 383, 388 (1970)).[4] The upshot of the hypothesis is that "the market price of shares traded on well-developed markets [will] reflec[t] all publicly available information, and, hence, any material misrepresentations." *Basic, supra,* at 246, 108 S.Ct. 978. At the time of *Basic,* this version of the efficient capital markets hypothesis **\*\*2421** was "widely accepted." See Dunbar & Heller 463–464.

This view of market efficiency has since lost its luster. See, *e.g.,* Langevoort, *Basic at Twenty: Rethinking Fraud on the Market,* 2009 Wis. L.Rev. 151, 175 ("Doubts about the strength and pervasiveness of market efficiency are much greater today than they were in the mid–1980s"). As it turns out, even "well-developed" markets (like the New York Stock Exchange) do not uniformly incorporate information into market prices with high speed. "[F]riction in accessing public information" and the presence of "processing costs" means that "not all public information will be impounded in a security's price with the same alacrity, or perhaps with any quickness at all." Cox, *Understanding Causation in Private Securities Lawsuits: Building on Amgen,* 66 Vand. L.Rev. 1719, 1732 (2013) (hereinafter Cox). For example, information that is easily digestible (merger announcements or stock splits) or especially prominent (Wall Street Journal articles) may be incorporated quickly, while information that is broadly applicable or technical (Securities and Exchange Commission filings) may be incorporated slowly or even ignored. See Stout, *supra,* at 653–656; see *e.g., In re Merck & Co. Securities Litigation,* 432 F.3d 261, 263–265 (C.A.3 2005) (a Wall Street Journal article caused a steep decline in the **\*291** company's stock price even though the same information was contained in an earlier SEC disclosure).

Further, and more importantly, "overwhelming empirical evidence" now suggests that even when markets do incorporate public information, they often fail to do so accurately. Lev and de Villiers, *Stock Price Crashes and 10b–5 Damages: A Legal, Economic and Policy Analysis,* 47 Stan. L.Rev. 7, 20–21 (1994); see also *id.,* at 21 ("That many share price movements seem unrelated to specific information strongly suggests that capital markets are not fundamentally efficient, and that wide deviations from fundamentals ... can occur" (footnote omitted)). "Scores" of "efficiency-defying anomalies"—such as market swings in the absence of new information and prolonged deviations from underlying asset values—make market efficiency "more contestable than ever." Langevoort, *Taming the Animal Spirits of the Stock Markets: A Behavioral Approach to Securities Regulation,* 97 Nw. U.L.Rev. 135, 141 (2002); Dunbar & Heller 476–483. Such anomalies make it difficult to tell whether, at any given moment, a stock's price accurately reflects its value as indicated by all publicly available information. In sum, economists now understand that the price impact *Basic* assumed would happen reflexively is actually far from certain even in "well-developed" markets. Thus, *Basic* 's claim that "common sense and probability" support a presumption of reliance rests on shaky footing.

2

The *Basic* Court also grounded the presumption of reliance in a second assumption: that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." 485 U.S., at 247, 108 S.Ct. 978. In other words, the Court assumed that investors transact based on the belief that the market price accurately reflects the underlying " 'value' " of the security. See *id.,* at 244, 108 S.Ct. 978 (" '[P]urchasers generally rely on the price of the stock as a reflection of **\*292** its value' "). The *Basic* Court appears to have adopted this assumption about investment behavior based only on what it believed to be " common sense." *Id., at 246, 108 S.Ct. 978.* The Court found it " 'hard to imagine that there ever is a buyer or seller who does **\*\*2422** not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?' " *Id., at 246–247, 108 S.Ct. 978.*

