# EXHIBIT 8

# Bromberg and Lowenfels on Securities Fraud & Commodities Fraud

Second Edition

one need pay attention to those disclosures and the method employed by Congress to achieve the objective of the 1934 Act is defeated.' " *Basic* at CCH p 97,955 quoting *Shores v Sklar*, 647 F2d [462] at 483 [*, CCH par 98,033* (1981 Transfer Binder) (5th Cir en banc 1981) (12-10), *cert denied* 459 US 1102 (1983)] (Randall J, dissenting).

While this observation is trenchant when there is a disclosure document, it is hardly meaningful for the press releases and statements to journalists or stock exchange officials involved in *Basic*.

**(636) Vagueness of "Integrity."** This point is discussed in (651) below.

**(637) Illusion of Rebuttability.** This point is discussed in (660) below.

*(640) Nature of the Market.* We consider the markets eligible for FOMT (fraud-on-the-market-theory) in (641) below and other markets in (642) below.

**(641) FOMT Markets.** *Basic, Inc v Levinson*, ___ US ___, 108 SCt 978, 99 LEd2d 194, CCH par 93,645 (1988) (6-0, 4-2) assumes for FOMT an "open and developed" or "well developed" or "efficient" market. But the Court's opinion does not give meaning to those terms. Nor does it say explicitly that FOMT requires the market be open and developed and efficient if those words mean different things; however, that seems to be the implication.

The terms are reasonably definable as follows:

— An open market is one in which anyone, or at least a large number of persons, can buy or sell.

— A developed market is one which has a relatively high level of activity and frequency, and for which trading information (e.g., price and volume) is widely available. It is principally a secondary market in outstanding securities. It usually, but not necessarily, has continuity and liquidity (the ability to absorb a reasonable amount of trading with relatively small price changes).

— An efficient market is one which rapidly reflects new information in price.

These terms are cumulative in the sense that a developed market will almost always be an open one. And an efficient market will almost invariably be a developed one.

Lower courts have given a little guidance on the kind of market that qualifies for FOMT. *Sanders v Robinson Humphrey/American Express, Inc*, 634 FSupp 1048, 1063-64, CCH par 92,548 (1985–1986 Transfer Binder) (ND Ga 1986), in denying class certification, rules that certain limited

partnership interests are not traded in an *open* market and are therefore not eligible for FOMT. The court describes in this way the features that negate an open market:

> "The securities in fact were limited partnerships where liquidity was spelled out in the prospectus as being nonexistent except for the ability of Petro-Lewis [the sponsor or general partner] to repurchase the interest. Petro-Lewis additionally set the price, the number of sales that were to be made, and also looked at the ability of each purchaser to withstand any losses that might result from a purchase of this nature. Hence these securities were not traded on the open market where such factors would not be present. In an open market the issuer would have no contact whatsoever with the purchaser, the issuer would not provide for repurchase of the security in the event the purchaser desired to sell. Moreoever, in an open market, in order to sell, the purchaser only would have to set a price for the sale of the security and have a broker place the order." *Sanders* at 634 FSupp 1064.

This view is unduly restrictive. A market may be open even though the issuer sets the price and number of shares (e.g., an additional offering by an issuer whose previously outstanding securities trade in an open secondary market) or the securities are redeemable by the issuer at the option of the holder. The critical factors that kept the *Sanders* market from being open were the suitability limitation on buyers and the effective exclusion of sellers other than the issuer. On appeal of *Sanders* the upper court agreed that the market was not open but held that the FEMT variant of FOMT [(642) below] was applicable and would support class determination if the adequate representation requirements of Fed R Civ P 23(a)(4) were met. *Kirkpatrick v J C Bradford & Co*, 827 F2d 718, 723,* CCH par 93,383* (1987 Transfer Binder) (11th Cir 1987).

The requirement of a *developed* market is advocated in Note, *The Fraud-On-The-Market Theory*, 95 Harv L Rev 1143, 1153-58 (1982) and described as one which is efficient, i.e. in which market prices respond to information disseminated or not disseminated. While the Note does not give further criteria for identifying a developed market, it offers several examples of markets that are not developed: new offerings, thin markets, and restricted resale securities. *Id* at 95 Harv 1157.

