# EXHIBIT 47 (part 1)

# EXHIBIT 7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Case No.: 4:21-cv-02473 |

# SURREPLY REPORT

# OF

# LUCY P. ALLEN

**June 19, 2024**

**TABLE OF CONTENTS**

I.  Scope of Assignment ...................................................................................................1

II.  Qualifications and Remuneration .......................................................................1

III.  Materials Considered .........................................................................................1

IV.  The Coffman Rebuttal Fails to Rebut Defendants' Claim that There Is No Price Impact from Any of the Individual Category A, B, or C Alleged Misstatements ...............2

    A.  The Coffman Rebuttal mistakenly attempts to analyze price impact by addressing all alleged misstatements as a group rather than as individual misstatements and thus completely fails to address whether there is price impact from any of the individual Category A, B, or C alleged misstatements .................................................2

    B.  The Coffman Rebuttal fails to do a front-end analysis of price impact, and its criticisms of the Allen Report's front-end content analysis are incorrect ....................4

    C.  The Coffman Rebuttal's back-end analysis of price impact not only fails to properly analyze any specific alleged misstatement but also fails to show an economic or causal link between any price movement and the alleged misstatements .........................................................................................................8

        1.  The Coffman Rebuttal's back-end analysis of price impact fails to actually analyze any specific alleged misstatement, including any individual Category A, B, or C alleged misstatement ........................................................................8

        2.  The analyst commentary cited in the Coffman Rebuttal is only topically related to the general allegations in the case and does not show price impact from any of the individual Category A, B, or C alleged misstatements .................9

        3.  The Coffman Rebuttal's finding of a statistically significant price decline after the alleged corrective disclosure does not establish an economic or causal link between this price movement and any of the individual Category A, B, or C alleged misstatements .........................................................................12

        4.  The Coffman Rebuttal ignores that the back-end content analysis in the Allen Report provides strong evidence supporting a lack of price impact and merely claims that it is not a "bright-line indicator of price impact" ...............12

V.  The Coffman Rebuttal Fails to Rebut the Issues Raised in the Allen Report Regarding the Proposed Common Damages Methodology ..........................................................13

    A.  The Coffman Rebuttal's claim that the damages calculation can be separated from a materialization of risk theory is contrary to the underlying nature of Plaintiffs' claims ..............................................................................................................13

    B.  The Coffman Rebuttal, rather than actually addressing the issues raised in the Allen Report, merely promises that its proposed common damages methodology will "adapt" and "address" them ....................................................................15

C.  The Coffman Rebuttal fails to rebut that former RSP shareholders in the proposed class do not fit Plaintiffs' theory ...................................................................17

## I.      SCOPE OF ASSIGNMENT

1.      I have been asked by counsel for Defendants to review and comment on the Expert Rebuttal Report of Chad Coffman, CFA, dated May 8, 2024 (the "Coffman Rebuttal").

2.      I have previously submitted an expert report in this matter, dated March 15, 2024 (the "Allen Report"). Mr. Coffman previously submitted an expert report in this matter, dated December 7, 2023 (the "Coffman Report").

## II.      QUALIFICATIONS AND REMUNERATION

3.      My qualifications and remuneration were set forth in the Allen Report.

## III.      MATERIALS CONSIDERED

4.      In preparing this report, I considered the materials previously considered in the Allen Report. In addition, I considered the following materials:

a) Defendants' Opposition To Plaintiffs' Motion For Class Certification, filed March 15, 2024;

b) Expert Rebuttal Report of Chad Coffman, CFA, dated May 8, 2024, including materials considered and turned over;

c) RSP Form DEFM14A, filed June 6, 2018; and

d) Legal decisions on class certification and market efficiency.

1

## IV.   THE COFFMAN REBUTTAL FAILS TO REBUT DEFENDANTS' CLAIM THAT THERE IS NO PRICE IMPACT FROM ANY OF THE INDIVIDUAL CATEGORY A, B, OR C ALLEGED MISSTATEMENTS

### A.   The Coffman Rebuttal mistakenly attempts to analyze price impact by addressing all alleged misstatements as a group rather than as individual misstatements and thus completely fails to address whether there is price impact from any of the individual Category A, B, or C alleged misstatements

5.      The Coffman Rebuttal completely fails to rebut Defendants' claim that there is no price impact from any of the individual Category A, B, or C alleged misstatements. Mr. Coffman mistakenly attempts to analyze price impact by addressing all alleged misstatements as a group rather than as individual misstatements.[1] Defendants claim that there is no price impact from any of the individual Category A, B, or C alleged misstatements, not from all alleged misstatements.[2] Mr. Coffman's analysis not only does not show price impact from the alleged misstatements as a group but also completely fails to address whether there is price impact from any of the individual Category A, B, or C alleged misstatements.

