# EXHIBIT 62

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CITY OF SUNRISE GENERAL EMPLOYEES' RETIREMENT PLAN, *on behalf of itself and all others similarly situated*, | : : : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. 1:17-CV-02207-LMM |
| v. | : : | |
| FLEETCOR TECHNOLOGIES, INC., *et al.*, | : : : : : : : : | |
| Defendants. | : | |

**ORDER**

This case comes before the Court on Lead Plaintiff's Motion for Class

Certification, Appointment of Class Representative, and Appointment of Class

Counsel [68]. After a review of the record and due consideration, the Court enters

the following Order.

## I. Brief Factual Background[1]

The complete factual background of this case is set out in the previous

order granting in part and denying in part Defendants' Motion to Dismiss [30],

and the Court incorporates those facts by reference here. See Dkt. No. [40].

---

[1] All facts are drawn from the Amended Complaint [27] unless otherwise
indicated.

In pertinent part, Lead Plaintiff City of Sunrise General Employees' Retirement Plan ("Sunrise General") is a public pension fund that provides retirement benefits to public workers, other than police officers or firefighters, in the City of Sunrise, Florida. Plaintiff purchased shares of Defendant FleetCor Technologies, Inc.'s ("FleetCor") stock during the Class Period (February 4, 2016 to May 3, 2017) and alleges it suffered financial damages from the fall of the stock price.

Defendant FleetCor is a global provider of workforce payment products, whose revenue is primarily derived through the sale and maintenance of "fuel card" programs to business owners with vehicle fleets. Defendant Ronald F. Clarke is Chief Executive Officer and Chairman of FleetCor's Board of Directors, and Defendant Eric R. Dey is FleetCor's Chief Financial Officer.

Plaintiff alleges that FleetCor trained its sales people to advertise FleetCor products as having no fees; while in reality, FleetCor received hundreds of millions of dollars from charging fees. According to Plaintiff, FleetCor waited to impose the fees for approximately three months–after customers stopped checking their invoices carefully–and would then insert fees without notice. Plaintiff alleges that throughout the Class Period, Defendants made repeated false statements about FleetCor's revenue growth while omitting that its growth was derived from the fees. Further, Plaintiff alleges that Mr. Clarke and Mr. Dey drove FleetCor's predatory fee practices, and that as FleetCor's stock price rose on the strength of FleetCor's misstatements and omissions, the individuals took

advantage of FleetCor's artificially inflated stock prices to enrich themselves via insider sales.

On March 1, 2017, April 4, 2017, and April 27, 2017 a series of partial disclosures from third-parties documented a series of investigative reports revealing the severity and scope of FleetCor's fee practices. Additionally, on May 1, 2017, Chevron, formally FleetCor's largest oil company partner, brought suit against FleetCor on the basis of its predatory fee scheme. In total, from the first partial disclosure of the fraud until the end of the Class Period, FleetCor stock price declined from $148.08 to $ 131.26, a drop of 11.35%. This drop caused a loss of approximately $1.5 billion in market capitalization. Accordingly, Lead Plaintiff filed the instant motion to certify a class to recover all damages suffered by it and other potential Class Members related to Defendants' alleged fraud.

## II. **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 23, a class action may be maintained only if two conditions are satisfied: the named plaintiffs must be "qualified to represent the members of the class in accordance with the four prerequisites of Rule 23(a), and the action must be one of the three types Rule 23(b) identifies." Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987) (internal footnote omitted). Rule 23(a) requires Plaintiffs to show that

1) the class is so numerous that joinder of all members is impracticable;
2) there are questions of law or fact common to the class;
3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

3

4) the representative parties will fairly and adequately protect the interests of the class.

"These four requirements commonly are referred to as the prerequisites of numerosity, commonality, typicality, and adequacy of representation, and they are designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims." Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001) (internal punctuation omitted).

If Lead Plaintiff can establish that Rule 23(a)'s four requirements are satisfied, they must then show that at least one of the requirements set forth in Rule 23(b) is met. Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009). Lead Plaintiff relies on Rule 23(b)(3), which provides in pertinent part that a class action may be maintained where it is shown that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

In addition to these express requirements of Rule 23, there is an implicit but firm requirement that Lead Plaintiff must satisfy. "Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012) (internal quotation omitted).

