# EXHIBIT 63

Case 2:16-cv-07302-DMG-AGR Document 271 Filed 11/16/18 Page 2 of 22

# Exhibit A

**SNELL & WILMER L.L.P.**
Don Bivens (#005134)
Anthony King (#027459)
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 382-6549
Email: dbivens@swlaw.com

*Attorneys for Defendants*
*Insys Therapeutics, Inc., Michael L.*
*Babich and Darryl S. Baker*

Additional Counsel Listed on Signature Page

## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Di Donato, Individually and On Behalf of All Others Similarly Situated, | Case No. 16-cv-00302-PHX-NVW |
| Plaintiff, | **DEFENDANTS' SUR-REPLY IN FURTHER OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | |
| Insys Therapeutics, Inc.; Michael L. Babich; Darryl S. Baker; and John N. Kapoor, | |
| Defendants. | |

4843-8239-6802

TABLE OF CONTENTS

**Page**

I.     *CAMMER* 1-4 CANNOT ESTABLISH MARKET EFFICIENCY HERE. . 1

II.    PLAINTIFFS' *CAMMER* 5 EVIDENCE DOES NOT DEMONSTRATE
       MARKET EFFICIENCY. ........................................................................... 3

III.   DEFENDANTS HAVE REBUTTED THE *BASIC* PRESUMPTION. ........ 7

       A.    Defendants Have Satisfied Their Burden of Production. ................... 7

       B.    Demonstrating the Lack of "Back End" Price Impact Is Not
             Necessary. ....................................................................................... 8

       C.    Plaintiffs Offer No Evidence to Counter Defendants' Rebuttal. ....... 11

IV.    CONCLUSION ..................................................................................... 12

4843-8239-6802

TABLE OF AUTHORITIES

Page(s)

Cases

*Baker v. SeaWorld Entm't, Inc.*, 14cv2129-MMA, 2017 WL 5885542 (S.D. Cal. Nov. 29, 2017) ................................................................................................... 9

*Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) .......................................................... 1

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) ........................................................... 11

*FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282 (11th Cir.) .......................... 11

*George v. China Auto. Sys., Inc.*, No. 11 Civ. 7533 (KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013) .............................................................................. 3, 5

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011) ................................... 11

*Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*), 134 S. Ct. 2398, (2014) .......................................................................................................... 8, 9

*Hatamian v. Advanced Micro Devices, Inc.*, 14-cv-00226 YGR, 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) .............................................................................. 8

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11 Civ. 4209 (KBF), 2013 WL 5815472 (S.D.N.Y. Oct. 29, 2013) .................................................... 5

*IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*, 818 F.3d 775 (8th Cir. 2016) ........................................................................................................................ 7, 11

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 281 F.R.D. 174 (S.D.N.Y. 2012) ..................................................................................................... 2, 5

*In re Finisar Corp. Sec. Litig.*, 5:11-cv-01252-EJD, 2017 WL 6026244 (N.D. Cal. Dec. 5, 2017) ................................................................................................ 8, 11

*In re PolyMedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260 (D. Mass. 2006) ........................ 3

*Ohio Pub. Emp. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 4:08CV0160, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ......................................................... 1, 2

*Petrie v. Electronic Game Card, Inc.*, 308 F.R.D. 336 (C.D. Cal. 2015) ........................... 5

*Schleicher v. Wendt*, 618 F.3d 679 (7th Cir. 2010) .......................................................... 10

*Smilovits v. First Solar, Inc.*, 295 F.R.D. 423 (D. Ariz. 2013) ............................................. 3

*Thorpe v. Walter Inv. Mgmt., Corp.*, Case No. 1:14-cv-20880-UU, 2016
    WL 4006661 (S.D. Fla. 2016) .................................................................................. 9

*Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) ..................................... 1, 2, 7, 10

## Statutes & Rules

Federal Rule of Evidence 301 ............................................................................... 7, 11

Federl Rule of Civil Procedure 23(b)(3) ................................................................... 1

2

4843-8239-6802

**CITATION CONVENTIONS**

**Parties and Experts**

"Coffman":  Plaintiffs' expert, Chad W. Coffman, CFA.

