**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Civil Action No. 4:21-cv-02473<br><br>CLASS ACTION |

**DEFENDANTS' SUPPLEMENTAL BRIEFING ON LITIGATION HOLD OBJECTIONS**

Pursuant to the Court's May 19, 2025 Order, ECF No. 131, Defendants file this supplemental brief in support of their objections to certain of Lead Plaintiffs' Requests for Admission seeking information regarding the (a) content of litigation hold notices, and (b) issuance of litigation hold notices unrelated to this case. Those requests are improper, and Defendants' objections to them should be sustained.

## BACKGROUND

The original plaintiff in this action, represented by the same counsel as Lead Plaintiffs, filed this lawsuit against Concho Resources Inc. ("Concho") on July 30, 2021—the very last day before limitations expired, many years after the 2018-19 Class Period events took place, and more than six months after the January 2021 acquisition of Concho by ConocoPhillips. It therefore should have been entirely unsurprising to Lead Plaintiffs that Concho (now ConocoPhillips) did not possess email data for every one of the 55 custodians they requested to be searched over the parties' agreed discovery period of August 1, 2017 to February 19, 2020 ("Discovery Period"). Indeed, as Concho explained to Lead Plaintiffs through a sworn declaration almost a year ago, Concho had a default email retention policy, applicable to most employees, that retained emails for only six months, which fully accounts for the reality that certain employees' emails from the Discovery Period—which ended more than *17 months* before this case was belatedly filed—were

no longer retained by the time of this lawsuit. Ex. A, 7/31/24 Declaration. Concho did, however, retain significant data for numerous custodians, resulting in the selection of 33 email custodians and the production of more than *195,000 documents* and nearly *2,800,000 pages* of discovery to date.

Still, Lead Plaintiffs have persisted in their effort to raise the specter of improper document destruction. On March 14, 2025, Lead Plaintiffs served 375 Requests for Admission ("RFA") on Defendants (really over 3,000 requests, inclusive of subparts), including 246 RFAs on Concho, 50 RFAs on Defendant Tim Leach, 37 RFAs on Defendant Will Giraud, and 42 RFAs on Defendant Jack Harper (together with Leach and Giraud, the "Individual Defendants"). See Exhibits B–E. On April 14, 2025, Concho and the Individual Defendants served their Objections and Responses to the RFAs. See Exhibits F–I. Many of those RFAs pertained to the timing and content of litigation holds—both related and unrelated to this case.

Defendants responded to the various RFAs pertaining to the timing of litigation holds related to this case. *See* Ex. F, Concho RFA Answers ¶¶ 215–33; Ex. G, Leach RFA Answer ¶ 3; Ex. H, Giraud RFA Answer ¶ 3; Ex. I, Harper RFA Answer ¶ 3. Those answers explain that Concho/ConocoPhillips did not issue a litigation hold notice in 2019 or 2020 related to "any of the allegations in this action"; rather, its litigation hold notice related to the allegations in this action was timely issued after the July 2021 filing of the original complaint, which, in the case of the Individual Defendants, was accomplished by updating a January 2021 litigation hold notice issued in connection with the Concho-ConocoPhillips merger. Ex. F, Concho RFA Answers ¶¶ 215–33; *e.g.*, Ex G, Leach RFA Answer ¶ 3; *see, e.g.*, *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 317 (S.D.N.Y. 2013) (holding that company's duty to preserve in securities fraud litigation "did not accrue before" the filing of the complaint). Comparing the timing of these (timely) *2021* litigation

hold notices with the ordinary-course operation of Concho's six-month retention policy during and in the six months after the *August 2017–February 2020* Discovery Period emphatically contradicts any insinuation of improper document destruction and should have put the matter to bed.

