# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Civil Action No. 4:21 -cv-02473<br><br>CLASS ACTION |

**DECLARATION OF JEREMY MOORE**

I, Jeremy Moore, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1. I am over the age of eighteen and fully competent to make this declaration. The facts stated herein are true and correct and are based on my personal knowledge.

2. I am currently a Sr. System Architect, Productivity at ConocoPhillips Company ("ConocoPhillips"). I previously held the position of IT Systems Analyst at Concho Resources Inc. ("Concho") before its merger with ConocoPhillips.

3. Concho had a default Document Retention Policy during the relevant period (August 1, 2017 through February 19, 2020) that applied to most employees. Pursuant to this policy, Concho retained email data for six months. When that retention period lapsed, Concho's system automatically deleted the emails in the custodian's inbox and sent folders that were more than six months old. Deleted emails were retained for a shorter, 75-day period. Only emails that had been manually moved to a specific archive folder would be exempt from the auto-delete function of the retention policy.

4. To the best of my knowledge, following a review of relevant ConocoPhillips data and files by the ConocoPhillips eDiscovery team, ConocoPhillips does not have custodial email data from the relevant period for Clay Bateman, Harvin Broughton, Michael Burkard, Kyle Canzian, Jim Corbitt, Kayla Dunn, Larry Gates, Steve Guthrie, Jack Harper, Alec Ledet, Bryan Montgomery, Ramon Reyes, Christopher Spies, Mary Starnes, Terry Pafford, or Casey Yates. Each of those individuals were on Concho's default Document Retention Policy. As described above, the default Document Retention Policy automatically deleted email data after six months. Accordingly, email from the relevant period was automatically deleted pursuant to the Document Retention Policy long before Concho's merger with ConocoPhillips in January 2021, and long before the filing of the above-captioned lawsuit in July 2021.

5. To the best of my knowledge, following a review of relevant ConocoPhillips data and files by the ConocoPhillips eDiscovery team, ConocoPhillips does not have custodial email data for any period for Kayla Dunn. After a review of relevant ConocoPhillips data, I was unable to confirm that this former Concho employee was on Concho's Default Retention Policy at the time of Concho's merger with ConocoPhillips. However, it is my understanding that her employment with Concho ended sufficiently before Concho's merger with ConocoPhillips such

that none of her email data existed as of the time of the merger and thus was not migrated to ConocoPhillips as part of the merger.

6. Although the Default Retention Policy applied to most Concho employees, certain other Concho employees were grandfathered into a longer document retention policy. For those individuals, the auto-delete policy described in paragraph 3 did not apply, and email data in their inbox and sent mailboxes was not automatically deleted. To the extent that email data still existed when Concho merged with ConocoPhillips, it was migrated to ConocoPhillips in the manners described below.

7. When Concho and ConocoPhillips merged in January 2021, existing email data for Concho employees was migrated to ConocoPhillips in different manners, depending on the status of the employee.

8. For Concho employees who joined ConocoPhillips at the merger, email data was migrated as it existed at the time of the merger, with those employees receiving a new ConocoPhillips email address. These mailboxes then became subject to ConocoPhillips's one-year retention policy.

9. For Concho employees who did not join ConocoPhillips at the merger, email data was migrated to ConocoPhillips as a resource mailbox or shared inbox. The resource mailbox or shared inbox then became subject to ConocoPhillips's one-year retention policy.

10. ConocoPhillips does not have backup tapes of email data from the relevant period. Concho discontinued its use of backup tapes for email data by 2019, and no backup tapes of email data were migrated to ConocoPhillips as part of the merger.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 7/31, 2024.

Jeremy Moore

Jeremy Moore



CONFIDENTIAL

# EXHIBIT B

**SUNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | x : : : : : : x | Case No. 4:21-cv-02473 |

LEAD PLAINTIFFS' REQUESTS FOR ADMISSION DIRECTED TO DEFENDANT CONCHO RESOURCES INC

Lead Plaintiffs Utah Retirement Systems and Construction Laborers Pension Trust for Southern California ("Lead Plaintiffs"), by and through their counsel, serve this request for admissions ("RFAs" or "Requests") on Defendant Concho Resources Inc. ("Concho"), as authorized by Federal Rules of Civil Procedure 26 and 36.

Concho must serve a response to each Request separately and fully, in writing and under oath, writing 30 days after service.

## I. DEFINITIONS

1. "Action" refers to the above-captioned lawsuit.

2. "All" shall include the term "each" and vice-versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

3. "Analog Wells" are previously drilled wells determined to have similar geological and operational characteristics that are used as a reference for predicting performance of a new well.

4. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

5. "Communication" or "Communicate" refers to any exchange of information, words, numbers, pictures, charts, studies, or graphs by any means of transmission, sending, or receipt of information of any kind by or through any means including, but not limited to, personal delivery, speech, writings, documents (as defined herein), language (machine, foreign, or otherwise) of any kind, computer electronics or electronically-stored information, sound, radio or video signals, telecommunication, telephone, facsimile, text message, mail, film, photographic film of all types, or other media of any kind. The term "Communication" also includes, without

limitation, all inquiries, discussions, conversations, correspondence, negotiations, agreements, presentations, understandings, meetings, notices, requests, responses, demands, complaints, press, publicity, or trade releases.

6. “Concerning” means relating to, referring to, describing, evidencing or constituting.

7. “Concho” refers to Defendant Concho Resources Inc., and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, employees, agents, representatives, members of its board of directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

8. “Concho Custodians” pertains to Concho’s custodians that the parties agreed to or that were otherwise used for Concho’s production of documents in this Action, excluding any Individual Defendant. Concho Custodians also includes the custodians proposed by Lead Plaintiffs but not ultimately selected because Concho claimed that emails and other electronic information for that custodian no longer existed for.

9. “ConocoPhillips” refers to Defendant ConocoPhillips and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, employees, agents, representatives, members of its board of directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

10. “Defendants” means Concho, ConocoPhillips, and the Individual Defendants.

11. “Document” is intended to have the broadest possible meaning under Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, electronic or

computerized data compilations, electronic file backup tapes, hard drives and images of hard drives, all drafts, communications, correspondence, memoranda, records, presentations, books, manuals, reports and recordings of telephone conversations, telephone logs, statements, summaries, notes, transcripts, opinions, agreements, ledgers, journals records of accounts, checks, summary of accounts, spreadsheets, databases, receipts, balance sheets, income statements, confirmation slips, questionnaires, desk calendars, appointment books, diaries, journals, graphs, test results, blogs, charts, data, files, log files of computer access and activity, and all of the records kept by electronic, photographic, optical, mechanical, magnetic means and things similar to any of the foregoing, including computer media, regardless of their author, transcripts of testimony, subpoenas, and any paper or writing of whatever description, including any computer database or information contained in any computer although not yet printed out. A draft or nonidentical copy of any document is a separate document within the meaning of this term.

12. "Executive Officers" means those individuals appointed as company officers by Concho's Board of Directors.

13. "Individual Defendants" means Timothy Leach, Jack F. Harper, and William Giraud.

14. "Initial Type Curve" means a production forecast model formulated before a well begins producing and is typically based on analog wells with similar geological and operational characteristics.

15. "Parties" means Plaintiffs and Defendants.

16. "Person" or "Persons" includes any natural person, firm, association, organization, partnership, limited partnership, sole proprietorship, trust, corporation, or legal or governmental entity, association, or body.

17. "Plaintiffs" means Utah Retirement Systems and Construction Laborers Pension Trust for Southern California.

18. "Policy" or "Policies" means any rule, protocol, procedure, directives, "playbooks," practice, or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, that was known, recognized, or followed, explicitly or implicitly.

19. "Refer" or "relate" or "referring" or "relating" means all documents that explicitly or implicitly, in whole or in part, were received in conjunction with or were generated as a result of, the subject matter of the request, including, but not limited to, all documents that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

20. "RSP" means RSP Permian, Inc., and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, employees (as defined herein), agents, representatives, members of its board of directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

21. "Well Interference" as used herein shall be given its broadest possible meaning and shall include any indication based on drilling, geological testing, production rate, gas-oil ratio, water-oil ratio, sand production, decline rate, bottom-hole pressure decline rate, production differences between interior and exterior wells, production differences between wells that begin producing earlier and wells that begin producing later, or any other metric tracked by Concho that suggests interference between any well in a project and any other well, including parent wells, child wells, offset wells, or simultaneously producing wells. Well interference shall be broadly defined to include any qualitative or quantitative evidence—whether geological, geophysical,

petrophysical, geo-mechanical, reservoir, production, or anecdotal—suggesting pressure or fluid communication between wells within a project area. This encompasses both vertical and horizontal communication through natural or induced fractures, pressure depletion, fluid migration, or any other mechanism affecting well performance, including compromised or reduced well productivity, estimated ultimate recovery (EUR), or other adverse production impacts, regardless of whether the evidence is direct or inferred.

22. "You" and "Your" refers to Defendant Concho, including, without limitation, any representatives, agents, and all other persons acting or purporting to act on behalf of the foregoing.

23. "Text Message" or "Text Messages" means any written communication sent or received from a device (including, but not limited to, a cellular phone, tablet computer, and other similar devices), and includes, without limitation, SMS messages, MMS messages, WhatsApp messages, BlackBerry messages, Apple iMessages, and any other message sent through an application on any such mobile device.

## II. INSTRUCTIONS

24. The scope of discovery for these RFAs is governed by Rule 26(b)(1) and 36(a)(1). These RFAs may be used to request that You admit the truth of matters relating to (1) facts, the application of law to facts, or opinions about either, and (2) the genuineness of any described documents.

25. You are required to respond to the RFAs based upon all information that is available to You, including information in the possession of Your attorneys, agents, or others under Your possession, custody, or control and not merely information known by virtue of Your own personal knowledge.

26. In response to each RFA, You must specifically admit or deny the matter or set forth in detail the reasons why You cannot truthfully admit or deny the matter.

27. If You deny any part of an RFA, the denial must fairly meet the substance of the request. If You qualify an answer or deny only part of the matter for which an admission is requested, You must specifically admit so much of it as is true. Compound requests that are capable of separation into distinct components and that follow a logical or chronological order should be denied or admitted in sequence with appropriate designation or qualification. *See People's Capital & Leasing Corp., v. McClung*, No. 5:17-CV-484-OLG, 2017 WL 8181529, at *2 (W.D. Tex. Sept. 22, 2017); *see also Matter of AET, Inc., Ltd.*, No. 1:10-CV-51, 2018 WL 4201264, at *7 (E.D. Tex. June 8, 2018); *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 426 (N.D. Tex. 2021).

28. You may not object to a request simply because You consider the matter requested to be a genuine issue for trial. You must deny the matter or set forth specific reasons why You cannot admit or deny it.

29. A denial coupled with a general objection will constitute an admission.

30. If You claim a lack of information or knowledge as a reason for failure to admit or deny an RFA, state whether You have made reasonable inquiry and that the information known or readily obtainable by You is insufficient to enable You to admit or deny.

31. These RFAs are continuing in nature and shall be deemed subject to the duty to supplement as set forth in the Federal Rules of Civil Procedure, and You shall be obligated to change, supplement, and correct Your answers to conform to all available information, including such information as becomes available to You after Your answers hereto are served.

32. If You claim any sort of privilege or immunity, whether based on statute or otherwise, as a basis for not answering all or part of an RFA, state the following: (a) the date of the purportedly protected information; (b) the names, the present or last known home and business

addresses, the telephone numbers, and email address of those individuals who prepared, produced, reproduced or were recipients of said information, or were a speaker of or listener to an oral communication; (c) a description of the subject matter sufficient to identify it without revealing the information for which the privilege or other protection is claimed; and (d) each and every fact or basis upon which You claim any such privilege or other protection.

33. Whenever appropriate, the singular form of a word shall be interpreted to encompass the plural form or vice versa and verb tenses shall be interpreted to include past, present and future tenses. The words "any" and "all" mean "any and all." The word "including" means "including but not limited to," "including without limitation," or "including, for the avoidance of doubt." Unless specifically defined herein, all words and terms used herein shall be construed and interpreted according to ordinary custom, usage, and meaning.

34. If You are unable to fully respond to any RFA, supply the information that is available and explain why Your response is incomplete, the efforts made by You to obtain responsive information, and the source from which all responsive information may be obtained, to the best of Your knowledge or belief.

35. For any request that contains subparts, each subpart shall be either admitted, denied, or given such other response as if it were a standalone RFA.

36. Each matter to which an admission is requested is admitted unless, no later than thirty (30) days after service, You serve upon Lead Plaintiffs' counsel a written answer or objection addressed to each request separately, signed by You or Your counsel, under oath.

37. These Instructions and the Requests do not require or demand that You set forth the basis for Your denials, if any.

38. All defined terms shall have the definitions provided herein whether or not capitalized.

39. The use of the singular form of any word includes the plural and vice versa.

40. The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

41. Unless given a prescribed definition herein, each word or term used shall be construed according to its usual and customary dictionary definition.

42. Unless otherwise stated, the relevant time period for these RFAs are January 1, 2017 through February 28, 2020.

## III. REQUESTS FOR ADMISSION

**RFAs Relating Only to the Brass Monkey Project**

1. Admit that the following tests were used on the Brass Monkey project at some point between January 1, 2017 and July 31, 2019:

   a. Coring

   b. Well logging

   c. Measurement while drilling (MWD)

   d. Logging while drilling (LWD)

   e. Mud logging

   f. Directional surveying

   g. Pilot hole

   h. Drill Stem Test (DST)

   i. Injection Testing

   j. Formation Testing

   k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

2. Admit that data collected from testing the Brass Monkey project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

3. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Brass Monkey project indicating there was well interference from one or more tests admitted in RFA No. 1:

a. Timothy Leach

b. William Giraud

c. Jack Harper

4. Admit that the following reports were issued for the Brass Monkey project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

5. To the extent any aspect of RFA No. 4 is admitted, admit that the applicable reports generated for the Brass Monkey project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

6. To the extent any aspect of RFA Nos. 4 and 5 are admitted, admit that the applicable reports generated for the Brass Monkey project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not that there was some indication of well interference, was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

7. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Brass Monkey project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

8. Admit that all risking applied to the Brass Monkey project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

9. Admit that You revised at least one production forecast for the Brass Monkey project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

10. To the extent you admitted to anything in RFA No. 9, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Columbus Project**

11. Admit that the following tests were used on the Columbus project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

12. Admit that data collected from testing the Columbus project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

13. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Columbus project indicating there was well interference from one or more tests admitted in RFA No. 11:

a. Timothy Leach

b. William Giraud

c. Jack Harper

14. Admit that the following reports were issued for the Columbus project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

15. To the extent any aspect of RFA No. 14 is admitted, admit that the applicable reports generated for the Columbus project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

16. To the extent any aspect of RFA Nos. 14 and 15 are admitted, admit that the applicable reports generated for the Columbus project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

17. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Columbus project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

18. Admit that all risking applied to the Columbus project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

19. Admit that You revised at least one production forecast for the Columbus project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

20. To the extent you admitted to anything in RFA No. 19, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Dominator Project**

21. Admit that the following tests were used on the Dominator project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

22. Admit that data collected from testing the Dominator project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

23. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Dominator project indicating there was well interference from one or more tests admitted in RFA No. 21:

a. Timothy Leach

b. William Giraud

c. Jack Harper

24. Admit that the following reports were issued for the Dominator project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

25. To the extent any aspect of RFA No. 24 is admitted, admit that the applicable reports generated for the Dominator project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

26. To the extent any aspect of RFA Nos. 24 and 25 are admitted, admit that the applicable reports generated for the Dominator project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

27. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Dominator project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

28. Admit that all risking applied to the Dominator project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

29. Admit that You revised at least one production forecast for the Dominator project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

30. To the extent you admitted to anything in RFA No. 29, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Eider Project**

31. Admit that the following tests were used on the Eider project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

32. Admit that data collected from testing the Eider project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

33. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Eider project indicating there was well interference from one or more tests admitted in RFA No. 31:

a. Timothy Leach

b. William Giraud

c. Jack Harper

34. Admit that the following reports were issued for the Eider project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

35. To the extent any aspect of RFA No. 34 is admitted, admit that the applicable reports generated for the Eider project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

36. To the extent any aspect of RFA Nos. 34 and 35 are admitted, admit that the applicable reports generated for the Eider project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

37. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Eider project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

38. Admit that all risking applied to the Eider project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

39. Admit that You revised at least one production forecast for the Eider project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

40. To the extent you admitted to anything in RFA No. 39, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**<u>RFAs Relating Only to the Funky Boss/Whatcha Want Project</u>**

41. Admit that the following tests were used on the Funky Boss/Whatcha Want project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

42. Admit that data collected from testing the Funky Boss/Whatcha Want project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

43. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Funky Boss/Whatcha Want project indicating there was well interference from one or more tests admitted in RFA No. 41:

a. Timothy Leach

b. William Giraud

c. Jack Harper

44. Admit that the following reports were issued for the Funky Boss/Whatcha Want project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

45. To the extent any aspect of RFA No. 44 is admitted, admit that the applicable reports generated for the Funky Boss/Whatcha Want project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

46. To the extent any aspect of RFA Nos. 44 and 45 are admitted, admit that the applicable reports generated for the Funky Boss/Whatcha Want project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

47. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Funky Boss/Whatcha Want project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

48. Admit that all risking applied to the Funky Boss/Whatcha Want project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

49. Admit that You revised at least one production forecast for the Funky Boss/Whatcha Want project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

50. To the extent you admitted to anything in RFA No. 49, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**<u>RFAs Relating Only to the Gettysburg Project</u>**

51. Admit that the following tests were used on the Gettysburg project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

52. Admit that data collected from testing the Gettysburg project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

53. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Gettysburg project indicating there was well interference from one or more tests admitted in RFA No. 51:

a. Timothy Leach

b. William Giraud

c. Jack Harper

54. Admit that the following reports were issued for the Gettysburg project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

55. To the extent any aspect of RFA No. 54 is admitted, admit that the applicable reports generated for the Gettysburg project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

56. To the extent any aspect of RFA Nos. 54 and 55 are admitted, admit that the applicable reports generated for the Gettysburg project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

57. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Gettysburg project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

58. Admit that all risking applied to the Gettysburg project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

59. Admit that You revised at least one production forecast for the Gettysburg project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

60. To the extent you admitted to anything in RFA No. 59, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Grissom Project**

61. Admit that the following tests were used on the Grissom project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

62. Admit that data collected from testing the Grissom project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

63. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Grissom project indicating there was well interference from one or more tests admitted in RFA No. 61:

a. Timothy Leach

b. William Giraud

c. Jack Harper

64. Admit that the following reports were issued for the Grissom project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

65. To the extent any aspect of RFA No. 64 is admitted, admit that the applicable reports generated for the Grissom project at some point between January 1, 2017 and July 31,

2019 contained data indicating that, more likely than not, there was some indication of well interference.

66. To the extent any aspect of RFA Nos. 64 and 65 are admitted, admit that the applicable reports generated for the Grissom project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

67. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Grissom project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

68. Admit that all risking applied to the Grissom project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

69. Admit that You revised at least one production forecast for the Grissom project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

70. To the extent you admitted to anything in RFA No. 69, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Jack Project**

71. Admit that the following tests were used on the Jack project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

72. Admit that data collected from testing the Jack project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

73. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Jack project indicating there was well interference from one or more tests admitted in RFA No. 71:

a. Timothy Leach

b. William Giraud

c. Jack Harper

74. Admit that the following reports were issued for the Jack project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

75. To the extent any aspect of RFA No. 74 is admitted, admit that the applicable reports generated for the Jack project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

76. To the extent any aspect of RFA Nos. 74 and 75 are admitted, admit that the applicable reports generated for the Jack project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

77. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Jack project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

78. Admit that all risking applied to the Jack project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

79. Admit that You revised at least one production forecast for the Jack project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

80. To the extent you admitted to anything in RFA No. 79, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Mabee 240A Project**

81. Admit that the following tests were used on the Mabee 240A project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

82. Admit that data collected from testing the Mabee 240A project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

83. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Mabee 240A project indicating there was well interference from one or more tests admitted in RFA No. 81:

a. Timothy Leach

b. William Giraud

c. Jack Harper

84. Admit that the following reports were issued for the Mabee 240A project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

85. To the extent any aspect of RFA No. 84 is admitted, admit that the applicable reports generated for the Mabee 240A project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

86. To the extent any aspect of RFA Nos. 84 and 85 are admitted, admit that the applicable reports generated for the Mabee 240A project at some point between January 1, 2017

and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

87. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Mabee 240A project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

88. Admit that all risking applied to the Mabee 240A project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

89. Admit that You revised at least one production forecast for the Mabee 240A project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

90. To the extent you admitted to anything in RFA No. 89, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Mabee 240C Project**

91. Admit that the following tests were used on the Mabee 240C project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

92. Admit that data collected from testing the Mabee 240C project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

93. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Mabee 240C project indicating there was well interference from one or more tests admitted in RFA No. 91:

a. Timothy Leach

b. William Giraud

c. Jack Harper

94. Admit that the following reports were issued for the Mabee 240C project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

95. To the extent any aspect of RFA No. 94 is admitted, admit that the applicable reports generated for the Mabee 240C project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

96. To the extent any aspect of RFA Nos. 94 and 95 are admitted, admit that the applicable reports generated for the Mabee 240C project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

97. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Mabee 240C project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

98. Admit that all risking applied to the Mabee 240C project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

99. Admit that You revised at least one production forecast for the Mabee 240C project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

100. To the extent you admitted to anything in RFA No. 99, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**<u>RFAs Relating Only to the Marion Benge Project</u>**

101. Admit that the following tests were used on the Marion Benge project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

102. Admit that data collected from testing the Marion Benge project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

103. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Marion Benge project indicating there was well interference from one or more tests admitted in RFA No. 101:

a. Timothy Leach

b. William Giraud

c. Jack Harper

104. Admit that the following reports were issued for the Marion Benge project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

105. To the extent any aspect of RFA No. 104 is admitted, admit that the applicable reports generated for the Marion Benge project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

106. To the extent any aspect of RFA Nos. 104 and 105 are admitted, admit that the applicable reports generated for the Marion Benge project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

107. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Marion Benge project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

108. Admit that all risking applied to the Marion Benge project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

109. Admit that You revised at least one production forecast for the Marion Benge project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

110. To the extent you admitted to anything in RFA No. 109, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Tempest Project**

111. Admit that the following tests were used on the Tempest project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

112. Admit that data collected from testing the Tempest project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

113. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Tempest project indicating there was well interference from one or more tests admitted in RFA No. 111:

a. Timothy Leach

b. William Giraud

c. Jack Harper

114. Admit that the following reports were issued for the Tempest project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

115. To the extent any aspect of RFA No. 114 is admitted, admit that the applicable reports generated for the Tempest project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

116. To the extent any aspect of RFA Nos. 114 and 115 are admitted, admit that the applicable reports generated for the Tempest project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

117. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Tempest project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

118. Admit that all risking applied to the Tempest project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

119. Admit that You revised at least one production forecast for the Tempest project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

120. To the extent you admitted to anything in RFA No. 119, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Vast Project**

121. Admit that the following tests were used on the Vast project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

122. Admit that data collected from testing the Vast project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

123. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Vast project indicating there was well interference from one or more tests admitted in RFA No. 121:

a. Timothy Leach

b. William Giraud

c. Jack Harper

124. Admit that the following reports were issued for the Vast project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

125. To the extent any aspect of RFA No. 124 is admitted, admit that the applicable reports generated for the Vast project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

126. To the extent any aspect of RFA Nos. 124 and 125 are admitted, admit that the applicable reports generated for the Vast project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

127. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Vast project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

128. Admit that all risking applied to the Vast project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

129. Admit that You revised at least one production forecast for the Vast project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

130. To the extent you admitted to anything in RFA No. 129, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the White Falcon Project**

131. Admit that the following tests were used on the White Falcon project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

132. Admit that data collected from testing the White Falcon project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

133. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the White Falcon project indicating there was well interference from one or more tests admitted in RFA No. 131:

a. Timothy Leach

b. William Giraud

c. Jack Harper

134. Admit that the following reports were issued for the White Falcon project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

135. To the extent any aspect of RFA No. 134 is admitted, admit that the applicable reports generated for the White Falcon project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

136. To the extent any aspect of RFA Nos. 134 and 135 are admitted, admit that the applicable reports generated for the White Falcon project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

137. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the White Falcon project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

138. Admit that all risking applied to the White Falcon project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

139. Admit that You revised at least one production forecast for the White Falcon project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

140. To the extent you admitted to anything in RFA No. 139, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Windham B Project**

141. Admit that the following tests were used on the Windham B project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

142. Admit that data collected from testing the Windham B project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

143. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Windham B project indicating there was well interference from one or more tests admitted in RFA No. 141:

a. Timothy Leach

b. William Giraud

c. Jack Harper

144. Admit that the following reports were issued for the Windham B project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

145. To the extent any aspect of RFA No. 144 is admitted, admit that the applicable reports generated for the Windham B project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

146. To the extent any aspect of RFA Nos. 144 and 145 are admitted, admit that the applicable reports generated for the Windham B project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

147. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Windham B project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

148. Admit that all risking applied to the Windham B project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

149. Admit that You revised at least one production forecast for the Windham B project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

150. To the extent you admitted to anything in RFA No. 149, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Windham TXL Project**

151. Admit that the following tests were used on the Windham TXL project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

152. Admit that data collected from testing the Windham TXL project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

153. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Windham TXL project indicating there was well interference from one or more tests admitted in RFA No. 151:

a. Timothy Leach

b. William Giraud

c. Jack Harper

154. Admit that the following reports were issued for the Windham TXL project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

155. To the extent any aspect of RFA No. 154 is admitted, admit that the applicable reports generated for the Windham TXL project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

156. To the extent any aspect of RFA Nos. 154 and 155 are admitted, admit that the applicable reports generated for the Windham TXL project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

157. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Windham TXL project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

158. Admit that all risking applied to the Windham TXL project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

159. Admit that You revised at least one production forecast for the Windham TXL project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

160. To the extent you admitted to anything in RFA No. 159, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Relating Only to the Winward Project**

161. Admit that the following tests were used on the Winward project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

162. Admit that data collected from testing the Winward project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

163. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Winward project indicating there was well interference from one or more tests admitted in RFA No. 161:

a. Timothy Leach

b. William Giraud

c. Jack Harper

164. Admit that the following reports were issued for the Winward project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

165. To the extent any aspect of RFA No. 164 is admitted, admit that the applicable reports generated for the Winward project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

166. To the extent any aspect of RFA Nos. 164 and 165 are admitted, admit that the applicable reports generated for the Winward project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

167. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Winward project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

168. Admit that all risking applied to the Winward project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

169. Admit that You revised at least one production forecast for the Winward project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

170. To the extent you admitted to anything in RFA No. 169, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RFAs Related to Projects Generally**

171. Admit that You contemplated upspacing at least one large-scale development project before the following dates:

a. January 1, 2019

b. February 1, 2019

c. March 1, 2019

d. April 1, 2019

e. May 1, 2019

f. June 1, 2019

g. July 1, 2019

h. August 1, 2019

172. Admit that you upspaced[1] planned development between January 1, 2019 and July 31, 2019 for wells in the following projects:

a. 9 Point – Calverley

b. Archi – Marion V Benge

c. Baseball Cap

d. Bigfoot

e. Bistec – Spanish Trail

f. Boomerang

[1] This also includes projects where wells were dropped for being child wells. E.g., WARCOP01612282; WARCOP01613797.

