**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Case No. 4:21-cv-02473 |

**CLASS REPRESENTATIVES' RESPONSE TO DEFENDANTS' SUPPLEMENTAL
BRIEFING ON LITIGATION HOLD OBJECTIONS**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

I.      BACKGROUND ...........................................................................................................1

II.     SUMMARY OF ARGUMENT .....................................................................................1

III.    ARGUMENT .................................................................................................................2

        A.      Legal Standard: Discovery About Litigation Holds is Proper ..............................2

        B.      Defendants' Retention Policy Does Not Obviate Their Preservation Duties ........3

        C.      Defendants Anticipated Litigation Well Before This Action Was Filed ...............5

        D.      The Requested Information Is Not Protected by Any Privilege ............................7

        E.      Other Litigation Holds Are Directly Relevant and Discoverable .........................9

IV.     CONCLUSION .............................................................................................................10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actos (Pioglitazone) Prods. Liab. Litig.*,
2014 WL 2872299 (W.D. La. June 23, 2014) ........................................................... 4

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
2021 WL 149841 (E.D. Tenn. Jan. 15, 2021) (Def. Br. ) ....................................... 8

*Bagley v. Yale Univ.*,
318 F.R.D. 234 (D. Conn. 2016) .............................................................................. 8

*Campos v. Webb Cnty. Tex.*,
288 F.R.D. 134 (S.D. Tex. 2012) ............................................................................. 3

*Cohen v. Trump*,
2015 WL 3617124 (S.D. Cal. June 9, 2015) ............................................................ 8

*Consol. Aluminum Corp. v. Alcoa, Inc.*,
244 F.R.D. 335 (M.D. La. 2006) .............................................................................. 7

*EPAC Techs., Inc. v. Thomas Nelson, Inc.*,
2015 WL 13729725 (M.D. Tenn. Dec. 1, 2015) (Def. Br. ) .................................... 9

*Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*,
876 F.3d 690 (5th Cir. 2017) ................................................................................... 8

*Guzman v. Jones*,
2012 WL 12893478 (S.D. Tex. May 9, 2012) .......................................................... 2

*Miramontes v. Peraton, Inc.*,
2023 WL 3855603 (N.D. Tex. June 6, 2023) ........................................................ 4, 7

*Proa v. NRT Mid-Atl., Inc.*,
2008 WL 11363286 (D. Md. June 20, 2008) (Def. Br. ) .......................................... 2

*Save Our Wetlands, Inc. v. Conner*,
1999 WL 508365 (E.D. La. July 15, 1999) .............................................................. 3

*Sill v. State Farm Lloyds*,
2013 WL 12393984 (W.D. Tex. Apr. 8, 2013) ........................................................ 2

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
365 F.3d 353 (5th Cir. 2004) ................................................................................... 3

*Thomas v. Cricket Wireless, LLC*,
  2020 WL 7344742 (N.D. Cal. Dec. 14, 2020) ................................................................ 2, 8

*Van Winkle v. Rogers*,
  82 F.4th 370 (5th Cir. 2023) ..................................................................................................7

*Yelton v. PHI, Inc.*,
  279 F.R.D. 377 (E.D. La. 2011) ............................................................................................7

*Yoshikawa v. Exxon Mobil Corp.*,
  2024 WL 3802997 (N.D. Tex. Aug. 12, 2024) ......................................................................3

**Other Authorities**

Rule 10(b) .............................................................................................................................3

Rule 26(c)(1) ........................................................................................................................9

Rule 26's ...........................................................................................................................3, 9

Rule 30(b)(6) .........................................................................................................................2

Pursuant to the Court's order dated May 19, 2025, Lead Plaintiffs Utah Retirement Systems and Construction Laborers Pension Trust for Southern California ("Class Representatives") respectfully respond to Defendants' Supplemental Briefing on Litigation Hold Objections.[1]

## I.     BACKGROUND

On May 19, 2025, the Court issued an Order instructing Defendants to file a brief to substantiate their objections to Class Representatives' legitimate, proportional, and relevant discovery request concerning (1) Requests for Admission Nos. 211-246 directed at Defendant Concho ("Concho RFAs"); and (2) Requests for Admission Nos. 1-9 directed at Defendants Leach, Harper and Giraud ("Individual Defendant RFAs" and, together with Concho RFAs, the "RFAs"). Defendants filed their opening brief on June 3, 2025. See ECF No. 132 ("Def. Br.").

