**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Case No. 4:21-cv-02473 |

**CLASS REPRESENTATIVES' MOTION TO COMPEL PRODUCTION OF**
**DEFENDANT CONCHO RESOURCES, INC.'S ARIES DATABASE**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.  NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II.  STATEMENT OF ISSUES .................................................................................................1

III.  SUMMARY OF ARGUMENT ...........................................................................................2

IV.  LEGAL STANDARD..........................................................................................................2

   A.  Standard on a Motion to Compel.............................................................................2

   B.  Standard Under Section 10(b) and Rule 10b-5 .......................................................3

V.  ARGUMENT........................................................................................................................4

   A.  The ARIES Database Contains Critical Data Relevant to the Claims Asserted in this Action................................................................................................4

   B.  Producing the ARIES Database Is Not Disproportionately Burdensome................9

VI.  CONCLUSION...................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ArthroCare Corp. Sec. Litig.*,
726 F. Supp. 2d 696 (W.D. Tex. 2010)......................................................................4

*In re: BP p.l.c. Sec. Litig.*,
2016 WL 3090779 (S.D. Tex. May 31, 2016) .................................................. *passim*

*In re Concho Res. Inc., Sec. Litig.*,
2023 WL 4146278 (S.D. Tex. June 23, 2023) ...........................................................4

*Crosby v. Louisiana Health Serv. & Indem. Co.*,
647 F.3d 258 (5th Cir. 2011) ....................................................................................2

*Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
620 F. Supp. 3d 603 (S.D. Tex. 2022) ......................................................................3

*Edwards v. McDermott Int'l*,
2022 WL 1568279 (S.D. Tex. May 18, 2022) ..........................................................3

*Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
514 F. Supp. 3d 942 (S.D. Tex. 2021) ......................................................................8

*Kerr v. Exobox Techs. Corp.*,
2012 WL 201872 (S.D. Tex. Jan. 23, 2012) .............................................................8

*Lee v. Active Power, Inc.*,
29 F. Supp. 3d 876 (W.D. Tex. 2014)........................................................................8

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ....................................................................................4

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,
894 F.2d 1482 (5th Cir. 1990) ..................................................................................3

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
365 F.3d 353 (5th Cir. 2004) .................................................................................8, 9

*Tri Invs., Inc. v. United Fire & Cas. Co.*,
2019 WL 3308503 (S.D. Tex. May 17, 2019)...........................................................2

*In re Venator Materials PLC Sec. Litig.*,
547 F. Supp. 3d 624 (S.D. Tex. 2021) ...............................................................4, 8, 9

*Yoshikawa v. Exxon Mobil Corp.*,
2024 WL 3802997 (N.D. Tex. Aug. 12, 2024)........................................................................8

**Statutes**

15 U.S.C. § 78j..............................................................................................................3, 8, 9

15 U.S.C. § 78u..................................................................................................................11

**Rules**

17 C.F.R. § 240.10b-5...........................................................................................................3

Fed. R. Civ. P. 26(b)(1).........................................................................................................2

Fed. R. Civ. P. 34.................................................................................................................2

Fed. R. Civ. P. 37(a)(3)(B) ...................................................................................................2

**Other Authorities**

*Aries Software*, HALLIBURTON,
https://www.halliburton.com/en/software/decisionspace-365-enterprise/agile-asset-management/aries-software (last visited June 23, 2025) ..................................................4

*ConocoPhillips, Company Profile,* FINANCIAL TIMES,
https://markets.ft.com/data/equities/tearsheet/profile?s=COP:NYQ#:~:text=ConocoPhillips%20is%20an%20exploration%20and,and%20the%20Gulf%20of%20Mexico (last visited June 23, 2025)..................................................................9

*Features*, PHDWIN, https://www.phdwin.com/features/ (last visited June 23, 2025) ..........................................................................................................................4

*Solutions*, COMBOCURVE, https://combocurve.com/solutions/ (last visited June 23, 2025) ..........................................................................................................................4

