**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Civil Action No. 4:21-cv-02473<br><br>CLASS ACTION |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DEFENDANT CONCHO RESOURCES INC.'S ARIES DATABASE**

## TABLE OF CONTENTS

**Page**

Nature of Proceedings & Statement of the Issue ........................................................................... 1

Introduction & Summary of the Argument.................................................................................... 1

Argument ....................................................................................................................................... 3

    A.    Plaintiffs' request for the entire Aries database is disproportionate in light of how Aries data was actually used and transmitted at Concho and given what has *already been produced* in this case. ................................................................... 4

    B.    Plaintiffs' proposed discovery is disproportionate to the needs and issues in this case........................................................................................................................... 8

    C.    Plaintiffs' request for an entire structured database is especially inappropriate... 12

Conclusion ................................................................................................................................... 16

TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adair v. Microfield Graphics, Inc.*,
  2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000) ...................................................................9

*Balcacer v. Sam's E. Club Inc*,
  2020 WL 1934851 (S.D. Tex. Apr. 22, 2020) ...........................................................................3

*Crosby v. La. Health Servs.*,
  647 F.3d 258 (5th Cir. 2011) ....................................................................................................2

*Edwards v. McDermott Int'l, Inc.*,
  2022 WL 1568279 (S.D. Tex. May 18, 2022) ...................................................................3, 8, 12

*In re Apache Corp. Sec. Litig.*,
  2023 WL 5322444 (S.D. Tex. Apr. 10, 2023) .........................................................................14

*In re ArthroCare Corp. Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010).....................................................................................12

*In re Ford Motor Co.*,
  345 F.3d 1315 (11th Cir. 2003) ............................................................................................3, 13

*In re Venator Materials PLC Sec. Litig.*,
  547 F. Supp. 3d 624 (S.D. Tex. 2021) ......................................................................................11

*Jones v. Goord*,
  2002 WL 1007614 (S.D.N.Y. May 16, 2002) .................................................8, 12, 14, 15, 16

*Kerr v. Exobox Techs. Corp.*,
  2012 WL 201872 (S.D. Tex. Jan. 23, 2012) ............................................................................11

*Killick v. Harbor Freight Tools USA Inc.*,
  2022 WL 22586525 (N.D. Fla. Aug. 23, 2022).......................................................................15

*Lee v. Active Power, Inc.*,
  29 F. Supp. 3d 876 (W.D. Tex. 2014)......................................................................................11

*Miller v. Univ. of Houston Sys.*,
  2022 WL 22879671 (S.D. Tex. Oct. 20, 2022)...................................................................3, 6, 8

*Mir v. L-3 Comm'cns Integrated Sys., L.P.*,
  2016 WL 4427488 (N.D. Tex. 2016).......................................................................................15

*Nicholas J. Murlas Living Tr. v. Mobil Oil Corp.*,
    1995 WL 124186 (N.D. Ill. Mar. 20, 1995)...........................................................................13

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ..............................................................................................9

*Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*,
    2022 WL 2316228 (N.D. Ill. June 28, 2022).......................................................................13

*Yoshikawa v. Exxon Mobil Corp.*,
    2024 WL 3802997 (N.D. Tex. Aug. 12, 2024)......................................................................11

**OTHER AUTHORITIES**

FED. R. CIV. P. 26(b)(1) ...................................................................................................................3

Fed. R. Civ. P. 26(b)(2)(C) ..............................................................................................................3

FED. R. CIV. P. 34(b)(2)(E)(iii) .......................................................................................................8

*Database Principles Addressing the Preservation and Production of Databases and Database
    Information in Civil Litigation: A Project of the Sedona Conference Working Group on
    Electronic Document Retention & Production*, 15 SEDONA CONF. J. 171 (2014) .........7, 13, 14

Defendants Concho Resources Inc. ("Concho"), Jack Harper, Timothy Leach, and William Giraud (collectively, "Defendants") file this response to Lead Plaintiffs' Motion to Compel Production of Defendant Concho Resources Inc.'s Aries Database ("Motion").

