# Appendix B

# FILED UNDER SEAL

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE CONCHO RESOURCES INC., SECURITIES LITIGATION | Civil Action No. 4:21 -cv-02473 <br><br> <u>CLASS ACTION</u> |

## <u>DECLARATION OF ERIC ANGELOS</u>

Pursuant to 28 U.S.C. § 1746, I hereby declare:

1.      My name is Eric Angelos. I am over 18 years of age and competent to make this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct to the best of my knowledge.

2.      I have reviewed the Class Representatives' Motion to Compel Production of Defendant Concho Resources, Inc.'s Aries Database ("Motion," Dkt. 147), filed in this case and dated June 26, 2025.

3.      I have also served as Concho's corporate representative in this case with respect to certain oral and written depositions, and I have verified certain of Concho's answers to interrogatories. I am therefore familiar with many of the documents produced in this case.

4.      I am currently a Production Delivery Superintendent at ConocoPhillips, located in Midland, Texas. Before ConocoPhillips acquired Concho Resources Inc. ("Concho"), I served in various roles as a reservoir engineer at Concho.

5.      As part of my employment at Concho, I worked with the Aries database referenced in Plaintiffs' Motion. That database served as the repository that Concho engineers used to store production, financial, and other information concerning all of Concho's oil and gas wells, including not only those that Concho operated, but also those in which Concho had non-working

interests. The Aries database contains confidential proprietary business information that remains highly sensitive to ConocoPhillips's operations in the Permian Basin today.

6.      During my time at Concho, I personally downloaded and sent Aries data and observed other Concho engineers do the same as part of communicating with one another and operating the business. Concho engineers and engineering technicians were the only employees with access and the expertise necessary to navigate the Aries database itself. In my experience, non-engineers and executives/upper management did not and/or could not directly access that database.

7.      Aries was not a static database. Rather, data was constantly being added and updated. For that reason, determining what the data in Aries was at any particular point in the past by running a query or report, for example, is not possible today.

8.      To share Aries data within Concho, engineers would "run the database" to create an "output" of the data that was digestible and transferrable. Those outputs took the form of Microsoft Excel spreadsheets. We often referred to those outputs as Aries "one lines," because each of the company's wells received its own line on the spreadsheet with dozens of columns of detailed production, financial, and other information directly downloaded from Aries.

9.      Given my involvement as Concho's corporate representative and based on my review of various documents produced in this case, I am aware that ConocoPhillips has produced many of these Aries outputs subject to a protective order entered in the case. The representative file names found in the Appendix A to Defendants' response to the Motion are consistent with my recollection of file names that would be assigned to Aries outputs.

10.     From my experience at Concho, I am also familiar with the mechanics for downloading and transmitting Aries data, and I am generally familiar with the process for

downloading and transmitting an entire Aries database and attempting to "tie-in" the database to a reference point. That process is more well defined for "tying in" to a reserves report than it would be for any particular budget or plan. So, while I am generally familiar with the process that I believe is being referenced at Pages 10-11 of the Motion, the ambiguity of the description in the Motion leaves it unclear to me exactly what process or expectations the Motion is specifically contemplating.

11.    In any event, the Motion vastly overstates how "straightforward and non-burdensome" the process for transmitting and "tying-in" the various requested iterations of the Aries database would be.

12.    While Concho used Aries as its primary reservoir engineering software, ConocoPhillips does not. And the vast majority of Concho personnel familiar with the Aries platform are no longer with ConocoPhillips.

13.    As a result, the number of current ConocoPhillips personnel familiar enough with the Aries platform and Concho's database practices to even attempt to create the documents and complete the tasks outlined in the Motion is extremely limited, and the IT support for Aries-related requests is extremely limited as well. I estimate that the work necessary to try to carry out the Motion's requests would impose multiple weeks' worth of work on a group of four to six ConocoPhillips employees, myself included, all of whom have full-time jobs. That number does not include additional involvement that would be required of ConocoPhillips IT and legal staff.

14.    In terms of the Aries data itself, to the extent the Motion suggests that we could now take a retrospective snapshot of the Aries database as it existed on any given prior date, that is wrong. All we could do is download archived or backed up versions of the Aries database if those archived versions actually exist. From my initial review of the available archives, I am

3

confident that there will be various iterations of the "plans" and "budget" databases over the multi-year period described in the Motion that we will not be able to locate, not because they were deleted, but rather because they were never put into exportable form in the first place.

15.     Further, once we have located an archived version of the Aries database, we cannot simply presume that it is the final version associated with the reserves/plan/budget cycle. From my initial review of archived databases, sometimes the file names give some indication of whether the document was the final version, but often times they do not. Therefore, substantial cross-referencing and verification work—of the same type described further below—would be required to even be able to identify the correct database archives on the front end.

16.     As for transmitting the data itself, the Motion's suggestion that it as easy as handing over a "flash drive" is misguided. The size of any given iteration of the Aries database is massive, and downloading it (often requiring multiple volumes) takes substantial time. I estimate that downloading the entire Aries database associated with, for example, the year-end reserves process would take a full day. If you multiply that time by the number of database iterations associated with the Motion's request (which I estimate could relate to over a dozen such iterations over a multi-year period), I believe that it could result in at least a week's worth of download time alone.

17.     Once we have identified an archived Aries database, the burden associated with the Motion's request only increases. The process for verifying and providing the settings necessary to "tie-in" the various databases to the associated reserves report, budget, or plan is far from the "simpl[e]" process referenced in the Motion. Doing so would require painstaking quality control checks, creation of new documentation and instructions, and trial and error until we can say with some degree of confidence that the parameters of the Aries run match whatever output it is that we are attempting to replicate.

4

18.     When Concho was still in operation, this tie-in process was handled by a team of dedicated engineering technicians and engineers with daily experience working in Aries. Shifting that same process, years later, onto a limited staff of current ConocoPhillips employees would be extremely time-consuming. And this verification process would involve creating and cross-referencing the Aries database with the very same kind of Aries outputs that ConocoPhillips already has produced in this case.

19.     Even to apply this process to a single year-end reserves database, where the control reference point is more easily ascertainable, I estimate that completing the process would take (excluding download time) multiple ConocoPhillips employees three or more full working days. That estimate—which would need to be multiplied across every database iteration located and produced—assumes that we run into no difficulties or unforeseen complications, which is an unrealistic assumption given the number of parameters and data inputs at play.

20.     I believe it would take substantially more time to complete this cross-referencing and verification process for each "budget" or "plan" database (to the extent a particular archived iteration exists), given the variety of pricing and other scenarios that Concho used to conduct numerous database runs during each of those budgeting or planning cycles.

21.     All in, I believe that complying with the Motion's request would impose multiple weeks' worth of work on ConocoPhillips employees. And I am confident that, at least in some instances, that process would result in substantial wasted efforts for databases that we are unable to definitively tie in to the respective output.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 17, 2025.

_____
Eric Angelos

5

# EXHIBIT 2-16

# FILED UNDER SEAL