Case 4:21-cv-02473   Document 163   Filed on 10/10/25 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
October 10, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE CONCHO RESOURCES, INC. SECURITIES LITIGATION | § § § § § § § § § § § CIVIL ACTION NO. 4:21-cv-2473 |

## ORDER

Pending before this Court is the Class Representatives' Motion to Compel Production of Defendant Concho Resources, Inc.'s ARIES Database (Doc. No. 147). After the Court held a hearing on a series of discovery issues, the Court requested formal briefing from the Parties related to the request to access the Defendant's ARIES database. After a thorough review of the arguments, evidence, and the legal standards related to electronic stored information ("ESI") discovery, the Court hereby grants the Class Representatives' Motion to Compel and orders Concho to produce the requested databases in their native format.

### I.    FACTUAL BACKGROUND

On April 7, 2025, this Court certified a class action against Concho Resources, Inc. ("Concho") related to alleged securities fraud violations under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 implementing § 10(b) of the Act. (Doc. No. 121). The Class Representatives allege that Concho and certain Concho executives ("Individual Defendants") fraudulently concealed and affirmatively misrepresented important information from investors. (Doc. No. 25). While Concho and the Individual Defendants were allegedly representing that Concho had developed a new, state-of-the-art drilling methodology to improve oil and gas returns,

the Class Representatives allege that those statements misrepresented the fact that the technology was unproven, and the projects were poorly designed and failing to produce the expected returns. (*Id.*). The Class Representatives allege that when the truth was revealed, it tanked the value of Concho stock. (*Id.*). The Class Representatives claim that they relied on the misrepresentations and false statements when purchasing their Concho stock and have incurred significant economic losses. (*Id.*). To collect evidence that Concho or the Individual Defendants knew or should have known that these claims were false or misleading—in violation of federal securities law—the Class Representatives are seeking certain databases in their native format from Concho's main data system: the ARIES database.

According to the Class Representatives, the ARIES database is Concho's main database that contains information relevant to the wells and revenue streams during the established Class Period. *See* (Doc. No. 147 at 5 (claiming that the ARIES database "will enable Class Representatives to determine exactly what models Defendants used in crafting their Class Period statements and whether those models sufficiently accounted for parent-child effects and large-scale development")). Class Representatives argue that the discovery process has been hindered because they lack the databases in their native format. They contend that the mix of unlabeled, disorganized, and unmalleable Excel spreadsheets that Concho has produced to date are insufficient to reveal Concho's underlying data.

In response, Defendants note that during the lengthy four-year litigation, they have already produced hundreds of thousands of documents. *See* (Doc. No. 156 at 1 ("Defendants have produced more than 207,000 documents (totaling more than 2.83 million pages) so far in this case, with nonparty production adding over 25,000 more documents to that total.")). Nevertheless, the Class Representatives contend that the discovery process should not be measured by quantity over

2

quality, and the produced documents are cut-and-paste Excel spreadsheets of disorganized ARIES output data that do not "tie-in" to the other Excel spreadsheets, leaving the data incomplete and difficult for their experts to analyze. *See* (Doc. No. 161-2 at 13 (describing the production as a "disorganized document dump")).

The Class Representatives now request this Court to order Concho to turn over the selected ARIES databases to supplement these Excel spreadsheets and access the native format.

## II.   LEGAL STANDARDS

Rule 37 of the Federal Rules of Civil Procedure permit parties to move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *McLeod, Alexander, Powel & Apfell, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). In general, parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs to the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1); *Crosby v. La. Health Serv. Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Discovery requests are relevant when they seek admissible evidence or evidence that is "reasonably calculated to lead to the discovery of admissible evidence." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004). Despite the broad strokes of Rule 26, the discovery process is not unlimited, and the Court must protect parties from "unreasonably cumulative or duplicative" discovery or any discovery that "can be obtained from some other source that is more convenient, less burdensome,

or less expensive" to the parties. *Id.* at 26(b)(2)(C); *McKinney/Pearl Restaurant Partners, L.P. v. Metropolitan Life Insurance Co.*, 322 F.R.D. 235, 243 (N.D. Tex. Jan. 8, 2016).