The Court's rather superficial analysis does not withstand scrutiny. It cannot be seriously disputed that a great many investors do *not* buy or sell stock based on a belief that the stock's price accurately reflects its value. Many investors in fact trade for the opposite reason—that is, because they think the market has under- or overvalued the stock, and they believe they can profit from that mispricing. *Id.,* at 256, 108 S.Ct. 978 (opinion of White, J.); see, *e.g.,* Macey, *The Fraud on the Market Theory: Some Preliminary Issues,* 74 Cornell L.Rev. 923, 925 (1989) (The "opposite" of *Basic* 's assumption appears to be true; some investors "attempt to locate undervalued stocks in an effort to 'beat the market' ... in essence betting that the market ... is in fact inefficient"). Indeed, securities transactions often take place because the transacting parties disagree on the security's value. See, *e.g.,* Stout, *Are Stock Markets Costly Casinos? Disagreement, Market Failure, and Securities Regulation,* 81 Va. L.Rev. 611, 619 (1995) ("[A]vailable evidence suggests that ... investor disagreement inspires the lion's share of equities transactions").

Other investors trade for reasons entirely unrelated to price —for instance, to address changing liquidity needs, tax concerns, or portfolio balancing requirements. See *id., at 657–658;* see also Cox 1739 (investors may purchase "due to portfolio rebalancing arising from its obeisance to an indexing strategy"). These investment decisions—made with indifference to price and thus without regard for price "integrity"—are at odds with *Basic* 's understanding of what

Case 4:21-cv-02473   Document 103-8   Filed 01/16/25 in TXSD   Page 20 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)

134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

motivates investment decisions. In short, *Basic* 's assumption **\*293** that all investors rely in common on "price integrity" is simply wrong. [5]

The majority tries (but fails) to reconcile *Basic* 's assumption about investor behavior with the reality that many investors do not behave in the way *Basic* assumed. It first asserts that *Basic* rested only on the more modest view that " '*most* investors' " rely on the integrity of a security's market price. *Ante,* at 2411 (quoting not *Basic,* but *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds,* 568 U.S. ——, ——, 133 S.Ct. 1184, 1192–1193, 185 L.Ed.2d 308 (2013) (emphasis added)). That gloss is difficult to square with *Basic* 's plain language: "An investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *Basic,* 458 U.S., at 247, 102 S.Ct. 3057; see also *id.*, at 246–247, 102 S.Ct. 3057 (" '[I]t is hard to imagine that there ever is a buyer or seller who does not rely on market integrity' "). In any event, neither *Basic* nor the majority offers anything more than a judicial hunch as evidence that even "most" investors rely on price integrity.

The majority also suggests that "there is no reason to suppose" that investors who **\*\*2423** buy stock they believe to be undervalued are "indifferent to the integrity of market prices." *Ante,* at 2411. Such "value investor[s]," according to the majority, "implicitly rel[y] on the fact that a stock's market price will eventually reflect material information" and "presumably tr[y] to estimate *how* undervalued or overvalued a particular **\*294** stock is" by reference to the market price. *Ibid*. Whether the majority's unsupported claims about the thought processes of hypothetical investors are accurate or not, they are surely beside the point. Whatever else an investor believes about the market, he simply does not "rely on the integrity of the market price" if he does not believe that the market price accurately reflects public information *at the time he transacts*. That is, an investor cannot claim that a public misstatement induced his transaction by distorting the market price if he did not buy at that price while believing that it accurately incorporated that public information. For that sort of investor, *Basic* ' s critical fiction falls apart.

B

*Basic* 's presumption of reliance also conflicts with our more recent cases clarifying Rule 23's class-certification requirements. Those cases instruct that "a party seeking to maintain a class action 'must affirmatively demonstrate his

compliance' with Rule 23." *Comcast,* 569 U.S., at ——, 133 S.Ct., at 1432 (quoting *Wal–Mart,* 564 U.S., at ——, 131 S.Ct., at 2551). To prevail on a motion for class certification, a party must demonstrate through "evidentiary proof" that " 'questions of law or fact common to class members predominate over any questions affecting only individual members.' " 569 U.S., at ——, 133 S.Ct., at 1432 (quoting Fed. Rule Civ. Proc. 23(b)(3)).