*Efficient* markets are partially identified in Judge Patrick Higginbotham's analytical opinion in *LTV Securities Litigation*, 88 FRD 134, 144,* CCH par 97,605* (1980 Transfer Binder) (ND Tex 1980). He notes that empirical evidence justifies a belief that "widely followed securities of larger corporations are 'efficiently' priced" and "the prices of stocks of larger corporations, such as those listed on the New York Stock Exchange

seem especially efficient." A security listed on the American Stock Exchange and described as "widely traded and established" met the court's requirement for an efficient market in *Peil v Speiser*, 806 F2d 1154, 1161 n 10, CCH par 93,006 (1986–1987 Transfer Binder) (3d Cir 1986). Cf *Finkel v Docutel/Olivetti Corp*, 817 F2d 356, 364 n 25,* CCH par 93,281* (1987 Transfer Binder) (5th Cir 1987), *cert denied* 108 SCt 1220 (1988), noting the contention—to be decided on remand—that the over the counter market for a company with 3,200 shareholders was not efficient; *Reingold,* below.

Whether a market is open, developed and efficient for FOMT can be a fertile area of dispute with the possibility for many kinds of costly and complex expert testimony. The nature of the market is a fact issue which may have to be determined at trial. *Reingold v Deloitte Haskins & Sells,* 599 FSupp 1241, 1264,* CCH par 91,880* (1984–1985 Transfer Binder) (SD NY 1984) (refusing motion to dismiss: "whether Ferrovanadium ADRs [American Depository Receipts for foreign securities] traded in an efficient market is unclear. Resolution of that issue must await further proof"); *Finkel,* above.

For FOMT (and FEMT) purposes, each security has a distinct market. A market in the broad sense of the place or mechanism by which securities are traded—such as a stock exchange—can be open, developed or efficient for some securities listed there and not for others. Where securities are traded in more than one market (e.g., on a major stock exchange and on a regional exchange or over the counter) the focus should be on the primary market for the security since the secondary market is likely to move in close parallel to the primary market.

It is important to have a fairly simple way of resolving—at least tentatively—at an early stage in a case whether the market for a particular security is open, developed and efficient, since this affects whether a claim has been stated and whether a class may be certified. For statement of a claim, the allegations of the complaint are normally sufficient. But their sufficiency for class determination is open to question since the ruling for or against the class in practice often determines the fate of the case. Thus some sort of evidentiary base is appropriate for class determination.

It is relatively inefficient and imprecise—at trial, but even more so at class determination time—to analyze by regression analysis or other statistical techniques the response of a given security to specific information about it in order to decide if its market is efficient. There are questions about what information to test for, e.g., analysts' opinions or advisers' or brokers' recommendations versus issuer's announcements. One must somehow factor out general economic, industry and market information not specific to the security. There may be uncertainty when the information began to reach the market (e.g., by leaks, rumors or insider trading), creating doubt about the timing and amount of the

© McGraw-Hill, Inc.

RELIANCE CAUSATION

response. Cf *Blackie v Barrack,* 524 F2d 891, 909 n 25,\* CCH par 95,312\* (1975–1976 Transfer Binder) (9th Cir 1975) *cert denied* 429 US 816 (1976); Note, *The Measure of Damages in Rule 10b-5 Cases Involving Actively Traded Securities,* 26 Stan L Rev 371 (1974); Rosenbloom & Kroboth, Fraud on the Market: The Efficient Market Theory, New York Law Journal, June 2, 1988 at 5 col 1. Ultimately, one must decide what degree of responsiveness suffices for an efficient market. Expensive experts with complex equations and long computer printouts are highly likely to reach opposite conclusions on efficiency of the market.

It is more reasonable to approximate efficiency by looking at the more easily identifiable or measurable characteristics that indicate the market is developed. Identifiable characteristics include the structure and communication systems of the primary market for the security: stock exchange, NASDAQ National Market System, non-NMS NASDAQ or residual over the counter. Measurable characteristics for the particular security include number of market makers (if traded off a stock exchange), number of trades, number of shares or units traded, turnover (proportion of outstanding shares or units traded in a given time), size of float, number of shareholders and number of institutional holders. Most of these characteristics are widely available in published financial media.

We think that, at a minimum, there should be a presumption— probably conditional for class determination—that certain markets are developed and efficient for virtually all the securities traded there: the New York and American Stock Exchanges, the Chicago Board Options Exchange and the NASDAQ National Market System. The presumption would be rebuttable on a showing that the specific security in question is inactively traded on the market or unresponsive to new information. For other markets a presumption is harder to frame. Whether the trier of fact is allowed or required to engage in a presumption, the most practical—and therefore probably the best—base for the presumption is average trading volume over a period of several months surrounding the time of the alleged violations. Turnover measured by average weekly trading of 2% or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one; 1% would justify a substantial presumption. For over the counter markets without volume reporting, the number of market makers is probably the best single criterion. Ten market makers for a security would justify a substantial presumption that the market for the security is an efficient one; five market makers would justify a more modest presumption. [At the end of 1986, 398 of 2,494 non-NMS NASDAQ securities (15%) had more than 10 market makers; 1,266 (50%) had more than 5 market makers. In comparison, 836 of 2,695 NMS NASDAQ securities (31%) had more than 10 market makers; 1,846 (68%) had more than 5 market makers. NASDAQ Handbook 365 (1987).]