6.      Mr. Coffman concludes that there is "compelling evidence of price impact" of the alleged misrepresentations.[3] Mr. Coffman comes to this conclusion solely by finding a statistically significant price decline after the alleged corrective disclosure and certain analyst commentary after the alleged corrective disclosure that is only topically related to the general allegations in the case.[4] Importantly, Mr. Coffman has not shown that there is price impact from any of the individual Category A, B, or C alleged misstatements. Mr. Coffman does not analyze any of the individual alleged misstatements or show that there is a link between Concho's price movement and any of the specific Category A, B, or C alleged misstatements. In fact, the Coffman Rebuttal fails to analyze or even mention any of the specific alleged misstatements,

---

[1]   Coffman Rebuttal, ¶14.

[2]   Defendants' Opposition to Plaintiffs' Motion for Class Certification, pp. 13-21.

[3]   Coffman Rebuttal, ¶23.

[4]   Coffman Rebuttal, Section III.

2

except when making an argument that two alleged misstatements had "specific economic meaning" (which, as discussed below, he fails to specify).[5]

7. The Allen Report analyzed every one of the individual Category A, B, and C alleged misstatements and showed that there is no evidence of price impact from any of those individual alleged misstatements.[6] The Coffman Rebuttal fails to address whether there is price impact from any of the individual Category A, B, or C alleged misstatements or rebut any of the analyses in the Allen Report with regard to the specific alleged misstatements. The Coffman report does not claim that any of the results of the analysis of the specific alleged misstatements in the Allen Report are incorrect and mentions no issues with the content analysis. Instead, the Coffman Rebuttal concludes that a price drop after the alleged corrective disclosure that relates to the general topics of the allegations as a whole (including the Company's rig count and production forecasts) necessarily demonstrates price impact from *all* of the alleged misrepresentations.[7]

8. The Coffman Rebuttal ironically criticizes the Allen Report for failing to analyze price impact of all alleged misstatements[8] when the problem with the Coffman Rebuttal is that Mr. Coffman fails to actually analyze *any specific* alleged misstatement. Instead, he erroneously groups all alleged misstatements together and attempts to claim a link between them and the later price drop because both are topically "related."[9] The assignment of the Allen Report, as explicitly stated in the section titled "Scope of Assignment," was to analyze specific alleged misstatements, in particular, the 54 alleged misstatements grouped into Categories A, B, and C. There are 18 additional alleged misstatements identified in the Complaint and Defendants are not challenging class certification for those alleged misstatements on lack of price impact grounds.[10]

---

[5] Coffman Rebuttal, ¶¶41-43.

[6] Allen Report, Section V and Appendix D.

[7] Coffman Rebuttal, Section III.

[8] Coffman Rebuttal, ¶30. ("Even if one were to accept Defendants' categorization scheme, Ms. Allen's analysis fails to address all alleged misstatements. Specifically, Appendix I to Defendants' Motion includes Category D, a fourth category of alleged misstatements not addressed in the Allen Report. Although Ms. Allen states that she "was not asked to analyze those alleged misstatement [sic]," she fails to present any evidence that there is a lack of price impact related to those 18 alleged misstatements.")

[9] Coffman Rebuttal, ¶¶22-23.

[10] Defendants' Opposition to Plaintiffs' Motion for Class Certification, p. 7, footnote 1.

I was not asked to analyze those other alleged misstatements, and the Allen Report does not address them.[11]

9.      The Coffman Rebuttal claims that there are flaws with the categorization of the alleged misstatements into Category A, B, and C.[12] However, the Coffman Rebuttal's criticism about the categorization of the alleged misstatements is irrelevant to whether any of the individual alleged misstatements had price impact. The Allen Report analyzed each individual alleged misstatement in Category A, B, and C, and that analysis, as well as its results, are independent of the categorization of those alleged misstatements. In other words, the categorization merely acts as an aid in organizing the analysis, not as a tool that affects the results.

### B.      The Coffman Rebuttal fails to do a front-end analysis of price impact, and its criticisms of the Allen Report's front-end content analysis are incorrect

10.      Mr. Coffman fails to do any front-end analysis of price impact, and his criticisms of the Allen Report's front-end content analysis are incorrect.