4

Courts must perform a "rigorous analysis" to ensure that Rule 23's requirements are satisfied before certifying a class. <u>Gen. Tel. Co. of S.W. v. Falcon</u>, 457 U.S. 147, 161 (1982). This is so even where some of the requirements are not in dispute, <u>Valley Drug Co. v. Geneva Pharm., Inc.</u>, 350 F.3d 1181, 1188 (11th Cir. 2003), or where it requires the Court to decide disputed questions of fact that bear on the inquiry. <u>Brown v. Electrolux Home Prods., Inc.</u>, 817 F.3d 1225, 1233–34 (11th Cir. 2016); <u>see also</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard."); <u>Comcast Corp. v. Behrend</u>, 569 U.S. 27, 33-35 (2013) (reversing certification where district court abstained from considering certain arguments that pertained to both Rule 23 and the merits determination). Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and thus merits questions may be considered "only to the extent" they pertain to the Rule 23 analysis. <u>Amgen Inc. v. Conn. Ret. Plans & Tr. Funds</u>, 568 U.S. 455, 466 (2013).

Finally, it is well settled that the party seeking certification bears the burden of proving that it is appropriate, and there is no presumption in favor of certification. "A district court that has doubts about whether the requirements of Rule 23 have been met should refuse certification until they have been met." <u>Electrolux</u>, 817 F.3d at 1233–34 (internal punctuation omitted).

## III.   Discussion

In light of the foregoing authority, the Court will first determine if the proposed class is ascertainable and then address whether the class satisfies Rule 23(a) and (b)(3).

### 1.  The proposed class is ascertainable.

The Court first finds that the proposed class is ascertainable. "Although not explicit in Rule 23(a) or (b), courts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class." Grimes v. Rave Motion Pictures Birmingham, L.L.C., 264 F.R.D. 659, 663 (N.D. Ala. 2010) (emphasis omitted). The Eleventh Circuit requires a class definition to "contain[] *objective criteria* that allow for class members to be identified in an *administratively feasible* way." Karhu v. Vital Pharm., Inc., 621 F. App'x 945, 946 (11th Cir. 2015) (emphasis added). It is undisputed that both factors are met here, as the Class is defined by reference to FleetCor stock purchase dates and obtaining those members' names can easily be done by looking to investor records. Thus, the Court finds the Class is easily ascertainable.

### 2.  Rule 23(a) is satisfied.

Having determined that the "first essential ingredient to class treatment" is satisfied in this case, Grimes, 264 F.R.D. at 663, the Court now turns to Rule 23(a)'s four criteria: numerosity, commonality, typicality, and adequacy of representation. Defendants challenge the last two requirements—typicality and adequacy of representation. But the Court will examine each element to ensure

6

the Rule is satisfied. Comcast, 569 U.S. at 33 ("[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.") (internal punctuation omitted); Valley Drug, 350 F.3d at 1188 (noting that a court must "conduct[] its own inquiry" to ensure that all of Rule 23's requirements are satisfied).

### a. Rule 24(a)(1): Numerosity

The Court finds that the Proposed Class Members are sufficiently numerous to warrant certification. To satisfy numerosity, plaintiff need only establish that joinder of all members of the purported class is impracticable through "some evidence or reasonable estimate of the number of purported class members." In re Netbank, Inc. Sec. Litig., 259 F.R.D. 656, 664 (N.D. Ga. 2009) ("Netbank"). Over the Class Period, FleetCor had approximately 92 million shares of common stock issued and outstanding, with an average weekly trading volume on the New York Stock Exchange ("NYSE") of 5.2 million shares. Dkt. No. [27] ¶ 180; Dkt. No. [68-3] ¶ 25. Thus, there is evidence that the Proposed Class includes hundreds or thousands of investors, and numerosity is satisfied. Dkt. No. [27] ¶ 180; see Netbank, 259 F.R.D. at 664 (numerosity satisfied where stock actively traded on NASDAQ and more than 46 million shares were outstanding during the Class Period).

### b. Rule 24(a)(2): Commonality

Rule 23(a) also requires that a class may not be certified unless "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Generally,

where plaintiffs allege that the action is a result of a unified scheme to defraud investors, the element of commonality is met." Netbank, 259 F.R.D at 664.

The Lead Plaintiff alleges that Defendant made material misrepresentations and omissions regarding FleetCor's revenue growth that affected all members of the Proposed Class by perpetuating a fraud on the market. See Dkt. No. [68-1] at 1-2. Lead Plaintiff also lists a series of common questions: (1) whether Defendants violated the Exchange Act; (2) whether Defendants omitted and/or misrepresented material facts; (3) whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading; (4) whether the price of FleetCor common stock was artificially inflated; (5) whether Defendants' conduct caused members of the Class to sustain damages; and, (6) the extent of the damages. Id. at 9. Plaintiff has alleged, on behalf of itself, that the Defendants essentially participated in a unified scheme to defraud investors. Accordingly, the Court concludes that the commonality requirement of Rule 23(a)(2) is satisfied.