"Defendants":  Insys Therapeutics, Inc., Michael L. Babich, Darryl S. Baker, and John N. Kapoor.

"Insys":  Defendant Insys Therapeutics, Inc.

"Plaintiffs":  Lead Plaintiff, Clark Miller, and the putative class.

"Smith":  Defendants' expert, David C. Smith, Ph.D.

**Deposition Transcripts**

"Coffman Tr.":  Transcript of the Videotaped Deposition Under Oral Examination of: Chad W. Coffman, October 4, 2018, attached as Exhibit B to the October 26, 2018 Declaration of Morgan J. Cohen in Support of Defendants' Opposition to Lead Plaintiff's Motion for Class Certification (ECF No. 165-3).

"Smith Tr.":  Transcript of the Videotaped Deposition Under Oral Examination of: David C. Smith, Ph.D., November 15, 2018, attached as Exhibit A to the December 14, 2018 Declaration of Morgan J. Cohen in Support of Defendants' Motion for Leave To File Sur-Reply in Further Opposition to Lead Plaintiff's Motion for Class Certification, submitted herewith.

**Pleadings and Court Submissions**

"Coffman Rebuttal" or "Coffman Reb.":  Expert Rebuttal Report of Chad Coffman, CFA, attached as Exhibit 2 to the November 30, 2018 Supplemental Declaration of Johnston de F. Whitman, Jr. in Support of Lead Plaintiff's Motion for Class Certification (ECF No. 169-2).

"Coffman Report" or "Coffman Rep.":  Expert Report of Chad Coffman, CFA, attached as Exhibit C to the August 31, 2018 Declaration of Andrew L. Zivitz in Support of Lead Plaintiff's Motion for Class Certification (ECF No. 160-3).

"MTD Opinion":  Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (ECF. No. 107).

"Opp.":  Defendants' Opposition to Lead Plaintiff's Motion for Class Certification (ECF No. 165).

4843-8239-6802

"Reply":  Lead Plaintiff's Reply Memorandum of Points and Authorities in Support of Motion for Class Certification (ECF No. 168).

"SAC":  Second Amended Complaint for Violation of the Federal Securities Laws (ECF No. 77).

"Smith Report" or "Smith Rep.":  Expert Report of David C. Smith, Ph.D., attached as Exhibit A to the October 26, 2018 Declaration of Morgan J. Cohen in Support of Defendants' Opposition to Lead Plaintiff's Motion for Class Certification (ECF No. 165-2).

2

4843-8239-6802

Defendants respectfully submit this sur-reply memorandum in further opposition to Plaintiffs' motion for class certification. As Defendants explain in their Opposition, the question of reliance is not common to the putative class because Plaintiffs have either failed to invoke, or Defendants have successfully rebutted, the *Basic* presumption of reliance. Nothing in Plaintiffs' Reply suggests otherwise. Accordingly, Plaintiffs' motion for class certification should be denied for failure to satisfy the predominance requirement of Rule 23(b)(3).

## I.    *CAMMER* 1-4 CANNOT ESTABLISH MARKET EFFICIENCY HERE.

Given that Plaintiffs have failed to provide direct evidence that the market for Insys stock was efficient during the Class Period (*see* Opp. at 4-9), Plaintiffs' Reply attempts to downplay the significance of *Cammer* 5 in demonstrating market efficiency. This argument should be rejected.

The *Cammer* decision *itself* states that the cause-and-effect relationship tested by *Cammer* 5 is "the essence of an efficient market and the foundation for the fraud on the market theory". *Cammer v. Bloom*, 711 F. Supp. 1264, 1287 (D.N.J. 1989). Without direct evidence of a cause-and-effect relationship between company disclosures and an immediate stock price response, there is little assurance that information is being absorbed into the market and reflected in the stock price. (Smith Rep. ¶¶ 10-11.) Moreover, as Plaintiffs' expert, Chad Coffman, acknowledged, a stock may be inefficient even if it satisfies the first four *Cammer* factors. (Coffman Tr. 60:6-60:21.) That is why courts have held that "the structural *Cammer* factors [*i.e.*, factors 1 – 4] are not enough, alone, to establish market efficiency". *Ohio Pub. Emp. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 4:08CV0160, 2018 WL 3861840, at *17 (N.D. Ohio Aug. 14, 2018).