Still, Lead Plaintiffs press forward in seeking even more discovery on litigation holds. They seek to compel responses to the handful of RFAs that Concho and the Individual Defendants objected to as improper—those asking (a) whether "any litigation hold notice issued in connection with this action required preservation of emails and text messages," and (b) for information regarding the issuance of litigation holds "unrelated to this action[,]" "concerning unrelated litigation[,]" or "in connection with unrelated litigation," and, in the case of the Individual Defendants, whether any such unrelated litigation holds "included instructions to preserve Documents and Communications on Your Devices." Ex. F, Concho RFA Answer ¶¶ 234–46; Ex. C, Leach RFAs ¶¶ 3(i)-(j), 8-9; Ex. G, Leach RFA Answers ¶¶ 3(i)-(j), 8-9; Ex. D, Giraud RFAs ¶¶ 3(i)-(j), 8-9; Ex. H, Giraud RFA Answers ¶¶ 3(i)-(j), 8-9; Ex. E, Harper RFAs ¶¶ 3(i)-(j), 8-9; Ex. I, Harper RFA Answers ¶¶ 3(i)-(j), 8-9. Defendants' objections to those RFAs should be sustained.

## ARGUMENT

**A.    The Court should sustain Concho's objections to Lead Plaintiffs' efforts to pry into the substance of litigation holds.**

Federal Rule of Civil Procedure 26(b)(1) permits "[p]arties [to] obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). However, "[a]s a routine matter, litigation hold letters are considered privileged communications and are, thus, not discoverable." *Edwards v. McDermott Int'l, Inc.*, No. 4:18-cv-04330, 2021 WL 12296466, at *2 (S.D. Tex. Dec. 22, 2021) (Edison, J.); *see also, e.g.*, *Adkisson*

3

*v. Jacobs Eng'g Group, Inc.*, No. 3:13-cv-505-TAV-HBG, 2021 WL 149841, at *8 (E.D. Tenn. Jan. 15, 2021) (recognizing the generally privileged nature of litigation hold letters); *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-cv-00463, 2015 WL 13729725, at *6 (M.D. Tenn. Dec. 1, 2015) ("Generally, litigation holds letters are privileged and are not discoverable."); *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST (SK), 2018 WL 833085, at *4 (N.D. Cal. Feb. 7, 2018) (litigation hold notices "if prepared by counsel and directed to the client, are protected by the attorney-client privilege"); *Thomas v. Cricket Wireless, LLC*, No. 19-cv-07270-WHA (AGT), 2020 WL 7344742, at *2 (N.D. Cal. Dec. 14, 2020) (same); *Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 22 (D.D.C. 2013) ("To be sure, litigation hold letters are generally privileged, and the NACA offers no particularized argument as to why the attorney-client communication privilege should not and does not apply here."). When courts have required the production of litigation hold letters, they have done so on the basis of "a preliminary showing of spoliation of evidence." *Major Tours*, *Inc. v. Colorel*, No. 05-3091(JBS/JS), 2009 WL 2413631, at *3 (D.N.J. Aug. 4, 2009); *see also LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 168 (N.D. Ill. 2023) ("A litigation hold memorandum or notice *is not evidence of a party's claims or defenses*. Instead, a litigation hold directs a party to ensure that documents are preserved and retained. Therefore, a litigation hold memorandum or notice falls within the type of non-substantive information that constitutes discovery on discovery. This Court has already outlined the standard it requires for discovery on discovery—tangible evidence of a material discovery violation, not mere speculation.") (emphasis added). Lead Plaintiffs have made no such showing, and, in fact, the discovery record contradicts any such suggestion.

Despite this baseline, Defendants nevertheless responded to numerous RFAs concerning litigation holds related to the allegations in this case. *See* Ex. F, Concho RFA Answers ¶¶ 215–33;