g. Brot Helm

h. Brunson E West

i. Brunson 8

j. Calverley 22/27

k. Coonskin

l. Couric – Katie

m. Cronus – TXL U/R

n. Daisy

o. Dominator

p. Dorsett – Windham TXL

q. Dutch – Mabee 240A

r. Eider

s. Eider WC

t. Emma Lou 9400

u. Fascinator

v. Fez

w. Gunner

x. Halo – Ted Johnson

y. Harrier

z. Howitzer

aa. Howitzer North

bb. Huckleberry

cc. Iron – Mask

dd. Jack

ee. Johnny B – PFU2

ff. King

gg. Littlebear

hh. Littlefield

ii. Littlefield West

jj. Lolo - Amacker

kk. Ludeman C25-12

ll. Mabee

mm. Mabee 240A

nn. MAGA – American Republics

oo. MCC HZ Unit

pp. McGillians – Haley JF

qq. Myox

rr. Myox 21

ss. Myox 21 West

tt. Myox 31 East

uu. Myox 6

vv. Par – Mask HZ Unit

ww. Pork Pie

xx. Quien Sabe

yy. Revolver

zz. Rudd Draw 29-03

aaa. Spanish Trail

bbb. Spanish Trail 48

ccc. Sphinx

ddd. SRO

eee. SRO 5/4

fff. Staubach – PFU3/PSU

ggg. Taylor

hhh. Ted Johnson

iii. Tempest

jjj. Tempest North

kkk. Timberwolf

lll. Timberwolf South

mmm. Verde - ST

nnn. Way South

ooo. Way South East

ppp. Winterfell – Mabee

qqq. Woody

173. Admit that upspacing for any of Your large-scale development projects occurred before the following dates:

a. January 1, 2019

b. February 1, 2019

c. March 1, 2019

d. April 1, 2019

e. May 1, 2019

f. June 1, 2019

g. July 1, 2019

h. August 1, 2019

174. Admit that the following projects were upspaced before March 4, 2019:

a. 9 Point – Calverley

b. Archi – Marion V Benge

c. Baseball Cap

d. Bigfoot

e. Bistec – Spanish Trail

f. Boomerang

g. Brot Helm

h. Brunson E West

i. Brunson 8

j. Calverley 22/27

k. Coonskin

l. Couric – Katie

m. Cronus – TXL U/R

n. Daisy

o. Dominator

p. Dorsett – Windham TXL

q. Dutch – Mabee 240A

r. Eider

s. Eider WC

t. Emma Lou 9400

u. Fascinator

v. Fez

w. Gunner

x. Halo – Ted Johnson

y. Harrier

z. Howitzer

aa. Howitzer North

bb. Huckleberry

cc. Iron – Mask

dd. Jack

ee. Johnny B – PFU2

ff. King

gg. Littlebear

hh. Littlefield

ii. Littlefield West

jj. Lolo - Amacker

kk. Ludeman C25-12

ll. Mabee

mm. Mabee 240A

nn. MAGA – American Republics

oo. MCC HZ Unit

pp. McGillians – Haley JF

qq. Myox

rr. Myox 21

ss. Myox 21 West

tt. Myox 31 East

uu. Myox 6

vv. Par – Mask HZ Unit

ww. Pork Pie

xx. Quien Sabe

yy. Revolver

zz. Rudd Draw 29-03

aaa. Spanish Trail

bbb. Spanish Trail 48

ccc. Sphinx

ddd. SRO

eee. SRO 5/4

fff. Staubach – PFU3/PSU

ggg. Taylor

hhh. Ted Johnson

iii. Tempest

jjj. Tempest North

kkk. Timberwolf

lll. Timberwolf South

mmm. Verde - ST

nnn. Way South

ooo. Way South East

ppp. Winterfell – Mabee

qqq. Woody

175. Admit that the following projects were upspaced before March 30, 2019:

a. 9 Point – Calverley

b. Archi – Marion V Benge

c. Baseball Cap

d. Bigfoot

e. Bistec – Spanish Trail

f. Boomerang

g. Brot Helm

h. Brunson E West

i. Brunson 8

j. Calverley 22/27

k. Coonskin

l. Couric – Katie

m. Cronus – TXL U/R

n. Daisy

o. Dominator

p. Dorsett – Windham TXL

q. Dutch – Mabee 240A

r. Eider

s. Eider WC

t. Emma Lou 9400

u. Fascinator

v. Fez

w. Gunner

x. Halo – Ted Johnson

y. Harrier

z. Howitzer

aa. Howitzer North

bb. Huckleberry

cc. Iron – Mask

dd. Jack

ee. Johnny B – PFU2

ff. King

gg. Littlebear

hh. Littlefield

ii. Littlefield West

jj. Lolo - Amacker

kk. Ludeman C25-12

ll. Mabee

mm. Mabee 240A

nn. MAGA – American Republics

oo. MCC HZ Unit

pp. McGillians – Haley JF

qq. Myox

rr. Myox 21

ss. Myox 21 West

tt. Myox 31 East

uu. Myox 6

vv. Par – Mask HZ Unit

ww. Pork Pie

xx. Quien Sabe

yy. Revolver

zz. Rudd Draw 29-03

aaa. Spanish Trail

bbb. Spanish Trail 48

ccc. Sphinx

ddd. SRO

eee. SRO 5/4

fff. Staubach – PFU3/PSU

ggg. Taylor

hhh. Ted Johnson

iii. Tempest

jjj. Tempest North

kkk. Timberwolf

lll. Timberwolf South

mmm. Verde - ST

nnn. Way South

ooo. Way South East

ppp. Winterfell – Mabee

qqq. Woody

176. Admit that the following projects were upspaced before April 30, 2019:

a. 9 Point – Calverley

b. Archi – Marion V Benge

c. Baseball Cap

d. Bigfoot

e. Bistec – Spanish Trail

f. Boomerang

g. Brot Helm

h. Brunson E West

i. Brunson 8

j. Calverley 22/27

k. Coonskin

l. Couric – Katie

m. Cronus – TXL U/R

n. Daisy

o. Dominator

p. Dorsett – Windham TXL

q. Dutch – Mabee 240A

r. Eider

s. Eider WC

t. Emma Lou 9400

u. Fascinator

v. Fez

w. Gunner

x. Halo – Ted Johnson

y. Harrier

z. Howitzer

aa. Howitzer North

bb. Huckleberry

cc. Iron – Mask

dd. Jack

ee. Johnny B – PFU2

ff. King

gg. Littlebear

hh. Littlefield

ii. Littlefield West

jj. Lolo - Amacker

kk. Ludeman C25-12

ll. Mabee

mm. Mabee 240A

nn. MAGA – American Republics

oo. MCC HZ Unit

pp. McGillians – Haley JF

qq. Myox

rr. Myox 21

ss. Myox 21 West

tt. Myox 31 East

uu. Myox 6

vv. Par – Mask HZ Unit

ww. Pork Pie

xx. Quien Sabe

yy. Revolver

zz. Rudd Draw 29-03

aaa. Spanish Trail

bbb. Spanish Trail 48

ccc. Sphinx

ddd. SRO

eee. SRO 5/4

fff. Staubach – PFU3/PSU

ggg. Taylor

hhh. Ted Johnson

iii. Tempest

jjj. Tempest North

kkk. Timberwolf

lll. Timberwolf South

mmm. Verde - ST

nnn. Way South

ooo. Way South East

ppp. Winterfell – Mabee

qqq. Woody

177. Admit that the initial type curve for each of the following drilling projects was not based on a model unique to that project:

a. Brass Monkey

b. Columbus

c. Dominator

d. Eider

e. Fascinator

f. Fez

g. Funky Boss/Whatcha Want

h. Gettysburg

i. Grissom

j. Jack

k. Mabee 240A

l. Mabee 240C

m. Marion Benge

n. Ted Johnson

o. Tempest

p. Vast

q. White Falcon

r. Windham B

s. Windham TXL

t. Windward

178. Admit that in 2018, Concho applied a rate of risk on its production on a portfolio-wide basis (e.g., a company-wide risk rate applied by quarter or an annual average rate of risk).

179. Admit that in 2018, Concho risked it assets on a portfolio-wide basis.

180. Admit that in 2018, Concho did not apply a rate of risk on its production on a well-by-well basis.

181. Admit that in 2018, Concho did not apply a rate of risk on its production on a project-by-project basis.

182. Admit that in 2018, Concho did not apply unique risk factors to its production on individual projects.

183. Admit that in 2018, Concho did not apply unique risk factors to its assets on individual projects.

184. Admit that the first half of 2019, Concho applied a rate of risk on its production on a portfolio-wide basis (e.g., a company-wide risk rate applied by quarter or an annual average rate of risk).

185. Admit that the first half of 2019, Concho risked it assets on a portfolio-wide basis.

186. Admit that the first half of 2019, Concho did not apply a rate of risk on its production on a well-by-well basis.

187. Admit that the first half of 2019, Concho did not apply a rate of risk on its production on a project-by-project basis.

188. Admit that the first half of 2019, Concho did not apply unique risk factors to its production on individual projects.

189. Admit that the first half of 2019, Concho did not apply unique risk factors to its assets on individual projects.

190. Admit that before March 30, 2019, Concho applied a rate of risk on its production on a portfolio-wide basis (e.g., a company-wide risk rate applied by quarter or an annual average rate of risk).

191. Admit that before March 30, 2019, Concho risked it assets on a portfolio-wide basis.

192. Admit that before March 30, 2019, Concho did not apply a rate of risk on its production on a well-by-well basis.

193. Admit that before March 30, 2019, Concho did not apply a rate of risk on its production on a project-by-project basis.

194. Admit that before March 30, 2019, Concho did not apply unique risk factors to its production on individual projects.

195. Admit that before March 30, 2019, Concho did not apply unique risk factors to its assets on individual projects.

196. Admit that the initial production forecast for each of the following projects did not incorporate risk factors unique to that project:

a. Brass Monkey

b. Columbus

c. Dominator

d. Eider

e. Fascinator

f. Fez

g. Funky Boss/Whatcha Want

h. Gettysburg

i. Grissom

j. Jack

k. Mabee 240A

l. Mabee 240C

m. Marion Benge

n. Ted Johnson

o. Tempest

p. Vast

q. White Falcon

r. Windham B

s. Windham TXL

t. Windward

197. Admit that analog wells used in the Dominator project's initial type curve indicated well interference prior to being used in the Dominator project's initial type curve analysis.

198. Admit that analog wells used in the Dominator project's initial type curve indicated well interference prior to Dominator project's first spud date.

199. Admit that analog wells used in the Dominator project's initial type curve indicated well interference prior to the Dominator project's completion date.

200. Admit that analog wells used in the Dominator project's initial type curve indicated well interference prior to Dominator's first production date.

201. Admit that You cannot ascertain a reliable production forecast for a drilling project until the following number of days from the start of initial production:

a. 60 days

b. 80 days

c. 100 days

d. 120 days

e. 150 days

202. To the extent RFA No. 201 is admitted, admit You knew this information before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

203. Admit that well interference may not be reflected in production data for at least the following number of days after the start of production:

a. 60 days

b. 80 days

c. 100 days

d. 120 days

e. 150 days

204. To the extent RFA No. 203 is admitted, admit You knew this information before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

205. Admit that vertical well spacing under the following distances is more likely than not to create well interference:

a. 70 feet

b. 100 feet

c. 120 feet

d. 150 feet

e. 200 feet

f. 220 feet

g. 250 feet

h. 280 feet

i. 300 feet

j. 350 feet

k. 400 feet

l. 450 feet

m. 500 feet

n. 550 feet

o. 650 feet

p. 700 feet

q. 750 feet

206. To the extent that RFA No. 205 is admitted, admit that one or more members of Concho's Executive Officers knew this information before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

207. To the extent that RFA No. 205 is admitted, admit that RSP learned this information with respect to RSP assets before RSP's merger with Concho and shared this information with Concho.

208. Admit that horizontal well spacing under the following distances is more likely than not to create well interference:

a. 70 feet

b. 120 feet

c. 150 feet

d. 200 feet

e. 220 feet

f. 250 feet

g. 280 feet

h. 300 feet

i. 350 feet

j. 400 feet

k. 450 feet

l. 500 feet

m. 550 feet

n. 650 feet

o. 700 feet

p. 750 feet

q. 1,000

r. 1,200

209. To the extent that RFA No. 208 is admitted, admit that one or more members of Concho's Executive Officers knew this information before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

210. To the extent that RFA No. 208 is admitted, admit that RSP learned this information with respect to RSP assets before RSP's merger with Concho and shared this information with Concho.

**RFAs Related to Text Messages and Litigation Holds**

211. Admit that at least one of the Concho Custodians used text messages to communicate about business matters.

212. Admit that You had a policy in place, concerning employees' use of devices for work purposes, at any point on or before July 31, 2019.

213. Admit that Your policy concerning employees' use of devices for work purposes provided You with possession, custody, access or control of employees' devices.

214. Admit You had possession, custody, access or control of devices through which the Concho Custodians sent text messages.

215. Admit that You sent a litigation hold notice to Concho employees on or after July 31, 2019 related to the market reaction to Concho's earning release on July 31, 2019.

216. Admit that You sent a litigation hold notice to Concho employees on or after August 1, 2019 related to the market reaction to Concho's earnings call on August 1, 2019.

217. Admit that a litigation hold notice was issued to Concho employees in 2019 related to Concho's disclosure to the market on July 31, 2019.

218. Admit that a litigation hold notice was issued to Concho employees in 2019 related to Concho's disclosure to the market on August 1, 2019.

219. Admit that a litigation hold notice was issued to Concho employees in 2020 related to Concho's disclosure to the market on July 31, 2019.

220. Admit that a litigation hold notice was issued to Concho employees in 2020 related to Concho's disclosure to the market on August 1, 2019.

221. Admit that a litigation hold notice was issued to Concho employees in 2021 related to Concho's disclosure to the market on July 31, 2019.

222. Admit that a litigation hold notice was issued to Concho employees in 2021 related to Concho's disclosure to the market on August 1, 2019.

223. Admit that a litigation hold notice was issued to Concho employees in 2021 related to this action.

224. Admit that a litigation hold notice was issued to the Concho Custodians in 2019 related to Concho's disclosure to the market on either July 31, 2019 or August 1, 2019.

225. Admit that a litigation hold notice was issued to the Individual Defendants in 2019 related to Concho's disclosure to the market on either July 31, 2019 or August 1, 2019.

226. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2019 related to any of the allegations in this action.

227. Admit that a litigation hold notice was issued to Individual Defendants in 2019 related to any of the allegations in this action.

228. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2020 related to any of the allegations in this action.

229. Admit that a litigation hold notice was issued to the Individual Defendants in 2020 related to any of the allegations in this action.

230. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2021 related to any of the allegations in this action.

231. Admit that a litigation hold notice was issued the Individual Defendants in 2021 related to any of the allegations in this action.

232. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2022 related to any of the allegations in this action.

233. Admit that a litigation hold notice was issued to the Individual Defendants in 2022 related to any of the allegations in this action.

234. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2018 unrelated to this action.

235. Admit that a litigation hold notice was issued the Individual Defendants in 2018 unrelated to this action.

236. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2019 unrelated to this action.

237. Admit that a litigation hold notice was issued the Individual Defendants in 2019 unrelated to this action.

238. Admit that a litigation hold notice was issued to one more of the Concho Custodians in 2020 unrelated to this action.

239. Admit that a litigation hold notice was issued to the Individual Defendants in 2020 unrelated to this action

240. Admit that a litigation hold notice was issued to one more of the Concho Custodians in 2021 unrelated to this action.

241. Admit that a litigation hold notice was issued the Individual Defendants in 2021 unrelated to this action

242. Admit that a litigation hold notice was issued to one more of the Concho Custodians in 2022 unrelated to this action.

243. Admit that a litigation hold notice was issued to the Individual Defendants in 2022 unrelated to this action

244. Admit that any litigation hold notice issued in connection with this action required preservation of emails and text messages.

245. Admit that any litigation hold notice issued between 2018 and 2021 to any of the Concho Custodians that was unrelated to this action required preservation of emails and text messages.

246. Admit that any litigation hold notice issued between 2018 and 2021 to the Individual Defendants that was unrelated to this action required preservation of emails and text messages.

DATED: March 14, 2025

Respectfully submitted,

*/s/ Joseph N. Cotilletta*

**LABATON SUCHAROW LLP**
Joseph N. Cotilletta (*pro hac vice*)
Beth C. Khinchuk (*pro hac vice*)
Rachel A. Berger (*pro hac vice*)
Wesley A. Mann (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jcotilletta@labaton.com
bkhinchuk@labaton.com
rberger@labaton.com
wmann@labaton.com

*Lead Counsel for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2025, a true and correct copy of the foregoing document was served by electronic mail to the designated counsel of record for Defendants in the above-captioned action.

*/s/ Wesley Mann*
Wesley Mann

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | : | Case No. 4:21-cv-02473 |

LEAD PLAINTIFFS' REQUESTS FOR ADMISSION DIRECTED TO DEFENDANT TIMOTHY A. LEACH

Lead Plaintiffs Utah Retirement Systems and Construction Laborers Pension Trust for Southern California ("Lead Plaintiffs"), by and through their counsel, serve this request for admissions ("RFAs" or "Requests") on Defendant Timothy A. Leach ("Leach"), as authorized by Federal Rules of Civil Procedure 26 and 36.

Leach must serve a response to each Request separately and fully, in writing and under oath, 30 days after service.

## I. DEFINITIONS

1. "Action" refers to the above-captioned lawsuit.

2. "All" shall include the term "each" and vice-versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

3. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

4. "Communication" or "Communicate" refers to any exchange of information, words, numbers, pictures, charts, studies, or graphs by any means of transmission, sending, or receipt of information of any kind by or through any means including, but not limited to, personal delivery, speech, writings, documents (as defined herein), language (machine, foreign, or otherwise) of any kind, computer electronics or electronically-stored information, sound, radio or video signals, telecommunication, telephone, facsimile, text message, mail, film, photographic film of all types, or other media of any kind. The term "Communication" also includes, without limitation, all inquiries, discussions, conversations, correspondence, negotiations, agreements,

presentations, understandings, meetings, notices, requests, responses, demands, complaints, press, publicity, or trade releases.

5. "Complaint" refers to the Consolidated Complaint for Violations of the Federal Securities Laws filed in this Action on January 7, 2022, ECF No. 25.

6. "Concerning" means relating to, referring to, describing, evidencing or constituting.

7. "Concho" refers to Defendant Concho Resources Inc., and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, employees, agents, representatives, members of its board of directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

8. "ConocoPhillips" refers to Defendant ConocoPhillips and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, employees, agents, representatives, members of its board of directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

9. "Defendants" means Concho, ConocoPhillips, and the Individual Defendants.

10. "Device" means, including, but not limited to, a cellular phone, tablet, computer, laptop, etc.

11. "Document" is intended to have the broadest possible meaning under Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, electronic or computerized data compilations, electronic file backup tapes, hard drives and images of hard drives, all drafts, communications, correspondence, memoranda, records, presentations, books,

manuals, reports and recordings of telephone conversations, telephone logs, statements, summaries, notes, transcripts, opinions, agreements, ledgers, journals records of accounts, checks, summary of accounts, spreadsheets, databases, receipts, balance sheets, income statements, confirmation slips, questionnaires, desk calendars, appointment books, diaries, journals, graphs, test results, blogs, charts, data, files, log files of computer access and activity, and all of the records kept by electronic, photographic, optical, mechanical, magnetic means and things similar to any of the foregoing, including computer media, regardless of their author, transcripts of testimony, subpoenas, and any paper or writing of whatever description, including any computer database or information contained in any computer although not yet printed out. A draft or nonidentical copy of any document is a separate document within the meaning of this term.

12. "Individual Defendants" means Timothy Leach, Jack F. Harper, and William Giraud.

13. "Parties" means Plaintiffs and Defendants.

14. "Person" or "Persons" includes any natural person, firm, association, organization, partnership, limited partnership, sole proprietorship, trust, corporation, or legal or governmental entity, association, or body.

15. "Plaintiffs" means Utah Retirement Systems and Construction Laborers Pension Trust for Southern California.

16. "Refer" or "relate" or "referring" or "relating" means all documents that explicitly or implicitly, in whole or in part, were received in conjunction with or were generated as a result of, the subject matter of the request, including, but not limited to, all documents that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

17. "Well Interference" as used herein shall be given its broadest possible meaning and shall include any indication based on drilling, geological testing, production rate, gas-oil ratio, water-oil ratio, sand production, decline rate, bottom-hole pressure decline rate, production differences between interior and exterior wells, production differences between wells that begin producing earlier and wells that begin producing later, or any other metric tracked by Concho that suggests interference between any well in a project and any other well, including parent wells, child wells, offset wells, or simultaneously producing wells. Well interference shall be broadly defined to include any qualitative or quantitative evidence—whether geological, geophysical, petrophysical, geo-mechanical, reservoir, production, or anecdotal—suggesting pressure or fluid communication between wells within a project area. This encompasses both vertical and horizontal communication through natural or induced fractures, pressure depletion, fluid migration, or any other mechanism affecting well performance, including compromised or reduced well productivity, estimated ultimate recovery (EUR), or other adverse production impacts, regardless of whether the evidence is direct or inferred.

18. "You" and "Your" refers to Defendant Leach, including, without limitation, any representatives, agents, and all other persons acting or purporting to act on behalf of the foregoing.

19. "Text Message" means any written communication sent or received from a device (including, but not limited to, a cellular phone, tablet, computer, and other similar devices), and includes, without limitation, SMS messages, MMS messages, WhatsApp messages, BlackBerry messages, Apple iMessages, and any other message sent through an application on any such mobile device.

## II. INSTRUCTIONS

1. The scope of discovery for these RFAs is governed by Rule 26(b)(1) and 36(a)(1). These RFAs may be used to request that You admit the truth of matters relating to (1) facts, the application of law to facts, or opinions about either, and (2) the genuineness of any described documents.

2. You are required to respond to the RFAs based upon all information that is available to You, including information in the possession of Your attorneys, agents, or others under Your possession, custody, or control and not merely information known by virtue of Your own personal knowledge.

3. In response to each RFA, You must specifically admit or deny the matter or set forth in detail the reasons why You cannot truthfully admit or deny the matter.

4. If You deny any part of an RFA, the denial must fairly meet the substance of the request. If You qualify an answer or deny only part of the matter for which an admission is requested, You must specifically admit so much of it as is true. Compound requests that are capable of separation into distinct components and that follow a logical or chronological order should be denied or admitted in sequence with appropriate designation or qualification. *See People's Capital & Leasing Corp., v. McClung*, No. 5:17-CV-484-OLG, 2017 WL 8181529, at *2 (W.D. Tex. Sept. 22, 2017); *see also Matter of AET, Inc., Ltd.*, No. 1:10-CV-51, 2018 WL 4201264, at *7 (E.D. Tex. June 8, 2018); *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 426 (N.D. Tex. 2021).

5. You may not object to a request simply because You consider the matter requested to be a genuine issue for trial. You must deny the matter or set forth specific reasons why You cannot admit or deny it.

6. A denial coupled with a general objection will constitute an admission.

7. If You claim a lack of information or knowledge as a reason for failure to admit or deny an RFA, state whether You have made reasonable inquiry and that the information known or readily obtainable by You is insufficient to enable You to admit or deny.

8. These RFAs are continuing in nature and shall be deemed subject to the duty to supplement as set forth in the Federal Rules of Civil Procedure, and You shall be obligated to change, supplement, and correct Your answers to conform to all available information, including such information as becomes available to You after Your answers hereto are served.

9. If You claim any sort of privilege or immunity, whether based on statute or otherwise, as a basis for not answering all or part of an RFA, state the following: (a) the date of the purportedly protected information; (b) the names, the present or last known home and business addresses, the telephone numbers, and email address of those individuals who prepared, produced, reproduced or were recipients of said information, or were a speaker of or listener to an oral communication; (c) a description of the subject matter sufficient to identify it without revealing the information for which the privilege or other protection is claimed; and (d) each and every fact or basis upon which You claim any such privilege or other protection.

10. Whenever appropriate, the singular form of a word shall be interpreted to encompass the plural form or vice versa and verb tenses shall be interpreted to include past, present and future tenses. The words "any" and "all" mean "any and all." The word "including" means "including but not limited to," "including without limitation," or "including, for the avoidance of doubt." Unless specifically defined herein, all words and terms used herein shall be construed and interpreted according to ordinary custom, usage, and meaning.

11. If You are unable to fully respond to any RFA, supply the information that is available and explain why Your response is incomplete, the efforts made by You to obtain responsive information, and the source from which all responsive information may be obtained, to the best of Your knowledge or belief.

12. For any request that contains subparts, each subpart shall be either admitted, denied, or given such other response as if it were a standalone RFA.

13. Each matter to which an admission is requested is admitted unless, no later than thirty (30) days after service, You serve upon Lead Plaintiffs' counsel a written answer or objection addressed to each Request separately, signed by You or Your counsel, under oath.

14. These Instructions and the Requests do not require or demand that You set forth the basis for Your denials, if any.

15. All defined terms shall have the definitions provided herein whether or not capitalized.

16. The use of the singular form of any word includes the plural and vice versa.

17. The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

18. Unless given a prescribed definition herein, each word or term used shall be construed according to its usual and customary dictionary definition.

19. Unless otherwise stated, the "Relevant Time Period" for these Requests is January 1, 2017 through February 28, 2020.

## III. REQUESTS FOR ADMISSION

**Request No. 1**

Admit that you had direct and supervisory involvement in the day-to-day operations of the Concho during the Relevant Time Period.

**Request No. 2**

Admit that You used Text messages to communicate about:

a. work with colleagues;

b. well spacing;

c. production forecasts;

d. risk-adjusted production forecasts;

e. the Dominator;

f. Large-Scale Development Project; and/or

g. Well Interference for any Large-Scale Development Project.

**Request No. 3**

Admit that You received a litigation hold:

a. for this action in 2019;

b. related to the facts underlying this action in 2019;

c. for this action in 2020;

d. related to the facts underlying this action in 2020;

e. for this action in 2021;

f. related to the facts underlying this action in 2021

g. for this action in 2022;

h. related to the facts underlying this action in 2022;

i. unrelated to this action in 2019;

j. unrelated to this action in 2020;

k. unrelated to this action in 2021; and/or

l. unrelated to this action in 2022.

**Request No. 4**

Admit that You did not preserve all text messages from Your Devices dated January 1, 2017 to February 28, 2020.

**Request No. 5**

Admit that text messages from Your Devices dated from January 1, 2017 through February 28, 2020, have been permanently deleted and/or destroyed.

**Request No. 6**

Admit that You failed to turn off any and all automatic deletion function(s) on Your Devices specific to text messages following receipt of any litigation hold notice that You received concerning this action, the facts underlying this action, or unrelated litigation before January 1, 2022.

**Request No. 7**

Admit that You were aware of the risk of litigation and/or actual litigation concerning any of the allegations in the Complaint by the end of:

a. July 2019;

b. August 2019;

c. September 2019;

d. October 2019;

e. November 2019;

f. December 2019;

g. January 2020;

h. February 2020;

i. March 2020;

j. April 2020;

k. May 2020;

l. June 2020;

m. July 2020;

n. August 2020;

o. September 2020;

p. October 2020;

q. November 2020;

r. December 2020;

s. January 2021;

t. February 2021;

u. March 2021;

v. April 2021;

w. May 2021;

x. June 2021;

y. July 2021; and/or

z. August 2021.

**Request No. 8**

Admit that the litigation hold notices concerning unrelated litigation that You received from Concho before the date of these RFAs included instructions to preserve Documents and Communications on Your Devices.

**Request No. 9**

Admit that Concho took steps to preserve Documents and Communications on Your Devices in connection with unrelated litigation before the date of these RFAs.

**Request No. 10**

For the statement You made that is identified in paragraph 169 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 11**

For the statement You signed that is identified in paragraph 180 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 12**

For the statement You signed that is identified in paragraph 182 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 13**

For the statement You made that is identified in paragraph 186 of the Complaint, admit that you did not review any documents:

f. as support for that statement;

g. as support for that statement before it was made on the day of the statement;

h. as support for that statement the day before You made that statement;

i. as support for that statement in the week leading up to You making that statement; and/or

j. as support for that statement in the month leading up to the day You made that statement.