## II.     SUMMARY OF ARGUMENT

It is undisputed that Defendants destroyed substantial evidence, including custodial emails from over 15 Concho custodians whom Class Representatives sought discovery from in this action, including Defendant Harper's emails. Def. Ex. A, ¶¶4-5. In fact, it is highly likely that Defendants destroyed many other Concho employees' emails during the relevant time period, *i.e.*, August 1, 2017 to February 28, 2020, as it relates to the production of documents. The destruction of Defendant Harper's custodial emails is particularly disturbing because his emails would have contained critical evidence exposing his knowledge of certain critical issues in support of falsity and scienter. Defendants' representation that this destruction was the result of a document retention policy is insufficient to preclude discovery on litigation holds because: (a) ████

████████████████████████

---

[1] Unless otherwise noted, internal quotation marks and citations have been omitted and emphasis added throughout.

1

███████████████████████████████████████████████████████

██████████████████████████████████████, which should have stayed any

purported ordinary course destruction through deletion policies. As such, Class Representatives

should be entitled to discovery on the litigation hold notices as an initial step to further understand

how and why documents were destroyed for many critical witnesses.

## III.   ARGUMENT

### A.   Legal Standard: Discovery About Litigation Holds is Proper

Courts regularly allow discovery into the basic details of litigation holds— such as when

they were issued, to whom, and for how long—with no prerequisite showing of spoliation. *See,*

*e.g.*, *Guzman v. Jones*, 2012 WL 12893478, at *4 (S.D. Tex. May 9, 2012) (reopening discovery

to allow Rule 30(b)(6) deposition to cover "existence and extent" of any litigation hold placed on

particular data); *Sill v. State Farm Lloyds*, 2013 WL 12393984, at *13 (W.D. Tex. Apr. 8, 2013)

(refusing to protect the defendant from a 30(b)(6) topic seeking information about litigation holds

implemented in the action); *Thomas v. Cricket Wireless, LLC*, 2020 WL 7344742, at *2-3 (N.D.

Cal. Dec. 14, 2020) (allowing inquiry into "(1) when and to whom the litigation hold notices were

given, (2) what kinds and categories of information and data [company] employees were

instructed to preserve and collect, and (3) what specific actions they were instructed to take to

that end.").[2] A party seeking a protective order has a heavy burden to show "good cause" and a

---

[2] *Proa v. NRT Mid-Atl., Inc.*, 2008 WL 11363286, at *3-4, *27 (D. Md. June 20, 2008) (Def. Br. at 5), is readily distinguished. Whereas the RFAs ask (a) whether a litigation hold was issued by a given date (e.g., Concho RFAs 215-244) or (b) whether any litigation hold issued within a given period required preservation of emails and text messages (e.g., Concho RFAs 245-246), *Proa* regards interrogatories and requests for production seeking the specific dates of the litigation holds, the actions defendants took to implement the holds, and "the scope, nature, description, and type of documents *that were placed on hold as a result of the litigation hold*, *as well as all related documents*."). *Proa*, 2008 WL 11363286, at *27 (emphasis added). Furthermore, the cases collected on pages 3-4 of *Proa* are merely general case law on work product and attorney-client privilege, not "cases prohibiting discovery of litigation hold notices more generally," as Defendants suggest. *Id.*, at 3-4 (citing, *inter alia*, *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) (addressing basic standard for hardship required to compel protected work product); *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (defining work product protection)); Def. Br. at 5.

"specific need for protection," including "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Campos v. Webb Cnty. Tex.*, 288 F.R.D. 134, 136 (S.D. Tex. 2012); *see also Save Our Wetlands, Inc. v. Conner*, 1999 WL 508365, at *2 (E.D. La. July 15, 1999) (finding no "good cause" for protective order and noting Rule 26's "liberal" discovery standard).

## B.  Defendants' Retention Policy Does Not Obviate Their Preservation Duties

Defendants concede they destroyed documents from the relevant time period, including all or nearly all of Defendant Harper's emails—a likely important source of Defendant Harper's contemporaneous knowledge—and custodial emails of senior executives like Clay Bateman and Chris Spies, whose vast personal knowledge of falsity and regular contact with the Individual Defendants is well established.[3] Defendants justify this destruction with an affidavit by ConocoPhillips employee Jeremy Moore that Concho had destroyed documents per default document retention policies. Def. Br. 1-2; Def. Ex. A, ¶¶4-5. That justification is sorely wanting.