Pursuant to the Court's order during the pre-motion conference held on May 12, 2025, Lead Plaintiffs Utah Retirement Systems and Construction Laborers Pension Trust for Southern California ("Class Representatives") respectfully move to compel production of Defendant Concho Resources Inc.'s ("Concho") Aries databases.[1]

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On May 12, 2025, the Court held a discovery hearing to address certain unresolved discovery disputes, including Request No. 3 of Plaintiffs' Third Set of Requests for Production ("Request No. 3"), attached hereto as Exhibit A. The parties previously engaged in substantial conferral efforts including Class Representatives' good-faith letter dated March 20, 2025[2] and a lengthy phone conference on March 21, 2025. The Court requested the parties brief their positions on Request No. 3.

## II.    STATEMENT OF ISSUES

Whether Defendants must produce the ARIES databases requested in Request No. 3. To narrow the dispute, Class Representatives are seeking only two sets of databases within Concho's larger ARIES database: (1) the databases associated with signed, sealed reserve reports by third party auditors Netherland, Sewell & Associates ("NSAI") and Cawley, Gillespie and Associates, Inc. ("CGA") for 2017, 2018, and 2019, along with all settings needed to completely "tie-in" into those reports; and (2) Concho's corporate, or internal, databases for final budgets and plans in 2017, 2018, and 2019, along with all settings needed to completely "tie-in" those budgets and plans.

---

[1] Unless otherwise noted, internal quotation marks and citations have been omitted and emphasis added throughout. Citations to paragraphs ("¶") refer to the Consolidated Complaint ("Complaint," ECF No. 25).
[2] *See* Exhibit B, attached hereto.

## III.    SUMMARY OF ARGUMENT

Concho's ARIES databases contain non-privileged information critical to the claims asserted in this action. Most critically, these databases are necessary to: (a) analyze data reported in accordance with SEC filings; (b) determine whether the modeling Concho ███████████ ████████████████████████████████████████; (c) determine how Concho ██████████████████████████; and (d) analyze real-time economic data and other performance-driven data ██████████████████████████████ ██████ ██████ ████ ███ ██████████ ███████ ███ █████████ █████ ██████ ██████████████████████████. As to burden, ██████████████████████ ██████████████████████ In fact, Concho has already turned over multiple similar, but incomplete, databases in this action. Simply put, considering the incredible importance of the databases when compared to the minimal burden to Concho (along with other proportionality factors), this Court should grant Class Representatives' motion to compel.

## IV.    LEGAL STANDARD

### A.    Standard on a Motion to Compel

Under Rule 37(a)(3)(B), a party seeking discovery may obtain an order compelling production against another party if the latter fails to produce documents requested under Rule 34. The scope of discovery is broad under Rule 26(b)(1), which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011).

**Relevancy**: "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.*at 262. The burden for showing relevancy "is lower than at the trial stage." *Tri Invs., Inc. v. United Fire & Cas. Co.*,

2

2019 WL 3308503, at *1 (S.D. Tex. May 17, 2019). The party *resisting* a motion to compel bears

the burden of demonstrating how each request for production "is not relevant or how each question

is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*,

894 F.2d 1482, 1485 (5th Cir. 1990).

**Proportionality**: Working against relevancy and the right to obtain discovery is whether

the discovery sought is proportional to the needs of the case. Courts weigh six factors to determine

proportionality: (1) the importance of the issues at stake in the action; (2) the amount in

controversy; (3) the parties' relative access to relevant information; (4) the parties' resources;

(5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense

of the proposed discovery outweighs its likely benefit. *Edwards v. McDermott Int.'l, Inc.*, 2022

WL 1568279, at *2 (S.D. Tex. May 18, 2022).

### B.    Standard Under Section 10(b) and Rule 10b-5

Here, the claims arise under Section 10(b) of the Securities Exchange Act of 1934

("Exchange Act") and Rule 10b-5 promulgated thereunder. The requested discovery is specifically

relevant to the falsity and scienter elements of the claims.

The falsity element of a Section 10(b) claim requires that the defendant make a material

misrepresentation or omission. *See In re: BP p.l.c. Sec. Litig.*, 2016 WL 3090779, at *6–7 (S.D.