## NATURE OF PROCEEDINGS & STATEMENT OF THE ISSUE

Plaintiffs allege that Defendants committed securities fraud by publicly discussing the rationale for and perceived benefits of further transitioning their oil-and-gas development style to "large scale development"—a term referring to drilling four or more wells within the same project. Defendants have produced more than 207,000 documents (totaling more than 2.83 million pages) so far in this case, with nonparty productions adding over 25,000 more documents to that total. At issue in Plaintiffs' Motion is whether the Court should compel production of even more discovery—specifically, numerous iterations of Concho's entire, company-wide, structured Aries database that served as an engineering repository for Concho's entire collection of oil and gas assets.[1]

## INTRODUCTION & SUMMARY OF THE ARGUMENT

While no one would know it from Plaintiffs' Motion, the Individual Defendants could not and did not access the native Aries database to which Plaintiffs now ask the Court to grant unrestricted, direct access. By definition, then, the information in that database is irrelevant to the core issue in this case:  whether the Individual Defendants made material misstatements or misleading omissions with knowledge or severe recklessness as to their falsity. The Motion also obscures the reality that Defendants already have produced *thousands* of documents containing

---

[1] As Defendants' counsel explained at the hearing, 5/12/25 Tr. 63:20-64:7, Concho cannot now take a retroactive snapshot of the Aries database as it existed on a date in the past—whether of the entire database or a subset of information therein. Ex. 1, Angelos Dec. ¶ 14. Plaintiffs' Motion appears to concede at least part of that reality, as it asks for the entire Aries database as it existed at various points. Mot. 1. To be clear, Concho can only produce *archived* versions of the Aries database to the extent they happen to already exist for the particular instances that Plaintiffs describe. Ex. 1, Angelos Dec. ¶ 14.

outputs from that very same Aries database, in the very same formats that Concho employees transmitted and used Aries data to run the business. And the Motion vastly understates the burden associated with the process of downloading, verifying, and "tying in" the various iterations of Aries databases requested in the Motion. As explained fully in the declaration of Concho's corporate representative, that process would force ConocoPhillips employees to work for weeks on end and even *create new documents* in hopes of satisfying Plaintiffs' demands. Ex. 1, Angelos Dec.

Why, then, should Plaintiffs be entitled to the extraordinary remedy of granting them and their experts full access to multiple iterations of Concho's entire Aries database? Plaintiffs' Motion confesses that they simply find it too "cumbersome" to review Aries data produced in the same Microsoft Excel and other formats that Concho executives *actually viewed and used*.

Let that sink in. It is hard to imagine a more telling indictment of this case than the fact that Plaintiffs—after a year of discovery, and having reviewed several hundred thousand documents, including all of those actually seen by the Individual Defendants—find it too "cumbersome" to establish scienter based on the data that the Individual Defendants actually received or reviewed. It is equally hard to imagine a discovery request more disproportionate to the needs of the case than the one Plaintiffs are now pursuing. Defendants have produced voluminous data from the Aries database in a readily viewable (indeed, the actually used) format. Yet Plaintiffs are asking for their experts to have free rein over a database that—to the extent *not* exported into an output and circulated within the company—would be definitionally irrelevant to the core issues in this case: what Defendants *said* and *knew* when they said it. The Court should deny that overbroad request for the unnecessary fishing expedition it plainly is. *See Crosby v. La. Health Servs.*, 647

2

F.3d 258, 264 (5th Cir. 2011) ("Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.").

**ARGUMENT**

"Federal Rule of Civil Procedure 26(b) allows parties to 'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Miller v. Univ. of Houston Sys.*, 2022 WL 22879671, at *1 (S.D. Tex. Oct. 20, 2022) (Hanen, J.) (emphasis added) (citing FED. R. CIV. P. 26(b)(1)).