The discovery process is further limited when it comes to certain electronically stored information (or commonly known as "ESI"). Federal Rule of Civil Procedure 34, in tandem with the general rules of Federal Rule of Civil Procedure 26, governs the production of ESI discovery. Rule 34 permits parties to request any other party "to produce and permit the requesting party . . . to inspect, copy, test, or sample" "any designated documents or [ESI]—including writings, drawings, graphs, charts . . . or data compilations." FED. R. CIV. P. 34(a)(1)(A). Such requests must be made with "reasonable particularity" and "may specify the form or forms in which electronically stored information is to be produced." FED. R. CIV. P. 34(b)(1)(A)–(C). To produce such ESI, Rule 34 requires parties to produce the documents "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." FED. R. CIV. P. 34(b)(2)(E)(i). The Advisory Committee recognized that "[ESI] may exist in dynamic databases and other forms far different from fixed expression on paper" and Rule 23 "confirm[s] that discovery of [ESI] stands on equal footing with discovery of paper documents." FED. R. CIV. P. 34, Advisory Committee Notes, 2006 Amend. Further, the Advisory Committee wrote that "the production of [ESI] should be subject to comparable requirements to protect against deliberate or inadvertent production in ways that raise unnecessary obstacles for the requesting party." *Id.* In fact, while many types of ESI can be exported into different formats (such as the export from native format to an excel spreadsheet), "the option to produce in a reasonably usable form does not mean that a responding party is free to convert [ESI] from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." *Id.*

## III. ANALYSIS

The Class Representatives have requested limited access to the ARIES database, including (1) the databases associated with signed, sealed reserve reports by third-party auditors, Netherland, Sewell & Associates and Cawley, Gillespie and Associates and (2) Concho's corporate, or internal databases for final budgets and plans in 2017, 2018, and 2019. (Doc. No. 147 at 1). The Class Representatives also request any settings necessary to "tie in" the reports. (*Id.*). At the direction of the Federal Rules of Civil Procedure and the Fifth Circuit, the Court uses the six balancing factors to determine whether the Class is entitled to the requested ARIES databases. The Court finds that the limited access to the ARIES database is both relevant and proportional to this class action.

### A. The issues at stake weigh in favor of broad discovery.

The Class Representatives have brought this action §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 implementing § 10(b) of the Act. (Doc. No. 121). "Given that a central purpose of these securities laws is to protect investors and would-be investors in the securities market against misrepresentations," the issues at stake in this case are undoubtedly important to deter corporations from misleading the public. *Edwards v. McDermott Int'l, Inc.*, 2022 WL 1568279 at *2 (S.D. Tex. May 18, 2022). The importance of this action weighs in favor of allowing discovery into the requested reports from the ARIES database.

### B. The amount in controversy weighs in favor of broad discovery.

The Class Representatives have asserted that the total damages model is estimated to be valued at over $2.3 billion. (Doc. No. 147 at 9). While neither party has filed expert witness disclosures with the Court, it is hard to imagine a damages model in a securities class action that would not encourage broad (and potentially expensive) discovery. *See Edwards*, 2022 WL 1568279 at *2.

5

### C. Concho has the exclusive access to the ARIES database.

The requested databases are only available through the ARIES database, and Concho has full control and exclusive access to the information. The only route for the Class Representatives to access the requested data in native format is through the discovery process. This factor weighs in favor of granting this discovery request. *See Edwards*, 2022 WL 1568279 at *3.