*Basic* permits plaintiffs to bypass that requirement of evidentiary proof. Under *Basic,* plaintiffs who invoke the presumption of reliance (by proving its predicates) are deemed to have met the predominance requirement of Rule 23(b)(3). See *ante,* at 2412; *Amgen, supra,* at ——, 133 S.Ct., at 1193 (*Basic* "facilitates class certification by recognizing a rebuttable presumption of classwide reliance"); *Basic,* 485 U.S., at 242, 250, 108 S.Ct. 978 (holding that the District Court appropriately certified the class based on the presumption of reliance). But, invoking the *Basic* presumption does not actually prove that individual questions of reliance will not overwhelm the common questions **\*295** in the case. *Basic* still requires a showing that the *individual investor* bought or sold in reliance on the integrity of the market price and, crucially, permits defendants to rebut the presumption by producing evidence that individual plaintiffs do not meet that description. See *id.,* at 249, 108 S.Ct. 978 ("Petitioners ... could rebut the presumption of reliance as to plaintiffs who would have divested themselves of their Basic shares without relying on the integrity of the market"). Thus, by its own terms, *Basic* entitles defendants to ask each class member whether he traded in reliance on the integrity of the market price. That inquiry, like the traditional reliance inquiry, is inherently individualized; questions about the trading strategies of individual investors will not generate " 'common answers apt to drive the resolution of the litigation,' " *Wal–Mart Stores, supra,* at ——, 131 S.Ct., at 2551. See *supra,* at 2421 – 2422; see also Cox 1736, n. 55 (*Basic* 's recognition that defendants could rebut the presumption "by proof the investor would have traded anyway appears to require individual inquiries into reliance").

*Basic* thus exempts Rule 10b–5 plaintiffs from Rule 23's proof requirement. Plaintiffs **\*\*2424** who invoke the presumption of reliance are deemed to have shown predominance as a matter of law, even though the resulting rebuttable presumption leaves individualized questions of reliance in the case and predominance still unproved. Needless to say, that exemption was beyond the *Basic* Court's power to grant. [6]

Case 4:21-cv-02473 Document 103-8 Filed 01/16/25 in TXSD Page 21 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)
134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

C

**\*296** It would be bad enough if *Basic* merely provided an end-run around Rule 23. But in practice, the so-called "rebuttable presumption" is largely irrebuttable.

The *Basic* Court ostensibly afforded defendants an opportunity to rebut the presumption by providing evidence that either aspect of a plaintiff's fraud-on-the-market reliance —price impact, or reliance on the integrity of the market price—is missing. 485 U.S., at 248–249, 108 S.Ct. 978. As it turns out, however, the realities of class-action procedure make rebuttal based on an individual plaintiff's lack of reliance virtually impossible. At the class-certification stage, rebuttal is only directed at the class representatives, which means that counsel only needs to find one class member who can withstand the challenge. See Grundfest, Damages and Reliance Under Section 10(b) of the Exchange Act, 69 Bus. Lawyer 307, 362 (2014). After class certification, courts have refused to allow defendants to challenge any plaintiff's reliance on the integrity of the market price prior to a determination on classwide liability. See Brief for Chamber of Commerce of the United States of America et al. as *Amici Curiae* 13–14 (collecting cases rejecting postcertification attempts to rebut individual class members' reliance on price integrity as not pertinent to classwide liability). One search for rebuttals on individual-reliance grounds turned up only six cases out of the thousands of Rule 10b–5 actions brought since *Basic.* Grundfest, *supra,* at 360. [7]