To the extent FOMT has application to commodity futures contracts and options on them, a similar presumption of efficiency should apply to the major commodity exchanges, e.g., the Chicago Board of Trade and Chicago Mercantile Exchange.

**(642) FEMT and Other Markets.** A variant of FOMT (fraud-on-the-market-theory) has been applied to undeveloped markets and is discussed here and in (652) below. The leading and most controversial example is *Shores v Sklar*, 647 F2d 462*, CCH par 98,033* (1981 Transfer Binder) (5th Cir en banc 1981) (12-10) (*"Shores I"*), *cert denied* 459 US 1102 (1983), subsequent appeal, *Shores v Sklar*, ___ F2d ___*, CCH par 93,746* (11th Cir May 10, 1988) (2-1) ("Shores II"). Plaintiff bought from a broker, at the broker's recommendation, a small issue of local Alabama industrial development bonds, which shortly went into default. Plaintiff could not sue on the misleading offering circular for the bonds because he never saw or was aware of it, and thus could not have relied, even indirectly. *Shores I* at 647 F2d 468.

But the *Shores* plaintiff was allowed to sue on the claim that the bonds were "fraudulently marketed," i.e. sold pursuant to a scheme that was "so pervasive that without it the issuer would not have issued, the dealer could not have dealt in, and the buyer could not have bought these Bonds, because they would not have been offered on the market at any price." *Shores I* at 647 F2d 464 n 2.

Whether a security is marketable is normally a fact question, for the jury if there is one. *Ross v Bank South*, 837 F2d 980,* CCH par 93,639 at pp 97,903, 97,904* (11th Cir 1988).

The *Shores* theory is more accurately described as fraud-to-enter-the-market-theory (FEMT) or as fraud-on-the-undeveloped-market-theory. *Shores II* at CCH p 98,511.

The *Shores* plaintiff alleged a scheme to defraud and fraudulent course of business [Rule 10b-5(1) and (3)], which included: the promoters were crooked; the industrial lessee was inept and financially unable to produce its product; the lawyer who drafted the offering circular omitted the name of the underwriters and an SEC action against them, neglected to mention that the lessee was already in default, and misrepresented the lessee's assets and their value; the lessee's financial statement greatly overstated assets; the promoter who guaranteed the lessee's lease had insufficient assets to fulfill the guarantee; and the bond proceeds were diverted. Judge Charles Clark for the 12-judge majority said that plaintiff could prove that he was willing to accept any marketable risk. Accordingly, he might prove causation:

> "The requisite element of causation in fact would be established if [plaintiff] proved the scheme was intended to and did bring the

© McGraw-Hill, Inc.

alleged misstatements and its officers); in FEMT cases: *Kirkpatrick v J C Bradford & Co*, 827 F2d 718,* CCH par 93,383* (1987 Transfer Binder) (11th Cir 1987), *cert denied* 108 SCt 1221 (1988) (brokers); *Ross v Bank South*, 837 F2d 980,* CCH par 93,639 at pp 97,906-97,907* (11th Cir 1988) (indenture trustee, issuer, trustees of issuer, promoter, underwriter, bond counsel, feasibility consultant, joint venturers, some of whom received summary judgment); *Shores v Sklar*, ____ F2d ____*, CCH par 93,746* (11th Cir May 10, 1988) (underwriter, bond counsel, trustee of bond proceeds).

**(692) Pleading.** The elements of a misrepresentation FOMT case were prescribed in somewhat greater detail in *Levinson v Basic, Inc*, 786 F2d 741, 750, CCH par 92,529 (1985–1986 Transfer Binder) (6th Cir 1986) than in the Supreme Court's opinion in the same case:

> "In order to invoke the presumption of reliance based upon the fraud on the market theory, a plaintiff must allege and prove five elements. A plaintiff must demonstrate (1) that the defendants made public misrepresentations, *Blackie [v Barrack]*, 524 F2d [891] at 906 [*, CCH par 95,312* (1975-1976 Transfer Binder) (9th Cir 1975) *cert denied* 429 US 816 (1976)], (2) that the misrepresentations were material, id, (3) that the stock was traded on an efficient market, Note, [*The Fraud on the Market Theory,*] 95 Harv L Rev [1143] at 1161 [(1982)], (4) that the misrepresentations would induce a reasonable, relying investor to misjudge the value of the stock, see *Schlanger v Four-Phase Systems, Inc*, 555 FSupp 535, 538 [* CCH par 99,147* (1982–1983 Transfer Binder)] (SD NY 1982), and (5) that the plaintiff traded in the stock between the time the misrepresentations were made and the time the truth was revealed. *Blackie*, 524 F2d at 906." *Levinson* at 786 F2d 750.