11.      An analysis of price impact is an analysis of whether the alleged misrepresentations affected the market price when made. The Supreme Court defined price impact in the context of class certification in securities class actions as "whether the alleged misrepresentations affected the market price in the first place."[13] In general, the price impact of an alleged misrepresentation can be analyzed in at least two ways: (1) directly by analyzing the market reaction following an alleged misstatement, including analyzing the stock price movement and examining market and analyst commentary following the misstatement ("front-end analysis"), or (2) indirectly by analyzing the market reaction to a disclosure that is corrective

---

[11]   Allen Report, ¶9.

[12]   Coffman Rebuttal, ¶11.

[13]   See, for example, *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2186 (2011). ("'[P]rice impact' – that is, whether the alleged misrepresentations affected the market price in the first place.")

4

of an alleged misstatement ("back-end analysis").[14] Mr. Coffman performs no front-end analysis of price impact for any of the alleged misstatements.

12.     Mr. Coffman claims, without any analysis, that the alleged misstatements in this case are "omissions" or "price maintenance" misstatements, and thus, asserts that the front-end content analysis in the Allen Report is "completely irrelevant to price impact."[15] Not only does Mr. Coffman fail to do any analysis and only makes unsupported assertions, but he also fails to specify whether the alleged misstatements are omissions or price maintenance misstatements. Further, Mr. Coffman also fails to indicate what was omitted for the alleged omissions and, for the alleged price maintenance misstatements, when the statement was first made and whether there was a market reaction when first made.[16]

13.     Moreover, Mr. Coffman's claim that the front-end analysis in this case is "completely irrelevant to price impact" directly contradicts his own finding that several of the alleged misstatements had "specific economic meaning."[17] In particular, Mr. Coffman claims that the alleged misstatements A-11 and A-25 have "specific economic meaning."[18] Alleged

---

[14]   See, for example, *Erica P. John Fund, Inc. v. Halliburton Co.*, 134 S. Ct. 2398 (2014).

Note that simply testing whether there were statistically significant price reactions on the dates of the alleged corrective disclosures may not be a reliable analysis of price impact of the alleged misrepresentations for a number of reasons, including the following:

1. The alleged corrective disclosures may not actually be corrective of the alleged misrepresentations. (If the alleged corrective disclosures are not in fact corrective, they cannot help one determine the price impact of the alleged misrepresentations).

2. The alleged corrective disclosure dates may not properly correspond to when the alleged misrepresentations were first corrected in the market. (Since, in an efficient market, only new news should affect a security's price, the reaction to repeated news is not a reliable indicator of what the price impact of the news would be initially. If news that is not new affects the price, then that is an indication that the market is not efficient.)

3. The price reaction on the alleged corrective disclosure dates may be the result of confounding factors or news unrelated to the alleged fraud.

4. Market conditions may have changed between the time that the alleged misrepresentations were made and the time of the alleged corrective disclosures.

[15]   Coffman Rebuttal, ¶36.

[16]   Mr. Coffman is completely silent about the Allen Report's point that several of the alleged misstatements were nearly identical to statements made by the Company before the alleged Class Period and that in an efficient market, confirmatory or repeated news (i.e., news that had already been publicly disclosed) should not impact the market. Allen Report, ¶¶48-50.

[17]   Coffman Rebuttal, ¶36, ¶¶41-43.

[18]   Alleged Misstatement A-11:

misstatement A-11 mentions that "intense development" requires "multi-well pads" and "long laterals and all the infrastructure that we're going to be able to use together."[19] Alleged misstatement A-25 mentions that "by drilling longer laterals and the spacing we're using, the efficiency and all that, you can get a whole lot more done."[20]

14.     Tellingly, Mr. Coffman fails to specify what is the specific economic meaning in those alleged misstatements or analyze the relevant question of how the market reacted to those alleged misstatements. Moreover, if there were, as he claims, specific economic meaning, one would expect analysts to incorporate that specific economic meaning into their valuations of the Company. Mr. Coffman fails to analyze any of the analyst reports after those alleged misstatements or show that any of the analysts incorporated that "specific economic meaning" into their valuations. In the Allen Report, I analyzed all of the analyst reports issued after alleged misstatements A-11 and A-25 and found that not only did analysts not change their price targets or valuations of Concho in response to those alleged misstatements but they did not even reference those alleged misstatements.[21] The fact that not a single analyst even mentioned those

---

**Analyst**: Sure, understood. And then, I guess, second, the synergies you talked about and the advantages to quote-unquote manufacturing, can you just give a little bit of additional color detailing around what exactly it is that allows manufacturing mode on these assets to drive those synergies?