### c.    Rule 24(a)(3): Typicality

The Court finds that there is a sufficiently close nexus between the individual characteristics of the Lead Plaintiff's claims and those it seeks represent on behalf of the Proposed Class to satisfy typicality. The typicality requirement "seeks to ensure that a representative plaintiff possess[es] the same interest and [has] suffer[ed] the same injury shared by all members of the class [it] represents." Netbank, 259 F.R.D. at 665 (alterations in original).

Defendants assert that Plaintiff is atypical because it is not entitled to a presumption of reliance under <u>Basic Inc. v. Levinson</u>, 485 U.S. 224 (1998). Under the <u>Basic</u> presumption, plaintiffs may benefit from a rebuttable presumption of class wide-reliance "based on what is known as the fraud-on-the-market theory." <u>Erica P. John Fund, Inc. v. Halliburton Co.</u>, 563 U.S. 804, 811 (2011) ("<u>Halliburton I</u>"). "According to that theory, the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." <u>Id.</u> The theory thus allows the Court to presume "that an investor relies on public misstatements whenever he buys or sells stock at the price set by the market." <u>Id.</u>

To invoke the <u>Basic</u> presumption of reliance, Plaintiff must establish that "the alleged misrepresentations were publicly known . . . , that the stock traded in an efficient market, and that the relevant transaction took place 'between the time the misrepresentations were made and the time the truth was revealed.'" <u>Id.</u> (quoting <u>Basic</u>, 485 U.S. at 248 n.27). As to publicity, Plaintiff alleged that Defendant made material misrepresentations and omissions in public statements to investors that had the effect of inflating the market price of FleetCor's stock. Dkt. No. [88] ¶¶ 148-152. As to market timing, Plaintiff alleged that it bought FleetCor stock during the Class Period and suffered losses when the artificial inflation came out of the stock price when the truth was disclosed. <u>Id.</u> ¶¶ 197-198. And as to market efficiency, FleetCor stock was traded in an efficient market as demonstrated by the high weekly trading volume and presence of financial

9

analysists reporting on FleetCor. See Dkt. No. [68-3] ¶¶ 26-32; see also FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1310 (11th Cir. 2011) (identifying an efficient market as having high-volume trading activity and a critical mass of "market markers" studying available information). Accordingly, Plaintiff has satisfied each of the prerequisites for the presumption—publicity, market timing, and market efficiency—and is therefore entitled to a presumption of reliance.

Defendants can rebut the reliance presumption by showing that Plaintiff purchased stock "without relying on the integrity of the market," Basic, 485 U.S. at 249, or "that [Plaintiff] would have bought . . . the stock even had [it] been aware that the stock's price was tainted by fraud. . . ." Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 275 (2014) ("Halliburton II"). Here, Defendants claim that the presumption is subject to rebuttal because Plaintiff's investment manager Brown Advisory LLC ("Brown"), which purchased FleetCor shares on Plaintiff's behalf, (1) relied on personal and private information; and, (2) continued to buy FleetCor stock after the corrective disclosures. See Dkt. No. [80-1] at 10-14.

First, Defendants allege that Plaintiff is atypical because Brown's decision to invest in FleetCor stock was based on direct and personal conversations with FleetCor management. Dkt. No. [80-1] at 13-14. In response, Plaintiff produced the affidavits of Eric Gordon, Head of Equity Research of Brown, and Kevin O'Keefe, a former Senior Financial Institutions Analyst at Brown. See Dkt. No. [85-2]; see also Dkt. No. [85-3]. According to both Mr. Gordon and Mr. O'Keefe,

10

Brown's communications with FleetCor were "the type many investors commonly have with public company management and investor relations personnel," and did not contain "any material non-public information." Dkt. No. [85-2] ¶ 5; Dkt. No. [85-3] ¶ 5.

The weight of authority holds that such private communications are irrelevant where no material, non-public information is exchanged. See City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp., No. 18-CV-3608 (VSB), 2019 WL 364570, at *7 (S.D.N.Y. Jan. 30, 2019) (collecting cases for the proposition that unless a lead plaintiff receives material, non-public information through its private communications, it is not subject to a uniqueness defense); see also In re DVI Inc. Sec. Litig., 249 F.R.D. 196, 202 (E.D. Pa. 2008) (declining to preclude an investor from serving as a class representative because of his private communications with corporate insiders about publicly available information). Accordingly, because Defendants failed to demonstrate that Plaintiff received material non-public information from FleetCor, Defendants have not rebutted the presumption of reliance on insider information grounds.