Plaintiffs nonetheless urge the Court to overlook *Cammer* 5 on the basis of two cases. (Reply at 2.) Both are distinguishable. In *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017), the Second Circuit held that a district court did not abuse its discretion by granting class certification without considering *Cammer* 5 where the defendants did

4843-8239-6802

not contest the other four *Cammer* factors. The Second Circuit's analysis, however, was highly fact-specific. The Second Circuit emphasized that the defendant company, Barclays PLC ("Barclays"), "is one of the largest financial institutions in the world", and that, "unsurprising[ly]", the indirect evidence of market efficiency—specifically, the average weekly trading volume for Barclays ADS and degree of analyst coverage—was particularly "strong". *Id*. at 98-99. Under *those* circumstances, the Second Circuit held that "the district court was not required to reach a conclusion concerning [*Cammer* 5]". *Id*. at 99. However, it clarified that "specific circumstances may require plaintiffs to present direct evidence of efficiency". *Id*. at 99 n.29.

That is the case here. *First*, the "strong" indirect evidence of market efficiency central to the holding in *Barclays* is not present in this case. Whereas Barclays is one of the world's biggest banks, Insys, according to Plaintiffs' expert, "probably falls into what's more traditionally referred to as mid cap stock". (Coffman Tr. 131:12-14.) Where "Barclays ADS had an average weekly trading volume of 17.7% during the class period", *Barclays*, 875 F.3d at 91, Insys had an average weekly trading volume of only 6.36% (Coffman Rpt. ¶ 29). And whereas "analysts had published more than 700 reports regarding Barclays' ADS during the class period", *Barclays*, 875 F.3d at 92, Plaintiffs' expert identified only 89 reports on Insys (Coffman Rpt. ¶ 34).

*Second*, and more importantly, Mr. Coffman's event study is fatally flawed. (Opp. 5-9.) That alone warrants consideration of *Cammer* 5. Earlier this year, in *Ohio Pub. Emp. Retirement Sys.*, the court held that, notwithstanding *Barclays*, because the plaintiffs had submitted a "flawed event study", it was appropriate to "scrutiniz[e] *Cammer* 5" even where the other four factors were uncontested.[1] 2018 WL 3861840, at

---

[1] The court also specifically rejected Plaintiffs' argument (Reply at 2 n.3) that *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 281 F.R.D. 174, 182 (S.D.N.Y. 2012)—which Defendants cite (Opp. at 4)—was overruled by *Barclays*. *See* 2018 WL 3861840, at *15 n.14. *Freddie Mac* holds that where, as here, there is no "evidence of the prompt effect of unexpected news on market price"—*i.e.*, *Cammer* 5 evidence—"the market cannot be called efficient". 281 F.R.D. at 182.

2

*15 n.14. Accordingly, *Barclays* is no barrier to the Court's consideration of *Cammer* 5.

Plaintiffs also cite Judge Campbell's decision in *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423 (D. Ariz. 2013). There, the Court concluded that evidence regarding *Cammer* 5 was "essentially a stand-off" but, "[i]f forced to declare a victor, the Court likely would choose Plaintiffs". *Id.* at 437. The Court held that the "stand-off on the fifth *Cammer* factor simply [did] not outweigh Plaintiffs' evidence [in support of the other four factors]". *Id.* Here, by contrast, there is no "stand-off" on *Cammer* 5 because Plaintiffs' event study unambiguously does *not* support the conclusion of market efficiency. Whereas the plaintiffs in *First Solar* presented "evidence of meaningful stock price responses on 81.25% of the days when earnings releases occurred", *id.*, Plaintiffs here have demonstrated meaningful stock prices on just 33% of earnings days (and just 25% within the Class Period). If a meaningful stock price response on 81.25% of earnings days only brought the *First Solar* plaintiffs to a "stand-off" on *Cammer* 5, Plaintiffs' *Cammer* 5 showing in this case is an unalloyed defeat. Accordingly, unlike in *First Solar*, the Court must determine whether *Cammer* 5 evidence that clearly *fails* to demonstrate market efficiency outweighs the other four *Cammer* factors. In this scenario, courts have held that plaintiffs have not demonstrated market efficiency. *See, e.g.*, *George v. China Auto. Sys., Inc.*, No. 11 Civ. 7533 (KBF), 2013 WL 3357170, at *9, 13 (S.D.N.Y. July 3, 2013);[2] *In re PolyMedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260, 278 (D. Mass. 2006). That conclusion is warranted here.