4

Ex. G, Leach RFA Answers ¶¶ 3, 6; Ex. H, Giraud RFA Answers ¶¶ 3, 6; Ex. I, Harper RFA Answers ¶¶ 3, 6. Concho only objected to one such RFA that sought information regarding the *substance* of the litigation hold issued in connection with this case, and the Individual Defendants objected to two such RFAs asking about the substance of unrelated litigation holds. Ex. F, Concho RFA Answers ¶ 244 (RFA 244: "Admit that any litigation hold notice issued in connection with this action required preservation of emails and text messages."); Ex. C, Leach RFAs ¶¶ 8-9 (RFA 8: "Admit that the litigation hold notices concerning unrelated litigation that You received from Concho before the date of these RFAs included instructions to preserve Documents and Communications on Your Devices.") (RFA 9: "Admit that Concho took steps to preserve Documents and Communications on Your Devices in connection with unrelated litigation before the date of these RFAs."); Ex. G, Leach RFA Answers ¶¶ 8-9; Ex. D, Giraud RFAs ¶¶ 8-9; Ex. H, Giraud RFA Answers ¶¶ 8-9; Ex. E, Harper RFAs ¶¶ 8-9; Ex. I, Harper RFA Answers ¶¶ 8-9. The information that Concho/ConocoPhillips's attorneys instructed former Concho's employees to preserve—*i.e.*, the content of the litigation hold notices themselves—is properly shielded by the attorney-client and work-product privileges. *See Proa v. NRT Mid-Atlantic, Inc.*, No. AMD-05-2157, 2008 WL 11363286, at *27 (D. Md. June 20, 2008) (holding that the "scope, nature, description, and type of documents that were placed on hold as a result of the litigation hold" were privileged and that plaintiffs' interrogatory on that subject sought "information specifically prepared in anticipation of pending litigation with plaintiffs"); *supra* pp. 3-4 (collecting cases prohibiting discovery of litigation hold notices more generally). Defendants' objections should be sustained because this information is privileged.

**B.**     **The Court should sustain Defendants' objections to Lead Plaintiffs' RFAs concerning unrelated litigation holds, which Lead Plaintiffs would lack standing to enforce.**

Lead Plaintiffs also seek admissions regarding the existence of litigation holds "unrelated to this action[,]" "concerning unrelated litigation[,]" or "in connection with unrelated litigation[,]" and the types of documents subject to any such "unrelated" holds. Ex. F, Concho RFA Answers ¶¶ 234–46; Ex. C, Leach RFAs ¶¶ 3(i)-(j), 8-9; Ex. G, Leach RFA Answers ¶¶ 3(i)-(j), 8-9; Ex. D, Giraud RFAs ¶¶ 3(i)-(j), 8-9; Ex. H, Giraud RFA Answers ¶¶ 3(i)-(j), 8-9; Ex. E, Harper RFAs ¶¶ 3(i)-(j), 8-9; Ex. I, Harper RFA Answers ¶¶ 3(i)-(j), 8-9. Those RFAs are improper for at least two independent reason.

First, the privilege concerns (discussed *supra* § A) that preclude discovery into litigation holds in general apply with full force to discovery of *unrelated* litigation holds.

Second, as a matter of law, Concho's preservation obligation to *Lead Plaintiffs* was triggered when litigation with *Lead Plaintiffs* was reasonably anticipated. That means Lead Plaintiffs would lack standing to enforce self-described "unrelated" litigation holds, which renders those holds patently irrelevant to the issues in this case. Indeed, numerous courts have rejected Lead Plaintiffs' apparent assumption that they can piggy-back onto unrelated litigation holds in unrelated cases. *See, e.g.*, *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1308 (N.D. Ga. 2011) (finding that a duty, by definition, is a "legal obligation that is owed or due *to another*" and rejecting the argument that a duty to preserve can be enforced by a party other than the one that triggered the duty to preserve) (emphasis added); *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, at *24 (S.D. Fla. Apr. 5, 2011) ("It is well settled that the duty to preserve potentially relevant evidence 'arises when the party in possession of the evidence knows that litigation *by the party seeking the evidence is pending or probable*.'") (emphasis added) (quoting *Kounelis v. Sherrer*, 529 F. Supp 2d 503, 518 (D.N.J. 2008)); *Town of Westport v.*

*Monsanto Co.*, No. CV 14-12041-DJC, 2015 WL 13685384, at *3 (D. Mass. Nov. 5, 2015) ("To the extent that Westport argues that the Defendants had some ongoing duty to preserve documents because of prior litigation with other parties, the Court is unpersuaded. The duty to preserve evidence runs to *a specific opposing party*.") (emphasis added); *Brigham Young Univ. v. Pfizer, Inc.*, 282 F.R.D. 566, 572 (D. Utah 2012) ("[A]ny duty Pfizer owed parties in other litigation would belong to *that party* and not BYU.") (emphasis added); *In re Actos (Pioglitazone) Products Liab. Litig.*, No. 6:11-MD-2299, 2014 WL 2872299, at *22-23 (W.D. La. June 23, 2014) (enforcing litigation hold notice from prior litigation only because—unlike in this case—the prior hold arose from the exact same claims ("personal injury and wrongful death") and same facts ("the use of … Actos") as the current litigation—"clearly distinguishing" *Actos* from the otherwise applicable line of case including *Point Blank* and *Delta*, which control here).