**Request No. 14**

For the statement You made that is identified in paragraph 188 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 15**

For the statement You made that is identified in paragraph 189 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 16**

For the statement You made that is identified in paragraph 191 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 17**

For the statement You made that is identified in paragraph 207 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 18**

For the statement You made that is identified in paragraph 208 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 19**

For the statement You made that is identified in paragraph 213 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 20**

For the statement You made that is identified in paragraph 216 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 21**

For the statement You made that is identified in paragraph 218 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 22**

For the statement You made that is identified in paragraph 230 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 23**

For the statement You made that is identified in paragraph 240 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 24**

For the statement You made that is identified in paragraph 242 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 25**

For the statement You made that is identified in paragraph 243 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 26**

For the statement You made that is identified in paragraph 245 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 27**

For the statement You made that is identified in paragraph 247 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 28**

For the statement You made that is identified in paragraph 249 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 29**

For the statement You made that is identified in paragraph 255 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 30**

For the statement You made that is identified in paragraph 258 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 31**

For the statement You made that is identified in paragraph 262 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 32**

For the statement You signed that is identified in paragraph 270 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 33**

For the statement You made that is identified in paragraph 277 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 34**

For the statement You made that is identified in paragraph 278 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 35**

For the statement You made that is identified in paragraph 289 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 36**

For the statement You made that is identified in paragraph 292 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 37**

For the statement You made that is identified in paragraph 295 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 38**

For the statement You made that is identified in paragraph 302 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 39**

Admit that you met regularly with:

a. Clay Bateman;

b. Keith Corbett;

c. Chris Spies;

d. Brenda Schroer;

e. Beth Harrison;

f. Concho's Vice President of the Delaware Basin;

g. Concho's Vice President of the Midland Basin; and/or

h. Megan Hays.

**Request No. 40**

Admit that you attended an emergency meeting to discuss the Dominator project in:

a. March 2019; and/or

b. April 2019.

**Request No. 41**

Admit that you reviewed and approved Concho's:

a. April 2018 Operating Plan;

b. MY 2018 Operating Plan;

c. November 2018 Operating Plan;

d. YE 2018 Operating Plan;

e. February 2019 Operating Plan;

f. April 2019 Operating Plan; and/or

g. MY 2019 Operating Plan.

**Request No. 42**

Regarding "Weekly Dashboard, CXO Capital Mkts Weekly" document(s) (e.g. Bates No. WARCOP01728625 - 8629), admit that you:

a. received it on a weekly basis;

b. reviewed it on a weekly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 43**

Regarding "Daily Stats" document(s) (e.g. Bates No. WARCOP02057678), admit that you:

a. received it on a daily basis;

b. reviewed it on a daily basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 44**

Regarding "Weekly Rig Count Dashboard" document(s) (e.g. Bates No. WARCOP02052419 – 2420), admit that you:

a. received it on a weekly basis;

b. reviewed it on a weekly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 45**

Regarding "Permian Basin Rig Map" document(s) (e.g. Bates No. WARCOP01773695 - 3697), admit that you:

a. received it on a weekly basis between June 2018 and October 2018;

b. reviewed it on a weekly basis between June 2018 and October 2018;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 46**

Regarding "Company Book & Company Flash Report" document(s) (e.g. Bates No. WARCOP01730715 – 0721, WARCOP02041107 – 1110), admit that you:

a. received it on a monthly basis;

b. reviewed it on a monthly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 47**

Regarding "Board Books" document(s) (e.g. Bates No. WARCOP02059358 - 9361), admit that you:

a. received it on a quarterly basis;

b. reviewed it on a quarterly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 48**

Regarding "Operations Review/Ops Book" document(s) (e.g. Bates No. WARCOP01946357 - 6358), admit that you:

a. received it on a quarterly basis;

b. reviewed it on a quarterly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 49**

Regarding "Lunch and Learn / Plan Review" document(s) (e.g. Bates No. WARCOP01720552 - 0553), admit that you:

a. received it on a bi-annual basis;

b. reviewed it on a bi-annual basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 50**

Regarding "Activity Reports by Asset" document(s) (e.g. Bates No. WARCOP01776814 - 6834), admit that you:

a. received it on a monthly basis between June 2018 and December 2018;

b. reviewed it on a monthly basis between June 2018 and December 2018;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

DATED: March 14, 2025

Respectfully submitted,

*/s/ Joseph N. Cotilletta*

**LABATON SUCHAROW LLP**
Joseph N. Cotilletta (*pro hac vice*)
Beth C. Khinchuk (*pro hac vice*)
Rachel A. Berger (*pro hac vice*)
Wesley A. Mann (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jcotilletta@labaton.com
bkhinchuk@labaton.com
rberger@labaton.com
wmann@labaton.com

*Lead Counsel for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2025, a true and correct copy of the foregoing document was served by electronic mail to the designated counsel of record for Defendants in the above-captioned action.

*/s/ Wesley Mann*
Wesley Mann

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | : | Case No. 4:21-cv-02473 |

LEAD PLAINTIFFS' REQUESTS FOR ADMISSION DIRECTED TO DEFENDANT C. WILLIAM GIRAUD

Lead Plaintiffs Utah Retirement Systems and Construction Laborers Pension Trust for Southern California ("Lead Plaintiffs"), by and through their counsel, serve this request for admissions ("RFAs" or "Requests") on Defendant C. William Giraud ("Giraud"), as authorized by Federal Rules of Civil Procedure 26 and 36.

Giraud must serve a response to each Request separately and fully, in writing and under oath, 30 days after service.

## I. DEFINITIONS

1. "Action" refers to the above-captioned lawsuit.

2. "All" shall include the term "each" and vice-versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

3. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

4. "Communication" or "Communicate" refers to any exchange of information, words, numbers, pictures, charts, studies, or graphs by any means of transmission, sending, or receipt of information of any kind by or through any means including, but not limited to, personal delivery, speech, writings, documents (as defined herein), language (machine, foreign, or otherwise) of any kind, computer electronics or electronically-stored information, sound, radio or video signals, telecommunication, telephone, facsimile, text message, mail, film, photographic film of all types, or other media of any kind. The term "Communication" also includes, without limitation, all inquiries, discussions, conversations, correspondence, negotiations, agreements,

presentations, understandings, meetings, notices, requests, responses, demands, complaints, press, publicity, or trade releases.

5. "Complaint" refers to the Consolidated Complaint for Violations of the Federal Securities Laws filed in this Action on January 7, 2022, ECF No. 25.

6. "Concerning" means relating to, referring to, describing, evidencing or constituting.

7. "Concho" refers to Defendant Concho Resources Inc., and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, employees, agents, representatives, members of its board of directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

8. "ConocoPhillips" refers to Defendant ConocoPhillips and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, employees, agents, representatives, members of its board of directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

9. "Defendants" means Concho, ConocoPhillips, and the Individual Defendants.

10. "Device" means, including, but not limited to, a cellular phone, tablet, computer, laptop, etc.

11. "Document" is intended to have the broadest possible meaning under Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, electronic or computerized data compilations, electronic file backup tapes, hard drives and images of hard drives, all drafts, communications, correspondence, memoranda, records, presentations, books,

manuals, reports and recordings of telephone conversations, telephone logs, statements, summaries, notes, transcripts, opinions, agreements, ledgers, journals records of accounts, checks, summary of accounts, spreadsheets, databases, receipts, balance sheets, income statements, confirmation slips, questionnaires, desk calendars, appointment books, diaries, journals, graphs, test results, blogs, charts, data, files, log files of computer access and activity, and all of the records kept by electronic, photographic, optical, mechanical, magnetic means and things similar to any of the foregoing, including computer media, regardless of their author, transcripts of testimony, subpoenas, and any paper or writing of whatever description, including any computer database or information contained in any computer although not yet printed out. A draft or nonidentical copy of any document is a separate document within the meaning of this term.

12. "Individual Defendants" means Timothy Leach, Jack F. Harper, and William Giraud.

13. "Parties" means Plaintiffs and Defendants.

14. "Person" or "Persons" includes any natural person, firm, association, organization, partnership, limited partnership, sole proprietorship, trust, corporation, or legal or governmental entity, association, or body.

15. "Plaintiffs" means Utah Retirement Systems and Construction Laborers Pension Trust for Southern California.

16. "Refer" or "relate" or "referring" or "relating" means all documents that explicitly or implicitly, in whole or in part, were received in conjunction with or were generated as a result of, the subject matter of the request, including, but not limited to, all documents that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

17. "Well Interference" as used herein shall be given its broadest possible meaning and shall include any indication based on drilling, geological testing, production rate, gas-oil ratio, water-oil ratio, sand production, decline rate, bottom-hole pressure decline rate, production differences between interior and exterior wells, production differences between wells that begin producing earlier and wells that begin producing later, or any other metric tracked by Concho that suggests interference between any well in a project and any other well, including parent wells, child wells, offset wells, or simultaneously producing wells. Well interference shall be broadly defined to include any qualitative or quantitative evidence—whether geological, geophysical, petrophysical, geo-mechanical, reservoir, production, or anecdotal—suggesting pressure or fluid communication between wells within a project area. This encompasses both vertical and horizontal communication through natural or induced fractures, pressure depletion, fluid migration, or any other mechanism affecting well performance, including compromised or reduced well productivity, estimated ultimate recovery (EUR), or other adverse production impacts, regardless of whether the evidence is direct or inferred.

18. "You" and "Your" refers to Defendant Giraud, including, without limitation, any representatives, agents, and all other persons acting or purporting to act on behalf of the foregoing.

19. "Text Message" means any written communication sent or received from a device (including, but not limited to, a cellular phone, tablet, computer, and other similar devices), and includes, without limitation, SMS messages, MMS messages, WhatsApp messages, BlackBerry messages, Apple iMessages, and any other message sent through an application on any such mobile device.

## II. INSTRUCTIONS

1. The scope of discovery for these RFAs is governed by Rule 26(b)(1) and 36(a)(1). These RFAs may be used to request that You admit the truth of matters relating to (1) facts, the application of law to facts, or opinions about either, and (2) the genuineness of any described documents.

2. You are required to respond to the RFAs based upon all information that is available to You, including information in the possession of Your attorneys, agents, or others under Your possession, custody, or control and not merely information known by virtue of Your own personal knowledge.

3. In response to each RFA, You must specifically admit or deny the matter or set forth in detail the reasons why You cannot truthfully admit or deny the matter.

4. If You deny any part of an RFA, the denial must fairly meet the substance of the request. If You qualify an answer or deny only part of the matter for which an admission is requested, You must specifically admit so much of it as is true. Compound requests that are capable of separation into distinct components and that follow a logical or chronological order should be denied or admitted in sequence with appropriate designation or qualification. *See People's Capital & Leasing Corp., v. McClung*, No. 5:17-CV-484-OLG, 2017 WL 8181529, at *2 (W.D. Tex. Sept. 22, 2017); *see also Matter of AET, Inc., Ltd.*, No. 1:10-CV-51, 2018 WL 4201264, at *7 (E.D. Tex. June 8, 2018); *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 426 (N.D. Tex. 2021).

5. You may not object to a request simply because You consider the matter requested to be a genuine issue for trial. You must deny the matter or set forth specific reasons why You cannot admit or deny it.

6. A denial coupled with a general objection will constitute an admission.

7. If You claim a lack of information or knowledge as a reason for failure to admit or deny an RFA, state whether You have made reasonable inquiry and that the information known or readily obtainable by You is insufficient to enable You to admit or deny.

8. These RFAs are continuing in nature and shall be deemed subject to the duty to supplement as set forth in the Federal Rules of Civil Procedure, and You shall be obligated to change, supplement, and correct Your answers to conform to all available information, including such information as becomes available to You after Your answers hereto are served.

9. If You claim any sort of privilege or immunity, whether based on statute or otherwise, as a basis for not answering all or part of an RFA, state the following: (a) the date of the purportedly protected information; (b) the names, the present or last known home and business addresses, the telephone numbers, and email address of those individuals who prepared, produced, reproduced or were recipients of said information, or were a speaker of or listener to an oral communication; (c) a description of the subject matter sufficient to identify it without revealing the information for which the privilege or other protection is claimed; and (d) each and every fact or basis upon which You claim any such privilege or other protection.

10. Whenever appropriate, the singular form of a word shall be interpreted to encompass the plural form or vice versa and verb tenses shall be interpreted to include past, present and future tenses. The words "any" and "all" mean "any and all." The word "including" means "including but not limited to," "including without limitation," or "including, for the avoidance of doubt." Unless specifically defined herein, all words and terms used herein shall be construed and interpreted according to ordinary custom, usage, and meaning.

11. If You are unable to fully respond to any RFA, supply the information that is available and explain why Your response is incomplete, the efforts made by You to obtain responsive information, and the source from which all responsive information may be obtained, to the best of Your knowledge or belief.

12. For any request that contains subparts, each subpart shall be either admitted, denied, or given such other response as if it were a standalone RFA.

13. Each matter to which an admission is requested is admitted unless, no later than thirty (30) days after service, You serve upon Lead Plaintiffs' counsel a written answer or objection addressed to each Request separately, signed by You or Your counsel, under oath.

14. These Instructions and the Requests do not require or demand that You set forth the basis for Your denials, if any.

15. All defined terms shall have the definitions provided herein whether or not capitalized.

16. The use of the singular form of any word includes the plural and vice versa.

17. The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

18. Unless given a prescribed definition herein, each word or term used shall be construed according to its usual and customary dictionary definition.

19. Unless otherwise stated, the "Relevant Time Period" for these Requests is January 1, 2017 through February 28, 2020.

## III. REQUESTS FOR ADMISSION

**Request No. 1**

Admit that you had direct and supervisory involvement in the day-to-day operations of the Concho during the Relevant Time Period.

**Request No. 2**

Admit that You used Text messages to communicate about:

a. work with colleagues;

b. well spacing;

c. production forecasts;

d. risk-adjusted production forecasts;

e. the Dominator;

f. Large-Scale Development Project; and/or

g. Well Interference for any Large-Scale Development Project.

**Request No. 3**

Admit that You received a litigation hold:

a. for this action in 2019;

b. related to the facts underlying this action in 2019;

c. for this action in 2020;

d. related to the facts underlying this action in 2020;

e. for this action in 2021;

f. related to the facts underlying this action in 2021

g. for this action in 2022;

h. related to the facts underlying this action in 2022;

i. unrelated to this action in 2019;

j. unrelated to this action in 2020;

k. unrelated to this action in 2021; and/or

l. unrelated to this action in 2022.

**Request No. 4**

Admit that You did not preserve all text messages from Your Devices dated January 1, 2017 to February 28, 2020.

**Request No. 5**

Admit that text messages from Your Devices dated from January 1, 2017 through February 28, 2020, have been permanently deleted and/or destroyed.

**Request No. 6**

Admit that You failed to turn off any and all automatic deletion function(s) on Your Devices specific to text messages following receipt of any litigation hold notice that You received concerning this action, the facts underlying this action, or unrelated litigation before January 1, 2022.

**Request No. 7**

Admit that You were aware of the risk of litigation and/or actual litigation concerning any of the allegations in the Complaint by the end of:

a. July 2019;

b. August 2019;

c. September 2019;

d. October 2019;

e. November 2019;

f. December 2019;

g. January 2020;

h. February 2020;

i. March 2020;

j. April 2020;

k. May 2020;

l. June 2020;

m. July 2020;

n. August 2020;

o. September 2020;

p. October 2020;

q. November 2020;

r. December 2020;

s. January 2021;

t. February 2021;

u. March 2021;

v. April 2021;

w. May 2021;

x. June 2021;

y. July 2021; and/or

z. August 2021.

**Request No. 8**

Admit that the litigation hold notices concerning unrelated litigation that You received from Concho before the date of these RFAs included instructions to preserve Documents and Communications on Your Devices.

**Request No. 9**

Admit that Concho took steps to preserve Documents and Communications on Your Devices in connection with unrelated litigation before the date of these RFAs.

**Request No. 10**

For the statement You signed that is identified in paragraph 180 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 11**

For the statement You signed that is identified in paragraph 182 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 12**

For the statement You made that is identified in paragraph 223 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 13**

For the statement You made that is identified in paragraph 224 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 14**

For the statement You made that is identified in paragraph 225 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 15**

For the statement You made that is identified in paragraph 231 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 16**

For the statement You made that is identified in paragraph 238 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 17**

For the statement You made that is identified in paragraph 259 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 18**

For the statement You made that is identified in paragraph 262 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 19**

For the statement You made that is identified in paragraph 294 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 20**

Admit that you met regularly with:

a. Clay Bateman;

b. Keith Corbett;

c. Chris Spies;

d. Brenda Schroer;

e. Beth Harrison;

f. Concho's Vice President of the Delaware Basin;

g. Concho's Vice President of the Midland Basin; and/or

h. Megan Hays.

**Request No. 21**

Admit that you attended an emergency meeting to discuss the Dominator project in:

a. March 2019; and/or

b. April 2019.

**Request No. 22**

Admit that you reviewed and approved Concho's:

a. April 2018 Operating Plan;

b. MY 2018 Operating Plan;

c. November 2018 Operating Plan;

d. YE 2018 Operating Plan;

e. February 2019 Operating Plan;

f. April 2019 Operating Plan; and/or

g. MY 2019 Operating Plan.

**Request No. 23**

Regarding "Weekly Dashboard, CXO Capital Mkts Weekly" document(s) (e.g. Bates No. WARCOP01946992), admit that you:

a. received it on a weekly basis;

b. reviewed it on a weekly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 24**

Regarding "Daily Stats" document(s) (e.g. Bates No. WARCOP02057678), admit that you:

a. received it on a daily basis;

b. reviewed it on a daily basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 25**

Regarding "Pad Project Updates" document(s) (e.g. Bates No. WARCOP01957785 - 7786), admit that you:

a. received it on a weekly basis;

b. reviewed it on a weekly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 26**

Regarding "Weekly Rig Count Dashboard" document(s) (e.g. Bates No. WARCOP02052419 – 2420, WARCOP01960560), admit that you:

a. received it on a weekly basis;

b. reviewed it on a weekly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 27**

Regarding "Permian Basin Rig Map" document(s) (e.g. Bates No. WARCOP01773695 - 3697), admit that you:

a. received it on a weekly basis between June 2018 and October 2018;

b. reviewed it on a weekly basis between June 2018 and October 2018;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 28**

Regarding "Company Book & Company Flash Report" document(s) (e.g. Bates No. WARCOP01730715 – 0721, WARCOP02041107 – 1110), admit that you:

a. received it on a monthly basis;

b. reviewed it on a monthly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 29**

Regarding "Company and Team Graphs" document(s) (e.g. Bates No. WARCOP01742434 - 435), admit that you:

a. received it on a monthly basis;

b. reviewed it on a monthly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 30**

Regarding "Production Costs Graphs and Reports" document(s) (e.g. Bates No. WARCOP01763047 - 3054), admit that you:

a. received it on a monthly basis;

b. reviewed it on a monthly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 31**

Regarding "Production Highlights and Graphs" document(s) (e.g. Bates No. WARCOP01780494 - 0500), admit that you:

a. received it on a monthly basis;

b. reviewed it on a monthly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 32**

Regarding "Board Books" document(s) (e.g. Bates No. WARCOP02059358 - 9361), admit that you:

a. received it on a quarterly basis;

b. reviewed it on a quarterly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 33**

Regarding "Exploratory Well Analysis" document(s) (e.g. Bates No. WARCOP01844108 - 4109), admit that you:

a. received it on a quarterly basis;

b. reviewed it on a quarterly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 34**

Regarding "Operations Review/Ops Book" document(s) (e.g. Bates No. WARCOP01986601 - 6602), admit that you:

a. received it on a quarterly basis;

b. reviewed it on a quarterly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 35**

Regarding "Lunch and Learn / Plan Review" document(s) (e.g. Bates No. WARCOP01859829 – 9830, WARCOP02056109 - 6110), admit that you:

a. received it on a bi-annual basis;

b. reviewed it on a bi-annual basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 36**

Regarding "Semi-Annual Lease Expiration Review" document(s) (e.g. Bates No. WARCOP02162173 - 2181), admit that you:

a. received it on a bi-annual basis;

b. reviewed it on a bi-annual basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 37**

Regarding "Long-Term Strategy Presentations" document(s) (e.g. Bates No. WARCOP01993122 - 3124), admit that you:

a. received it on an annual basis;

b. reviewed it on an annual basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

DATED: March 14, 2025

Respectfully submitted,

*/s/ Joseph N. Cotilletta*

**LABATON SUCHAROW LLP**
Joseph N. Cotilletta (*pro hac vice*)
Beth C. Khinchuk (*pro hac vice*)
Rachel A. Berger (*pro hac vice*)
Wesley A. Mann (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jcotilletta@labaton.com
bkhinchuk@labaton.com
rberger@labaton.com
wmann@labaton.com

*Lead Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2025, a true and correct copy of the foregoing document was served by electronic mail to the designated counsel of record for Defendants in the above-captioned action.

*/s/ Wesley Mann*
Wesley Mann

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | x : : : : : : x | Case No. 4:21-cv-02473 |

LEAD PLAINTIFFS' REQUESTS FOR ADMISSION DIRECTED TO DEFENDANT JACK F. HARPER

Lead Plaintiffs Utah Retirement Systems and Construction Laborers Pension Trust for Southern California ("Lead Plaintiffs"), by and through their counsel, serve this request for admissions ("RFAs" or "Requests") on Defendant Jack F. Harper ("Harper"), as authorized by Federal Rules of Civil Procedure 26 and 36.

Harper must serve a response to each Request separately and fully, in writing and under oath, 30 days after service.

## I. DEFINITIONS

1. "Action" refers to the above-captioned lawsuit.

2. "All" shall include the term "each" and vice-versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

3. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

4. "Communication" or "Communicate" refers to any exchange of information, words, numbers, pictures, charts, studies, or graphs by any means of transmission, sending, or receipt of information of any kind by or through any means including, but not limited to, personal delivery, speech, writings, documents (as defined herein), language (machine, foreign, or otherwise) of any kind, computer electronics or electronically-stored information, sound, radio or video signals, telecommunication, telephone, facsimile, text message, mail, film, photographic film of all types, or other media of any kind. The term "Communication" also includes, without limitation, all inquiries, discussions, conversations, correspondence, negotiations, agreements,

presentations, understandings, meetings, notices, requests, responses, demands, complaints, press, publicity, or trade releases.

5. “Complaint” refers to the Consolidated Complaint for Violations of the Federal Securities Laws filed in this Action on January 7, 2022, ECF No. 25.

6. “Concerning” means relating to, referring to, describing, evidencing or constituting.

7. “Concho” refers to Defendant Concho Resources Inc., and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, employees, agents, representatives, members of its board of directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

8. “ConocoPhillips” refers to Defendant ConocoPhillips and any of its subsidiaries, divisions, or affiliates (foreign and domestic), predecessors, successors, and any present and former officers, directors, employees, agents, representatives, members of its board of directors, accountants, attorneys, advisors, and all other persons and agents acting or purporting to act on its behalf.

9. “Defendants” means Concho, ConocoPhillips, and the Individual Defendants.

10. “Device” means, including, but not limited to, a cellular phone, tablet, computer, laptop, etc.

11. “Document” is intended to have the broadest possible meaning under Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, electronic or computerized data compilations, electronic file backup tapes, hard drives and images of hard drives, all drafts, communications, correspondence, memoranda, records, presentations, books,

manuals, reports and recordings of telephone conversations, telephone logs, statements, summaries, notes, transcripts, opinions, agreements, ledgers, journals records of accounts, checks, summary of accounts, spreadsheets, databases, receipts, balance sheets, income statements, confirmation slips, questionnaires, desk calendars, appointment books, diaries, journals, graphs, test results, blogs, charts, data, files, log files of computer access and activity, and all of the records kept by electronic, photographic, optical, mechanical, magnetic means and things similar to any of the foregoing, including computer media, regardless of their author, transcripts of testimony, subpoenas, and any paper or writing of whatever description, including any computer database or information contained in any computer although not yet printed out. A draft or nonidentical copy of any document is a separate document within the meaning of this term.

12. "Individual Defendants" means Timothy Leach, Jack F. Harper, and William Giraud.

13. "Parties" means Plaintiffs and Defendants.

14. "Person" or "Persons" includes any natural person, firm, association, organization, partnership, limited partnership, sole proprietorship, trust, corporation, or legal or governmental entity, association, or body.

15. "Plaintiffs" means Utah Retirement Systems and Construction Laborers Pension Trust for Southern California.

16. "Refer" or "relate" or "referring" or "relating" means all documents that explicitly or implicitly, in whole or in part, were received in conjunction with or were generated as a result of, the subject matter of the request, including, but not limited to, all documents that reflect, record, memorialize, discuss, describe, compare, consider, concern, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon, or impact the subject matter of the request.

17. "Well Interference" as used herein shall be given its broadest possible meaning and shall include any indication based on drilling, geological testing, production rate, gas-oil ratio, water-oil ratio, sand production, decline rate, bottom-hole pressure decline rate, production differences between interior and exterior wells, production differences between wells that begin producing earlier and wells that begin producing later, or any other metric tracked by Concho that suggests interference between any well in a project and any other well, including parent wells, child wells, offset wells, or simultaneously producing wells. Well interference shall be broadly defined to include any qualitative or quantitative evidence—whether geological, geophysical, petrophysical, geo-mechanical, reservoir, production, or anecdotal—suggesting pressure or fluid communication between wells within a project area. This encompasses both vertical and horizontal communication through natural or induced fractures, pressure depletion, fluid migration, or any other mechanism affecting well performance, including compromised or reduced well productivity, estimated ultimate recovery (EUR), or other adverse production impacts, regardless of whether the evidence is direct or inferred.

18. "You" and "Your" refers to Defendant Harper, including, without limitation, any representatives, agents, and all other persons acting or purporting to act on behalf of the foregoing.

19. "Text Message" means any written communication sent or received from a device (including, but not limited to, a cellular phone, tablet, computer, and other similar devices), and includes, without limitation, SMS messages, MMS messages, WhatsApp messages, BlackBerry messages, Apple iMessages, and any other message sent through an application on any such mobile device.

## II. INSTRUCTIONS

1. The scope of discovery for these RFAs is governed by Rule 26(b)(1) and 36(a)(1). These RFAs may be used to request that You admit the truth of matters relating to (1) facts, the application of law to facts, or opinions about either, and (2) the genuineness of any described documents.

2. You are required to respond to the RFAs based upon all information that is available to You, including information in the possession of Your attorneys, agents, or others under Your possession, custody, or control and not merely information known by virtue of Your own personal knowledge.

3. In response to each RFA, You must specifically admit or deny the matter or set forth in detail the reasons why You cannot truthfully admit or deny the matter.

4. If You deny any part of an RFA, the denial must fairly meet the substance of the request. If You qualify an answer or deny only part of the matter for which an admission is requested, You must specifically admit so much of it as is true. Compound requests that are capable of separation into distinct components and that follow a logical or chronological order should be denied or admitted in sequence with appropriate designation or qualification. *See People's Capital & Leasing Corp., v. McClung*, No. 5:17-CV-484-OLG, 2017 WL 8181529, at *2 (W.D. Tex. Sept. 22, 2017); *see also Matter of AET, Inc., Ltd.*, No. 1:10-CV-51, 2018 WL 4201264, at *7 (E.D. Tex. June 8, 2018); *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 426 (N.D. Tex. 2021).

5. You may not object to a request simply because You consider the matter requested to be a genuine issue for trial. You must deny the matter or set forth specific reasons why You cannot admit or deny it.

6. A denial coupled with a general objection will constitute an admission.

7. If You claim a lack of information or knowledge as a reason for failure to admit or deny an RFA, state whether You have made reasonable inquiry and that the information known or readily obtainable by You is insufficient to enable You to admit or deny.