First, Moore's affidavit is glaringly ambiguous, asserting that Concho had a sixth-month retention policy applied to "most employees" with no explanation as to whom the policy covered

---

[3] *See, e.g.*, Exhibit A, WARCOP02140904; Exhibit B, Bateman Tr. 130-32 █████████ ████████████████████████████████████████████████████████████████ ; Exhibit E, Spies Tr. 143-44, 162-64 ████ ███████████████████████████████████████████████████████████████ . While the case law regarding the imputation of knowledge for purposes of scienter is favorable to Class Representatives, it is still important to obtain this information directly from Defendant Harper's files to combat Defendants' attempts to narrow the interpretation of scienter at summary judgment and trial and Defendant Harper's fading memory. *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) ("For purposes of determining whether a statement made by the corporation was made by it with the requisite Rule 10(b) scienter we believe it appropriate to look to the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like)…".); *see also Yoshikawa v. Exxon Mobil Corp.*, 2024 WL 3802997, at *6 (N.D. Tex. Aug. 12, 2024) (imputing scienter from employee who "allegedly orchestrated and participated in the fraud of artificially inflating the learning curves, which furnished information to inflate publicly reported proved reserves and resource base"). Defendants Leach, Harper, and Giraud, as well as senior executives like Bateman, Spies, Schroer, and Hayes were all involved in the preparation of public company statements. *See* Exhibit C, Giraud Tr. 116:13-117:10; 118:1-5; 121:2-122:3; 115:21-23; Exhibit D, Harper Tr. 198:17-203:19; Exhibit E, Spies Tr. 258:25-260:25; Exhibit F, Schroer Tr. 189:19-190:17.

and why other than to say that "certain other" undefined employees were "grandfathered in" to a different policy. For example, Defendants have not explained why custodial data was deleted for Defendant Harper who joined Concho in 2006 but not for Defendant Leach[4] who worked at Concho from its inception (before Defendant Harper joined) or Defendant Giraud who joined Concho in 2008 or 2009 (after Defendant Harper joined).

Second, the existence of such a six-month policy does not preclude Defendants' document preservation obligations. *See Miramontes v. Peraton, Inc.*, 2023 WL 3855603, at *5–6 (N.D. Tex. June 6, 2023) ("[T]he selective preservation of relevant evidence in the face of imminent litigation can evince bad faith, even if destruction was pursuant to routine policy."); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2014 WL 2872299, at *5 (W.D. La. June 23, 2014) (a duty to preserve "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation," at which time "it must suspend its routine document retention/destruction policy"). As discussed further below, Defendants should have preserved these destroyed documents because they anticipated litigation well before the filing of this lawsuit.

Third, any argument that the merger with ConocoPhillips led to document deletion is a red herring. According to Moore's affidavit, all emails that existed at the time of the merger in January 2021 were migrated over to ConocoPhillips, whether as individual mailboxes or a shared inbox, and became subject to a one-year retention policy. Accordingly, all such emails should have been retained at the least until one year after the merger, and thus should have existed on July 30, 2021, the date this lawsuit was filed.

---

[4] Also suspicious, Defendant Leach's produced custodial files contain less than 500 emails in total.

### C.    Defendants Anticipated Litigation Well Before This Action Was Filed

Defendants anticipated litigation on precisely the issues alleged in this action by August

2019.



---

[5] Exhibit G, SCHROER_000931; Exhibit H, WARCOP02569847; Exhibit I, SCHROER_000925.
[6] Exhibit G, SCHROER_000931.
[7] *Id.*
[8] *Id.*
[9] Exhibit F, Schroer Tr. 194-196.
[10] Exhibit J, Privilege Log Excerpt, Priv. Log. Nos. CXO_PRIV_00782, 00783, 00789, 00790, 00791, 00787, 00792.



As part of the relief granted, the Court should order in-camera review of each of the withheld documents highlighted in Exhibit J.