Tex. May 31, 2016). A misstatement is materially false "if there is a substantial likelihood that a

reasonable investor would consider it important in making an investment decision." *Delaware*

*Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 620 F. Supp. 3d 603, 619 (S.D. Tex. 2022) (citing

*Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988)).

With respect to the scienter element, the Court previously explained that scienter can be

proven by showing recklessness or "an extreme departure from ordinary care concerning a present

danger of misleading buyers that was either known or so obvious it had to be known to a

3

defendant." *In re Concho Res. Inc., Sec. Litig.*, 2023 WL 4146278, at \*3 (S.D. Tex. June 23, 2023); *see also In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 663-65 (S.D. Tex. 2021) (review of weekly reports, attendance at weekly meetings, the importance of a particular undertaking to a company, and defendants' voluntary decision to speak publicly on a topic support an inference of scienter); *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 725 (W.D. Tex. 2010) (taken together, circumstantial evidence including repeated red flags, the duration of the fraud, and the role of the individual defendants in the company support an inference of "at least severe recklessness"); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009) ("contemporaneous documents and [post-Class Period] admissions" can coalesce to prove scienter). Where a defendant provides a precise estimate but is aware that estimate was highly uncertain, summary judgment in favor of defendants is improper. *BP*, 2016 WL 3090779, at \*13.

## V.     ARGUMENT

### A.     The ARIES Database Contains Critical Data Relevant to the Claims Asserted in this Action

ARIES, a product owned by Halliburton, is a petroleum economics and reserves software program used by oil and gas companies to manage data, track production, and forecast reserves. ARIES allows companies to access "accurate economic data to justify projects, plan budgets, report reserves and assess price or ownership changes."[3] Several of Concho witnesses described how Concho used the ARIES database during the relevant period:

- ██████ ██████ ██████ ██████ ██████ ██████ ██ ██ ████████ ███████████████████████████████████████████████████████████

---

[3] *Aries Software*, HALLIBURTON, https://www.halliburton.com/en/software/decisionspace-365-enterprise/agile-asset-management/aries-software (last visited June 23, 2025). ARIES has two main competitors – Combocurve and PHDwin. Combocurve describes its software as a solution allowing "[f]orecasting, type curves, economics, and net zero planning in one place." *Solutions*, COMBOCURVE, https://combocurve.com/solutions/ (last visited June 23, 2025). PHDwin touts its software as an "economics and reserves analysis software" that, among other things, allows users to "manag[e] [] data and perform[] sensitivity runs and lookbacks." *Features*, PHDWIN, https://www.phdwin.com/features/ (last visited June 23, 2025).

4



Indeed, the requested ARIES databases are critical to establishing **both** falsity and scienter.

*First*, these databases will enable Class Representatives to determine exactly what models

Defendants used in crafting their Class Period statements ████████████████████

████████████████████████████████ This is essential to assess the

[4] Exhibit C, Giraud Tr. at 107-108.
[5] Exhibit D, Harper Tr. at 165-166. ████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████ ." *Id.* at 167-168.
[6] Exhibit E, Bateman Tr. at 199-203.
[7] Exhibit F, Corbett Tr. at 56-58.
[8] *Id.*
[9] Exhibit G, Angelos Tr. at 276-278.
[10] Exhibit H, Harrison Tr. at 51-53, 73-74; *see* Exhibit I, WARCOP02551408 (████████████████████
████████████ ); Exhibit J, WARCOP02065458 (████████████████ ).
[11] Exhibit K, Guthrie Tr. at 93-95.