Rule 26(b) makes clear that proportionality is the touchstone of the analysis. As set forth below, three proportionality principles dictate that Plaintiffs' Motion be denied. First, the "court must limit the frequency or extent of discovery" "[w]hen the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Balcacer v. Sam's E. Club Inc*, 2020 WL 1934851, at *1 (S.D. Tex. Apr. 22, 2020) (citing Fed. R. Civ. P. 26(b)(2)(C)). Second, "[p]roportionality focuses on the marginal utility of the discovery sought" in light of the issues and needs of the case. *Edwards v. McDermott Int'l, Inc.*, 2022 WL 1568279, at *2 (S.D. Tex. May 18, 2022) (alterations in original). And third, "sweeping order[s]" granting "direct access" to entire computer databases are especially inappropriate. *In re Ford Motor Co.*, 345 F.3d 1315, 1316-17 (11th Cir. 2003) (granting mandamus relief from order allowing "unrestricted, direct access to [the] respondent's database compilations").

3

**A.** **Plaintiffs' request for the entire Aries database is disproportionate in light of how Aries data was actually used and transmitted at Concho and given what has *already been produced* in this case.**

In Plaintiffs' telling, Aries was Concho's database for storing production and economic data and forecasting on its wells, so Concho's refusal to turn over the keys to the entire database has deprived Plaintiffs of "critical data relevant to the claims asserted in this action." Mot. 4. That syllogism falls apart under any honest examination of how Concho ran its business and the resulting, voluminous discovery record in this case.

To begin, it is certainly true that Concho—like most every oil and gas company handling voluminous production, reserves, and financial data associated with its wells—used a structured database to house that data in the first instance. Aries was ███████████████████████ ██████████████████████████████, Ex. 2, Hays Tr. 73:14, and it contains, necessarily, information on every well within the company (whether operated or non-operated, and whether relevant or irrelevant to this case). Ex. 1, Angelos Dec. ¶ 5.

But Plaintiffs' Motion is conspicuously silent on how Aries data was *actually used and transmitted* in running Concho's business, as well the fact that Plaintiffs have already received the records of that usage and the transmitted versions of the data. The deposition testimony and discovery record demonstrate that ████████████████████████████████████ ████████████████████████████████████████████████████████. Ex. 3, Thompson Tr. 77:17-18. These outputs took the form of ████████████████████ ██████████████ ██████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████—*i.e.*, the very information Plaintiffs highlight in the bullet points on pages 4 and 5 of

their Motion. *E.g.*, Ex. 4, ███████████████ ²; Ex. 5, Gasch Tr. 275:3-6 (████████

████████████████████████████████████████████████████

████████████████████████████) (emphasis added). A screenshot of a *tiny portion* (███████

████████████████████████) of one such produced Aries one-line output is depicted

below:



Ex. 4, ████████████████. Further, for purposes of generating Concho's corporate "plan" and

the resulting company-wide production forecast used to create public production guidance, ████

████████████████████████████████ Ex. 5, Gasch Tr. 92:13-14. The Aries

database would ████████████████████████████████████

████████████████████ Ex. 3, Thompson Tr. 130:16-18. And such information

would be ████████████████████████████████████

████████████████████████. Ex. 6, Giraud Tr. 108:6-109:12. As

discussed in further detail below, Plaintiffs already have received these outputs, workbooks, and

presentations.

---

² Given the extraordinary volume and native excel format, Defendants are transmitting a copy of two exemplar Aries outputs (Exhibits 4 and 7) to the Court via flash drive.

It is a similar story with respect to the year-end reserves process. After Concho consulted with its third-party reserves consultants—who scrutinized Concho's data and *actually prepared* Concho's reserves reports[3]—the Aries database would be ███████████████████ ████████████████████████████████████████ ████████████. Ex. 8, Angelos Tr. 195:17-197:5. That master spreadsheet, again, contained outputs from the Aries database, ██████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████. *E.g.*, Ex. 7, ████████████████████████████████. And that type of master spreadsheet also has been produced to Plaintiffs.

Indeed, Defendants have produced *thousands[4]* of documents containing Aries outputs or otherwise rolling up data from the Aries database for reserves or planning/forecasting purposes— including for the very reserves and budgeting/planning cycles (during the agreed discovery period[5]) for which Plaintiffs insist on being granted full database access. Producing such data in the form it was actually used and communicated is a manifestly "reasonable method for

---

[3] Suffice it to say that the undisputed fact that independent, third-party engineering firms received Concho's Aries database and then scrutinized and took ownership of calculating Concho's proved reserves figures completely undermines Plaintiffs' theory that Concho's proved reserves estimates were somehow fraudulent. *E.g.*, Compl. ¶ 178.