### D. Concho has the resources to produce the requested data.

The Class Representatives argue that Concho, now acquired by ConocoPhillips, has the resources to produce the requested data. *See* (Doc. No. 147 at 9 ("ConocoPhillips is a leading oil and gas company with market capitalization above $122 billion . . . and therefore has sufficient resources to produce the requested discovery.")). While Concho makes arguments related to the apparent burden of producing the requested data, their Response is silent regarding the availability of resources to do so. *See* (Doc. No. 158 at 14–15 (arguing that producing the data would "fall disproportionately on the shoulders of between four to six employees" and that the "process would take multiple weeks")). With the burden of production addressed under another element, the Court considers the sheer net worth of ConocoPhillips and the expense of the litigation to conclude that the Defendant does have the resources to fairly participate in the discovery process.

### E. The requested discovery is important and relevant to the underlying claims.

The Class Representatives assert that the missing ARIES databases are necessary to support the underlying claims under §§ 10(b) and 20(a) of the Securities Exchange Act. In order to successfully prove their claims, the Class Representatives must show falsity and scienter. To show falsity, the Class Representatives must show that Concho (or the Individual Defendants) made a material misrepresentation or omission, and that the misstatement was materially false. *Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 620 F. Supp. 3d 603, 619 (S.D. Tex. 2022). To

show scienter, the Class Representatives must show recklessness or "an extreme departure from ordinary care concerning a present danger of misleading buyers that was either known or so obvious it had to be known to a defendant." *See* (Doc. No. 43 at 5).

First, the information contained in the requested databases is relevant to the falsity element. The Class Representatives have the burden to show that each alleged misrepresentation or statement was materially false. In order to do so, the Class Representatives need to analyze the underlying data that purports to support the numerous presentations, PowerPoint data figures, charts, and other numerical figures that Concho and the Individual Defendants may have relied on to make their claims regarding the state of the company. *See, e.g.*, (Doc. No. 147-8 at 4 (Dep. of Keith Corbett) (describing the process of utilizing ARIES data to summarize reports of the producing wells)). While Concho argues that the discovery already produced, which includes Excel spreadsheets and ARIES outputs, satisfies their obligation to produce data, that argument fails to consider the inarguable relevance of that data to the falsity element. The requested ARIES databases are reasonably calculated to lead to the discovery of admissible evidence related to falsity.

Second, the requested databases are relevant to the issue of scienter. The Class Representatives maintain that the ARIES database contains evidence of scienter, namely the recklessness of Concho and the Individual Defendants in the publication of the allegedly false statements. This Court has previously held that the scienter element could be met by showing an extreme departure from ordinary care and evidence that Concho or the Individual Defendants should have known that the alleged statements were false or misleading. (Doc. No. 43 at 5). The Class Representatives assert that Concho or the Individual Defendants should have had knowledge of the underlying data before misrepresenting the state of the producing wells or financial status

7

of the company. In opposition to this argument, Concho argues that the Individual Defendants lacked personal knowledge of the ARIES database and only relied on the Excel spreadsheets of the ARIES output. *See, e.g.*, (Doc. No. 156-6 at 3 (Dep. of Will Giraud) (stating that he only ever reviewed Excel spreadsheets of ARIES output)). Regardless of whether the Individual Defendants only glanced at the Excel spreadsheets or were active in the ARIES database, the native format of the data that produced those Excel spreadsheets is still reasonably calculated to lead to the discovery of admissible evidence related to the scienter of Concho or the Individual Defendants.

### F. The burden of production does not outweigh the likely benefit of the requested data.

The proportionality of this request is at the heart of this discovery dispute. While the Class Representatives contend that the production should be as easy as putting some data on a flash drive, Concho argues that producing this data will be time consuming, expensive, and redundant among the millions of other pages of ARIES data outputs that Concho has already produced. In order to assess the proportionality of the request, the Court considers (1) the quality of the existing discovery and (2) the practicality (or impracticality) of producing the data.