**\*297** The apparent unavailability of this form of rebuttal has troubling implications. Because the presumption is conclusive in practice with respect to investors' reliance on price integrity, even *Basic* 's watered-down reliance requirement has been effectively eliminated. Once the presumption attaches, the reliance element is no longer an obstacle to prevailing on the claim, even though many class members will not have transacted in reliance on price integrity, see *supra,* at 2421 – 2422. And without a functional reliance requirement, the "essential element" that ensures the plaintiff **\*\*2425** has actually been defrauded, see *Stoneridge,* 552 U.S., at 159, 128 S.Ct. 761, Rule 10b– 5 becomes the very " 'scheme of investor's insurance' " the *rebuttable* presumption was supposed to prevent. See *Basic, supra,* at 252, 108 S.Ct. 978 (opinion of White, J.). [8]

\* \* \*

For these reasons, *Basic* should be overruled in favor of the straightforward rule that "[r]eliance by the plaintiff upon the defendant's deceptive acts"—actual reliance, not the fictional "fraud-on-the-market" version—"is an essential element of the § 10(b) private cause of action." *Stoneridge,* 552 U.S., at 159, 128 S.Ct. 761.

III

Principles of *stare decisis* do not compel us to save *Basic* 's muddled logic and armchair economics. We have not hesitated to overrule decisions when they are "unworkable or are badly reasoned," *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); when "the theoretical underpinnings of those decisions are called into serious question," **\*298** *State Oil Co. v. Khan,* 522 U.S. 3, 21, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997); when the decisions have become "irreconcilable" with intervening developments in "competing legal doctrines or policies," *Patterson v. McLean Credit Union,* 491 U.S. 164, 173, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); or when they are otherwise "a positive detriment to coherence and consistency in the law," *ibid.* Just one of these circumstances can justify our correction of bad precedent; *Basic* checks all the boxes.

In support of its decision to preserve *Basic,* the majority contends that *stare decisis* "has 'special force' 'in respect to statutory interpretation' because 'Congress remains free to alter what we have done.' " *Ante,* at 2411 (quoting *John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 139, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008); some internal quotation marks omitted). But *Basic,* of course, has nothing to do with statutory interpretation. The case concerned a judge-made evidentiary presumption for a judge-made element of the implied 10b–5 private cause of action, itself "a judicial construct that Congress did not enact in the text of the relevant statutes." *Stoneridge, supra,* at 164, 128 S.Ct. 761. We have not afforded *stare decisis* "special force" outside the context of statutory interpretation, see *Michigan v. Bay Mills Indian Community,* 572 U.S. ——, ——, n. 6, 134 S.Ct. 2024, 2053–2054, n. 6, 188 L.Ed.2d 1071 (2014) (THOMAS, J. dissenting) and for good reason. In statutory cases, it is perhaps plausible that Congress watches over its enactments and will step in to fix our mistakes, so we may leave to Congress the judgment whether the interpretive question is better left " 'settled' " or " 'settled right,' " *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 476 U.S. 409, 424, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986). But

Case 4:21-cv-02473 Document 103-8 Filed 01/16/25 in TXSD Page 22 of 24

Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)

134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

this rationale is untenable when it comes to judge-made law like "implied" private causes of action, which we retain a duty to superintend. See, *e.g.,* **2426 *Exxon Shipping Co. v. Baker,* 554 U.S. 471, 507, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) ("[T]he judiciary [cannot] wash its hands of a problem it created ... simply by calling [the judicial doctrine] legislative"). Thus, when we err in areas of judge-made law, we ought to presume that Congress expects us to correct our own mistakes—not the other way around. That duty is *299 especially clear in the Rule 10b–5 context, where we have said that " [t]he federal courts have accepted and exercised the principal responsibility for the continuing elaboration of the scope of the 10b–5 right and the definition of the duties it imposes." *Musick, Peeler & Garrett v. Employers Ins. of Wausau,* 508 U.S. 286, 292, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993).

*Basic* 's presumption of reliance remains our mistake to correct. Since *Basic,* Congress has enacted two major securities laws: the Private Securities Litigation Reform Act of 1995 (PSLRA), 109 Stat. 737, and the Securities Litigation Uniform Standards Act of 1998 (SLUSA), 112 Stat. 3227. The PSLRA "sought to combat perceived abuses in securities litigation," *ante,* at 2413, and SLUSA prevented plaintiffs from avoiding the PSLRA's restrictions by bringing class actions in state court, *ibid.* Neither of these Acts touched the reliance element of the implied Rule 10b–5 private cause of action or the *Basic* presumption.