The Supreme Court, in approving the appeal court's use of FOMT but vacating on other grounds, reproduced this 5-element list with apparent approval but added "Given today's decision regarding the definition of materiality [by the reasonable investor test] as to preliminary merger discussions, elements (2) and (4) may collapse into one." *Basic, Inc v Levinson*, ____ US ____, 108 SCt 978, 99 LEd2d 194, CCH par 93,645 at p 97,951 n 27 (1988) (6-0, 4-2). Thus it seems unnecessary to plead element (4) in the list above. Our list would then be:

(1)   Public misrepresentations

(2)   Materiality

(3)   Efficient market

(4)   Plaintiff traded between misrepresentation and correction

                    © McGraw-Hill, Inc.

It is common, and probably desirable, to cover variants of the FOMT articulation, especially if they are used in the Circuit or District where the case is filed, by adding pleadings of:

(5) Reliance on the market for the security or the market price of the security (or both) and

(6) Reliance on the integrity of the market [(651) above].

(7) Indirect reliance on the misrepresentations through reliance on the market price and or market integrity.

Plaintiff must, of course, allege the other 10b-5 elements, e.g., scienter, causation and damages.

The elements of an FOMT omission pleading would be similar, subject to the comments above:

(1) Public statement misleading because of omissions

(2) Materiality

(3) Efficient market

(4) Plaintiff traded between statement and disclosure

(5) Reliance on the market for the security or the market price of the security (or both) and

(6) Reliance on the integrity of the market [(651) above].

(7) Indirect reliance on the statement (and its completeness) or omission through reliance on the market price and or market integrity.

The elements of an FEMT case have been stated as:

"(1) the defendants knowingly conspired to bring securities onto the market which were not entitled to be marketed, intending to defraud purchasers, (2) [plaintiff] reasonably relied on the Bonds' availability on the market as an indication of their apparent genuineness, and (3) as a result of the scheme to defraud, he suffered a loss." *Shores v Sklar,* 647 F2d 462, 469-70,* CCH par 98,033* (1981 Transfer Binder) (5th Cir en banc 1981) (12-10), *cert denied* 459 US 1102 (1983).

To this the pleader may want to add reliance on the integrity of the market. The general 10b-5 elements, such as scienter and damages, should also be alleged.

Any complaint should, of course, comply with generally applicable requirements including Fed R Civ P 9(b) (pleading fraud with particulari-

RELIEF

BUYER-SELLER

ty) and 11 (belief, after investigation, that complaint is well grounded in fact and warranted by law).

**(693) Motions.** The most commonly used motion to test an FOMT or FEMT complaint is under Fed R Civ P 12(b) (failure to state a claim). Fed R Civ P 9(b), mentioned above, is also used. The critical motion for plaintiff is for class certification, Fed R Civ P 23 [(612), (623) above].

Partial summary judgment motions may be appropriate for some issues, depending on the factual record. These issues might include the efficient or developed character of the market [(641) above], perhaps the unmarketable nature of the security in an FEMT case [(642) above] and rebuttal of the FOMT or FEMT presumption [(660)-(662) above].

**(694) Burden of Proof; Quantum of Proof.** Plaintiff has the burden of proof of elements (1)-(4) in (691) above, and others listed there that are pled. *Levinson v Basic, Inc*, 786 F2d 741, 750, CCH par 92,529 (1985–1986 Transfer Binder) (6th Cir 1986). The burden of rebutting the FOMT presumption is on the defendants. *Grossman v Waste Management, Inc*, 589 FSupp 395, 407,* CCH par 91,550* (1984 Transfer Binder) (ND Ill 1984).

The quantum of proof, as for other 10b-5 claims, is preponderance of the evidence. *Herman & MacLean v Huddleston*, 459 US 375, 387-91, 103 SCt 683, 74 LEd2d 548, CCH par 99,058 (1982–1983 Transfer Binder) (1983) (8-0). *Peil v Speiser*, 806 F2d 1154, 1164 n 18, CCH par 93,006 (1986–1987 Transfer Binder) (3d Cir 1986).

**(695) Proof.** There is to date not much guidance on the two unusual problems of proof in the kinds of cases we have been discussing. The problem in an FOMT case is the nature of the market, discussed in (641) above. Statistical evidence and opinion evidence from securities professionals should be admissible. The problem in an FEMT case is the unmarketability of the security, discussed in (642) above. Opinion evidence from securities professionals should be admissible as well as factual evidence of difficulties in bringing the security to market, as in *Ross v Bank South*, 837 F2d 980,* CCH par 93,639* (11th Cir 1988).

[The next page is 213]

   © McGraw-Hill, Inc.