Leach: Yes. As Steve mentioned, I mean, the balance sheet to be able to do this *intense development*, instead of 1 or 2 well pads, to go to *8 well multiwell pads is one of the drivers*. But it's also long laterals and all the infrastructure that we're going to be able to use together. Infrastructure, such as salt water disposal systems, water handling system that we built over time. *All those things will be very additive*. [Allen Report, Appendix C, p. 4]

Alleged Misstatement A-25:

Analyst: That makes a lot of sense. Then lastly, Tim, on your prepared remarks, and certainly in some of your comments earlier, doesn't sound like you're too concerned about upcoming service cost. Kind of sounds like maybe perhaps it'll stay in line. I know I've asked you about this in the past, would you think about -- I know I've talked to some others that are locking in some rigs on a bit longer- term contracts. People seem to be a little more concerned may be on rig inflation than they are on fracs here and then, let's call it, for 2019, could you all maybe just address the drilling or it's completion side. Any concerns you might have there?

Leach: No, I think *the drilling side of our business is one of the best parts of our business*. And I think *the way we have approached that in the past will continue*. I mean, you can see that it doesn't require that much of a growth in rigs to accomplish all the future, not just for '19 and '20, but beyond. So, by *drilling longer laterals and the spacing we're using, the efficiency and all that, you can get a whole lot more done*. And we do have rigs that now are on 6-months contracts or 1-year contracts but *we do have kind of a portfolio approach on that. But I don't think you should expect us to - any change in strategy based on what we're seeing today*. [Allen Report, Appendix C, p. 11]

19    Coffman Rebuttal, ¶42, Complaint, ¶208.

20    Coffman Rebuttal, ¶41, Complaint, ¶258.

21    Allen Report, ¶¶8-28.

6

alleged misstatements provides strong evidence that those alleged misstatements were not important to the market and thus had no price impact.

15.     Although Mr. Coffman correctly identifies the four questions in the front-end content analysis for the Category A alleged misrepresentations in the Allen Report, Mr. Coffman confusingly criticizes the Allen Report for looking at only two of the four questions.[22] This is flatly incorrect. The Allen Report analyzed all four questions, and Mr. Coffman is completely ignoring the analysis and findings in the Allen Report regarding the third and fourth questions of the content analysis.[23] The methodology described in the Allen Report was to answer four questions (not two) for each alleged misstatement, and the results are meant to be interpreted as such.[24]

16.     As discussed in the Allen Report, the content analysis of analyst reports issued *after the Category A alleged misstatements* yielded the following results for the four questions analyzed:[25]

- o  For each alleged misstatement, there was <u>no</u> indication in any of the analyst reports that the alleged misstatement <u>caused the analyst to change its valuation</u> of Concho and/or its stock.

- o  For each alleged misstatement, there was <u>no</u> indication in any of the analyst reports that the alleged misstatement <u>caused the analyst to change its price targets</u> for Concho.

- o  For 29 of the 33 Category A alleged misstatements, there was no reference to the alleged misstatement in any of the analyst reports. There were 4 analyst reports that mention 4 of the alleged misstatements. The analysts that do reference the alleged misstatements appear to be referencing the alleged misstatement in a different context than what is alleged to be misstated in the Complaint.

---

[22]   Coffman Rebuttal, ¶40.

[23]   Allen Report ¶¶11-14, 23, 26.

[24]   Allen Report, Section V.

[25]   Allen Report, ¶23 and Appendix D, pp. 1-33.

7

o For the 14 alleged misstatements that were made in earnings calls, 76% of analyst reports did not mention the earnings call at all. For the 2 alleged misstatements that were made in SEC Forms 10-K, none of the analysts mentioned the Forms 10-K. For the 9 alleged misstatements made in investor conferences, none of the analyst reports mentioned these conferences.

17. The Coffman Rebuttal makes further erroneous criticisms about the front-end analysis in the Allen Report. Mr. Coffman claims that "using Ms. Allen's flawed logic, it would follow that every time an analyst's valuation or price target following an earnings announcement remained the same, all of the revenue and earnings values contained in that announcement could be considered 'generic' and therefore have no price impact, which is clearly incorrect."[26] The Allen Report is not saying that because analysts did not change their valuation or price targets, a statement is "generic." Instead, the Allen Report explains that if a generic statement does not change any analysts' valuation or price targets, it provides evidence that the statement had no price impact.