Second, Defendants allege that Plaintiff is atypical because Brown continued buying FleetCor stock after the corrective disclosures. Dkt. No. [80-1] at 12-13. Specifically, Defendant points to the fact that Brown's largest purchase during the Class Period occurred the day after Citron and Capitol Forum reports were released. Id. at 13. However, "'reliance on the integrity of the market prior to disclosure of the alleged fraud (i.e. during the class period) is unlikely to be

11

defeated by postdisclosure reliance on the integrity of the market.'" <u>Local 703,</u>

<u>I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.</u>, 762 F.3d

1248, 1260 (11th Cir. 2014) (citations omitted). Indeed, Plaintiff has shown via

discovery that unbeknownst to it and the public at large, FleetCor hired a

consultant to analyze whether customer attrition was being driven by fees

because, "customer attrition ha[d] doubled in the last year," and "40% of new

customers [were] leaving within their first six months." Dkt. No. [86-2] at 4; <u>see</u>

<u>In re Internap Network Servs. Corp. Sec. Litig.</u>, 2012 WL 12878579 at *5 (N.D.

Ga. Aug. 23, 2012) (typicality established where plaintiff and members of class

purchased stock at prices inflated by misrepresentations and were

consequentially damaged). In the absence of Plaintiff's knowledge that FleetCor

was struggling with client retention because of its fees, Plaintiff and other public

investors were thus in the same factual position and Defendant cannot rebut

reliance on typicality grounds. Accordingly, Plaintiff has satisfied typicality.

### c.    Rule 23(a)(4): Adequacy

The Court finds that Plaintiff sufficiently protects the Proposed Class's

interests to satisfy adequacy. To meet the adequacy requirement of Rule 23(a),

Plaintiff must demonstrate that its "counsel are qualified, experienced, and

generally able to conduct the proposed litigation," and that "plaintiff [not] have

interests antagonistic to those of the rest of the class." <u>Kirkpatrick v. J.C.</u>

<u>Bradford Co.</u>, 827 F.2d 718, 726 (11th Cir. 1987). Additionally, Rule 23(a)(4) may

not be satisfied where "the named plaintiffs demonstrate insufficient

12

participation in and awareness of the litigation." Id. at 727. Here, Defendants

claim that Plaintiff is inadequate because (1) Plaintiff is merely lending its name

to a class action controlled by its lawyers; and, (2) Plaintiff is subject to a unique

defense because Brown did not rely on the integrity of the market when

purchasing FleetCor stock. See Dkt. No. [80-1] at 11-17.

First, Defendants contend that adequacy is lacking because Plaintiff's

participation in the case is so minimal that it has abdicated the conduct of the

case to its attorneys. Id. at 12. Additionally, Defendants note that Plaintiff had not

considered bringing claims against Defendants until Plaintiff's counsel pitched

the lawsuit. See Dkt. No. [80-2] at 9. In response, Plaintiff explained that it

retains monitoring counsel to present it potential lawsuits in order to ensure that

Plaintiff does not suffer loses as a result of misleading information. Dkt. No. [86]

at 9. While Defendant is correct that potential class members are "entitled to

more than blind reliance upon even competent counsel by uninterested and

inexperienced representatives," Kirkpatrick, 827 F.2d at 272, merely relying on

counsel to prosecute an action does not make a lead plaintiff inadequate. Further,

Plaintiff produced the deposition transcript of Emilie Smith, Plaintiff's Chair,

which details her knowledge of the specific facts of the case as well as her role in

supervising Plaintiff's counsel. See Dkt. No. [85-1]. Lastly, Defendants do not

dispute that Plaintiff's counsel is qualified to handle securities fraud litigation.

Dkt. No. [86] at 8. Accordingly, Defendants' argument that Plaintiff is inadequate

because it is removed from the conduct of this litigation fails.

13

Second, Defendants claim Plaintiff is inadequate because Plaintiff is not entitled to a presumption of reliance under <u>Basic</u>. <u>See</u> Dkt. No. [80-1] at 10-12. According to Defendant, Brown did not believe that the market price for the purchased FleetCor stock had accounted for all publicly available information. <u>Id.</u> at 11-12. Thus, Brown's individual investment strategy did not depend on the integrity of the market and a presumption of reliance is therefore unwarranted. <u>Id.</u> However, the Supreme Court explicitly rejected this argument in <u>Halliburton II</u>. There, the Court held that in order for an investor to be deemed as having relied on a misstatement in the sense relevant for the <u>Basic</u> presumption, "he need only trade stock based on the belief that the market price will incorporate public information within a reasonable period." <u>Halliburton II</u>, 573 U.S. at 273-274. Here, the affidavits of Mr. Gordon and Mr. O'Keefe indicate that at the time of the purchases, Brown believed "that within a reasonable time period, the market price would reflect publicly available information." Dkt. No. [85-2] at 2-3; Dkt. No. [85-3] at 2-3. Thus, because Brown relied on the fact that the market price would eventually reflect material information, Defendants' rebuttal argument fails.