## II. PLAINTIFFS' *CAMMER* 5 EVIDENCE DOES NOT DEMONSTRATE MARKET EFFICIENCY.

Mr. Coffman's analysis demonstrates that Insys common stock is *much* more likely than not to *not* meaningfully respond to earnings announcements. Plaintiffs do not dispute this. Nor do they dispute that Mr. Coffman's analysis demonstrates that the abnormal returns observed during the Class Period *cannot* be statistically distinguished

---

[2] Plaintiffs incorrectly assert that Defendants' Opposition "misleadingly cite[s] the court's quotation of defendants expert report" in this case. (Reply at 2 n.3.) It does not.

3

from random stock movement. (*See* Opp. 6-7.) For those reasons, and the others set forth in Defendants' Opposition (*id.* at 8-9), Plaintiffs have failed to demonstrate market efficiency. Plaintiffs Reply unsuccessfully attempts to obscure this reality.

*First*, Plaintiffs' incorrectly assert that Defendants' expert, Dr. David Smith, takes the "position that 'close to 100%' of all earnings announcements should result in statistically significant price movements". (Reply at 3.) In reality, Dr. Smith's report states: "*If Mr. Coffman's earnings announcements conveyed new, value relevant information to the market about Insys stock, then in an efficient market* the stock price should have reacted to such information on close to 100% of the announcement days".[3] (Smith Rpt. ¶8 (emphasis added).) As Dr. Smith explains, the absence of a statistically significant price reaction on 66.67% of earnings days (and on 75% of earnings days within the Class Period) suggests that either Mr. Coffman has not actually identified new material events to test, or that the market was not efficient, or both. (*Id*. ¶¶ 36, 38-39.)

*Second*, Plaintiffs attempt to paper over the fact that Mr. Coffman has failed to demonstrate a statistically significant price reaction on the overwhelming majority of his "news" days by diminishing the very concept of statistical significance. Plaintiffs claim that Defendants' focus on statistical significance conflates "a statistical concept . . . with the underlying economic truth of whether the stock price reacted at all". (Reply at 3.) This is fallacious. Statistical significance *is* the scientific foundation for judging whether a price movement at any given point of time is distinguishable from "noise". (*See* Coffman Rpt. ¶ 54 (stating that where a price reaction is not statistically significant, one "cannot reject randomness as the cause of the abnormal price movement").) The fact that Insys stock did not exhibit statistically significant price movement on 66.67% of Mr. Coffman's handpicked "news" days (and on 75% of such days within the Class Period) means that there is *no scientific basis* to conclude that the information released on those days caused the price change observed in Insys stock. *See, e.g.*, *China Auto. Sys.*,

---

[3] Plaintiffs also incorrectly assert that Dr. Smith "cites no authority" for this point. (Reply at 3.) He does. (*See* Smith Tr. 148:23-150:2.)

4

4843-8239-6802

2013 WL 3357170, at *12 (statistically significant reaction on seven of 16 days (44%) "is an insufficient foundation upon which to pronounce market efficiency"); *Freddie Mac*, 281 F.R.D. at 180 (statistically significant reaction on 16 of 57 days (28%) is insufficient because plaintiff must show price reaction "to most new, material news").