In *Delta*, for example, the court rejected an argument that a plaintiff could complain about the defendants' observance of a Civil Investigative Demand (a government investigative record that requires the recipient to preserve and produce certain documents) issued by the US Department of Justice—even though the Demand was issued just three months prior to the plaintiffs' lawsuit and covered substantially the same issues as the plaintiffs' claims. *Delta*, 770 F. Supp. 2d at 1306–08. The same conclusion is all the more clear here, where any unrelated litigation holds pertain to litigation from long before this case was filed and on issues that Defendants have already answered were not related to those involved in this case. Ex. F, Concho RFA Answers ¶¶ 215–33. As a result, the disputed RFAs in which Lead Plaintiffs seek to inquire into such holds are definitionally irrelevant, and the Court should sustain Defendants' objections to those RFAs.[1]

---

[1] What is more, Rule 26(c)(1) provides that the Court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(b)(1), (c)(1). Answering the RFAs concerning litigation holds "unrelated to this action" for "Concho Custodians" would require Concho to find *every* litigation hold issued over 5 years to at least 55 different employees, regardless of its relevance to the present

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court sustain Defendants' objections to Lead Plaintiffs' RFAs.

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ David D. Sterling*
    David D. Sterling
        Attorney-In-Charge
    State Bar No. 19170000
    Federal I.D. No. 07079
    Amy Pharr Hefley
    State Bar No. 24046046
    Anthony J. Lucisano
    State Bar No. 24102118
    Federal I.D. No. 3369146
    C. Frank Mace
    State Bar No. 24110609
    Federal I.D. No. 3385915
    910 Louisiana Street
    Houston, Texas 77002
    (713) 229-1946
    (713) 229-7946 (Fax)
    david.sterling@bakerbotts.com
    amy.hefley@bakerbotts.com
    anthony.lucisano@bakerbotts.com
    frank.mace@bakerbotts.com

    ATTORNEYS FOR DEFENDANTS CONCHO
    RESOURCES INC., CONOCOPHILLIPS, AS
    SUCCESSOR IN INTEREST TO CONCHO
    RESOURCES INC., TIMOTHY LEACH, JACK F.
    HARPER, AND C. WILLIAM GIRAUD

---

dispute. This investigation would be unduly costly, and the time spent investigating these concededly irrelevant litigation holds would impede Defendants' ability to respond to discovery actually pertaining to the allegations in the case. *See, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, No. 20-cv-4416 (CS) (AEK), 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("'Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive.'" (quoting *Tamas v. Family Video Movie Club, Inc.*, 301 F.R.D. 346, 348 (N.D. Ill. 2014))); *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 196 (E.D. Pa. 2004) (rejecting request for discovery into majority of litigations involving defendants as "remote from Plaintiff's case and [not] likely to produce evidence relevant to Plaintiff's case"); *Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010) ("The compulsion of production of irrelevant information is an inherently undue burden.").

By: */s/ Robert Ritchie (w/ permission)*
Michael C. Holmes
Texas Bar No. 24002307
Southern District Bar No. 23716
Robert Ritchie
Texas Bar No. 24079213
Southern District Bar No. 3089959
K. Virginia Burke DeBeer
Texas Bar No. 24097437
Southern District Bar No. 3472047
VINSON & ELKINS LLP
2001 Ross Ave., Suite 3900
Dallas, TX 75201
Tel: (214) 220-7700
Fax: (214) 999-7923
mholmes@velaw.com
rritchie@velaw.com
vdebeer@velaw.com

CO-COUNSEL FOR DEFENDANTS TIMOTHY
LEACH, AND C. WILLIAM GIRAUD

9

## CERTIFICATE OF SERVICE

I hereby certify that, on June 3, 2025, a true and correct copy of the foregoing document was served on all counsel of record via the Court's ECF system.

/s/ *Anthony J. Lucisano*
Anthony J. Lucisano