8. These RFAs are continuing in nature and shall be deemed subject to the duty to supplement as set forth in the Federal Rules of Civil Procedure, and You shall be obligated to change, supplement, and correct Your answers to conform to all available information, including such information as becomes available to You after Your answers hereto are served.

9. If You claim any sort of privilege or immunity, whether based on statute or otherwise, as a basis for not answering all or part of an RFA, state the following: (a) the date of the purportedly protected information; (b) the names, the present or last known home and business addresses, the telephone numbers, and email address of those individuals who prepared, produced, reproduced or were recipients of said information, or were a speaker of or listener to an oral communication; (c) a description of the subject matter sufficient to identify it without revealing the information for which the privilege or other protection is claimed; and (d) each and every fact or basis upon which You claim any such privilege or other protection.

10. Whenever appropriate, the singular form of a word shall be interpreted to encompass the plural form or vice versa and verb tenses shall be interpreted to include past, present and future tenses. The words "any" and "all" mean "any and all." The word "including" means "including but not limited to," "including without limitation," or "including, for the avoidance of doubt." Unless specifically defined herein, all words and terms used herein shall be construed and interpreted according to ordinary custom, usage, and meaning.

11. If You are unable to fully respond to any RFA, supply the information that is available and explain why Your response is incomplete, the efforts made by You to obtain

responsive information, and the source from which all responsive information may be obtained, to the best of Your knowledge or belief.

12. For any request that contains subparts, each subpart shall be either admitted, denied, or given such other response as if it were a standalone RFA.

13. Each matter to which an admission is requested is admitted unless, no later than thirty (30) days after service, You serve upon Lead Plaintiffs' counsel a written answer or objection addressed to each Request separately, signed by You or Your counsel, under oath.

14. These Instructions and the Requests do not require or demand that You set forth the basis for Your denials, if any.

15. All defined terms shall have the definitions provided herein whether or not capitalized.

16. The use of the singular form of any word includes the plural and vice versa.

17. The use of any tense of any verb shall also include within its meaning all other tenses of that verb.

18. Unless given a prescribed definition herein, each word or term used shall be construed according to its usual and customary dictionary definition.

19. Unless otherwise stated, the "Relevant Time Period" for these Requests is January 1, 2017 through February 28, 2020.

## III. REQUESTS FOR ADMISSION

**Request No. 1**

Admit that you had direct and supervisory involvement in the day-to-day operations of the Concho during the Relevant Time Period.

**Request No. 2**

Admit that You used Text messages to communicate about:

a. work with colleagues;

b. well spacing;

c. production forecasts;

d. risk-adjusted production forecasts;

e. the Dominator;

f. Large-Scale Development Project; and/or

g. Well Interference for any Large-Scale Development Project.

**Request No. 3**

Admit that You received a litigation hold:

a. for this action in 2019;

b. related to the facts underlying this action in 2019;

c. for this action in 2020;

d. related to the facts underlying this action in 2020;

e. for this action in 2021;

f. related to the facts underlying this action in 2021

g. for this action in 2022;

h. related to the facts underlying this action in 2022;

i. unrelated to this action in 2019;

j. unrelated to this action in 2020;

k. unrelated to this action in 2021; and/or

l. unrelated to this action in 2022.

**Request No. 4**

Admit that You did not preserve all text messages from Your Devices dated January 1, 2017 to February 28, 2020.

**Request No. 5**

Admit that text messages from Your Devices dated from January 1, 2017 through February 28, 2020, have been permanently deleted and/or destroyed.

**Request No. 6**

Admit that You failed to turn off any and all automatic deletion function(s) on Your Devices specific to text messages following receipt of any litigation hold notice that You received concerning this action, the facts underlying this action, or unrelated litigation before January 1, 2022.

**Request No. 7**

Admit that You were aware of the risk of litigation and/or actual litigation concerning any of the allegations in the Complaint by the end of:

a. July 2019;

b. August 2019;

c. September 2019;

d. October 2019;

e. November 2019;

f. December 2019;

g. January 2020;

h. February 2020;

i. March 2020;

j. April 2020;

k. May 2020;

l. June 2020;

m. July 2020;

n. August 2020;

o. September 2020;

p. October 2020;

q. November 2020;

r. December 2020;

s. January 2021;

t. February 2021;

u. March 2021;

v. April 2021;

w. May 2021;

x. June 2021;

y. July 2021; and/or

z. August 2021.

**Request No. 8**

Admit that the litigation hold notices concerning unrelated litigation that You received from Concho before the date of these RFAs included instructions to preserve Documents and Communications on Your Devices.

**Request No. 9**

Admit that Concho took steps to preserve Documents and Communications on Your Devices in connection with unrelated litigation before the date of these RFAs.

**Request No. 10**

For the statement You made that is identified in paragraph 185 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 11**

For the statement You made that is identified in paragraph 190 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 12**

For the statement You made that is identified in paragraph 193 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 13**

For the statement You made that is identified in paragraph 194 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 14**

For the statement You made that is identified in paragraph 197 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 15**

For the statement You made that is identified in paragraph 199 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 16**

For the statement You made that is identified in paragraph 201 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 17**

For the statement You made that is identified in paragraph 209 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 18**

For the statement You made that is identified in paragraph 237 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 19**

For the statement You made that is identified in paragraph 260 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 20**

For the statement You made that is identified in paragraph 275 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 21**

For the statement You made that is identified in paragraph 280 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 22**

For the statement You made that is identified in paragraph 283 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 23**

For the statement You made that is identified in paragraph 331 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 24**

For the statement You made that is identified in paragraph 332 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 25**

For the statement You made that is identified in paragraph 339 of the Complaint, admit that you did not review any documents:

a. as support for that statement;

b. as support for that statement before it was made on the day of the statement;

c. as support for that statement the day before You made that statement;

d. as support for that statement in the week leading up to You making that statement; and/or

e. as support for that statement in the month leading up to the day You made that statement.

**Request No. 26**

Admit that you met regularly with:

a. Clay Bateman;

b. Keith Corbett;

c. Chris Spies;

d. Brenda Schroer;

e. Beth Harrison;

f. Concho's Vice President of the Delaware Basin;

g. Concho's Vice President of the Midland Basin; and/or

h. Megan Hays.

**Request No. 27**

Admit that you attended an emergency meeting to discuss the Dominator project in:

a. March 2019; and/or

b. April 2019.

**Request No. 28**

Admit that you reviewed and approved Concho's:

a. April 2018 Operating Plan;

b. MY 2018 Operating Plan;

c. November 2018 Operating Plan;

d. YE 2018 Operating Plan;

e. February 2019 Operating Plan;

f. April 2019 Operating Plan; and/or

g. MY 2019 Operating Plan.

**Request No. 29**

Regarding "Weekly Dashboard, CXO Capital Mkts Weekly" document(s) (e.g. Bates No. WARCOP01946992), admit that you:

a. received it on a weekly basis;

b. reviewed it on a weekly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 30**

Regarding "Daily Stats" document(s) (e.g. Bates No. WARCOP02057678), admit that you:

a. received it on a daily basis;

b. reviewed it on a daily basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 31**

Regarding "Permian Basin Rig Map" document(s) (e.g. Bates No. WARCOP01773695 - 3697), admit that you:

a. received it on a weekly basis between June 2018 and October 2018;

b. reviewed it on a weekly basis between June 2018 and October 2018;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 32**

Regarding "Weekly Rig Count Dashboard" document(s) (e.g. Bates No. WARCOP02052419 - 2420), admit that you:

a. received it on a weekly basis;

b. reviewed it on a weekly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 33**

Regarding "Company Book & Company Flash Report" document(s) (e.g. Bates No. WARCOP01730715 – 0721, WARCOP02041107 – 1110), admit that you:

a. received it on a monthly basis;

b. reviewed it on a monthly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 34**

Regarding "Company and Team Graphs" document(s) (e.g. Bates No. WARCOP01742434 - 435), admit that you:

a. received it on a monthly basis;

b. reviewed it on a monthly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 35**

Regarding "Production Costs Graphs and Reports" document(s) (e.g. Bates No. WARCOP01763047 - 3054), admit that you:

a. received it on a monthly basis;

b. reviewed it on a monthly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 36**

Regarding "Production Highlights and Graphs" document(s) (e.g. Bates No. WARCOP01780494 - 0500), admit that you:

a. received it on a monthly basis;

b. reviewed it on a monthly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 37**

Regarding “Board Books” document(s) (e.g. Bates No. WARCOP02059358 - 9361), admit that you:

a. received it on a quarterly basis;

b. reviewed it on a quarterly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 38**

Regarding "Exploratory Well Analysis" document(s) (e.g. Bates No. WARCOP01844108 - 4109), admit that you:

a. received it on a quarterly basis;

b. reviewed it on a quarterly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 39**

Regarding "Operations Review/Ops Book" document(s) (e.g. Bates No. WARCOP02791151- 1152, WARCOP01788790 - 8791), admit that you:

a. received it on a quarterly basis;

b. reviewed it on a quarterly basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 40**

Regarding "Lunch and Learn / Plan Review" document(s) (e.g. Bates No. WARCOP01859829 – 9830, WARCOP02056109 - 6110), admit that you:

a. received it on a bi-annual basis;

b. reviewed it on a bi-annual basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 41**

Regarding "Semi-Annual Lease Expiration Review" document(s) (e.g. Bates No. WARCOP02162173 - 2181), admit that you:

a. received it on a bi-annual basis;

b. reviewed it on a bi-annual basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

**Request No. 42**

Regarding "Strategy Meeting Long-Term Plan Review Presentation" document(s) (e.g. Bates No. WARCOP01993122 - 3124), admit that you:

a. received it on an annual basis;

b. reviewed it on an annual basis;

c. asked questions regarding it prior to March 31, 2019;

d. asked questions regarding it prior to April 30, 2019;

e. discussed it with others prior to March 31, 2019;

f. discussed it with others prior to April 30, 2019;

g. raised concerns about it prior to March 31, 2019;

h. raised concerns about it prior to April 30, 2019;

i. addressed concerns about it prior to March 31, 2019; and/or

j. addressed concerns about it prior to April 30, 2019.

DATED: March 14, 2025

Respectfully submitted,

*/s/ Joseph N. Cotilletta*

**LABATON SUCHAROW LLP**
Joseph N. Cotilletta (*pro hac vice*)
Beth C. Khinchuk (*pro hac vice*)
Rachel A. Berger (*pro hac vice*)
Wesley A. Mann (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jcotilletta@labaton.com
bkhinchuk@labaton.com
rberger@labaton.com
wmann@labaton.com

*Lead Counsel for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2025, a true and correct copy of the foregoing document was served by electronic mail to the designated counsel of record for Defendants in the above-captioned action.

*/s/ Wesley Mann*
Wesley Mann

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Civil Action No. 4:21-cv-02473<br><br>CLASS ACTION |

**DEFENDANT CONCHO RESOURCES INC.'S OBJECTIONS AND RESPONSES TO LEAD PLAINTIFFS' REQUESTS FOR ADMISSIONS**

TO: Lead Plaintiffs Utah Retirement Systems and Construction Laborers Pension Trust for Southern California, by and through their counsel of record, Alfred L. Fatale III and Charles Wood, Labaton Sucharow LLP, 140 Broadway, New York, NY 10005

Defendant Concho Resources Inc. ("Concho") serves its Objections and Responses to Lead Plaintiffs Construction Laborers Pension Trust for Southern California and Utah Retirement Systems' ("Lead Plaintiffs") Requests for Admission Directed to Defendant Concho Resources Inc.

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ David D. Sterling*
David D. Sterling
Attorney-In-Charge
State Bar No. 19170000
Federal I.D. No. 07079
Amy Pharr Hefley
State Bar No. 24046046
Anthony J. Lucisano
State Bar No. 24102118
Federal I.D. No. 3369146
C. Frank Mace
State Bar No. 24110609
Federal I.D. No. 3385915
910 Louisiana Street
Houston, Texas 77002
(713) 229-1946
(713) 229-7946 (Fax)
david.sterling@bakerbotts.com
amy.hefley@bakerbotts.com
anthony.lucisano@bakerbotts.com
frank.mace@bakerbotts.com

ATTORNEYS FOR DEFENDANTS
CONCHO RESOURCES INC., CONOCOPHILLIPS,
AS SUCCESSOR IN INTEREST TO CONCHO
RESOURCES INC., TIMOTHY LEACH,
JACK F. HARPER, AND C. WILLIAM GIRAUD

**CERTIFICATE OF SERVICE**

I certify that on April 14, 2025, a true and correct copy of the foregoing was served by electronic mail to all counsel of record.

*/s/ Anthony J. Lucisano*
Anthony J. Lucisano

## PRELIMINARY STATEMENT AND OBJECTION

Concho's responses and objections to the Admissions (the "Responses") reflect Concho's continuing investigation of facts and discovery of information related to the claims and defenses at issue in this litigation. Because discovery in this matter is ongoing, Concho has not yet concluded his investigation and discovery in this case. Concho expressly reserves the right to modify or supplement any and all of the Responses herein, and to assert additional objections to these Admissions as necessary or appropriate.

## GENERAL OBJECTIONS

1. Concho incorporates by reference, as if fully set out herein, its general objections to the definitions and instructions in Lead Plaintiffs' Requests for Admission to Concho, which are set out in full in Concho's Answers and Objections to Lead Plaintiffs' First Set of Interrogatories Directed to Defendant Jack F. Harper, served October 21, 2024 (the "Interrogatory Responses") and in Defendants' Objections And Responses To Plaintiffs' First Requests For Production Of Documents, served November 27, 2023.

2. Nothing in these Responses is intended to adopt, acquiesce in, or otherwise accept Plaintiffs' description or characterization of the facts, circumstances, subject matter, and events described in the definitions, instructions, and Admissions.

3. Concho objects to the Admissions to the extent they seek to impose obligations on Concho that exceed those imposed by the Federal Rules of Civil Procedure and the rules of this Court. Concho will respond to the Admissions in conformity with applicable rules and orders and not in accordance with the instructions, definitions, or other statements in the Admissions.

4. Concho objects to the Admissions to the extent they seek admissions regarding information not within Concho's possession, custody, or control. Concho will only respond based on information within its possession, custody, or control.

5. Concho objects to the Admissions to the extent they would be unduly burdensome or would require efforts not proportionate to the needs of the case to respond to.

6. Concho reserves its right to correct, clarify, supplement, or amend these responses, or supply additional or different information to that contained in these responses, if and when it obtains other or more accurate information. Concho assumes no duty to supplement these Responses, however, except to the extent required by the Federal Rules.

7. Concho objects to the time periods set forth in certain of the Admissions because they encompass time periods not relevant to Plaintiffs' claims. For the purposes of the Responses, unless otherwise noted, Concho will consider the time period applicable to the Admissions January 1, 2017 through February 28, 2020.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

8. Concho objects to the definition of "Text Message" as ambiguous, overly broad, and unduly burdensome, as it includes any written communications sent or received from a device, which would include emails and other communications that are plainly not text messages. Concho will interpret the phrase "text message" to have its ordinary meaning.

9. Concho objects to the definition of "Well Interference" as vague, ambiguous, overly broad, and unduly burdensome.

10. Concho objects to Instruction 29 as a strained mischaracterization of what a general objection and/or a denial is. Concho's denials herein, whether or not coupled with an objection in any form, shall constitute denials.

11. Concho objects to Instruction 32 as unduly burdensome and as requesting information that is subject to the attorney-client privilege and/or work product protection.

12. Concho objects to Instruction 36 because, in purporting to demand a response under oath, it is inconsistent with, and purports to impose obligations that exceed those set forth in, the Federal Rules of Civil Procedure, including without limitation Rule 36.

## RESPONSES TO REQUESTS FOR ADMISSION

**RFAs Relating Only to the Brass Monkey Project**

1. Admit that the following tests were used on the Brass Monkey project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov.*

*Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

2. Admit that data collected from testing the Brass Monkey project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17,

2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

3. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Brass Monkey project indicating there was well interference from one or more tests admitted in RFA No. 1:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's

incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 1 for the reasons stated in its response to that Request, denied.

4. Admit that the following reports were issued for the Brass Monkey project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds,* 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have

consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits that it has located WARCOP02294680 in the document production, but because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

5. To the extent any aspect of RFA No. 4 is admitted, admit that the applicable reports generated for the Brass Monkey project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is

not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts it incorporates during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

6. To the extent any aspect of RFA Nos. 4 and 5 are admitted, admit that the applicable reports generated for the Brass Monkey project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not that there was some indication of well interference, was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2

(S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

7. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Brass Monkey project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the

requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

8. Admit that all risking applied to the Brass Monkey project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further

objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

9. Admit that You revised at least one production forecast for the Brass Monkey project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time

and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

10. To the extent you admitted to anything in RFA No. 9, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 9. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "well interference affecting production," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Because Concho does not admit the predicate Request 9, denied.

**RFAs Relating Only to the Columbus Project**

11. Admit that the following tests were used on the Columbus project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are

abusive, unreasonable, and oppressive.”); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) (“To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome.”); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) (“RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not “tests” as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

12. Admit that data collected from testing the Columbus project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because “it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome.” Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) (“RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's

incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

13. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Columbus project indicating there was well interference from one or more tests admitted in RFA No. 11:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is

impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 11 for the reasons stated in its response to that Request, denied.

14. Admit that the following reports were issued for the Columbus project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain

through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request

15. To the extent any aspect of RFA No. 14 is admitted, admit that the applicable reports generated for the Columbus project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 14 for the reasons stated in its response to that Request, denied.

16. To the extent any aspect of RFA Nos. 14 and 15 are admitted, admit that the applicable reports generated for the Columbus project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Requests 14 and 15 for the reasons stated in its response to those Requests, denied.

17. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Columbus project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further

objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

18. Admit that all risking applied to the Columbus project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with

respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

19. Admit that You revised at least one production forecast for the Columbus project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any

specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

20. To the extent you admitted to anything in RFA No. 19, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 19. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define “well interference affecting production,” and its general definition of “well interference” is hopelessly overbroad, incomprehensible, and unduly burdensome. Because Concho does not admit the predicate Request 19, denied.

**<u>RFAs Relating Only to the Dominator Project</u>**

21. Admit that the following tests were used on the Dominator project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many

of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

22. Admit that data collected from testing the Dominator project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have

consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

23. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Dominator project indicating there was well interference from one or more tests admitted in RFA No. 21:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 1 for the reasons stated in its response to that Request, denied.

24. Admit that the following reports were issued for the Dominator project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits that it has located WARCOP01873150 in the document production, but because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

25. To the extent any aspect of RFA No. 24 is admitted, admit that the applicable reports generated for the Dominator project at some point between January 1, 2017 and July 31,

2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts it incorporates during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

26. To the extent any aspect of RFA Nos. 24 and 25 are admitted, admit that the applicable reports generated for the Dominator project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Shorter v. Baca,* 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

27. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Dominator project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further

objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

28. Admit that all risking applied to the Dominator project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca,* 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with

respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

29. Admit that You revised at least one production forecast for the Dominator project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any

specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Subject to and without waiving the foregoing objections, Concho admits that as reflected in WARCOP01981552, on April 9, 2019, Michael Burkard input into Aries an updated forecast for the Dominator project that, based on the latest production data, reflected a reduction in the project’s forecasted production, which forecast was incorporated into Concho’s Q2 2019 company-wide production guidance, but the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts.

30. To the extent you admitted to anything in RFA No. 29, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 29. Concho further objects to this Request because it is vague and ambiguous, including because it does not define “related to well interference affecting production.”

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer, Concho cannot admit or deny this Request.

**<u>RFAs Relating Only to the Eider Project</u>**

31. Admit that the following tests were used on the Eider project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos

testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

32. Admit that data collected from testing the Eider project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery

device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

33. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Eider project indicating there was well interference from one or more tests admitted in RFA No. 31:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions

as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 31 for the reasons stated in its response to that Request, denied.

34. Admit that the following reports were issued for the Eider project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits that it has located WARCOP01777322 in the document production, but because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

35. To the extent any aspect of RFA No. 34 is admitted, admit that the applicable reports generated for the Eider project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with

respect to each of the undefined 21 subparts it incorporates during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

36. To the extent any aspect of RFA Nos. 34 and 35 are admitted, admit that the applicable reports generated for the Eider project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain

is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

37. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Eider project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration

from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define “some indication of well interference” and “accounted for,” and its general definition of “well interference” is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

38. Admit that all risking applied to the Eider project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

39. Admit that You revised at least one production forecast for the Eider project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014

WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Subject to and without waiving the foregoing objections, Concho admits that as reflected in WARCOP01981552, on April 9, 2019, Michael Burkard input into Aries an updated forecast for the Eider project that, based on the latest production data, reflected a reduction in the project's forecasted production, which forecast was incorporated into Concho's Q2 2019 company-wide production guidance, but the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts.

40. To the extent you admitted to anything in RFA No. 39, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 39. Concho further objects to this Request because it is vague and ambiguous, including because it does not define "related to well interference affecting production."

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer, Concho cannot admit or deny this Request.

**RFAs Relating Only to the Funky Boss/Whatcha Want Project**

41. Admit that the following tests were used on the Funky Boss/Whatcha Want project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are

abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

42. Admit that data collected from testing the Funky Boss/Whatcha Want project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's

incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

43. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Funky Boss/Whatcha Want project indicating there was well interference from one or more tests admitted in RFA No. 41:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is

impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 41 for the reasons stated in its response to that Request, denied.

44. Admit that the following reports were issued for the Funky Boss/Whatcha Want project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits that it has located WARCOP01775952 in the document production, but because Concho cannot accurately respond to this Request without clarity as to Lead

Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

45. To the extent any aspect of RFA No. 44 is admitted, admit that the applicable reports generated for the Funky Boss/Whatcha Want project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts it incorporates during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

46. To the extent any aspect of RFA Nos. 44 and 45 are admitted, admit that the applicable reports generated for the Funky Boss/Whatcha Want project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

47. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Funky Boss/Whatcha Want project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec.*

*Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

48. Admit that all risking applied to the Funky Boss/Whatcha Want project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding

the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

49. Admit that You revised at least one production forecast for the Funky Boss/Whatcha Want project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov.*

*Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

50. To the extent you admitted to anything in RFA No. 49, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 49. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "well interference affecting production," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Because Concho does not admit the predicate Request 49, denied.

**RFAs Relating Only to the Gettysburg Project**

51. Admit that the following tests were used on the Gettysburg project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are

abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

52. Admit that data collected from testing the Gettysburg project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's

incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

53. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Gettysburg project indicating there was well interference from one or more tests admitted in RFA No. 51:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is

impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 51 for the reasons stated in its response to that Request, denied.

54. Admit that the following reports were issued for the Gettysburg project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain

through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

55. To the extent any aspect of RFA No. 54 is admitted, admit that the applicable reports generated for the Gettysburg project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because “it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome.” Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) (“Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive.”); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) (“Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive.”); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) (“To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome.”); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) (“RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the “reports” at issue, nor does this Request specify the “data” at issue or define “some indication of well interference.” Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 54 for the reasons stated in its response to that Request, denied.

56. To the extent any aspect of RFA Nos. 54 and 55 are admitted, admit that the applicable reports generated for the Gettysburg project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Requests 54 and 55 for the reasons stated in its response to those Requests, denied.

57. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Gettysburg project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further

objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

58. Admit that all risking applied to the Gettysburg project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with

respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

59. Admit that You revised at least one production forecast for the Gettysburg project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any

specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits there was a revision as reflected on WARCOP02009977 at the time that document was put together, but because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

60. To the extent you admitted to anything in RFA No. 59, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because “it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome.” Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) (“Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive.”); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) (“Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive.”); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) (“To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome.”); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) (“RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal

and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define “well interference affecting production,” and its general definition of “well interference” is hopelessly broad and incomprehensible. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts it incorporates during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

**RFAs Relating Only to the Grissom Project**

61. Admit that the following tests were used on the Grissom project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with

respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

62. Admit that data collected from testing the Grissom project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

63. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Grissom project indicating there was well interference from one or more tests admitted in RFA No. 61:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 61 for the reasons stated in its response to that Request, denied.

64. Admit that the following reports were issued for the Grissom project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the

requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

65. To the extent any aspect of RFA No. 64 is admitted, admit that the applicable reports generated for the Grissom project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige*

*Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 64 for the reasons stated in its response to that Request, denied.

66. To the extent any aspect of RFA Nos. 64 and 65 are admitted, admit that the applicable reports generated for the Grissom project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Requests 64 and 65 for the reasons stated in its response to those Requests, denied.

67. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Grissom project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with

respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

68. Admit that all risking applied to the Grissom project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it

cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca,* 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

69. Admit that You revised at least one production forecast for the Grissom project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits there was a revision as reflected on WARCOP02009977 at the time that document was put together, but because Concho cannot accurately respond to this

Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

70. To the extent you admitted to anything in RFA No. 69, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "well interference affecting production," and its general definition of "well interference" is hopelessly broad and incomprehensible. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts it incorporates during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

**RFAs Relating Only to the Jack Project**

71. Admit that the following tests were used on the Jack project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee

> Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).
>
> Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

72. Admit that data collected from testing the Jack project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

> Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute

and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

73. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Jack project indicating there was well interference from one or more tests admitted in RFA No. 71:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014)

("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 71 for the reasons stated in its response to that Request, denied.

74. Admit that the following reports were issued for the Jack project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery

device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits that it has located WARCOP01776536 in the document production, but because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

75. To the extent any aspect of RFA No. 74 is admitted, admit that the applicable reports generated for the Jack project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to

this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts it incorporates during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

76. To the extent any aspect of RFA Nos. 74 and 75 are admitted, admit that the applicable reports generated for the Jack project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad,

incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

77. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Jack project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of

identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

78. Admit that all risking applied to the Jack project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any

specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define “all risking” or “risk adjustments.” Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

79. Admit that You revised at least one production forecast for the Jack project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits there was a revision as reflected on WARCOP02009977 at the time that document was put together, but because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

80. To the extent you admitted to anything in RFA No. 79, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "well interference affecting production," and its general definition of "well interference" is hopelessly broad and incomprehensible. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.,* 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts it incorporates during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

**RFAs Relating Only to the Mabee 240A Project**

81. Admit that the following tests were used on the Mabee 240A project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are

abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

82. Admit that data collected from testing the Mabee 240A project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's

incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the “data” about which it inquires or define “indication of well interference,” and its general definition of “well interference” is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

83. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Mabee 240A project indicating there was well interference from one or more tests admitted in RFA No. 81:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because “it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome.” Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) (“RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is

impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 81 for the reasons stated in its response to that Request, denied.

84. Admit that the following reports were issued for the Mabee 240A project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits that it has located WARCOP01775956 in the document production, but because Concho cannot accurately respond to this Request without clarity as to Lead

Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

85. To the extent any aspect of RFA No. 84 is admitted, admit that the applicable reports generated for the Mabee 240A project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts it incorporates during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

86. To the extent any aspect of RFA Nos. 84 and 85 are admitted, admit that the applicable reports generated for the Mabee 240A project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

87. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Mabee 240A project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014

WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

88. Admit that all risking applied to the Mabee 240A project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the

proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

89. Admit that You revised at least one production forecast for the Mabee 240A project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are

abusive, unreasonable, and oppressive.”); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) (“To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome.”); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) (“RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

90. To the extent you admitted to anything in RFA No. 89, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 89. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define “well interference affecting production,” and its general definition of “well interference” is hopelessly overbroad, incomprehensible, and unduly burdensome. Because Concho does not admit the predicate Request 89, denied.

**<u>RFAs Relating Only to the Mabee 240C Project</u>**

91. Admit that the following tests were used on the Mabee 240C project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal

and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not “tests” as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

92. Admit that data collected from testing the Mabee 240C project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because “it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome.” Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) (“RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the “data” about which it inquires or define “indication of well interference,” and its general definition of “well interference” is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies

the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

93. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Mabee 240C project indicating there was well interference from one or more tests admitted in RFA No. 91:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery

device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 91 for the reasons stated in its response to that Request, denied.