---

[11] *Id*. Priv. Log Nos. CXO_PRIV_00782, 00783, 00789, 00790, 00791, 00787, 00792, 00801, 00802, 00803.
[12] Exhibit K, WARCOP02605647.
[13] *Id*.
[14] Exhibit J, Privilege Log Excerpt, Priv. Log Nos. CXO_PRIV_00936, 00937, 00939, 00928, 00929, 00933, 00934, 00935.
[15] Compare Exhibit K, WARCOP02605647 (⬛⬛⬛) with Exhibit L, WARCOP02679029 (⬛⬛⬛).
[16] Exhibit M, WARCOP01616066.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ Thus, even assuming Defendants'

document retention policy was as described, all documents from February 6, 2019 and onward

clearly should have been preserved. *See Van Winkle v. Rogers*, 82 F.4th 370, 375 (5th Cir. 2023)

("A party's duty to preserve evidence comes into being when the party has notice that the evidence

is relevant to the litigation or should have known that the evidence may be relevant."); *Consol.*

*Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 342 (M.D. La. 2006) (a duty to preserve is

triggered, "not when it ha[s] actual knowledge of this litigation and its scope, but instead when it

ha[s] constructive knowledge or should have known that certain information may be relevant to

future litigation.").[17] The fact that Defendants did not preserve documents from this period

evidences bad faith. *See Miramontes*, 2023 WL 3855603, at *5-6 ("[T]he selective preservation

of relevant evidence in the face of imminent litigation can evince bad faith, even if destruction

was pursuant to routine policy."); *Yelton v. PHI, Inc.*, 279 F.R.D. 377, 387-89 (E.D. La. 2011)

(finding spoliation where a party failed to place a person with relevant evidence on the litigation

hold). Discovery regarding litigation holds is therefore necessary and proper.

### D.    The Requested Information Is Not Protected by Any Privilege

Litigation hold notices are not *per se* privileged, and Defendants have not even attempted

to show that the notices issued by Concho meet the specific criteria for attorney-client privilege:

"(1) a ***confidential*** communication; (2) to [or from] a lawyer or his [or her] subordinate; (3) for

---

[17] Defendants misconstrue *In re Pfizer Inc. Sec. Litig.*, which agrees that a duty to preserve is triggered upon "reasonable notice of the foreseeability of this securities fraud litigation." 288 F.R.D. 297, 316-17 (S.D.N.Y. 2013); Def. Br. at 2 (misrepresenting *Pfizer* as holding that duty accrues when complaint is filed).

7

the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *See Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (emphasis in original); *see also Bagley v. Yale Univ.*, 318 F.R.D. 234, 239-40 (D. Conn. 2016) (finding litigation hold notices are not privileged). Certainly, Defendants, having offered no evidence of any of these elements, have not met their burden of proving that attorney-client privilege applies. *See Equal Emp. Opportunity Comm'n*, 876 F.3d at 695 (privilege is a "'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof.").

Regardless, at issue here is not the production of actual litigation hold notices, but requests for admission regarding basic details of such notices. It is hornbook law that privilege attaches to the legal content of communications, not the fact of communication. *See Equal Emp. Opportunity Comm'n*, 876 F.3d at 695. Class Representatives' requests to understand the ***kinds*** of documents requested to be preserved and when is precisely the sort of discovery courts regularly allow. *See, e.g.*, *Thomas v. Cricket Wireless, LLC*, 2020 WL 7344742, at *2-3 (N.D. Cal. Dec. 14, 2020) (allowing discovery into the "kinds and categories of information" covered by litigation holds); *Cohen v. Trump*, 2015 WL 3617124, at *7 (S.D. Cal. June 9, 2015) ("[a] party may not foreclose any inquiry into the contents of those notices at deposition or through other means.") (citing cases). Indeed, Defendants' preferred case, *Edwards v. McDermott Int'l, Inc.*, likewise supports that "discovery of ESI retention and disposition policies is fair game," and notes that this view is shared by "the majority of courts across the country that have considered the issue." 2021 WL 12296466, at *2 (S.D. Tex. Dec. 22, 2021) (rejecting defendants "discovery-on-discovery" argument and requiring defendants to produce ESI disposition and retention policies, but not the production of the actual litigation hold letters).[18] Thus, no privilege is implicated here.