falsity of Defendants' Class Period statements, which include, for example, "we've modeled the outcome as we see it based on the spacing that has either already happened or will happen in the future" (¶194), and "[a]s it relates to kind of what we're seeing compared to what we're expecting, we have built our type curves and our internal modeling based upon the results we have seen here" (¶262). The databases will also show what the ROR was for Concho's Class Period projects, ███ ███████████████████████. Such information is in stark contrast to the rosy picture Defendants painted during the Class Period. For example, Defendant Leach stated on May 1, 2018 that "[o]ur results reflect our focus on large-scale project development, which enables us to maximize ultimate recovery, efficiencies *and returns*." ¶213. Likewise, on February 20, 2019, Defendant Harper stated, "we continued to advance our style of *returns-centric development*, which focuses on large-scale and multi-well projects across our asset base" (¶275), and Concho's April 30, 2019 earnings release emphasized that "[o]ur high-quality assets *and returns-driven approach* position us to extend our track record of enhancing value for shareholders." ¶289. ████████ ████████████████████████████████████████████████████████t.[12]

Second, these databases are important to establishing Defendants' scienter. ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████"[13] For example, ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

---

[12] Exhibit D, Harper Tr. at 269-270.
[13] Exhibit E, Bateman Tr. at 199-203



.[14]

Crucially, this process ███████████████ is *precisely* the process that Judge Sheldon

*already found* would support scienter if substantiated. Specifically, the memorandum and

recommendation on Defendants' Motion to Dismiss, which was adopted by this Court states:

> FE-1 explained, traditionally, reservoir engineers are responsible for putting together the project's production forecast and then they would send it to Giraud. (*Id.* at ¶ 345.) It would then go to the corporate engineering group for high-level review. (*Id.*) The data would then go to the corporate finance group to use in the company's financials. (*Id.*) It would then go to Giraud for discussion with the technical teams for final approval. (*Id.*) It is in this last stage where risk modeling would go on top of the final data to account for experimentation risk. (*Id.*) FE-1 indicated it was clear this last step did not happen for the Dominator when he evaluated the final data set. (*Id.* at ¶ 80.) FE-1 confirmed Giraud made a conscious decision to use Concho's historical risk profile numbers in forecasting rather than apply the significantly higher risk profile recommended by he and his team. (*Id.* at ¶ 81.) FE-1 explained that he was given the directive to apply the historic profile to Dominator by Giraud. (*Id.*) Management likewise failed to heed FE-1's warnings even though they were brought to their attention and Giraud's attention several times. (*Id.* at 83, 87.) ***The true risk profile was available, as FE-1 indicated, because his team's analysis was tracked in Concho's "Aries" database***. (*Id.*) ***Thus, at any time the financial forecasts were increased by the executive team and disseminated to the public, Defendants had the true data but were not applying it***. ***This supports a strong inference of scienter that Giraud at the least recklessly, but more likely knowingly, used the incorrect risk profile to develop financial forecasts to mislead the public***.[15]

Thus, review of the ARIES databases is absolutely critical to establishing certain of the

allegations supporting scienter. Expert analysis of these databases will aid the jury in

---

[14] Exhibit K, Guthrie Tr. at 53-56.

[15] *Memorandum and Recommendations*, ECF No. 38 at 43; *Order adopting Memorandum and recommendations*, ECF No. 43.

understanding what Concho's corporate team, its senior executives, and the Individual Defendants reviewed before issuing the alleged misstatements in at least two ways: (1) explaining what ARIES is, the information it contains, and what it showed during the Class Period; and (2) how information generated at the time, from an industry custom and practice standpoint, was so clearly problematic. The latter point is key because to the extent Defendants or other senior executives with scienter imputable to Concho[16] reviewed data contrary to the alleged misstatements, ██████████████████ ██████████████, a jury will likely determine that those statements were both false and made with "severe recklessness" creating a "present a danger of misleading buyers or sellers which is either known to the defendant or is *so obvious* that the defendant must have been aware of it." *BP*, 2016