[4] Coming up with an exact number of direct Aries outputs would require reviewing all 45,000-plus excel documents produced by Defendants to identify each one with hallmarks of an Aries data pull. But, on even cursory inspection, nearly ████████████████████████████████████████ ████████████████████████████████. Attached at Appendix A is a representative index of just *some* of those produced documents from the Class Period. *See* App'x A

[5] To be clear, the Class Period in this case extends from February 21, 2018 to July 31, 2019, and the parties' agreed discovery period extends from August 1, 2017 to February 19, 2020. To the extent Plaintiffs are seeking access to pre-August 1, 2017 or 2016 archived Aries databases (to the extent they even exist, as explained more fully in the attached declaration), that would be well outside the temporal scope of discovery that could even conceivably be relevant to this case. *See Miller*, 2022 WL 22879671, at *6 (denying motion to compel documents prior to 2013, when the "claim at issue in this case involves Defendants rejecting Plaintiff for an employment position she applied for during the 2013-2014 hiring cycle").

identifying, preserving, extracting, and producing relevant data from databases." *Database Principles Addressing the Preservation and Production of Databases and Database Information in Civil Litigation: A Project of the Sedona Conference Working Group on Electronic Document Retention & Production* (hereinafter, "*Sedona Conference*"), 15 SEDONA CONF. J. 171, 192-93 (2014).

The notion that Plaintiffs and their purported experts need unrestricted access to those databases to receive adequate discovery on the topics or types of information they highlight is therefore patently wrong. For example, Plaintiffs have received voluminous documents concerning well and project "economics." *Contra* Mot. 5. That is because ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████. *E.g.*, Ex. 9, ████████████████████. Moreover, contrary to the suggestion that Concho's asset team engineers' modeling assumptions have been somehow shielded from discovery, Mot. 5-6, the engineering work that went into constructing Concho's pre-drill type curves is found in presentation after presentation aggregating information and cataloguing the forecasting methodology for the various geological areas, zones, and projects. *See, e.g.*, Ex. 10, ████████████████. Plaintiffs may not like the content of these presentations,[6] but that is no basis for pretending they do not exist.

---

[6] They emphatically contradict Plaintiffs' theory (repeated throughout the Complaint) that Concho's forecasting "chose to treat every well as if it was an individual, isolated well," rather than accounting for project density. *Compare* Compl. ¶ 84, *with, e.g.*, Ex. 10, ████████████████████ (████████████████ ████████████); Ex. 11, ████████████████████ (████████████ ████████████████████████) (emphasis added). Indeed, Plaintiffs' own confidential witness, "FE-1," has since ████████████████████. Ex. 12, Midkiff Tr. 85:3-11, 312:5-12 (████████████████ ████████████████████████████████████████ ████████████).

Where Plaintiffs find themselves, then, is *not* in a situation where Defendants have withheld some "critical" category of information. Nor can Plaintiffs articulate what precisely they think exists in the Aries database itself that is necessary and proportional to the needs of the case but has not been meaningfully captured in the thousands of Aries output documents already produced by Concho and third parties (including the third parties who actually prepared Concho's reserve reports, Cawley Gillespie and Netherland Sewell). That failure is especially revealing, since Plaintiffs already received several hundred *Aries database access files* from the third-party reserves consultants, along with several such Aries files from Concho (in addition to the thousands of excel outputs), meaning Plaintiffs ought to be able to identify what specific data they claim is critically missing from the discovery record. *See* Mot. 10 & n.21 (citing examples of those .accdb files). Their failure to do so is a compelling reason to deny their request as flunking the proportionality test and other principles of e-discovery. *See Jones v. Goord*, 2002 WL 1007614, at *14 (S.D.N.Y. May 16, 2002) (denying requested database access when "much of the *actual data* in the databases (to the extent relevant) has already been provided to plaintiffs in documentary form," and "Plaintiffs cite no concrete facts available in the database, relevant to the litigation, and unprivileged, that are not available in the 700,000 pages of material already provided to them"); FED. R. CIV. P. 34(b)(2)(E)(iii) ("A party need not produce the same electronically stored information in more than one form").