The Class Representatives have clearly stated their dissatisfaction with the quality of the existing discovery. While Concho touts the "207,000 documents (totaling more than 2.83 million pages)" of production, the Class Representatives describe the discovery as "disorganized dump" and a "morass of files . . . to cover up production deficiencies." (Doc. Nos. 158, 161-2). The Class Representatives argue that the existing discovery, consisting of hundreds of Excel spreadsheets are unintelligible to determine how the spreadsheets "tie in" together or how the spreadsheets are correlated with the reserves, budgets, or plans reviewed by the Individual Defendants. (Doc. No. 161-2). Additionally, the Class Representatives complain that the Excel spreadsheets do not contain the "decline curves assumptions or type curves profiles underlying the projections," which

are "necessary to analyze the ways production and results from analog wells would have changed Concho's projections." (*Id.*). Lastly, the Class Representatives complain that these Excel spreadsheets do not have the same functionalities—like categorizing, calculating, or graphing—that the native format in the ARIES database would provide.

Although the discovery in this case has certainly been extensive, the Class Representatives are entitled to more than the sheer quantity of pages; they are entitled to workable data in the original form. Federal Rule of Civil Procedure 34 governs the obligations of ESI production, which requires that the production of any ESI must be in the same form "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." FED. R. CIV. P. 34(b)(2)(E)(i). While Concho argues that the Excel spreadsheets are the documents that were sent to executives like the Individual Defendants and are the only documents relevant to the claims, several deposed witnesses recognized the importance of the ARIES database. *See, e.g.* (Doc. Nos. 147-7 at 4; 147-8 at 4; 147-9 at 3). Regardless of the involvement of the Individual Defendants in the ARIES database, the produced spreadsheets were created by exporting data from the ARIES database into Excel spreadsheets for distribution. This is the exact data export process that the Advisory Committee Notes to Rule 34 contemplates: parties cannot create unnecessary obstacles by exporting data into a more difficult or burdensome format for the requesting party." FED. R. CIV. P. 34, Advisory Committee Notes, 2006 Amend. Here, the Class Representatives have correctly pointed out the deficiencies of the current production, and they are entitled to access a workable version of the ARIES databases that were used by Concho employees to distribute the Excel spreadsheets.

Next, this analysis must turn to the focus of Concho's opposition: the potential burden of producing the requested databases. The Class Representatives assert that transferring this

9

information should be relatively simple, as data was transferred in and out of the ARIES databases to third-party auditors with some frequency. However, Concho argues that this position is a fundamental misunderstanding of the operation of the software—that the ARIES system is everchanging, and it would be extremely difficult to replicate a database from a moment in the past. *See* (Doc. No. 156-2 at 6–7 (Decl. of Eric Angelos)). Moreover, Concho represented that since the acquisition, the employees that once specialized in the ARIES database are no longer employed by the company, and even if the requested data exists, producing it may take weeks of work by a group of employees that have no specialty in the programming. *See* (*id.* at 7). While this Court cannot compel Concho to produce files that they do not have (or, for that matter, any files that contain privileged information), this Court can compel Concho to make every effort to produce the documents to which the Class Representatives are entitled. *See Adhikari v. KBR, Inc.*, 2021 WL 931659 at *1 (S.D. Tex. Mar. 10, 2021) ("By failing to produce the information when the [facility] remained open, [the Defendant] *chose* to make this discovery production as expensive as it has become."). With the concession that the tie-in settings and archived databases do exist, the Court does not find the arguments about the burdensome process to produce the data convincing—especially in light of the factors that weigh in favor of broad discovery and the Advisory Committee's admonitions about the fairness of ESI discovery.

## IV. CONCLUSION

The Court hereby GRANTS the Class Representatives' Motion to Compel Production of Defendant Concho Resources, Inc.'s ARIES Database and orders the Defendants to produce (1) the ARIES databases or a portion thereof and necessary tie-in settings that were provided to third-party auditors, Netherland, Sewell & Associates and Cawley, Gillespie and Associates for years 2017, 2018, and 2019 and (2) the ARIES databases or a portion thereof and necessary tie-in settings

that were used in the creation of Concho's final budgets and final financial forecasting projections for years 2017, 2018, and 2019.

It is so ordered.

Signed on this the 10th day of October 2025.

Andrew S. Hanen
United States District Judge