Contrary to respondent's argument (the majority wisely skips this next line of defense), we cannot draw from Congress' silence on this matter an inference that Congress approved of *Basic.* To begin with, it is inappropriate to give weight to "Congress' unenacted opinion" when construing judge-made doctrines, because doing so allows the Court to create law and then "effectively codif[y]" it "based only on Congress' failure to address it." *Bay Mills, supra,* at ——, 134 S.Ct., at 2053 (THOMAS, J., dissenting). Our Constitution, however, demands that laws be passed by Congress and signed by the President. U.S. Const., Art. I, § 7. Adherence to *Basic* based on congressional inaction would invert that requirement by insulating error from correction merely because Congress *failed* to pass a law on the subject. Cf. *Patterson, supra,* at 175, n. 1, 109 S.Ct. 2363 ("Congressional inaction cannot amend a duly enacted statute").

At any rate, arguments from legislative inaction are speculative at best. "[I]t is ' "impossible to assert with any degree of assurance that congressional failure to act

represents" *300 affirmative congressional approval of' one of this Court's decisions." *Bay Mills, supra,* at ——, 134 S.Ct., at 2052 (THOMAS, J., dissenting) (quoting *Patterson, supra,* at 175, n. 1, 109 S.Ct. 2363). " 'Congressional inaction lacks persuasive significance' " because it is indeterminate; " 'several equally tenable inferences may be drawn from such inaction.' " *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.,* 511 U.S. 164, 187, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) (quoting *Pension Benefit Guaranty Corporation v. LTV Corp.,* 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990)). Therefore, "[i]t does not follow ... that Congress' failure to overturn a ... precedent is reason for this Court to adhere to it." *Patterson, supra,* at 175, n. 1, 109 S.Ct. 2363.

That is especially true here, because Congress passed a law to tell us *not* to draw any inference from its inaction. The PSLRA expressly states that "[n]othing in this Act ... shall be deemed to create or ratify any implied private right of action." Notes following 15 U.S.C. § 78j–1, p. 430. If the Act did not ratify even the Rule **2427 10b–5 private cause of action, it cannot be read to ratify *sub silentio* the presumption of reliance this Court affixed to that action. Further, the PSLRA and SLUSA operate to curtail abuses of various private causes of action under our securities laws—hardly an indication that Congress approved of *Basic* 's *expansion* of the 10b–5 private cause of action. Congress' failure to overturn *Basic* does not permit us to "place on the shoulders of Congress the burden of the Court's own error." *Girouard v. United States,* 328 U.S. 61, 70, 66 S.Ct. 826, 90 L.Ed. 1084 (1946).

* * *

*Basic* took an implied cause of action and grafted on a policy-driven presumption of reliance based on nascent economic theory and personal intuitions about investment behavior. The result was an unrecognizably broad cause of action ready made for class certification. Time and experience have pointed up the error of that decision, making it all too clear that the Court's attempt to revise securities law to *301 fit the alleged "new realities of financial markets" should have been left to Congress. 485 U.S., at 255, 108 S.Ct. 978 (opinion of White, J.).

**All Citations**

573 U.S. 258, 134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003, 88 Fed.R.Serv.3d 1472,

134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

2014 Daily Journal D.A.R. 8004, 24 Fla. L. Weekly Fed. S 897

---

## Footnotes

\* The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

1 As the private Rule 10b–5 action has evolved, the Court has drawn on the common-law action of deceit to identify six elements a private plaintiff must prove: " '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.' " *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,* 568 U.S. ——, —— – ——, 133 S.Ct. 1184, 1191–1194, 185 L.Ed.2d 308 (2013).