**C.    The Coffman Rebuttal's back-end analysis of price impact not only fails to properly analyze any specific alleged misstatement but also fails to show an economic or causal link between any price movement and the alleged misstatements**

**1.    The Coffman Rebuttal's back-end analysis of price impact fails to actually analyze any specific alleged misstatement, including any individual Category A, B, or C alleged misstatement**

18. Mr. Coffman claims that there is a "clear economic and causal link between Plaintiffs' alleged misstatements and the alleged corrective disclosure."[27] However, Mr. Coffman not only fails to actually analyze any specific alleged misstatement, including any individual Category A, B, or C alleged misstatement, but also completely fails to show an economic or causal link between any of these individual alleged misstatements and the alleged corrective disclosure. Instead, Mr. Coffman has a very general summary of the alleged misstatements and merely shows that the alleged corrective disclosure was new bad news that discussed topics that

---

[26]    Coffman Rebuttal, ¶38.

[27]    Coffman Rebuttal, Section III.

8

were generally related to Plaintiffs' allegations and the Company's business.[28] Mr. Coffman's general analysis cannot and does not support his finding of a "clear economic and causal link" between the specific alleged misstatements and the alleged corrective disclosure.[29] Moreover, using Mr. Coffman's flawed logic, any bad news about the Company's wells or its oil production would be evidence of price impact of the alleged misstatements.

19.     Mr. Coffman's analysis actually appears to validate many of the findings of the back-end content analysis in the Allen Report, which show that there is no link between the alleged misstatements in Category A, B and C and the alleged corrective disclosure but instead a mismatch between them. In particular, Mr. Coffman appears to agree with many of the findings of my back-end content analysis by stating the following:

> Her only empirical finding is that after the corrective information was released, there were no analyst reports that (1) specifically mentioned having learned a prior Concho statement was inaccurate or misleading; (2) specifically drew a connection between the corrective information and any specific alleged misstatement; or (3) specifically mentioned one of the alleged misstatements. [Coffman Rebuttal, ¶10]

Mr. Coffman fails to rebut any of these empirical findings.

**2.     The analyst commentary cited in the Coffman Rebuttal is only topically related to the general allegations in the case and does not show price impact from any of the individual Category A, B, or C alleged misstatements**

20.     Mr. Coffman purports to show that analyst commentary after the alleged corrective disclosure supports his view that there is a "clear economic and causal link" between the alleged misstatements and the alleged corrective disclosure.[30] However, even though some of the analyst commentary cited by Mr. Coffman includes statements that are topically related to Plaintiffs' general allegations in the case (e.g., the lower production forecast), Mr. Coffman does not show any economic or causal link between any of the individual Category A, B, or C alleged misstatements and the alleged corrective disclosure.

---

[28]   Coffman Rebuttal, ¶14.

[29]   Coffman Rebuttal, Section III.

[30]   Coffman Rebuttal, Section III.

9

21.    In the Allen Report, my team and I performed a systematic and scientific content analysis of all analyst reports issued after the alleged corrective disclosure. The content analysis demonstrated that there is no basis to conclude that the alleged corrective disclosure was tied to any of the individual alleged misstatements in Category A, B, or C and that the alleged corrective disclosure was not considered corrective of those alleged misstatements.[31]

22.    Mr. Coffman fails to link the alleged corrective disclosure to any of the alleged misstatements, and the analyst commentary that he cites to support his finding of price impact only shows that there was new negative news announced on the alleged corrective disclosure date.[32] For example, Mr. Coffman cites the following quote from a Barclays analyst report on July 31, 2019, the date of the alleged corrective disclosure:

> "However, the market's focus heading into the print was on CXO's ability to maintain operational momentum in H2'19 and potential risk to the 2020 outlook as rig data indicated that CXO currently is running 18 rigs vs. Q1 earnings call commentary of low 20s by the summer and original guidance of 24 rigs in Q3/Q4. […] While the Q2 release validated these concerns (see discussion below), **we were caught off guard by having the old industry albatross of unsuccessful spacing pilots with lasting effects also being a culprit."** [Coffman Report, ¶15, emphasis from Coffman Rebuttal]

23.    Mr. Coffman fails to link this commentary to any specific Category A, B, or C alleged misstatement. The Barclays commentary is not indicative that the market or the analysts are learning anything new about any of the Category A, B, or C alleged misstatements. Instead, the Barclays commentary is focusing on the new results about the Dominator project and noting that unsuccessful spacing pilots have always been an issue in the industry. The Barclays comment that they were "caught off guard" means they were negatively surprised. Defendants are not arguing that there was no new negative news that surprised the market on this date. Instead, Defendants are arguing that the new negative news was not corrective of prior Category A, B, or C alleged misstatements, so the price decline after that news cannot be evidence of price impact from those alleged misstatements.[33]

---

[31]   Allen Report, Section V.

[32]   Coffman Rebuttal, ¶15.

[33]   Defendants' Opposition to Plaintiffs' Motion for Class Certification, pp. 13-21.

10