Accordingly, the Court is satisfied that the four prerequisites of Rule 23(a) are met.

### 3. Rule 23(b) is satisfied.

As Plaintiff seeks certification of a Rule 23(b)(3) class, the Court must find; (1) that common questions "predominate over any questions affecting only

14

individual members;" and, (2) that class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Generally, the predominance requirement "is a test readily met in certain cases alleging . . . securities fraud." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). In securities fraud actions, whether common questions of law and fact predominate typically turns on the element of reliance. Halliburton I, 563 U.S. at 810. Because the Court has already held that Plaintiff is entitled to a presumption of reliance, see supra, the predominance requirement of Rule 23(b)(3) is satisfied.

In fact, Defendants do not raise a reliance dispute as to predominance. See Dkt. No. [80-1] at 19-30. Instead, Defendants claim that Plaintiff has not proven predominance because it has failed to present evidence that it can measure Class-wide damages consistent with its theory of liability. Dkt. No. [80-1] at 15. Specifically, Defendants claim that because Plaintiff merely proposed an event-study methodology to measure out-of-pocket damages, Plaintiff failed to satisfy the predominance requirements set forth in Comcast. See Dkt. No. [80-1] at 16-18.

However, the Supreme Court in Comcast "did not hold that individual damages necessarily defeat predominance or that a plaintiff seeking class certification must present an expert damages model." Electrolux, 817 F.3d at 1238. Indeed, Comcast "simply requires a plaintiff to show a linkage between its theory of liability and theory of damages." Cromeans v. Morgan Keegan & Co.,

15

303 F.R.D. 543, 559 (W.D. Mo. 2014). Here, Plaintiff's theory of liability is that

Defendants made public misstatements that artificially inflated stock price and

when the truth was later revealed, this inflation was removed from the stock

price. With respect to measuring damages, Plaintiff's expert stated:

> It is clear that damages in this matter can be calculated using a
> methodology common to the class. Indeed, the standard and well-
> settled formula for assessing damages for each class member under
> Section 10(b) is the "out-of-pocket" method which measures damages
> as the artificial inflation per share at the time of purchase less the
> artificial inflation at the time of sale.

Dkt. No. [68-3] ¶ 76. Thus, Plaintiff's damage model is sufficiently linked to its

theory of liability to satisfy predominance.[2]

Turning now to the superiority requirement of Rule 23(b)(3), "[t]he focus

of this analysis is on the relative advantages of a class action suit over whatever

other forms of litigation might be realistically available to the plaintiffs." Sacred

Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159,

1183-1184 (11th Cir. 2010) (citations omitted). Factors enumerated in Rule

23(b)(3) relative to superiority include:

> (1) the class members' interests in individually controlling the
> prosecution or defense of separate actions; (2) the extent and nature
> of any litigation concerning the controversy already begun by or
> against class members; (3) the desirability or undesirability of

---

[2] To the extent that Defendants argue that Plaintiff's damages model fails to
disentangle the impact of old or non-fraud information released on the same day
as the corrective disclosures, Plaintiff is not required to prove loss causation at
the class certification stage. See Halliburton I, 563 U.S. at 812 ("The Court of
Appeals erred by requiring [the plaintiff] to show loss causation as a condition of
obtaining class certification.").

concentrating the litigation of the claims in the particular forum; and,
(4) the likely difficulties in managing a class action.

Defendants have not argued that Plaintiffs failed to meet the superiority prong under Rule 23(b)(3).

"As a general rule, class action treatment presents a superior method for the fair and efficient resolution of securities fraud cases." Netbank, 259 F.R.D. at 676. Here, the record does not indicate that Purposed Class Members have any individualized interest in controlling their claims. Moreover, the Court's finding that common issues predominate cuts strongly in favor of certifying the class. Sacred Heart, 601 F.3d at 1184 ("[T]he predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiff['s] claims"). Further, the Court is not aware of any parallel litigation with respect to the Purposed Class Members, nor is there any concern the Northern District of Georgia is an impractical forum for this action. Accordingly, the Court finds that the superiority requirement has been met and thus Rule 23(b)(3) is satisfied.

## IV.   Conclusion

In accordance with the foregoing, the Court **GRANTS** Plaintiff's Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel [68-1].

18

**IT IS SO ORDERED** this 17th day of July, 2019.

_____
**Leigh Martin May**
**United States District Judge**