*Third*, Plaintiffs contend that, "as a matter of law", Mr. Coffman's failure to analyze the direction of Insys's stock price movement does not weaken his analysis.[4] (Reply at 5.) That argument is undermined by Plaintiffs' own authority, *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 355 (C.D. Cal. 2015), which states that "while lack of evidence about the direction of the price impact is not necessarily fatal to an event study, it can be relevant to how much weight the study is given". As Dr. Smith explains, one of the reasons Mr. Coffman's event study should not be given any weight is that he fails to examine, let alone adequately explain, why Insys stock did not react in a consistent direction to similarly positive news on four of his "news" days. (*See* Opp. 8-9.) Plaintiffs clearly recognize the significance of this deficiency, as 45 of the 96 paragraphs of Mr. Coffman's rebuttal report are devoted to insisting that the inconsistent price reactions identified by Dr. Smith are nevertheless indicative of market efficiency. (Coffman Reb. ¶¶ 33-78.)

This is too little too late. As Mr. Coffman testified with respect to his opening report: "I looked at directionality and whether there was an obvious inconsistency, and I didn't find any obvious inconsistencies". (Coffman Tr. 111:2-5.) Apparently, Mr. Coffman has now decided to take another look. If, as Mr. Coffman testified, he had

---

[4] Relatedly, Plaintiffs claim that Defendants "misleadingly quote the court's description of the defense expert's opinion" in *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11 Civ. 4209 (KBF), 2013 WL 5815472, at *11, 21 (S.D.N.Y. Oct. 29, 2013). (Reply at 5 n.6.) They are wrong. In *Deutsche Bank*, the court denied class certification and rejected the opinions of plaintiff's expert regarding market efficiency. *See id.* at *21. In so doing, the court "credit[ed] [the defendants' expert's] testimony" and found that "his opinions were . . . more credible than those of [plaintiff's expert]". *Id.* One of those opinions was that the plaintiffs' expert, like Mr. Coffman here, failed "to make a directional prediction of what price movement ought to be *ex ante*". *Id.* at *11. Accordingly, Defendants' description of the holding was not "misleading".

already analyzed directional consistency in connection with his opening report, he should not have sat on that alleged analysis until his rebuttal report and denied Dr. Smith the ability to respond. In any event, Mr. Coffman's belated directional analysis is unconvincing. In his report, Dr. Smith opines that analyst consensus estimates—clear, objective measurements of average market expectations—on several of Mr. Coffman's "news" days suggest that Insys reported a better-than-expected quarter, and, therefore, the disparate price reactions of Insys stock on those days is not consistent with market efficiency. (Smith Rpt. ¶¶ 43-49.) In an attempt to retroactively square this circle, Mr. Coffman combs through various analyst reports for nuggets of "bad" news and then declares *ex post* that these factoids account for the inefficient behavior of Insys stock.

For example, with respect to the August 6, 2015 "news" day—the *only* "news" day within the Class Period on which there was a significant price reaction— Mr. Coffman relies almost entirely on prescription and sales projections from a third-party source, IMS Health ("IMS"), to rationalize why Insys's stock price significantly decreased despite the fact that the Company had announced revenue that exceeded consensus expectations. (Coffman Reb. ¶ 56-64.) Mr. Coffman selectively quotes the portions of analyst reports that note that IMS had predicted higher revenues than Insys posted. (*See id*.) He then concludes that based on those cherry-picked data points, "the market" as a whole "was expecting Insys to report higher Subsys revenue", and therefore, the significant *decrease* in Insys's stock price is directionally consistent after all. (*Id*. ¶ 65.) However, as Dr. Smith testified with respect to the same IMS projections: "I don't believe this one sliver of information can explain the large abnormal drop of [Insys's] stock price on that date". (Smith Tr. 182:16-25.) Indeed, Mr. Coffman ignores the fact that *all* of the analyst reports he cites did not follow the IMS projections and contained revenue projections that were noticeably *lower* than IMS's estimates (which Insys uniformly *exceeded*). Thus, according to Dr. Smith, "if we look at the weight of the analysts' responses to the earnings reports both on August 6 and on August 7, it was . . .

6

heavily positive and inconsistent with the stock price drop that actually occurred on that date". (Smith Tr. 186:17-22.)

In sum, because Plaintiffs' *Cammer* 5 evidence fails to demonstrate market efficiency, Plaintiffs are not entitled to the *Basic* presumption of reliance.