94. Admit that the following reports were issued for the Mabee 240C project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

95. To the extent any aspect of RFA No. 94 is admitted, admit that the applicable reports generated for the Mabee 240C project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 94 for the reasons stated in its response to that Request, denied.

96. To the extent any aspect of RFA Nos. 94 and 95 are admitted, admit that the applicable reports generated for the Mabee 240C project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Requests 94 and 95 for the reasons stated in its response to those Requests, denied.

97. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Mabee 240C project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further

objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

98. Admit that all risking applied to the Mabee 240C project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with

respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

99. Admit that You revised at least one production forecast for the Mabee 240C project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any

specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits there was a revision as reflected on WARCOP02009977 at the time that document was put together, but because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

100. To the extent you admitted to anything in RFA No. 99, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because “it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome.” Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) (“Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive.”); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) (“Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive.”); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) (“To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome.”); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) (“RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal

and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define “well interference affecting production,” and its general definition of “well interference” is hopelessly broad and incomprehensible. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts it incorporates during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

**RFAs Relating Only to the Marion Benge Project**

101. Admit that the following tests were used on the Marion Benge project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with

respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

102. Admit that data collected from testing the Marion Benge project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

103. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Marion Benge project indicating there was well interference from one or more tests admitted in RFA No. 101:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 101 for the reasons stated in its response to that Request, denied.

104. Admit that the following reports were issued for the Marion Benge project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the

requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits that it has located WARCOP01800044 in the document production, but because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

105. To the extent any aspect of RFA No. 104 is admitted, admit that the applicable reports generated for the Marion Benge project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee

Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts it incorporates during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

106. To the extent any aspect of RFA Nos. 104 and 105 are admitted, admit that the applicable reports generated for the Marion Benge project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

107. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Marion Benge project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

108. Admit that all risking applied to the Marion Benge project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

109. Admit that You revised at least one production forecast for the Marion Benge project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the

rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

110. To the extent you admitted to anything in RFA No. 109, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 109. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "well interference affecting production," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Because Concho does not admit the predicate Request 109, denied.

**RFAs Relating Only to the Tempest Project**

111. Admit that the following tests were used on the Tempest project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

112. Admit that data collected from testing the Tempest project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

113. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Tempest project indicating there was well interference from one or more tests admitted in RFA No. 111:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 111 for the reasons stated in its response to that Request, denied

114. Admit that the following reports were issued for the Tempest project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the

requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits that it has located WARCOP02025988 in the document production, but because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

115. To the extent any aspect of RFA No. 114 is admitted, admit that the applicable reports generated for the Tempest project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee

Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts it incorporates during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

116. To the extent any aspect of RFA Nos. 114 and 115 are admitted, admit that the applicable reports generated for the Tempest project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

117. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Tempest project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

118. Admit that all risking applied to the Tempest project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

119. Admit that You revised at least one production forecast for the Tempest project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the

rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

120. To the extent you admitted to anything in RFA No. 119, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 119. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "well interference affecting production," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Because Concho does not admit the predicate Request 119, denied.

**<u>RFAs Relating Only to the Vast Project</u>**

121. Admit that the following tests were used on the Vast project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

122. Admit that data collected from testing the Vast project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

123. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Vast project indicating there was well interference from one or more tests admitted in RFA No. 121:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 121 for the reasons stated in its response to that Request, denied.

124. Admit that the following reports were issued for the Vast project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the

requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

125. To the extent any aspect of RFA No. 124 is admitted, admit that the applicable reports generated for the Vast project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige*

*Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 124 for the reasons stated in its response to that Request, denied.

126. To the extent any aspect of RFA Nos. 124 and 125 are admitted, admit that the applicable reports generated for the Vast project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 125 and 126 for the reasons stated in its response to those Requests, denied.

127. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Vast project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with

respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

128. Admit that all risking applied to the Vast project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it

cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca,* 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

129. Admit that You revised at least one production forecast for the Vast project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain

through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

130. To the extent you admitted to anything in RFA No. 129, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 129. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "well interference affecting production," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Because Concho does not admit the predicate Request 129, denied.

**RFAs Relating Only to the White Falcon Project**

131. Admit that the following tests were used on the White Falcon project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

132. Admit that data collected from testing the White Falcon project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

133. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the White Falcon project indicating there was well interference from one or more tests admitted in RFA No. 131:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 131 for the reasons stated in its response to that Request, denied.

134. Admit that the following reports were issued for the White Falcon project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that

Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the “reports” at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

135. To the extent any aspect of RFA No. 134 is admitted, admit that the applicable reports generated for the White Falcon project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because “it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome.” Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) (“Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive.”); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) (“Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive.”); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) (“To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome.”); *Shorter v. Baca*, 2014

WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 134 for the reasons stated in its response to that Request, denied.

136. To the extent any aspect of RFA Nos. 134 and 135 are admitted, admit that the applicable reports generated for the White Falcon project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding

party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the “reports” at issue, nor does this Request define “some indication of well interference,” and its general definition of “well interference” is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 135 and 136 for the reasons stated in its response to those Requests, denied.

137. Admit that there was some indication of well interference that was not accounted for in Concho’s production forecast in the White Falcon project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

138. Admit that all risking applied to the White Falcon project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are

abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

139. Admit that You revised at least one production forecast for the White Falcon project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

140. To the extent you admitted to anything in RFA No. 139, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 139. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "well interference affecting production," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Because Concho does not admit the predicate Request 139, denied.

**RFAs Relating Only to the Windham B Project**

141. Admit that the following tests were used on the Windham B project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

142. Admit that data collected from testing the Windham B project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

143. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Windham B project indicating there was well interference from one or more tests admitted in RFA No. 141:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 141 for the reasons stated in its response to that Request, denied

144. Admit that the following reports were issued for the Windham B project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that

Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

145. To the extent any aspect of RFA No. 144 is admitted, admit that the applicable reports generated for the Windham B project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014

WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 144 for the reasons stated in its response to that Request, denied.

146. To the extent any aspect of RFA Nos. 144 and 145 are admitted, admit that the applicable reports generated for the Windham B project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding

party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the “reports” at issue, nor does this Request define “some indication of well interference,” and its general definition of “well interference” is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Requests 144 and 145 for the reasons stated in its response to those Requests, denied.

147. Admit that there was some indication of well interference that was not accounted for in Concho’s production forecast in the Windham B project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

148. Admit that all risking applied to the Windham B project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are

abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

149. Admit that You revised at least one production forecast for the Windham B project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

150. To the extent you admitted to anything in RFA No. 149, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 149. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "well interference affecting production," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Because Concho does not admit the predicate Request 149, denied.

**RFAs Relating Only to the Windham TXL Project**

151. Admit that the following tests were used on the Windham TXL project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

152. Admit that data collected from testing the Windham TXL project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

153. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Windham TXL project indicating there was well interference from one or more tests admitted in RFA No. 151:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 151 for the reasons stated in its response to that Request, denied.

154. Admit that the following reports were issued for the Windham TXL project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that

Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the “reports” at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Concho admits that it has located WARCOP01785870 in the document production, but because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

155. To the extent any aspect of RFA No. 154 is admitted, admit that the applicable reports generated for the Windham TXL project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because “it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome.” Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) (“Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive.”); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) (“Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive.”); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) (“To be tasked with answering

1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts it incorporates during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

156. To the extent any aspect of RFA Nos. 154 and 155 are admitted, admit that the applicable reports generated for the Windham TXL project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to

Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request define "some indication of well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

157. Admit that there was some indication of well interference that was not accounted for in Concho's production forecast in the Windham TXL project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

158. Admit that all risking applied to the Windham TXL project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee

Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

159. Admit that You revised at least one production forecast for the Windham TXL project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca,* 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

160. To the extent you admitted to anything in RFA No. 159, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 159. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "well interference affecting production," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Because Concho does not admit the predicate Request 159, denied.

**RFAs Relating Only to the Winward Project**

161. Admit that the following tests were used on the Winward project at some point between January 1, 2017 and July 31, 2019:

a. Coring

b. Well logging

c. Measurement while drilling (MWD)

d. Logging while drilling (LWD)

e. Mud logging

f. Directional surveying

g. Pilot hole

h. Drill Stem Test (DST)

i. Injection Testing

j. Formation Testing

k. Diagnostic Fracture Injection Test (DFIT)

l. Interference Testing

m. Microseismic Testing

n. Tracer Surveys

o. Pressure Transient Analysis (PTA)

p. Rate Transient Analysis (RTA)

q. Multirate Testing

r. Isochronal tests

s. Pressure build up tests

t. Flow rate measurement and testing

u. Deliverability tests

v. Drawdown tests

w. Buildup tests

x. Type curve analysis

y. Flowback testing

z. Pressure monitoring

aa. Fiber optic testing

bb. Reservoir simulation

cc. Oil finger printing

dd. Tiltmeter analysis

ee. High-volume preloading

ff. Dipole sonic logging

gg. Gas Chromatography Analysis of mud gas

hh. Nuclear magnetic resonance (NMR) logging

ii. Formation micro-imaging (FMI)

jj. Borehold imaging logs

kk. Capillary pressure tests

ll. Casing integrity tests (CIT)

mm. Caliper logs

nn. Downhole camera inspections

**RESPONSE:**

Concho objects to this 40-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). As Eric Angelos testified, Concho does not have a list of technologies used on any particular project that could be referenced to answer this Request. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (nn), many of which are not "tests" as Concho understands that term. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 40 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

162. Admit that data collected from testing the Winward project indicated that, at some point between January 1, 2017 and July 31, 2019 there was, more likely than not, some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because “it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome.” Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) (“RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the “data” about which it inquires or define “indication of well interference,” and its general definition of “well interference” is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs’ meaning, and because the information that Concho knows or can readily obtain is insufficient to allow Concho to determine the answer with respect to the unspecified data during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

163. Admit that the following individuals received data, at some point between January 1, 2017 and July 31, 2019, for the Winward project indicating there was well interference from one or more tests admitted in RFA No. 161:

a. Timothy Leach

b. William Giraud

c. Jack Harper

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not specify the "data" about which it inquires or define "indicating … well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 161 for the reasons stated in its response to that Request, denied.

164. Admit that the following reports were issued for the Winward project at some point between January 1, 2017 and July 31, 2019:

a. Daily drilling reports

b. Completion reports

c. Parent-child well interference reports

d. Hydraulic Fracture Effectiveness reports

e. Geologic risk reports

f. Artificial lift optimization reports

g. Well failure analysis reports

h. Well workover analysis reports

i. Economic sensitivity and risk analysis reports

j. Competitor benchmarking reports

k. Frac hit incident reports

l. Type Curve Analysis

m. End of Well Reports

n. Pressure communication reports

o. Offset well shut-in and production loss reports

p. Well integrity assessments post-frac hit

q. Fluid or sand influx in offset wells

r. Well performance impact studies

s. Frac geometry and communication analysis

t. Operational mitigation reports

u. Economic loss estimates from frac hit

**RESPONSE:**

Concho objects to this 21-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that

Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 21 subparts during the more than two-and-a-half years covered by this Request, Concho cannot admit or deny this Request.

165. To the extent any aspect of RFA No. 164 is admitted, admit that the applicable reports generated for the Winward project at some point between January 1, 2017 and July 31, 2019 contained data indicating that, more likely than not, there was some indication of well interference.

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014

WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the "reports" at issue, nor does this Request specify the "data" at issue or define "some indication of well interference." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Request 164 for the reasons stated in its response to that Request, denied.

166. To the extent any aspect of RFA Nos. 164 and 165 are admitted, admit that the applicable reports generated for the Winward project at some point between January 1, 2017 and July 31, 2019 that evidenced, more likely than not, that there was some indication of well interference was received by one or more of the following individuals:

a. Timothy Leach

b. Jack Harper

c. William Giraud

**RESPONSE:**

Concho objects to this Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, as it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding

party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case.”). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because Request 4 does not define any of the terms set forth in subparts (a) – (u) or specify the “reports” at issue, nor does this Request define “some indication of well interference,” and its general definition of “well interference” is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) (“As the Fifth Circuit has noted, ‘Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.’ Therefore, ‘requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.’” (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho does not admit the predicate Requests 164 and 165 for the reasons stated in its response to those Requests, denied

167. Admit that there was some indication of well interference that was not accounted for in Concho’s production forecast in the Winward project before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "some indication of well interference" and "accounted for," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the undefined 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

168. Admit that all risking applied to the Winward project did not incorporate risk adjustments unique to that project before the following dates:

a. July 31, 2019

b. June 30, 2019

c. May 31, 2019

d. April 30, 2019

e. March 31, 2019

f. February 28, 2019

g. January 31, 2019

h. December 31, 2019

i. November 30, 2018

j. October 31, 2018

k. September 30, 2018

l. August 31, 2018

m. July 31, 2018

n. June 30, 2018

o. May 31, 2018

p. April 30, 2018

q. March 30, 2018

r. February 28, 2018

s. January 31, 2018

**RESPONSE:**

Concho objects to this 19-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are

abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "all risking" or "risk adjustments." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 19 subparts during the more than 18-month period covered by this Request, Concho cannot admit or deny this Request.

169. Admit that You revised at least one production forecast for the Winward project to reduce the production forecast before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 11 subparts during the more than 14-month period covered by this Request, Concho cannot admit or deny this Request.

170. To the extent you admitted to anything in RFA No. 169, admit that those reductions production forecasts were at least, in part, related to well interference affecting production.

**RESPONSE:**

Concho objects to this Request on the same grounds as it objected to the predicate Request 9. Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "well interference affecting production," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Because Concho does not admit the predicate Request 9, denied.

**RFAs Related to Projects Generally**

171. Admit that You contemplated upspacing at least one large-scale development project before the following dates:

a. January 1, 2019

b. February 1, 2019

c. March 1, 2019

d. April 1, 2019

e. May 1, 2019

f. June 1, 2019

g. July 1, 2019

h. August 1, 2019

**RESPONSE:**

Concho objects to this 8-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov.*

*Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "contemplated" or "upspacing." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 8 subparts, Concho cannot admit or deny this Request.

172. Admit that you upspaced planned development between January 1, 2019 and July 31, 2019 for wells in the following projects:

a. 9 Point – Calverley

b. Archi – Marion V Benge

c. Baseball Cap

d. Bigfoot

e. Bistec – Spanish Trail

f. Boomerang 1. This also includes projects where wells were dropped for being child wells. E.g., WARCOP01612282; WARCOP01613797.

g. Brot Helm

h. Brunson E West

i. Brunson 8

j. Calverley 22/27

k. Coonskin

l. Couric – Katie

m. Cronus – TXL U/R

n. Daisy

o. Dominator

p. Dorsett – Windham TXL

q. Dutch – Mabee 240A

r. Eider

s. Eider WC

t. Emma Lou 9400

u. Fascinator

v. Fez

w. Gunner

x. Halo – Ted Johnson

y. Harrier

z. Howitzer

aa. Howitzer North

bb. Huckleberry

cc. Iron – Mask

dd. Jack

ee. Johnny B – PFU2

ff. King

gg. Littlebear

hh. Littlefield

ii. Littlefield West

jj. Lolo - Amacker

kk. Ludeman C25-12

ll. Mabee

mm. Mabee 240A

nn. MAGA – American Republics

oo. MCC HZ Unit

pp. McGillians – Haley JF

qq. Myox

rr. Myox 21

ss. Myox 21 West

tt. Myox 31 East

uu. Myox 6

vv. Par – Mask HZ Unit

ww. Pork Pie

xx. Quien Sabe

yy. Revolver

zz. Rudd Draw 29-03

aaa. Spanish Trail

bbb. Spanish Trail 48

ccc. Sphinx

ddd. SRO

eee. SRO 5/4

fff. Staubach – PFU3/PSU

ggg. Taylor

hhh. Ted Johnson

iii. Tempest

jjj. Tempest North

kkk. Timberwolf

lll. Timberwolf South

mmm. Verde - ST

nnn. Way South

ooo. Way South East

ppp. Winterfell – Mabee

qqq. Woody

**RESPONSE:**

Concho objects to this 69-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "upspaced planned development." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State*

*Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 69 subparts, Concho cannot admit or deny this Request.

173. Admit that upspacing for any of Your large-scale development projects occurred before the following dates:

a. January 1, 2019

b. February 1, 2019

c. March 1, 2019

d. April 1, 2019

e. May 1, 2019

f. June 1, 2019

g. July 1, 2019

h. August 1, 2019

**RESPONSE:**

Concho objects to this 8-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014

WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "upspacing" or "occurred." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 8 subparts, Concho cannot admit or deny this Request.

174. Admit that the following projects were upspaced before March 4, 2019:

a. 9 Point – Calverley

b. Archi – Marion V Benge

c. Baseball Cap

d. Bigfoot

e. Bistec – Spanish Trail

f. Boomerang

g. Brot Helm

h. Brunson E West

i. Brunson 8

j. Calverley 22/27

k. Coonskin

l. Couric – Katie

m. Cronus – TXL U/R

n. Daisy

o. Dominator

p. Dorsett – Windham TXL

q. Dutch – Mabee 240A

r. Eider

s. Eider WC

t. Emma Lou 9400

u. Fascinator

v. Fez

w. Gunner

x. Halo – Ted Johnson

y. Harrier

z. Howitzer

aa. Howitzer North

bb. Huckleberry

cc. Iron – Mask

dd. Jack

ee. Johnny B – PFU2

ff. King

gg. Littlebear

hh. Littlefield

ii. Littlefield West

jj. Lolo - Amacker

kk. Ludeman C25-12

ll. Mabee

mm. Mabee 240A

nn. MAGA – American Republics

oo. MCC HZ Unit

pp. McGillians – Haley JF

qq. Myox

rr. Myox 21

ss. Myox 21 West

tt. Myox 31 East

uu. Myox 6

vv. Par – Mask HZ Unit

ww. Pork Pie

xx. Quien Sabe

yy. Revolver

zz. Rudd Draw 29-03

aaa. Spanish Trail

bbb. Spanish Trail 48

ccc. Sphinx

ddd. SRO

eee. SRO 5/4

fff. Staubach – PFU3/PSU

ggg. Taylor

hhh. Ted Johnson

iii. Tempest

jjj. Tempest North

kkk. Timberwolf

lll. Timberwolf South

mmm. Verde - ST

nnn. Way South

ooo. Way South East

ppp. Winterfell – Mabee

qqq. Woody

**RESPONSE:**

Concho objects to this 69-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "upspaced." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 69 subparts, Concho cannot admit or deny this Request.

175. Admit that the following projects were upspaced before March 30, 2019:

a. 9 Point – Calverley

b. Archi – Marion V Benge

c. Baseball Cap

d. Bigfoot

e. Bistec – Spanish Trail

f. Boomerang

g. Brot Helm

h. Brunson E West

i. Brunson 8

j. Calverley 22/27

k. Coonskin

l. Couric – Katie

m. Cronus – TXL U/R

n. Daisy

o. Dominator

p. Dorsett – Windham TXL

q. Dutch – Mabee 240A

r. Eider

s. Eider WC

t. Emma Lou 9400

u. Fascinator

v. Fez

w. Gunner

x. Halo – Ted Johnson

y. Harrier

z. Howitzer

aa. Howitzer North

bb. Huckleberry

cc. Iron – Mask

dd. Jack

ee. Johnny B – PFU2

ff. King

gg. Littlebear

hh. Littlefield

ii. Littlefield West

jj. Lolo - Amacker

kk. Ludeman C25-12

ll. Mabee

mm. Mabee 240A

nn. MAGA – American Republics

oo. MCC HZ Unit

pp. McGillians – Haley JF

qq. Myox

rr. Myox 21

ss. Myox 21 West

tt. Myox 31 East

uu. Myox 6

vv. Par – Mask HZ Unit

ww. Pork Pie

xx. Quien Sabe

yy. Revolver

zz. Rudd Draw 29-03

aaa. Spanish Trail

bbb. Spanish Trail 48

ccc. Sphinx

ddd. SRO

eee. SRO 5/4

fff. Staubach – PFU3/PSU

ggg. Taylor

hhh. Ted Johnson

iii. Tempest

jjj. Tempest North

kkk. Timberwolf

lll. Timberwolf South

mmm. Verde - ST

nnn. Way South

ooo. Way South East

ppp. Winterfell – Mabee

qqq. Woody

**RESPONSE:**

Concho objects to this 69-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it

cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca,* 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "upspaced." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 69 subparts, Concho cannot admit or deny this Request.

176. Admit that the following projects were upspaced before April 30, 2019:

a. 9 Point – Calverley

b. Archi – Marion V Benge

c. Baseball Cap

d. Bigfoot

e. Bistec – Spanish Trail

f. Boomerang

g. Brot Helm

h. Brunson E West

i. Brunson 8

j. Calverley 22/27

k. Coonskin

l. Couric – Katie

m. Cronus – TXL U/R

n. Daisy

o. Dominator

p. Dorsett – Windham TXL

q. Dutch – Mabee 240A

r. Eider

s. Eider WC

t. Emma Lou 9400

u. Fascinator

v. Fez

w. Gunner

x. Halo – Ted Johnson

y. Harrier

z. Howitzer

aa. Howitzer North

bb. Huckleberry

cc. Iron – Mask

dd. Jack

ee. Johnny B – PFU2

ff. King

gg. Littlebear

hh. Littlefield

ii. Littlefield West

jj. Lolo - Amacker

kk. Ludeman C25-12

ll. Mabee

mm. Mabee 240A

nn. MAGA – American Republics

oo. MCC HZ Unit

pp. McGillians – Haley JF

qq. Myox

rr. Myox 21

ss. Myox 21 West

tt. Myox 31 East

uu. Myox 6

vv. Par – Mask HZ Unit

ww. Pork Pie

xx. Quien Sabe

yy. Revolver

zz. Rudd Draw 29-03

aaa. Spanish Trail

bbb. Spanish Trail 48

ccc. Sphinx

ddd. SRO

eee. SRO 5/4

fff. Staubach – PFU3/PSU

ggg. Taylor

hhh. Ted Johnson

iii. Tempest

jjj. Tempest North

kkk. Timberwolf

lll. Timberwolf South

mmm. Verde - ST

nnn Way South

ooo. Way South East

ppp. Winterfell – Mabee

qqq. Woody

**RESPONSE:**

Concho objects to this 69-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further

objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "upspaced." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 69 subparts, Concho cannot admit or deny this Request.

177. Admit that the initial type curve for each of the following drilling projects was not based on a model unique to that project:

a. Brass Monkey

b. Columbus

c. Dominator

d. Eider

e. Fascinator

f. Fez

g. Funky Boss/Whatcha Want

h. Gettysburg

i. Grissom

j. Jack

k. Mabee 240A

l. Mabee 240C

m. Marion Benge

n. Ted Johnson

o. Tempest

p. Vast

q. White Falcon

r. Windham B

s. Windham TXL

t. Windward

**RESPONSE:**

Concho objects to this 20-subpart Request as facially overbroad, unduly burdensome, disproportionate to the needs of the case, and designed to harass, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca,* 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "model unique to that project." Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Subject to and without waiving the foregoing objections, denied.

178. Admit that in 2018, Concho applied a rate of risk on its production on a portfolio-wide basis (e.g., a company-wide risk rate applied by quarter or an annual average rate of risk).

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound and vague and ambiguous, including because it does not define "rate of risk," "production," or "risk rate."

Subject to and without waiving the foregoing objections, Concho admits that for each quarter in 2018, Concho risked its cumulative production forecast by the percentages listed in the "Current" column in WARCOP02301041; otherwise, denied.

179. Admit that in 2018, Concho risked it assets on a portfolio-wide basis.

**RESPONSE:**

Concho objects to this Request because it is vague and ambiguous, including because it does not define "risked" or "assets." Concho cannot admit or deny this Request without clarity as to what is meant by those terms. To the extent a further answer is required, denied.

180. Admit that in 2018, Concho did not apply a rate of risk on its production on a well-by-well basis.

**RESPONSE:**

Concho objects to this Request because it is vague and ambiguous, including because it does not define "rate of risk" or "production."

Subject to and without waiving the foregoing objections, Concho admits that for each quarter in 2018, Concho risked its cumulative production forecast by the percentages listed in the "Current" column in WARCOP02301041; otherwise, denied.

181. Admit that in 2018, Concho did not apply a rate of risk on its production on a project-by-project basis.

**RESPONSE:**

Concho objects to this Request because it is vague and ambiguous, including because it does not define "rate of risk" or "production."

Subject to and without waiving the foregoing objections, Concho admits that for each quarter in 2018, Concho risked its cumulative production forecast by the percentages listed in the "Current" column in WARCOP02301041; otherwise, denied.

182. Admit that in 2018, Concho did not apply unique risk factors to its production on individual projects.

**RESPONSE:**

Concho objects to this Request because it is vague and ambiguous, including because it does not define "unique risk factors" or "production."

Subject to and without waiving the foregoing objections, Concho admits that for each quarter in 2018, Concho risked its cumulative production forecast by the percentages listed in the "Current" column in WARCOP02301041; otherwise, denied.

183. Admit that in 2018, Concho did not apply unique risk factors to its assets on individual projects.

**RESPONSE:**

Concho objects to this Request because it is vague and ambiguous, including because it does not define "unique risk factors" or "assets." Concho cannot admit or deny this Request without clarity as to what is meant by those terms. To the extent a further answer is required, denied.

184. Admit that the first half of 2019, Concho applied a rate of risk on its production on a portfolio-wide basis (e.g., a company-wide risk rate applied by quarter or an annual average rate of risk).

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound and vague and ambiguous, including because it does not define "rate of risk," "production," or "risk rate."

Subject to and without waiving the foregoing objections, Concho admits that for Q1 and Q2 2019, Concho risked its cumulative production forecast by the percentages listed in the "Current" column in WARCOP02096416; otherwise, denied.

185. Admit that the first half of 2019, Concho risked it assets on a portfolio-wide basis.

**RESPONSE:**

Concho objects to this Request because it is vague and ambiguous, including because it does not define "risked" or "assets." Concho cannot admit or deny this Request without clarity as to what is meant by those terms.

186. Admit that the first half of 2019, Concho did not apply a rate of risk on its production on a well-by-well basis.

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound and vague and ambiguous, including because it does not define “rate of risk” or “production.”

Subject to and without waiving the foregoing objections, Concho admits that for Q1 and Q2 2019, Concho risked its cumulative production forecast by the percentages listed in the “Current” column in WARCOP02096416; otherwise, denied.

187. Admit that the first half of 2019, Concho did not apply a rate of risk on its production on a project-by-project basis.

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound and vague and ambiguous, including because it does not define “rate of risk” or “production.”

Subject to and without waiving the foregoing objections, Concho admits that for Q1 and Q2 2019, Concho risked its cumulative production forecast by the percentages listed in the “Current” column in WARCOP02096416; otherwise, denied.

188. Admit that the first half of 2019, Concho did not apply unique risk factors to its production on individual projects.

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound and vague and ambiguous, including because it does not define “unique risk factors” or “production.”

Subject to and without waiving the foregoing objections, Concho admits that for Q1 and Q2 2019, Concho risked its cumulative production forecast by the percentages listed in the “Current” column in WARCOP02096416; otherwise, denied.

189. Admit that the first half of 2019, Concho did not apply unique risk factors to its assets on individual projects.

**RESPONSE:**

Concho objects to this Request because it is vague and ambiguous, including because it does not define “unique risk factors” or “assets.” Concho cannot admit or deny this

Request without clarity as to what is meant by those terms. To the extent a further answer is required, denied.

190. Admit that before March 30, 2019, Concho applied a rate of risk on its production on a portfolio-wide basis (e.g., a company-wide risk rate applied by quarter or an annual average rate of risk).

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound and vague and ambiguous, including because it does not define "rate of risk," "production," or "risk rate."