___

[18] Importantly, unlike in the cases Defendants cite, Plaintiffs' RFAs do not seek production of the actual litigation hold letters or of emails with counsel regarding the litigation holds. *See, e.g.*, *Adkisson v. Jacobs Eng'g Grp., Inc.*,

### E.     Other Litigation Holds Are Directly Relevant and Discoverable

Litigation holds from other actions are relevant because they should have stayed destruction policies. ███████████████████████████████████████████████████████████

█████████████.[19] Thus, understanding what litigation holds were in effect during the relevant period, and to whom those holds were directed, is critical to understanding what documents existed in August 2019 that were subject to preservation obligations despite deletion policies.

Defendants argue that Class Representatives' requests should be precluded because Class Representatives would not have standing to enforce external litigation holds is off point. Def. Br. at 6-7. Class Representatives do not seek to enforce a litigation hold issued by another party; they merely seek to understand what relevant evidence existed at the time Defendants could have reasonably foreseen civil litigation in connection with the allegations in this action and what information from other actions were preserved such that Defendants would have (or should have) additional information located elsewhere. Thus, for example, *In re Delta/AirTran Baggage Fee Antitrust Litig.*, wherein the plaintiffs sought to enforce provisions of a confidential DOJ investigation against Delta, is inapposite. 770 F. Supp. 2d 1299, 1307-08 (N.D. Ga. 2011) (Def. Br. at 6-7).

Last, Defendants summarily invoke Rule 26(c)(1) in a footnote, arguing that complying with the RFAs would be costly and burdensome. Def. Br. 7-8 n. 1. Moving for a protective order places a high burden on Defendants to show why Rule 26's liberal disclosure should not apply. Defendants have not put forth any evidence substantiating their burden, such as declarations from

---

2021 WL 149841, at *8 (E.D. Tenn. Jan. 15, 2021) (Def. Br. at 3-4) (precluding discovery of direct communications with counsel containing legal advice about litigation holds); *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, 2015 WL 13729725, at *6-7 (M.D. Tenn. Dec. 1, 2015) (Def. Br. at 4) (considering and ultimately requiring production of actual litigation hold notices).

[19] See Exhibit F, Schroer Tr. 254-255.

employees evidencing the burden of trying to pull information from past or ongoing lawsuits or even the number of litigation holds at issue. Moreover, Concho almost certainly had a standard method for issuing litigation holds that will allow Defendants to respond to the RFAs by conducting a simple custodial interview of an individual with knowledge (likely in-house counsel) of how such holds were issued. Defendants cannot credibly claim that their legal department did not keep extensive, well-organized records of litigation holds issued to employees. Defendants have made no showing of "good cause" to justify a protective order because they cannot. The litigation holds are highly relevant to the admitted destruction and that destruction, as well as Defendants' attempts to preclude further discovery into available information and resources, is highly prejudicial to Class Representatives.

## IV.    CONCLUSION

For the foregoing reasons, this Court should: (1) deny Defendants' motion for protective order in its entirety; (2) compel Defendants to respond to the RFAs where appropriate; and (3) for such other and further relief this Court deem just and reasonable, including the in-camera review requested in Section III.C.

DATED: June 10, 2025                    Respectfully submitted,

                                        /s/ Alfred L. Fatale III
                                        **LABATON KELLER SUCHAROW LLP**
                                        Alfred L. Fatale III (*pro hac vice*)
                                        Joseph N. Cotilletta (*pro hac vice*)
                                        Rachel A. Berger (*pro hac vice*)
                                        140 Broadway
                                        New York, NY 10005
                                        Telephone: (212) 907-0700
                                        Facsimile: (212) 818-0477
                                        afatale@labaton.com
                                        jcotilletta@labaton.com
                                        rberger@labaton.com

*Class Counsel for Class Representatives and the Class*


**FOGLER, O'NEIL & GRAY LLP**
Murray J. Fogler
Robin Finney O'Neil
909 Fannin St., Suite 1640
Houston, TX 77010
Telephone: 713-481-1010
Facsimile:713-574-3224
mfogler@foglerlaw.com
roneil@foglerlaw.com

*Liaison Counsel for Class Representatives and the Class*

11

**CERTIFICATE OF SERVICE**

I certify that on June 10, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

/s/ *Alfred L. Fatale III*
Alfred L. Fatale III