---

[16] Importantly, scienter can be established by showing knowledge or recklessness for a statement's speaker or for any other company official present when the statement is made. *Venator*, 547 F. Supp. 3d at 665 ("[A] high ranking company official cannot sit quietly at a conference with analysts, knowing that another official is making false statements and hope to escape liability for those statements.") (*citing Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 262 (5th Cir. 2005)); *Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 514 F. Supp. 3d 942, 956 (S.D. Tex. 2021) (same). ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Moreover, scienter is properly imputed to a corporate defendant from any individual who participated in making the statement. *See Yoshikawa v. Exxon Mobil Corp.*, 2024 WL 3802997, at *6 (N.D. Tex. Aug. 12, 2024) (imputing scienter from employee who "allegedly orchestrated and participated in the fraud of artificially inflating the learning curves, which furnished information to inflate publicly reported proved reserves and resource base"); *Lee v. Active Power, Inc.*, 29 F. Supp. 3d 876, 882 (W.D. Tex. 2014) (imputing scienter from an employee who managed and oversaw regional operations); *Kerr v. Exobox Techs. Corp.*, 2012 WL 201872 (S.D. Tex. Jan. 23, 2012) (imputing scienter from the company's lawyer who participated in preparing and filing the statements at issue); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) ("For purposes of determining whether a statement made by the corporation was made by it with the requisite Rule 10(b) scienter we believe it appropriate to look to the state of mind of the individual corporate official or officials who *make* or *issue* the statement (or *order* or *approve* it or its *making or issuance*, or *who furnish information or language for inclusion* therein, or the like)....") (emphasis added). ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

8

WL 3090779, at *10 (emphasis added); *see also Venator*, 547 F. Supp. 3d at 650; *Southland,* 365 F.3d at 366. Thus, the requested databases are extremely relevant to the merits of this action.

### B.    Producing the ARIES Database Is Not Disproportionately Burdensome

None of the proportionality factors favor Defendants here.

*First*, as to the importance of issues at stake, as in *McDermott*, the claims are brought under Section 10(b) of the Exchange Act, whose "central purpose ... is to protect investors and would-be investors in the securities market against misrepresentations," and thus, "there can be little debate that the issues at stake in this case are meaningful." 2022 WL 1568279, at *2.

*Second*, as to the amount in controversy, while expert disclosures on the question of damages have not yet occurred in this case, the total damages amount in this action is estimated to be substantial—over $2.3 billion—far exceeding the "more than $1 billion in damages" estimated in *McDermott*. *Id*. at *3.[17]

*Third*, as to the parties' relative access to the sought-after information, the requested materials are databases maintained by Defendants. Thus, as in *McDermott*, Defendants have "complete and exclusive control over" the requested discovery, and "Plaintiffs have no way of obtaining such information" except via discovery from Defendants, and Defendants are the only source of ensuring a perfect chain of custody of the requested materials. 2022 WL 1568279, at *3.

*Fourth*, as to the parties' resources, ConocoPhillips is a leading oil and gas company with market capitalization above $122 billion[18] and quarterly revenue above $16 billion as of its most recent quarterly filing and, therefore, certainly has sufficient resources to produce the requested

---

[17] *See* Exhibit 2 of the Coffman Report (ECF No. 54-3) depicting Concho stock price and volume from February 21, 2018 through January 15, 2021.

[18] *ConocoPhillips, Company Profile*, FINANCIAL TIMES, https://markets.ft.com/data/equities/tearsheet/profile?s= COP:NYQ#:~:text=ConocoPhillips%20is%20an%20exploration%20and,and%20the%20Gulf%20of%20Mexico (last visited June 23, 2025).

discovery.[19] *See McDermott*, 2022 WL 1568279, at *3 (finding this factor neutral even where defendant company had declared bankruptcy).

    *Fifth*, as to the importance of the discovery in resolving the action, as detailed at length herein, the requested discovery bears directly on critical falsity and scienter issues. Thus, as in *McDermott*, "it is awful likely that the sought-after documentation is relevant and highly probative of Plaintiffs' claims and Defendants' defenses in the case." *Id.* at *3.

    *Finally*, as to whether the burden or expense of production likely outweighs the benefit, sharing the ARIES database is a straightforward and non-burdensome process. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████"[20] To be clear, Defendants have already produced multiple similar databases to Class Representatives, negating any argument that producing the databases is unduly burdensome.[21] However, the manner in which they produced some of them, including through cumbersome Excel files, which do not have the same capabilities as the actual databases and are not functional replacements for them, is inappropriate.