**B.     Plaintiffs' proposed discovery is disproportionate to the needs and issues in this case.**

In assessing proportionality and the "marginal utility of the discovery sought," *Edwards*, 2022 WL 1568279, at *2, the Court must focus on what "pertains to the one and only cause of action in this lawsuit," *Miller*, 2022 WL 22879671, at *3. Despite Plaintiffs' transparent attempts to turn this case into a hindsight referendum on the complex engineering judgments made by Concho's lower-level engineers and geologists who designed and forecasted its projects, a 10b-5

claim focuses on what the Defendants *said* and what they *knew* when they said it. *See Adair v. Microfield Graphics, Inc.*, 2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000) ("As in most class actions brought under the 1934 Act, the key issues likely to be in dispute here are the accuracy of [the challenged] statements and defendants' state of mind."); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (holding that "[a] defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter").

Viewed through that lens, the marginal utility of Plaintiffs' proposed forensic examination of the Aries database evaporates. This case does not involve so much as an *allegation* that the Individual Defendants (or anyone at Concho) doctored, changed, or misstated a single objective number or piece of hard data—whether contained in Aries or elsewhere—that could conceivably justify a forensic comparison of the native Aries database and the various outputs or roll-ups from that database used to create Concho's public financials. And discovery has revealed that FE-1's allegation concerning the asset team's supposed "true risk profile" found in Aries, *see* Mot. 7-9, is not some discrete risk analysis or model that Concho executives ignored or that diverged from anything Concho publicly said. As it turns out, the supposed "true risk profile" is nothing more than a (shamelessly dramatized) reference to ███████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████. *Compare* Mot. 7, *with* Ex. 12, Midkiff Tr. 280:1-21 (██████████████ ████████████████████). Setting aside the problems that revelation poses for Plaintiffs' fraud theory on the merits, it obliterates Plaintiffs' purported "critical" need to forensically examine the Aries database—█████████████████████████████████████████████

███████████ by simply looking at that column in the one line and reserves spreadsheets that Concho *already produced*.



Ex. 7, ████████████████████████████████████████████████████████.

With respect to Concho's press releases and the Individual Defendants' earnings call statements that constitute the vast majority of the challenged statements in this case, the Aries database played a role similar to the operation of Concho's business more generally. *Supra* § A. Far from the Individual Defendants'[7] huddling around a computer clicking through the Aries database, ████████████████████████████████. Ex. 13, Hunter Tr. 63:22-24; Ex. 6, Giraud Tr. 108:13-14. Neither did ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.

Ex. 2, Hays Tr. 17:2-10, 73:13-16. To do that work, the IR group would ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[7] What exactly ██████████████████████ about what a "jury will likely determine" as to scienter (at Mot. 8) is a complete mystery, as Plaintiffs do not explain—or cite anything in support of—that made-up admission.

10

██████████████████████████. *E.g.*, Ex. 14, █████████████████. Defendants have undeniably produced that enormous volume of materials.

Cognizant of these inconvenient facts, and desperate to manufacture support for a forensic Aries examination, Plaintiffs telegraph their intent to backtrack to a theory of *imputing* the supposed scienter of *non-Defendant* executives whom Plaintiffs imply could have accessed the database. Mot. 8 & n.16. That unpleaded imputation rationale is as telling as it is factually adrift—

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████. *Supra* § A.[8] And, as Defendants look forward to briefing in full at a later stage, Plaintiffs vastly overstate the ease of imputing scienter. It is improper to impute the scienter of non-speaking officers absent—as Plaintiffs' own cases[9] demonstrate—a *direct link* between the employee and the allegedly

---

[8] Ex. 15, Bateman Tr. 201:15-202:2 (████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████) (emphases added); Ex. 16, Corbett Tr. 56:14-57:11; 75:17-22 (██████████████████████████████████████████████████████████ █████████████████████) (emphases added); Ex. 13, Hunter Tr. 63:18-64:5, 66:11-14 (████████████████████████████████████ ██████████████) (emphasis added); Ex. 5, Gasch Tr. 274:15-275:6 (████████████████████ █████████████████████████); Ex. 2, Hays Tr. 73:15-16 (█████████████████████████████████); Ex. 3, Thompson Tr. 77:16-18 (████████████ █████████████) (emphasis added); Guthrie Tr. 54:1-54 (███████████████████████ ████████████); Ex. 1, Angelos Dec. ¶ 6. Neither Brenda Schroer's nor Chris Spies's depositions even mentions the Aries database.