2 In the years preceding *Basic,* lower courts and commentators experimented with various ways to facilitate 10b–5 class actions by relaxing or eliminating the reliance element of the implied 10b–5 action. See, *e.g., Blackie v. Barrack,* 524 F.2d 891 (C.A.9 1975); Note, The Fraud–on–the–Market Theory, 95 Harv. L.Rev. 1143 (1982); Note, The Reliance Requirement in Private Actions under SEC Rule 10b–5, 88 Harv. L.Rev. 584, 592–606 (1975). The "fraud-on-the-market theory" is an umbrella term for those varied efforts. Black, Fraud on the Market: A Criticism of Dispensing with Reliance Requirements in Certain Open Market Transactions, 62 N.C.L. Rev. 435, 439–457 (1984).

3 An investor could invoke this presumption by demonstrating certain predicates: (1) a public statement; (2) an efficient market; (3) that the shares were traded after the statement was made but before the truth was revealed; and (4) that the statement was material. *Basic,* 485 U.S., at 248, n. 27, 108 S.Ct. 978.

4 The "weak form" of the hypothesis provides that an investor cannot earn an above-market return by trading on historical price data. See Dunbar & Heller, Fraud on the Market Meets Behavioral Finance, 31 Del. J. Corporate L. 455, 463–464 (2006) (hereinafter Dunbar & Heller). The "strong form" provides that investors cannot achieve above-market returns even by trading on nonpublic information. See *ibid.* The weak form is generally accepted; the strong form is not. See *ibid.*

5 The *Basic* Court's mistaken intuition about investor behavior appears to involve a category mistake: the Court invoked a hypothesis meant to describe markets, but then used it "in the one way it is not meant to be used: as a predictor of the behavior of individual investors." Langevoort, Theories, Assumptions, and Securities Regulation: Market Efficiency Revisited, 140 U. Pa. L.Rev. 851, 895 (1992). The efficient capital markets hypothesis does not describe "how investors behave; [it] only suggests the consequences of their collective behavior." Cox 1736. "Nothing in the hypothesis denies what most popular accounts assume: that much information searching and trading by investors, from institutions on down, is done in the (perhaps erroneous) belief that undervalued or overvalued stocks exist and can systematically be discovered." Langevoort, Theories, *supra,* at 895.

6 The majority suggests that *Basic* squares with *Comcast Corp. v. Behrend,* 569 U.S. ——, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013), and *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), because it does not "relieve plaintiffs of the burden of proving ... predominance" but "rather sets forth what they must prove to demonstrate such predominance." *Ante,* at 2412. This argument misses the point.

**Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014)**

134 S.Ct. 2398, 189 L.Ed.2d 339, 82 USLW 4522, Fed. Sec. L. Rep. P 98,003...

Because *Basic* offers defendants a chance to rebut the presumption on individualized grounds, the predicates that *Basic* sets forth as sufficient to invoke the presumption do not necessarily prove predominance.

7   The absence of postcertification rebuttal is likely attributable in part to the substantial *in terrorem* settlement pressures brought to bear by certification. See, *e.g.,* Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L. Rev. 97, 99 (2009) ("With vanishingly rare exception, class certification sets the litigation on a path toward resolution by way of settlement, not full-fledged testing of the plaintiffs' case by trial"); see also *Stoneridge Investment Partners, LLC v. Scientific–Atlanta, Inc.,* 552 U.S. 148, 163, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008) ("[E]xtensive discovery and the potential for uncertainty and disruption in a lawsuit allow plaintiffs with weak claims to extort settlements from innocent companies").

8   Of course, today's decision makes clear that a defendant may rebut the presumption by producing evidence that the misstatement at issue failed to affect the market price of the security, see *ante,* at 2413 – 2417. But both parts of *Basic* 's version of reliance are key to its fiction that an investor has "indirectly" relied on the misstatement; the unavailability of rebuttal with respect to one of those parts still functionally removes reliance as an element of proof.

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.