## III. DEFENDANTS HAVE REBUTTED THE *BASIC* PRESUMPTION.

Plaintiffs' Reply confirms that the two alleged misstatements had no impact on Insys's stock price when they were made. Therefore, even if the *Basic* presumption is applicable—and it is not—Defendants have successfully rebutted the presumption. Unable to dispute the lack of "front-end" price impact, Plaintiffs attempt to move the goal post by raising the evidentiary burden required for a successful rebuttal.

### A. Defendants Have Satisfied Their Burden of Production.

Plaintiffs argue that in order to rebut the *Basic* presumption, Defendants must "demonstrate a lack of price impact by a *preponderance* of the evidence". (Reply at 6 (quoting *Barclays*, 875 F.3d at 101).) *However*, the Ninth Circuit has never held that a defendant seeking to rebut the presumption of reliance at the class certification stage has a burden of persuasion rather than a burden of production.

Since there is no controlling precedent regarding which burden applies to Defendants, the Court should look to the default rule supplied by Federal Rule of Evidence 301, which provides: "In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally." Fed. R. Evid. 301; *see also IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*, 818 F.3d 775, 782 (8th Cir. 2016) (holding that pursuant to Federal Rule of Evidence 301, a burden of production applies to defendants seeking to rebut the *Basic* presumption). The *Basic* presumption is a judge-made doctrine; there is no federal statute or applicable rule of evidence that shifts the burden of persuasion to the Defendants. Consequently, to rebut the *Basic*

7

4843-8239-6802

presumption, Defendants need only satisfy the burden of production, which they have done. Defendants have shown that "the alleged misrepresentations did not actually affect the . . . market price" of Insys stock, and, consequently, that Plaintiffs could not have relied on a "fraud-tainted price". *Halliburton Co. v. Erica P. John Fund, Inc.* (*Halliburton II*), 134 S. Ct. 2398, 2414-16 (2014). That alone is sufficient to rebut the *Basic* presumption.

**B.  Demonstrating the Lack of "Back End" Price Impact Is Not Necessary.**

Plaintiffs argue that Defendants must *also* show the absence of a back-end price impact to rebut the presumption of reliance. This argument fails for several reasons.

*First*, such a showing would require Defendants to *doubly* rebut the *Basic* presumption. There is no support from Supreme Court or Ninth Circuit precedent for such a demanding standard. To the contrary: "Neither the Supreme Court nor the Ninth Circuit . . . has addressed the relative importance of the date of the alleged misstatement as compared to the date of the corrective statement in analyzing price impact . . . The absence of controlling case law on this specific issue allows Defendants to [rebut the *Basic* presumption by] mak[ing] '*[a]ny showing* that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff'". *In re Finisar Corp. Sec. Litig.*, 5:11-cv-01252-EJD, 2017 WL 6026244, at *7 (N.D. Cal. Dec. 5, 2017) (quoting *Basic*, 485 U.S. at 248) (emphasis added). That is what Defendants have done.

*Second*, although Plaintiffs identify certain cases in which courts have focused on the corrective disclosure date(s) when analyzing price impact, the circumstances that warranted that analysis are not present here. In *Hatamian v. Advanced Micro Devices, Inc.*, 14-cv-00226 YGR, 2016 WL 1042502 (N.D. Cal. Mar. 16, 2016), the defendants' expert conceded that the defendants' stock price experienced statistically significant price increases on four days on which defendants had allegedly made 43 (of the 125) misstatements and/or omissions. *Id.* at * 8. In this case, the parties agree that Insys stock did not experience a statistically significant price increase following either of the alleged