Subject to and without waiving the foregoing objections, Concho admits that for Q1 2019, Concho risked its cumulative production forecast by the percentage listed in the "Current" column in WARCOP02096416; otherwise, denied.

191. Admit that before March 30, 2019, Concho risked it assets on a portfolio-wide basis.

**RESPONSE:**

Concho objects to this Request because it is vague and ambiguous, including because it does not define "risked" or "assets." Concho cannot admit or deny this Request without clarity as to what is meant by those terms. To the extent a further answer is required, denied.

192. Admit that before March 30, 2019, Concho did not apply a rate of risk on its production on a well-by-well basis.

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound and vague and ambiguous, including because it does not define "rate of risk" or "production."

Subject to and without waiving the foregoing objections, Concho admits that for Q1 2019, Concho risked its cumulative production forecast by the percentage listed in the "Current" column in WARCOP02096416; otherwise, denied.

193. Admit that before March 30, 2019, Concho did not apply a rate of risk on its production on a project-by-project basis.

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound and vague and ambiguous, including because it does not define “rate of risk” or “production.”

Subject to and without waiving the foregoing objections, Concho admits that for Q1 2019, Concho risked its cumulative production forecast by the percentage listed in the “Current” column in WARCOP02096416; otherwise, denied.

194. Admit that before March 30, 2019, Concho did not apply unique risk factors to its production on individual projects.

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound and vague and ambiguous, including because it does not define “unique risk factors” or “production.”

Subject to and without waiving the foregoing objections, Concho admits that for Q1 2019, Concho risked its cumulative production forecast by the percentages listed in the “Current” column in WARCOP02096416; otherwise, denied.

195. Admit that before March 30, 2019, Concho did not apply unique risk factors to its assets on individual projects.

**RESPONSE:**

Concho objects to this Request because it is vague and ambiguous, including because it does not define “risked” or “assets.” Concho cannot admit or deny this Request without clarity as to what is meant by those terms. To the extent a further answer is required, denied.

196. Admit that the initial production forecast for each of the following projects did not incorporate risk factors unique to that project:

a. Brass Monkey

b. Columbus

c. Dominator

d. Eider

e. Fascinator

f. Fez

g. Funky Boss/Whatcha Want

h. Gettysburg

i. Grissom

j. Jack

k. Mabee 240A

l. Mabee 240C

m. Marion Benge

n. Ted Johnson

o. Tempest

p. Vast

q. White Falcon

r. Windham B

s. Windham TXL

t. Windward

**RESPONSE:**

Concho objects to this Request because it is vague and ambiguous, including because it does not define "initial production forecast," "incorporate," or "risk factors unique to that project."

Subject to and without waiving the foregoing objections, denied.

197. Admit that analog wells used in the Dominator project's initial type curve indicated well interference prior to being used in the Dominator project's initial type curve analysis.

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "analog wells … indicated well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho cannot admit or deny this Request without clarity as to what is meant by those terms. To the extent a further answer is required, denied.

198. Admit that analog wells used in the Dominator project's initial type curve indicated well interference prior to Dominator project's first spud date.

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "analog wells … indicated well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho cannot admit or deny this Request without clarity as to what is meant by those terms. To the extent a further answer is required, denied.

199. Admit that analog wells used in the Dominator project's initial type curve indicated well interference prior to the Dominator project's completion date.

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "analog wells … indicated well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho cannot admit or deny this Request without clarity as to what is meant by those terms. To the extent a further answer is required, denied.

200. Admit that analog wells used in the Dominator project's initial type curve indicated well interference prior to Dominator's first production date.

**RESPONSE:**

Concho objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because it does not define "analog wells … indicated well interference," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho cannot admit or deny this Request without clarity as to what is meant by those terms. To the extent a further answer is required, denied.

201. Admit that You cannot ascertain a reliable production forecast for a drilling project until the following number of days from the start of initial production:

a. 60 days

b. 80 days

c. 100 days

d. 120 days

e. 150 days

**RESPONSE:**

Concho objects to this Request because it is indeterminate and vague and ambiguous, including because it does not define "reliable production forecast" or "start of initial production."

Subject to and without waiving the foregoing objections, Concho admits that the accuracy of a particular well's production forecast improves the more actual production data becomes available for that well; otherwise, denied.

202. To the extent RFA No. 201 is admitted, admit You knew this information before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this Request because the predicate Request 201 it is indeterminate and vague and ambiguous, including because it does not define “reliable production forecast” or “start of initial production.”

Subject to and without waiving the foregoing objections, Concho admits that the accuracy of a particular well’s production forecast improves the more actual production data becomes available for that well; otherwise, denied.

203. Admit that well interference may not be reflected in production data for at least the following number of days after the start of production:

a. 60 days

b. 80 days

c. 100 days

d. 120 days

e. 150 days

**RESPONSE:**

Concho objects to this Request because it is indeterminate and vague and ambiguous, including because it does not define what it means for “well interference” to be “reflected in production data,” and its general definition of “well interference” hopelessly overbroad, incomprehensible, and unduly burdensome. Concho cannot admit or deny this Request without clarity as to what is meant by those terms. To the extent a further answer is required, denied.

204. To the extent RFA No. 203 is admitted, admit You knew this information before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this Request because the predicate Request 203 is indeterminate and vague and ambiguous, including because it does not define what it means for "well interference" to be "reflected in production data," and its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho cannot admit or deny this Request without clarity as to what is meant by those terms. To the extent a further answer is required, denied.

205. Admit that vertical well spacing under the following distances is more likely than not to create well interference:

a. 70 feet

b. 100 feet

c. 120 feet

d. 150 feet

e. 200 feet

f. 220 feet

g. 250 feet

h. 280 feet

i. 300 feet

j. 350 feet

k. 400 feet

l. 450 feet

m. 500 feet

n. 550 feet

o. 650 feet

p. 700 feet

q. 750 feet

**RESPONSE:**

Concho objects to this 17-subpart Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g., Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because its general definition of "well interference" is hopelessly overbroad,

incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, because any answer to the request would vary depending on factors like the geology and timeframe at issue, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 17 subparts during the period covered by this Request, Concho cannot admit or deny this Request.

206. To the extent that RFA No. 205 is admitted, admit that one or more members of Concho's Executive Officers knew this information before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request because it and its predicate 17-subpart Request are facially overbroad, unduly burdensome, and disproportionate to the needs of the case, including because it cannot be answered without incurring substantial costs and

expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because the predicate Request's general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, because any answer to the request would vary depending on factors like the geology and timeframe at issue, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of 187 subparts during the period covered by this Request, Concho cannot admit or deny this Request.

207. To the extent that RFA No. 205 is admitted, admit that RSP learned this information with respect to RSP assets before RSP's merger with Concho and shared this information with Concho.

**RESPONSE:**

Concho objects to this Request because it and its predicate Request are facially overbroad, unduly burdensome, and disproportionate to the needs of the case, including

because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because the predicate Request's general definition of "well interference" is hopelessly overbroad, incomprehensible, unduly burdensome, and the Request does not specify the "information" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, because any answer to the Request would vary depending on various factors, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the embedded subparts during the period covered by this Request, Concho cannot admit or deny this Request.

208. Admit that horizontal well spacing under the following distances is more likely than not to create well interference:

a. 70 feet

b. 120 feet

c. 150 feet

d. 200 feet

e. 220 feet

f. 250 feet

g. 280 feet

h. 300 feet

i. 350 feet

j. 400 feet

k. 450 feet

l. 500 feet

m. 550 feet

n. 650 feet

o. 700 feet

p. 750 feet

q. 1,000

r. 1,200

**RESPONSE:**

Concho objects to this 18-subpart Request as facially overbroad, unduly burdensome, and disproportionate to the needs of the case, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read

literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because its general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, because any answer to the request would vary depending on factors like the geology and timeframe at issue, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the 18 subparts during the period covered by this Request, Concho cannot admit or deny this Request.

209. To the extent that RFA No. 208 is admitted, admit that one or more members of Concho's Executive Officers knew this information before the following dates:

a. April 30, 2019

b. March 4, 2019

c. February 19, 2019

d. October 30, 2018

e. September 5, 2018

f. August 2, 2018

g. May 15, 2018

h. May 1, 2018

i. March 28, 2018

j. March 5, 2018

k. February 20, 2018

**RESPONSE:**

Concho objects to this 11-subpart Request because it and its predicate 18-subpart Request are facially overbroad, unduly burdensome, and disproportionate to the needs of the case, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because the predicate Request's general definition of "well interference" is hopelessly overbroad, incomprehensible, and unduly burdensome. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g., Alvarado v. State Farm Lloyds,* 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, because any answer to the request would vary depending on factors like the geology and timeframe at issue, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of 198 subparts during the period covered by this Request, Concho cannot admit or deny this Request.

210. To the extent that RFA No. 208 is admitted, admit that RSP learned this information with respect to RSP assets before RSP's merger with Concho and shared this information with Concho.

**RESPONSE:**

Concho objects to this Request because it and its predicate Request are facially overbroad, unduly burdensome, and disproportionate to the needs of the case, including because it cannot be answered without incurring substantial costs and expending substantial time and effort, and because "it is so voluminous and so framed that [Concho] finds the task of identifying what is in dispute and what is not unduly burdensome." Advisory Committee Notes to 1970 Amendment to Rule 36; *see, e.g.*, *Jacobson Warehouse Co. v. Prestige Brands, Inc.*, 2022 WL 1617711, at *9 (S.D.N.Y. May 23, 2022) ("Given that the requests are not readily admitted or denied, the time spent on answering the requests by [XPO] and their counsel would be abusive, unreasonable, and oppressive."); *Galganov. Cnty. of Putnam*, 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021) ("Courts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive."); *Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.*, 2021 WL 735241, at *2 (S.D.N.Y. Feb. 25, 2021) ("To be tasked with answering 1,672 individual RFAs is without a doubt unduly burdensome."); *Shorter v. Baca*, 2014 WL 12586116, at *9 (C.D. Cal. June 23, 2014) ("RFA No. 50 asks for an admission that Avalos intentionally deprived Plaintiff of food and medication during her incarceration from November 15, 2011 through December 17, 2011. The RFA does not point to any specific incident. Read literally, the responding party would have to review each meal and medication for every day of Plaintiff's incarceration. This process would be unduly burdensome and unhelpful in eliminating material issues in this case."). Concho further objects to this Request because it is impermissibly compound, indeterminate, and vague and ambiguous, including because the predicate Request's general definition of "well interference" is hopelessly overbroad, incomprehensible, unduly burdensome, and the Request does not specify the "information" at issue. Concho further objects to this Request because it constitutes an improper attempt to use Rule 36 as a discovery device and defies the purpose of the Rule. *E.g.*, *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *2 (S.D. Tex. Jan. 29, 2015) ("As the Fifth Circuit has noted, 'Rule 36 is not a discovery device, and its proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.' Therefore, 'requests for admissions as to central facts in dispute are beyond the proper scope of the rule [and] have consistently been held improper.'" (quoting *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (5th Cir. 1969)).

Because Concho cannot accurately respond to this Request without clarity as to Lead Plaintiffs' meaning, because any answer to the Request would vary depending on various factors, and because the information that Concho knows or can readily obtain through a reasonable inquiry is insufficient to allow Concho to determine the answer with respect to each of the embedded subparts during the period covered by this Request, Concho cannot admit or deny this Request.

**RFAs Related to Text Messages and Litigation Holds**

211. Admit that at least one of the Concho Custodians used text messages to communicate about business matters.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho admits that text messages regarding Concho business matters were searched for and produced to the extent available for various former Concho employees, including the Individual Defendants and the deponents.

212. Admit that You had a policy in place, concerning employees' use of devices for work purposes, at any point on or before July 31, 2019.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Subject to and without waiving its objections, Concho admits that it had a Mobile Device Policy in place during the requested period.

213. Admit that Your policy concerning employees' use of devices for work purposes provided You with possession, custody, access or control of employees' devices.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects to this Request as overbroad because it is not limited to the agreed-upon discovery period. Subject to and without waiving the foregoing objections, Concho admits that it had a Mobile Device Policy during the agreed-upon discovery period, but Concho denies that the policy gave Concho possession, custody, access, or control of employees' devices or otherwise means that while this lawsuit has been pending, ConocoPhillips has had possession, custody, access, or control of the devices used by former Concho employees during their Concho employment. To the extent a further answer is required, denied.

214. Admit You had possession, custody, access or control of devices through which the Concho Custodians sent text messages.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects to this Request as

overbroad because it is not limited to the agreed-upon discovery period. Subject to and without waiving the foregoing objections, Concho admits that it had a Mobile Device Policy during the agreed-upon discovery period, but Concho denies that the policy gave Concho possession, custody, access, or control of employees' devices or otherwise means that while this lawsuit has been pending, ConocoPhillips has had possession, custody, access, or control of the devices through which former Concho employees sent text messages during their Concho employment. To the extent a further answer is required, denied.

215. Admit that You sent a litigation hold notice to Concho employees on or after July 31, 2019 related to the market reaction to Concho's earning release on July 31, 2019.

**RESPONSE:**

Denied.

216. Admit that You sent a litigation hold notice to Concho employees on or after August 1, 2019 related to the market reaction to Concho's earnings call on August 1, 2019.

**RESPONSE:**

Denied.

217. Admit that a litigation hold notice was issued to Concho employees in 2019 related to Concho's disclosure to the market on July 31, 2019.

**RESPONSE:**

Denied.

218. Admit that a litigation hold notice was issued to Concho employees in 2019 related to Concho's disclosure to the market on August 1, 2019.

**RESPONSE:**

Denied.

219. Admit that a litigation hold notice was issued to Concho employees in 2020 related to Concho's disclosure to the market on July 31, 2019.

**RESPONSE:**

Denied.

220. Admit that a litigation hold notice was issued to Concho employees in 2020 related to Concho's disclosure to the market on August 1, 2019.

**RESPONSE:**

Denied.

221. Admit that a litigation hold notice was issued to Concho employees in 2021 related to Concho's disclosure to the market on July 31, 2019.

**RESPONSE:**

Concho admits that ConocoPhillips issued a litigation hold notice for this lawsuit after its July 2021 filing; otherwise, denied.

222. Admit that a litigation hold notice was issued to Concho employees in 2021 related to Concho's disclosure to the market on August 1, 2019.

**RESPONSE:**

Concho admits that ConocoPhillips issued a litigation hold notice for this lawsuit after its July 2021 filing; otherwise, denied.

223. Admit that a litigation hold notice was issued to Concho employees in 2021 related to this action.

**RESPONSE:**

Concho admits that ConocoPhillips issued a litigation hold notice for this lawsuit after its July 2021 filing.

224. Admit that a litigation hold notice was issued to the Concho Custodians in 2019 related to Concho's disclosure to the market on either July 31, 2019 or August 1, 2019.

**RESPONSE:**

Denied.

225. Admit that a litigation hold notice was issued to the Individual Defendants in 2019 related to Concho's disclosure to the market on either July 31, 2019 or August 1, 2019.

**RESPONSE:**

Denied.

226. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2019 related to any of the allegations in this action.

**RESPONSE:**

Denied.

227. Admit that a litigation hold notice was issued to Individual Defendants in 2019 related to any of the allegations in this action.

**RESPONSE:**

Denied.

228. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2020 related to any of the allegations in this action.

**RESPONSE:**

Denied.

229. Admit that a litigation hold notice was issued to the Individual Defendants in 2020 related to any of the allegations in this action.

**RESPONSE:**

Denied.

230. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2021 related to any of the allegations in this action.

**RESPONSE:**

Admitted.

231. Admit that a litigation hold notice was issued the Individual Defendants in 2021 related to any of the allegations in this action.

**RESPONSE:**

Admitted.

232. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2022 related to any of the allegations in this action.

**RESPONSE:**

Denied.

233. Admit that a litigation hold notice was issued to the Individual Defendants in 2022 related to any of the allegations in this action.

**RESPONSE:**

Denied.

234. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2018 unrelated to this action.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects this Request to the extent as not relevant to any claims or defenses and disproportionate to the needs of this case and to the extent it would require ConocoPhillips to investigate whether Concho issued any litigation hold notices unrelated to this lawsuit to 33 Concho employees over the course of a yearlong period.

235. Admit that a litigation hold notice was issued the Individual Defendants in 2018 unrelated to this action.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects this Request to the extent as not relevant to any claims or defenses.

236. Admit that a litigation hold notice was issued to one or more of the Concho Custodians in 2019 unrelated to this action.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects this Request as not relevant to any claims or defenses and disproportionate to the needs of this case and to the extent it would require ConocoPhillips to investigate whether Concho issued any litigation hold notices unrelated to this lawsuit to 33 Concho employees over the course of a yearlong period.

237. Admit that a litigation hold notice was issued the Individual Defendants in 2019 unrelated to this action.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects this Request to the extent as not relevant to any claims or defenses.

238. Admit that a litigation hold notice was issued to one more of the Concho Custodians in 2020 unrelated to this action.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects this Request to the extent as not relevant to any claims or defenses and disproportionate to the needs of this case and to the extent it would require ConocoPhillips to investigate whether Concho issued any litigation hold notices unrelated to this lawsuit to 33 Concho employees over the course of a yearlong period.

239. Admit that a litigation hold notice was issued to the Individual Defendants in 2020 unrelated to this action.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects this Request to the extent as not relevant to any claims or defenses.

240. Admit that a litigation hold notice was issued to one more of the Concho Custodians in 2021 unrelated to this action.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects this Request to the extent as not relevant to any claims or defenses and disproportionate to the needs of this case and to the extent it would require ConocoPhillips to investigate whether any litigation hold notices unrelated to this lawsuit were issued to 33 Concho employees over the course of a yearlong period. Concho further objects to this Request as seeking information outside the agreed-upon discovery period.

241. Admit that a litigation hold notice was issued the Individual Defendants in 2021 unrelated to this action.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects this Request to the extent as not relevant to any claims or defenses. Concho further objects to this Request as seeking information outside the agreed-upon discovery period.

242. Admit that a litigation hold notice was issued to one more of the Concho Custodians in 2022 unrelated to this action.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects this Request to the extent as not relevant to any claims or defenses and disproportionate to the needs of this case and to the extent it would require ConocoPhillips to investigate whether any litigation hold notices unrelated to this lawsuit were issued to 33 Concho employees over the course of a yearlong period. Concho further objects to this Request as seeking information outside the agreed-upon discovery period.

243. Admit that a litigation hold notice was issued to the Individual Defendants in 2022 unrelated to this action.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. Concho further objects this Request to the extent as not relevant to any claims or defenses and

extent as not relevant to any claims or defenses. Concho further objects to this Request as seeking information outside the agreed-upon discovery period.

244. Admit that any litigation hold notice issued in connection with this action required preservation of emails and text messages.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. In addition, Concho objects to this Request as not relevant to any claims or defenses. Concho further objects to this request as it calls on Concho to admit or deny the contents of privileged, attorney-client communications that are irrelevant to this lawsuit.

245. Admit that any litigation hold notice issued between 2018 and 2021 to any of the Concho Custodians that was unrelated to this action required preservation of emails and text messages.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. In addition, Concho objects to this Request as not relevant to any claims or defenses and disproportionate to the needs of this case and to the extent it would require ConocoPhillips to investigate whether any litigation hold notices unrelated to this lawsuit were issued to 33 Concho employees over the course of a yearlong period and review any such litigation holds to identify the requirements of each. Concho further objects to this Request as seeking information outside the agreed-upon discovery period. Concho further objects to this request as it calls on Concho to admit or deny the contents of privileged, attorney-client communications that are irrelevant to this lawsuit.

246. Admit that any litigation hold notice issued between 2018 and 2021 to the Individual Defendants that was unrelated to this action required preservation of emails and text messages.

**RESPONSE:**

Concho objects to this Request as an improper attempt at discovery-on-discovery for which the proper predicate does not exist. In addition, Concho objects to this Request as not relevant to any claims or defenses. Concho further objects to this Request as seeking information outside the agreed-upon discovery period. Concho further objects to this

request as it calls on Concho to admit or deny the contents of privileged, attorney-client communications that are irrelevant to this lawsuit.

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Civil Action No. 4:21-cv-02473<br><br><u>CLASS ACTION</u> |

**DEFENDANT TIMOTHY A. LEACH'S RESPONSES AND OBJECTIONS TO LEAD PLAINTIFFS' REQUESTS FOR ADMISSION**

TO: Utah Retirement Systems and Construction Laborers Pension Trust for Southern California, by and through their attorney of record, Alfred L. Fatale III, Joseph N. Cotilletta, and Rachel Berger, Labaton Keller Sucharow LLP, 140 Broadway, New York, New York 10005.

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure Defendant Timothy A. Leach ("Mr. Leach"), responds and objects to Lead Plaintiffs' Requests for Admission Directed to Defendant Timothy A. Leach (the "Admissions," each, an "Admission").

**I.**

**<u>PRELIMINARY STATEMENT AND OBJECTION</u>**

Mr. Leach's responses and objections to the Admissions (the "Responses") reflect Mr. Leach's continuing investigation of facts and discovery of information relating to the claims and defenses at issue in this litigation. Because discovery in this matter is ongoing, Mr. Leach has not yet concluded his investigation and discovery in this case. Mr. Leach expressly reserves the right to modify or supplement any and all of the Responses herein, and to assert additional objections to these Admissions as necessary or appropriate.

**II.**

**<u>GENERAL OBJECTIONS</u>**

1. Mr. Leach incorporates by reference, as if fully set out herein, his general objections to the definitions and instructions in Lead Plaintiffs' Requests for Admission to Mr. Leach, which

are set out in full in Mr. Leach's Answers and Objections to Lead Plaintiffs' First Set of Interrogatories Directed to Defendant Timothy A. Leach, served October 21, 2024 (the "Interrogatory Responses") and in Defendants' Objections and Responses to Plaintiffs' First Requests for Production of Documents, served November 27, 2023.

2. Mr. Leach incorporates by reference, as if fully set out herein, the general objections to the definitions and instructions detailed in Defendant Concho Resources Inc.'s Objections and Responses to Lead Plaintiffs' Requests for Admission Directed to Defendant Concho Resources Inc.

3. Nothing in these Responses is intended to adopt, acquiesce in, or otherwise accept Plaintiffs' description or characterization of the facts, circumstances, subject matter, and events described in the definitions, instructions, and Admissions.

4. Mr. Leach objects to the Admissions to the extent they seek to impose obligations on Mr. Leach that exceed those imposed by the Federal Rules of Civil Procedure and the rules of this Court. Mr. Leach will respond to the Admissions in conformity with applicable rules and orders and not in accordance with the instructions, definitions, or other statements in the Admissions.

5. Mr. Leach objects to the Admissions to the extent they seek admissions regarding information not within Mr. Leach's possession, custody, or control. Mr. Leach will only respond based on information within his possession, custody, or control.

6. Mr. Leach objects to the Admissions to the extent they would be unduly burdensome or would require efforts not proportionate to the needs of the case to respond to.

7. Mr. Leach reserves his right to correct, clarify, supplement, or amend these responses, or supply additional or different information to that contained in these responses, if and when he obtains

other or more accurate information. Mr. Leach assumes no duty to supplement these Responses, however, except to the extent required by the Federal Rules of Civil Procedure.

8. Mr. Leach objects to the time periods set forth in certain of the Admissions because they encompass time periods not relevant to Plaintiffs' claims. For the purposes of the Responses, unless otherwise noted, Mr. Leach will consider the time period applicable to the January 1, 2017 through February 28, 2020.

## III.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. Mr. Leach incorporates by reference, as if fully set out herein, the specific objections to the definitions and instructions detailed in Defendant Concho Resources Inc.'s Objections and Responses to Lead Plaintiffs' Requests for Admission Directed to Defendant Concho Resources Inc.

2. Mr. Leach objects to the definitions of "And" and "or" as confusing, indeterminate, and at odds with normal English usage. Mr. Leach will interpret the terms "And" and "or" in accordance with their ordinary English usage.

3. Mr. Leach objects to the definition of "Text Message" as ambiguous, overly broad, and unduly burdensome, as it includes any written communications sent or received from a device, which would include emails and other communications that are plainly not text messages. Mr. Leach will interpret the phrase "text message" to have its ordinary meaning.

4. Mr. Leach objects to the definition of "Well Interference" as vague, ambiguous, overly broad, and unduly burdensome.

5. Mr. Leach objects to Instruction 6 as a strained mischaracterization of what a general objection and/or a denial is. Mr. Leach's denials herein, whether or not coupled with an objection in any form, shall constitute a denial.

6. Mr. Leach objects to Instruction 9 as unduly burdensome, as requesting information that is subject to the attorney-client privilege and/or work product protection, and to the extent it seeks to impose obligations beyond those of the Federal Rules of Civil Procedure. Mr. Leach's responses herein will comply with the Federal Rules of Civil Procedure.

7. Mr. Leach objects to Instruction 10 to the extent it seeks to impose meanings at odds with the ordinary English meaning of these terms. Mr. Leach will interpret such terms in accordance with their ordinary English meaning.

8. Mr. Leach objects to Instruction 12 to the extent it seeks to impose an obligation at odds with the plain language of the requests.

9. Mr. Leach objects to Instruction 13 because, in purporting to demand a response under oath, it is inconsistent with, and purports to impose obligations that exceed those set forth in, the Federal Rules of Civil Procedure, including without limitation Rule 36.

## IV.

## RESPONSES TO FIRST REQUESTS FOR ADMISSION

### RESPONSE TO REQUEST NO. 1:

Mr. Leach objects to Request for Admission No. 1 as it is vague and ambiguous, and uses undefined terms such as "supervisory involvement" and "day-to-day operations." To the extent a further response is required, and with all dates being approximations, Mr. Leach admits that he was Chairman and Chief Executive Officer of Concho during the Relevant Time Period and admits his role involved certain supervisory involvement in the day-to-day operations of Concho. Mr. Leach denies having direct supervisory involvement in every operation of Concho during the Relevant Time Period.

**RESPONSE TO REQUEST NO. 2:**

In response to Plaintiffs' Requests for Production in this Action, Mr. Leach engaged in a diligent investigation of his text messages for responsive communications. This review included a complete forensic capture of his phone, which was then searched and reviewed. Based on this investigation, Mr. Leach identified the produced documents with the bates label WARCOP02789921. In addition, Mr. Leach reviewed the text messages produced by other witnesses and did not identify any relevant, responsive text messages in those productions. Otherwise, Mr. Leach does not recall engaging in substantive conversations about Concho work via text messaging and on that basis denies the request.

**RESPONSE TO REQUEST NO. 3:**

Mr. Leach admits that he received a litigation hold from Concho in connection with a lawsuit, filed on December 1, 2020, challenging the proposed merger between ConocoPhillips and Concho. Concho revised that litigation hold in January 2021 to include certain records related to the Dominator project. ConocoPhillips then supplemented the December 2020 litigation hold on September 29, 2021 to add this lawsuit to the description of covered matters. Additionally, Mr. Leach objects to sub-parts (i)–(j) as seeking irrelevant information the determination of which is not proportionate to the needs of this case. Otherwise, denied.

**RESPONSE TO REQUEST NO. 4:**

Mr. Leach objects to this request as overbroad. Given the unbounded scope of the request's inquiry into "all text messages," providing a response would require Mr. Leach to investigate whether plainly irrelevant messages were preserved. Otherwise, Mr. Leach is not aware of having

failed to preserve any documents relevant to the allegations in this case and on that basis denies the request.

**RESPONSE TO REQUEST NO. 5:**

Mr. Leach objects to this request as overbroad. Given the unbounded scope of the request's inquiry into "text messages," providing a response would require Mr. Leach to investigate whether plainly irrelevant messages were preserved. Otherwise, Mr. Leach is not aware of having failed to preserve any documents relevant to the allegations in this case and on that basis denies the request.