    Moreover, the requested databases assuredly exist and have already been shared with third parties. ████████████████████████████████

████████████████████████████████████████[22] Based

---

[19] ConocoPhillips, Quarterly Report (Form 10-Q) (May 8, 2025).
[20] Exhibit E, Bateman Tr. at 207, 208.
[21] *See, e.g.*, WARCOP02226560; WARCOP02291127; WARCOP02511169; WARCOP02789869; WARCOP02598789. Note that the file types of these documents are not supported by the Court's filing system. However, Class Representatives are prepared to share the documents with the Court via the means described herein upon the Court's request.
[22] Exhibit F, Corbett Tr. 75-77; Exhibit E, Bateman Tr. 199-203.

on industry practices and the ARIES database capabilities, companies like Concho regularly share their ARIES data with third-party engineering firms through the following methods: (1) exporting data to Microsoft Access Format by securely transferring the Access database to the third-party firm using encrypted email, secure FTP, or other secure filesharing methods; or (2) direct SQL server backup and restoration whereby Concho performs a full backup of the ARIES SQL Server database, generating a .bak file securely transmitting the backup file to the third-party firm using secure methods. Whether Concho produces the entire exported file or the complete SQL server database backups, differential and transaction log backups, and access credentials and restoration instructions, the process will be seamless and not burdensome.

To create a clean chain of custody, and consistent with ARIES ability to export data, the appropriate approach here is to export the requested databases to any drive or server and deliver that directly to Class Representatives' counsel for immediate upload to their experts' software programs for seamless analysis. To ensure the correct databases are exported, for the first category of databases—the databases associated with signed, sealed reserve reports by third party auditors NSAI and CGA—Defendants should ensure internally, prior to delivery, that the databases match the respective reserve reports and provide a simple document outlining the correct settings to tie the reports to the final reserves reports or strip out any data or scenarios that do not tie from the databases. For the second category—Concho's corporate, or internal, databases for final budgets and plans—Defendants should simply provide a document with all settings needed to completely "tie-in" said budgets and plans.

Further supporting the lack of burden, as in *McDermott*, discovery was stayed pending a decision on Defendants' motion to dismiss, in accordance with the PSLRA, which has now been denied. *See McDermott*, 2022 WL 1568279, at *3. Class Representatives' allegations have

11

withstood both a motion to dismiss and motion for class certification that involved substantive merits inquiries.[23] "The discovery door has been flung wide open, and Plaintiffs should be allowed to probe inside." *See McDermott*, 2022 WL 1568279, at *3.

In short, each of the proportionality factors weighs in favor of compelling production.

## VI.    CONCLUSION

For the foregoing reasons, the Court should grant Class Representatives' motion to compel production of Concho's ARIES databases in its entirety and for such other and further relief that this Court deems just and proper.

DATED: June 26, 2025                    Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**
Alfred L. Fatale III (*pro hac vice*)
Joseph N. Cotilletta (*pro hac vice*)
Rachel A. Berger (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
afatale@labaton.com
jcotilletta@labaton.com
rberger@labaton.com

*Lead Counsel for Lead Plaintiffs and the Class*

**FOGLER, O'NEIL & GRAY LLP**
Murray J. Fogler
Robin Finney O'Neil
909 Fannin St., Suite 1640
Houston, TX 77010
Telephone: 713-481-1010
Facsimile:713-574-3224

---

[23] *Order adopting Memorandum and recommendations* ECF No. 43: *Order on Motion to Certify Class* ECF No. 121.

mfogler@foglerlaw.com
roneil@foglerlaw.com

*Liaison Counsel for Class Representatives and the Class*

13

## CERTIFICATE OF CONFERENCE

On May 12, 2025, the Court presided over a discovery hearing that included Class Representatives' request to compel Defendants' ARIES database. In that hearing, the Court ruled that Class Representatives have leave to file a formal motion to compel.

/s/ Joseph N. Cotilletta
Joseph N. Cotilletta

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 26, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

*/s/ Alfred L. Fatale III*
Alfred L. Fatale III