[9] *See Yoshikawa v. Exxon Mobil Corp.*, 2024 WL 3802997, at \*6 (N.D. Tex. Aug. 12, 2024) (defendant officer alleged to have personally "fabricate[d] the learning curve assumptions," which directly "furnished information to inflate publicly reported proved reserves and resource base"); *Lee v. Active Power, Inc.*, 29 F. Supp. 3d 876, 882 (W.D. Tex. 2014) (imputing scienter of employee who "furnished information for inclusion in the false statements with scienter, and he was a cause of the making of the misrepresentations"); *Kerr v. Exobox Techs. Corp.*, 2012 WL 201872, at \*14 (S.D. Tex. Jan. 23, 2012) (defendant-executive actually "prepared the filing statements at issue"). Moreover, *Venator*, *Barrie*, and *Anadarko* (cited at Mot. 8 n.16) are not about imputing scienter at all; they involve whether a non-speaker can be sued *as a defendant* based on their own scienter in acquiescing to the making of challenged statements— something not at issue here as to these *non-defendant* executives. *See In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 665 (S.D. Tex. 2021) (holding that "just because only *one individual defendant* made a challenged statement to the public, it 'does not preclude an inference of scienter on the part of *another Individual Defendant* who

11

*fraudulent information* in a challenged statement. *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 728 (W.D. Tex. 2010) (rejecting imputation argument when "Plaintiff does not offer any specific factual allegations linking [defendant-employees] to any specific document, portion of a document, transaction, financial statement, or any other representation by [the company]").

The point is this: at its core, this is a case about what the Individual Defendants said and their rationales for saying it. Plaintiffs have received more than enough discovery into the data that actually informs those questions. Thus, Plaintiffs' proposed discovery will provide only marginal (if any) benefit to the case. As a result, that marginal utility cannot justify the overbreadth and burdens associated with granting unrestricted access to an entire companywide database in a form that—by definition—the Individual Defendants *never even saw*. *See Jones*, 2002 WL 1007614, at *13 ("The Court cannot find that the major risks and burdens" associated with unrestricted database access "will be worth bearing on the basis of entirely speculative benefits.").

**C.    Plaintiffs' request for an entire structured database is especially inappropriate.**

For the reasons given above, Plaintiffs' requested discovery would fail the proportionality test even *if* it were a more run-of-the-mill request for a category of documents rendered duplicative and unnecessary by the discovery record and issues in the case. But Plaintiffs completely ignore that they are seeking unrestricted access to an *entire structured database*. Their Motion does not direct the Court to any authority on the matter, much less a case allowing such unbridled database access under circumstances like these. *See, e.g.*, *McDermott*, 2022 WL 1568279, at *1 (cited nine times in Plaintiffs' motion and involving the volume of ordinary email review).

---

was present and had the opportunity to correct the speaker at the time the inaccurate and misleading statements were made to the investing public'" (emphasis added)) (citing *Anadarko* and *Barrie*).