8

4843-8239-6802

misstatements. In *Baker v. SeaWorld Entm't, Inc.*, 14cv2129-MMA (AGS), 2017 WL 5885542 (S.D. Cal. Nov. 29, 2017), the plaintiffs' expert found that the defendants' stock price experienced a statistically significant price increase on certain of the misrepresentation days. *Id*. at *10. Again, that is not the case here. Additionally, in *Baker*, the plaintiff unambiguously alleged a price maintenance theory which, by definition, cannot be measured solely by price increases on the days of the alleged misrepresentations. *Id.* at *11. As explained below, Plaintiffs have not alleged a price maintenance theory. Finally, in *Thorpe v. Walter Inv. Mgmt., Corp.*, Case No. 1:14-cv-20880-UU, 2016 WL 4006661, (S.D. Fla. 2016), the plaintiff alleged that the defendants made 10 misrepresentations on nine days over a 16-month period. *See Thorpe*, Ex. C. to Expert Report of Kenneth L. Lehn (Dkt. No. 123-8). In light of the number of alleged misrepresentations at issue, the court looked to the "price change . . . at the time of the corrective disclosure, rather than at the time of the corresponding misrepresentation" because the former purportedly "allows for the fact that many alleged misrepresentations conceal a truth, and thus maintain a stock's price". *Thorpe*, 2016 WL 4006661, at *13 (internal citations omitted). No such complexities exist here; Plaintiffs allege that only two misrepresentations were made on the same day. Thus, there is no risk that the price impact of either alleged misrepresentation might be obscured by the other.[5]

*Third*, Plaintiffs cannot declare for the first time in their Reply that they are alleging a price maintenance theory. Plaintiffs' purported price maintenance theory is based on four sentences in the Complaint which state that the alleged misrepresentations "created *and/or* maintained artificial inflation in the price of Insys common stock". (Reply at 7 (quoting SAC ¶¶ 17, 397-98, 465) (emphasis added).) *None* of those four sentences specifically refers to the two alleged misstatements at issue. Rather, they refer

---

[5] Plaintiffs also cite *Halliburton II* for the proposition that "price impact can be measured by looking at the 'asserted misrepresentation (or its correction)'". (Reply at 6 (quoting *Halliburton II*, 134 S. Ct. at 2414).) Plaintiffs misread the quoted portion of that decision; it does not describe how "price impact can be measured" (Reply at 6), it describes how price impact "could be rebutted", *Halliburton II*, 134 S. Ct. at 2414.

9

4843-8239-6802

broadly to the dozens of misstatements that were originally alleged and subsequently dismissed. Moreover, this boilerplate language is deliberately noncommittal.[6] Indeed, based on Plaintiffs' "and/or" phrasing, the Court could fairly conclude that Plaintiffs are claiming that the alleged misrepresentations "created" rather than "maintained" artificial inflation. Plaintiffs should not be permitted to sit on the fence until Defendants have opposed their motion for class certification and then decide in their Reply which theory of price impact they wish to allege. That would allow Plaintiffs to change Defendants' evidentiary burden *post hoc* depending on how they have belatedly chosen to classify their claims.

Additionally, Plaintiffs' price maintenance theory is simply incoherent. If, as Plaintiffs now claim, the alleged misrepresentations maintained artificial inflation in Insys's stock price, that assumes the stock price was *already* artificially inflated when the alleged misrepresentations were made. Unlike the plaintiffs in *Barclays*, Plaintiffs and their expert make no attempt to explain when or how artificial inflation purportedly entered Insys's stock price. *See Barclays*, 875 F.3d at 104 n.37. Nor could they, given that this Court has held that *all* of the alleged misrepresentations that preceded the two misrepresentations at issue "do not qualify as false or misleading". (*See* MTD Opinion at 16.) Artificial inflation could not have been introduced into Insys's stock price by statements that were not fraudulent as a matter of law. Plaintiffs' price maintenance

---

[6] By contrast, in *Barclays*, which Plaintiffs cite in support of their price maintenance argument, the plaintiffs specifically and unambiguously alleged *how* the alleged misrepresentations at issue maintained the company's stock price: "Defendants' false and misleading statements about Barclays' transparency and safeguards, as well as Barclays' repeated commitment to a reformed culture, maintained the price of Barclays' common stock at levels which reflected investor confidence in the integrity of the company. Particularly in light of the public's concern of aggressive trading and manipulations by high frequency traders, Defendants' assurances of Barclays' transparency and credibility were meant to and did assuage those concerns." (*Barclays*, Second Amended Complaint, Dkt. No. 43, ¶ 113.)