**RESPONSE TO REQUEST NO. 6:**

Mr. Leach states that, to the best of his recollection and understanding, the default setting for his device is permanent retention of text messages with no automatic deletion protocol, and so he does not recall needing to "turn off" any automatic delete function(s), and on that basis denies the request.

**RESPONSE TO REQUEST NO. 7:**

Mr. Leach further objects to Request for Admission No. 7 as it is vague, ambiguous, and overboard in its request for an admission of "aware[ness]" as to the "risk" of litigation "concerning any of the allegations in the [approximately 400 paragraph] Complaint." Mr. Leach will interpret the request as seeking an admission as to the date he reasonably anticipated litigation relating to the claims in this case. On that basis, Mr. Leach admits that he reasonably anticipated litigation relating to the claims in this case on or about July 30, 2021. Otherwise, denied.

**<u>RESPONSE TO REQUEST NO. 8:</u>**

Mr. Leach objects to this request as it calls on him to admit or deny the contents of privileged, attorney-client communications and attorney work product that are irrelevant to this lawsuit.

**<u>RESPONSE TO REQUEST NO. 9:</u>**

Mr. Leach objects to this request as it calls on him to admit or deny the contents of privileged, attorney-client communications and attorney work product that are irrelevant to this lawsuit.

**<u>RESPONSE TO REQUEST NO. 10:</u>**

Mr. Leach objects to Request for Admission No. 10 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 169 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of earnings releases, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**<u>RESPONSE TO REQUEST NO. 11:</u>**

Mr. Leach objects to Request for Admission No. 11 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further

response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 180 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of annual SEC filings, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 12:**

Mr. Leach objects to Request for Admission No. 12 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 182 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of annual and quarterly SEC filings, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 13:**

Mr. Leach objects to Request for Admission No. 13 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 186 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 14:**

Mr. Leach objects to Request for Admission No. 14 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 188 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of

such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 15:**

Mr. Leach objects to Request for Admission No. 15 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 189 of the Complaint. *See, e.g.,* Response to Interrogatory No. 1 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 16:**

Mr. Leach objects to Request for Admission No. 16 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 191 of the Complaint. *See, e.g.,* Response to Interrogatory No. 1 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request,

which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 17:**

Mr. Leach objects to Request for Admission No. 17 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 207 of the Complaint. *See, e.g.*, Response to Interrogatory No. 2 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers drafts of documents in support of such statement(s) in advance of such public-facing calls with investors and analysts, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 18:**

Mr. Leach objects to Request for Admission No. 18 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 208 of the Complaint. *See, e.g.*, Response to Interrogatory No. 2 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers drafts of documents in support of such statement(s) in advance of such public-facing calls with investors and analysts, which would have been reviewed by Concho's

executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 19:**

Mr. Leach objects to Request for Admission No. 19 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 213 of the Complaint. *See, e.g.,* Response to Interrogatory No. 3 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers drafts of documents in support of such statement(s) in advance of earnings releases, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 20:**

Mr. Leach objects to Request for Admission No. 20 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 216 of the Complaint. *See, e.g.,* Response to Interrogatory No. 3 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of

such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 21:**

Mr. Leach objects to Request for Admission No. 21 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 218 of the Complaint. *See, e.g.*, Response to Interrogatory No. 3 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 22:**

Mr. Leach objects to Request for Admission No. 22 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 230 of the Complaint. *See, e.g.*, Response to Interrogatory No. 4 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular

meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 23:**

Mr. Leach objects to Request for Admission No. 23 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 240 of the Complaint. *See, e.g.*, Response to Interrogatory No. 5 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 24:**

Mr. Leach objects to Request for Admission No. 24 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 242 of the Complaint. *See, e.g.*, Response to Interrogatory No. 5 Directed

at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 25:**

Mr. Leach objects to Request for Admission No. 25 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 243 of the Complaint. *See, e.g.,* Response to Interrogatory No. 5 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 26:**

Mr. Leach objects to Request for Admission No. 26 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement

identified in paragraph 245 of the Complaint. *See, e.g.*, Response to Interrogatory No. 5 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 27:**

Mr. Leach objects to Request for Admission No. 27 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 247 of the Complaint. *See, e.g.*, Response to Interrogatory No. 5 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 28:**

Mr. Leach objects to Request for Admission No. 28 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further

response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 249 of the Complaint. *See, e.g.*, Response to Interrogatory No. 5 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 29:**

Mr. Leach objects to Request for Admission No. 29 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 255 of the Complaint. *See, e.g.*, Response to Interrogatory No. 6 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of earnings releases, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 30:**

Mr. Leach objects to Request for Admission No. 30 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 258 of the Complaint. *See, e.g.*, Response to Interrogatory No. 6 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 31:**

Mr. Leach objects to Request for Admission No. 31 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 262 of the Complaint. *See, e.g.*, Response to Interrogatory No. 6 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of

such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 32:**

Mr. Leach objects to Request for Admission No. 32 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 270 of the Complaint. *See, e.g.,* Response to Interrogatory No. 7 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers drafts of documents in support of such statement(s) in advance of annual SEC filings, which would have been reviewed by Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 33:**

Mr. Leach objects to Request for Admission No. 33 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 277 of the Complaint. *See, e.g.,* Response to Interrogatory No. 7 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request,

which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 34:**

Mr. Leach objects to Request for Admission No. 34 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 278 of the Complaint. *See, e.g.*, Response to Interrogatory No. 7 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 35:**

Mr. Leach objects to Request for Admission No. 35 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 289 of the Complaint. *See, e.g.*, Response to Interrogatory No. 8 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers drafts of documents in support of such statement(s) in advance of earnings releases, which would have been reviewed by Concho's executives, including Mr. Leach.

Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 36:**

Mr. Leach objects to Request for Admission No. 36 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 292 of the Complaint. *See, e.g.,* Response to Interrogatory No. 8 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 37:**

Mr. Leach objects to Request for Admission No. 37 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 295 of the Complaint. *See, e.g.,* Response to Interrogatory No. 8 Directed at Timothy A. Leach. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of

such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 38:**

Mr. Leach objects to Request for Admission No. 38 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Leach states that he reviewed documents that support the statement identified in paragraph 302 of the Complaint. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Leach. Mr. Leach objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 39:**

Mr. Leach objects to Request for Admission No. 39 as it is too vague and ambiguous to admit or deny because of its use of general and undefined terms such as "met" and "regularly." Mr. Leach further objects to this request as it does not provide a reasonably specific time period and requests information that is more appropriately developed and discovered through deposition testimony.

**RESPONSE TO REQUEST NO. 40:**

Mr. Leach objects to Request for Admission No. 40 as it is vague and ambiguous, and does not define what constitutes an "emergency meeting." To the extent a further response is required, Mr. Leach states that he does not recall attending an "emergency" meeting regarding the Dominator project in March 2019 or April 2019, and on that basis denies the request.

**RESPONSE TO REQUEST NO. 41:**

Mr. Leach objects to Request for Admission No. 41 as it is vague and ambiguous, and uses undefined terms such as "approved." Additionally, Mr. Leach objects to this request as vague and ambiguous because it does not define the term "Operating Plan" or otherwise include any bates reference to documents that would allow Mr. Leach to understand the nature of the request. As a result, the vague and ambiguous terms of Request for Admission No. 41 prevent Mr. Leach being able to admit or deny the request.

**RESPONSE TO REQUEST NO. 42:**

Mr. Leach objects to Request for Admission No. 42 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Leach further objects to the confusing nature of the request, which asks whether he did any of 10 actions with respect to an (unenumerated) number of iterations of a recurring report. Mr. Leach interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions (connected with an "and/or") with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Leach objects to subparts (c)–(j)

which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Leach from being able to admit or deny these subparts. To the extent a further response is required, Mr. Leach states that he received a version of the Weekly Dashboard generally on a weekly basis during the Relevant Time Period, from August 2017 to February 2020. Solely on that basis, Mr. Leach admits the Request. Given the Request's "and/or" language, Mr. Leach's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Leach did not need to analyze in order to respond to the request.

**<u>RESPONSE TO REQUEST NO. 43:</u>**

Mr. Leach objects to Request for Admission No. 43 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Leach further objects to the confusing nature of the request, which asks whether he did any of 10 actions with respect to an (unenumerated) number of iterations of a recurring report. Mr. Leach interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions (connected with an "and/or") with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Leach objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Leach from being able to admit or deny these subparts. To the extent a further response is required, Mr. Leach states that he received a version of the "Daily Stats" document on a generally daily basis during

the Relevant Time Period, from March 2018 to February 2020. Solely on that basis, Mr. Leach admits the Request. Given the Request's "and/or" language, Mr. Leach's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Leach did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 44:**

Mr. Leach objects to Request for Admission No. 44 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Leach further objects to the confusing nature of the request, which asks whether he did any of 10 actions with respect to an (unenumerated) number of iterations of a recurring report. Mr. Leach interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions (connected with an "and/or") with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Leach objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Leach from being able to admit or deny these subparts. To the extent a further response is required, Mr. Leach states that he received a version of the Weekly Rig Count Dashboard on a generally weekly basis during the Relevant Time Period, from August 2017 to July 2019. Solely on that basis, Mr. Leach admits the Request. Given the Request's "and/or" language, Mr. Leach's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Leach did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 45:**

Mr. Leach objects to Request for Admission No. 45 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Leach further objects to the confusing nature of the request, which asks whether he did any of 10 actions with respect to an (unenumerated) number of iterations of a recurring report. Mr. Leach interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions (connected with an "and/or") with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Leach objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Leach from being able to admit or deny these subparts. To the extent a further response is required, Mr. Leach states that he received a version of the Permian Basin Rig Map document on a generally weekly basis during the Relevant Time Period, from June 2018 to October 2018. Solely on that basis, Mr. Leach admits the Request. Given the Request's "and/or" language, Mr. Leach's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Leach did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 46:**

Mr. Leach objects to Request for Admission No. 46 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Leach further objects to the confusing nature of the request, which asks whether he did any of

10 actions with respect to an (unenumerated) number of iterations of a recurring report. Mr. Leach interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions (connected with an "and/or") with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Leach objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Leach from being able to admit or deny these subparts. To the extent a further response is required, Mr. Leach states that he received a version of the Company Book and Flash Report documents on a generally monthly basis during the Relevant Time Period, from August 2017 to January 2020. Solely on that basis, Mr. Leach admits the Request. Given the Request's "and/or" language, Mr. Leach's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Leach did not need to analyze in order to respond to the request.

**<u>RESPONSE TO REQUEST NO. 47:</u>**

Mr. Leach objects to Request for Admission No. 47 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Leach further objects to the confusing nature of the request, which asks whether he did any of 10 actions with respect to an (unenumerated) number of iterations of a recurring report. Mr. Leach interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions (connected with an "and/or") with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the

words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Leach objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Leach from being able to admit or deny these subparts. To the extent a further response is required, Mr. Leach states that he received a version of the Board Book documents on a generally quarterly basis during the Relevant Time Period, from February 2019 to October 2019. Solely on that basis, Mr. Leach admits the Request. Given the Request's "and/or" language, Mr. Leach's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Leach did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 48:**

Mr. Leach objects to Request for Admission No. 48 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Leach further objects to the confusing nature of the request, which asks whether he did any of 10 actions with respect to an (unenumerated) number of iterations of a recurring report. Mr. Leach interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions (connected with an "and/or") with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Leach objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to

identify which version of such recurring report "it" refers to, which would prevent Mr. Leach from being able to admit or deny these subparts. To the extent a further response is required, Mr. Leach states that he received a version of an "Ops Book" document on a generally monthly basis, and received a quarterly version of the document received on a generally quarterly basis, during the Relevant Time Period, from January 2018 to July 2019. Solely on that basis, Mr. Leach admits the Request. Given the Request's "and/or" language, Mr. Leach's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Leach did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 49:**

Mr. Leach objects to Request for Admission No. 49 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Leach further objects to the confusing nature of the request, which asks whether he did any of 10 actions with respect to an (unenumerated) number of iterations of a recurring report. Mr. Leach interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions (connected with an "and/or") with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Leach objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Leach from being able to admit or deny these subparts. To the extent a further response is required, Mr. Leach states that he received a version of "Plan Review" documents, in connection with "Lunch and

Learn" sessions, on a generally bi-annual basis during the Relevant Time Period, from August 2017 to October 2019. Solely on that basis, Mr. Leach admits the Request. Given the Request's "and/or" language, Mr. Leach's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Leach did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 50:**

Mr. Leach objects to Request for Admission No. 50 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Leach further objects to the confusing nature of the request, which asks whether he did any of 10 actions with respect to an (unenumerated) number of iterations of a recurring report. Mr. Leach interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions (connected with an "and/or") with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Leach objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Leach from being able to admit or deny these subparts. To the extent a further response is required, Mr. Leach states that he received a version of the Activity Reports by Asset documents on a generally monthly basis during the Relevant Time Period, from June 2018 to December 2018. Solely on that basis, Mr. Leach admits the Request. Given the Request's "and/or" language, Mr. Leach's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Leach did not need to analyze in order to respond to the request.

Dated: April 14, 2025

Respectfully submitted,

BAKER BOTTS L.L.P.

By: *_/s/ David D Sterling_*
David D. Sterling
Attorney-In-Charge
State Bar No. 19170000
Federal I.D. No. 07079
Amy Pharr Hefley
State Bar No. 24046046
Anthony J. Lucisano
State Bar No. 24102118
Federal I.D. No. 3369146
C. Frank Mace
State Bar No. 24110609
Federal I.D. No. 3385915
910 Louisiana Street
Houston, Texas 77002
(713) 229-1946
(7 13) 229-7946 (Fax)
david.sterling@bakerbotts.com
amy.hefley@bakerbotts.com
anthony.lucisano@bakerbotts.com
frank.mace@bakerbotts.com

*Attorneys for Defendants Concho Resources Inc., ConocoPhillips, as Successor in Interest to Concho Resources Inc., Timothy A. Leach, Jack F. Harper, and C. William Giraud*

VINSON & ELKINS LLP

By: *_/s/ Michael C. Holmes_*
Michael C. Holmes
Texas Bar No. 24002307
Southern District Bar No. 23 716
Robert Ritchie
Texas Bar No. 24079213
Southern District Bar No. 3089959
200 l Ross Avenue, Suite 3900
Dallas, TX 75201

Telephone: 214.220. 7823
Facsimile: 214.999.7823
mholmes@velaw.com
rritchie@vclaw.com

*Co-Counsel for Defendants*
*Timothy A. Leach and C. William Giraud*

**CERTIFICATE OF SERVICE**

I, Robert Ritchie, hereby certify that on April 14, 2025, true copies of the foregoing Defendant Timothy A. Leach's Responses and Objections to Lead Plaintiffs' Requests for Admission was served on all counsel of record via email.

*/s/ Robert Ritchie*

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Civil Action No. 4:21-cv-02473<br><br>CLASS ACTION |

**DEFENDANT C. WILLIAM GIRAUD'S RESPONSES AND OBJECTIONS TO LEAD PLAINTIFFS' REQUESTS FOR ADMISSION**

TO: Utah Retirement Systems and Construction Laborers Pension Trust for Southern California, by and through their attorney of record, Alfred L. Fatale III, Joseph N. Cotilletta, and Rachel Berger, Labaton Keller Sucharow LLP, 140 Broadway, New York, New York 10005.

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure Defendant C. William Giraud ("Defendant"), responds and objects to Lead Plaintiffs' Requests for Admission Directed to Defendant C. William Giraud (the "Admissions," each, an "Admission").

**I.**

**PRELIMINARY STATEMENT AND OBJECTION**

Mr. Giraud's responses and objections to the Admissions (the "Responses") reflect Mr. Giraud's continuing investigation of facts and discovery of information related to the claims and defenses at issue in this litigation. Because discovery in this matter is ongoing, Mr. Giraud has not yet concluded his investigation and discovery in this case. Mr. Giraud expressly reserves the right to modify or supplement any and all of the Responses herein, and to assert additional objections to these Admissions as necessary or appropriate.

**II.**

**GENERAL OBJECTIONS**

1. Mr. Giraud incorporates by reference, as if fully set out herein, his general objections to the definitions and instructions in Lead Plaintiffs' Requests for Admission to Mr.

Giraud, which are set out in full in Mr. Giraud's Answers and Objections to Lead Plaintiffs' First Set of Interrogatories Directed to Defendant C. William Giraud, served October 21, 2024 (the "Interrogatory Responses") and in Defendants' Objections and Responses to Plaintiffs' First Requests for Production of Documents, served November 27, 2023.

2. Mr. Giraud incorporates by reference, as if fully set out herein, the general objections to the definitions and instructions detailed in Defendant Concho Resources Inc.'s Objections and Responses to Lead Plaintiffs' Requests for Admission Directed to Defendant Concho Resources Inc.

3. Nothing in these Responses is intended to adopt, acquiesce in, or otherwise accept Plaintiffs' description or characterization of the facts, circumstances, subject matter, and events described in the definitions, instructions, and Admissions.

4. Mr. Giraud objects to the Admissions to the extent they seek to impose obligations on Mr. Giraud that exceed those imposed by the Federal Rules of Civil Procedure and the rules of this Court. Mr. Giraud will respond to the Admissions in conformity with applicable rules and orders and not in accordance with the instructions, definitions, or other statements in the Admissions.

5. Mr. Giraud objects to the Admissions to the extent they seek admissions regarding information not within Mr. Giraud's possession, custody, or control. Mr. Giraud will only respond based on information within his possession, custody, or control.

6. Mr. Giraud objects to the Admissions to the extent they would be unduly burdensome or would require efforts not proportionate to the needs of the case to respond to.

7. Mr. Giraud reserves his right to correct, clarify, supplement, or amend these responses, or supply additional or different information to that contained in these responses, if and when he obtains

other or more accurate information. Mr. Giraud assumes no duty to supplement these Responses, however, except to the extent required by the Federal Rules of Civil Procedure.

8. Mr. Giraud objects to the time periods set forth in certain of the Admissions because they encompass time periods not relevant to Plaintiffs' claims. For the purposes of the Responses, unless otherwise noted, Mr. Giraud will consider the time period applicable to the Admissions January 1, 2017 through February 28, 2020.

## III.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. Mr. Giraud incorporates by reference, as if fully set out herein, the specific objections to the definitions and instructions detailed in Defendant Concho Resources Inc.'s Objections and Responses to Lead Plaintiffs' Requests for Admission Directed to Defendant Concho Resources Inc.

2. Mr. Giraud objects to the definitions of "And" and "or" as confusing, indeterminate, and at odds with normal English usage. Mr. Giraud will interpret the terms "And" and "or" in accordance with their ordinary English usage.

3. Mr. Giraud objects to the definition of "Text Message" as ambiguous, overly broad, and unduly burdensome, as it includes any written communications sent or received from a device, which would include emails and other communications that are plainly not text messages. Mr. Giraud will interpret the phrase "text message" to have its ordinary meaning.

4. Mr. Giraud objects to the definition of "Well Interference" as vague, ambiguous, overly broad, and unduly burdensome.

5. Mr. Giraud objects to Instruction 6 as a strained mischaracterization of what a general objection and/or a denial is. Mr. Giraud's denials herein, whether or not coupled with an objection in any form, shall constitute a denial.

6. Mr. Giraud objects to Instruction 9 as unduly burdensome, as requesting information that is subject to the attorney-client privilege and/or work product protection, and to the extent it seeks to impose obligations beyond those of the Federal Rules of Civil Procedure. Mr. Giraud's responses herein will comply with the Federal Rules of Civil Procedure.

7. Mr. Giraud objects to Instruction 10 to the extent it seeks to impose meanings at odds with the ordinary English meaning of these terms. Mr. Giraud will interpret such terms in accordance with their ordinary English meaning.

8. Mr. Giraud objects to Instruction 12 to the extent it seeks to impose an obligation at odds with the plain language of the requests.

9. Mr. Giraud objects to Instruction 13 because, in purporting to demand a response under oath, it is inconsistent with, and purports to impose obligations that exceed those set forth in, the Federal Rules of Civil Procedure, including without limitation Rule 36.

## IV.

## RESPONSES TO FIRST REQUESTS FOR ADMISSION

### RESPONSE TO REQUEST NO. 1:

Mr. Giraud objects to Request for Admission No. 1 as it is vague and ambiguous, and uses undefined terms such as "supervisory involvement" and "day-to-day operations." To the extent a further response is required, and with all dates being approximations, Mr. Giraud admits that he was an Executive Vice President and, beginning on January 1, 2019, Chief Operating Officer of Concho during the Relevant Time Period and admits his role involved certain supervisory involvement in the day-to-day operations of Concho. Mr. Giraud denies having direct supervisory involvement in every operation of Concho during the Relevant Time Period.

**RESPONSE TO REQUEST NO. 2:**

In response to Plaintiffs' Requests for Production in this Action, Mr. Giraud engaged in a diligent investigation of his text messages for responsive communications. This review included a complete forensic capture of his phone, which was then searched and reviewed, and did not identify any relevant, responsive, and non-privileged text messages. In addition, Mr. Giraud reviewed the text messages produced by other witnesses. Based on this investigation, Mr. Giraud identified the produced documents with the bates labels WARCOP02791565 (which relates to large-scale development projects) and SPIES_000022 (which relates to the Dominator). Mr. Giraud also recalls generally communicating about work with colleagues at Concho during the Relevant Time Period, but does not recall the specific topics of any such messages. Otherwise, following Mr. Giraud's reasonable inquiry into the question, the information Mr. Giraud knows or can readily obtain is insufficient to enable him to admit or deny the request.

**RESPONSE TO REQUEST NO. 3:**

Mr. Giraud admits that he received a litigation hold from Concho in connection with a lawsuit, filed on December 1, 2020, challenging the proposed merger between ConocoPhillips and Concho. Concho revised that litigation hold in January 2021 to include certain records related to the Dominator project. ConocoPhillips then supplemented the December 2020 litigation hold on September 29, 2021 to add this lawsuit to the description of covered matters. Additionally, Mr. Giraud objects to sub-parts (i)–(j) as seeking irrelevant information the determination of which is not proportionate to the needs of this case. Otherwise, denied.

**RESPONSE TO REQUEST NO. 4:**

Mr. Giraud objects to this request as overbroad. Given the unbounded scope of the request's inquiry into "all text messages," providing a response would require Mr. Giraud to

investigate whether plainly irrelevant messages were preserved. To the extent a further response is required, Mr. Giraud states that, in response to Plaintiffs' Requests for Production in this Action, Mr. Giraud engaged in a diligent investigation of his text messages for responsive communications. This review included a complete forensic capture of his phone, which was then searched and reviewed, and did not identify any relevant, responsive, and non-privileged text messages. In addition, Mr. Giraud reviewed the text messages produced by other witnesses. Based on this investigation, Mr. Giraud identified the produced documents with the bates labels WARCOP02791565 (which relates to large-scale development projects) and SPIES_000022 (which relates to the Dominator). Mr. Giraud also recalls generally communicating about work with colleagues at Concho during the Relevant Time Period, but does not recall the specific topics of any such messages. Mr. Giraud admits that these text messages were not found on his phone and, solely on that basis, admits the overbroad request.

**RESPONSE TO REQUEST NO. 5:**

Mr. Giraud objects to this request as overbroad. Given the unbounded scope of the request's inquiry into "text messages," providing a response would require Mr. Giraud to investigate whether plainly irrelevant messages were preserved. To the extent a further response is required, Mr. Giraud states that, in response to Plaintiffs' Requests for Production in this Action, Mr. Giraud engaged in a diligent investigation of his text messages for responsive communications. This review included a complete forensic capture of his phone, which was then searched and reviewed, and did not identify any relevant, responsive, and non-privileged text messages. In addition, Mr. Giraud reviewed the text messages produced by other witnesses. Based on this investigation, Mr. Giraud identified the produced documents with the bates labels WARCOP02791565 (which relates to large-scale development projects) and SPIES_000022

(which relates to the Dominator). Mr. Giraud also recalls generally communicating about work with colleagues at Concho during the Relevant Time Period, but does not recall the specific topics of any such messages. Mr. Giraud admits that these text messages were not found on his phone and are within the date range proposed by the request. Solely on that basis, he admits the overbroad request.

**RESPONSE TO REQUEST NO. 6:**

Mr. Giraud states that, to the best of his recollection and understanding, the default setting for his device is permanent retention of text messages with no automatic deletion protocol, and so he does not recall needing to "turn off" any automatic delete function(s), and on that basis denies the request.

**RESPONSE TO REQUEST NO. 7:**

Mr. Giraud further objects to Request for Admission No. 7 as it is vague, ambiguous, and overbroad in its request for an admission of "aware[ness]" as to the "risk" of litigation "concerning" "any" of the "allegations in the [440 paragraph] Complaint." Mr. Giraud will interpret the request as seeking an admission as to the date he reasonably anticipated litigation relating to the claims in this case. On that basis, Mr. Giraud admits that he reasonably anticipated litigation relating to the claims in this case on or about July 30, 2021. Otherwise, denied.

**RESPONSE TO REQUEST NO. 8:**

Mr. Giraud objects to this request as it calls on him to admit or deny the contents of privileged, attorney-client communications and attorney work product that are irrelevant to this lawsuit.

**RESPONSE TO REQUEST NO. 9:**

Mr. Giraud objects to this request as it calls on him to admit or deny the contents of privileged, attorney-client communications and attorney work product that are irrelevant to this lawsuit.

**RESPONSE TO REQUEST NO. 10:**

Mr. Giraud objects to Request for Admission No. 10 because it inaccurately suggests that Mr. Giraud "signed" the statement identified in paragraph 180 of the Complaint and on that basis denies the request.

**RESPONSE TO REQUEST NO. 11:**

Mr. Giraud objects to Request for Admission No. 11 because it inaccurately suggests that Mr. Giraud "signed" the statement identified in paragraph 182 of the Complaint and on that basis denies the request.

**RESPONSE TO REQUEST NO. 12:**

Mr. Giraud objects to Request for Admission No. 12 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Giraud states that he reviewed documents that support the statement identified in paragraph 223 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at C. William Giraud. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of

conference appearances, which would have been reviewed by Concho's executives, including Mr. Giraud. Mr. Giraud objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 13:**

Mr. Giraud objects to Request for Admission No. 13 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Giraud states that he reviewed documents that support the statement identified in paragraph 224 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at C. William Giraud. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Giraud. Mr. Giraud objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 14:**

Mr. Giraud objects to Request for Admission No. 14 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Giraud states that he reviewed documents that support the statement identified in paragraph 225 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at C. William Giraud. For example, it was Concho's practice for its IR Team to

circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Giraud. Mr. Giraud objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 15:**

Mr. Giraud objects to Request for Admission No. 15 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Giraud states that he reviewed documents that support the statement identified in paragraph 231 of the Complaint. *See, e.g.*, Response to Interrogatory No. 2 Directed at C. William Giraud. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Giraud. Mr. Giraud objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 16:**

Mr. Giraud objects to Request for Admission No. 16 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Giraud states that he reviewed documents that support the statement identified in paragraph 238 of the Complaint. *See, e.g.*, Response to Interrogatory No.

2 Directed at C. William Giraud. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Giraud. Mr. Giraud objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 17:**

Mr. Giraud objects to Request for Admission No. 17 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Giraud states that he reviewed documents that support the statement identified in paragraph 259 of the Complaint. *See, e.g.*, Response to Interrogatory No. 3 Directed at C. William Giraud. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Giraud. Mr. Giraud objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 18:**

Mr. Giraud objects to Request for Admission No. 18 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Giraud states that he reviewed documents that support the

statement identified in paragraph 262 of the Complaint. *See, e.g.*, Response to Interrogatory No. 3 Directed at C. William Giraud. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Giraud. Mr. Giraud objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 19:**

Mr. Giraud objects to Request for Admission No. 19 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Giraud states that he reviewed documents that support the statement identified in paragraph 294 of the Complaint. *See, e.g.*, Response to Interrogatory No. 4 Directed at C. William Giraud. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Giraud. Mr. Giraud objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 20:**

Mr. Giraud objects to Request for Admission No. 20 as it is too vague and ambiguous to admit or deny because of its use of general and undefined terms such as "met" and "regularly."