The reason for that silence is simple. Courts and commentators alike have routinely recognized the burdens and patent overbreadth associated with ordering production of an entire structured database. *See, e.g.*, *Ford*, 345 F.3d at 1316-17 (granting mandamus to correct "sweeping order" granting "direct access to Ford's computer databases" absent "a factual finding of some non-compliance with discovery rules by Ford"); *Nicholas J. Murlas Living Tr. v. Mobil Oil Corp.*, 1995 WL 124186, at *5 (N.D. Ill. Mar. 20, 1995) (denying request for "[p]roducing an entire computer database"). The same goes for "forensic examinations" of a database—a phrase that is missing from Plaintiffs' Motion but is unquestionably what they seek. *See, e.g.*, *Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, 2022 WL 2316228, at *2 (N.D. Ill. June 28, 2022) (collecting cases and recognizing that "forensic examinations are an *extraordinary remedy*," and "[c]ourts are especially reluctant to permit direct inspection of ESI when the request is not proportional to the needs of the case, is unduly burdensome, *or* the information sought does not go to the heart of the matter") (citations omitted & emphases added).

The reason that forensic database access is so disfavored is because it inherently gives the requesting party access to *everything* within that database—irrespective of the data's relevance to the claims and issues in the case. Whereas Defendants' counsel was able to review Aries outputs (and/or their corresponding email family) for responsiveness in advance of production, no such controls would be in place when turning over the keys to the entire database. Plaintiffs' (still undisclosed) experts could therefore peruse Concho's—and thus ConocoPhillips's—database for *all* of its proprietary information concerning *all* of its wells. Here is how the Sedona Principles summarize those problems:

> Absent the parties' specific agreement, a requesting party is *rarely granted* permission to conduct a direct examination of a responding party's database to view or obtain information stored within it. ... *Allowing full access to a responding party's database makes it difficult, if not impossible, to prevent the requesting party*

13

> *from accessing irrelevant or privileged information; all data fields in all database records are theoretically accessible. Direct access to a proprietary database by a non-employee also may compromise the validation of the data in the database, reducing the database's reliability for both business and legal situations.*

*Sedona Conference*, 15 SEDONA CONF. J. at 194 (emphases added).[10]

Plaintiffs fundamentally misunderstand the burden inquiry in this context, discussing things purely in terms of the cost and ease of sharing the database files themselves. Mot. 10. As the declaration of Concho's corporate representative explains, the Motion understates how time-consuming even that mere downloading process is for such a database. Ex. 1, Angelos Dec. ¶ 16. But, in any event, this is not simply about "production of a few CD-ROMs" containing "the actual data files [that] could be reproduced quickly and without excessive labor"; it is about the corresponding effects of "shifting [Concho's] expert computer personnel from operational duties" in order "to prepare extensive documentation of the structure of the programs and databases to enable any experts retained by plaintiffs to understand the layout of the data, the meaning of codes, and the sources from which those codes can be derived." *Jones*, 2002 WL 1007614, at \*10-11.

This is far from an imaginary burden. Plaintiffs' own Motion explicitly outlines—albeit understates—the documentary and verification-related lengths to which they are demanding Concho go to "create a clean chain of custody" for the numerous database reproductions they are requesting. Mot. 11. The declaration of Concho's corporate representative provides a more thorough, evidence-backed explanation for the burdens that process would actually entail. Ex. 1, Angelos Dec. ¶¶ 11-21. Because ConocoPhillips does not actively use Aries in its own day-to-day business, the resources it has available with credentials in Aries and in Concho's databases are limited, meaning that this work would fall disproportionately on the shoulders of between four to

---

[10] *See In re Apache Corp. Sec. Litig.*, 2023 WL 5322444, at \*1 (S.D. Tex. Apr. 10, 2023) (relying on the Sedona Principles in resolving an e-discovery dispute).

six employees who otherwise have full-time jobs. *Id.* ¶ 13. The process could take multiple weeks to complete, and even then, verifying or "tying-in" a database to a particular budget or plan cycle is a process of intense trial and error, leaving a distinct possibility that these employees could spend wasted hours in failing to replicate a database with enough confidence to verify its accuracy. *Id.* ¶ 21. Moreover, providing the "settings" necessary to "tie in" such a database would require, as Plaintiffs appear to concede, the creation of *new documents* by Defendants to satisfy this discovery request. *Id.* ¶ 18. The Federal Rules, however, do not obligate Defendants to create new documents to respond to discovery requests. *See, e.g.*, *Mir v. L-3 Comm'cns Integrated Sys., L.P.*, 2016 WL 4427488, at *5 (N.D. Tex. 2016) ("As a general matter, a party cannot invoke Rule 34(a) to require another party to create or prepare a new or previously non-existent document solely for its production."); *Killick v. Harbor Freight Tools USA Inc.*, 2022 WL 22586525, at *1 (N.D. Fla. Aug. 23, 2022) ("Plaintiff has not cited any authority which indicates that this court has the power to compel Defendant to reinspect evidence and/or create a report for his use.").