10

4843-8239-6802

theory therefore fails for the additional reason that there was no previously existing artificial inflation to maintain.[7]

### C. Plaintiffs Offer No Evidence to Counter Defendants' Rebuttal.

Because Defendants have rebutted the *Basic* presumption, pursuant to Federal Rule of Evidence 301, the burden reverts to Plaintiffs to persuade the Court that the misrepresentations nonetheless had a price impact. *See Best Buy*, 818 F.3d at 782-83 (noting that "plaintiffs presented no contrary evidence [to the evidence submitted by defendants] of price impact"). Plaintiffs have not satisfied this burden. Plaintiffs' assertion that two of the three alleged corrective disclosures were associated with a statistically significant price decline is not evidence that the alleged misrepresentations actually inflated Insys's stock price. Where, as here, there is no evidence of front-end price impact, it cannot simply be *presumed* that the stock declines following the alleged corrective disclosures of November 4 and December 3, 2015 are causally linked to the alleged misrepresentations of March 3, 2015 . *See In re Finisar Corp.*, 2017 WL 6026244, at *8 ("Because the . . . statements had no price impact, it cannot be presumed that the . . . [alleged corrective] disclosures revealed a latent price impact of [defendant's] statements."); *Best Buy*, 818 F.3d at 782-83 (holding that a stock drop following alleged corrective disclosure did not overcome lack of front-end price impact where the allegedly inflated price could only have been established by non-fraudulent statements). To the

---

[7] The two other cases Plaintiffs cite in support of their purported price maintenance theory are distinguishable. Plaintiffs cite *Schleicher v. Wendt*, 618 F.3d 679, 683 (7th Cir. 2010) for the proposition that "an unduly optimistic statement stops a price from declining". That case was decided before *Halliburton II* and did not expressly consider a price maintenance theory of inflation. Additionally, Plaintiffs assert that the two misstatements at issue "did not reveal any new or unexpected information" (Reply at 8), thus, they could not have been "unduly optimistic". Plaintiffs also cite *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1316 (11th Cir.) for the proposition that there is no legal distinction between statements that introduce artificial inflation and statements that prolong artificial inflation. That distinction is irrelevant here because even statements that prolong artificial inflation must still "confirm misinformation *already* in the marketplace". *Id*. at 1290 (emphasis added). Plaintiffs make no such allegations.

11

contrary, it is blackletter law that the price of a stock can decline for numerous reasons unrelated to a prior alleged misrepresentation. *See, e.g., Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812-13 (2011); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005)).

## IV.    CONCLUSION

For the reasons set forth above and in Defendants' Opposition, Plaintiffs' motion for class certification should be denied.

12

4843-8239-6802

DATED this 14th day of December, 2018.

**SNELL & WILMER L.L.P.**

By: *s/ Anthony King*

Don Bivens
Anthony King
One Arizona Center
400 East Van Buren Street, Suite 1900
Phoenix, AZ 85004

**CRAVATH, SWAINE & MOORE LLP**

Daniel Slifkin
David M. Stuart
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

*Attorneys for Defendants Insys Therapeutics, Inc., Michael L. Babich, and Darryl S. Baker.*

**OSBORN MALEDON, P.A.**

By: *s/ Larry A. Hammond (with permission)*
Larry A. Hammond
David B. Rosenbaum
Joseph N. Roth
2929 N. Central Avenue, 21st Floor
Phoenix, AZ 85012

**ROPES & GRAY LLP**

Peter L. Welsh
Christian Reigstad
121 Avenue of the Americas, Suite 900
New York, NY 10036

*Attorneys for Defendant John N. Kapoor*

13

4843-8239-6802

# CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Francis J. Balint, Jr.
Andrew S. Friedman
BONNETT FAIRBOURN FRIEDMAN & BALINT, P.C.
2325 E. Camelback Road, Suite 300
Phoenix, Arizona 85016
Attorneys for Plaintiff

Andrew L. Zivitz
Johnston de F. Whitman, Jr.
Jonathan F. Neumann
KESSLER TOPAZ MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Attorneys for Plaintiff

Jennifer L. Joost
KESSLER TOPAZ MELTZER & CHECK, LLP
1 Sansome Street, Suite 1850
San Francisco, CA 94014
Attorneys for Plaintiff

By: _s/ Audrey Dodgin_

14

4843-8239-6802