Mr. Giraud further objects to this request as it does not provide a reasonably specific time period and requests information that is more appropriately developed and discovered through deposition testimony.

**RESPONSE TO REQUEST NO. 21:**

Mr. Giraud objects to Request for Admission No. 21 as it is vague and ambiguous, and does not define what constitutes an "emergency meeting." To the extent a further response is required, Mr. Giraud states that he does not recall attending an "emergency" meeting regarding the Dominator project in March 2019 or April 2019, and on that basis denies the request.

**RESPONSE TO REQUEST NO. 22:**

Mr. Giraud objects to Request for Admission No. 22 as it is vague and ambiguous, and uses undefined terms such as "approved." Additionally, Mr. Giraud objects to this request as vague and ambiguous because it does not define the term "Operating Plan" or otherwise include any bates reference to documents that would allow Mr. Giraud to understand the nature of the request. As a result, the vague and ambiguous terms of Request for Admission No. 22 prevent Mr. Giraud being able to admit or deny the request.

**RESPONSE TO REQUEST NO. 23:**

Mr. Giraud objects to Request for Admission No. 23 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.)

("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the Weekly Dashboard generally on a weekly basis during the Relevant Time Period, from August 2017 to February 2020. Solely on that basis, Mr. Giraud admits the Request with respect to subpart (a). Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 24:**

Mr. Giraud objects to Request for Admission No. 24 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to

identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the "Daily Stats" document on a generally daily basis during the Relevant Time Period, from March 2018 to February 2020. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 25:**

Mr. Giraud objects to Request for Admission No. 25 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the Pad Project Update on a generally weekly basis during the Relevant Time Period, from February 2019 to October 2019. Solely on that basis, Mr.

Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 26:**

Mr. Giraud objects to Request for Admission No. 26 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the Weekly Rig Count Dashboard on a generally weekly basis during the Relevant Time Period, from September 2017 to July 2019. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 27:**

Mr. Giraud objects to Request for Admission No. 27 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the Permian Basin Rig Map document on a generally weekly basis during the Relevant Time Period, from June 2018 to October 2018. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 28:**

Mr. Giraud objects to Request for Admission No. 28 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any

of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the Company Book and Flash Report documents on a generally monthly basis during the Relevant Time Period, from August 2017 to January 2020. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 29:**

Mr. Giraud objects to Request for Admission No. 29 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.)

("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the Company and Team Graphs document on a generally monthly basis during the Relevant Time Period, from September 2017 to February 2020. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 30:**

Mr. Giraud objects to Request for Admission No. 30 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to

identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the Production Costs Graphs and Production Costs Report documents on a generally monthly basis during the Relevant Time Period, from August 2017 to October 2019. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 31:**

Mr. Giraud objects to Request for Admission No. 31 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the Production Highlights Graphs document on a generally monthly basis during the Relevant Time Period, from August 2017 to August 2019.

Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 32:**

Mr. Giraud objects to Request for Admission No. 32 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the Board Book documents on a generally quarterly basis during the Relevant Time Period, from October 2017 to February 2020. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 33:**

Mr. Giraud objects to Request for Admission No. 33 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of certain documents in connection with review of exploratory wells on a generally quarterly basis during the Relevant Time Period, from September 2017 to September 2018. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 34:**

Mr. Giraud objects to Request for Admission No. 34 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any

of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of an "Ops Book" document on a generally monthly basis, and received a quarterly version of the document received on a generally quarterly basis, during the Relevant Time Period, from October 2017 to February 2020. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 35:**

Mr. Giraud objects to Request for Admission No. 35 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div.*

*589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of "Plan Review" documents, in connection with "Lunch and Learn" sessions, on a generally bi-annual basis during the Relevant Time Period, from August 2017 to February 2020. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 36:**

Mr. Giraud objects to Request for Admission No. 36 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j)

which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the "Semi-Annual Lease Expiration Review" documents on a generally bi-annual basis during the Relevant Time Period. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 37:**

Mr. Giraud objects to Request for Admission No. 37 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Giraud further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Giraud interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Giraud objects to subparts (c)–(j) which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Giraud from being able to admit or deny these subparts. To the extent a further response is required, Mr. Giraud states that he received a version of the Long-Term Strategy Presentation document on a

generally annual basis during the Relevant Time Period, including in April 2019. Solely on that basis, Mr. Giraud admits the Request. Given the Request's "and/or" language, Mr. Giraud's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Giraud did not need to analyze in order to respond to the request.

Dated: April 14, 2025

Respectfully submitted,

BAKER BOTTS L.L.P.

By: *__/s/ David D. Sterling__*
David D. Sterling
Attorney-In-Charge
State Bar No. 19170000
Federal I.D. No. 07079
Amy Pharr Hefley
State Bar No. 24046046
Anthony J. Lucisano
State Bar No. 24102118
Federal I.D. No. 3369146
C. Frank Mace
State Bar No. 24110609
Federal I.D. No. 3385915
910 Louisiana Street
Houston, Texas 77002
(713) 229-1946
(7 13) 229-7946 (Fax)
david.sterling@bakerbotts.com
amy.hefley@bakerbotts.com
anthony.lucisano@bakerbotts.com
frank.mace@bakerbotts.com

*Attorneys for Defendants Concho Resources Inc., ConocoPhillips, as Successor in Interest to Concho Resources Inc., Timothy A. Leach, Jack F. Harper, and C. William Giraud*

VINSON & ELKINS LLP

By: _/s/ Michael C. Holmes_
Michael C. Holmes
Texas Bar No. 24002307
Southern District Bar No. 23 716
Robert Ritchie
Texas Bar No. 24079213
Southern District Bar No. 3089959
200 l Ross Avenue, Suite 3900
Dallas, TX 75201
Telephone: 214.220. 7823
Facsimile: 214.999.7823
mholmes@velaw.com
rritchie@vclaw.com

*Co-Counsel for Defendants*
*Timothy A. Leach and C. William Giraud*

## CERTIFICATE OF SERVICE

I, Robert Ritchie, hereby certify that on April 14, 2025, true copies of the foregoing Defendant C. William Giraud's Responses and Objections to Lead Plaintiffs' Requests for Admission was served on all counsel of record via email.

_/s/ Robert Ritchie_

# EXHIBIT I

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Civil Action No. 4:21-cv-02473<br><br>CLASS ACTION |

**DEFENDANT JACK F. HARPER'S RESPONSES AND OBJECTIONS TO LEAD PLAINTIFFS' REQUESTS FOR ADMISSION**

TO: Utah Retirement Systems and Construction Laborers Pension Trust for Southern California, by and through their attorney of record, Alfred L. Fatale III, Joseph N. Cotilletta, and Rachel Berger, Barack, Labaton Keller Sucharow LLP, 140 Broadway, New York, New York 10005.

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure Defendant Jack F. Harper ("Defendant"), responds and objects to Lead Plaintiffs' Requests for Admission Directed to Defendant Jack F. Harper (the "Admissions," each, an "Admission").

**I.**

**PRELIMINARY STATEMENT AND OBJECTION**

Mr. Harper's responses and objections to the Admissions (the "Responses") reflect Mr. Harper's continuing investigation of facts and discovery of information related to the claims and defenses at issue in this litigation. Because discovery in this matter is ongoing, Mr. Harper has not yet concluded his investigation and discovery in this case. Mr. Harper expressly reserves the right to modify or supplement any and all of the Responses herein, and to assert additional objections to these Admissions as necessary or appropriate.

**II.**

**GENERAL OBJECTIONS**

1. Mr. Harper incorporates by reference, as if fully set out herein, his general objections to the definitions and instructions in Lead Plaintiffs' Requests for Admission to Mr.

Harper, which are set out in full in Mr. Harper's Answers and Objections to Lead Plaintiffs' First Set of Interrogatories Directed to Defendant Jack F. Harper, served October 21, 2024 (the "Interrogatory Responses") and in Defendants' Objections And Responses To Plaintiffs' First Requests For Production Of Documents, served November 27, 2023.

2. Mr. Harper incorporates by reference, as if fully set out herein, the general objections to the definitions and instructions detailed in Defendant Concho Resources Inc.'s Objections and Responses to Lead Plaintiffs' Requests for Admission Directed to Defendant Concho Resources Inc.

3. Nothing in these Responses is intended to adopt, acquiesce in, or otherwise accept Plaintiffs' description or characterization of the facts, circumstances, subject matter, and events described in the definitions, instructions, and Admissions.

4. Mr. Harper objects to the Admissions to the extent they seek to impose obligations on Mr. Harper that exceed those imposed by the Federal Rules of Civil Procedure and the rules of this Court. Mr. Harper will respond to the Admissions in conformity with applicable rules and orders and not in accordance with the instructions, definitions, or other statements in the Admissions.

5. Mr. Harper objects to the Admissions to the extent they seek admissions regarding information not within Mr. Harper's possession, custody, or control. Mr. Harper will only respond based on information within his possession, custody, or control.

6. Mr. Harper objects to the Admissions to the extent they would be unduly burdensome or would require efforts not proportionate to the needs of the case to respond to.

7. Mr. Harper reserves his right to correct, clarify, supplement, or amend these responses, or supply additional or different information to that contained in these responses, if and

when he obtains other or more accurate information. Mr. Harper assumes no duty to supplement these Responses, however, except to the extent required by the Federal Rules.

8. Mr. Harper objects to the time periods set forth in certain of the Admissions because they encompass time periods not relevant to Plaintiffs' claims. For the purposes of the Responses, unless otherwise noted, Mr. Harper will consider the time period applicable to the Admissions January 1, 2017 through February 28, 2020.

## III.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. Mr. Harper incorporates by reference, as if fully set out herein, the specific objections to the definitions and instructions detailed in Defendant Concho Resources Inc.'s Objections and Responses to Lead Plaintiffs' Requests for Admission Directed to Defendant Concho Resources Inc.

2. Mr. Harper objects to the definitions of "And" and "or" as confusing, indeterminate, and at odds with normal English usage. Mr. Harper will interpret the terms "And" and "or" in accordance with their ordinary English usage.

3. Mr. Harper objects to the definition of "Text Message" as ambiguous, overly broad, and unduly burdensome, as it includes any written communications sent or received from a device, which would include emails and other communications that are plainly not text messages. Mr. Harper will interpret the phrase "text message" to have its ordinary meaning.

4. Mr. Harper objects to the definition of "Well Interference" as vague, ambiguous, overly broad, and unduly burdensome.

5. Mr. Harper objects to Instruction 6 as a strained mischaracterization of what a general objection and/or a denial is. Mr. Harper's denials herein, whether or not coupled with an objection in any form, shall constitute denials.

6. Mr. Harper objects to Instruction 9 as unduly burdensome, as requesting information that is subject to the attorney-client privilege and/or work product protection, and to the extent it seeks to impose obligations beyond those of the Federal Rules of Civil Procedure. Mr. Harper's responses herein will comply with the Federal Rules of Civil Procedure.

7. Mr. Harper objects to Instruction 10 to the extent it seeks to impose meanings at odds with the ordinary English meaning of these terms. Mr. Harper will interpret such terms in accordance with their ordinary English meaning.

8. Mr. Harper objects to Instruction 12 to the extent it seeks to impose an obligation at odds with the plain language of the requests.

9. Mr. Harper objects to Instruction 13 because, in purporting to demand a response under oath, it is inconsistent with, and purports to impose obligations that exceed those set forth in, the Federal Rules of Civil Procedure, including without limitation Rule 36.

## IV.

## RESPONSES TO FIRST REQUESTS FOR ADMISSION

**RESPONSE TO REQUEST NO. 1:**

Mr. Harper objects to Request for Admission No. 1 as it is vague and ambiguous, and uses undefined terms such as "supervisory involvement" and "day-to-day operations." To the extent a further response is required, and with all dates being approximations, Mr. Harper admits that he was (1) from May 2017, President; (2) from May 2016 to May 2017, Executive Vice President; and (3) from May 2016 to January 2019, Chief Financial Officer of Concho during the Relevant Time Period and admits that his role involved certain supervisory involvement in the day-to-day operations of Concho. Mr. Harper denies having direct supervisory involvement in every operation of Concho during the Relevant Time Period.

**RESPONSE TO REQUEST NO. 2:**

In response to Plaintiffs' Requests for Production in this Action, Mr. Harper engaged in a diligent investigation of his text messages for responsive communications. This review included a complete forensic capture of his phone, which was then searched and reviewed. Based on this investigation, Mr. Harper identified the produced documents with the bates labels:

| | | |
|---|---|---|
| WARCOP02789924; | WARCOP02789926; | WARCOP02789928 |
| WARCOP02789930 | WARCOP02789932 | WARCOP02789933 |
| WARCOP02789935 | WARCOP02789937 | WARCOP02789940 |
| WARCOP02789942 | WARCOP02789943 | WARCOP02789945 |

In addition, Mr. Harper reviewed the text messages produced by other witnesses and identified produced documents with the bates labels HAYS_00017, HAYS_00018, and SCHROER_001962, but did not identify any other relevant, responsive text messages in those productions. Mr. Harper also recalls generally communicating about work with colleagues at Concho during the Relevant Time Period, but does not recall the specific topics of any such messages. Otherwise, following Mr. Harper's reasonable inquiry into the question, the information Mr. Harper knows or can readily obtain is insufficient to enable him to admit or deny the request.

**RESPONSE TO REQUEST NO. 3:**

Mr. Harper admits that in January 2021, he received a litigation hold from Concho in connection with a lawsuit, filed on December 1, 2020, challenging the proposed merger between ConocoPhillips and Concho, which included certain records related to the Dominator project. Also in early 2021, Mr. Harper received a litigation hold from ConocoPhillips related to the same shareholder litigation. ConocoPhillips then supplemented the December 2020 litigation hold on September 29, 2021 to add this lawsuit to the description of covered matters. Mr. Harper

further objects to sub-parts (i)–(j) as seeking irrelevant information, the determination of which is not proportionate to the needs of this case. Otherwise, denied.

**RESPONSE TO REQUEST NO. 4:**

Mr. Harper objects to this request as overbroad. Given the unbounded scope of the request's inquiry into "all text messages," providing a response would require Mr. Harper to investigate whether plainly irrelevant messages were preserved. To the extent a further response is required, Mr. Harper states that, in response to Plaintiffs' Requests for Production in this Action, Mr. Harper engaged in a diligent investigation of his text messages for responsive communications. This review included a complete forensic capture of his phone, which was then searched and reviewed. Based on this investigation, Mr. Harper identified the produced documents with the bates labels:

| | | |
|---|---|---|
| WARCOP02789924; | WARCOP02789926; | WARCOP02789928 |
| WARCOP02789930 | WARCOP02789932 | WARCOP02789933 |
| WARCOP02789935 | WARCOP02789937 | WARCOP02789940 |
| WARCOP02789942 | WARCOP02789943 | WARCOP02789945 |

In addition, Mr. Harper reviewed the text messages produced by other witnesses and identified produced documents with the bates labels HAYS_00017, HAYS_00018, and SCHROER_001962, but did not identify any other relevant, responsive text messages in those productions. Mr. Harper also recalls generally communicating about work with colleagues at Concho during the Relevant Time Period, but does not recall the specific topics of any such messages. Otherwise, following Mr. Harper's reasonable inquiry into the question, the information Mr. Harper knows or can readily obtain is insufficient to enable him to admit or deny the request.

**RESPONSE TO REQUEST NO. 5:**

Mr. Harper objects to this request as overbroad. Given the unbounded scope of the request's inquiry into "text messages," providing a response would require Mr. Harper to investigate whether plainly irrelevant messages were preserved. To the extent a further response is required, Mr. Harper states that, in response to Plaintiffs' Requests for Production in this Action, Mr. Harper engaged in a diligent investigation of his text messages for responsive communications. This review included a complete forensic capture of his phone, which was then searched and reviewed. Based on this investigation, Mr. Harper identified the produced documents with the bates labels:

| | | |
|---|---|---|
| WARCOP02789924; | WARCOP02789926; | WARCOP02789928 |
| WARCOP02789930 | WARCOP02789932 | WARCOP02789933 |
| WARCOP02789935 | WARCOP02789937 | WARCOP02789940 |
| WARCOP02789942 | WARCOP02789943 | WARCOP02789945 |

In addition, Mr. Harper reviewed the text messages produced by other witnesses and identified produced documents with the bates labels HAYS_00017, HAYS_00018, and SCHROER_001962, but did not identify any other relevant, responsive text messages in those productions. Mr. Harper also recalls generally communicating about work with colleagues at Concho during the Relevant Time Period, but does not recall the specific topics of any such messages. Otherwise, following Mr. Harper's reasonable inquiry into the question, the information Mr. Harper knows or can readily obtain is insufficient to enable him to admit or deny the request.

**RESPONSE TO REQUEST NO. 6:**

Mr. Harper states that, to the best of his recollection and understanding, the default setting for his device was permanent retention of text messages with no automatic deletion protocol and so he does not recall needing to "turn off" any automatic delete function(s), and on that basis denies the request.

**RESPONSE TO REQUEST NO. 7:**

Mr. Harper further objects to Request for Admission No. 7 as it is vague, ambiguous, and overbroad in its request for an admission of "aware[ness]" as to the "risk" of litigation "concerning" "any" of the "allegations in the [440 paragraph] Complaint." Mr. Harper will interpret the request as seeking an admission as to the date he reasonably anticipated litigation relating to the claims in this case. On that basis, Mr. Harper admits that he reasonably anticipated litigation related to the claims in this case on or about July 30, 2021. Otherwise, denied.

**RESPONSE TO REQUEST NO. 8:**

Mr. Harper objects to this request as it calls on him to admit or deny the contents of privileged, attorney-client communications and attorney work product that are irrelevant to this lawsuit.

**RESPONSE TO REQUEST NO. 9:**

Mr. Harper objects to this request as it calls on him to admit or deny the contents of privileged, attorney-client communications and attorney work product that are irrelevant to this lawsuit.

**RESPONSE TO REQUEST NO. 10:**

Mr. Harper objects to Request for Admission No. 10 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a

further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 185 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 11:**

Mr. Harper objects to Request for Admission No. 11 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 190 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 12:**

Mr. Harper objects to Request for Admission No. 12 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 193 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 13:**

Mr. Harper objects to Request for Admission No. 13 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 194 of the Complaint. *See, e.g.*, Response to Interrogatory No. 1 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 14:**

Mr. Harper objects to Request for Admission No. 14 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 197 of the Complaint. *See, e.g.*, Response to Interrogatory No. 2 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 15:**

Mr. Harper objects to Request for Admission No. 15 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 199 of the Complaint. *See, e.g.*, Response to Interrogatory No. 2 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials

occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 16:**

Mr. Harper objects to Request for Admission No. 16 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 201 of the Complaint. *See, e.g.*, Response to Interrogatory No. 2 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 17:**

Mr. Harper objects to Request for Admission No. 17 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 209 of the Complaint. *See, e.g.*, Response to Interrogatory No. 3 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of such public-facing calls with investors and analysts, which would have been reviewed by Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the

request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 18:**

Mr. Harper objects to Request for Admission No. 18 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 237 of the Complaint. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 19:**

Mr. Harper objects to Request for Admission No. 19 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 260 of the Complaint. *See, e.g.*, Response to Interrogatory No. 4 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by,

Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 20:**

Mr. Harper objects to Request for Admission No. 20 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 275 of the Complaint. *See, e.g.*, Response to Interrogatory No. 5 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 21:**

Mr. Harper objects to Request for Admission No. 21 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 280 of the Complaint. *See, e.g.*, Response to Interrogatory No. 5 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in

support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 22:**

Mr. Harper objects to Request for Admission No. 22 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 283 of the Complaint. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of conference appearances, which would have been reviewed by Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 23:**

Mr. Harper objects to Request for Admission No. 23 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 331 of the Complaint. *See, e.g.*, Response to Interrogatory No. 3 Directed at Jack F. Harper. For example, it was Concho's practice for its IR Team to circulate to Concho's executive officers documents in support of such statement(s) in advance of such

public-facing calls with investors and analysts, which would have been reviewed by Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 24:**

Mr. Harper objects to Request for Admission No. 24 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed documents that support the statement identified in paragraph 332 of the Complaint. For example, it was Concho's practice for its IR Team to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither feasible six years after the fact nor proportional to the needs of this case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 25:**

Mr. Harper objects to Request for Admission No. 25 as it is vague and ambiguous, and uses undefined terms such as reviewing documents "as support" for a statement. To the extent a further response is required, Mr. Harper states that he reviewed numerous documents that support the statement identified in paragraph 339 of the Complaint. *See, e.g.*, Response to Interrogatory No. 5 Directed at Jack F. Harper. Further, it was Concho's practice for its IR Team

to hold regular meetings with Concho's executive officers prior to earnings calls where documents in support of such statement(s) would have been made physically available to, and reviewed by, Concho's executives, including Mr. Harper. Mr. Harper objects to subsections (b) through (e) of the request, which improperly call on him to provide a specific, day-by-day itinerary of the days reviews of such materials occurs, which is neither relevant to this suit, nor feasible six years after the fact, nor proportional to the needs of the case. To the extent a further response is required, denied.

**RESPONSE TO REQUEST NO. 26:**

Mr. Harper objects to Request for Admission No. 26 as it is too vague and ambiguous to admit or deny because of its use of general and undefined terms such as "met" and "regularly." Mr. Harper further objects to this request as it does not provide a reasonably specific time period and requests information that is more appropriately developed and discovered through deposition testimony.

**RESPONSE TO REQUEST NO. 27:**

Mr. Harper objects to Request for Admission No. 27 as it is vague and ambiguous, and does not define what constitutes an "emergency meeting." To the extent a further response is required, Mr. Harper states that he does not recall attending an "emergency" meeting regarding the Dominator project in March 2019 or April 2019, and on that basis denies the request.

**RESPONSE TO REQUEST NO. 28:**

Mr. Harper objects to Request for Admission No. 28 as it is vague and ambiguous, and uses undefined terms such as "approved." Additionally, Mr. Harper objects to this request as vague and ambiguous because it does not define the term "Operating Plan" or otherwise include any bates reference to documents that would allow Mr. Harper to understand the nature of the

request. As a result, the vague and ambiguous terms of Request for Admission No. 41 prevent Mr. Harper being able to admit or deny the request.

**RESPONSE TO REQUEST NO. 29:**

Mr. Harper objects to Request for Admission No. 29 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of the Weekly Dashboard generally on a weekly basis during the Relevant Time Period, from February 2018 to December 2019. Solely on that basis, Mr. Harper admits the Request with respect to subpart (a) . Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 30:**

Mr. Harper objects to Request for Admission No. 30 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of the "Daily Stats" document on a generally daily basis during the Relevant Time Period, from March 2018 to February 2020. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 31:**

Mr. Harper objects to Request for Admission No. 31 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of

iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of the Permian Basin Rig Map document on a generally weekly basis during the Relevant Time Period, from June 2018 to November 2018. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**<u>RESPONSE TO REQUEST NO. 32:</u>**

Mr. Harper objects to Request for Admission No. 32 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981)

(Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of the Weekly Rig Count Dashboard on a generally weekly basis during the Relevant Time Period, from August 2017 to April 2020. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 33:**

Mr. Harper objects to Request for Admission No. 33 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series

of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of the Company Book and Flash Report documents on a generally monthly basis during the Relevant Time Period, from August 2017 to January 2020. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 34:**

Mr. Harper objects to Request for Admission No. 34 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of the Company

and Team Graphs document on a generally monthly basis during the Relevant Time Period, from September 2017 to February 2020. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 35:**

Mr. Harper objects to Request for Admission No. 35 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of the Production Costs Graphs and Production Costs Report documents on a generally monthly basis during the Relevant Time Period, from August 2017 to October 2019. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response

should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 36:**

Mr. Harper objects to Request for Admission No. 36 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of the Production Highlights Graphs document on a generally monthly basis during the Relevant Time Period, from August 2017 to August 2019. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 37:**

Mr. Harper objects to Request for Admission No. 37 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of the Board Book documents on a generally quarterly basis during the Relevant Time Period, from October 2017 to February 2020. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 38:**

Mr. Harper objects to Request for Admission No. 38 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he

did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of certain documents in connection with review of exploratory wells on a quarterly basis during the Relevant Time Period, including in October 2017 and September 2018. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 39:**

Mr. Harper objects to Request for Admission No. 39 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See*

*Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of an "Ops Book" document on a generally monthly basis, and received a quarterly version of the document on a generally quarterly basis, during the Relevant Time Period, from November 2017 to February 2020. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 40:**

Mr. Harper objects to Request for Admission No. 40 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div.*

*589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of "Plan Review" documents, in connection with "Lunch and Learn" sessions, on a generally bi-annual basis during the Relevant Time Period, from October 2017 to February 2020. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 41:**

Mr. Harper objects to Request for Admission No. 41 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers

to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of the "Semi-Annual Lease Expiration Review" documents on a generally bi-annual basis during the Relevant Time Period. Solely on that basis, Mr. Harper admits the Request. Given the Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

**RESPONSE TO REQUEST NO. 42:**

Mr. Harper objects to Request for Admission No. 42 as it is vague and ambiguous, relies on undefined and nebulous terms such as "raised concerns," and is not sufficiently limited in time. Mr. Harper further objects to the confusing nature of the request, which asks whether he did any of 10 actions (connected with an "and/or") with respect to an (unenumerated) number of iterations of a recurring report. Mr. Harper interprets this request's use of "and/or" to be asking him to admit whether he did any one of those 10 actions with respect to the series of reports. *See Local Div. 589, Amalgamated Transit Union v. Massachusetts,* 666 F.2d 618, 627 (1st Cir. 1981) (Breyer, J.) ("the words 'and/or' commonly mean 'the one or the other or both'"); *Morey v. W. Am. Specialized Transp. Servs., Inc.*, 968 F.2d 494, 498 (5th Cir. 1992) (following *Loval Div. 589*'s understanding as the "accepted usage of the term 'and/or'"). Additionally, Mr. Harper objects to subparts (c)–(j) individually, which each refer to a specific item ("it") within a series of recurring reports but wholly fail to identify which version of such recurring report "it" refers to, which would prevent Mr. Harper from being able to admit or deny these subparts. To the extent a further response is required, Mr. Harper states that he received a version of the Long-Term Strategy Presentation document on a generally annual basis during the Relevant Time Period, including in April 2019. Solely on that basis, Mr. Harper admits the Request. Given the

Request's "and/or" language, Mr. Harper's response should not be taken as an admission as to any of subparts (b)–(j), which Mr. Harper did not need to analyze in order to respond to the request.

Dated: April 14, 2025

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ David D. Sterling*________________
David D. Sterling
Attorney-In-Charge
State Bar No. 19170000
Federal I.D. No. 07079
Amy Pharr Hefley
State Bar No. 24046046
Anthony J. Lucisano
State Bar No. 24102118
Federal I.D. No. 3369146
C. Frank Mace
State Bar No. 24110609
Federal I.D. No. 3385915
910 Louisiana Street
Houston, Texas 77002
(713) 229-1946
(7 13) 229-7946 (Fax)
david.sterling@bakerbotts.com
amy.hefley@bakerbotts.com
anthony.lucisano@bakerbotts.com
frank.mace@bakerbotts.com

*Attorneys for Defendants Concho Resources Inc., ConocoPhillips, as Successor in Interest to Concho Resources Inc., Timothy Leach, Jack F. Harper, and C. William Giraud*

**CERTIFICATE OF SERVICE**

I, Anthony Lucisano, hereby certify that on April 14, 2025, true copies of the foregoing Defendant Jack F. Harper's Responses and Objections to Lead Plaintiffs' Requests for Admission was served on all counsel of record via email.

*/s/ Anthony J. Lucisano*
Anthony J. Lucisano