And all for what—so that Plaintiffs' experts do not have to review the purportedly "cumbersome Excel files" that Concho employees actually used to run the business? Mot. 10. Such a plea that "having data in electronic, manipulable[11] form will facilitate expert analysis of the data" comes nowhere close to justifying the fishing expedition Plaintiffs request. *Jones*, 2002 WL 1007614, at *13 (rejecting database request and calling those "suggested benefits … elusive"). And that is especially true here, where Defendants have gone through extraordinary efforts to collect, review, and produce the actual Aries outputs over the last year, only for Plaintiffs to move to compel a forensic examination of the source data on the eve of fact discovery closing. The attendant "cost" of that "belated" request "should not be assessed in isolation, but in the context

---

[11] As the Court will see from viewing the native files found at Exhibits 4 and 7 transmitted via flash drive, the excel spreadsheets Defendants produced are extremely manipulable and allow for all sorts of categorization and sorting.

15

of the total cost of discovery to date," *id.* at *15, which counsels firmly in favor of the denial of Plaintiffs' Motion.

## CONCLUSION

Ultimately, Plaintiffs' motion seeks to compel discovery of extraordinary size and scope, which will consist of information that is either fundamentally irrelevant or entirely duplicative of evidence already produced and in the record of this case. Because the benefits to such discovery are at best minimal, and the burdens associated with allowing effectively full and direct access to Defendants business database are substantial, Plaintiffs' proposed discovery is disproportionate to the needs of the case and should be denied under Rule 26.  Accordingly, Defendants respectfully request that the Court deny Plaintiffs' Motion to Compel.

16

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ David D. Sterling*
    David D. Sterling
      Attorney-In-Charge
    State Bar No. 19170000
    Federal I.D. No. 07079
    Amy Pharr Hefley
    State Bar No. 24046046
    Anthony J. Lucisano
    State Bar No. 24102118
    Federal I.D. No. 3369146
    C. Frank Mace
    State Bar No. 24110609
    Federal I.D. No. 3385915
    910 Louisiana Street
    Houston, Texas 77002
    (713) 229-1946
    (713) 229-7946 (Fax)
    david.sterling@bakerbotts.com
    amy.hefley@bakerbotts.com
    anthony.lucisano@bakerbotts.com
    frank.mace@bakerbotts.com

    ATTORNEYS FOR DEFENDANTS CONCHO
    RESOURCES INC., CONOCOPHILLIPS, AS
    SUCCESSOR IN INTEREST TO CONCHO
    RESOURCES INC., TIMOTHY LEACH, JACK F.
    HARPER, AND C. WILLIAM GIRAUD

17

By: */s/ Robert Ritchie (w/ permission)*
    Michael C. Holmes
    Texas Bar No. 24002307
    Southern District Bar No. 23716
    Robert Ritchie
    Texas Bar No. 24079213
    Southern District Bar No. 3089959
    K. Virginia Burke DeBeer
    Texas Bar No. 24097437
    Southern District Bar No. 3472047
    VINSON & ELKINS LLP
    2001 Ross Ave., Suite 3900
    Dallas, TX 75201
    Tel: (214) 220-7700
    Fax: (214) 999-7923
    mholmes@velaw.com
    rritchie@velaw.com
    vdebeer@velaw.com

    CO-COUNSEL FOR DEFENDANTS TIMOTHY
    LEACH, AND C. WILLIAM GIRAUD

18

## CERTIFICATE OF SERVICE

I hereby certify that, on July 17, 2025, a true and correct copy of the public, redacted version of the foregoing document was served on all counsel of record via the Court's ECF system. The sealed, unredacted version of this document will be served via email.

/s/ *Anthony J. Lucisano*

Anthony J. Lucisano